IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | ) Case No. 23-10047 (___) |
| Debtors. | ) (Joint Administration Requested) |

# DECLARATION OF STEVEN BREMER IN SUPPORT OF
# CASH COLLATERAL AND DIP MOTION

I, Steven Bremer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Managing Director at Portage Point Partners, LLC ("Portage Point"), which I joined in 2022. Portage Point is a business advisory and financial services firm with its principal place of business at 300 North LaSalle Drive, Suite 1420, Chicago, Illinois 60654. Portage Point is the proposed investment banker for the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases.[2]

2. I submit this declaration (the "Declaration") in support of the *Motion of the Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the *Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") or the Cash Collateral and DIP Motion as applicable, each filed contemporaneously herewith and fully incorporated herein.

10329024.v11

*Hearing; and (VI) Granting Related Relief* (the "Cash Collateral and DIP Motion") filed contemporaneously herewith.

3. In particular, I submit this Declaration in support of my belief that (a) the Debtors are unable to borrow funds on an unsecured or more junior basis, or solely secured by the Debtors' unencumbered assets in sufficient amounts to fund these Chapter 11 Cases, and (b) the proposed debtor-in-possession financing facility ("DIP Facility") (i) is the product of an arm's-length, good-faith negotiation process, (ii) is the best available post-petition financing option for the Debtors, and (iii) contains reasonable terms and conditions under the Debtors' current circumstances.

4. The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinions, or on information I obtained from the Debtors' employees or advisors, the Debtors' books and records, and/or Portage Point employees working under my supervision, direction, or control.

5. I am not being specifically compensated for this testimony other than through payments received by Portage Point as a professional proposed to be retained by the Debtors pursuant to an application to be filed at a later date. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would competently testify to the facts set forth herein.

A. **Background and Qualifications**

6. Portage Point is a business advisory, interim management, investment banking, and financial services firm. Portage Point professionals have advised debtor, creditors and equity constituents in numerous reorganizations, and those advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and

improvements, dispute and litigation advisory, interim management services, and investment banking services.

7. I have over 15 years of experience advising and executing on financing and restructuring transactions, as well as mergers and acquisitions. My experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations. Prior to joining Portage Point, I was a Partner at Centerview Partners, a Director at Millstein & Co. and a Vice President at Miller Buckfire & Co. I hold M.S. and B.S. degrees with distinction in Systems Engineering from the University of Virginia and an MBA from the Wharton School at the University of Pennsylvania.

8. In addition to acting as the investment banker to the Debtors in these Chapter 11 Cases, I have provided financial advisory, investment banking or other services in connection with the in-court restructuring of numerous companies, including *In re Patriot Coal Corp.*, Case No. 15-32450 (KLP) (Bankr. E.D.V.A.); *In re Peabody Energy Corp.*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo.); *In re Dendreon Corp., et al.*, Case No. 14-12515 (LSS) (Bankr. D. Del.); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del.); *In re Lenox Grp., Inc.*, Case No. 08-14680-ALG (Bankr. S.D.N.Y.); *In re Glob. Brokerage Inc.*, Case No. 17-13532 (MEW) (Bankr. S.D.N.Y.,); *In re Aspect Software, Inc.*, Case No. 16-10597 (MFW) (Bankr. D. Del.); *In re Seventy Seven Energy Inc.*, Case No. 16-11410 (LSS) (Bankr. D. Del.); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y.); *In re Blackhawk Mining LLC, et al.*, Case No. 19-11595 (LSS) (Bankr. D. Del.); *Westmoreland Coal Company, et al.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Texas); *In re Synergy Pharmaceuticals Inc., et al.*, Case No. 18-14010 (LGB) (Bankr. S.D.N.Y.); *In re Westinghouse Electric Company LLC, et al.*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y.).

**B.      Portage Point's Engagement**

9.      The Debtors engaged Portage Point in October 2022 to serve as both a restructuring advisor and investment banker to the Debtors. Since commencing its engagement, Portage Point has provided assistance in numerous areas including in connection with the Debtors' evaluation of strategic alternatives. Portage Point has worked closely with the Debtors' management and other restructuring professionals and has become well acquainted with the Debtors' capital structure, liquidity needs, and business operations.

