IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | ) Case No. 23-10047 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |

**DECLARATION OF ALYSSA LOZYNSKI IN SUPPORT OF
CASH COLLATERAL AND DIP MOTION**

I, Alyssa Lozynski, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Senior Director at Portage Point Partners, LLC ("Portage Point"), which I joined in 2020. Portage Point is a business advisory and financial services firm with its principal place of business at 300 North LaSalle Drive, Suite 1420, Chicago, Illinois 60654. Portage Point is the proposed investment banker and restructuring advisor for the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases.[2]

2. I submit this declaration (the "Declaration") in support of the *Motion of the Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the *Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") or the Cash Collateral and DIP Motion as applicable, each filed contemporaneously herewith and fully incorporated herein.

*Hearing; and (VI) Granting Related Relief* (the "Cash Collateral and DIP Motion") filed contemporaneously herewith.

3. The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinions, or on information I obtained from the Debtors' employees or advisors, the Debtors' books and records, and/or Portage Point employees working under my supervision, direction, or control.

4. I am not being specifically compensated for this testimony other than through payments received by Portage Point as a professional proposed to be retained by the Debtors pursuant to an application to be filed at a later date. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would competently testify to the facts set forth herein.

**A.    Background and Qualifications**

5. Portage Point is a business advisory, interim management, investment banking, and financial services firm. Portage Point professionals have advised debtor, creditors and equity constituents in numerous reorganizations, and those advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, dispute and litigation advisory, interim management services, and investment banking services.

6. I have over three years of experience advising underperforming and distressed companies and over ten years of financial advisory experience. My experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations including liquidity management, contingency planning, financial modeling, developing and implementing operational and financial performance improvement initiatives and in-court and out-

10338055.v5

of-court restructurings. Prior to joining Portage Point, I was in the Transaction Advisory Group at Alvarez & Marsal and prior to joining Alvarez & Marsal, I was part of the M&A Transaction Services Group Deloitte. I hold M.S. and B.S. degrees in Accounting and minor in Finance from the Gies College of Business at the University of Illinois and I am a Certified Public Accountant.

7. In addition to acting as the restructuring advisor to the Debtors in these Chapter 11 Cases, I have provided restructuring advisory or other services in connection with the in-court restructuring of numerous companies, including *Alamo Drafthouse Cinemas Holdings, LLC, et al.*, Case No. 21-10474 (MFW) (Bankr. D. Del.); *Bouchard Transportation Co., Inc., et al.*, Case No. 20-34758 (DRJ) (Bankr. S.D. Tex.); *China Fishery Group Limited (Cayman), et al.*, Case No. 16-11895 (JLG) (Bankr. S.D.N.Y.); *Compute North Holdings, Inc., et al.,* Case No. 22-90273 (MI) (Bankr. S.D. Tex.); *Dura Automotive Systems, LLC*, Case No. 19-06741 (RSM) (Bankr. M.D. Tenn.); *Hornbeck Offshore Services, LLC*, Case No. 20-32685 (DRJ) (Bankr. S.D. Tex.); *Intelsat S.A.*, Case No. 20-32299 (KLP) (Bankr. E.D. Va.); *Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del.); *Teligent, Inc*., Case No. 21-11332 (BLS) (Bankr. D. Del.).

**B.      Portage Point's Engagement**

8. The Debtors engaged Portage Point in October 2022 to serve as both a restructuring advisor and investment banker to the Debtors. Since commencing its engagement, Portage Point has provided assistance in numerous areas including in connection with the Debtors' evaluation of strategic alternatives. Portage Point has worked closely with the Debtors' management and other restructuring professionals and has become well acquainted with the Debtors' capital structure, liquidity needs, financial situation, and business operations.

10338055.v5

**C.      The Debtors' Immediate Need for Access to the DIP Facility and Cash Collateral**

9.      As of the Petition Date, the Debtors' capital structure consists of outstanding funded-debt obligations in the aggregate principal amount of approximately $52 million, outstanding to the Prepetition Secured Parties under the Pre-Petition Loan Documents (each as defined in the Cash Collateral and DIP Motion) and unsecured trade debt of approximately $70 million. I understand that the Debtors' prepetition first lien obligations to the Pre-Petition Secured Parties are secured by liens on substantially all of the Debtors' assets and proceeds thereof.

10.      Leading up to the Petition Date, the Debtors negotiated the DIP Facility, which is a $10 million second lien junior financing facility with Tankas Funding VI, LLC, an affiliate of Kinderhook (the Debtors' equity sponsor and the same entity serving as the Stalking Horse Purchaser). The proposed DIP Facility was approved by the disinterested director of the boards (the "<u>Disinterested Director</u>"), who was delegated authority to review and act upon any matters pertaining to a potential restructuring, refinancing, or sale transaction in which a conflict may exist between the Debtors on the one hand, and any of their senior management, board members, advisors, equity holders, and affiliates (or those entities' managers, directors, or officers) on the other hand.

11.      As described in the First Day Declaration, the Debtors are suffering from a continued drain on cash flow and the lack of a source of additional long-term liquidity. Moreover, the negotiation and execution of the DIP Facility occurred against the backdrop of ongoing threats by the Debtors' largest trade creditor to file an involuntary bankruptcy petition against at least one of the Debtor entities. In light of these threats, the Debtors were required to move as fast as possible to secure the postpetition financing necessary to maximize value under the circumstances.

12. The Debtors' cash balance as of the Petition Date is approximately $1 million. Accordingly, the Debtors' need for immediate liquidity is urgent and the use of cash collateral will not be sufficient for the Debtors to operate in the normal course. Specifically, absent the proposed DIP Facility, the Debtors will not have the cash required to pay vendors or have sufficient liquidity to pay the administrative costs, both operational and statutory, required in these Chapter 11 Cases.

13. The size of the DIP Facility was determined based on an analysis conducted by me and other restructuring advisory professionals at Portage Point, together with the Debtors' management team and other advisors. The amount was derived from a cash-flow projection that restructuring advisory professionals at Portage Point developed from an analysis of the Debtors' projected receipts and disbursements (the "Budget," attached as Exhibit A to the Cash Collateral and DIP Motion) and discussions with the Debtors' management team. Based on my experience and familiarity with the Debtors' operations and discussions with the Debtors' management team, I believe the Budget represents a reasonable estimate of the Debtors' cash sources and needs during these Chapter 11 Cases. Given these estimates, I believe that the DIP Facility will provide the Debtors with sufficient liquidity to stabilize their operations and fund the administration of these Chapter 11 Cases.

14. I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 16, 2023

                                              */s/  Alyssa Lozynski*
                                              Alyssa Lozynski, Senior Director
                                              Portage Point Partners, LLC

10338055.v5