**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | ) ) ) ) | Case No. 23-10047 (LSS) (Jointly Administered) |
| Debtors. | ) ) | |

**DEBTORS' APPLICATION SEEKING AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF TRIPLE P RTS, LLC AS
RESTRUCTURING ADVISOR AND TRIPLE P SECURITIES, LLC
AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS
IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Triple P RTS, LLC ("Triple P RTS") as their restructuring advisor and Triple P Securities, LLC ("Triple P Securities," together with Triple P RTS, "Portage Point") as their investment banker, effective as of the Petition Date (as defined herein). In support of this Application, the Debtors submit the declaration of Steven W. Bremer, a managing director at Portage Point Partners, LLC (the "Bremer Declaration"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

10347023.v4

## BACKGROUND

1. On January 16, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have sought procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). No entity has requested the appointment of a trustee or examiner in these chapter 11 cases. No trustee or examiner has been requested in the Chapter 11 Cases, and no official committee of unsecured creditors (the "Committee") has been appointed in these Chapter 11 Cases by the United States Trustee for the District of Delaware (the "U.S. Trustee") to date.

2. A description of the Debtors' business and the reasons for commencing the chapter 11 cases are set forth in the *Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which is incorporated herein by reference.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## RELIEF REQUESTED

6. By this Application, the Debtors seek the entry of the Order authorizing the retention and employment of Triple P RTS as its restructuring advisor and Triple P Securities as its investment banker in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Portage Point effective as of October 27, 2022, as amended January 12, 2023 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

## PORTAGE POINT'S QUALIFICATIONS

7. The Debtors seek to retain Portage Point because of Portage Point's recognized expertise and extensive experience and knowledge in the field of restructuring advisory and investment banking involving reorganizations under chapter 11 of the Bankruptcy Code.

8. Portage Point is a business advisory, interim management, investment banking and financial services firm whose professionals have a wealth of experience in providing a range of financial advisory and investment banking services and enjoy an excellent reputation for services they have rendered on behalf of debtors and creditors throughout the United States. Professionals currently employed by Portage Point have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *Alex and Ani, LLC*, No. 21-10918 CTG (Bankr. D. Del. July 15, 2021); *In re Alamo*

3

*Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. March 29, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. October 22, 2020); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D.V.A.); *In re Blackhawk Mining LLC, et al.*, Case No. 19-11595 (LSS) (Bankr. D. Del.); *In re Synergy Pharmaceuticals Inc., et al.*, Case No. 18-14010 (LGB) (Bankr. S.D.N.Y.); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo.); *In re Lenox Grp., Inc.*, No. 08-14680-ALG (Bankr. S.D.N.Y.); *In re Glob. Brokerage Inc.*, No. 17-13532 (MEW) (Bankr. S.D.N.Y.,); *In re Hornbeck Offshore Services, LLC*, No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems*, No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re The Financial Oversight and Management Board for Puerto Rico, as a representative of Puerto Rico Electric Power Authority*, No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017)[2].

9. The Debtors believe that Portage Point is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED

10. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Portage Point to render the following services, among others, as directed by the Debtors:

---

[2] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Debtors' proposed counsel.

4

10347023.v4

Investment Banking Services

    (a)    reviewing and analyzing the Company's business, operations, and financial projections;

    (b)    evaluating the Company's potential debt capacity in light of its projected cash flows;

    (c)    assisting in the determination of a capital structure for the Company;

    (d)    assisting in the determination of a range of values for the Company on a going-concern basis;

    (e)    advising and assisting the Company in evaluating any potential Financing by the Company, and, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

    (f)    assisting the Company in identifying and evaluating candidates for any potential sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any sale Transaction;

    (g)    advising the Company on the timing, nature, and terms of new securities, other consideration or other inducement to be offered pursuant to any Restructuring, Sale Transaction and/or Financing;

Restructuring Advisory Services

    (h)    assisting in the evaluation and/or development of a short-term cash flow model and / or related liquidity management tools for the Company for such purpose(s) as the Company may require;

