# EXHIBIT B

**Bremer Declaration**

10347023.v4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PERFORMANCE POWERSPORTS GROUP | ) | Case No. 23-10047 (LSS) |
| INVESTOR, LLC, *et al.,*[1] | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**DECLARATION OF STEVEN W. BREMER IN SUPORT OF THE DEBTORS'
APPLICATION SEEKING AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF TRIPLE P RTS, LLC AS RESTRUCTURING ADVISOR AND
TRIPLE P SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

I, Steven W. Bremer, submit this declaration (this "Declaration") pursuant to 28 U.S.C. §

1746, and state:

1.      I am a Managing Director of Portage Point Partners, LLC which has principal

place of business at 300 North LaSalle, Suite 1420, Chicago, Illinois 60654. Triple P Securities,

LLC ("Triple P Securities") and Triple P RTS, LLC ("Triple P RTS" together with Triple P

Securities, "Portage Point") are each wholly owned by Portage Point Partners, LLC and in my

capacity as Managing Director at Portage Point Partners, LLC I am authorized to submit this

Declaration on behalf of both Triple P RTS, LLC and Triple P Securities, LLC.

2.      I submit this Declaration on behalf of Portage Point in support of the *Debtors'*

*Application Seeking an Order Authorizing the Retention and Employment of Triple P RTS,*

*LLC as Restructuring Advisor and Triple P Securities, LLC as Investment Banker for the*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal
tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance
Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and
Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East
University Drive, Tempe, Arizona 85281.

1

*Debtors and Debtors in Possession Effective as of the Petition Date* (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein. If called and sworn as a witness, I could, and would, testify competently to the matters set forth herein.

### Portage Point's Qualifications

3.       Portage Point is a business advisory, interim management, investment banking and financial services firm whose professionals have a wealth of experience in providing financial advisory and investment banking services and enjoy an excellent reputation for services they have rendered on behalf of debtors and creditors throughout the United States. Professionals currently employed by Portage Point have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *Alex and Ani, LLC*, No. 21-10918 CTG (Bankr. D. Del. July 15, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. March 29, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. October 22, 2020); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D.V.A.); *In re Blackhawk Mining LLC, et al.*, Case No. 19-11595 (LSS) (Bankr. D. Del.); *In re Synergy Pharmaceuticals Inc., et al.*, Case No. 18-14010 (LGB) (Bankr. S.D.N.Y.); *In re Peabody Energy Corp.,* No. 16-42529 (BSS) (Bankr. E.D. Mo.); *In re Lenox Grp., Inc.*, No. 08-14680-ALG (Bankr. S.D.N.Y.); *In re Glob. Brokerage Inc.*, No. 17-13532 (MEW) (Bankr. S.D.N.Y.,); *In re Hornbeck Offshore Services, LLC*, No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems*, No. 19-12378 (KBO)

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

10347023.v4

(Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re The Financial Oversight and Management Board for Puerto Rico, as a representative of Puerto Rico Electric Power Authority*, No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017)[3].

## <u>Services To Be Provided By Portage Point</u>

4.      Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Portage Point to render the following services, among others, as directed by the Debtors:

<u>Investment Banking Services</u>

     (a)     reviewing and analyzing the Company's business, operations, and financial projections;

     (b)     evaluating the Company's potential debt capacity in light of its projected cash flows;

     (c)     assisting in the determination of a capital structure for the Company;

     (d)     assisting in the determination of a range of values for the Company on a going-concern basis;

     (e)     advising and assisting the Company in evaluating any potential Financing by the Company, and, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

     (f)     assisting the Company in identifying and evaluating candidates for any potential sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any sale Transaction;

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Debtors' proposed counsel.

