**EXHIBIT B**

**Redlined Order**

10369297.v1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | ) Case No. 23-10047 (LSS) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Related Docket No.** ~~——~~ **65** |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
TRIPLE P RTS, LLC AS RESTRUCTURING ADVISOR AND TRIPLE P
SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order") authorizing the Debtors to retain and employ Triple P RTS, LLC ("Triple P RTS") as their restructuring advisor and Triple P Securities, LLC ("Triple P Securities," together with Triple P RTS, "Portage Point") as investment banker for the Debtors effective as of the Petition Date, pursuant to sections 327(a), 328(a), and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and the Court having reviewed the Application, the Declaration of Steven W. Bremer, a managing director at Portage Point Partners, LLC (the "Bremer Declaration"); and the Court having found that the Court has

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

10369296.v2

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Debtors having confirmed their consent to entry of final orders or judgment by this Court pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Bremer Declaration that (a) Portage Point does not hold or represent an interest adverse to the Debtors' estates and (b) Portage Point is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is granted to the extent set forth herein.

2. The Debtors are authorized to retain and employ Triple P RTS, LLC ("Triple P RTS") as their restructuring advisor and Triple P Securities, LLC ("Triple P Securities, together with Triple P RTS, "Portage Point") as their investment banker, effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**.

10369296.v2

3. Portage Point is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.

4. Portage Point shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330, and 331 of the Bankruptcy Code for the Restructuring Advisory services and section 328 of the Bankruptcy Code for the Investment Banking services and shall also comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

5. Notwithstanding the preceding paragraph, with respect to Portage Point's Restructuring Advisory services, the compensation and fees and expenses to be paid to Portage Point shall be subject to review under section 330 of the Bankruptcy Code and with respect to Portage Point's Investment Banking services, the compensation and fees and expenses to be paid to Portage Point, including without limitation the Monthly Fee, Sale Transaction Fee, the Restructuring Fee and the Financing Fee, shall be reviewable under section 328 of the Bankruptcy Code; provided, however, that with respect to the Investment Banking services, the U.S. Trustee shall retain the right to object to the compensation and fees and expenses paid to Portage Point pursuant to the Application and the Engagement Letter, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided further, that the reasonableness standard for this purpose will be an evaluation by comparing the fees payable to Triple P Securities in these chapter 11 Cases to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and will not be evaluated primarily on the basis of time expended or the length of these chapter 11 Cases.

6. Portage Point is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of Portage Point's counsel, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and applicable orders of this Court and the fee guidelines promulgated by the Office of the United States Trustee. Notwithstanding the foregoing, Portage Point shall only be reimbursed for any legal fees or costs incurred in connection with these chapter 11 cases to the extent permitted under applicable law and the decisions of this Court.

7. Portage Point shall file monthly fees statements with time entries and requests for reimbursement that comply with Bankruptcy Rule 2016-2 and the Local Rules, except as expressly set forth in this Order, pursuant to the deadlines and other procedures specified for monthly fee statements under any interim compensation procedures approved by this Court (the "Interim Compensation Procedures"), provided, however, Debtors are authorized to pay the Monthly Fee to Portage Point each month in accordance with the terms of the Engagement Letter without a prior fee statement or application.

8. Notwithstanding the preceding paragraph, Portage Point shall be paid eighty percent (80%) of any Sale Transaction Fee, Restructuring Fee or Financing Fee (each a "Transaction Fee") upon the expiration of the Notice Period (defined below) which cannot begin until the earlier of (a) the consummation of the applicable Restructuring, Sale Transaction or Financing (each a "Transaction") and (b) the consummation of a chapter 11 plan, in each case, subject to approval by this Court pursuant to (and the remaining 20% payable in accordance with) Portage Point's interim and final fee applications, as applicable. The "Notice Period" shall

