# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.,*[1] | Case No. 23-10047 (LSS) |
| Debtors. | (Jointly Administered) |
|  | Related to Docket No. 17, 155 |

## SECOND NOTICE OF REVISED PROPOSED BID PROCEDURES ORDER

**PLEASE TAKE NOTICE** that on January 16, 2023, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of: (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry into the Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17] (the "Sale and Bidding Procedures Motion").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the Sale and Bidding Procedures Motion is currently scheduled to commence on February 23, 2023 at 10:00 a.m. (ET) Prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** the Debtors have received objections to the Sale and Bidding Procedures Motion from the Office of the United States Trustee (the "UST") and the Official Committee of Unsecured Creditors (the "Committee"). These objections are still outstanding and the Debtors intend to present argument at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that on February 21, 2023, the Debtors filed the Notice of Revised Proposed Bid Procedures Order [Docket No. 155] (the "First Revised Notice") with the Court. The First Revised Notice inadvertently omitted the Bidding Procedures that were intended to be attached as **Schedule 1**.

**PLEASE TAKE FURTHER NOTICE** that a copy of the order including **Schedule 1** (the "Revised Bid Procedures Order") is attached hereto as **Exhibit A**. No other changes have been made from the version filed with the First Revised Notice other than the inclusion of **Schedule 1**.

**PLEASE TAKE FURTHER NOTICE** that a redlined copy of the Revised Bid Procedures Order marked to show changes from the version filed with the Sale and Bidding Procedures Motion is attached hereto as **Exhibit B**.

Dated:  February 21, 2023
Wilmington, Delaware

/s/ Michael W. Yurkewicz

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email:  dpacitti@klehr.com
         myurkewicz@klehr.com
         sveghte@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:  (215) 569-3007
Facsimile:  (215) 568-6603
Email:  mbranzburg@klehr.com

*Counsel for the Debtors and Debtors in Possession*

**EXHIBIT A**

**Revised Bid Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP | ) Case No. 23-10047 (LSS) |
| HOLDINGS, INC., *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 17** |

**ORDER (I) APPROVING BIDDING PROCEDURES**
**IN CONNECTION WITH THE SALE OF SUBSTANTIALLY**
**ALL OF THE DEBTORS' ASSETS, (II) APPROVING BID PROTECTIONS TO**
**STALKING HORSE BIDDER, (III) APPROVING THE FORM AND MANNER OF**
**NOTICE THEREOF, (IV) SCHEDULING AN AUCTION AND SALE HEARING,**
**(V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF**
**CONTRACTS, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(the "Debtors") for the entry of an order (this "Order"), (a) approving the Bidding Procedures,

attached hereto as **Schedule 1**, in connection with the sale of substantially all of the Debtors'

assets, (b) approving the Bid Protections to the Stalking Horse Bidder; (c) approving the form and

manner of notice thereof, (d) scheduling an auction and sale hearing, (e) approving procedures for

assumption and assignment of Contracts, (f) approving the sale of the Debtors' assets free and

clear, and (g) granting related relief; all as more fully set forth in the Motion; and upon the First

Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal
tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance
Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and
Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East
University Drive, Tempe, Arizona 85281.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures,
Stalking Horse Purchase Agreement, or the Motion, as applicable.

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided, except as set forth herein; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**THE COURT HEREBY FINDS THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    As reflected in the Affidavit of Service filed at Docket No. 76, notice of the Motion has been given to: (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Richard Schepacarter; (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors on a consolidated basis; (c) counsel to the Stalking Horse Bidder; (d) counsel to the DIP Lender; (e) counsel to the Prepetition Secured Parties; (f) any other parties with

10332982.v4

known secured claims against the Debtors or their counsel, if known; (g) all parties that have executed a Confidentiality Agreement pursuant to the Bidding Procedures; (h) the United States Attorney's Offices for the District of Delaware and the District of Arizona; (h) the Internal Revenue Service; (i) all state and local taxing authorities with an interest in the Purchased Assets; (k) the Attorneys General for the State of Delaware and the State of Arizona; (l) the Securities and Exchange Commission; (m) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (n) all other parties known or reasonably believed to have asserted an interest in the Assets; (o) the Assumed Contract Counterparties; (n) the Debtors' insurance carriers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.

C.    Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

D.    The bases for the relief requested in the Motion are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.    The Debtors have articulated good and sufficient reasons for this Court to (a) approve the Bidding Procedures in connection with the sale of some or substantially all of the Debtors' assets, (b) approve the Bid Protections as provided in the Bidding Procedures, the

10332982.v4

Stalking Horse Purchase Agreement, and this Order, (c) approve the form and manner of notice thereof, (d) schedule an auction and sale hearing, (e) approve procedures for the assumption and assignment of Contracts, including notice of proposed cure amounts, (f) authorize, subject to entry of the Sale Order, entry into the Stalking Horse Purchase Agreement, and (g) grant related relief.

F.     The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

G.     The Bidding Procedures attached hereto as **Schedule 1** and the Stalking Horse Purchase Agreement attached hereto as **Exhibit A** were negotiated by the parties at arms' length and in good faith.

H.     The Bidding Procedures attached hereto as **Schedule 1** and the Stalking Horse Purchase Agreement attached hereto as **Exhibit A** are fair, reasonable, appropriate, and are designed to maximize creditor recoveries from the consummation of the Transaction and enable the Debtors to comply with the Sale Milestones (as defined in the Financing Order[3], and as subsequently modified, supplemented, and amended) and are consistent with the Debtors' exercise of their respective fiduciary duties under applicable law.

I.     The Debtors have demonstrated a compelling and sound business justification of the payment of the Break-Up Fee and Expense Reimbursement (together, the "Bid Protections") under the circumstances set forth in the Stalking Horse Purchase Agreement.  The Bid Protections (i) are payable as provided in the Bid Procedures, Section 7.2 of the Stalking Horse Purchase

---

[3]     As used herein, the "Financing Order" means, as amended, supplemented, or otherwise modified from time to time, that certain postpetition financing order entered at Docket No. [●].

10332982.v4

Agreement, and this Order; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Transaction is subject to better and higher offers for the Purchased Assets; and (iv) was necessary to induce the Stalking Horse Bidder to pursue the Transaction and to be bound by the Stalking Horse Purchase Agreement.

J.    The Bid Protections were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Stalking Horse Purchase Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.  The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the Purchased Assets (as defined in Stalking Horse Purchase Agreement) will be received.  Accordingly, the Bidding Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

K.    The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby:  (a) approve the Bidding Procedures in connection with the sale of some or substantially all of the Debtors' assets, (b) approve the Bid Protections to the Stalking Horse Bidder, (c) approve the form and manner of notice thereof as described in paragraph 16 herein (including the Hearing Notice attached hereto as **Schedule 2**), (d) schedule an auction and sale hearing, (e) approve procedures for the assumption and assignment of Contracts, (f) approve the sale of the Debtors' assets free and clear, and (g) grant related relief.  Such

compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

L.      The Stalking Horse Purchase Agreement attached as **Exhibit A** hereto is fair and reasonable and provides a benefit to the Debtors' estates and stakeholders.

M.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interest of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

N.      The Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.      **Bid Deadline**.  **March 7, 2023, at 5:00 p.m.** (prevailing Eastern Time), is the deadline by which all Bids for a Transaction (as well as the Deposit and other documentation required under the Bidding Procedures for a Bid to be considered a Qualified Bid) must be submitted in accordance with the terms of the Bidding Procedures.  The Debtors may extend such deadline in accordance with the Bidding Procedures without any further notice to or motion in this Court.

4.      **Auction**.  No later than **March 9, 2023**, an Auction, if any, will be held at the offices of Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801.  In the event the Debtors determine an Auction shall be held, the

10332982.v4

Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one business day before such Auction (email shall suffice), and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on their restructuring website, https://omniagentsolutions.com/PerformancePowersports (the "Restructuring Website").

5.      **Bid Protections**.  The Bid Protections are approved and the Debtors are authorized to incur and pay the Bid Protections to the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement.   In the event of a termination of the Stalking Horse Purchase Agreement pursuant to Section 8.1(f) or Section 8.1(j) therein, the Sellers shall pay the Break-Up Fee to Buyer within (3) Business Days following the consummation of an Alternative Transaction (or any portion thereof).

6.      In accordance with the terms of the Stalking Horse Purchase Agreement, the Stalking Horse Bidder shall have an allowed superpriority administrative claim in the Debtors' chapter 11 cases in an amount equal to the Break-Up Fee and Expense Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

7.      The Debtors are authorized to enter into the Stalking Horse Purchase Agreement with the Stalking Horse Bidder.

8.      The Debtors are authorized to pay all amounts owing to the Stalking Horse Bidder on account of the Break-Up Fee and Expense Reimbursement within three (3) Business Days following such amounts becoming owed.

9.      All requests for amounts under the Expense Reimbursement must be documented; *provided* that such documentation or invoices shall not be required to contain time entries or be governed or subject to the U.S. Trustee's Fee Guidelines.

10332982.v4

10.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

11.     **Transaction Objections**.  Objections to the Transaction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be *actually received* by no later than **March 10, 2023 at 4:00 p.m.** (prevailing Eastern Time) on (i) the Debtors, Attn: Ken Vanden Berg, CFO, 1775 East University Drive, Tempe, Arizona 85281; (ii) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801, Attn:  Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 Attn:   Richard Schepacarter (Richard.Schepacarter@usdoj.gov); (iv) proposed counsel to the official committee of unsecured creditors (the "Committee"),  Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com); and (v)  counsel for the DIP Lender, Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian Schartz, P.C. (brian.schartz@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com), and (vi) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

## II.    Auction, Bidding Procedures, and Related Relief.

12.    The Bidding Procedures, attached hereto as **Schedule 1**, are incorporated herein and are hereby approved in their entirety.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Transaction.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and the Debtors and their professionals shall direct and preside over the Auction.

13.    Pursuant to the Financing Order, the Stalking Horse Bidder shall be entitled to credit bid claims to the extent permitted by section 363(k) of the Bankruptcy Code.

14.    Subject to the terms in the Bidding Procedures, the (i) First Lien Agent is deemed a Qualified Bidder; (ii) the Stalking Horse Bidder is deemed a Qualified Bidder, (iii) the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid, and (iv) each of the Stalking Horse Bidder and the First Lien Agent is authorized to submit any Overbids during the Auction, in each instance without further qualification required of the Stalking Horse Bidder or First Lien Agent, as applicable.

