**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **PERFORMANCE POWERSPORTS** | ) | **Case No. 23-10047 (LSS)** |
| **GROUP INVESTOR, LLC, et al.,** | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Sale Hearing: March 20, 2023 at 10:00 AM |
| | ) | Objection Deadline: March 10, 2023 |
| | ) | |
| | ) | **D.E. 17, 167 & 197** |

**ORACLE'S LIMITED OBJECTION TO, AND RESERVATION OF RIGHTS REGARDING, DEBTORS' SALE MOTION AND ASSUMPTION NOTICE**

Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this limited objection to and reservation of rights regarding ("Rights Reservation"): (1) *Motion of Debtors for Entry of: (1) An Order (A) Approving Bid Procedures in Connection With the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry Into the Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Dkt. No. 17] ("Sale Motion"); and (2) *Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction* [Dkt. No. 167] ("Assumption Notice"), filed by Performance Powersports Group Investors, LLC, *et al.* ("Debtors").

## I. INTRODUCTION

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

   a) First, the targeted Oracle agreement(s) are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

   b) Second, the Assumption Notice does not provide a complete description of the relevant Oracle contract(s) and fails to identify several active agreements between Oracle and the Debtors. As a result, Oracle is unable to determine the accuracy of the proposed cure amount.

   c) Finally, the Amended APA (defined below) may include the unauthorized shared use of Oracle's licenses in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses which may be contemplated in connection with the Sale Motion.

3. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II. FACTUAL BACKGROUND

4. The Debtors filed the above captioned cases on January 16, 2023 ("Petition Date") and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

5. On the Petition Date, the Debtors filed the Sale Motion, which seeks Court authority to sell substantially all assets of the Debtors.

6. The Sale Motion identifies CPS USA Acquisition, LLC ("Stalking Horse") as the stalking horse bidder.

7. Attached as Exhibit "A" to the Sale Motion is the Asset Purchase Agreement between the Debtors and the Stalking Horse ("APA").

8. On February 24, 2023, the Debtors filed the Assumption Notice. Exhibit "A" to the Assumption Notice identifies one Oracle agreement ("Oracle Agreement") described only as a "Data Processing Agreement" with a stated cure amount of $20,597.56.

9. On March 6, 2023, the Debtors file a *Notice of Amended and Restated Stalking Horse Agreement* [Dkt. No. 197], to which an Amended APA ("Amended APA") is attached as Exhibit "1."

10. The Amended APA contemplates certain information sharing between the Debtors and the Stalking Horse, which will take place over a period of up to 5 years following the sale closing. Amended APA §6.3. It is not clear what services will be provided during the post-closing period.

11. On March 8, 2023 the Debtors filed a *Notice of Cancellation of Auction and Designation of Staking Horse Purchaser as the Successful Bidder in Connection With the Sale of Substantially All of the Debtors' Assets* [Dkt. No. 198], which states that the Debtors did not receive any qualified bids and the Stalking Horse was designated the successful bidder.

12. Oracle and the Debtors have been in communication, through counsel, regarding the specific agreements the Debtors target for assumption and assignment and the associated cure amounts owed.

13. As of the date of this Rights Reservation, the parties have not reached any agreement on these issues. By submitting this Rights Reservation, Oracle does not intend to chill discussions between counsel, which Oracle anticipates will continue.

### III. ARGUMENT

####   A. The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

14. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

15. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

16. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

17. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

18. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreement at this time.

### B. The Debtors Have Not Adequately Identified The Oracle Agreement To Be Assumed and Assigned.

19. The Assumption Notice very generally describes the Oracle Agreement the Debtors seek to assume and assign, and is inadequate for Oracle to identify the intended agreement with specificity.

20. Based on discussions between counsel, it is Oracle's understanding that the Debtors intend to identify NetSuite Estimate No. 848589.

21. In addition, Oracle is aware of at least two additional active agreements between the Debtors and Oracle that are not identified in the Assumption Notice: NetSuite Estimate Nos. 932812 and 898725. The Debtors also fail to identify the governing license agreement.

22. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

23. An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

24. Under California law,[1] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013)

25. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned

26. To rectify the confusion, Oracle requests that the Debtors specify in the Assignment Notice the targeted contracts' (a) identification or contract/estimate number; (b) the contract date; (c) any associated support or support renewals; and (d) the governing license agreement.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

27. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

28. The Debtors have identified a $20,597.56 cure amount for the Oracle Agreement, i.e., NetSuite Estimate No. 848589.

29. Oracle is investigating amounts owed under that contract. Additional amounts are owed under Estimate Nos. 932812 and 898725.[2]

30. Until Oracle receives confirmation from the Debtors regarding which contracts are being assumed and assigned, Oracle reserves its right to be heard regarding all cure amounts until after the contract or contracts the Debtors seek to assume and assign are identified and confirmed in order to allow Oracle to determine the correct cure amount.

### D. Oracle's Agreements Do Not Authorize Simultaneous Use By The Debtors and the Stalking Horse/Eventual Purchaser.

31. The Amended APA contemplates that certain services may be provided between the Debtors and the Stalking Horse.

---

("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

[2] Debtors' counsel has been provided with copies of the currently outstanding invoices owed under Estimate Nos. 932812 and 898725.

32. Precise information about the nature of these proposed services is not provided. This omission precludes Oracle from determining how, or if, its contracts will be affected.

33. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement.

34. It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse.

35. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

36. Oracle reserves all rights regarding any transitional use, including under any further revised APA or transition services agreement, pending Oracle's further review of the same.

## IV. CONCLUSION

37. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of any Oracle agreement absent Oracle's consent. Oracle reserves its right to be heard further on all issues set forth herein

Dated: March 13, 2023
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:     /s/ James E. Huggett
       James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamín Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200

**Attorneys for Oracle America, Inc.**