# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*[1] | ) ) ) ) | Case No. 23-10047 (LSS) |
|  | ) | (Jointly Administered) |
| Debtors. | ) ) |  |

## DECLARATION OF THOMAS DUDNEY IN SUPPORT OF
## DG MESQUITE AIRPORT PROPERTY OWNER'S OBJECTION
## TO PROPOSED ASSUMPTION AND ASSIGNMENT OF THE LEASE

I, Thomas Dudney, hereby declare under 28 U.S.C. § 1764, as follows:

1. I make this declaration in support of DG Mesquite Airport Property Owner, L.P. (the "Landlord")'s objection (the "Objection") to the Debtors' proposed assumption and assignment of the Lease.[2] A true and correct copy of the Lease is attached hereto as **Exhibit A**.

2. Unless stated otherwise, the information contained in this Declaration is of my own personal knowledge or from the business records of the Landlord maintained in the ordinary course of its business, as well as information derived from reviews of such documents performed by me or at my direction and supervision.

3. I am an Asset Manager of DI Management LLC ("DIM"). DIM is the co-manager, along with an affiliate, that provides management services to the Landlord. I have served in my role since 2019. I have approximately 13 years of experience in the commercial real estate industry. In my role at DIM, I oversee and participate in negotiating commercial leases for DIM properties

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Objection.

1

with prospective tenants and oversee management of DIM's portfolio of properties in the central region. I am one of the custodians of DIM's books, records, and files relating to the use and occupancy of leased properties, including those relevant to the Lease for the Premises. I am also personally familiar with the Premises.

## BACKGROUND

4.      The Landlord and Debtor Performance Powersports Group, Inc. are parties to that certain lease (the "Lease") dated November 1, 2022, for certain non-residential real property known as Mesquite Airport Logistics Center Building A, located at 4120 E. Scyene Road, Mesquite Texas (the "Premises"). On January 16, 2023, about 76 days after the commencement date of the Lease (November 1, 2022) and about 84 days after the lease was signed, the Debtors commenced these chapter 11 cases.

5.      Under the Lease, the Landlord is required to commence a multimillion-dollar build-out (the "Build-Out") to prepare the Premises for occupancy by the Debtors, and the Landlord is concerned that it will complete the Build-Out and the Purchaser will be unable to fulfill its obligations under the Lease. The cost of the Build-Out is incorporated into the rental obligations set forth in Lease. The Landlord is therefore taking on a substantial risk, beyond the right to receive payments under the Lease, and is entitled to be compensated for this risk, at least until it recovers its investment under the Build-Out. The Adequate Assurance Materials provide no assurance that Purchaser will have the financial or operational wherewithal to continue in business long enough to enable the Landlord to recover its investment in the Purchaser with respect to the Build-Out. It is therefore critical that the Landlord is assured of future performance by the Purchaser given the substantial investment by the Landlord.

6.      As part of its diligence, Landlord requested substantial financial information from the Debtors, including projections and audited financial statements.  On numerous occasions,

Landlord informed the Debtors that it would not sign the Lease until the Debtors provided their 2021 audited financial statements. Instead, the Debtors provided Landlord with their draft summary 2021 financial statements. Multiple times, the Debtors indicated that the 2021 audited financial statements would be made available to Landlord prior to Lease execution and Lease commencement. As the Lease commencement date approached and it became evident that audited financial statements would not be provided, the Debtors forwarded the email attached hereto as **Exhibit B** from the audit partner of its accounting firm stating that he was not aware of any material change to the Debtors' financial statements and that he was unaware of any restriction or impediments which would preclude the firm from issuing their audit report. The Debtors assured Landlord that the report would be furnished as soon as they had received from their auditor. Debtors later disclosed to Landlord that the 2021 audit would not be completed.

7. The Debtors did not disclose that they were considering filing for chapter 11 at the time the Lease was signed, notwithstanding the fact that, eight days after the Lease was signed, I subsequently learned that the Debtors commenced making payments to their restructuring professionals. Based on the foregoing, the Landlord is concerned that the Purchaser may be unable to satisfy obligations under the Lease for the remainder of the term.

8. On March 9, 2023, at the Landlord's request, the Purchaser provided the Landlord with a three-page document containing projected financials and a pro forma capital structure chart (the "Adequate Assurance Materials"). The Adequate Assurance Materials contain no go-forward assumptions and therefore it is impossible for the Landlord to evaluate the Purchaser's ability to meet its obligations under the Lease on a go-forward basis, including approximately $200,000 in monthly rent payments. The income statement is the only future-looking document included in the Adequate Assurance Materials, but it is for only nine months and reflects only revenue and not

any of the Purchaser's expenses. Further, the balance sheet shows only an opening day balance for March 2023, without any projected future balance sheets or go-forward financial projections or budget, or any explanation of how the Purchaser intends to meet the obligations under the Lease specifically.

9. I have been informed that, despite the requirement under section 25.19 of the Lease that tenant provide Landlord audited financial statements on an annual basis, such statements will not be provided until 2024, depriving Landlord of critical, bargained for information.

10. The Landlord simply has no way of knowing whether the Purchaser's projected financials (even if they are eventually actually produced) are realistic because the Purchaser is a newly-formed special purpose entity, without past financials or an operating history.

11. If the Landlord and the Purchaser were negotiating a new lease outside the bankruptcy context with a financially troubled company, the Landlord would require the Purchaser to provide security for its Lease obligations in the form of a letter of credit or similar. This requirement is heightened in this case given Landlord's past experience with the Debtors and the Debtors' indication that they (and the Purchaser) will be unable to perform their obligations under section 25.19 of the Lease.

12. It is therefore imperative that the Landlord is assured of future performance by the Purchaser under the Lease, especially given the substantial investment by the Landlord in connection with the Build-Out. Without detailed adequate assurance information, the Landlord is unable to conduct a meaningful analysis of any proposed assignee and its ability to perform under the Lease.

13. In light of the foregoing, the Landlord requests that the Debtors provide a letter of credit in the amount of two years' base rent in favor of the Landlord for the term of the Lease, and the following:

(a) cash flow projections for the Purchaser, the Purchaser's business plan, all cash flow projections for the Lease specifically, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Lease; and

(b) a contact person for the Purchaser that the Landlord may directly contact in connection with the adequate assurance of future performance.

I certify under penalty of perjury in accordance with 28 U.S.C. § 1746 that to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Date: March 14, 2023

_____
Thomas Dudney
Asset Manager
DI Management LLC