**<u>Exhibit B</u>**

**Amended Complaint**

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHONGQING HUANSONG INDUSTRIES (GROUP) CO., LTD., CHONGQING HUANSONG SCIENCE AND TECHNOLOGY INDUSTRIAL CO., LTD. AND VIETNAM NEW CENTURY INDUSTRIAL COMPANY LIMITED | ) ) ) ) ) ) ) | Case No.: 22-cv-10652-JPO |
| Plaintiffs | ) ) | **FIRST AMENDED COMPLAINT** (Jury Trial Demanded) |
| v. | ) ) | |
| KINDERHOOK INDUSTRIES, LLC, KINDERHOOK CAPITAL FUND VI, L.P., KINDERHOOK CAPITAL FUND VI-B, L.P., AND RICHARD GODFREY, | ) ) ) ) ) ) | |
| Defendants | ) | |

Plaintiffs Chongqing Huansong Industries (Group) Co., Ltd. ("Chongqing Industries"),

Chongqing Huansong Science and Technology Industrial Co., Ltd. ("Chongqing Industrial") and

Vietnam New Century Industrial Company Limited ("Vietnam Industrial") (collectively,

"Plaintiffs"), by and through undersigned counsel, hereby complain of Defendants Kinderhook

Industries, LLC ("Kinderhook"), Kinderhook Capital Fund VI, L.P. ("Kinderhook VI"),

Kinderhook Capital Fund VI-B, L.P. ("Kinderhook VI-B," and together with Kinderhook and

Kinderhook VI, the "Kinderhook Defendants"), and Richard Godfrey ("Godfrey") (collectively,

"Defendants") as follows[1]:

## **NATURE OF THE ACTION**

1. The Kinderhook Defendants and Defendant Godfrey are liable to Plaintiffs for millions

of dollars of financial harm suffered as a result of the actions of the Defendants.

---

[1] Plaintiffs voluntarily dismissed Defendant Performance Powersports Group, Inc. f/k/a Rich Godfrey & Associates, Inc. d/b/a Coleman Powersports on February 14, 2023, without prejudice.

2. The Kinderhook Defendants acquired non-party Performance Powersports Group, Inc. ("PPG"), and related entities on or about October 8, 2021. At the time, Plaintiffs had tens of millions of dollars of unpaid accounts receivable owed to them by PPG.

3. Before and after the acquisition by the Kinderhook Defendants, both the Kinderhook Defendants and Defendant Godfrey repeatedly assured Plaintiffs that they would ensure payment. These assurances were false, and known by the Kinderhook Defendants and Defendant Godfrey to be false. Plaintiffs relied on these various misrepresentations and false promises to their detriment.

4. During the summer of 2022, the parties reached an agreement for a payment plan.

5. Neither the Kinderhook Defendants nor Defendant Godfrey fulfilled their obligations under the payment plan, causing further financial harm to Plaintiffs.

6. In the fall of 2022, the Kinderhook Defendants and Defendant Godfrey caused a "fire sale" transaction of products delivered by Plaintiffs, in a sale to a third party for minimal value. Plaintiffs were not informed of this transfer and the minimal proceeds of the sale were not paid to Plaintiffs to satisfy even a portion of their debt.

7. Plaintiffs have delivered approximately $60 million of goods for which they have not been paid. The Kinderhook Defendants and Defendant Godfrey each bear responsibility for the harm that has been inflicted on the Plaintiffs, and this action seeks to recover damages from these Defendants based on Defendants' own direct contributions to Plaintiffs' harm.

## PARTIES, JURISDICTION, AND VENUE

8. Chongqing Industries is a company organized and existing under the laws of the People's Republic of China (the "PRC") with a principal place of business located at Shiyan Industrial Park, Huayan Town, Jiulongpo District, Chongqing 40052.

2

9. Chongqing Industries is a leading manufacturer of all-terrain vehicles ("ATV") and utility terrain vehicles, also called utility task vehicles, ("UTV") in the PRC.

10. Chongqing Industrial is a company organized and existing under the laws of the PRC with a principal place of business located at No. 29 Qixin Avenue, Yanjia Subdistrict, Changshou District, Chongqing 401221.

11. Chongqing Industrial is a subsidiary of Chongqing Industries that supplies Chongqing Industries' ATVs and UTVs from the PRC.

12. Vietnam Industrial is a company organized and existing under the laws of Vietnam with a principal place of business located at Plot CN2-05, Non-Tariff Area and Nam Dinh Vu Industrial Park (Area 1), Dinh Vu Cat Hai Economic Zone, Dong Hai 2 Ward, Hai An District, Hai Phong City, Vietnam.

13. Vietnam Industrial is a subsidiary of Chongqing Industries that supplies Chongqing Industries' ATVs and UTVs from Vietnam.

14. Non-party Hisun Motors Corp., U.S.A. ("Hisun Motors") is a U.S.-based entity with a principal place of business located at 310 East University Drive, McKinney, TX 75069. Hisun Motors and Chongqing Industries share some common ownership.

15. Among other business operations, Hisun Motors distributes Chongqing Industries' ATVs and UTVs for sale in the United States.

16. Non-party PPG is a corporation organized and existing under the laws of the State of Arizona with a principal place of business located at 1775 East University Drive, Tempe, AZ 85281.

17. PPG is a national distributor of, *inter alia*, ATVs and UTVs to "Big Box" retailers like Lowe's and Walmart rather than through the traditional dealership channel. PPG has done

business with Hisun Motors since 2012 in order to supply Chongqing Industries' ATVs and UTVs to "Big Box" retailers in the United States.

18. Defendant Kinderhook is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 505 5th Avenue, Floor 25, New York, NY 10017-4910. Based upon review of publicly available documents, Kinderhook has three (3) members, all of whom are individuals. The three (3) members of Kinderhook are: 1) Robert Michalik, a New York citizen, 2) Christian Michalik, a Connecticut citizen, and 3) Thomas Tuttle, a New York citizen. Based on a website maintained by Kinderhook, those three (3) individuals are still the leaders of Kinderhook. *See* https://www.kinderhook.com/team/ (last visited January 17, 2023).