**C.      The Debtors' Immediate Need for Access to the DIP Facility and Cash Collateral**

10.     As of the Petition Date, the Debtors' capital structure consists of outstanding funded-debt obligations in the aggregate principal amount of approximately $52 million, outstanding to the Prepetition Secured Parties under the Pre-Petition Loan Documents (each as defined in the Cash Collateral and DIP Motion) and unsecured trade debt of approximately $70 million. I understand that the Debtors' prepetition first lien obligations to the Pre-Petition Secured Parties are secured by liens on substantially all of the Debtors' assets and proceeds thereof.

11.     Leading up to the Petition Date, the Debtors negotiated the DIP Facility, which is a $10 million second lien junior financing facility with Tankas Funding VI, LLC, an affiliate of Kinderhook (the Debtors' equity sponsor and the same entity serving as the Stalking Horse Purchaser). The proposed DIP Facility was approved by the disinterested director of the boards (the "Disinterested Director"), who was delegated authority to review and act upon any matters pertaining to a potential restructuring, refinancing, or sale transaction in which a conflict may exist between the Debtors on the one hand, and any of their senior management, board members, advisors, equity holders, and affiliates (or those entities' managers, directors, or officers) on the other hand.

12. As described in the First Day Declaration, the Debtors are suffering from a continued drain on cash flow and the lack of a source of additional long-term liquidity. Moreover, the negotiation and execution of the DIP Facility occurred against the backdrop of ongoing threats by the Debtors' largest trade creditor to file an involuntary bankruptcy petition against at least one of the Debtor entities. In light of these threats, the Debtors were required to move as fast as possible to secure the postpetition financing necessary to maximize value under the circumstances.

### The Proposed DIP Facility

13. Leading up to the Petition Date and in the face of a threatened involuntary petition, the Debtors and their advisors discussed with the Prepetition Secured Parties and the DIP Facility Lender the need for postpetition financing on an expedited basis. Ultimately, the DIP Facility Lender provided the Debtors with a term sheet for a junior priority new money DIP financing. The Debtors, the Prepetition Secured Parties and DIP Facility Lender subsequently engaged in arm's-length and good-faith negotiations over the terms of the DIP Facility, culminating in the best DIP financing available to the Debtors under the current circumstances and accelerated timeline. Given the circumstances, the interim borrowings under the DIP Facility will be funded after entry of an interim order on a term sheet, rather than a full credit agreement.

14. The proposed DIP Facility consists of $10 million in aggregate junior lien superpriority term loans that will provide the Debtors with (i) an initial draw in the aggregate principal amount of $3.5 million available upon entry of the Interim Order, and (ii) an additional draw of up to $6.5 million available upon entry of the Final Order, provided, that the DIP Borrower may elect to draw a portion (not to exceed $4,800,000) of such Final DIP Loan on one additional business day after the Final Closing Date that is specified by the Debtors.

**A. Alternative Sources of Financing on Better Terms than the DIP Facility Are Not Available to the Debtors.**

15. Portage Point engaged with a wide range of stakeholders as potential sources of financing, including but not limited to the Debtors' sponsor, Kinderhook Industries, LLC and the Debtors' Prepetition Secured Parties, Twin Brook Capital Partners. In addition, at the direction of the Debtors, Portage Point reached out to four third-party institutions that routinely provide debtor-in-possession financing, as well as the Debtors' primary vendor manufacturing partner, Huansong. Portage Point inquired whether any of these parties would be willing to extend financing to the Debtors on an unsecured or junior priority (or even priming) basis. Each of these parties confirmed that, in light of the facts and circumstances, they had no interest in extending financing to the Debtors on an unsecured, junior priority or priming basis. I thus believe that the Debtors are not reasonably able to obtain financing alternatives other than the proposed DIP Facility.

16. Based on the foregoing, the Debtors believe, and I agree, that the DIP Facility and consensual use of Cash Collateral represents the best financing option available under the current circumstances.