    (i)    assisting in the evaluation and/or development of a business plan and / or such other related forecasts and analyses for the Company for such purpose(s) as the Company may require;

    (j)    assisting in the evaluation and implementation of contingency planning related to Company's commencing or otherwise becoming the subject of a case under chapter 11 of title 11 of the United States Code (any such case, a "Chapter 11 Case");

    (k)    assisting in obtaining and presenting information required by parties in interest in a Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "Bankruptcy Court");

General Services

5

(l) advising the Company on tactics and strategies for negotiating with the Constituents as defined below;

(m) rendering financial advice to the Company and participating in meeting or negotiations with the Constituents and/or rating agencies or other appropriate parties in connection with any Restructuring, Sale Transaction and/or Financing;

(n) assisting the Company in preparing documentation within Portage Point's area of expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

(o) attending meetings of the board of directors (or similar governing body) of the Company with respect to matters on which Portage Point has been engaged to advise hereunder;

(p) providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in a Chapter 11 Case; and

(q) providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and Portage Point.

## PROFESSIONAL COMPENSATION

11. Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in the Engagement Letter.

12. **Restructuring Advisory Services**. As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its Restructuring Advisory Services pursuant to Portage Point's current standard hourly rates, subject to periodic adjustments, which are as follows:

| Title | Hourly Rate[3] |
|---|---|
| Managing Partner | $975 |
| Service Line Leader | $925 |
| Senior Advisor | $800-925 |
| Managing Director | $800-$875 |
| Director | $650-$725 |
| Vice President | $525-$635 |
| Associate | $395-$435 |

13. Consistent with the Engagement Letter, it is Portage Points's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Portage Point's policy to charge its clients only the amount actually incurred by Portage Point in connection with such items. Examples of such expenses include outside counsel costs, outside copy services, travel, lodging, meals, and services of outside vendors.

14. **Investment Banking Services**. As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its investment banking services as follows:

a. Monthly Fee: A monthly fee of $50,000 (the "Monthly Fee"), payable on execution of this Engagement Letter and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Portage Point's Engagement pursuant to Section 21 of this Engagement Letter. Fifty percent (50%) of all Monthly Fees actually paid to Portage Point after the payment of $ 100,000 in Monthly Fees shall be credited once, without duplication, against the Restructuring Fee or Sale Transaction Fee (each as defined below), if any, subsequently payable to Portage Point by the Company.

b. Restructuring Fee: A fee equal to $ 1,250,000, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "prepackaged" or "prearranged" chapter 11 plan, the Restructuring Fee shall be deemed earned and payable as follows: (i) 50% of the Restructuring Fee upon the earlier of (a) execution of definitive agreements with respect to such plan; and (b) delivery of binding acceptances of such plan by a sufficient number of Stakeholders to bind all Stakeholders to the plan under the Bankruptcy Code and (ii) 50% of the Restructuring

---

[3] Represents current hourly rates. Rates differ from the rates set forth in the Engagement Letter due to periodic adjustments as provided for in the Engagement Letter.

10347023.v4

Fee upon the consummation of the Restructuring; provided, further, that if Portage Point is paid a fee in connection with a "prepackaged" or "prearranged" chapter 11 plan and a chapter 11 plan is not consummated, Portage Point shall return such fee to the Company (less any Monthly Fees that have accrued).

c.  <u>Sale Transaction Fee</u>.

  i.  If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the Company's assets or all or a majority of or a controlling interest in the Company's equity securities, Portage Point shall be paid a fee (the "<u>Sale Transaction Fee</u>") equal to the Restructuring Fee plus 5% of the Aggregate Consideration (as defined in Schedule I of the Engagement Letter) above $100,000,000.

  ii.  Any Sale Tran action Fee shall be payable upon consummation of the applicable Sale Transaction.