(g)    advising the Company on the timing, nature, and terms of new securities, other consideration or other inducement to be offered pursuant to any Restructuring, Sale Transaction and/or Financing;

Restructuring Advisory Services

(h)    assisting in the evaluation and/or development of a short-term cash flow model and / or related liquidity management tools for the Company for such purpose(s) as the Company may require;

(i)    assisting in the evaluation and/or development of a business plan and / or such other related forecasts and analyses for the Company for such purpose(s) as the Company may require;

(j)    assisting in the evaluation and implementation of contingency planning related to Company's commencing or otherwise becoming the subject of a case under chapter 11 of title 11 of the United States Code (any such case, a "Chapter 11 Case");

(k)    assisting in obtaining and presenting information required by parties in interest in a Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "Bankruptcy Court");

General Services

(l)    advising the Company on tactics and strategies for negotiating with the Constituents as defined below;

(m)    rendering financial advice to the Company and participating in meeting or negotiations with the Constituents and/or rating agencies or other appropriate parties in connection with any Restructuring, Sale Transaction and/or Financing;

(n)    assisting the Company in preparing documentation within Portage Point's area of expertise that is required in connection with any Restructuring, Sale Transaction and/or Financing;

(o)    attending meetings of the board of directors (or similar governing body) of the Company with respect to matters on which Portage Point has been engaged to advise hereunder;

(p)    providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in a Chapter 11 Case; and

(q)    providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and Portage Point.

## Indemnification

5.        The Engagement Letter contains standard indemnification and limitation of liability language with respect to Portage Point's services (the "Indemnity").  The Debtors and Portage Point believe that the Indemnity is customary and reasonable for engagements of this type and should be approved.  Notwithstanding any provisions of the Engagement Letter to the contrary, Portage Point has agreed otherwise, as set forth below.

6.        With respect to the Portage Point, the Debtors shall have no obligation to indemnify Portage Point or to provide contribution or reimbursement to Portage Point for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of Portage Point; or (b) settled prior to a judicial determination as to Portage Point's willful misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which Portage Point should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter.

## Compensation

7.        Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in the Engagement Letter.

8.        **Restructuring Advisory Services**.  As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its Restructuring Advisory Services pursuant to Portage Point's current standard hourly rates, subject to periodic adjustments, which are as follows:

10347023.v4

| Title | Hourly Rate[4] |
|---|---|
| Managing Partner | $975 |
| Service Line Leader | $925 |
| Senior Advisor | $800-925 |
| Managing Director | $800-$875 |
| Director | $650-$725 |
| Vice President | $525-$635 |
| Associate | $395-$435 |

9.      Consistent with the Engagement Letter, it is Portage Points's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Portage Point's policy to charge its clients only the amount actually incurred by Portage Point in connection with such items. Examples of such expenses include outside counsel costs, outside copy services, travel, lodging, meals, and services of outside vendors.

10.      **Investment Banking Services**.  As more fully set forth in the Engagement Letter, the Debtors intend to compensate Portage Point for its investment banking services as follows:

a.      Monthly Fee: A monthly fee of $50,000 (the "Monthly Fee"), payable on execution of this Engagement Letter and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Portage Point's Engagement pursuant to Section 21 of this Engagement Letter. Fifty percent (50%) of all Monthly Fees actually paid to Portage Point after the payment of $ 100,000 in Monthly Fees shall be credited once, without duplication, against the Restructuring Fee or Sale Transaction Fee (each as defined below), if any, subsequently payable to Portage Point by the Company.

b.      Restructuring Fee: A fee equal to $ 1,250,000, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "prepackaged" or "prearranged" chapter 11 plan, the Restructuring Fee shall be deemed earned and payable as follows: (i) 50% of the Restructuring Fee upon the earlier of (a) execution of definitive agreements with respect to such plan; and (b) delivery of binding acceptances of such plan by a sufficient number of Stakeholders to bind all Stakeholders to the plan under the Bankruptcy Code and (ii) 50% of the Restructuring Fee upon the consummation of the Restructuring; provided, further,

---

[4] Represents current hourly rates. Rates differ from the rates set forth in the Engagement Letter due to periodic adjustments as provided for in Engagement Letter.

that if Portage Point is paid a fee in connection with a "prepackaged" or "prearranged" chapter 11 plan and a chapter 11 plan is not consummated, Portage Point shall return such fee to the Company (less any Monthly Fees that have accrued).

    c.    <u>Sale Transaction Fee</u>.

        i.    If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the Company's assets or all or a majority of or a controlling interest in the Company's equity securities, Portage Point shall be paid a fee (the "<u>Sale Transaction Fee</u>") equal to the Restructuring Fee plus 5% of the Aggregate Consideration (as defined in Schedule I of the Engagement Letter) above $100,000,000.