mean ten (10) days after Portage Point has filed a fee statement in respect of any Transaction Fee with the Court and served a copy of the fee statement on the parties required by the Interim Compensation Procedures in the manner set forth in the Interim Compensation Procedures, except for the U.S. Trustee, who shall receive such receive the fee statement via email and hand delivery.  Portage Point shall be entitled to file and serve a fee statement in respect of a Transaction immediately upon the consummation of such Transaction or the consummation of a chapter 11 plan.  For the avoidance of doubt, any portion of a Transaction Fee subject to an objection filed with the Court shall not be payable to Portage Point until such objection has been resolved.  Notwithstanding the foregoing, promptly following the earlier of the (i) the consummation of a Transaction and (ii) the consummation of a chapter 11 plan, the full amount of the applicable Transaction Fee shall be deposited into an escrow account maintained by the Debtor's counsel solely for the benefit of Portage Point, until such Transaction Fee(s) is approved for payment to Portage Point pursuant hereto or a further order of this Court.  Notwithstanding anything to the contrary in this Order, the Application, the Engagement Letter or the Bremer Declaration, Portage Point shall file interim and final fee applications on notice to parties in interest in these chapter 11 cases in accordance with the Interim Compensation Procedures.  All fees paid to Portage Point are subject to disgorgement unless and until such fees are approved by the Court on a final basis.

9. Nothing in Paragraph 24 of the Engagement Letter shall be deemed a prohibition of the Debtors' right to object to any fee application filed by Portage Point.

10. No agreement or understanding exists between Portage Point and any other person, other than as permitted by Bankruptcy Code section 504, to share compensation received for services rendered in connection with these cases, nor shall Portage Point share or agree to

share compensation received for services rendered in connection with these cases with any other person other than as permitted by Bankruptcy Code section 504.

11.    6. In light of the Investment Banking services to be provided by Portage Point and the compensation structure in the Engagement Letter, solely with respect to the Investment Banking services, Portage Point and its professionals shall be excused from: (i) the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a) and Local Rule 2016-2; and (ii) conforming with a schedule of hourly rates for its professionals. Instead, Portage Point shall maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those Investment Banking services rendered for the Debtors, and the individuals who provided those services, and will present such records together with its fee applications filed with this Court. For the Restructuring Advisory services, Portage Point shall maintain time records in accordance with Bankruptcy Rule 2016(a) and Local Rule 2016-2.

12.    7. Notwithstanding anything in the Engagement Letter to the contrary, Portage Point shall apply any remaining amounts of its prepetition retainers as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Portage Point.  Portage Point is authorized without further order of the Court to reserve and apply amounts from the prepetition retainers that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Portage Point for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

13.    8. Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Bremer Declaration, to the extent that Portage Point uses the services of independent contractors or subcontractors (collectively, the "Contractors") or affiliates in these

chapter 11 cases, Portage Point shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Portage Point pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors and affiliates are subject to the same conflicts checks as required for Portage Point; and (iv) file with this Court such disclosures required by Bankruptcy Rule 2014(a) with respect to such Contractors and affiliates.

14.    ~~9.~~    The Debtors shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Letter, subject during the pendency of these cases to the following:

- a.    Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, Portage Point for any claims arising from, related to, or in connection with the services to be provided by Portage Point as specified in the Application, but not for any claim arising from, related to, or in connection with Portage Point's post-petition performance of any other services (other than those in connection with the engagement), unless such post-petition services and indemnification therefor are approved by this Court;
- b.    The Debtors shall have no obligation to indemnify Portage Point, or provide contribution or reimbursement to Portage Point, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Portage Point's bad faith, gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Portage Point's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Portage Point is not entitled to receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and
- c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Portage Point believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Portage Point must file an application therefor in this Court, and the Debtors may not pay any such amounts to Portage Point before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period during which the Court

shall have jurisdiction over any request for fees and expenses by Portage Point for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify Portage Point.

15. Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Bremer Declaration, any limitation of the liability of Portage Point during the pendency of these chapter 11 bankruptcy cases shall be unenforceable.

16. Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Bremer Declaration, Portage Point shall have whatever fiduciary duty is imposed on it by applicable law, if any.

17. None of the fees payable to Portage Point under the Engagement Letter or Application shall constitute a "bonus" or fee enhancement under applicable law.

18. ~~10.~~ Portage Point shall use its reasonable best efforts to avoid duplication of services provided to any of the Debtors' other retained professionals in these chapter 11 cases.

19. ~~11.~~ The Debtors and Portage Point are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

20. ~~12.~~ Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

21. ~~13.~~ To the extent the Application, the Bremer Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

22. ~~14.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23. ~~15.~~ Notwithstanding anything to the contrary in the Application or the Engagement Letter, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

10369296.v2