15.    If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Purchased Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing

16.    **Noticing Procedures**.  The noticing procedures as set forth in this Order and the Motion, including the Hearing Notice attached hereto as **Schedule 2**, are hereby approved.  Within five business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Hearing Notice by first-class mail upon the parties that received notice of the Motion.  On or about the same date, the Debtors will publish the Hearing Notice on the Debtors'

Restructuring Website and will also publish a notice substantially similar to the Hearing Notice in the USA Today or similar newspaper. Service of the Hearing Notice and publication thereof in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

17.    **Cancellation of Auction**. If the Debtors do not receive any Bids which they deem to be a Qualified Bid prior to the Bid Deadline other than the Stalking Horse Bid, the Debtors may designate the Stalking Horse Bidder as the Successful Bidder without holding an Auction, in which case the Debtors shall (a) notify the Court in writing that (i) the Auction is cancelled and (ii) such Stalking Horse Bid is the Winning Bid, and (b) if applicable, seek authority at the Sale Hearing to consummate the Transaction. The Debtors may also cancel the Auction if, with the consent of the DIP Lender, they determine to implement the Transaction through a chapter 11 plan of reorganization in advance of the Bid Deadline.

18.    **Sale Hearing**. The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom #2, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on **March 16, 2023, at [___:___ _.m]** (prevailing Eastern Time) or such other date and time that the Court may later direct; *provided*, that the Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures without further notice to creditors or parties in interest other than by filing a notice on the Court's docket.

## III.    Approval of the Assumption and Assignment Procedures.

19.    No later than [February 24], 2023, the Debtors shall file a cure notice (the "Cure Notice") and service such notice (a) by overnight delivery service upon the applicable contract counterparties (the "Contract Counterparties") at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon (i) counsel to the agent of the Prepetition First Lien Lenders (ii) Counsel to the DIP

10332982.v4

Lender, (iii) the Office of the U.S. Trustee for the District of Delaware, and (iv) counsel to the Committee (the "Notice Parties").  The Cure Notice shall notify the Contract Counterparties that the applicable executory contracts and unexpired leases are subject to potential assumption and assignment and of the Debtors' proposed cure amounts relating to such executory contracts and unexpired leases.

20.    Following the Bid Deadline, upon request by any contract counterparty of the Debtors, the Debtors will send such party evidence that any Qualified Bidder that included such contract or lease in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code on a confidential basis for all nonpublic information.  No later than two business days after the conclusion of the Auction, or as soon as reasonably practicable, the Debtors will serve a notice of successful bidder (the "Successful Bidder Notice") or notice of cancellation, as applicable, (a) by overnight delivery service upon the Contract Counterparties at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties.

21.    Parties objecting to a proposed assumption and assignment (other than with respect to cure amounts) and/or to the proposed form of adequate assurance of future performance must file a written objection with the Court by **March 10, 2023**, at 4:00 p.m. Eastern Standard Time, and serve such objection on the Notice Parties.  Parties objecting to a proposed cure amount shall file a written objection with the Court by fourteen (14) days after serving the Cure Notice and serve such objection on the Notice Parties.

22.    If an objection to the Debtors' proposed cure amounts is timely filed and not withdrawn or resolved by the Sale Hearing (or Confirmation Hearing, as applicable), such cure

objections will not be heard at the Sale Hearing (or Confirmation Hearing, as applicable) but will be heard at a subsequent hearing later set by the Court.  The Debtors shall proceed with the assumption and assignment of a particular contract at the Sale Hearing (or Confirmation Hearing, as applicable), and the pendency of a dispute relating to cure amounts shall not prevent or delay the assumption and assignment of a contract.  Any dispute regarding the cure amounts will either be resolved consensually, if possible, or, if the parties are unable to resolve, at a later date as set by the Court.  To the extent an objection relates solely to a disputed cure amount, the Court may approve the assumption and assignment subject to (a) the Contract Counterparty's right to be heard at a later hearing date on the cure and (b) the below requirements regarding payment of the cure amount.  The Debtors shall file and serve a notice for a hearing for the Court to consider the unresolved cure objection(s) at the next scheduled omnibus hearing which shall be set fourteen (14) days after the Sale Hearing (or Confirmation Hearing, as applicable), subject to Court availability, unless the Debtors and the objecting parties agree to a different time and subject to the Court's schedule.  The Debtors reserve the right, in consultation with the Lender Parties, to reject, and not assume and assign, any contract depending on the ultimate resolution of any cure amount dispute; *provided, that*, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code.  Upon the effective date of the assumption and assignment of the contract (the "Assignment Date"), the Successful Bidder shall pay all undisputed cure amounts (excepting any undisputed amounts already paid) pending resolution of the dispute, and any disputed cure amounts shall be reserved pending the subsequent hearing to resolve same.  For the avoidance of doubt, if the Successful Bidder determines, in its sole discretion, that the cure dispute is too material, the Successful Bidder may delay the

12

assignment of such contract or unexpired lease until the resolution of the cure amount; *provided, that*, in such case, if any, the Successful Bidder shall be responsible for any and all costs arising under such contract or unexpired lease during the pendency of the dispute.

23.    If no objection to the assumption of any contract is timely filed, each contract shall be assumed as of the Assignment Date set forth in the applicable Successful Bidder Notice or such other date as the Debtors and the Contract Counterparty agree and the proposed cure amount shall be binding on all Contract Counterparties and the Contract Counterparties will be forever barred from asserting any other claims related to the contract against the Debtors.

24.    The inclusion of a contract on the Successful Bidder Notice shall not:  (a) obligate the Debtors to assume or assign any contracts listed thereon or (b) constitute any admission or agreement of the Debtors that such contract is an executory contract.  Only those contracts that are included on a schedule of assumed and acquired contracts attached to a final asset purchase agreement will be assumed and assigned.

**IV.    Miscellaneous.**

25.    Notwithstanding anything to the contrary contained in this Order or otherwise: (a) the rights of the Loan Parties (as defined in the Bidding Procedures) to consent to the sale of any portion of their collateral, including, without limitation, any Assets, on terms and conditions acceptable to the Loan Parties, are hereby expressly reserved and not modified, waived, or impaired in any way by this Order; and (b) all cash proceeds generated from the sale of any of the Debtors' assets shall be paid to the Loan Parties upon the closing of such sale for permanent application against the obligations owing by the Debtors to the Loan Parties, in accordance with the terms and conditions of the Financing Order.  Nothing in this Order or the Bidding Procedures shall amend, modify, or impair any provision of the Financing Order or the rights of Debtors or the Loan Parties thereunder.

10332982.v4

26.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

27.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

28.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), and such notice satisfies the applicable Local Rules.

29.     To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

30.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  This Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

10332982.v4

<u>**Exhibit A**</u>

**Stalking Horse Purchase Agreement**

### <u>Schedule 1</u>

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PERFORMANCE POWERSPORTS GROUP | ) | Case No. 23-10047 (LSS) |
| HOLDINGS, INC, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No.  17** |

---

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**

On January 16, 2023, Performance Powersports Group Holdings, Inc., and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  On January 16, 2023, the Debtors filed the *Motion of Debtors For Entry of: (I) an Order (A) Approving Bid Procedures in Connection With the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry Into The Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17] (the "Bidding Procedures and Sale Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Purchased Assets") pursuant to section 363 of the Bankruptcy Code under the Bidding Procedures and Sale Motion, chapter 11 plan (the "Plan"), or otherwise (any such purchase, a "Transaction").[2]

On January 16, 2023, in the exercise of their good faith reasonable business judgment, the Debtors entered into an asset purchase agreement (as amended on February [●], 2023, the "Stalking Horse Purchase Agreement") with CPS USA Acquisition, LLC (the "Stalking Horse Bidder"), pursuant to which, among other things, the Stalking Horse Bidder proposed to purchase, acquire, and/or

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]   A sale transaction may be structured as an asset sale, equity sale, plan of reorganization, or otherwise, as determined by the Debtors in consultation with the Successful Bidder.

take assignment and delivery of the Purchased Assets[3] in exchange for consideration composed of (i) a credit bid of the outstanding obligations under the DIP Agreement pursuant to section 363(k) of the Bankruptcy Code, (ii) cash in an amount equal to $500,000, (iii) the assumption of the outstanding obligations under the Prepetition First Lien Credit Agreement; (iv) the assumption of the Assumed Liabilities (including all Determined Cure Costs with respect to any Assigned Contract), and (v) cash in an amount equal to the Wind-Down Amount (the "Stalking Horse Bid"); *provided* that the Wind-Down Amount shall only become payable as a portion of the Purchase Price in the event that (i) Sellers have insufficient cash on hand at Closing to fund the Wind-Down Amount from such cash on hand and (ii) the Sellers have otherwise complied in all respects with the Financing Orders, in which case the Buyer shall only be required to fund the amount necessary to bring the Sellers' total cash on hand at Closing to equal to the amount of the Wind-Down Amount. In connection with the Stalking Horse Purchase Agreement, the Debtors propose, except as otherwise set forth in the Stalking Horse Purchase Agreement, to provide to the Stalking Horse Bidder a (i) a breakup fee equal to $2.2 million (the "Break-Up Fee"), and (ii) reimbursement of up to $500,000 of reasonable and documented expenses in connection with the Stalking Horse Bid (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections"). The Bid Protections shall be payable in accordance with the terms and conditions of the Stalking Horse Purchase Agreement. In the event of a termination of the Stalking Horse Purchase Agreement by Buyer pursuant to Section 8.1(f) or pursuant to Section 8.1(j) therein, Sellers shall pay the Break-Up Fee to Buyer within three (3) Business Days following the consummation of an Alternative Transaction (or any portion thereof).

On [•], 2023, the Court entered an order approving the Bidding Procedures [Docket No. [•]] (the "Bidding Procedures Order"). These Bidding Procedures (the "Bidding Procedures") set forth the process by which the Debtors are authorized to conduct an auction for the sale (the "Sale") of the Purchased Assets (the "Auction") to determine the Successful Bidder.

Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures.

## **Important Dates**

- **[February 24], 2023:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.

- **March 7, 2023, at 4:00 p.m.:** Deadline to submit bids.

- **March 9, 2023, at 10:00 a.m.:** Auction to be conducted.

---

[3]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bidding and Sale Motion or Stalking Horse Purchase Agreement, as applicable.

- **March 10, 2023, at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction).

- **March 10, 2023, at 4:00 p.m.:** Cure Objection Deadline.

- **[March 13], 2023, at 4:00 p.m.:** Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.

- **March 13, 2023, at 4:00 p.m.:** Residual Objection Deadline.

- **March 16, 2023 at 10:30 a.m.:** Date and time of Sale Hearing.

## **Bidding Process**

### I.    **Contact Parties**

1.    The Debtors, in consultation with their proposed restructuring advisor and investment banker, Portage Point Partners, LLC ("Portage Point") and other advisors, developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction.  The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties").  As part of a pre-petition marketing process, Portage Point has already reached out to the Contact Parties to explore their interest in pursuing a Transaction. Portage Point will continue to reach out to the Contact Parties, as well as any other interested party or potential bidder (each, an "Interested Party"), to gauge their interest in acquiring the Purchased Assets.  The Interested Parties may include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction.

2.    The Debtors may distribute (to the extent not already distributed) to each Contact Party and Interested Party an "Information Package" consisting of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures and Sale Motion; (ii) a form confidentiality agreement (a "Confidentiality Agreement"); and (iii) such other materials as appropriate under the circumstances.