19. Defendant Kinderhook is a private investment firm that manages over $5 billion of committed capital, with a focus on middle market businesses in, *inter alia*, the automotive and light manufacturing sectors.

20. Defendant Kinderhook specializes in management buyouts of entrepreneurial-owned businesses and acquiring small capitalization companies lacking institutional support.

21. Defendant Kinderhook Capital Fund VI L.P., is an entity organized under the laws of the state of Delaware, with its principal place of business located in New York. Upon information and belief, and review of publicly available records, none of Kinderhook VI's limited or general partners are citizens of either the PRC or Vietnam. Further, upon information and belief, and review of publicly available records, none of Kinderhook VI's limited or general partners are foreign citizens.

22. Defendant Kinderhook Capital Fund VI-B L.P., is an entity organized under the laws of the state of Delaware with its principal place of business located in New York. Upon

information and belief, and review of publicly available records, none of Kinderhook VI-B's partners are citizens of either the PRC or Vietnam. Further, upon information and belief, and review of publicly available records, none of Kinderhook VI-B's limited or general partners are foreign citizens.

23. Defendant Richard Godfrey is an individual and resident of the State of Arizona, with his primary residence located at 9820 E Thompson Peak Pkwy, Unit 837, Scarsdale, AZ 85255. Godfrey was the founder of PPG, its CEO, and a board member. Godfrey is subject to personal jurisdiction in the Southern District of New York as set forth further below.

24. On October 8, 2021, PPG became a portfolio company and subsidiary of the Kinderhook Defendants, for a total purchase price of approximately $112,00,000, the precise details of which are discussed in greater length below (the "Acquisition").

25. Subsequently, and as set forth in more detail below, with the aid of Defendant Godfrey, the Kinderhook Defendants displaced directors and officers of PPG, fired the majority of PPG's work force, and installed new directors and officers who directly took over the day-to-day management of PPG.

26. With the aid of Defendant Godfrey during certain times, the Kinderhook Defendants have continued to dominate and control PPG.

27. Pursuant to 28 U.S.C.A. § 1332(a)(2), this Court has subject matter jurisdiction over this action because the matter in controversy exceeds the sum of $75,000 and is between citizens of foreign states and citizens of different states.

28. Pursuant to CPLR § 302 *et seq*., this Court has personal jurisdiction over Defendant Godfrey because, *inter alia*: (1) upon information and belief, he transacts business within New York and contracts to supply goods in New York; (2) he regularly does or solicits business, and

derives substantial revenue from goods used, in New York, including but not limited to PPG's acceptance of capital, corporate oversight, and control from the Kinderhook Defendants and Defendant Godfrey's receipt of substantial funds as a result of the Acquisition in October 2021; and (3) he has committed, and participated in the commission of, tortious acts within the state of New York because he acted in concert with the Kinderhook Defendants to intentionally mislead and harm the Plaintiffs.

29. Pursuant to CPLR § 301, this Court has personal jurisdiction over Defendants Kinderhook, Kinderhook Fund VI, and Kinderhook Fund VI-B because they are all domiciled in New York.

30. Pursuant to 28 U.S.C.A. § 1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this district or, alternatively, because Defendants Kinderhook, Kinderhook VI, and Kinderhook VI-B maintain their principal places of business in this district and Defendant Richard Godfrey regularly transacts business in this district and are both therefore subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

A. The Parties' Relationship

31. Hisun Motors' Chief Executive Officer ("CEO") Jason Sun ("Mr. Sun") has known Defendant Godfrey, non-party PPG's founder, for more than twenty (20) years.

32. Chongqing Industries, *via* Vietnam Industrial and Chongqing Industrial, and in conjunction with Hisun Motors, have been selling ATVs and UTVs to non-party PPG since approximately 2014 without significant issues until late 2021.

B. The Parties' Contracts

33. Between April 6, 2021 and October 9, 2021, non-party PPG and Plaintiff Vietnam

Industrial entered into contracts for the purchase of ATVs and UTVs totaling $72,868,439.81 as follows (the "Vietnam Industrial Contracts"):

| Contract Number | Contract Date | Contract Amount |
| --- | --- | --- |
| NC210441 | 04/06/21 | $1,689,836.69 |
| NC210429 | 04/06/21 | $3,675,927.36 |
| NC210431 | 04/06/21 | $2,976,576.40 |
| NC210433 | 04/06/21 | $2,976,576.40 |
| NC210435 | 04/06/21 | $8,136,250.72 |
| NC210437 | 04/06/21 | $8,996,815.70 |
| NC210439 | 04/06/21 | $1,689,836.69 |
| NC210443 | 04/06/21 | $1,971,476.14 |
| NC210453 | 04/09/21 | $625,782.87 |
| NC210623 | 04/09/21 | $170,668.06 |
| NC210557 | 05/08/21 | $1,763,569.91 |
| NC210579 | 05/14/21 | $1,382,477.31 |
| NC210537 | 05/20/21 | $760,657.70 |
| NC210539 | 05/20/21 | $760,657.70 |
| NC210541 | 05/20/21 | $1,877,596.32 |
| NC210595 | 05/20/21 | $10,008,892.96 |
| NC210529 | 05/20/21 | $1,137,787.04 |
| NC210531 | 05/20/21 | $1,649,791.21 |
| NC210533 | 05/20/21 | $2,218,684.73 |
| NC210535 | 05/20/21 | $2,218,684.73 |
| NC210627 | 06/09/21 | $2,065,355.95 |
| NC210659 | 06/23/21 | $3,442,259.92 |
| NC210657 | 06/23/21 | $312,891.44 |
| NC211029 | 10/09/21 | $4,209,729.48 |
| NC211031 | 10/09/21 | $4,209,729.48 |
| NC211019 | 10/09/21 | $1,939,926.90 |

34. Between September 16, 2021 and February 9, 2022, non-party PPG and Plaintiff Chongqing Industrial entered into multiple contracts for the purchase of ATVs and UTVs totaling $15,505,167.09 as follows (the "Chongqing Industrial Contracts"):

| Contract Number | Contract Date | Contract Amount |
| --- | --- | --- |
| HS210939 | 09/16/21 | $255,342.57 |
| HS211033 | 10/09/21 | $4,023,683.96 |
| HS211035 | 10/09/21 | $4,023,683.96 |
| HS211037 | 10/09/21 | $3,017,762.97 |
| HS211039 | 10/09/21 | $3,504,701.97 |
| HS211059 | 10/18/21 | $254,250.40 |

| HS220207 | 02/09/22 | $212,870.63 |
| HS220209 | 02/09/22 | $212,870.63 |

35. Claims regarding the quality of the goods had to be filed within thirty (30) days after arrival of the goods at the port of destination and claims regarding the quantity of the goods had to be filed within fifteen (15) days after arrival of the goods at the port of destination.