**B. The Economic Terms of the Proposed DIP Facility Are the Best Terms Available Under the Circumstances, Are Reasonable, and Should Be Approved.**

17. It is also my belief, based on the Debtors' financial position, that the economic terms of the DIP Facility are reasonable for debtor-in-possession financings in these circumstances. The key economic terms of the DIP Facility are set forth below:

| | *Key Economic Terms of the DIP Facility* |
|---|---|
| Facility Size | $10 million in DIP Commitments, consisting of two separate borrowings: (a) $3.5 million upon entry of the Interim DIP Order, and (b) $6.5 million upon entry of the Final DIP Order |
| Interest Rate | Interest accrues at 15.0% per annum and shall be paid in cash on (i) the last day of each month until all DIP and other obligations are paid in full, and (ii) on the maturity of the DIP Loans. |

| *Key Economic Terms of the DIP Facility* | |
|---|---|
| Commitment Fee | commitment fee of 6.0% on the full amount of the DIP Credit Facility, payable in kind, 35% of which shall be earned on the Petition Date and paid in kind upon entry of the Interim DIP Order and on the Closing Date and 65% of which shall be earned on the Petition Date and paid in kind upon entry of the Final DIP Order and on the Final Closing Date, and shall be payable in cash upon the Maturity Date. |
| Exit Fee | A fee of 10.0% of the full amount of the DIP Loans and commitments under the DIP Credit Facility will be earned upon entry of the Final DIP Order and paid (in cash) upon the earlier of (i) the Maturity Date and (ii) any other payoff, refinancing or termination of the DIP Credit Facility; provided, that such Exit Fee shall not be due and payable if the Maturity Date, or such payoff, refinancing or termination, results from a transaction in which the DIP Lender or one or more affiliates of the DIP Lender are the buyer(s) of all or substantially all of the assets of the assets of the Debtors (or equity interests of entities representing all or substantially all of the assets of the Debtors). |

18. The DIP Facility contains many other terms that are favorable to the Debtors, particularly on an interim basis. In particular, the DIP Facility is junior to the secured lender and there are no significant commitments following the entry of the Interim DIP Order, meaning that any party may offer, and ultimately provide, a more favorable DIP facility at any time postpetition. The key terms of the DIP Facility were the product of hard-fought, arm's-length, and good-faith negotiations between the Debtors, the Pre-Petition Secured Party and DIP Facility Lender. The fees and rates to be paid under the proposed DIP Facility are an integral component of the overall terms of the proposed DIP Facility and were required by the DIP Lenders as consideration for post-petition financing.

19. The terms of the DIP Facility also contemplate a release of the DIP Lenders upon entry of the Final Order. The contemplated releases were critical to Kinderhook's willingness to provide the DIP Facility. The Debtors' willingness to agree to such a release was informed by a pre-petition investigation conducted by the Company and the Disinterested Director. Based on the work performed in this investigation to date, the Debtors do not believe that any viable claims exist

10329024.v11

against Kinderhook and, as a result, believe that a release of Kinderhook is appropriate and will provide the requisite evidentiary support at a hearing on the Final Order.

20. The DIP Facility and access to Cash Collateral will also provide the Debtors with immediate access to liquidity and is consistent with needs outlined in the Budget. The Debtors believe that obtaining access to the financing under the DIP Facility and the consensual use of Cash Collateral will send a positive signal to the Debtors' employees, vendors, suppliers, and customers that the Debtors will be able to continue to meet their commitments and are not likely to languish in bankruptcy, which the Debtors believe will facilitate a successful sale in these Chapter 11 Cases.

21. My team and I evaluated the economic terms of the DIP Facility, including the fees to be paid by the Debtors thereunder and, based on the facts set forth above, I agree that the proposed DIP Facility is the best option available for the Debtors to obtain postpetition financing. Further, it is my view, based on my experience, that the terms of the proposed DIP Facility are reasonable for this type of financing for similarly situated companies in similar circumstances, particularly in the absence of any more favorable alternatives.

22. In sum, based on the foregoing, I believe, based on my experience, that under the circumstances (a) the DIP Facility is the best debtor-in-possession financing available to the Debtors and (b) the terms of the proposed DIP Facility are reasonable for this type of financing in these circumstances.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 16, 2023

*/s/ Steven Bremer*
Steven Bremer, Managing Director
Portage Point Partners, LLC