d.  <u>Financing Fee</u>: A fee, payable upon the consummation of a Financing (the "Financing Fee"), equal to the applicable percentages of gross proceeds as follows based on the security type issued in the Financing: (i) 2.0% of any senior secured debt financing, government financing, or "debtor-in-possession" financing, plus (ii) 4.0% of any junior secured or unsecured debt financing, plus (iii) 6.0% of any equity, equity-linked or equity-stapled or similarly bundled equity financing; *provided, however*, Portage Point will not be entitled to a Financing Fee for any Financing provided to the Company by Kinderhook Industries, LLC and its respective affiliates; provided. further, Portage Point only will be entitled to a Financing Fee for that portion of any Financing provided to the Company by Twin Brook Capital Partners, LLC and its respective affiliates that includes new money proceeds and/or commitments.

e.  For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above; provided, however, Portage Point will not be paid both a Restructuring Fee and a Sale Transaction Fee.

15.  Subject to the Court's approval, Portage Point intends to apply for payment of compensation for professional services rendered and reimbursement of expenses. Such applications shall be pursuant to section 327 of the Bankruptcy Code for the Restructuring Advisory Services and section 328 of the Bankruptcy Code for the Investment Banking Services.

16.  No promises have been received by Portage Point nor any employee thereof as to payment or compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees and

independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

## COMPENSATION RECEIVED BY PORTAGE POINT FROM THE DEBTORS

17. In connection with these cases, the Debtors paid a classic retainer to Portage Point of $100,000 on November 1, 2022. In addition, in the 90 days prior to the Petition Date, Portage Point received payments totaling $995,071 in the aggregate for services performed for the Debtor consisting of $200,000 in Monthly Fees and $795,071 in Hourly Fees. Finally, in the 90 days prior to the petition date, Portage Point received payments totaling $10,324 in the aggregate as reimbursement for Portage Point's expenses billed through the Petition Date. As of the Petition Date, Portage Point holds an unapplied residual retainer of $99,184. At all times during the 90 day period prior to the Petition Date Portage Point maintained a positive balance of its retainer. As stated in the Engagement Letter, the classic retainer is the property of Portage Point, is not held in a separate account, and was earned upon receipt, and, consequently, Portage Point placed the amounts into its general cash account.

## DISINTERESTEDNESS

18. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Bremer Declaration: (a) Portage Point is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; (b) Portage Point has no connection to the Debtors, their creditors or other parties-in-interest in these chapter 11 cases, or the attorneys or accountants of the foregoing, or the United States Trustee for the District of Delaware (the "U.S.

Trustee") or any person employed by the U.S. Trustee's office; and (c) does not hold any interest adverse to the Debtors' estates.

19. As set forth in further detail in the Bremer Declaration, Portage Point has certain connections with creditors and other parties-in-interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. Portage Point does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

20. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Portage Point's retention are discovered or arise, Portage Point will use reasonable efforts to promptly file a supplemental declaration.

## SUPPORTING AUTHORITY

21. The Debtors seek retention of Triple P RTS as restructuring advisor and Triple P Securities as investment banker to the Debtors' attorneys pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

22. Section 328(a) of the Bankruptcy Code provides that a debtor, subject to Court approval, "may employ . . . a professional person . . . on any reasonable terms of employment." Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for

> compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr P 2014.

23. The Debtors submit that for all the reasons stated above and in the Bremer Declaration, the retention and employment of Triple P RTS as restructuring advisor and Triple P Securities as investment banker is warranted. Further, as stated in the Bremer Declaration, Portage Point is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Bremer Declaration.

## NOTICE

24. The Debtors will provide notice of this motion to (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the lender under the Debtors' postpetition financing facility; (c) the top twenty unsecured creditors of the Debtors; (d) counsel to the official committee of unsecured creditors, if any; and (e) any party that request service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Application has been made to this or any other court.

10347023.v4

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

                                                Respectfully Submitted,

Dated: January 23, 2023                  **Performance Powersports Group Investor, LLC**
                                                (for itself and on behalf of its affiliated debtors and debtors in possession)

                                                */s/ Ken Vanden Berg*
                                                Name:  Ken Vanden Berg
                                                Title:   Chief Financial Officer