        ii.    Any Sale Tran action Fee shall be payable upon consummation of the applicable Sale Transaction.

    d.    <u>Financing Fee</u>: A fee, payable upon the consummation of a Financing (the "Financing Fee"), equal to the applicable percentages of gross proceeds as follows based on the security type issued in the Financing: (i) 2.0% of any senior secured debt financing, government financing, or "debtor-in-possession" financing, plus (ii) 4.0% of any junior secured or unsecured debt financing, plus (iii) 6.0% of any equity, equity-linked or equity-stapled or similarly bundled equity financing; *provided, however*, Portage Point will not be entitled to a Financing Fee for any Financing provided to the Company by Kinderhook Industries, LLC and its respective affiliates; provided. further, Portage Point only will be entitled to a Financing Fee for that portion of any Financing provided to the Company by Twin Brook Capital Partners, LLC and its respective affiliates that includes new money proceeds and/or commitments.

    e.    For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above; provided, however, Portage Point will not be paid both a Restructuring Fee and a Sale Transaction Fee.

11.    Subject to the Court's approval, Portage Point intends to apply for payment of compensation for professional services rendered and reimbursement of expenses. Such applications shall be pursuant to section 327 of the Bankruptcy Code for the Restructuring Advisory Services and section 328 of the Bankruptcy Code for the Investment Banking Services.

12.    To the best of my knowledge, information, or belief, insofar as I have been able to obtain after reasonable inquiry, no promises have been received by Portage Point nor any employee thereof as to payment or compensation in connection with these chapter 11 cases other than in

10347023.v4

accordance with the provisions of the Bankruptcy Code.  Except for internal agreements among the employees and independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

13.    In connection with these cases, the Debtors paid a classic retainer to Portage Point of $100,000 on November 1, 2022. In addition, in the 90 days prior to the Petition Date, Portage Point received payments totaling $995,071 in the aggregate for services performed for the Debtor consisting of $200,000 in Monthly Fees and $795,071 in Hourly Fees. Finally, in the 90 days prior to the petition date, Portage Point received payments totaling $10,324 in the aggregate as reimbursement for Portage Point's expenses billed through the Petition Date. As of the Petition Date, Portage Point holds an unapplied residual retainer of $99,184. At all times during the 90 day period prior to the Petition Date Portage Point maintained a positive balance of its retainer.  As stated in the Engagement Letter, the classic retainer is the property of Portage Point, is not held in a separate account, and was earned upon receipt, and, consequently, Portage Point placed the amounts into its general cash account.

14.    As of the Petition Date, the Debtors did not owe Portage Point any amounts for services rendered before the Petition Date. Although certain expenses and fees may have been incurred, but not yet applied to Portage Point's retainers, Portage Point's total retainers always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

10347023.v4

## No Duplication Of Services

15.        Portage Point shall use its reasonable best efforts to ensure its services will complement, and not duplicate, the services rendered by any other professionals retained in these chapter 11 cases.

## Connections

16.        In connection with Portage Point's proposed retention by the Debtors, Portage Point undertook to determine whether it had any conflicts or other material relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. In connection with this inquiry, Portage Point obtained from the Debtors and their professionals the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest").  A categorized summary of the Potential Parties-in-Interest is provided on **Schedule 1**[5] attached hereto.  I have not received from the Debtors, and do not currently know of, any other persons or entities that are parties in interest or professionals in these chapter 11 cases, other than the Potential Parties in Interest identified in **Schedule 1** hereto.

17.        To the best of my knowledge, information, and belief, Portage Point has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases.