### II.    **Participation Requirements**

3.    To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, an Interested Party must, on or before January 13, 2023 at 5:00 p.m. (prevailing Eastern Time), deliver to each of: (i) proposed counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); and (ii) proposed restructuring advisor and investment banker to the Debtors, Portage Point, 1330 Avenue of the Americas, 22nd Floor, New York, New York 10019 Attn:  Steven Bremer (sbremer@pppllc.com) and Geoffrey Schmitz (gschmitz@pppllc.com), the following documents (the "Preliminary Bid Documents"):

a.    an executed Confidentiality Agreement on terms reasonably acceptable to the Debtors, to the extent not already executed;

b.    identification of the Interested Party and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Transaction(s); and

c.    a statement and other factual support, including evidence of sufficient financial capacity to close a proposed Transaction, demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing some or all of the Purchased Assets, provided that such information shall not be required to the extent the Interested Party's interest and wherewithal are known to the Debtors' investment banker.

Only those Interested Parties who, in the Debtors' determination, have submitted acceptable Preliminary Bid Documents (each, a "Potential Bidder") may submit bids. Each of the Stalking Horse Bidder and First Lien Agent (even if the First Lien Agent has not submitted a formal bid) will at all times be deemed to be a Potential Bidder. For the avoidance of doubt, these participation requirements do not prohibit Portage Point from distributing teaser and other promotional materials to potentially interested parties advising them of the opportunity to acquire some or all of the Purchased Assets, from engaging in discussions with such parties about the opportunity, or from providing non-confidential documents and information to such parties.

III.    Obtaining Due Diligence

Only Potential Bidders will be eligible to receive due diligence information concerning the Debtors and their assets. The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder, solely in its capacity as a Potential Bidder, prior to and after entry into the Stalking Horse Purchase Agreement; provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time. The due diligence period will end on the Bid Deadline and, thereafter, the Debtors will have no obligation to furnish any diligence information.

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction. If the Debtors, after consultation with the Lender Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by the Debtors prior to such time shall be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

**Auction Process**

**I.    Bid Deadline**

A Potential Bidder that desires to make a proposal, solicitation, or offer (each, a "<u>Bid</u>") shall transmit such Bid via email (in pdf format) so as to be **actually received** on or before **March 7, 2023 at 5:00 p.m. (prevailing Eastern Time)** (as may be extended from time to time by the Debtors in their business judgment, the "<u>Bid Deadline</u>") by the Debtors' Representatives at the address listed below.

(a)    Portage Point Partners, LLP, 1330 Avenue of the Americas, 22nd Floor, Attn: Steven Bremer (sbremer@pppllc.com) and Geoffrey Schmitz (gschmitz@pppllc.com); and

(b)    Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com).

**II.    Bid Requirements**

Each Bid by a Potential Bidder must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>").

(a)    <u>Purpose</u>.  The Bid must clearly identify the following:  (i) the particular Purchased Assets, or the portion thereof identified with reasonable specificity, to be acquired; and (ii) the liabilities and obligations to be assumed, including any debt to be assumed.

(b)    <u>Total Consideration</u>.  Each Bid must clearly identify the form and amount of the total consideration to be provided to the Debtors in cash and non-cash components to be paid, including assumed liabilities (the "<u>Bid Value</u>").

(c)    <u>Deposit</u>.  Each Bid (other than the Stalking Horse Bid and any credit bid by the First Lien Agent (as defined in the DIP Order)) must be accompanied by a cash deposit of $2,000,000 to be held in an non-interest-bearing escrow account to be identified and established by the Debtors (the "<u>Deposit</u>"); *provided* that the Stalking Horse Bidder will not be required to provide a Deposit with respect to the Stalking Horse Purchase Agreement.

(d)    <u>Minimum Bid</u>.  The Bid Value (the "<u>Minimum Bid</u>") proposed by each Bid (or sum of Bids for different assets) must be equal to, or exceed, the sum of (i) $500,000; plus (ii) cash consideration in an amount sufficient to provide for the repayment in full of (x) all outstanding obligations under the Prepetition First Lien Credit Facility (as defined in the Financing Order) and (y) all amounts outstanding under the DIP Agreement; plus (iii) cash sufficient to fund the Wind-Down Amount; plus (iv) cash or assumption of those Assumed Liabilities in the Stalking Horse Purchase Agreement that the Stalking Horse Bidder has agreed to pay or assume (including all Cure Costs with respect to any Assigned Contract); plus (v) cash consideration

in an amount sufficient to provide for the payment of the Bid Protections to the Stalking Horse Bidder; and plus (vi) the minimum overbid amount of $500,000; *provided*, *however*, that in determining the Bid Value, the Debtors will not be limited to evaluating the dollar amount of a Bid, but may also consider factors including, the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative and prepetition claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse Purchase Agreement, and other factors affecting the speed, certainty and value of the proposed transactions.  For the avoidance of doubt, each Bid must be on terms no less favorable than the terms of the Stalking Horse Purchase Agreement.

(e)     Marked Agreement.  Each Bid must include a signed asset purchase agreement, together with all exhibits and schedules thereto, the form of which will be provided to any Potential Bidder before the Bid Deadline, along with a redline version of such agreement relative to the Stalking Horse Purchase Agreement, pursuant to which the Qualified Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").

(f)     Tax Structure; Structure.  The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if the Debtors, under the Bid, will incur any incremental tax liabilities.  The Bid must also identify the structure proposed for undertaking the Transaction, including the specific assets of the Debtors being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

(g)     Timeline to Close.  The Bid must provide a commitment to close no later than the deadline for the Stalking Horse Bidder to close in the Stalking Horse Purchase Agreement.

(h)     Sources of Financing; Adequate Assurance.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the proposed Transaction(s) set forth in its Bid with cash on hand, each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Transaction at the purchase price (including sufficient financial or other information to establish adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code to the non-Debtor counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Potential Bidder in connection with the proposed transaction) satisfactory to the Debtors in their reasonable discretion, after consultation with the Lender Parties, with appropriate contact information for such financing sources.

(i)     No Financing Approval or Diligence Outs.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of

specified representations and warranties or the satisfaction at the closing of specified conditions.

(j)    <u>Authorization</u>.  Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(k)    <u>Disclaimer of Fees</u>.  Each Bid must disclaim any right to receive a fee analogous to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(l)    <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder, including if such Qualified Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.  Nothing herein shall preclude multiple Qualified Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

(m)    <u>Consent to Jurisdiction</u>.  The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Transaction documents and the closing, as applicable.

(n)    <u>No Collusion</u>.  The Bidder must acknowledge in writing (i) that it has not engaged in any collusion with respect to any Bids or the Transaction, specifying that it did not agree with any Qualified Bidders, Potential Bidders, or other interested third parties to control price or exert undue influence process; and (ii) agree not to engage in any such collusion or undue influence with respect to any Bids, the Auction, the Transaction, or the sale process.

(o)    <u>Good Faith Offer</u>.  The Bid must constitute a good faith, *bona fide* offer to effectuate the Transaction.

(p)    <u>As-Is, Where-Is</u>.  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law,

or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Documents.

By submitting its Bid, each Potential Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets as reflected in such Bid**. As soon as reasonably practicable following the designation of a Bid as a Qualified Bid in accordance with these Bidding Procedures, the Debtors shall notify each Qualified Bidder of such designation.

### III.    Designation of Qualified Bidders

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors' reasonable determination after consultation with the Lender Parties, (i) has timely submitted a Bid that satisfies each of the requirements listed above in the section entitled "Bid Requirements" and (ii) is able to consummate the proposed transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid"); *provided* that the Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Within two (2) Business Days after a Potential Bidder delivers all of the documents described above, the Debtors will determine in their reasonable discretion, and in consultation with the Lender Parties, whether such Potential Bidder is a Qualified Bidder, and notify the Potential Bidder of such determination.

For the avoidance of doubt, (i) the First Lien Agent shall be deemed a Qualified Bidder; *provided* that the Qualified Bid of the First Lien Agent must meet the requisite Minimum Bid requirements (unless the Stalking Horse Purchase Agreement has been terminated); *provided, further*, that the First Lien Agent shall not be required to serve as a Back-Up Bidder (defined below) except to the extent provided herein, (ii) the Stalking Horse Bidder is a Qualified Bidder, (iii) the Stalking Horse Purchase Agreement is a Qualified Bid; *provided* that the Stalking Horse Bidder shall not be required to serve as a Back-Up Bidder (defined below) except to the extent provided herein or in the Stalking Horse Purchase Agreement, and (iv) each of the Stalking Horse Bidder and the First Lien Agent is authorized to submit any Overbids (as defined below) during the Auction, in each instance without further qualification required of the Stalking Horse Bidder or First Lien Agent, as applicable.

If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are obtained by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse Purchase Agreement will be the Successful Bid, and the Debtors will seek final Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder as contemplated by the Stalking Horse Purchase Agreement.

IV.    **The Auction**

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Purchase Agreement, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Purchased Assets.  The Auction will commence on **March 9, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the Wilmington offices of Klehr Harrison Harvey Branzburg LLP, or on such other date and/or at such other location as determined by the Debtors and the Stalking Horse Bidder (provided that the DIP Lender, as defined in the Stalking Horse Purchase Agreement, the First Lien Agent, and the Stalking Horse Bidder's rights under the Financing Orders and the Stalking Horse Purchase Agreement shall remain unaffected).

No later than one (1) day prior to the commencement of the Auction, the Debtors will (i) notify: (a) all Qualified Bidders, (b) counsel to the First Lien Agent (as defined below), (c) the Lender Parties, (d) the Office of the U.S. Trustee for the District of Delaware, and (e) Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com), proposed counsel to the official committee of unsecured creditors, in writing of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Lender Parties (the "Baseline Bid") and (ii) provide copies of the documents supporting the Baseline Bid to all Qualified Bidders.  The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid, shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things:  (a) the type and amount of assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the projected percentage recovery to general unsecured creditors pursuant to such Qualified Bid, (f) whether administrative, priority, and secured claims will be paid in full; (g) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (h) the cure amounts to be paid; and (i) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed, including the assumption of collective bargaining agreements (collectively, the "Bid Assessment Criteria").

If there is an Auction, it will be conducted in accordance with the following procedures:

(a)    The Debtors and their professionals will direct and preside over the Auction.  At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders.  The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, the Successful Bid, and the Back-Up Bid.

(b)    Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction.  Only the authorized representatives of each of the

Qualified Bidders (including each of the Stalking Horse Bidder and the First Lien Agent), the Debtors, and the Lender Parties (including their counsel) will be permitted to attend the Auction. In addition, pursuant to Local Rule 6004-1, all creditors of the Debtors may attend the Auction, *provided* that they send an email to the Debtors' Representatives indicating that they intend to attend the Auction no less than two (2) Business Days prior to the Auction.