36. PPG made no complaints regarding the quality or quantity of the goods.

37. Under the terms of the parties' contracts, payment for each shipment of goods was due within one hundred twenty (120) days of delivery.

38. Plaintiffs delivered the goods pursuant to the contracts.

39. Non-party PPG, initially at the direction of Defendant Godfrey and subsequently at the direction of the Kinderhook Defendants, did not remit timely payments, and when they did remit a payment, it was only partial.

40. Defendant Godfrey repeatedly made false promises that Plaintiffs would be paid in full, thereby inducing Plaintiffs to continue providing goods and to hold off on seeking to enforce payment. Plaintiffs relied on these promises in continuing to supply goods and services. Typically, Defendant Godfrey communicated with Plaintiffs via telephone, during which conversations the acknowledgements and false promises to pay were made to Plaintiffs by Defendant Godfrey.

41. As of the date of the filing of this Complaint, Defendants still owe Plaintiffs no less than $54,834,004.23 pursuant to the Vietnam Industrial Contracts.

42. As of the date of the filing of this Complaint, Defendants still owe Plaintiffs no less than $2,995,979.72 pursuant to the Chongqing Industrial Contracts.

43. In addition, Defendants owe several millions of dollars for unpaid and accrued interest under these contracts.

44. In total, Defendants owe Plaintiffs no less than $60 million based on unpaid contracts,

along with other financial harm and damages caused by the wrongful acts of Defendants.

    C.   <u>A Private Investment Firm, Defendant Kinderhook, Takes Control</u>

45. In April or May of 2021, Defendant Godfrey advised Hisun Motors' CEO Jason Sun, who conveyed this information to Plaintiffs, that an investment firm had contacted him regarding the potential acquisition of PPG and was in the process of performing due diligence.

46. Leading up to the Acquisition, at some point in 2021, the Defendants Kinderhook VI and Kinderhook VI-B were formed as special purpose vehicles intended to facilitate the financial transactions that underpinned the Acquisition and which are described in further detail below. Defendants Kinderhook VI and Kinderhook VI-B, as special purposes vehicles, are totally controlled and dominated by Defendant Kinderhook and have no independent business purpose outside the financial transactions underpinning the Acquisition.

47. In conjunction with the Acquisition, in October 2021, PPG received an infusion of capital from the Kinderhook Defendants as part of the total purchase price for the Acquisition. The specific details of the capital transaction include that Defendants Kinderhook Fund VI and Kinderhook Fund VI-B provided $47,000,000 in capital, with an additional debt conversion worth approximately $45,000,000, and finally, $20,000,000 was provided directly to Godfrey as "consideration" for the Acquisition, for a total of $112 million. Godfrey also received a payout of approximately $69 million for his ownership interest in PPG. The Kinderhook Defendants took control of PPG as a result of this Acquisition.

48. The Acquisition closed on or about October 8, 2021.

49. Subsequent to the Acquisition, the Kinderhook Defendants added five (5) members to PPG's Board of Directors: (a) Kinderhook portfolio company CEO James A. Pearson; (b) longtime Kinderhook Business Building Professional Mark Hanley; (c) Todd Balan; (d) Steve Hill; and (e)

John Larson.  As mentioned above, Defendant Godfrey received approximately $69 million from Kinderhook upon the finalization of the Acquisition in addition to retaining a seat on non-party PPG's Board of Directors.

50. Defendant Kinderhook terminated Defendant Godfrey as CEO of PPG in or around June 2022.  Kinderhook also terminated PPG's Chief Financial Officer, Chris Hunter, although Defendant Kinderhook retained Godfrey as a board member of PPG during all relevant times.

51. On or about September 21, 2021 in conjunction with the Acquisition, the following entities were formed in Delaware: (a) Performance Powersports Group Holdings, Inc.; (b) Performance Powersports Group Investor, LLC; and (c) Performance Powersports Group Purchaser, Inc.   As discussed further below, all of these related entities have now filed for Chapter 11 bankruptcy protection in the District of Delaware.

52. On or about September 30, 2021, immediately prior to the finalization of the Acquisition, a Zoom meeting was held to discuss the business relationship between the parties going forward.  The meeting was between, among others: (a) Defendant Godfrey; (b) Defendant Kinderhook's Vice-President Kyle Dawson; (c) Defendant Kinderhook's Managing Director Paul Cifelli; (d) Hisun Motors' CEO Mr. Sun; and (e) Cristina He, the General Manager of Plaintiff Chongqing Industries responsible for export sales ("Ms. He").

53. Shortly before the meeting, Defendant Godfrey told Mr. Sun that he had chosen Defendant Kinderhook to acquire PPG and that Godfrey hoped Hisun Motors and the Plaintiffs would support him in this decision.

54. During this brief meeting, the Kinderhook Defendants advised that they would be acquiring PPG and that Kinderhook wished for Hisun Motors and the Plaintiffs to continue providing goods and services to PPG, thus intending to induce Plaintiffs' reliance on Kinderhook

as the new steward of PPG.

55. Plaintiffs agreed to continue to supply ATVs and UTVs in reliance on Defendant Godfrey and the Kinderhook Defendants' statements, representations, and assurances.

56. After the Acquisition, the Kinderhook Defendants managed the day-to-day business of PPG through Defendant Kinderhook's Vice-President Kyle Dawson, Managing Director Paul Cifelli, and other officers placed by the Kinderhook Defendants to manage and control PPG, including retaining Defendant Godfrey on PPG's Board of Directors. This arrangement provided the Kinderhook Defendants with control over the daily operation of Performance Powersports.