18.        As part of this inquiry, Portage Point compared the names of each of the Potential Parties in Interest to the names in its master electronic database of its current and recent clients,

---

[5]    Portage Point's inclusion of parties in the following Schedules is solely to illustrate Portage Point's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

10347023.v4

vendors and referral sources. Through this process, Portage Point determined that it currently has and/or formerly had a relationship with certain of the Potential Parties in Interest (and/or their affiliates or entities that Portage Point believes to be affiliates, as the case may be) on matters wholly unrelated to the Debtors or these chapter 11 cases.  To the best of my knowledge, information and belief, and based on such internal review process, **<u>Schedule 2</u>** lists Potential Parties in Interest (and/or their apparent affiliates or entities that Portage Point believes to be affiliates, as the case may be) with which Portage Point currently has or formerly had a client or similar relationship on matters wholly unrelated to the Debtors or these chapter 11 cases, including but not limited to engagements to provide financial advisory services and entities with whom Portage Point has engaged in or is currently engaged in an ordinary course business development dialogue.

19.     As part of Portage Point's diverse business, Portage Point appears or may appear as an advisor or an investment banker in numerous cases, proceedings, or transactions involving attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and Potential Parties in Interest or be claimants and Potential Parties in Interest in these cases. Further, Portage Point (including its professionals through their prior employment) has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these cases.  In addition, Portage Point (including its professionals through their prior employment) has in the past and will likely in the future be working with, against or for other professionals involved in these cases in matters unrelated to these cases.  In addition, Portage Point has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against or has mutual clients with other professionals involved in these chapter 11 cases. In

10

particular, Portage Point may also be engaged to represent, or may have been engaged to represent in the past, committees or groups of lenders, creditors, or equity owners in matters unrelated to the Debtors or these chapter 11 cases, some of which are included on the Potential Parties in Interest list.

20.     Other than as referenced herein or set forth on **Schedule 2**, I am unaware of any existing or prior client or similar relationships that Portage Point has had with the Potential Parties in Interest.  Portage Point has not been engaged to assist any entity or person other than the Debtors on matters relating to, or in connection with, these cases.  If the Court approves the proposed employment of Portage Point by the Debtors, Portage Point will not accept any engagement or perform any services in relation to these cases for any entity or person other than the Debtors. It is possible that Portage Point may now or in the future be engaged by one or more of the Potential Parties in Interest in matters unrelated to the Debtors or these cases without my knowledge.  In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties in Interest and with whom Portage Point may now or in the future have engagements or maintain material commercial or other professional relationships.  To the extent that Portage Point discovers any, or enters into any new material commercial or other professional relationship with Potential Parties in Interest, it will use reasonable efforts to supplement this disclosure to the Court.

21.     Portage Point and certain of its members and employees may have in the past represented, may currently represent, and likely in the future will represent, one or more Potential Parties in Interest in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.

11

22.     Certain employees of Portage Point may have mortgages, deposits, consumer loans, investment accounts, brokerage accounts, or other banking, brokerage or customer relationships with the Debtors or institutions that are creditors, equity holders or other Potential Parties in Interest in these chapter 11 cases.  I do not believe that these relationships create a conflict of interest regarding the Debtors or their chapter 11 cases.

23.     Certain employees of Portage Point were formerly employed by other investment banking, financial services or other professional services firms that may be among, or represent other parties that are among, the creditors, equity holders, or other Potential Parties in Interest in these cases in connection with matters unrelated to the Debtors and the cases.  I do not believe that these matters create a conflict of interest regarding the Debtors or the cases.

24.     Based on the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, (a) Portage Point is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Portage Point has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

25.     To the extent that any new material facts or relationships bearing on the matters described herein during the period of Portage Point's retention are discovered or arise, Portage Point will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

10347023.v4

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

_/s/ Steven W. Bremer_

Dated:    January 23,2023
          New York, New York

**Schedule 1**

**Potential Parties in Interest**

**Debtors**
Performance Powersports Group Investor, LLC
Performance Powersports Group Holdings, Inc.
Performance Powersports Group Purchaser, Inc.
Performance Powersports Group, Inc.

**Sponsor Related Entities**
Kinderhook Industries LLC
Kinderhook Capital Fund VI, L.P.
Kinderhook Capital Fund VI-B, L.P.