(c)     During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $250,000 in cash (each, an "Overbid"); *provided, however,* that the (i) Stalking Horse Bidder may satisfy the minimum bid increment requirement by credit bidding at least $250,000 of outstanding obligations under the DIP Credit Agreement that do not already form part of the purchase price under the Stalking Horse Purchase Agreement, if any; and (ii) the First Lien Agent may satisfy the minimum bid increment requirement by credit bidding up to the amount of outstanding obligations under the Prepetition First Lien Credit Agreement as of the Auction, if any. The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bid Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Subject to the requirement (other than with regard to the Stalking Horse Bidder) that each Overbid include at least $250,000 in cash more than the cash component of the Baseline Bid or prevailing Overbid, additional consideration in excess of the amount set forth in the Baseline Bid or the prevailing Overbid may include cash and/or other consideration acceptable to the Debtors in accordance with these procedures. To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse Purchase Agreement, the Debtors will provide notice to each participant of the value ascribed by the Debtors to any such added, deleted, or modified provision or provisions, with such value being determined by the Debtors in their reasonable discretion after consultation with the Lender Parties.

(d)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). To the extent not previously provided (which will be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

(e)     Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

(f)    The Debtors, in their reasonable business judgment and after consultation with the Lender Parties, may reject, at any time before entry of an order of the Court approving a Qualified Bid, any bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

The Debtors reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

The Debtors may not modify or announce additional procedures for conducting the Auction, or otherwise modify these Bidding Procedures, without the prior reasonable consent of the Stalking Horse Bidder, the DIP Lender, and the First Lien Agent.

## V.    Selection of Successful Bid

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in the exercise of their reasonable business judgment, in consultation with the Lender Parties, to be the highest or otherwise best bid submitted by a Qualified Bidder during the Auction for the Purchased Assets (the "Successful Bid") and the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"), at which point the Auction will be closed; *provided* that the Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then prevailing highest Bid.  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.  The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder."  The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder"; *provided*, *however*, that if the Debtors indicate that they have identified a Bid of the Stalking Horse Bidder as the next highest or otherwise best bid after the Successful Bid, and a Bid of another party (other than the Successful Bid) remains open, either the Stalking Horse Bidder or the First Lien Agent may, at their option, decline to serve as the Back-Up Bidder in favor of the next highest or otherwise best bid if one exists.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until consummation of the Successful Bid with the Successful Bidder.  If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## VI.    Sale Hearing

The hearing to consider approval of the sale transaction in relation to the Successful Bid (or confirmation of the Plan if the Successful Bid contemplates consummation of the Transaction pursuant to a chapter 11 plan) (the "Hearing") will be held before the Court no later than **March 16, 2023** (or such other date as the Court determines) and otherwise in accordance with any scheduling order entered by the Court; *provided* that if no Auction is held the Debtors reserve the right to schedule the Hearing before such time and in accordance with the timeline set forth in the Stalking Horse Purchase Agreement.

The Hearing may be adjourned or rescheduled, in consultation with the Lender Parties and the Stalking Horse Bidder (provided that the DIP Lender, the First Lien Agent, and the Stalking Horse Bidder's rights under the Financing Orders and Stalking Horse Purchase Agreement shall remain unaffected), by the Debtors to a time and date consistent with the Court's calendar, as set forth in notice on the docket of these chapter 11 cases, a notice of agenda, or stated orally at the Confirmation / Sale Hearing.

## VII.    Stalking Horse Purchase Agreement

In the event that the Sellers consummate a transaction with a Qualified Bidder that is not the Stalking Horse Bidder, or the Stalking Horse Purchase Agreement is terminated for reasons as set forth in Section 7.1 of the Stalking Horse Purchase Agreement, the Sellers will pay the Stalking Horse Bidder as compensation for the Stalking Horse Bidder's efforts in connection with the negotiation and execution of the Stalking Horse Purchase Agreement, and the transactions contemplated thereby, an amount equal to the Bid Protections pursuant to the terms and conditions of the Stalking Horse Purchase Agreement.

## VIII.    Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more non-interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Back-Up Bidder) on the date that is three business days after the Auction, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

## IX.    Lender Parties

The term "Lender Parties" shall mean (i) Twin Brook Capital Partners, LLC, solely in its capacity as first lien agent (the First Lien Agent") and (ii) Tankas Funding VI, LLC, solely in its

capacity as postpetition financing lender (the "<u>DIP Lender</u>"); *provided*, *however*, that the DIP Lender shall be a Lender Party with respect to any Bid for (i) materially less than all of the Purchased Assets or (ii) assets other than the "Purchased Assets" as defined in any current Bid of the Stalking Horse Bidder; *provided*, *further*, that without limiting the foregoing proviso, at and after any time that the Stalking Horse Bidder is no longer bidding on any of the Purchased Assets, the DIP Lender shall be a Lender Party for all purposes. The Debtors shall consult with the Lender Parties as required by these Bidding Procedures. Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Lender Parties to consult with the Debtors.

## <u>Fiduciary Duties</u>

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors or their management or boards of directors from exercising their respective fiduciary duties under or otherwise complying with applicable law.

## <u>Reservation of Rights</u>

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, after consultation with the Lender Parties, to alter or terminate these Bid Procedures, to alter or modify any Auction rules or procedures, to waive terms and conditions set forth herein with respect to all Potential Bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefor, in each case in any manner that will best promote the goals of the bidding process, or impose, at or prior to the conclusion of the Auction, additional customary terms and conditions on the sale of the Purchased Assets; *provided* that the Debtors shall only be permitted to modify or amend the terms of the Stalking Horse Purchase Agreement in accordance with the applicable Stalking Horse Purchase Agreement.

*     *     *     *

## **Schedule 2**

**Form of Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PERFORMANCE POWERSPORTS GROUP | ) | Case No. 23-10047 (LSS) |
| HOLDINGS, INC., *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. _____** |

## NOTICE OF STALKING HORSE BID, BIDDING
## PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on January 16, 2023 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on January 16, 2023, the Debtors filed a motion [Docket No. 17] (the "Bidding Procedures Motion")[2] with the Court seeking entry of an order, (a) approving the Bidding Procedures in connection with the sale of substantially all of the Debtors' assets, as attached to the Bidding Procedures Order as Schedule 1, (b) approving the Bid Protections to the Stalking Horse Bidder, (c) the form and manner of this notice, the Bid Deadline, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Schedule 2, (d) scheduling an auction and sale hearing to consider approval of the proposed Transaction, (e) approving procedures for the assumption and assignment of Contracts, (f) approving the sale of the Debtors' assets free and clear, and (g) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [      ], 2023, the Court entered an order [Docket No.    ] (the "Bidding Procedures Order") approving, among other things, the Stalking Horse Purchase Agreement and the Bidding Procedures, which establish the key dates and times related to the Transaction and the Auction, if necessary, to determine the Successful Bidder. All Interested Parties should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or Bidding Procedures Motion, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding

## Contact Information for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in acting as a Bidder must comply strictly with the Bidding Procedures. The Debtors, in accordance with the Bidding Procedures, will consider only Qualified Bids.

**Any Interested Party should contact, as soon as practicable:**

Portage Point Partners, LLC
1300 Avenue of the Americas, 22nd Floor
New York, New York 10019
Attn: Steven Bremer (sbremer@pppllc.com)
Attn: Geoffrey Schmitz (gschmitz@pppllc.com)

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' restructuring website, https://omniagentsolutions.com/PerformancePowersports.

## Important Dates and Deadlines[4]

1. **Bid Deadline**. The deadline to submit a Qualified Bid is **March 7, 2023 at 5:00 p.m.** (prevailing Eastern Time).

2. **Auction**. If the Debtors receive at least one additional Qualified Bid which includes terms that are higher or otherwise better than those contemplated by the Stalking Horse Purchase Agreement prior to the Bid Deadline, then, subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction to determine the Successful Bidder. Only (a) Qualified Bidders and each of their respective legal and financial advisors and (b) the Lender Parties shall be entitled to attend the Auction and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders are eligible to bid at the Auction. The Auction, if one is held, will commence on **March 9, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Klehr Harrison Harvey Branzburg LLP, at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801, or such later date and time as selected by the Debtors, who shall notify all Qualified Bidders.

---

Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

3. **Time for Debtors to Provide Notice of Results of Auction**.  As soon as reasonably practicable after the close of the Auction, the Debtors shall (a) file the Notice of Auction Results with the Court (which notice shall identify the Successful Bidder, the amount of the Successful Bid, the Backup Bid, and the amount of the Backup Bid(s) and (b) cause the Notice of Auction Results to be published on the Debtors' restructuring website, https://omniagentsolutions.com/PerformancePowersports.

4. **Transaction Objections Deadline**.  The deadline to file an objection with the Court to the Transaction (if any) (collectively, the "<u>Transaction Objections</u>") is **March 10, 2023 at 4:00 p.m.** (prevailing Eastern Time) (the "<u>Objection Deadline</u>").

5. **Hearing**.  A hearing to consider the proposed Transaction will be held before the Court no later than **March 16, 2023 at [___:___] [_].m.]**  (prevailing Eastern Time)**,** or such other date as determined by the Court, at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

## <u>Filing Objections</u>

Transaction Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be ***actually received*** by no later than **March 10, 2023 at 4:00 p.m.** (prevailing Eastern Time) on (i) the Debtors, Attn: Ken Vanden Berg, CFO, 1775 East University Drive, Tempe, Arizona 85281; (ii) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 Attn:  Richard Schepacarter (Richard.Schepacarter@usdoj.gov); (iv) counsel for the Prepetition First Lien Agent, Winston & Strawn, LLP, 200 Park Avenue, New York, NY 10017 Attn: Gregory M. Gartland (ggartland@winston.com) and Emma Fleming (efleming@winston.com) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street Wilmington, DE 19801 Attn: Andrew Magaziner (amagaziner@ycst.com); (v) proposed counsel to the official committee of unsecured creditors, Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com); and (vi) counsel for the DIP Lender, Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian Schartz, P.C. (<u>brian.schartz@kirkland.com</u>) and Allyson B. Smith (allyson.smith@kirkland.com), and (vii) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Objection Notice Parties</u>").

## <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION</u>

**Except as otherwise ordered by the Court, any party or entity who fails to timely make an objection to the Transaction on or before the Objection Deadline in accordance with the Bidding Procedures Order and this notice shall be forever barred from asserting**

**any objection to the Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests**.

Dated: _____, 2023
Wilmington, Delaware

/s/ DRAFT

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 North Market Street
Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              sveghte@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Counsel to the Debtors and Debtors in Possession*

**EXHIBIT B**

**Redlined Bid Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PERFORMANCE POWERSPORTS GROUP | ) | Case No. ~~23-[           ]~~23-10047 |
| HOLDINGS, INC., *et al.*,[1] | ) | (~~     ~~LSS) |
| | ) | |
| Debtors. | ) | (Joint~~ly~~           Administe~~rationed~~ |
| | ) | ~~Requested~~) |
| | ) | |
| | ) | **Re: Docket No. ~~     ~~17** |

**ORDER (I) APPROVING BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS, (II) APPROVING BID PROTECTIONS TO
STALKING HORSE BIDDER, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) SCHEDULING AN AUCTION AND SALE HEARING,
(V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CONTRACTS, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), (a) approving the Bidding Procedures, attached hereto as **Schedule 1**, in connection with the sale of substantially all of the Debtors' assets, (b) approving the Bid Protections to the Stalking Horse Bidder; (c) approving the form and manner of notice thereof, (d) scheduling an auction and sale hearing, (e) approving procedures for assumption and assignment of Contracts, (f) approving the sale of the Debtors' assets free and clear, and (g) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures, Stalking Horse Purchase Agreement, or the Motion, as applicable.