57. Around the same time when the Kinderhook Defendants took over PPG, PPG had already amassed and continued accumulating a staggering amount of account payables owed to Plaintiffs. There can be no doubt that Defendant Godfrey was aware of the debt owed to Plaintiffs, both leading up to, and during, the Acquisition by the Kinderhook Defendants.

58. The Kinderhook Defendants have claimed that they were unaware of the debt owed to Plaintiffs until around April 2022. However, this assertion is at odds with Kinderhook's presumed due diligence prior to the Acquisition and their responsibility for PPG's daily operations post-Acquisition.

59. Throughout 2021, PPG did not remit timely payments, or only made partial payment to the Plaintiffs for the debts owed pursuant to the Vietnam Industrial and Chongqing Industrial Contracts detailed above. Cumulatively, by the end of 2021, PPG owed Plaintiffs a staggering amount of money for goods duly supplied but that had not been paid for. This debt was carried over to, and continued to accrue throughout, 2022.

60. On or around January 22, 2022, Defendant Godfrey directly communicated with Plaintiffs via text message, promising to initiate a partial payment, via a wire payment of

$7,000,000 before January 26, 2022. Further, Defendant Godfrey acknowledged the debt owed and acknowledged that the promised wire was intended to significantly pay down the debt. This communication from Defendant Godfrey was representative of the communications from Godfrey discussed above regarding the debt owed to the Plaintiffs and intended to induce reliance by Plaintiffs.

61. In that message, Defendant Godfrey stated: "I just got a verbal commitment for our equity partners for at least a $7 million wire prior to the 26th. That would bring us current through the 13th of January if our number[s] are correct. . . . I promise to get back to current." The reference to a wire transfer from the equity partners appears to refer to a $7 million payment from Kinderhook intended for Plaintiffs.

62. On January 25, 2022, Defendant Godfrey caused PPG to initiate a wire of only $804,567.36 to Plaintiffs – vastly less than the amount promised and vastly less than what was needed to bring the debt to an end.

63. The statements of Defendant Godfrey and the subsequent partial payment from PPG, as caused by Defendant Godfrey, were intended to induce continued reliance by Plaintiffs on PPG's acknowledgement of the debt and Kinderhook's involvement in bringing the debt current.

64. Upon information and belief, in March 2022, PPG paid approximately $3,000,000 to one of its carriers as payment towards outstanding freight container fees in order to secure the release of ATVs and UTVs supplied by Plaintiffs but did not, at that time, remit any further payment to the Plaintiffs for its outstanding debt.

65. By that time, PPG's failure to remit full payment began directly impacting the Plaintiffs' abilities to pay their own expenses.

66. Accordingly, Plaintiffs requested a meeting with Defendant Kinderhook to discuss

PPG' financial situation and ongoing failures to fulfill its obligations.

    D. <u>Defendant Godfrey and the Kinderhook Defendants Continue to Actively Deceive Plaintiffs</u>

    67. On April 20, 2022, a Zoom meeting was held between: (a) Defendant Kinderhook's Vice-President Kyle Dawson; (b) Defendant Kinderhook's Managing Director Paul Cifelli; and (c) Chongqing Industries' General Manager Ms. He.

    68. Ms. He told Messrs. Dawson and Cifelli exactly how much PPG owed the Plaintiffs and how long that debt had been outstanding. All of this information was known to Defendant Godfrey before and after the Acquisition by the Kinderhook Defendants and which information would, presumably, have been easily discovered as part of any routine due diligence performed by the Kinderhook Defendants throughout 2021 leading up to the Acquisition on October 8, 2021.

    69. Messrs. Dawson and Cifelli expressed surprise at the amount owed and the parties decided to meet in-person. Representatives of Kinderhook claimed to have been unaware of the outstanding debt until April 2022. However, given Kinderhook's apparent sophistication, it is difficult to understand how Kinderhook could have not been aware of this debt prior to and after the October 2021 Acquisition.

    70. On May 12, 2022, an in-person meeting was held in Dallas, Texas between: (a) Song Li, Sr., Chongqing Industries' founder and majority shareholder ("Mr. Li"); (b) Hisun Motors' CEO Mr. Sun; (c) Kinderhook's Vice-President Kyle Dawson; and (d) Kinderhook's Managing Director Paul Cifelli.

    71. During this meeting, Mr. Dawson again represented that the Kinderhook Defendants were unaware of the mounting debt obligations to Plaintiffs until told by Ms. He in the April 20, 2022 Zoom call.

    72. Mr. Dawson indicated that the Kinderhook Defendants would stand behind PPG and

13

ensure that its debts to Plaintiffs were paid. Among various false promises that were made at this meeting and intended to induce reliance by Plaintiffs, Mr. Dawson said that Chongqing Industries was lucky because, without the Kinderhook Defendants' acquisition of PPG, PPG would not be able to pay the debt owed and would have been bankrupt. Despite these statements, that outcome is precisely what has transpired – Plaintiffs were fraudulently induced to provide further goods and services to PPG without remuneration and to delay seeking enforcement of the debt, the debt has not been paid, and PPG is now in bankruptcy.

73. Plaintiffs relied upon these representations and assurances from the Kinderhook Defendants, specifically including the representation that Kinderhook would ensure that the debt was paid. At the time these representations were made, the Kinderhook Defendants knew they were false.

74. Plaintiffs also relied on the representations of Defendant Godfrey that the debt would be paid, including his representation that Kinderhook stood behind PPG to ensure payments were made. At the time these representations were made, Defendant Godfrey knew they were false.

75. Plaintiffs relied on these representations and assurances from the Kinderhook Defendants and Defendant Godfrey by continuing to deliver products to PPG and by abstaining from any action against PPG, Defendant Godfrey, or the Kinderhook Defendants to enforce the debt.

76. The Kinderhook Defendants knew that PPG was insolvent or on the brink of insolvency by early 2022, if not earlier, and that PPG was not in a financial condition to pay the staggering debt owed to Plaintiffs.