**Other Equity Owner**
Twin Brook Equity Holdings, LLC

**Vendors/Litigation Parties**
Chongqing Huansong Industries (Group) Co., Ltd.
Chongqing Huansong Science and Technology Industrial Co., Ltd.
Vietnam New Century Industrial Company Limited
Hisun Motors Corp. U.S.A.
Martin Manufacturing, Inc.
Christopher Hunter
Dina Miller
Freddie Yonko

**Lenders**
Twin Brook Capital Partners, LLC (agent)
Twin Brook Capital Funding V, LLC
Twin Brook Capital Funding VI, LLC
Twin Brook Capital Funding VI SPV, LLC
Twin Brook Capital Funding XII CMSPV, LLC
Twin Brook Capital Funding XII DSPV, LLC
Twin Brook Capital Funding XVII, LLC
Twin Brook Capital Funding XVII MSPV, LLC
Twin Brook Capital Funding XVII GSPV, LLC
Twin Brook Capital Funding XVIII, LLC
Twin Brook Capital Funding XIX, LLC
Twin Brook Capital Funding XII, LLC
Twin Brook Capital Funding XVII CSPV, LLC
C.M Life Insurance Company
Massachusetts Mutual Life Ins. Company
Twin Brook Capital Funding XXIV, LLC
Twin Brook Capital Funding XX, LLC
Twin Brook Capital Funding XXI MSPV, LLC

14

Twin Brook Capital Funding XXII, LLC
Twin Brook Capital Funding XXIV WSPV, LLC
Twin Brook Capital Funding XXVII WSPV, LLC
Twin Brook Capital Funding XXVII, LLC

**Secured Parties**
UMB Bank, N.A.
Steelcase Financial Services Inc.
Pawnee Leasing Corporation
Financial Pacific Leasing, Inc.
Marquette Business Credit LLC

**Banks**
JP Morgan Chase
Arizona Financial Credit Union

**Interest Holders**
Rich Godfrey & Associates, Inc.
Coleman Powersports

**Former Officers**
Richard Godfrey
Chris Hunte
Rick Canas
Ron Lackey
Todd Gentry
Paul Gift

**Officers & Directors**
Ken Vanden Berg
Peter S. Kravitz
Kyle Dawson
Paul Ciffelli
Jay Pearson
Christian Michalik
Richard Godfrey

**Top 30 Unsecured Creditors**
Hisun China
Hisun Motors Corp, USA
Tao Motor China
Pacific Coast Cartage Inc.
Northern Group
The Coleman Company
Nam Dinh Vu Port Joint Stock Company (Gema)
Jinhua Funrun Vehicle Technology Co., Ltd
Tractor Supply Company

10347023.v4

Norton Lilly International
Brotherhood Transports
Mediterranean Shipping Company (MSC)
UFP Chandler, LLC
Fresh Content Society
Rich Pacific Usa, Inc.
Velvet Hammer Branding, LLC
Snell & Wilmer
Cherry Bekaert LLP
Patsy Goss
Summit Outdoors, LLC
Senfeng Laser USA Inc
Rpm Motorsports Of Texas / Ron Massoletti
Joe's Lawn And Garden
Family Farm & Home
Rg Small Engine
Sundance GS LLC - Parts
Starr Lawn & Garden
Cosco Shipping Lines
Wan Hai Lines Ltd.
WTP Service

**Insurers**
Federal Insurance Company
Admiral Insurance Company
HDI Specialty Insurance Company
Arch Insurance Company
Lockton Companies LLC
Chubb
Southwest General Insurance LLC

**Utilities**
SRP (Salt River Project)
City of Tempe
Five9 Inc.
Century Link
Cirro Energy
City of Mesquite
Atmos Energy
Cox Communications
Verizon

**Taxing and Regulatory Authorities**
U.S. Department of the Treasury
Internal Revenue Service
Minnesota Department of Revenue
California Department of Revenue

16

Alabama Department of Revenue
Delaware Division of Revenue
State of Arizona
Specialty Vehicle Institute of America
United States Environmental Protection Agency

**Interested Parties / Customers**
Hisun Motors Corp, USA
Hisun China
China Kaxa Industrial Co., Ltd.
Kandi America
Kandi USA, Inc.
Federal Express
FedEx Freight
Tao Motor China
Sam's Club
Tractor Supply Co.
Walmart
The Home Depot
Lowes
Ace Hardware Corporation
Empire Logistics, LLC
Southwest Mobile Storage, Inc.
Mower Genius
Air 7 Seas Transport Logistics
Professor Speed's Secret Lab
Red Barn Cycles
S & S Powersports
Scooter Station
Vinpac Container Line Inc.
UFP Chandler, LLC
Corieocity Coatings LLC
World Exchange, Inc.
BP Metals
Bryant Wiedeman Racing
Sundance GS LLC
Mediterranean Shipping Company
Pacific Coast Cartage Inc.
Turf Pros
Aries Global Logistics
Esko Inc.
Plant City Powersports
Kuehne + Nagel Inc.
YES Logistics Corp.
1UP Cargo
Bunnell's Parts & Acc.