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided, except as set forth herein; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**THE COURT HEREBY FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      As reflected in the Affidavit of Service filed at Docket No. 76, notice of the Motion has been given to: (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Richard Schepacarter; (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors on a consolidated basis; (c) counsel to the

2

Stalking Horse Bidder; (d) counsel to the DIP Lender; (e) counsel to the Prepetition Secured Parties; (f) any other parties with known secured claims against the Debtors or their counsel, if known; (g) all parties that have executed a Confidentiality Agreement pursuant to the Bidding Procedures; (h) the United States Attorney's Offices for the District of Delaware and the District of Arizona; (h) the Internal Revenue Service; (i) all state and local taxing authorities with an interest in the Purchased Assets; (k) the Attorneys General for the State of Delaware and the State of Arizona; (l) the Securities and Exchange Commission; (m) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (n) all other parties known or reasonably believed to have asserted an interest in the Assets; (o) the Assumed Contract Counterparties; (n) the Debtors' insurance carriers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002].

C.       Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

D.       The bases for the relief requested in the Motion are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3

E.      The Debtors have articulated good and sufficient reasons for this Court to: (a) approve the Bidding Procedures in connection with the sale of some or substantially all of the Debtors' assets, (b) approve the Bid Protections as provided in the Bidding Procedures, the Stalking Horse Purchase Agreement, and this Order:, (c) approve the form and manner of notice thereof, (d) schedule an auction and sale hearing, (e) approve procedures for the assumption and assignment of Contracts, including notice of proposed cure amounts, (f) authorize, subject to entry of the Sale Order, entry into the Stalking Horse Purchase Agreement, and (g) grant related relief.

F.      The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

G.      The Bidding Procedures attached hereto as **Schedule 1** and the Stalking Horse Purchase Agreement attached hereto as **Exhibit A** to the Motion were negotiated by the parties at arms' length and in good faith.

H.      The Bidding Procedures attached hereto as **Schedule 1** and the Stalking Horse Purchase Agreement attached to the Motionhereto as **Exhibit A** are fair, reasonable, appropriate, and are designed to maximize creditor recoveries from the consummation of the Transaction and enable the Debtors to comply with the Sale Milestones (as defined in the Financing Order,3, and as subsequently modified, supplemented, and amended) and are consistent with the Debtors' exercise of their respective fiduciary duties under applicable law.

---

3    As used herein, the "Financing Order" means, as amended, supplemented, or otherwise modified from time to time, that certain postpetition financing order entered at Docket No. [_].

4

I.      The Debtors have demonstrated a compelling and sound business justification of the payment of the Break-Up Fee and Expense Reimbursement (together, the "Bid Protections") under the circumstances set forth in the Stalking Horse Purchase Agreement.    The Bid Protections (i) are payable as provided in the Bid Procedures, Section 7.2 of the Stalking Horse Purchase Agreement, and this Order; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Transaction is subject to better and higher offers for the Purchased Assets; and (iv) was necessary to induce the Stalking Horse Bidder to pursue the Transaction and to be bound by the Stalking Horse Purchase Agreement.

J.      The Bid Protections were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Stalking Horse Purchase Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.    The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the Purchased Assets (as defined in Stalking Horse Purchase Agreement) will be received.    Accordingly, the Bidding Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

K.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby:  (a) approve the Bidding Procedures in connection

10332982.v4

with the sale of some or substantially all of the Debtors' assets, (b) approve the Bid Protections to the Stalking Horse Bidder, (c) approve the form and manner of notice thereof as described in paragraph 16 herein (including the Hearing Notice attached hereto as **Schedule 2**), (d) schedule an auction and sale hearing, (e) approve procedures for the assumption and assignment of Contracts, (f) approve the sale of the Debtors' assets free and clear, and (g) grant related relief. Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

L.      The Stalking Horse Purchase Agreement attached as **Exhibit [•] to the MotionA hereto** is fair and reasonable and provides a benefit to the Debtors' estates and stakeholders.

M.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interest of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

N.      The Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.      **Bid Deadline**.  **[•]March 7**, **2023, at 5:00 p.m.** (prevailing Eastern Time), is the deadline by which all Bids for a Transaction (as well as the Deposit and other documentation

6

required under the Bidding Procedures for a Bid to be considered a Qualified Bid) must be submitted in accordance with the terms of the Bidding Procedures. The Debtors may extend such deadline in accordance with the Bidding Procedures without any further notice to or motion in this Court.

4. **Auction**. No later than [•]**March 9**, 2023, an Auction, if any, will be held at the offices of Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801. In the event the Debtors determine an Auction shall be held, the Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one business day before such Auction (email shall suffice), and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on their restructuring website, https://omniagentsolutions.com/PerformancePowersports (the "Restructuring Website").

5. **Bid Protections**. The Bid Protections are approved and the Debtors are authorized to incur and pay the Bid Protections to the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement. In the event of a termination of the Stalking Horse Purchase Agreement pursuant to Section 8.1(f) or Section 8.1(j) therein, the Sellers shall pay the Break-Up Fee to Buyer within (3) Business Days following the consummation of an Alternative Transaction (or any portion thereof).

6. In accordance with the terms of the Stalking Horse Purchase Agreement, the Stalking Horse Bidder shall have an allowed superpriority administrative claim in the Debtors' chapter 11 cases in an amount equal to the Break-Up Fee and Expense Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

7.     The Debtors are authorized to enter into the Stalking Horse Purchase Agreement with the Stalking Horse Bidder.

8.     The Debtors are authorized to pay all amounts owing to the Stalking Horse Bidder on account of the Break-Up Fee and Expense Reimbursement within three (3) Business Days following such amounts becoming owed.

9.     All requests for amounts under the Expense Reimbursement must be documented; *provided* that such documentation or invoices shall not be required to contain time entries or be governed or subject to the U.S. Trustee's Fee Guidelines.

10.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

11.     <u>Transaction Objections</u>.  Objections to the Transaction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be ***actually received*** by no later than [•]**March 10**, **2023 at** 5**4**:**00 p.m.** (prevailing Eastern Time) on (i) the Debtors, Attn: Ken Vanden Berg, CFO, 1775 East University Drive, Tempe, Arizona 85281; (ii) proposed counsel to the Debtors, (a) Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 Attn:  Richard Schepacarter (Richard.Schepacarter@usdoj.gov);  (iv) counsel to any

8

~~statutory committee appointed in these chapter 11 cases~~proposed counsel to the official committee of unsecured creditors (the "Committee"), Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com); and (v) counsel for the DIP Lender, Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian Schartz, P.C. (brian.schartz@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com), and (vi) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

**II.    Auction, Bidding Procedures, and Related Relief.**

12.    The Bidding Procedures, ~~substantially in the form~~ attached hereto as **<u>Schedule 1</u>**, are incorporated herein and are hereby approved in their entirety. The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and the Debtors and their professionals shall direct and preside over the Auction.

13.    Pursuant to the Financing Order, the Stalking Horse Bidder shall be entitled to credit bid claims to the extent permitted by section 363(k) of the Bankruptcy Code.

14.    Subject to the terms in the Bidding Procedures, the (i) First Lien Agent is deemed a Qualified Bidder; (ii) the Stalking Horse Bidder is deemed a Qualified Bidder, (iii) the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid, and (iv) each of the Stalking Horse Bidder and the First Lien Agent is authorized to submit any

9

Overbids during the Auction, in each instance without further qualification required of the Stalking Horse Bidder or First Lien Agent, as applicable.

15.    If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Purchased Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing

16.    **Noticing Procedures**.  The noticing procedures as set forth in this Order and the Motion, including the Hearing Notice attached hereto as **Schedule 2**, are hereby approved. Within five business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Hearing Notice by first-class mail upon the parties that received notice of the Motion.  On or about the same date, the Debtors will publish the Hearing Notice on the Debtors' Restructuring Website and will also publish a notice substantially similar to the Hearing Notice in the USA Today or similare newspaper.  Service of the Hearing Notice and publication thereof in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

17.    **Cancellation of Auction**.  If the Debtors do not receive any Bids which they deem to be a Qualified Bid prior to the Bid Deadline other than the Stalking Horse Bid, the Debtors may designate the Stalking Horse Bidder as the Successful Bidder without holding an Auction, in which case the Debtors shall (a) notify the Court in writing that (i) the Auction is cancelled and (ii) such Stalking Horse Bid is the Winning Bid, and (b) if applicable, seek authority at the Sale Hearing to consummate the Transaction.  The Debtors may also cancel the Auction if, with the consent of the DIP Lender, they determine to implement the Transaction through a chapter 11 plan of reorganization in advance of the Bid Deadline.

10332982.v4

18.    **Sale Hearing**.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom [    ]#2, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on [•]March 16, **2023, at [___:___ _.m]³** (prevailing Eastern Time) or such other date and time that the Court may later direct; *provided*, that the Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures without further notice to creditors or parties in interest other than by filing a notice on the Court's docket.

**III.    Approval of the Assumption and Assignment Procedures.**

19.    No later than [•February 24], 2023, the Debtors shall file a cure notice (the "Cure Notice") and service such notice (a) by overnight delivery service upon the applicable contract counterparties (the "Contract Counterparties") at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon (i) counsel to the agent of the Prepetition First Lien Lenders (ii) Counsel to the DIP Lender, (iii) the Office of the U.S. Trustee for the District of Delaware, and (iv) counsel to any statutorythe eCommittee appointed in these chapter 11 cases (the "Notice Parties").  The Cure Notice shall notify the Contract Counterparties that the applicable executory contracts and unexpired leases are subject to potential assumption and assignment and of the Debtors' proposed cure amounts relating to such executory contracts and unexpired leases.

20.    Following the Bid Deadline, upon request by any contract counterparty of the Debtors, the Debtors will send such party evidence that any Qualified Bidder that included such contract or lease in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code on a confidential basis for all nonpublic information.  No later than two

---

³    **[NTD**: Sale Hearing to be set no later than 60 days after the Petition Date, subject to Court availability.**]**

business days after the conclusion of the Auction, or as soon as reasonably practicable, the Debtors will serve a notice of successful bidder (the "Successful Bidder Notice") or notice of cancellation, as applicable, (a) by overnight delivery service upon the Contract Counterparties at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties.