77. Nevertheless, the Kinderhook Defendants induced Plaintiffs to believe that <u>Kinderhook</u> would ensure payment of the debts.

78. In May 2022, Messrs. Dawson and Cifelli told Mr. Li that the Kinderhook Defendants wanted to continue the business relationship with the Plaintiffs that that the Kinderhook Defendants and Defendant Godfrey hoped that Plaintiff Chongqing Industries would release a shipment to PPG that had been stopped due to the outstanding debt, and presented Mr. Li with a proposal to remit weekly payments totaling approximately $40,000,000 (of the approximately $65,000,000 owed) by year's end (the "First Proposal").

79. Mr. Li rejected the terms of the First Proposal, suggesting instead that the Kinderhook Defendants and Defendant Godfrey, on behalf of PPG, pay at least $7,000,000 to the Plaintiffs within a month.

80. On behalf of Kinderhook, Messrs. Dawson and Cifelli promised to present a new, second payment plan to the Plaintiffs within the next week.

81. After the meeting, the Kinderhook Defendants did not send the Plaintiffs the second proposed payment plan on time as was promised by Kinderhook.

82. Belatedly, the Kinderhook Defendants sent Plaintiffs the second proposed payment plan on or about June 23, 2022, approximately a month and a half after the May 12, 2022 meeting.

83. During this period, Mr. Sun repeatedly communicated with Mr. Dawson by text and phone, urging the Kinderhook Defendants and Defendant Godfrey to provide the revised proposal as soon as possible.

84. On June 23, 2022, the Kinderhook Defendants, through Mr. Dawson, then sent the second proposed payment plan, which plan included the total payment of approximately $38,000,000 (of the approximately $65,000,000 owed) with weekly payments of $1,000,000 and an additional $1,700,000 the first week of August 2022 until the amount of approximately $38,000,000 was paid (the "Second Proposal").

85. Prior to the May 12, 2022 meeting, Messrs. Dawson and Cifelli had unambiguous knowledge of PPG's financial trouble and knew that, contrary to their representations to Plaintiffs, the Kinderhook Defendants and Defendant Godfrey had no intention to provide, directly or indirectly, any financial resources to meet the agreed-upon payment plan framework.

86. Messrs. Dawson and Cifelli repeatedly made promises on behalf of the Kinderhook Defendants, as the *de facto* controller of PPG, inducing Plaintiffs to believe that the Kinderhook Defendants would satisfy the debt obligation owed to the Plaintiffs.

87. Thereafter, the parties – including Plaintiffs and the Kinderhook Defendants – came to an agreement, either express or implied, on a payment plan that included weekly payments of $1,000,000.

88. When communicating with Plaintiffs, Messrs. Dawson and Cifelli invariably used their email addresses under the domain name of "kinderhook.com", and Mr. Dawson's signature block consistently showed his official title as "Vice President of Kinderhook Industries, LLC" with an address matching the location of the Kinderhook Defendants' office in New York City.

89. During this same time period, in reliance on the statements of the Kinderhook Defendants and Defendant Godfrey, Plaintiffs held off taking any immediate actions to recover the debt owed to them, and Plaintiffs continued supplying goods and services to PPG. This continued provision of goods, and forbearance of enforcement of the debt, further exposed Plaintiffs to PPG's insolvency. As an apparently sophisticated parent company with over $5 billion of committed capital and the controlling entity of PPG, Kinderhook must have been aware of PPG's insolvency and precarious financial condition but intentionally hid that information from Plaintiffs in order to induce Plaintiffs' reliance on false promises of payment. Plaintiffs' continuing reliance resulted in ongoing financial harm to Plaintiffs.

90. In the summer of 2022, the Kinderhook Defendants made a preliminary acquisition offer to Hisun Motors and Chongqing Industries. This offer was intended to induce further detrimental reliance by Plaintiffs and to distract Plaintiffs from seeking to enforce the massive debt owed to them, for which Kinderhook had expressed responsibility for ensuring payment. Nevertheless, Plaintiffs did not accept the acquisition offer.

91. In or around June 2022, Defendant Kinderhook's Vice-President Kyle Dawson visited Mr. Sun at Hisun Motors and introduced James A. Pearson as PPG's newly installed CEO. Kinderhook had terminated Defendant Godfrey as CEO of PPG by that time.

92. Throughout this time, Kinderhook was not transparent with Plaintiffs about the true condition of PPG and instead continued to seek to induce reliance by Plaintiffs – to benefit themselves – through the fictitious prospect of payment of the debt owed to Plaintiffs.

93. Plaintiffs continued to request immediate and timely payments under the payment plan framework, to which Kinderhook was a party.

94. As a result, starting in early June 2022, the Kinderhook Defendants and Defendant Godfrey began to cause PPG to make partial payments against the debt owed to Plaintiffs, pursuant to the parties' agreed-upon payment plan framework.

95. However, these partial payments did not last long and were solely intended by the Kinderhook Defendants and Defendant Godfrey to induce further inaction by the Plaintiffs on the outstanding debt – while PPG slipped further into insolvency and the chances of payment became slimmer – in addition to securing additional shipments and releases of goods by the Plaintiffs, for the financial benefit of Kinderhook.

96. Between approximately June 2, 2022 and July 15, 2022, PPG, under the control and at the direction of the Kinderhook Defendants, and with guidance from Defendant Godfrey as CEO

and/or a member of the PPG board, remitted 6 weekly installment payments of $1,000,000 each to Plaintiffs, to be applied to the outstanding debt.

97. In reliance upon on the Kinderhook Defendants and Defendant Godfrey's misrepresentations, the false hope created by the Kinderhook Defendants and Defendant Godfrey regarding continued payments on the debt, and the Kinderhook Defendants and Defendant Godfrey's repeated false indications to Plaintiffs about PPG's financial condition and ability to pay what was owed, Plaintiff Chongqing Industries authorized the release of the shipment that had been stopped, valued at more than $2,000,000.

98. After Plaintiff Chongqing Industries had released the shipment in or about June and July 2022, both the Kinderhook Defendants and Defendant Godfrey broke their promises that these payments to Plaintiffs would continue.