10347023.v4

The Bike Shop
Brett's Cycle Barn
South K Outdoor Power
Family Farm & Home
Ringgold Power Sport
Buchalla Small Engine
Tom Mill Motorsports
Jasper Saw  Mower
Olive Creek ATV
Sartin's Power House
Lesslie Powersports
Lewis Small Engines
J & K Small Engine Repair
Nate's Lawn Shop
Egy's Mower & Chainsaw Service
Amazon
Theisen's Home, Farm and Auto
Camping World
Dick's Sporting Goods
Peavey Industries LP
Mills Fleet Farm
Mattoon Rural King
Runnings
Dunham's Athleisure Corporation
Prime Now LLC
Sportsman's Warehouse
Murdoch's Ranch & Home Supply
Princess Auto Corporate
Round-the-World Logistics
Fresh Content Society
Brotherhood Transports
COSCO Shipping Lines
NGL Transportation
OEC Shipping Los Angeles Inc.
Gorilla Industrial Coatings
Allied Gases & Welding Supplies, Inc.
AMW Packaging Supply
Theory House LLC

**<u>Contract Counterparties</u>**
Alliance Funding Group
BankDirect Capital Finance
CWI, Inc.
Camping World
Jordan Outdoor Enterprises, Ltd.
Oracle America, Inc.

Coleman Powersports
Dunham's Athleisure Corporation
Crossdocks, Storage & Logistics LLC
Northern Group

**Landlords**
Yerf-Dog Geneva 444 LLC
McClintock University Investment Partners LLC
Metro East Valley Holdings Phase Three, LLC
DG Mesquite Airport Property Owner, L.P.

**Professionals**
Portage Point Partners, LLC
Omni Agent Solutions
Kirkland & Ellis LLP
Klehr Harrison Harvey Branzburg LLP
Hudson Capital Advisors
Winston & Strawn LLP
Pachulski Stang Ziehl & Jones

**Other**
Business Development Services, Inc.
   dba Cox Commercial Office Cleaning Services
The Sheehan Firm, P.C.

**US Trustee, Judges, and court contacts for the
District of Delaware (and key staff members)**

Attrix, Lauren
Buchbinder, David
Casey, Linda
Chan, Ashley M.
Cook, Denis
Dice, Holly
Dorsey, John T.
Dortch, Shakima L.
Fox, Timothy J., Jr.
Giordano, Diane
Goldblatt, Craig T.
Green, Christine
Hackman, Benjamin
Heck, Jeffrey
Jones, Nyanquoi
Leamy, Jane
McCollum, Hannah M.
McMahon, Joseph
O'Boyle, Una

19

O'Malley, James R.
Owens, Karen B.
Panacio, Michael
Richenderfer, Linda
Sarkessian, Juliet
Schepacarter, Richard
Selber Silverstein, Laurie
Serrano, Edith A.
Shannon, Brendan L.
Sierra, Rosa
Silverstein, Laurie Selber
Sontchi, Christopher S.
Starr, Karen
Stickles, J. Kate
Tinker, T. Patrick
Villagrana, David
Vinson, Ramona
Walrath, Mary F.
West, Michael
Wynn, Dion

10347023.v4

## Schedule 2

| Disclosures of Portage Point | |
|---|---|
| **Potential Interested Party** | **Relationship to Debtors** |
| Twin Brook Capital Partners, LLC | Lenders |
| Kirkland & Ellis LLP | Professionals |
| Pachulski Stang Ziehl & Jones LLP | Professionals |
| Winston & Strawn LLP | Professionals |

1