21.    Parties objecting to a proposed assumption and assignment (other than with respect to cure amounts) and/or to the proposed form of adequate assurance of future performance must file a written objection with the Court by [•]**March 10, 2023**, at 54:00 p.m. Eastern Standard Time, and serve such objection on the Notice Parties.  Parties objecting to a proposed cure amount shall file a written objection with the Court by fourteen (14) days after serving the Cure Notice and serve such objection on the Notice Parties.

22.    If an objection to the Debtors' proposed cure amounts is timely filed and not withdrawn or resolved by the Sale Hearing (or Confirmation Hearing, as applicable), such cure objections will not be heard at the Sale Hearing (or Confirmation Hearing, as applicable) but will be heard at a subsequent hearing later set by the Court.  The Debtors shall proceed with the assumption and assignment of a particular contract at the Sale Hearing (or Confirmation Hearing, as applicable), and the pendency of a dispute relating to cure amounts shall not prevent or delay the assumption and assignment of a contract.  Any dispute regarding the cure amounts will either be resolved consensually, if possible, or, if the parties are unable to resolve, at a later date as set by the Court.  To the extent an objection relates solely to a disputed cure amount, the Court may approve the assumption and assignment subject to (a) the Contract Counterparty's right to be heard at a later hearing date on the cure and (b) the below requirements regarding payment of the cure amount.  The Debtors shall file and serve a notice for a hearing for the Court

12

to consider the unresolved cure objection(s) at the next scheduled omnibus hearing which shall be set fourteen (14) days after the Sale Hearing (or Confirmation Hearing, as applicable), subject to Court availability, unless the Debtors and the objecting parties agree to a different time and subject to the Court's schedule.  The Debtors reserve the right, in consultation with the Lender Parties, to reject, and not assume and assign, any contract depending on the ultimate resolution of any cure amount dispute; *provided, that*, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code.  Upon the effective date of the assumption and assignment of the contract (the "<u>Assignment Date</u>"), the Successful Bidder shall pay all undisputed cure amounts (excepting any undisputed amounts already paid) pending resolution of the dispute, and any disputed cure amounts shall be reserved pending the subsequent hearing to resolve same.  For the avoidance of doubt, if the Successful Bidder determines, in its sole discretion, that the cure dispute is too material, the Successful Bidder may delay the assignment of such contract or unexpired lease until the resolution of the cure amount; *provided, that*, in such case, if any, the Successful Bidder shall be responsible for any and all costs arising under such contract or unexpired lease during the pendency of the dispute.

23.    If no objection to the assumption of any contract is timely filed, each contract shall be assumed as of the Assignment Date set forth in the applicable Successful Bidder Notice or such other date as the Debtors and the Contract Counterparty agree and the proposed cure amount shall be binding on all Contract Counterparties and the Contract Counterparties will be forever barred from asserting any other claims related to the contract against the Debtors.

24.    The inclusion of a contract on the Successful Bidder Notice shall not:  (a) obligate

13

the Debtors to assume or assign any contracts listed thereon or (b) constitute any admission or agreement of the Debtors that such contract is an executory contract.  Only those contracts that are included on a schedule of assumed and acquired contracts attached to a final asset purchase agreement will be assumed and assigned.

**IV.    Miscellaneous.**

25.    Notwithstanding anything to the contrary contained in this Order or otherwise: (a) the rights of the Loan Parties (as defined in the Bidding Procedures) to consent to the sale of any portion of their collateral, including, without limitation, any Assets, on terms and conditions acceptable to the Loan Parties, are hereby expressly reserved and not modified, waived, or impaired in any way by this Order; and (b) all cash proceeds generated from the sale of any of the Debtors' assets shall be paid to the Loan Parties upon the closing of such sale for permanent application against the obligations owing by the Debtors to the Loan Parties, in accordance with the terms and conditions of the Financing Order.  Nothing in this Order or the Bidding Procedures shall amend, modify, or impair any provision of the Financing Order or the rights of Debtors or the Loan Parties thereunder.

26.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

27.    In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

28.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), and such notice satisfies the applicable Local Rules.

10332982.v4

29.     To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

30.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  This Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

10332982.v4

**Exhibit A**

**Stalking Horse Purchase Agreement**

**Schedule 1**

**Bidding Procedures**

*Privileged and Confidential / ~~Klehr 1.16.23 Comments to~~ K&E Draft ~~12.13~~20.2023 / Attorney Work Product*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP | ) Case No. ~~23-[          ]~~23-10047 |
| | ) (~~    LSS~~) |
| HOLDINGS, INC~~]~~, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Joint~~ly~~          Administer~~ation~~ed |
| | ) ~~Requested~~) |
| | ) |
| | ) **Re: Docket No. ~~    ~~17** |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**

On January ~~[•]~~16, 2023, Performance Powersports Group Holdings, Inc., and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  On January ~~[•]~~16, 2023, the Debtors filed the *Motion of Debtors For Entry of: (I) an Order (A) Approving Bid Procedures in Connection With the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry Into The Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. •17] (the "Bidding Procedures and Sale Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Purchased Assets") pursuant to section 363 of the Bankruptcy Code under the Bidding Procedures and Sale Motion, chapter 11 plan (the "Plan"), or otherwise (any such purchase, a "Transaction").[2]

On January ~~[•]~~16, 2023, in the exercise of their good faith reasonable business judgment, the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]    A sale transaction may be structured as an asset sale, equity sale, plan of reorganization, or otherwise, as determined by the Debtors in consultation with the Successful Bidder.

Debtors entered into an asset purchase agreement (as amended on February [  ], 2023, the "Stalking Horse Purchase Agreement") with CPS USA Acquisition, LLC (the "Stalking Horse Bidder"), pursuant to which, among other things, the Stalking Horse Bidder proposed to purchase, acquire, and/or take assignment and delivery of the Purchased Assets[3] in exchange for consideration composed of [(i) a credit bid of the outstanding obligations under the DIP Agreement pursuant to section 363(k) of the Bankruptcy Code, (ii) cash in an amount equal to $500,000, (iii) the assumption of the outstanding obligations under the Prepetition First Lien Credit Agreement; (iv) the assumption of the Assumed Liabilities (including all Determined Cure Costs with respect to any Assigned Contract), and (v) cash in an amount equal to the Wind-Down Amount (the "Stalking Horse Bid"); *provided* that the ~~Wind-Down~~Wind-Down Amount shall only become payable as a portion of the Purchase Price in the event that (i) Sellers have insufficient cash on hand at Closing to fund the Wind-Down Amount from such cash on hand and (ii) the Sellers have otherwise complied in all respects with the Financing Orders, in which case the Buyer shall only be required to fund the amount necessary to bring the Sellers' total cash on hand at Closing to equal to the amount of the Wind-Down Amount.  In connection with the Stalking Horse Purchase Agreement, the Debtors propose, except as otherwise set forth in the Stalking Horse Purchase Agreement, to provide to the Stalking Horse Bidder a (i) a breakup fee equal to $2.2 million (the "Break-Up Fee"), and (ii) reimbursement of up to $500,000 of reasonable and documented expenses in connection with the Stalking Horse Bid (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").  The Bid Protections shall be payable in accordance with the terms and conditions of the Stalking Horse Purchase Agreement.  In the event of a termination of the Stalking Horse Purchase Agreement by Buyer pursuant to Section 8.1(f) or pursuant to Section 8.1(j) therein, Sellers shall pay the Break-Up Fee to Buyer within three (3) Business Days following the consummation of an Alternative Transaction (or any portion thereof).

On [•], 2023, the Court entered an order approving the Bidding Procedures [Docket No. [•]] (the "Bidding Procedures Order").  These Bidding Procedures (the "Bidding Procedures") set forth the process by which the Debtors are authorized to conduct an auction for the sale (the "Sale") of the Purchased Assets (the "Auction") to determine the Successful Bidder.

Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures.

**Important Dates**

- [•February 24], 2023: Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.

- [•]March 7, 2023, at 4:00 p.m.: Deadline to submit bids.

---

[3]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bidding and Sale Motion or Stalking Horse Purchase Agreement, as applicable.

- **March 9, 2023, at 10:00 a.m.:** Auction to be conducted.

- [•]**March 10**, 2023, at 4:00 p.m.: Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction).

- [•]**March 10**, 2023, at 4:00 p.m.: Cure Objection Deadline.

- [•], 2023, at 10:00 a.m.: Auction to be conducted.

- [•**March 13**], 2023, at 4:00 p.m.: Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.

- [•]**March 13**, 2023, at 4:00 p.m.: Residual Objection Deadline.

- [•]**March 16**, 2023 at 10:30 a.m.: Date and time of Sale Hearing.

## Bidding Process

### I.    Contact Parties

1.    The Debtors, in consultation with their proposed restructuring advisor and investment banker, Portage Point Partners, LLC ("Portage Point") and other advisors, developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction.  The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties").  As part of a pre-petition marketing process, Portage Point has already reached out to the Contact Parties to explore their interest in pursuing a Transaction. Portage Point will continue to reach out to the Contact Parties, as well as any other interested party or potential bidder (each, an "Interested Party"), to gauge their interest in acquiring the Purchased Assets.  The Interested Parties may include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction.

2.    The Debtors may distribute (to the extent not already distributed) to each Contact Party and Interested Party an "Information Package" consisting of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures and Sale Motion; (ii) a form confidentiality agreement (a "Confidentiality Agreement"); and (iii) such other materials as appropriate under the circumstances.

### II.    Participation Requirements

3.    To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, an Interested Party must, on or before [•]January 13, 2023 at 5:00 p.m. (prevailing Eastern Time), deliver to each of:  (i) proposed counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP,

919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); and (ii) proposed restructuring advisor and investment banker to the Debtors, Portage Point, 1330 Avenue of the Americas, 22nd Floor, New York, New York 10019 Attn: Steven Bremer (sbremer@pppllc.com) and Geoffrey Schmitz (gschmitz@pppllc.com), the following documents (the "Preliminary Bid Documents"):

a.    an executed Confidentiality Agreement on terms reasonably acceptable to the Debtors, to the extent not already executed;

b.    identification of the Interested Party and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Transaction(s); and

c.    a statement and other factual support, including evidence of sufficient financial capacity to close a proposed Transaction, demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing some or all of the Purchased Assets, provided that such information shall not be required to the extent the Interested Party's interest and wherewithal are known to the Debtors' investment banker.

Only those Interested Parties who, in the Debtors' determination, have submitted acceptable Preliminary Bid Documents (each, a "Potential Bidder") may submit bids. Each of the Stalking Horse Bidder and First Lien Agent (even if the First Lien Agent has not submitted a formal bid) will at all times be deemed to be a Potential Bidder. For the avoidance of doubt, these participation requirements do not prohibit Portage Point from distributing teaser and other promotional materials to potentially interested parties advising them of the opportunity to acquire some or all of the Purchased Assets, from engaging in discussions with such parties about the opportunity, or from providing non-confidential documents and information to such parties.