99. On July 29, 2022, PPG, under the control and at the direction of the Kinderhook Defendants and Defendant Godfrey (who remained on the board of directors, although no longer in charge as CEO), remitted a small payment of $500,000.  This was significantly less than the weekly payment amounts agreed under the provisions of the payment plan.

100. Around the time of that $500,000 payment, Paul O'Leary ("Mr. O'Leary"), PPG's newly installed controller by the Kinderhook Defendants, reiterated the false promise that PPG would continue to make payments under the payment plan, including a promise of an upcoming $1,000,000 weekly payment.  Upon information and belief, Kinderhook knew about and supported this statement to Plaintiffs.

101. Around this time, Mr. Sun met with Mr. Dawson at the Kinderhook Defendants' office in Manhattan.

102. During this meeting Mr. Dawson admitted to Mr. Sun that PPG's sales were slow

18

because the market was not good.  Kinderhook was aware of the financial results and projections

of its subsidiary, PPG, and knew its precarious financial position and likely insolvency.

103. On August 12, 2022, PPG, under the control and at the direction of the Kinderhook

Defendants and Defendant Godfrey, remitted a partial payment of $500,000 to Plaintiffs, in breach

of the payment plan.

104. On or about August 21, 2022, Mr. O'Leary again advised that PPG would not be able

to meet its financial obligations pursuant to the payment plan because, purportedly, it had: (a) a

large royalty payment it had to pay the week prior; and (b) slowing cash receipts on its "Big Box"

items.

105. To date, the Defendants have failed to make, directly or indirectly through PPG, any

further payments to Plaintiffs for the debt owed to Plaintiffs.

106. Nevertheless, on or about September 24, 2022, the Kinderhook Defendants sent a new

proposal to Plaintiffs to address the debt still owed to Plaintiffs.  The Kinderhook Defendants thus

further confirmed their involvement in overseeing and controlling payments to Plaintiffs for the

debt owed, and the Kinderhook Defendants further attempted to induce detrimental reliance by

Plaintiffs.  Under the proposal, either (a) PPG would pay $15,000,000 to Plaintiffs and Hisun

Motors to pay down the balance owed *pro rata* (together with the partial payments made

previously, for a total of $22,000,000 on a debt of about $65,000,000 (34 cents on the dollar)); or

(b) the conversion of $20,000,000 of outstanding accounts receivable into $15,000,000 worth of

preferred shares in PPG (equaling 16.7% of preferred shares) and $5,000,000 worth of Class A

Common shares in PPG (equaling 8.3% of Class A Common shares); or (c) a $30,000,000

revolving credit/line of credit with the remaining accounts receivable placed on the credit/line of

credit and paid down over time.

19

107. Plaintiffs did not accept this new proposal.

108. Upon information and belief, around the same time, PPG, at the direction of, and with the knowledge of, the Kinderhook Defendants and Defendant Godfrey, conducted a "fire sale," of millions of dollars' worth of inventory supplied by Plaintiffs, with Tractor Supply Company (one of the largest distributors of PPG's products by volume) acquiring the unpaid inventory at a steeply discounted price.

109. Upon information and belief, the "fire sale" took place without any prior notice to Plaintiffs because it was secretly orchestrated by the Kinderhook Defendants, among others. During this time, the Kinderhook Defendants continued to seek to induce Plaintiffs' detrimental reliance and continued to make false promises to Plaintiffs regarding repayment of the debt. The Kinderhook Defendants thereby induced Plaintiffs to continue to forbear taking immediate actions to recover the staggering debt owed by the Kinderhook Defendants' subsidiary PPG under the original contracts and also owed by Kinderhook based upon their participation in the payment plan agreement from mid-2022.

110. If the Kinderhook Defendants and Defendant Godfrey had not made the false promises to Plaintiffs, discussed at length *supra*, Plaintiffs would undoubtedly have taken earlier legal actions to protect their interests in the wrongfully disposed inventory and the outstanding debt, and Plaintiffs would not have been financially harmed by continuing to deliver goods to PPG and Defendants without a realistic prospect of repayment. The Kinderhook Defendants and Defendant Godfrey knew, at all relevant times, that Plaintiffs had no realistic prospect of repayment from PPG, given its precarious financial condition, but they failed to disclose this information to Plaintiffs, instead making continued promises of payments.

111. The Kinderhook Defendants and Defendant Godfrey's misrepresentations and

purposeful fraudulent misstatements induced Plaintiffs' reliance and forbearance, and this reliance has directly resulted in severe losses.

112. Ultimately, the Kinderhook Defendants caused PPG to file a petition for Chap. 11 bankruptcy protection with the United States Bankruptcy Court for the District of Delaware on or about January 16, 2023, which proceeding has been assigned case number 1:23-bk-10050 (the "Petition"). In addition, the related entities mentioned above – Performance Powersports Group Investor LLC, Performance Powersports Group Holdings, Inc., and Performance Powersports Group Purchaser, Inc. – all filed petitions for Chapter 11 bankruptcy protection concurrently with the filing of the Petition[2].

113. The Kinderhook Defendants and Defendant Godfrey had long known that PPG had no chance of repaying the debt owed to the Plaintiffs due to its poor financial condition and insolvency.

114. The Kinderhook Defendants have exercised control and domination of PPG as evidenced by, *inter alia*, the unilateral dismissal of PPG's managers, officers, and employees and the appointment of long-time Kinderhook employees in those vacated management positions and seats on the board of directors for PPG, and the Kinderhook Defendants' subsequent total control and dominion of PPG's finances, policies, and day-to-day business operations.

115. The Kinderhook Defendants and Defendant Godfrey issued a multiplicity of empty proposals, promises, and reassurances to induce further financial harm to Plaintiffs regarding the staggering debt owed to Plaintiffs, all of which were directly communicated throughout the years

---

[2] In re Performance Powersports Group Investor LLC, case no.: 1:23-bk-10047; In re Performance Powersports Group Holdings, Inc., case no.: 1:23-bk-10048; and In re Performance Powersports Group Purchaser, Inc., case no.: 1:23-bk-10049 (together with the Petition, the "PPG Petitions"). The four estates are jointly administered under case no.: 1:23-bk-10047.

of 2021 and 2022 to Plaintiffs by the Kinderhook Defendants or Defendant Godfrey.