### III.    Obtaining Due Diligence

Only Potential Bidders will be eligible to receive due diligence information concerning the Debtors and their assets.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder, solely in its capacity as a Potential Bidder, prior to and after entry into the Stalking Horse Purchase Agreement; provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time.  The due diligence period will end on the Bid Deadline and, thereafter, the Debtors will have no obligation to furnish any diligence information.

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.  If the Debtors, after consultation with the Lender Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by the Debtors prior to such time shall be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

### **Auction Process**

### I.    Bid Deadline

A Potential Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such Bid via email (in pdf format) so as to be **actually received** on or before [+]**March 7, 2023 at 5:00 p.m. (prevailing Eastern Time)** (as may be extended from time to time by the Debtors in their business judgment, the "Bid Deadline") by the Debtors' Representatives at the address listed below.

(a)    Portage Point Partners, LLP, 1330 Avenue of the Americas, 22nd Floor, Attn: Steven Bremer (sbremer@pppllc.com) and Geoffrey Schmitz (gschmitz@pppllc.com); and

(b)    Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com).

### II.    Bid Requirements

Each Bid by a Potential Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements").

(a)     (c) Purpose.  The Bid must clearly identify the following:  (i) the particular Purchased Assets, or the portion thereof identified with reasonable specificity, to be acquired; and (ii) the liabilities and obligations to be assumed, including any debt to be assumed.

(b)     (d) Total Consideration.  Each Bid must clearly identify the form and amount of the total consideration to be provided to the Debtors in cash and non-cash components to be paid, including assumed liabilities (the "Bid Value").

(c)     (e) Deposit.  Each Bid (other than the Stalking Horse Bid and any credit bid by the First Lien Agent (as defined in the DIP Order)) must be accompanied by a cash deposit of $2,000,000 to be held in an non-interest-bearing escrow account to be identified and established by the Debtors (the "Deposit"); *provided* that the Stalking Horse Bidder will not be required to provide a Deposit with respect to the Stalking Horse Purchase Agreement.

(d)     (f) Minimum Bid.  The Bid Value (the "Minimum Bid") proposed by each Bid (or sum of Bids for different assets) must be equal to, or exceed, the sum of (i) $500,000; plus (ii) cash consideration in an amount sufficient to provide for the repayment in full of (x) all outstanding obligations under the Prepetition First Lien Credit Facility (as defined in the Financing Order) and (y) all amounts outstanding under the DIP Agreement; plus (iii) cash sufficient to fund the Wind-Down Amount; plus (iv) cash or assumption of those Assumed Liabilities in the Stalking Horse Purchase Agreement that the Stalking Horse Bidder has agreed to pay or assume (including all Cure Costs with respect to any Assigned Contract); plus (v) cash consideration in an amount sufficient to provide for the payment of the Bid Protections to the Stalking Horse Bidder; and plus (vi) the minimum overbid amount of $500,000; *provided*, *however*, that in determining the Bid Value, the Debtors will not be limited to evaluating the dollar amount of a Bid, but may also consider factors including, the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative and prepetition claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse Purchase Agreement, and other factors affecting the speed, certainty and value of the proposed transactions.  For the avoidance of doubt, each Bid must be on terms no less favorable than the terms of the Stalking Horse Purchase Agreement.

(e)     (g) Marked Agreement.   Each Bid must include a signed asset purchase agreement, together with all exhibits and schedules thereto, the form of which will be provided to any Potential Bidder before the Bid Deadline, along with a redline version of such agreement relative to the Stalking Horse Purchase Agreement, pursuant to which the Qualified Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").

(f)     (h) Tax Structure; Structure.  The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or

if the Debtors, under the Bid, will incur any incremental tax liabilities. The Bid must also identify the structure proposed for undertaking the Transaction, including the specific assets of the Debtors being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

(g)    (i) Timeline to Close. The Bid must provide a commitment to close no later than the deadline for the Stalking Horse Bidder to close in the Stalking Horse Purchase Agreement.

(h)    (j) Sources of Financing; Adequate Assurance. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the proposed Transaction(s) set forth in its Bid with cash on hand, each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Transaction at the purchase price (including sufficient financial or other information to establish adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code to the non-Debtor counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Potential Bidder in connection with the proposed transaction) satisfactory to the Debtors in their reasonable discretion, after consultation with the Lender Parties, with appropriate contact information for such financing sources.

(i)    (k) No Financing Approval or Diligence Outs. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

(j)    (l) Authorization. Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(k)    (m) Disclaimer of Fees. Each Bid must disclaim any right to receive a fee analogous to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(l)    (n) Identity. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder, including if such Qualified Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the

Debtors' advisors should contact regarding such Bid. Nothing herein shall preclude multiple Qualified Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

(m)    (o) Consent to Jurisdiction. The Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Transaction documents and the closing, as applicable.

(n)    (p) No Collusion. The Bidder must acknowledge in writing (i) that it has not engaged in any collusion with respect to any Bids or the Transaction, specifying that it did not agree with any Qualified Bidders, Potential Bidders, or other interested third parties to control price or exert undue influence process; and (ii) agree not to engage in any such collusion or undue influence with respect to any Bids, the Auction, the Transaction, or the sale process.

(o)    (q) Good Faith Offer. The Bid must constitute a good faith, *bona fide* offer to effectuate the Transaction.

(p)    (r) As-Is, Where-Is. Each Bid must include a written acknowledgement and representation that the Potential Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Documents.

By submitting its Bid, each Potential Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets as reflected in such Bid**. As soon as reasonably practicable following the designation of a Bid as a Qualified Bid in accordance with these Bidding Procedures, the Debtors shall notify each Qualified Bidder of such designation.

### III.    Designation of Qualified Bidders

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors' reasonable determination after consultation with the Lender Parties, (i) has timely submitted a Bid that satisfies each of the requirements listed above in the section entitled "Bid Requirements" and (ii) is able to consummate the proposed transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a

"Qualified Bid"); *provided* that the Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Within two (2) Business Days after a Potential Bidder delivers all of the documents described above, the Debtors will determine in their reasonable discretion, and in consultation with the Lender Parties, whether such Potential Bidder is a Qualified Bidder, and notify the Potential Bidder of such determination.

For the avoidance of doubt, (i) the First Lien Agent shall be deemed a Qualified Bidder; *provided* that the Qualified Bid of the First Lien Agent must meet the requisite Minimum Bid requirements (unless the Stalking Horse Purchase Agreement has been terminated); *provided, further*, that the First Lien Agent shall not be required to serve as a Back-Up Bidder (defined below) except to the extent provided herein, (ii) the Stalking Horse Bidder is a Qualified Bidder, (iii) the Stalking Horse Purchase Agreement is a Qualified Bid; *provided* that the Stalking Horse Bidder shall not be required to serve as a Back-Up Bidder (defined below) except to the extent provided herein or in the Stalking Horse Purchase Agreement, and (iv) each of the Stalking Horse Bidder and the First Lien Agent is authorized to submit any Overbids (as defined below) during the Auction, in each instance without further qualification required of the Stalking Horse Bidder or First Lien Agent, as applicable.

If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are obtained by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse Purchase Agreement will be the Successful Bid, and the Debtors will seek final Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder as contemplated by the Stalking Horse Purchase Agreement.

## IV.    The Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Purchase Agreement, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Purchased Assets.  The Auction will commence on [•]March 9, 2023 at [•] [a/p].m10:00 a.m. (prevailing Eastern Time) at the Wilmington offices of Klehr Harrison Harvey Branzburg LLP, or on such other date and/or at such other location as determined by the Debtors and the Stalking Horse Bidder (provided that the DIP Lender, as defined in the Stalking Horse Purchase Agreement, the First Lien Agent, and the Stalking Horse Bidder's rights under the Financing Orders and the Stalking Horse Purchase Agreement shall remain unaffected).

No later than one (1) day prior to the commencement of the Auction, the Debtors will (i) notify: (a) all Qualified Bidders, (b) counsel to the First Lien Agent (as defined below), (c) the Lender Parties, (d) the Office of the U.S. Trustee for the District of Delaware, and (e) counsel to any statutory committee appointed in these chapter 11 casesCole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com), proposed counsel to the official committee of unsecured creditors, in

writing of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Lender Parties (the "Baseline Bid") and (ii) provide copies of the documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid, shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the projected percentage recovery to general unsecured creditors pursuant to such Qualified Bid, (f) whether administrative, priority, and secured claims will be paid in full; (g) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (h) the cure amounts to be paid; and (i) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed, including the assumption of collective bargaining agreements (collectively, the "Bid Assessment Criteria").

If there is an Auction, it will be conducted in accordance with the following procedures:

(a)    (s) The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders. The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, the Successful Bid, and the Back-Up Bid.

(b)    (t) Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate in the Auction. Only the authorized representatives of each of the Qualified Bidders (including each of the Stalking Horse Bidder and the First Lien Agent), the Debtors, and the Lender Parties (including their counsel) will be permitted to attend the Auction. In addition, pursuant to Local Rule 6004-1, all creditors of the Debtors may attend the Auction, *provided* that they send an email to the Debtors' Representatives indicating that they intend to attend the Auction no less than two (2) Business Days prior to the Auction.

(c)    (u) During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $[250,000] in cash (each, an "Overbid"); *provided, however,* that the (i) Stalking Horse Bidder may satisfy the minimum bid increment requirement by credit bidding at least $[250,000] of outstanding obligations under the DIP Credit Agreement that do not already form part of the purchase price under the Stalking Horse Purchase Agreement, if any; and (ii) the First Lien Agent may satisfy the minimum bid increment requirement by credit bidding up to the amount of outstanding obligations under the Prepetition First Lien Credit Agreement as of the Auction, if any. The Debtors will announce at the Auction the material terms of each

Overbid, value each Overbid in accordance with these Bid Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Subject to the requirement (other than with regard to the Stalking Horse Bidder) that each Overbid include at least $250,000 in cash more than the cash component of the Baseline Bid or prevailing Overbid, additional consideration in excess of the amount set forth in the Baseline Bid or the prevailing Overbid may include cash and/or other consideration acceptable to the Debtors in accordance with these procedures. To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse Purchase Agreement, the Debtors will provide notice to each participant of the value ascribed by the Debtors to any such added, deleted, or modified provision or provisions, with such value being determined by the Debtors in their reasonable discretion after consultation with the Lender Parties.

(d)     (v) Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). To the extent not previously provided (which will be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

(e)     (w) Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

(f)     (x) The Debtors, in their reasonable business judgment and after consultation with the Lender Parties, may reject, at any time before entry of an order of the Court approving a Qualified Bid, any bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

The Debtors reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient

non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

The Debtors may not modify or announce additional procedures for conducting the Auction, or otherwise modify these Bidding Procedures, without the prior reasonable consent of the Stalking Horse Bidder, the DIP Lender, and the First Lien Agent.