116. The Kinderhook Defendants themselves and Defendant Godfrey repeatedly advanced the empty proposals to fraudulently induce Plaintiffs' reliance thereby causing Plaintiffs to refrain from taking legal action and to deliver further goods and services to Defendants,, with no intention of actually fulfilling those financial obligations of the various hollow proposals and with the knowledge that PPG was in very poor financial condition and/or insolvent and would be incapable of fulfilling those financial obligations.

117. As discussed above, Defendant Godfrey was paid approximately $69,000,000 as part of the Acquisition in addition to retaining a paid position as CEO of PPG until approximately June 2022 and remaining thereafter on PPG's Board of Directors.

118. Defendant Godfrey greatly benefited from the Kinderhook Defendants' acquisition of PPG and had a strong motivation to work in concert with Kinderhook, and for his own personal benefit, to string Plaintiffs along with false promises. Defendant Godfrey also stood to benefit from the continued fraudulent inducement of Plaintiffs to forbear enforcement of the massive debt accumulated under Defendant Godfrey's watch prior to and shortly after the Acquisition, and he stood to benefit personally from the fraudulent inducement of Plaintiffs to continue to deliver goods and services to PPG.

119. The Kinderhook Defendants and Defendant Godfrey have committed numerous wrongful acts, all of which have resulted in direct and significant financial harm to Plaintiffs.

## COUNT I
### (Intentional Misrepresentation – All Defendants)

120. Plaintiffs reallege, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

121. The Kinderhook Defendants and Defendant Godfrey repeatedly made various false

statements, promises, and misrepresentations, as described above, to fraudulently induce Plaintiffs to continue doing business with PPG, to continue providing products to PPG, and to forbear taking any legal action against PPG, the Kinderhook Defendants, and/or Defendant Godfrey.

122. The Kinderhook Defendants and Defendant Godfrey knew that PPG was insolvent or nearly insolvent and that the promised payments would not be made because PPG was not in good enough financial condition to do so.

123. The Kinderhook Defendants and Defendant Godfrey intended to induce Plaintiffs' detrimental reliance. Plaintiffs relied upon these statements and Plaintiffs were harmed as a result.

124. Specific examples of the various false statements and misrepresentations made by the Kinderhook Defendants and Defendant Godfrey to the Plaintiffs are alleged above and include but are not limited to the following:

a. Defendant Godfrey induced Plaintiffs to enter into very significant purchase agreements with PPG before and after the Acquisition, despite having inside information about PPG's precarious or insolvent financial condition and other financial obligations;

b. Defendant Godfrey repeatedly acknowledged and promised payment of the debt owed by PPG to Plaintiffs prior to the Kinderhook Defendants' takeover, while knowing that the debts would not be paid, and induced Plaintiffs to continue delivering goods and services to PPG;

c. Defendant Godfrey repeatedly acknowledged the debt and misrepresented to Plaintiffs that PPG – through receipt of funds from its "equity partners," i.e., Kinderhook – would make a partial payment of $7 million in January 2022, and continued making promises of payments even when PPG only made a payment of a small fraction of that amount, thus inducing reliance by Plaintiffs on the prospect of a payment plan or ongoing payments to satisfy the obligation;

d. The Kinderhook Defendants advised Plaintiffs they, as a well-established private investment firm, would be acquiring PPG along with its debts and that they wished for Plaintiffs to continue providing goods and services as before, thus intending to induce Plaintiffs' reliance on Kinderhook as a careful and responsible steward of PPG, at the time when there were sizable receivables that were already owed to Plaintiffs;

e. The Kinderhook Defendants falsely stated that they would stand behind PPG and ensure that its obligations to Plaintiffs were paid;

f. The Kinderhook Defendants falsely stated that Plaintiffs were lucky because, without

the Kinderhook Defendants' acquisition of PPG, PPG would not be able to pay the debt owed and would have been bankrupt;

g. During the May 12, 2022 meeting, the Kinderhook Defendants told Mr. Li that the Kinderhook Defendants wanted to continue the business relationship with Plaintiffs and hoped that Plaintiffs would release a shipment to PPG that had been stopped due to its outstanding debt;

h. The Kinderhook Defendants and Defendant Godfrey repeatedly misrepresented that they would cause PPG to make the required payments to Plaintiffs that were due; and

i. The Kinderhook Defendants and Defendant Godfrey repeatedly misrepresented PPG's financial health, its ability to repay the debt owed to Plaintiffs, and its overall health and performance as a business, including but not limited to making promises that payments owed to Plaintiffs would be able to be made through PPG.

125. Plaintiffs justifiably relied on the Kinderhook Defendants and Defendant Godfrey's repeated false statements and misrepresentations.

126. Plaintiffs were and continue to be directly harmed by their reliance, including but not limited to by continuing to supply goods to PPG in June, July, and August 2022, and by forbearing on bringing legal action to enforce the amounts owed while PPG slipped further into or towards insolvency.

127. The Kinderhook Defendants and Defendant Godfrey made the false statements and misrepresentations outlined above in order to induce Plaintiffs to continue doing business with and providing goods to PPG and to refrain from taking legal action to recoup their losses.

128. At all times relevant, the Defendants had no intention to make, or cause to be made, full repayment of the debts owed to the Plaintiffs.  Rather, the Defendants had the intention of inducing Plaintiffs to continue supplying goods and services to Plaintiffs' detriment, while simultaneously intending to retain the goods and services so provided for their own direct or indirect benefit and enrichment, including any sales proceeds derived therefrom.

129. Plaintiffs justifiably relied on the false statements and misrepresentations of the Kinderhook Defendants and Defendant Godfrey.

130. As a direct consequence of those false statements and misrepresentations, the Plaintiffs have suffered damages in an amount to be proved at trial.

## COUNT II
### (Negligent Misrepresentation – All Defendants)

131. Plaintiffs reallege, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

132. In the alternative, to the extent the Kinderhook Defendants and Defendant Godfrey did not make the above misrepresentations with the intention to defraud Plaintiffs, they made those statements negligently and with carelessness.