## V.    Selection of Successful Bid

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in the exercise of their reasonable business judgment, in consultation with the Lender Parties, to be the highest or otherwise best bid submitted by a Qualified Bidder during the Auction for the Purchased Assets (the "Successful Bid") and the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"), at which point the Auction will be closed; *provided* that the Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then prevailing highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid. The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder."  The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder"; *provided*, *however*, that if the Debtors indicate that they have identified a Bid of the Stalking Horse Bidder as the next highest or otherwise best bid after the Successful Bid, and a Bid of another party (other than the Successful Bid) remains open, either the Stalking Horse Bidder or the First Lien Agent may, at their option, decline to serve as the Back-Up Bidder in favor of the next highest or otherwise best bid if one exists.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until consummation of the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## VI.    Sale Hearing

The hearing to consider approval of the sale transaction in relation to the Successful Bid (or confirmation of the Plan if the Successful Bid contemplates consummation of the Transaction pursuant to a chapter 11 plan) (the "Hearing") will be held before the Court no later than [•]March 16, 2023 (or such other date as the Court determines) and otherwise in accordance with any scheduling order entered by the Court; *provided* that if no Auction is held the Debtors reserve the right to schedule the Hearing before such time and in accordance with the timeline set forth in the Stalking Horse Purchase Agreement.

The Hearing may be adjourned or rescheduled, in consultation with the Lender Parties and the Stalking Horse Bidder (provided that the DIP Lender, the First Lien Agent, and the Stalking Horse Bidder's rights under the Financing Orders and Stalking Horse Purchase Agreement shall remain unaffected), by the Debtors to a time and date consistent with the Court's calendar, as set forth in notice on the docket of these chapter 11 cases, a notice of agenda, or stated orally at the Confirmation / Sale Hearing.

### VII.    Stalking Horse Purchase Agreement

In the event that the Sellers consummate a transaction with a Qualified Bidder that is not the Stalking Horse Bidder, or the Stalking Horse Purchase Agreement is terminated for reasons as set forth in Section 7.1 of the Stalking Horse Purchase Agreement, the Sellers will pay the Stalking Horse Bidder as compensation for the Stalking Horse Bidder's efforts in connection with the negotiation and execution of the Stalking Horse Purchase Agreement, and the transactions contemplated thereby, an amount equal to the Bid Protections pursuant to the terms and conditions of the Stalking Horse Purchase Agreement.

### VIII.    Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more non-interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Back-Up Bidder) on the date that is three business days after the Auction, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

### IX.    Lender Parties

The term "Lender Parties" shall mean (i) Twin Brook Capital Partners, LLC, solely in its capacity as first lien agent (the First Lien Agent") and (ii) Tankas Funding VI, LLC, solely in its capacity as postpetition financing lender (the "DIP Lender"); *provided*, *however*, that the DIP Lender shall be a Lender Party with respect to any Bid for (i) materially less than all of the Purchased Assets or (ii) assets other than the "Purchased Assets" as defined in any current Bid of the Stalking Horse Bidder; *provided*, *further*, that without limiting the foregoing proviso, at and after any time that the Stalking Horse Bidder is no longer bidding on any of the Purchased Assets, the DIP Lender shall be a Lender Party for all purposes.  The Debtors shall consult with the Lender Parties as required by these Bidding Procedures.  Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Lender Parties to consult with the Debtors.

### Fiduciary Duties

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors or their management or boards of directors from exercising their respective fiduciary duties under or otherwise complying with applicable law.

10332502.v7

**Reservation of Rights**

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, after consultation with the Lender Parties, to alter or terminate these Bid Procedures, to alter or modify any Auction rules or procedures, to waive terms and conditions set forth herein with respect to all Potential Bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefor, in each case in any manner that will best promote the goals of the bidding process, or impose, at or prior to the conclusion of the Auction, additional customary terms and conditions on the sale of the Purchased Assets; *provided* that the Debtors shall only be permitted to modify or amend the terms of the Stalking Horse Purchase Agreement in accordance with the applicable Stalking Horse Purchase Agreement.

\*       \*       \*       \*

**<u>Schedule 2</u>**

Form of Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| [PERFORMANCE POWERSPORTS GROUP HOLDINGS, INC.], *et al.*,[1] | ) ) | Case No. [•]23-10047 (——LSS) |
| | ) | |
| Debtors. | ) | [(Jointly          Administerationed Requested)]) |
| | ) | |
| | ) | **Re: Docket No.** _____ |

**NOTICE OF STALKING HORSE BID, BIDDING
PROCEDURES, AUCTION, AND SALE HEARING**

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on January [•]16, 2023 (the "Petition Date").

      **PLEASE TAKE FURTHER NOTICE** that, on [•]January 16, 2023, the Debtors filed a motion [Docket No. 17] (the "Bidding Procedures Motion")[2] with the Court seeking entry of an order, (a) approving the Bidding Procedures in connection with the sale of substantially all of the Debtors' assets, as attached to the Bidding Procedures Order as Schedule 1, (b) approving the Bid Protections to the Stalking Horse Bidder, (c) the form and manner of this notice, the Bid Deadline, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Schedule 2, (d) scheduling an auction and sale hearing to consider approval of the proposed Transaction, (e) approving procedures for the assumption and assignment of Contracts, (f) approving the sale of the Debtors' assets free and clear, and (g) granting related relief.

      **PLEASE TAKE FURTHER NOTICE** that, on [      ], 2023, the Court entered an order [Docket No.   ] (the "Bidding Procedures Order") approving, among other things, the Stalking Horse Purchase Agreement and the Bidding Procedures, which establish the key dates and times related to the Transaction and the Auction, if necessary, to determine the Successful Bidder.  All Interested  Parties  should  carefully  read  the  Bidding  Procedures  Order  and  the  Bidding

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's respective federal tax identification numbers, are as follows: [•].  The service address for each of the above Debtors is [•]Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or Bidding Procedures Motion, as applicable.

Procedures in their entirety.[3]

## Contact Information for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in acting as a Bidder must comply strictly with the Bidding Procedures. The Debtors, in accordance with the Bidding Procedures, will consider only Qualified Bids.

**Any Interested Party should contact, as soon as practicable:**

Portage Point Partners, LLC
1300 Avenue of the Americas, 22nd Floor
New York, New York 10019
Attn: Steven Bremer (sbremer@pppllc.com)
Attn: Geoffrey Schmitz (gschmitz@pppllc.com)

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' restructuring website, https://omniagentsolutions.com/PerformancePowersports.

## Important Dates and Deadlines[4]

1. **Bid Deadline**.  The deadline to submit a Qualified Bid is [▪]March 7, 2023 **at 5:00 p.m.** (prevailing Eastern Time).

2. **Auction**.  If the Debtors receive at least one additional Qualified Bid which includes terms that are higher or otherwise better than those contemplated by the Stalking Horse Purchase Agreement prior to the Bid Deadline, then, subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction to determine the Successful Bidder.  Only (a) Qualified Bidders and each of their respective legal and financial advisors and (b) the Lender Parties shall be entitled to attend the Auction and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders are eligible to bid at the Auction.  The Auction, if one is held, will commence on [▪]March 9, 2023, **at** [▪] [a/p].m10:00 a.m. **(prevailing Eastern Time)** at the offices of Klehr  Harrison  Harvey  Branzburg  LLP,  at  919  N.  Market  Street,  Suite  100,

---

[3]   To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4]   The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

10332982.v4

Wilmington, Delaware 19801, or such later date and time as selected by the Debtors, who shall notify all Qualified Bidders.

3. **Time for Debtors to Provide Notice of Results of Auction**.  As soon as reasonably practicable after the close of the Auction, the Debtors shall (a) file the Notice of Auction Results with the Court (which notice shall identify the Successful Bidder, the amount of the Successful Bid, the Backup Bid, and the amount of the Backup Bid(s)) and (b) cause the Notice of Auction Results to be published on the Debtors' restructuring website, https://omniagentsolutions.com/PerformancePowersports.

4. **Transaction Objections Deadline**.  The deadline to file an objection with the Court to the Transaction (if any) (collectively, the "Transaction Objections") is [•]March 10, **2023 at 54:00 p.m.** (prevailing Eastern Time) (the "Objection Deadline").

5. **Hearing**.  A hearing to consider the proposed Transaction will be held before the Court no later than [•]March 16, 2023 at [___:___] [_].m.]4  (prevailing Eastern Time), or such other date as determined by the Court, at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

## Filing Objections

Transaction Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be ***actually received*** by no later than [•]March 10, **2023 at 54:00 p.m.** (prevailing Eastern Time) on (i) the Debtors, [•]Attn: Ken Vanden Berg, CFO, 1775 East University Drive, Tempe, Arizona 85281; (ii) proposed counsel to the Debtors, (a) Klehr Harrison Harvey Branzburg LLP, located at 919 N. Market Street, Suite 100, Wilmington, Delaware 19801, Attn: Domenic Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 Attn:  Richard Schepacarter (Richard.Schepacarter@usdoj.gov); (iv) counsel for the Prepetition First Lien Agent, Winston & Strawn, LLP, 200 Park Avenue, New York, NY 10017 Attn: Gregory M. Gartland (ggartland@winston.com) and Emma Fleming (efleming@winston.com) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street Wilmington, DE 19801 Attn: Andrew Magaziner (amagaziner@ycst.com); (v) counsel to any statutory committee appointed in these chapter 11 cases proposed counsel to the official committee of unsecured creditors, Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah A. Carnes (scarnes@coleschotz.com) and 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 Attn: G. David Dean (ddean@coleschotz.com); and (vi) counsel for the DIP Lender, Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian Schartz, P.C. (brian.schartz@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com), and

---

4.  **NTD: Sale Hearing to be set no later than 60 days after the Petition Date, subject to Court availability.**

10332982.v4

(vii) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

**Except as otherwise ordered by the Court, any party or entity who fails to timely make an objection to the Transaction on or before the Objection Deadline in accordance with the Bidding Procedures Order and this notice shall be forever barred from asserting any objection to the Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests**.

4

10332982.v4

Dated: _____, 2023          */s/ DRAFT*
Wilmington, Delaware             Domenic E. Pacitti (DE Bar No. 3989)
                                 Michael W. Yurkewicz (DE Bar No. 4165)
                                 Sally E. Veghte (DE Bar No. 4762)
                                 **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                 919 North Market Street
                                 Suite 1000
                                 Wilmington, Delaware 19801
                                 Telephone:   (302) 426-1189
                                 Facsimile:   (302) 426-9193
                                 Email:       dpacitti@klehr.com
                                              myurkewicz@klehr.com
                                              sveghte@klehr.com

                                 -and-

                                 Morton R. Branzburg (admitted *pro hac vice* ~~pending~~)
                                 **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                 1835 Market Street, Suite 1400
                                 Philadelphia, Pennsylvania 19103
                                 Telephone:   (215) 569-3007
                                 Facsimile:   (215) 568-6603
                                 Email:       mbranzburg@klehr.com

                                 ~~Proposed~~ *Counsel to the Debtors and Debtors in Possession*

10332982.v4