133. The Kinderhook Defendants Defendant Godfrey expected that Plaintiffs would rely upon those statements.

134. As the parent company of PPG as a result of the Acquisition, the Kinderhook Defendants possessed special knowledge about the financial condition and operations of PPG, along with having control over those operations.

135. As the founder, CEO, and board member of PPG, Defendant Godfrey possessed special knowledge about the financial condition and operations of PPG, along with having control over those operations during certain periods of time.

136. Plaintiffs did justifiably rely upon these statements by the Kinderhook Defendants and Defendant Godfrey and were harmed as a result.

137. As a direct consequence of those false statements and misrepresentations, the Plaintiffs have suffered damages in an amount to be proved at trial.

## COUNT III
### (Breach of Contract – Payment Plan – All Defendants)

138. Plaintiffs reallege, reaffirm, and incorporate by reference the paragraphs above as if

fully set forth herein.

139. As a result of the parties' discussions in 2022, Plaintiffs, the Kinderhook Defendants, and non-party PPG reached a new agreement under a payment plan. Kinderhook was a party to that new agreement and responsible for causing PPG to make payments to Plaintiffs.

140. As CEO and/or board member of PPG, Defendant Godfrey exerted influence over PPG and contributed to or caused PPG not to make the payments owed to Plaintiffs pursuant to the payment plan agreement.

141. By failing to cause PPG to make payments to Plaintiffs as agreed, the Kinderhook Defendants and Defendant Godfrey breached the agreement.

142. The agreement was reached through written negotiations and oral representations, particularly between Kinderhook and Plaintiffs.

143. To the extent the agreement was not express, either orally or in writing, it was implied by the parties' course of conduct following negotiations.

144. Kinderhook and/or Defendant Godfrey caused PPG to make several payment-plan payments to Plaintiffs in the summer of 2022, thus demonstrating its agreement to be bound under the payment plan agreement.

145. Thereafter, the Kinderhook Defendants and/or Defendant Godfrey breached the payment plan agreement by causing PPG not to make the balance of the payments owed.

146. Plaintiffs were harmed by this breach.

147. Plaintiffs were harmed in an amount to be proved at trial.

**COUNT IV**
**(Fraudulent Transfer – Actual Fraudulent Intent and Constructive Fraudulent Intent – All Defendants)**

148. Plaintiffs reallege, reaffirm, and incorporate by reference the above paragraphs as if

fully set forth herein.

149. In or around September 2022, PPG conducted a "fire sale" liquidation of millions of dollars' worth of inventory supplied by Plaintiffs, with a sale to Tractor Supply Company (one of the largest distributors of PPG's inventory and products), thereby disposing of the inventory for a steeply discounted price. Upon information and belief, PPG conducted the fire sale at the direction of the Kinderhook Defendants and with the aid of Defendant Godfrey.

150. At the time of the transfers, Defendants had not caused PPG to pay Plaintiffs for all of the product PPG had received from Plaintiffs, nor did Defendants provide Plaintiffs with any form of notice that the liquidation was planned or of any of the details thereof, or any of the proceeds derived therefrom.

151. At the time of the transfers, the Plaintiffs were creditors of the Defendants and of PPG, as that term is defined by New York Debtor and Creditor Law Section 270(d).

152. These transfers constitute avoidable fraudulent transfers under New York state law or other applicable state law.

153. Defendants caused these transfers with the actual intent to defraud the Plaintiffs.

154. At the time of the transfers, PPG was under the domination and control of the Kinderhook Defendants. Defendant Godfrey remained a senior member of the board of directors.

155. In addition or in the alternative, Defendants caused the transfers without receiving reasonably equivalent value in exchange for the transfer and intended to cause PPG to incur, or believed or reasonably should have believed that they would cause PPG to incur, debts beyond its ability to pay as they became due, and that PPG was, or would become as a result of the transfers, insolvent.

156. Accordingly, the Plaintiffs are entitled to a judgment against the Defendants (i)

avoiding and disregarding the fraudulent transfers initiated in or around September 2022 to Tractor Supply Company, aggregated together; (ii) allowing Plaintiffs to attach or levy execution upon those funds or any chattels derived therefrom; and (iii) awarding Plaintiffs the value of those transfers, including interest, to the maximum extent allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray to this Court for the following relief:

1. An award for Plaintiffs against the Kinderhook Defendants and Defendant Godfrey for compensatory damages, equitable relief, attorney's fees, costs, and other relief, including but not limited to damages in the amount of no less than $60,000,000 based upon the amounts owed to Plaintiffs pursuant to the outstanding Vietnam Industrial Contracts and Chongqing Industrial Contracts;

2. An award for Plaintiffs against the Kinderhook Defendants and Defendant Godfrey for intentional misrepresentation in an amount to be determined at trial;

3. An award for Plaintiffs against the Kinderhook Defendants and Defendant Godfrey for negligent misrepresentation in an amount to be determined at trial;

4. An award for Plaintiffs against the Kinderhook Defendants and Defendant Godfrey for breach of contract in an amount to be determined at trial;

5. Avoiding the voidable transfers caused by the Kinderhook Defendants and Defendant Godfrey pursuant to applicable state law and awarding Plaintiffs the aggregate value of the inventory fraudulently transferred, including interest and appreciation, to the maximum extent permitted by law;

6. Reasonable attorneys' fees pursuant to New York Debtor and Creditor Law § 276-A;

7. Interest and costs; and

8. For all other relief, both legal and equitable, that this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable.


Dated: February 16, 2023                    Respectfully submitted,


                                             DGW KRAMER LLP

                                       By: /s/ Rongping Wu
                                           Rongping Wu, Esq.
                                           Katherine Burghardt Kramer, Esq.
                                           DGW KRAMER LLP
                                           One Rockefeller Plaza, 10th Fl.
                                           Suite 1060
                                           New York, NY 10020
                                           T: (917) 633-6860
                                           F: (917) 630-6183
                                           lwu@dgwllp.com
                                           kkramer@dgwllp.com
                                           *Attorneys for Plaintiffs*