## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PERFORMANCE POWERSPORTS GROUP | ) |
| INVESTOR, LLC, *et al.*,[1] | ) Case No. 23-10047 (LSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Related to Docket Nos. 13, 52, 168, and 156 |
|  | ) |

## NOTICE OF REVISED PROPOSED FINAL DIP ORDER

**PLEASE TAKE NOTICE** that on January 16, 2023, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 13] (the "DIP Motion").

**PLEASE TAKE FURTHER NOTICE** that on January 18, 2023, the Court entered an order approving the DIP Motion on an interim basis [Docket No. 52] (the "Interim DIP Order").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

**PLEASE TAKE FURTHER NOTICE** that on February 27, 2023, the Court entered a second interim order approving the DIP Motion on an a further interim basis [Docket No. 168] (the "Second Interim DIP Order").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") to consider the DIP Motion on a final basis is currently scheduled to commence on March 20, 2023 at 10:00 a.m. (ET) Prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that on February 21, 2023, the Debtors filed the *Notice of Proposed Final DIP Order* [Docket o. 156] and attached there to as Exhibit A, a proposed Final DIP Order (the "Initial Proposed Final DIP Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors and the DIP Lender have revised the Initial Proposed Final DIP Order to address objections raised by the official committee of unsecured creditors granting the DIP Motion on a final basis (the "Revised Proposed Final DIP Order"), a copy of which is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a redlined version of the Revised Proposed Final DIP Order marked to reflect changes from the Initial Proposed Final DIP Order filed at Docket No. 156.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit C** is a redlined version of the Revised Proposed Final Order marked to reflect changes from the Second Interim DIP Order entered at Docket No 168.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Proposed Final DIP Order at the Hearing.

| | |
|---|---|
| Dated:  March 17, 2023<br>Wilmington, Delaware | */s/ Domenic E. Pacitti* |

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email:  dpacitti@klehr.com
          myurkewicz@klehr.com
          sveghte@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:  (215) 569-3007
Facsimile:  (215) 568-6603
Email:  mbranzburg@klehr.com

*Counsel for the Debtors and Debtors in Possession*

10420893.v2

# EXHIBIT A

## Revised Proposed Final DIP Order

10420893.v2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP | ) Case No. 23-10047 (LSS) |
| INVESTOR, LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 13, 33, 54, 168** |

**FINAL ORDER PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507
(I) AUTHORIZING THE DEBTORS TO OBTAIN
SENIOR AND JUNIOR SECURED SUPERPRIORITY
POSTPETITION FINANCING; (II) GRANTING LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS;
(III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING
THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (the "<u>Debtors</u>") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(e), and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure (the "<u>Local Rules</u>") of the United States Bankruptcy Court for the District of Delaware (this "<u>Court</u>"), seeking, *inter alia*:

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and DIP Term Sheet (as defined herein), as applicable.

(1) authorization for Performance Powersports Group Purchaser, Inc. (the "DIP Borrower") to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for certain of the DIP Borrower's direct parent and direct and indirect subsidiaries as guarantors (the "DIP Guarantors," and, together with the DIP Borrower, the "DIP Obligors") to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth herein and in the executed term sheet attached hereto as Exhibit A[3] to the Initial Interim Order (as defined below) (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Term Sheet," and together with all agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, or notes) that are intended from time to time to effectuate the terms of the DIP Term Sheet, including the Initial Interim Order, the Second Interim Order (defined below), and this Final Order, the "DIP Loan Documents") in all respects, the DIP Borrower's obligations under the DIP Facility, consisting of a junior secured "new money" term loan credit facility (the "DIP Facility"), on the terms and conditions set forth in the DIP Term Sheet, by and among the DIP Obligors and Tankas Funding VI, LLC (the "DIP Lender"), in an aggregate principal amount of $10 million in term loan commitments having been made available as term loans (the "DIP Loans") to the DIP Borrower following entry of the Initial Interim Order and satisfaction of the other conditions set forth therein in an initial amount of $3.5 million (the "Initial DIP Loan") and having been made available to the DIP Borrower following entry of the Second Interim Order and satisfaction of the other conditions

---

[3] The DIP Term Sheet may be superseded and replaced in all respects by one or more DIP Loan Documents to be executed by the DIP Borrower, the DIP Guarantors and the DIP Lender, in form and substance consistent with the DIP Term Sheet and otherwise acceptable only to the DIP Lender.

set forth in the DIP Term Sheet that apply to borrowing following entry of this Final Order (as defined below) in an amount not to exceed $1.8 million (the "<u>Second DIP Loan</u>") (as if the Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of this final order approving entry into the DIP Facility (this "<u>Final Order</u>"); *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.7 million) of such DIP Facility on one additional business day after the borrowing (if any) in connection with this Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree));

(2)    authorization for the Debtors to execute, deliver, and enter into the DIP Term Sheet and any other DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)    authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Loan Documents, including any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the DIP Lender (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting all Debtors', and/or DIP Guarantors', obligations of any kind under the DIP Loan Documents (such obligations collectively, the "<u>DIP Obligations</u>");

(4)    authorization for the Debtors to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this Final Order and the

applicable Approved Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Term Sheet) to:  (A) pay costs, premiums, fees, and expenses related to the above-captioned chapter 11 cases (the "Chapter 11 Cases") and in connection with the DIP Facility and the Debtors' use of Cash Collateral and (B) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents);

(5)    the granting and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lender, in respect of all DIP Obligations, subject only to the Carve Out (as defined below);

(6)    the granting to the DIP Lender of valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including any "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein and in the other DIP Loan Documents;

(7)    authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (as defined below), and providing adequate protection to the Prepetition Secured Parties for, among other things, any diminution in value of the Prepetition Collateral, including in respect of Cash Collateral, from and after the Petition Date to the extent such diminution in value occurs on account (without limitation) of the Debtors' sale, lease or use of the Prepetition Collateral, including Cash Collateral, the imposition, enforcement, and consequences of the automatic stay pursuant to section 362 of the Bankruptcy Code.

(8)   authorizing the Debtors to incur the DIP Obligations, including the incurrence of senior liens on the Unencumbered Collateral (as defined below), the incurrence of junior liens on the Prepetition Collateral, the subordination of Prepetition Liens to the extent set forth herein, the administration of these Chapter 11 Cases, and the priming of the Prepetition Secured Parties' respective interests in the Prepetition Collateral by the Carve Out (as defined below).

(9)   the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the other DIP Loan Documents to the extent hereinafter set forth;

(10)   upon entry of this Final Order, a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and Prepetition Collateral and certain rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)   a waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order; and

(12)   the Court to grant such other and further relief as is just and proper.

The initial hearings on the Motion having been held by this Court on January 18, 2023 (the "Initial Interim Hearing") and February 23, 2023 (the "Second Interim Hearing"), and upon the record made by the Debtors at the Initial Interim Hearing, Second Interim Hearing, and final hearing on March 20, 2023 (the "Final Hearing"), including the Motion and the *Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") and the *Declaration of Steven Bremer in Support of Cash Collateral and DIP Motion* and the *Declaration of Alyssa Lozynski in Support of Cash Collateral and DIP Motion* (collectively, the "DIP Declarations"), any exhibits in connection with the foregoing, and the

filings and pleadings in these Chapter 11 Cases, the Court having entered the Initial Interim Order and the Second Interim Order, and the Court having found that the final approval of the relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the final approval of the relief requested in the Motion is fair and reasonable and in the best interest of the Debtors and their Estates; and appropriate and adequate notice of the Motion, the final approval of the relief requested therein, and the Final Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "30 Largest Unsecured Creditors"); (c) counsel to the DIP Lender; (d) counsel to the Prepetition Secured Parties; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (i) counsel for the Committee; (j) the attorneys general of Delaware and Arizona; (k) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien on the Debtors' assets; (l) the Debtors' cash management banks; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior*

*Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 54] (the "Initial Interim Order"); and having entered the *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 168] (the "Second Interim Order"); and the opportunity for interim and final hearings on the Motion was appropriate under the circumstances; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    Petition Date.  On January 16, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in the Chapter 11 Cases.

B.      Jurisdiction and Venue.    This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief granted hereby are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013, 9014, and 9019 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.      Committee Formation.   On January 30, 2023, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 82].

D.      Notice.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Initial Interim Hearing, the Second Interim Hearing, Final Hearing, and the relief granted under this Final Order, constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and the Local Rules.

E.      Parties' Acknowledgments, Agreements, and Stipulations.  In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility, access to Cash Collateral, and subordination of the DIP Liens (as defined herein) to the Carve Out and as a condition to the DIP Lender providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the limitations, provisions and rights afforded pursuant to paragraph 4.9 of this Final Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)      *Existing First Lien Credit Agreement.*  Pursuant to that certain Credit Agreement, dated October 8, 2021, among Performance Powersports Group Purchaser, Inc., (in such capacity, the "First Lien Borrower"), the Loan Parties (as defined therein) party thereto (collectively, with the First Lien Borrower, the "First Lien Obligors"), the lenders party thereto (the "First Lien Lenders"), Twin Brook Capital Partners, LLC, as agent (the "First Lien Agent"; and together with the First Lien Lenders, the "Prepetition Secured Parties") (as amended, restated, supplemented or otherwise modified, the "Prepetition First Lien Credit Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Documents"), the First Lien Lenders provided secured loans to the First Lien Borrower.

(ii)      *Prepetition Obligations.*  As of the Petition Date, the First Lien Obligors were indebted to the Prepetition Secured Parties under the Prepetition First Lien Credit Agreement in respect of outstanding Loans (as defined in the Prepetition First Lien Credit Agreement) in an aggregate principal amount of not less than $52 million under the Prepetition First Lien Credit Agreement (the "First Lien Loans"), plus interest accrued and accruing thereon, together with all costs, fees, termination fees, fees and expenses (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements of the First Lien Agent's or the First Lien Lender's attorneys, advisors, accountants, and other consultants, and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the First Lien Obligors' obligations pursuant to the Prepetition First Lien Credit Agreement, and any other "Obligations"

as defined therein (collectively, the "Prepetition Obligations"), which Prepetition Obligations are legal, valid, and binding on the Debtors.

(iii)     *Prepetition Collateral.*    As more fully set forth in the Prepetition Documents, as of the Petition Date, the First Lien Obligors granted to the Prepetition Secured Parties, first priority security interests in and continuing liens to the Prepetition Secured Parties (the "Prepetition Liens") upon substantially all of their tangible and intangible assets and properties as Collateral (as defined in the Prepetition Documents) for the Prepetition Obligations (the "Prepetition Collateral")).

(iv)     *Indemnity*.  The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, the DIP Lender shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct, in each case, as determined by final order in a court of competent jurisdiction.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph (12)E(iv) or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender, as the case may be.

(v)    *Sale and Credit Bidding*.  The Debtors admit, stipulate, acknowledge, and agree that the DIP Lender shall have the right to credit bid the entirety of (or any portion of) the DIP Obligations; *provided* that any such credit bid shall require (i) assumption in full of the Prepetition Obligations, (ii) payment in full in cash of the Prepetition Obligations, or (iii) such other treatment satisfactory to the Prepetition Secured Parties.  The Debtors admit, stipulate, acknowledge, and agree that the Prepetition Secured Parties shall have the right to credit bid the entirety of (or any portion of) the Prepetition Obligations.

(vi)    *Release*. The Debtors stipulate and agree that no party has been or will be granted standing by the Debtors to prosecute the Released Claims (as defined in paragraph 4.14). including the litigation trust that will be created pursuant to the Stalking Horse Purchase Agreement.

F.    Findings Regarding the Postpetition Financing.

(i)    Postpetition Financing.  The Debtors have requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this Final Order and satisfaction of the conditions set forth in the DIP Loan Documents and obtaining the consent of the Prepetition Secured Parties, to extend the DIP Loans on the terms and conditions set forth in this Final Order and the DIP Loan Documents, respectively.

(ii)    Need for Postpetition Financing.  The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, pay employees, taxes, and certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the

benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in this Final Order and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

    (iii) <u>No Credit Available on More Favorable Terms</u>.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) other than as set forth herein, credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors assert in the Motion, the First Day Declaration, and in the DIP Declaration, and demonstrated at the Initial Interim Hearing, the Second Interim Hearing, and the Final Hearing, that they have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In light of the foregoing, and considering all alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    <u>Budget</u>.  The Debtors have prepared and delivered to the DIP Lender and First Lien Agent a budget approved by the DIP Lender, a copy of which in the most recent form so approved is attached hereto as **<u>Exhibit B</u>** (such approved budget and each subsequent budget approved by the DIP Lender then in effect, an "<u>Approved Budget</u>").  The Approved Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.  The Debtors believe that the Approved Budget is reasonable under the facts and circumstances.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for herein.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for herein.  The First Lien Agent and Prepetition Secured Parties are relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget and this Final Order in determining to consent to the use of Cash Collateral and entering into the postpetition financing arrangements provided for herein.

(v)    <u>Certain Conditions to DIP Facilities</u>.  The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by this Final Order; (b) the DIP Lender being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject and junior to the Carve Out, (x) automatically perfected and unavoidable first

priority security interests in, and liens on, all cash borrowed under the DIP Facility (which shall constitute cash collateral of the DIP Lender) and which cash shall be held in a segregated account in accordance with the DIP Loan Documents (the "DIP Proceeds") and unencumbered real and personal property of the Debtors, whether now existing or hereafter arising and wherever located, tangible and intangible (collectively, the "Unencumbered Collateral"), which, in both cases, shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds or Unencumbered Collateral; (y) automatically perfected and unavoidable first priority security interests in, and liens on, the proceeds of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")); and (z) automatically perfected and unavoidable junior second priority priming security interests in, and all liens on, all real and personal property of the Debtors securing the Prepetition First Lien Credit Agreement (collectively hereinafter referred to as the "DIP Collateral,") and (c) the First Lien Agent and Prepetition Secured Parties' receipt of the adequate protection granted to them in this Final Order. For the avoidance of doubt, DIP Collateral shall not include the DIP Obligors' leasehold interests, but instead shall include solely the proceeds of any such leasehold interests.

(vi)    Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender and the Prepetition Secured Parties, including pursuant to this Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, the Adequate Protection Liens, and the

DIP Superpriority Claims (as defined below), the Prepetition Liens, and the Prepetition Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(vii)    Credit Bid Rights.  The Debtors hereby acknowledge and agree that they shall not object, or support any objection, to the DIP Lender's right to credit bid up to the full amount of its DIP Obligations, and the Prepetition Secured Parties' right to credit bid up to the full amount of its Prepetition Obligations including in each case, without limitation, any accrued interest and expenses, subject to the terms of the Bid Procedures, in any sale effectuated through section 363 of the Bankruptcy Code, whether in a chapter 11 or chapter 7 proceeding.

(viii)    Sections 506(c) and 552(b).  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in the Initial Interim Order, Second Interim Order, and this Final Order that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out, and (c) the use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan Documents, and the terms of this Final Order, the Prepetition Secured Parties and the DIP Lender are entitled to receive (x) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)    <u>Good Cause</u>.  Good cause has been shown for the entry of this Final Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of their sound business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Lender, the First Lien Agent, and the Prepetition Secured Parties.

(x)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

Based upon the foregoing, and upon the record made before the Court at the Initial Interim Hearing, Second Interim Hearing, and Final Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.    <u>Authorization and Conditions to Financing</u>.

1.1    <u>Motion Granted</u>.  The Motion is granted on a final basis to the extent provided in this Final Order.  Any objections to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

1.2     Authorization of DIP Financing.

(a)     The Debtors are hereby authorized and empowered to immediately borrow, incur, and guarantee (as applicable), DIP Loans, pursuant to the terms and conditions of the DIP Term Sheet and any other DIP Loan Documents, in an aggregate principal amount not to exceed $10 million, with the Initial DIP Loan having been made available upon entry of the Initial Interim Order and the Second DIP Loan having been made available following entry of the Second Interim Order and upon satisfaction of other conditions set forth in the DIP Loan Documents (as if the Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of this Final Order and upon satisfaction of other conditions set forth in the DIP Loan Documents and consistent with the applicable Approved Budget and the DIP Loan Documents; *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.7 million) of such DIP Facility on one additional business day after the borrowing (if any) in connection with this Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree)).

(b)     The Debtors are hereby authorized to (i) borrow under the DIP Facility in accordance with, and for the purposes permitted by, the DIP Loan Documents (including this Final Order), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Loan Documents, all pursuant to the terms and conditions of this Final Order and the other DIP Loan Documents, and (iii) use the Cash Collateral for the purposes described in this Final Order.  The Approved Budget is hereby approved in all respects. The Debtors shall use the proceeds of the DIP Facility solely in a manner consistent with the Approved Budget and the terms and conditions of the DIP Loan Documents (including this Final Order).

1.3     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in a manner consistent with the Approved Budget, the Debtors are authorized to use Cash Collateral.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including with respect to the Carve Out), the DIP Facility, or the DIP Loan Documents.

1.4     <u>Financing Documents</u>.

(a)     <u>Authorization</u>.  The Debtors are hereby authorized and directed to enter into, execute, deliver, and perform all obligations under the DIP Term Sheet and any other DIP Loan Documents, each of which are approved pursuant to this Final Order.  No obligation, payment, transfer, or grant of security hereunder or under the other DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)     <u>Approval; Evidence of Borrowing Arrangements</u>.    All terms, conditions, and covenants set forth in the DIP Term Sheet and any other DIP Loan Documents are approved.  All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Obligors, and the DIP

18

Lender, and (ii) the Debtors' assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of this Final Order and the other DIP Loan Documents for all purposes, including to the extent applicable, the payment of all DIP Obligations arising thereunder, including all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Lender's closing, commitment and exit fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Loan Documents.  Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Final Order and the other DIP Loan Documents.

(c)    Payment of DIP Fees and Other Expenses.  Any and all fees and expenses payable pursuant to the DIP Term Sheet and any other DIP Loan Documents (collectively, any and all such fees and expenses, the "DIP Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, as provided by the DIP Loan Documents (including this Final Order) in accordance with Section 4.14 hereof.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

(d)    Additional DIP Loan Documents; Amendments to DIP Loan Documents.  At the option of the DIP Lender, in its sole discretion, the Debtors and the DIP Lender shall execute additional definitive DIP Loan Documents with respect to the DIP Facility, including,

without limitation, guarantees and security documents, in each case, reasonably satisfactory in form and substance to the DIP Lender and the Debtors, which such DIP Loan Documents shall contain the terms and conditions set forth in the DIP Term Sheet and such other terms as the Debtors and the DIP Lender shall agree.  The provisions of the DIP Loan Documents shall, upon approval by the Court, amend, modify, supplement and (where applicable) supersede the provisions of the DIP Term Sheet; *provided* that if the DIP Lender determines not to require the Debtors to execute additional DIP Loan Documents, the provisions of the DIP Term Sheet, the Initial Interim Order, the Second Interim Order, and this Final Order shall govern the DIP Facility. The provisions of the DIP Loan Documents shall be consistent with the DIP Term Sheet, the Initial Interim Order, the Second Interim Order, and this Final Order.  The Debtors and the DIP Lender may make amendments, modifications, or supplements to the DIP Term Sheet and any other DIP Loan Document, and the DIP Lender may waive any provisions in the DIP Term Sheet and any other DIP Loan Documents, without further approval of the Court; *provided* that any amendments, modifications, or supplements to the DIP Term Sheet or any other DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents ("Material DIP Amendment"), shall be subject to consent of the Prepetition Secured Parties (not to be unreasonably withheld) and filed with the Court, and the Debtors shall provide prior written notice of a Material DIP Amendment to (i) counsel to the DIP Lender, (ii) the U.S. Trustee, (iii) counsel to the First Lien Agent, and (iv) counsel to the Committee; *provided* that the consent of the foregoing parties (other than the consent of the DIP Lender and the Prepetition Secured Parties, each as set forth herein) will not be necessary to effectuate any such amendment, modification, or

supplement, except that any Material DIP Amendment that is subject to a timely and unresolved objection must be approved by the Court.  For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court from the DIP Lender.

1.5    <u>Indemnification</u>.    The Debtors are authorized to indemnify and hold harmless the DIP Lender, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status</u>.

2.1    <u>Postpetition Lien</u>.

(a)    <u>Postpetition DIP Lien Granting</u>.    To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (such security interests and liens, the "<u>DIP Liens</u>") in and upon all DIP Collateral, subject to the priorities set forth herein.

(b)    <u>DIP Lien Priority in DIP Collateral</u>.    The DIP Liens on the DIP Collateral securing the DIP Obligations shall have and are hereby granted (i)  first priority security interests in, and liens on, the DIP Proceeds and the Unencumbered Collateral, which shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds and

Unencumbered Collateral; (ii) first priority security interests in, and liens on, the proceeds of any Avoidance Action; and (iii) junior second priority security interests in, and all liens on, all real and personal property of the Debtors securing the Prepetition First Lien Credit Agreement. At all times, the Debtors shall maintain the DIP Proceeds in a segregated account and not otherwise co-mingle cash constituting DIP Proceeds with any other Cash Collateral. It was a condition to closing of the DIP Facility that the Debtors have confirmed to the DIP Lender in writing that such an account exists and that the DIP Proceeds will be held in such account.

(c)    <u>Postpetition Lien Perfection</u>.    This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "<u>Perfection Act</u>"). Notwithstanding the foregoing, if the DIP Lender, in its sole discretion, elects for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Lender is authorized to perform such act, and the Debtors and DIP Guarantors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the Initial Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lender may choose to file, record, or present a certified

copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law.  Should the DIP Lender so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Final Order.

(d)      By virtue of the terms of this Final  Order, to the extent that the DIP Lender has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all DIP Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Final Order without further action.

(e)      Except as provided in section 2.3 herein, the DIP Liens and the DIP Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

(f)      Adequate Protection for the Prepetition Secured Parties.    The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507

of the Bankruptcy Code, to adequate protection of their respective interests in the applicable Prepetition Collateral, including any Cash Collateral, solely to the extent of any diminution in value of their interests in the Prepetition Collateral. As adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve Out (the "Adequate Protection Obligations"):

(i)    Adequate Protection Liens. As security for the payment of the Adequate Protection Obligations, each of the Prepetition Secured Parties, for the benefit of the applicable Prepetition Secured Party, is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and liens on the applicable Prepetition Collateral and the Unencumbered Collateral (the "Adequate Protection Liens"), which security interests and liens shall be subject to the Carve Out. For the avoidance of doubt, the Prepetition Secured Parties' Adequate Protection Liens on the DIP Proceeds and the Unencumbered Assets shall be junior to the DIP Liens. The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of the Prepetition Secured Parties and not in substitution therefor.

(ii)    Other Adequate Protection. The Prepetition Secured Parties shall receive (i) postpetition payment of all reasonable and documented out-of-pocket fees, costs and expenses of the First Lien Agent (including all fees and expenses of their outside counsel, Winston & Strawn LLP and Young Conaway Stargatt & Taylor, LLP, and up to one financial advisor retained by the First Lien Agent with the reasonable consent of the DIP Lender) (the "First Lien Agent Fees and Expenses") and; (ii) the Adequate Protection Liens to the extent of any post-petition diminution in value of the Prepetition Secured Party's interest in the collateral securing

24

the Prepetition First Lien Credit Agreement (the "Prepetition Superpriority Claims"); and (iii) access to the Debtors' books and records and such financial reports as are provided to the DIP Lender, including concurrent receipt of the weekly proposed updates to the Approved Budget and Variance Reports to be provided by the Debtor to the DIP Lender pursuant to the DIP Term Sheet and (iv) other protections set forth in this Final Order.

2.2    Superpriority Administrative Expenses.

(a)    DIP Loans.  Subject to the Carve Out, all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the other DIP Loan Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including proceeds of Avoidance Actions) (such superpriority administrative expense claim, the "DIP Superpriority Claims").

2.3    Carve Out Provisions.

(a)    As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without

regard to the notice set forth in (iii) below); plus (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the First Lien Agent, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

      (b)    Carve Out Reserves. On the day on which a Carve Out Trigger Notice is given by the DIP Lender to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize

all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable proceeds of a DIP Loan, in which case such funds shall be paid to the DIP Lender. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable DIP Proceeds, in which case such funds shall be paid to the DIP

Lender.  Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph (b), prior to making any payments to the DIP Lender or the Prepetition Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Lender for application in accordance with the DIP Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans (as defined in the DIP Term Sheet) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Facility, or in the First Lien Credit Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(c)      <u>Payment of Allowed Professional Fees Prior to the Termination Declaration</u> <u>Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)      <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)      <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

Section 3.      <u>Default; Waivers; Rights and Remedies; Relief from Stay</u>.

3.1      <u>Events of Default</u>.  The occurrence of (a) any "Event of Default" as that term is defined in the DIP Loan Documents, (b) any failure to meet or satisfy any Milestone as defined in, and in accordance with, the DIP Loan Documents, (c) the Maturity Date under the DIP Loan Documents, or (d) any material violation, breach, or default by the Debtors with respect to any of their obligations under this Final Order or any other DIP Loan Document, shall constitute

a "DIP Termination Event" hereunder unless waived in writing by the DIP Lender in accordance with the DIP Loan Documents.

        3.2    Debtors' Waivers.

        (a)    Prior to the indefeasible payment in full of all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event: (i) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations, other than as provided in this Final Order or as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this Final Order pursuant to section 506(b) of the Bankruptcy Code; (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lender or Prepetition Secured Parties from exercising its credit bid rights in connection with the sale of any assets of the Debtors; or (iv) subject to the Remedies Notice Period (as defined below), to seek relief under the Bankruptcy Code, including under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) (x) the rights and remedies of the DIP Lender against the Debtors as provided in this Final Order or any of the DIP Loan Documents or  (y) the rights and remedies of the Prepetition Secured Parties against the Debtors as provided in this Final Order or any of the Prepetition Documents or (B) (x) the exercise of such rights or remedies by the DIP Lender against the Debtors in accordance with the DIP Loan Documents (including this Final Order) or (y) the exercise of such rights by the Prepetition Secured Parties against the Debtors in accordance with the Prepetition Documents or this Final Order; *provided*, *however*, that (x) the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender and (y) the Prepetition Secured Parties may otherwise consent

in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by any Prepetition Secured Party.

(b)    It shall also be a DIP Termination Event under the DIP Facility if, prior to the indefeasible payment in full of such DIP Facility, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations (other than indemnities then due and payable) in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of such chapter 11 plan or sale, without the written consent of the DIP Lender.

3.3    DIP Lender Rights and Remedies upon a DIP Termination Event.    After three (3) business days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event to the DIP Lender and the Prepetition Secured Parties, or such later time as the Court may order during such three (3) business day period (the "Remedies Notice Period"), the DIP Lender shall be entitled to independently take any act or exercise any right or remedy, unless the Court orders otherwise during the Remedies Notice Period, as provided in this Final Order or any other DIP Loan Document, as applicable, including, without limitation, (a) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any Letters of Credit), (c) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations, (d) terminate and/or revoke the Debtors' right, if any, under this Final Order and

31

the other DIP Loan Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease, (e) invoke the right to charge interest at the default rate under the DIP Loan Documents, and/or (f) stop lending. For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the DIP Lender.

3.4    <u>Prepetition Secured Parties Rights and Remedies upon a DIP Termination Event</u>. After the Remedies Notice Period, the Prepetition Secured Parties shall be entitled to independently take any act or exercise any right or remedy as provided in this Final Order or any of the Prepetition Documents, as applicable, including, without limitation, (a) declare all Obligations owing under the Prepetition Documents to be immediately due and payable, and (b) terminate and/or revoke the Debtors' right, if any, under this Final Order, the other DIP Loan Documents, and any of the Prepetition Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease. For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, (x) the Prepetition Secured Lenders shall have no ability to exercise rights with respect to the DIP Proceeds and (y) the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the Prepetition Secured Parties.

3.5    <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the

extent necessary to permit the DIP Lender and the Prepetition Secured Parties to perform any act authorized or permitted under or by virtue of this Final Order, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Final Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, and (d) subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to the DIP Lender and the Prepetition Secured Parties by this Final Order, the other DIP Loan Documents, or applicable law.

Section 4.    Other Rights and DIP Obligations.

4.1    No Modification or Stay of this Final Order.  The DIP Lender and the Prepetition Secured Parties have acted in good faith in connection with the DIP Facility, with the use of Cash Collateral, and with this Final Order, and their reliance on this Final Order is in good faith, and the DIP Lender and the Prepetition Secured Parties are entitled to the protections of section 364(e) of the Bankruptcy Code.

4.2    Rights of Access and Information.  The Debtors shall provide the DIP Lender reasonable access and information as requested by the DIP Lender.  The Debtors shall provide the First Lien Agent reasonable access and information as requested by the First Lien Agent.

4.3    Power to Waive Rights; Duties to Third Parties.

(a)    Subject to the terms of the DIP Loan Documents, the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Final Order that are in favor of the DIP Lender (the "DIP Lender Rights"), and shall have no

obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights. Any waiver by the DIP Lender of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

4.4     No Unauthorized Disposition of Collateral; Use of Cash Collateral. The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Final Order, and the Debtors are authorized to use Cash Collateral in a manner consistent with this Final Order, the Approved Budget and the other DIP Loan Documents (including the permitted variances and exclusions to the Approved Budget permitted thereunder).

4.5     No Waiver. The failure of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, or this Final Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender or the Prepetition Secured Parties to: (a) request conversion of the Chapter 11 Cases to a case under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the

provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Secured Parties.

4.6    _Maintenance of Collateral_.  Unless the DIP Lender and First Lien Agent otherwise consents in writing, until the latest of (a) the indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and (b) the termination of the DIP Lender' obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the Prepetition Documents and the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Final Order and to the fullest extent provided by applicable law, the First Lien Agent and DIP Lender (on behalf of the DIP Lender) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

4.7    _Reservation of Rights_.  The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the First Lien Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code with respect to the DIP Lender, the other DIP Loan Documents, with respect to the First Lien Agent the Prepetition Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Prepetition Collateral or DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or

payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

4.8    <u>Binding Effect</u>.

(a)    All of the provisions of this Final Order and the other DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of the DIP Lender or Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the Prepetition Secured Parties or DIP Lender set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section E of this Final Order (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the use of Cash Collateral provided or acknowledged in this Final Order), and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Final Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive  any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Final Order or any provision hereof.

(b)    No order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise may impair the DIP Superpriority Claim, and the DIP Lender's liens on and security interests in the DIP Collateral, respectively, and all other claims,

liens, adequate protections, and other rights granted pursuant to the terms of this Final Order (including in favor of the Prepetition Secured Parties), which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full or each of the DIP Lender has otherwise agreed to alternate treatment in writing and such alternate treatment has been consummated.  Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Final Order.

(c)     Reserved.

(d)     This Final Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of the Debtors and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Final Order shall also inure to the benefit of the Debtors, the DIP Lender, Prepetition Secured Parties, and each of their respective successors and assigns.

4.9     Effect of Stipulations on Third Parties.

(a)     *Generally*.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the releases set forth in paragraph 4.14 (the "Releases"), shall be binding on the Debtors, any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes as set forth in this Final Order and the DIP Loan Documents.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth

37

in paragraph 4.14, shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, including the Committee, and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes, unless (i) the Committee or a party in interest with standing (in each case, to the extent standing is obtained pursuant to an order of this Court) has commenced a proceeding or contested matter as required under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Final Order, including this paragraph 4.9(a) by the Challenge Deadline challenging any of the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including Releases set forth in paragraph 4.14, with respect to the Prepetition First Lien Credit Agreement (each such proceeding or contested matter, a "Challenge") and (ii) there is entered a final non-appealable order in favor of the plaintiff in any such Challenge sustaining such Challenge. The Court may fashion any appropriate remedy following a successful Challenge.

(b)    If no such Challenge is filed prior to the Challenge Deadline or the Court does not rule in favor of the plaintiff in any such proceeding, and after any applicable appeal period, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive (as provided in paragraph 4.9(a) hereof) on the Committee and on any other person or entity, the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected in the Chapter 11 Cases or any Successor Cases), (ii) the obligations of the Debtors under the Prepetition Documents, including the Prepetition First Lien Credit Agreement,

shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, recoupment, offset, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, and (iv) the Prepetition First Lien Credit Agreement and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims, and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, (including without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties or their respective subsidiaries, parents, affiliates, controlling persons, officers, directors, members, shareholders, employees, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other advisors and professionals and the respective successors and assigns thereof, in each case past, present and future, and their respective heirs, predecessors, successors and assigns, in their respective capacity as such, arising out of or relating to any of the Prepetition Documents, the Prepetition First Lien Credit Agreement, the Prepetition Liens, or the Prepetition Collateral, as applicable, shall be deemed forever waived, released and barred, in each case except to the extent that such Debtors' stipulations, admissions,

agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, were expressly and successfully challenged by such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(c)     If any such Challenge is filed prior to the Challenge Deadline by the Committee or any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases or any other person or entity with requisite standing, (i) any claim or action that is not brought shall forever be barred, and (ii) the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive on the Committee and each other statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(d)     The "Challenge Deadline" shall mean 75 days following the entry of the Initial Interim Order. The Challenge Deadline may be extended (x) in writing prior to the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of (A) the First Lien Agent (with respect to the Prepetition Liens and Prepetition Obligations or the adequate protection afforded to the Prepetition Secured Parties), (B) the DIP Lender (with respect to the DIP Liens, DIP Obligations, and DIP Superpriority Claims or any adequate protection afforded to the DIP Lender), or (y) by this Court for good cause shown pursuant to an application filed and served, which may be done on shortened notice, by a party in interest prior to the expiration of the Challenge Deadline.

(e)    Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including Challenges with respect the Debtors' stipulations, admissions, agreements, and other releases contained in this Final Order with respect to the DIP Lender, including the Releases set forth in paragraph 4.14 and all rights to object to such standing are expressly reserved.

(f)    For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order, (i) upon the entry of this Final Order and the approval of the Releases set forth in paragraph 4.14, the Challenge Deadline shall automatically be deemed to have lapsed (unless such Challenge Deadline has already lapsed pursuant to the terms thereof) as to the Debtors' stipulations, admissions, agreements, and other releases contained in this Final Order with respect to the DIP Lender and its affiliates, including the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, (ii) such stipulations, admissions, agreements, and other releases shall be binding upon the Debtors and all other parties in interest, including any Committee, and (iii) any Challenges with respect to the DIP Lender and its affiliates, including with respect to the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, shall be deemed forever, waived, released, and barred.

(g)    For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter timely commenced pursuant to this Final Order (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors

and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Final Order.

4.10    Discharge.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Lender has otherwise agreed in writing.

4.11    Section 506(c) Waiver.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lender upon the DIP Collateral) shall be charged against any of the Prepetition Secured Parties, the Prepetition Obligations, the Prepetition Collateral, the DIP Lender, the DIP Obligations, or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender or Prepetition Secured Parties, as applicable, in each case in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

4.12    Section 552(b) Waiver.  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral that the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender and the DIP Obligations or the Prepetition Secured Parties and the Prepetition Obligations.

4.13    No Marshaling/Application of Proceeds.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents and the DIP Loan Documents.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents.

4.14    Releases.  In exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, (in their own right and on behalf of their estates and on behalf of each of their past, present, and future predecessors, heirs, subsidiaries, successors, and assigns) and any party acting by, through, or under any of the Debtors, or any of their estates, including any successor trustee or other estate and representative in these Chapter 11 Cases or any Successor Case or party that could act by, through, or under any of the Debtors or their estates (collectively, the "Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the DIP Lender, and each such entity's current and former affiliates, and each such entity's current and former directors, officers, managers and equityholders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, and direct and indirect subsidiaries, and each of such entity's current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, and partners (including both general and limited partners) (the "Released Parties") and their respective property and assets from any and all acts and

omissions of the Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Releasing Parties now have, may claim to have or may come to have against the Released Parties through the date of this Final Order, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, including without limitation, any right to assert any disgorgement, recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction on the payment of the Prepetition First Lien Credit Agreement, but excluding obligations of the DIP Lender under the DIP Facility arising after the date of this Final Order (collectively, the "Released Claims"). For the avoidance of doubt, the Released Claims do not include: (i) any claims that the Debtors may have against Richard Godfrey, Todd Gentry, and

Christopher Hunter, or any entities affiliated with the same of any nature; (ii) any direct claims of Hisun against Kinderhook Industries LLC; and (iii) any direct claims of Kinderhook against Hisun. This paragraph is in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Releasing Parties in favor of the Released Parties.  Notwithstanding the releases and covenants in favor of the Released Parties contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under the DIP Term Sheet, the Initial Interim Order, the Second Interim Order, or the DIP Loan Documents.  As of the date hereof, there exist no claims or causes of action against the DIP Lenders with respect to, in connection with, related to, or arising from the DIP Term Sheet, this Final Order, or the DIP Loan Documents that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity.  The releases granted in this paragraph 4.14 are final and binding and are not subject to a Challenge.

4.15    Payment of Fees and Expenses.

(a)    The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date, (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents (collectively, (i) and (ii), the "DIP Fees and Expenses") and (iii) the First Lien Agent Fees and Expenses (and together with the DIP Fees and Expenses, collectively, the "Fees and Expenses").  Upon entry of this Final Order, the Debtors shall immediately pay, and the DIP

45

Lender is hereby authorized to immediately make an advance under the DIP Loan Documents to immediately pay, all accrued and unpaid DIP Fees and Expenses incurred prepetition.

(b)      With respect to the Fees and Expenses incurred postpetition, professionals for the DIP Lender and First Lien Agent shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to the U.S. Trustee, and the Committee, with a copy of such invoices delivered simultaneously to the Debtors.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay, and the DIP Lender is hereby authorized to make an advance under the DIP Loan Documents to timely pay, such Fees and Expenses.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay, and the DIP Lender is authorized to make an advance under the DIP Loan Documents to timely pay, the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Under no circumstances shall professionals for the DIP Lender or the First Lien Agent be required to comply with the U.S. Trustee fee guidelines or otherwise be required to file a fee or retention application with the Court.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

4.16    Limits on Lender Liability.

(a)      Nothing in this Final Order, any of the DIP Loan Documents, any of the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from activities by the Debtors in the operation

of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Lender and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

(b)	Nothing in this Final Order or the other DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)	As to the United States, its agencies, departments, or agents, nothing in this Final Order or the other DIP Loan Documents shall discharge, release, or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

4.17	<u>Survival</u>.  The provisions of this Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Superpriority Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in these Chapter 11 Cases, (b) converting these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of these Chapter 11 Cases, (d) approving the sale of any DIP Collateral pursuant to section 363(b) of the

Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (e) pursuant to which the Court abstains from hearing these Chapter 11 Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and Prepetition Secured Parties pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents (including this Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated or the DIP Lender has otherwise agreed in writing and such alternate treatment has been consummated and (ii) in respect of the First Lien Loans, all of the Prepetition Obligations, pursuant to the Prepetition Documents (including this Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the Prepetition Documents which survive such discharge by their terms) and all commitments to extend credit under the Prepetition Documents are terminated or the Prepetition Secured Parties have otherwise agreed in writing and such alternate treatment has been consummated.

4.18    No Third Party Rights.  Except as specifically provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

4.19    No Avoidance.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility or use of Cash Collateral shall

be avoidable or recoverable from the DIP Lender or the Prepetition Secured Parties under any section of the Bankruptcy Code or any other federal, state, or other applicable law.

4.20    <u>Reliance on Order</u>.    All postpetition advances under the DIP Loan Documents are made in reliance on this Final Order.

4.21    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Lender and First Lien Agent on behalf of the Prepetition Secured Parties shall, subject to the terms of this Section 4.21, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects; *provided, however,* that to the extent the Prepetition Obligations are not treated as unimpaired or otherwise assumed upon (i) the consummation of a sale of all or substantially all of the Prepetition Collateral or (ii) the confirmation of a plan of reorganization in these cases, the DIP Lender shall turnover to the First Lien Agent any recovery the DIP Lender receives on account of the Prepetition Collateral until the Prepetition Obligations are paid in full. For purposes of clarity, in no event shall the DIP Lender be required to provide any consideration or recovery to the First Lien Agent on account of the Prepetition Obligations or the Prepetition Collateral in the event that (y) it does not receive any recovery on account of the Prepetition Collateral or (y) the sale contemplated under the Stalking Horse Purchase Agreement closes and the Prepetition Obligations are assumed by the buyer as contemplated thereunder.

4.22    <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents (including this Final Order), the terms and provisions of this Final Order shall govern.

4.23    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

4.24    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

4.25    <u>General Authorization</u>.  The Debtors, the Prepetition Secured Parties, and the DIP Lender are authorized to take any and all actions necessary to effectuate the relief granted in this Final Order.

4.26    <u>Retention of Exclusive Jurisdiction</u>.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the DIP Term Sheet, and the other DIP Loan Documents.

4.27    <u>No Implied Modification of Approved Budget</u>.  For the avoidance of doubt, any order of this Court authorizing the Debtors to make certain payments shall not be construed as authorization to for the Debtors to make any payments inconsistent with the Approved Budget and the Approved Budget shall control in all respects.

4.28    <u>Proofs of Claim</u>.  The Prepetition Secured Parties (including the First Lien Agent) shall not be required to file proofs of claim in any of the Debtors' cases or any of the Successor Cases for any claim allowed herein or therein in respect of the Prepetition Obligations. Any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases shall not apply to the First Lien Agent or other Prepetition Secured Parties; provided that notwithstanding any order entered by the Court establishing a bar date in any of these

Chapter 11 Cases or any Successor Cases to the contrary, the First Lien Agent on behalf of the Prepetition Secured Parties, may (but are not required) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by any Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

**EXHIBIT B**

**REDLINED Revised Proposed Final DIP Order**
**Marked Against the Initial Proposed Final DIP Order**

10420893.v2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | Case No. 23-10047 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket Nos. 13, 33, 54, 168** |

**FINAL ORDER PURSUANT
TO
11 U.S.C. §§ 105, 361, 362, 363,
364, 503, AND 507
(I) AUTHORIZING
THE DEBTORS TO OBTAIN
SENIOR AND
JUNIOR SECURED SUPERPRIORITY
POSTPETITION
FINANCING; (II) GRANTING LIENS
AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS;
(III) AUTHORIZING
USE OF CASH COLLATERAL; (IV) MODIFYING
THE
AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors") pursuant

to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(e), and 507 of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 9014, and 9019 of the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and DIP Term Sheet (as defined herein), as applicable.

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") of the United States Bankruptcy Court for the District of Delaware (this "Court"), seeking, *inter alia*:

(1)    authorization    for    Performance    Powersports    Group    Purchaser,    Inc. (the "DIP Borrower") to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for certain of the DIP Borrower's direct parent and direct and indirect subsidiaries as guarantors (the "DIP Guarantors," and, together with the DIP Borrower, the "DIP Obligors") to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth herein and in the executed term sheet attached hereto as Exhibit A[3] to the Initial Interim Order (as defined below) (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Term Sheet," and together with all agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, or notes) that are intended from time to time to effectuate the terms of the DIP Term Sheet, including the Initial Interim Order, the Second Interim Order (defined below), and this Final Order, the "DIP Loan Documents") in all respects, the DIP Borrower's obligations under the DIP Facility, consisting of a junior secured "new money" term loan credit facility (the "DIP Facility"), on the terms and conditions set forth in the DIP Term Sheet, by and among the DIP Obligors and Tankas Funding VI, LLC (the "DIP Lender"), in an aggregate principal amount of $10 million in term loan

---

[3]    The DIP Term Sheet may be superseded and replaced in all respects by one or more DIP Loan Documents to be executed by the DIP Borrower, the DIP Guarantors and the DIP Lender, in form and substance consistent with the DIP Term Sheet and otherwise acceptable only to the DIP Lender.

commitments having been made available as term loans (the "DIP Loans") to the DIP Borrower following entry of the ~~interim order (the "~~Initial Interim Order~~")~~ and satisfaction of the other conditions set forth therein in an initial amount of $3.5 million (the "Initial DIP Loan~~")~~,") and having been made available to the DIP Borrower following entry of the Second Interim Order and satisfaction of the other conditions set forth in the DIP Term Sheet that apply to borrowing following entry of this Final Order (as defined below) in an amount not to exceed $1.8 million (the "Second DIP Loan") (as if the Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of this final order approving entry into the DIP Facility (th~~e~~is "Final Order"); *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.~~8~~7 million) of such DIP Facility on one ~~(1)~~ additional business day after the borrowing (if any) in connection with this Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree));

(2)     authorization for the Debtors to execute, deliver, and enter into the DIP Term Sheet and any other DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Loan Documents, including any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the DIP Lender (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims,

whether contingent or absolute, in each case, to the extent constituting all Debtors', and/or DIP Guarantors', obligations of any kind under the DIP Loan Documents (such obligations collectively, the "DIP Obligations");

(4)     authorization for the Debtors to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this Final Order and the applicable Approved Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Term Sheet) to:  (A) pay costs, premiums, fees, and expenses related to the above-captioned chapter 11 cases (the "Chapter 11 Cases") and in connection with the DIP Facility and the Debtors' use of Cash Collateral and (B) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents);

(5)     the granting and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lender, in respect of all DIP Obligations, subject only to the Carve Out (as defined below);

(6)     the granting to the DIP Lender of valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including any "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein and in the other DIP Loan Documents;

(7)     authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (as defined below), and providing adequate protection to the Prepetition Secured Parties for, among other things, any diminution in value of the Prepetition Collateral, including in respect of Cash

4

Collateral, from and after the Petition Date to the extent such diminution in value occurs on account (without limitation) of the Debtors' sale, lease or use of the Prepetition Collateral, including Cash Collateral, the imposition, enforcement, and consequences of the automatic stay pursuant to section 362 of the Bankruptcy Code.

(8)      authorizing the Debtors to incur the DIP Obligations, including the incurrence of senior liens on the Unencumbered Collateral (as defined below), the incurrence of junior liens on the Prepetition Collateral, the subordination of Prepetition Liens to the extent set forth herein, the administration of these Chapter 11 Cases, and the priming of the Prepetition Secured Parties' respective interests in the Prepetition Collateral by the Carve Out (as defined below).

(9)      the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the other DIP Loan Documents to the extent hereinafter set forth;

(10)      upon entry of this Final Order, a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and Prepetition Collateral and certain rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)      a waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order; and

(12)      the Court to grant such other and further relief as is just and proper.

The initial hearings on the Motion having been held by this Court on January 18, 2023 (the "Initial Interim Hearing") and February 23, 2023 (the "Second Interim Hearing"), and upon the record made by the Debtors at the Initial Interim Hearing, Second Interim Hearing, and the final hearing on February 15March 20, 2023 (the "Final Hearing"), including the Motion and the

5

*Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") and the *Declaration of Steven Bremer in Support of Cash Collateral and DIP Motion* and the *Declaration of Alyssa Lozynski in Support of Cash Collateral and DIP Motion* (collectively, the "DIP Declarations"), any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having entered the Initial Interim Order and the Second Interim Order, and the Court having found that the final approval of the relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the final approval of the relief requested in the Motion is fair and reasonable and in the best interest of the Debtors and their eEstates; and appropriate and adequate notice of the Motion, the final approval of the relief requested therein, and the Final Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "30 Largest Unsecured Creditors"); (c) counsel to the DIP Lender; (d) counsel to the Prepetition Secured Parties; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (i) counsel for the Committee; (j) the attorneys general of Delaware and Arizona; (k) all parties which, to the best

6

of the Debtors' knowledge, information, and belief, have asserted or may assert a lien on the Debtors' assets; (l) the Debtors' cash management banks; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and ~~the opportunity for an interim and final hearing~~ having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 54] (the "Initial Interim Order"); and having entered the *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 168] (the "Second Interim Order"); and the opportunity for interim and final hearings on the Motion was appropriate under the circumstances; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    <u>Petition Date</u>.  On January 16, 2023 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the

operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in the Chapter 11 Cases.

B.    Jurisdiction and Venue.    This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief granted hereby are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013, 9014, and 9019 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.    Committee Formation.    On January 30, 2023, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 82].

D.    Notice.    The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Initial Interim Hearing, the Second Interim Hearing, Final Hearing, and the relief granted under this Final Order, constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and the Local Rules.

E.    Parties' Acknowledgments, Agreements, and Stipulations.    In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility, access to Cash Collateral, and subordination of the DIP Liens (as defined herein) to the Carve Out and as a condition to the DIP Lender providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the

---

extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

limitations, provisions and rights afforded pursuant to paragraph 4.9 of this Final Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)      *Existing First Lien Credit Agreement.*  Pursuant to that certain Credit Agreement, dated October 8, 2021, among Performance Powersports Group Purchaser, Inc., (in such capacity, the "First Lien Borrower"), the Loan Parties (as defined therein) party thereto (collectively, with the First Lien Borrower, the "First Lien Obligors"), the lenders party thereto (the "First Lien Lenders"), Twin Brook Capital Partners, LLC, as agent (the "First Lien Agent"; and together with the First Lien Lenders, the "Prepetition Secured Parties") (as amended, restated, supplemented or otherwise modified, the "Prepetition First Lien Credit Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Documents"), the First Lien Lenders provided secured loans to the First Lien Borrower.

(ii)     *Prepetition Obligations.*  As of the Petition Date, the First Lien Obligors were indebted to the Prepetition Secured Parties under the Prepetition First Lien Credit Agreement in respect of outstanding Loans (as defined in the Prepetition First Lien Credit Agreement) in an aggregate principal amount of not less than $52 million under the Prepetition First Lien Credit Agreement (the "First Lien Loans"), plus interest accrued and accruing thereon, together with all costs, fees, termination fees, fees and expenses (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements of the First Lien Agent's or the First Lien Lender's attorneys, advisors, accountants, and other consultants, and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever

arising, accrued, accruing, due, owing, or chargeable in respect of any of the First Lien Obligors' obligations pursuant to the Prepetition First Lien Credit Agreement, and any other "Obligations" as defined therein (collectively, the "Prepetition Obligations"), which Prepetition Obligations are legal, valid, and binding on the Debtors.

(iii)    *Prepetition Collateral.*    As more fully set forth in the Prepetition Documents, as of the Petition Date, the First Lien Obligors granted to the Prepetition Secured Parties, first priority security interests in and continuing liens to the Prepetition Secured Parties (the "Prepetition Liens") upon substantially all of their tangible and intangible assets and properties as Collateral (as defined in the Prepetition Documents) for the Prepetition Obligations (the "Prepetition Collateral")).

(iv)    *Indemnity*.  The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, the DIP Lender shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct, in each case, as determined by final order in a court of competent jurisdiction.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph (12)E(iv) or in the DIP Loan

Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender, as the case may be.

(v)    *Sale and Credit Bidding*.  The Debtors admit, stipulate, acknowledge, and agree that the DIP Lender shall have the right to credit bid the entirety of (or any portion of) the DIP Obligations; *provided* that any such credit bid shall require (i) assumption in full of the Prepetition Obligations, (ii) payment in full in cash of the Prepetition Obligations, or (iii) such other treatment satisfactory to the Prepetition Secured Parties.  The Debtors admit, stipulate, acknowledge, and agree that the Prepetition Secured Parties shall have the right to credit bid the entirety of (or any portion of) the Prepetition Obligations.

(vi)    *Release*.- The Debtors stipulate and agree that no party has been or will be granted standing by the Debtors to prosecute the Released Claims (as defined in paragraph 4.14).4.14). including the litigation trust that will be created pursuant to the Stalking Horse Purchase Agreement.

F.    Findings Regarding the Postpetition Financing.

(i)    Postpetition Financing.  The Debtors have requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this Final Order and satisfaction of the conditions set forth in the DIP Loan Documents and obtaining the consent of the Prepetition Secured Parties, to extend the DIP Loans on the terms and conditions set forth in this Final Order and the DIP Loan Documents, respectively.

(ii)    Need for Postpetition Financing.  The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, pay employees, taxes, and certain fees

and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors'

continued viability as the Debtors seek to maximize the value of the assets of the Estates for the

benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working

capital and liquidity through the proposed postpetition financing arrangements with the DIP

Lender as set forth in this Final Order and other DIP Loan Documents, as applicable, is vital to the

preservation and maintenance of the going concern value of each Debtor.  Accordingly, the

Debtors have an immediate need to obtain the postpetition financing to, among other things, permit

the orderly continuation of the operation of their businesses, minimize the disruption of their

business operations, and preserve and maximize the value of the assets of the Debtors' Estates to

maximize the recovery to all creditors of the Estates.

          (iii)    No Credit Available on More Favorable Terms.  The Debtors are unable to

obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having

priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and

507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and

their estates that is not otherwise subject to a lien; or (c) other than as set forth herein, credit secured

solely by a junior lien on property of the Debtors and their estates that is subject to a lien.

The Debtors assert in the Motion, the First Day Declaration, and in the DIP Declaration, and

demonstrated at the Initial Interim Hearing, the Second Interim Hearing, and the Final Hearing,

that they have been unable to procure the necessary financing on terms more favorable, taken as a

whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In

light of the foregoing, and considering all alternatives, the Debtors have reasonably and properly

concluded, in the exercise of their sound business judgment, that the DIP Facility represents the

best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    <u>Budget</u>.  The Debtors have prepared and delivered to the DIP Lender and First Lien Agent a budget approved by the DIP Lender, a copy of which in the most recent form so approved is attached hereto as **<u>Exhibit B</u>** (such approved budget and each subsequent budget approved by the DIP Lender then in effect, an "<u>Approved Budget</u>").  The Approved Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.  The Debtors believe that the Approved Budget is reasonable under the facts and circumstances.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for herein.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for herein.  The First Lien Agent and Prepetition Secured Parties are relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget and this Final Order in determining to consent to the use of Cash Collateral and entering into the postpetition financing arrangements provided for herein.

(v)    <u>Certain Conditions to DIP Facilities</u>.  The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by this Final Order; (b) the DIP Lender being granted, as security for the prompt

13

payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject and junior to the Carve Out, (x) automatically perfected and unavoidable first priority security interests in, and liens on, all cash borrowed under the DIP Facility (which shall constitute cash collateral of the DIP Lender) and which cash shall be held in a segregated account in accordance with the DIP Loan Documents (the "DIP Proceeds") and unencumbered real and personal property of the Debtors, whether now existing or hereafter arising and wherever located, tangible and intangible (collectively, the "Unencumbered Collateral"), which, in both cases, shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds or Unencumbered Collateral; (y) automatically perfected and unavoidable first priority security interests in, and liens on, the proceeds of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")); and (z) automatically perfected and unavoidable junior second priority priming security interests in, and all liens on, all real and personal property of the Debtors securing the Prepetition First Lien Credit Agreement (collectively hereinafter referred to as the "DIP Collateral,") and (c) the First Lien Agent and Prepetition Secured Parties' receipt of the adequate protection granted to them in this Final Order.  For the avoidance of doubt, DIP Collateral shall not include the DIP Obligors' leasehold interests, but instead shall include solely the proceeds of any such leasehold interests.

(vi)    Business Judgment and Good Faith Pursuant to Section 364(e).  Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender and the Prepetition Secured Parties, including pursuant to this Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e)

of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, the Adequate Protection Liens, and the DIP Superpriority Claims (as defined below), the Prepetition Liens, and the Prepetition Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(vii)    Credit Bid Rights.  The Debtors hereby acknowledge and agree that they shall not object, or support any objection, to the DIP Lender's right to credit bid up to the full amount of its DIP Obligations, and the Prepetition Secured Parties' right to credit bid up to the full amount of its Prepetition Obligations including in each case, without limitation, any accrued interest and expenses, subject to the terms of the Bid Procedures, in any sale effectuated through section 363 of the Bankruptcy Code, whether in a chapter 11 or chapter 7 proceeding.

(viii)    Sections 506(c) and 552(b).  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in the Initial Interim Order, Second Interim Order, and this Final Order that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out, and (c) the use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan Documents, and the terms of this Final Order, the Prepetition Secured Parties and the DIP Lender are entitled to receive (x) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver

of unjust enrichment and similar equitable relief as set forth below, and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)    <u>Good Cause</u>.  Good cause has been shown for the entry of this Final Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of their sound business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Lender, the First Lien Agent, and the Prepetition Secured Parties.

(x)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

Based upon the foregoing, and upon the record made before the Court at the Initial Interim Hearing, Second Interim Hearing, and Final Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.    <u>Authorization and Conditions to Financing</u>.

1.1    <u>Motion Granted</u>.  The Motion is granted on a final basis to the extent provided in this Final Order.  Any objections to the entry of this Final Order that have not been

withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

    1.2    <u>Authorization of DIP Financing</u>.

    (a)    The Debtors are hereby authorized and empowered to immediately borrow, incur, and guarantee (as applicable), DIP Loans, pursuant to the terms and conditions of the DIP Term Sheet and any other DIP Loan Documents, in an aggregate principal amount not to exceed $10 million, with the Initial DIP Loan having been made available upon entry of the Initial Interim Order and the Second DIP Loan having been made available following entry of the Second Interim Order and upon satisfaction of other conditions set forth in the DIP Loan Documents, (as if the Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of this Final Order and upon satisfaction of other conditions set forth in the DIP Loan Documents and consistent with the applicable Approved Budget and the DIP Loan Documents; *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.87 million) of such DIP Facility on one additional business day after the borrowing (if any) in connection with this Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree)).

    (b)    The Debtors are hereby authorized to (i) borrow under the DIP Facility in accordance with, and for the purposes permitted by, the DIP Loan Documents (including this Final Order), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Loan Documents, all pursuant to the terms and conditions of this Final Order and the other DIP Loan Documents, and (iii) use the Cash Collateral for the purposes described in this Final Order. The Approved Budget is hereby approved as the "Approved Budget" in all respects. The Debtors shall use the proceeds of the DIP Facility solely

in a manner consistent with the Approved Budget and the terms and conditions of the DIP Loan Documents (including this Final Order).

   1.3 <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in a manner consistent with the Approved Budget, the Debtors are authorized to use Cash Collateral.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including with respect to the Carve Out), the DIP Facility, or the DIP Loan Documents.

   1.4 <u>Financing Documents</u>.

   (a) <u>Authorization</u>.  The Debtors are hereby authorized and directed to enter into, execute, deliver, and perform all obligations under the DIP Term Sheet and any other DIP Loan Documents, each of which are approved pursuant to this Final Order.  No obligation, payment, transfer, or grant of security hereunder or under the other DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

   (b) <u>Approval; Evidence of Borrowing Arrangements</u>.  All terms, conditions, and covenants set forth in the DIP Term Sheet and any other DIP Loan Documents are

approved.  All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Obligors, and the DIP Lender, and (ii) the Debtors' assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of this Final Order and the other DIP Loan Documents for all purposes, including to the extent applicable, the payment of all DIP Obligations arising thereunder, including all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Lender's closing, commitment and exit fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Loan Documents.  Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Final Order and the other DIP Loan Documents.

        (c)      Payment of DIP Fees and Other Expenses.  Any and all fees and expenses payable pursuant to the DIP Term Sheet and any other DIP Loan Documents (collectively, any and all such fees and expenses, the "DIP Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, as provided by the DIP Loan Documents (including this Final Order) in accordance with Section 4.14 hereof.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

(d)      <u>Additional DIP Loan Documents; Amendments to DIP Loan Documents</u>.  At the option of the DIP Lender, in its sole discretion, the Debtors and the DIP Lender shall execute additional definitive DIP Loan Documents with respect to the DIP Facility, including, without limitation, guarantees and security documents, in each case, reasonably satisfactory in form and substance to the DIP Lender and the Debtors, which such DIP Loan Documents shall contain the terms and conditions set forth in the DIP Term Sheet and such other terms as the Debtors and the DIP Lender shall agree.  The provisions of the DIP Loan Documents shall, upon approval by the Court, amend, modify, supplement and (where applicable) supersede the provisions of the DIP Term Sheet; *provided* that if the DIP Lender determines not to require the Debtors to execute additional DIP Loan Documents, the provisions of the DIP Term Sheet, the Initial Interim Order, the Second Interim Order, and this Final Order shall govern the DIP Facility. The provisions of the DIP Loan Documents shall be consistent with the DIP Term Sheet, the Initial Interim Order, the Second Interim Order, and this Final Order.  The Debtors and the DIP Lender may make amendments, modifications, or supplements to the DIP Term Sheet and any other DIP Loan Document, and the DIP Lender may waive any provisions in the DIP Term Sheet and any other DIP Loan Documents, without further approval of the Court; *provided* that any amendments, modifications, or supplements to the DIP Term Sheet or any other DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents ("<u>Material DIP Amendment</u>"), shall be subject to consent of the Prepetition Secured Parties (not to be unreasonably withheld) and filed with the Court, and the Debtors shall provide prior written notice of a Material DIP Amendment to (i) counsel to the DIP Lender, (ii) the U.S. Trustee, (iii) counsel

to the First Lien Agent, and (iv) counsel to the Committee; *provided* that the consent of the foregoing parties (other than the consent of the DIP Lender and the Prepetition Secured Parties, each as set forth herein) will not be necessary to effectuate any such amendment, modification, or supplement, except that any Material DIP Amendment that is subject to a timely and unresolved objection must be approved by the Court. For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court from the DIP Lender.

   1.5 <u>Indemnification</u>. The Debtors are authorized to indemnify and hold harmless the DIP Lender, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

Section 2. <u>Postpetition Lien; Superpriority Administrative Claim Status</u>.

   2.1 <u>Postpetition Lien</u>.

   (a) <u>Postpetition DIP Lien Granting</u>. To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable,

and automatically and properly perfected security interests in and liens (such security interests and liens, the "DIP Liens") in and upon all DIP Collateral, subject to the priorities set forth herein.

(b)     DIP Lien Priority in DIP Collateral.    The DIP Liens on the DIP Collateral securing the DIP Obligations shall have and are hereby granted (i)  first priority security interests in, and liens on, the DIP Proceeds and the Unencumbered Collateral, which shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds and Unencumbered Collateral; (ii)  first priority security interests in, and liens on, the proceeds of any Avoidance Action; and (iii) junior second priority security interests in, and all liens on, all real and personal property of the Debtors securing the Prepetition First Lien Credit Agreement. At all times, the Debtors shall maintain the DIP Proceeds in a segregated account and not otherwise co-mingle cash constituting DIP Proceeds with any other Cash Collateral.  It was a condition to closing of the DIP Facility that the Debtors have confirmed to the DIP Lender in writing that such an account exists and that the DIP Proceeds will be held in such account.

(c)     Postpetition Lien Perfection.    This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lender, in its sole discretion, elects for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Lender is authorized to

perform such act, and the Debtors and DIP Guarantors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of ~~this Final~~the Initial Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law.  Should the DIP Lender so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Final Order.

(d)       By virtue of the terms of this Final Order, to the extent that the DIP Lender has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all DIP Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Final Order without further action.

(e)       Except as provided in section 2.3 herein, the DIP Liens and the DIP Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or

23

upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

(f)     Adequate Protection for the Prepetition Secured Parties.     The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the applicable Prepetition Collateral, including any Cash Collateral, solely to the extent of any diminution in value of their interests in the Prepetition Collateral.  As adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve Out (the "Adequate Protection Obligations"):

(i)     Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, each of the Prepetition Secured Parties, for the benefit of the applicable Prepetition Secured Party, is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and liens on the applicable Prepetition Collateral and the Unencumbered Collateral (the "Adequate Protection Liens"), which security interests and liens shall be subject to the Carve Out.  For the avoidance of doubt, the Prepetition Secured Parties' Adequate Protection Liens on the DIP Proceeds and the Unencumbered Assets shall be junior to the DIP Liens.  The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of the Prepetition Secured Parties and not in substitution therefor.

24

(ii)    Other Adequate Protection.  The Prepetition Secured Parties shall receive (i) postpetition payment of all reasonable and documented out-of-pocket fees, costs and expenses of the First Lien Agent (including all fees and expenses of their outside counsel, Winston & Strawn LLP and Young Conaway Stargatt & Taylor, LLP, and up to one financial advisor retained by the First Lien Agent with the reasonable consent of the DIP Lender) (the "First Lien Agent Fees and Expenses") and; (ii) the Adequate Protection Liens to the extent of any post-petition diminution in value of the Prepetition Secured Party's interest in the collateral securing the Prepetition First Lien Credit Agreement (the "Prepetition Superpriority Claims"); and (iii) access to the Debtors' books and records and such financial reports as are provided to the DIP Lender, including concurrent receipt of the weekly proposed updates to the Approved Budget and Variance Reports to be provided by the Debtor to the DIP Lender pursuant to the DIP Term Sheet and (iv) other protections set forth in this Final Order.

2.2    Superpriority Administrative Expenses.

(a)    DIP Loans.  Subject to the Carve Out, all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the other DIP Loan Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and

25

have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including proceeds of Avoidance Actions) (such superpriority administrative expense claim, the "DIP Superpriority Claims").

>2.3    Carve Out Provisions.

(a)    As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); plus (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their lead restructuring counsel, the U.S.

Trustee, counsel to the First Lien Agent, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Lender to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First

Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable proceeds of a DIP Loan, in which case such funds shall be paid to the DIP Lender. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable DIP Proceeds, in which case such funds shall be paid to the DIP Lender. Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph (b), prior to making any payments to the DIP Lender or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Lender for application in accordance with the DIP Loan Documents. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans (as defined in the DIP Term Sheet) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget,

Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Facility, or in the First Lien Credit Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>. None of the DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections

granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

Section 3.    <u>Default; Waivers; Rights and Remedies; Relief from Stay</u>.

      3.1    <u>Events of Default</u>.  The occurrence of (a) any "Event of Default" as that term is defined in the DIP Loan Documents, (b) any failure to meet or satisfy any Milestone as defined in, and in accordance with, the DIP Loan Documents, (c) the Maturity Date under the DIP Loan Documents, or (d) any material violation, breach, or default by the Debtors with respect to any of their obligations under this Final Order or any other DIP Loan Document, shall constitute a "<u>DIP Termination Event</u>" hereunder unless waived in writing by the DIP Lender in accordance with the DIP Loan Documents.

      3.2    <u>Debtors' Waivers</u>.

      (a)    Prior to the indefeasible payment in full of all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (i) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations, other than as provided in this Final Order or as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this Final Order pursuant to section 506(b) of the Bankruptcy Code; (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lender or Prepetition Secured Parties from exercising its credit bid rights in connection with the sale of any assets of the Debtors; or (iv) subject to the Remedies Notice Period (as defined below), to seek relief under the Bankruptcy Code, including under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) (x) the rights and remedies of the DIP Lender against the Debtors as provided in this Final Order or any of the DIP Loan Documents or  (y) the rights and remedies

of the Prepetition Secured Parties against the Debtors as provided in this Final Order or any of the Prepetition Documents or (B) (x) the exercise of such rights or remedies by the DIP Lender against the Debtors in accordance with the DIP Loan Documents (including this Final Order) or (y) the exercise of such rights by the Prepetition Secured Parties against the Debtors in accordance with the Prepetition Documents or this Final Order; *provided*, *however*, that (x) the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender and (y) the Prepetition Secured Parties may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by any Prepetition Secured Party.

(b)    It shall also be a DIP Termination Event under the DIP Facility if, prior to the indefeasible payment in full of such DIP Facility, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations (other than indemnities then due and payable) in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of such chapter 11 plan or sale, without the written consent of the DIP Lender.

3.3    <u>DIP Lender Rights and Remedies upon a DIP Termination Event</u>.  After three (3) business days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event to the DIP Lender and the Prepetition Secured Parties, or such later time as the Court may order during such three (3) business day period (the "<u>Remedies Notice Period</u>"), the DIP Lender shall be entitled to independently take any act or exercise any right or remedy, unless the Court orders otherwise during the Remedies Notice Period, as provided

in this Final Order or any other DIP Loan Document, as applicable, including, without limitation, (a) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any Letters of Credit), (c) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations, (d) terminate and/or revoke the Debtors' right, if any, under this Final Order and the other DIP Loan Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease, (e) invoke the right to charge interest at the default rate under the DIP Loan Documents, and/or (f) stop lending. For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the DIP Lender.

      3.4     <u>Prepetition Secured Parties Rights and Remedies upon a DIP Termination Event</u>. After the Remedies Notice Period, the Prepetition Secured Parties shall be entitled to independently take any act or exercise any right or remedy as provided in this Final Order or any of the Prepetition Documents, as applicable, including, without limitation, (a) declare all Obligations owing under the Prepetition Documents to be immediately due and payable, and (b) terminate and/or revoke the Debtors' right, if any, under this Final Order, the other DIP Loan Documents, and any of the Prepetition Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease. For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, (x) the Prepetition Secured Lenders shall have no ability to exercise

rights with respect to the DIP Proceeds and (y) the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the Prepetition Secured Parties.

      3.5    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender and the Prepetition Secured Parties to perform any act authorized or permitted under or by virtue of this Final Order, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Final Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, and (d) subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to the DIP Lender and the Prepetition Secured Parties by this Final Order, the other DIP Loan Documents, or applicable law.

Section 4.    <u>Other Rights and DIP Obligations</u>.

      4.1    <u>No Modification or Stay of this Final Order</u>.  The DIP Lender and the Prepetition Secured Parties have acted in good faith in connection with the DIP Facility, with the use of Cash Collateral, and with this Final Order, and their reliance on this Final Order is in good faith, and the DIP Lender and the Prepetition Secured Parties are entitled to the protections of section 364(e) of the Bankruptcy Code.

4.2    <u>Rights of Access and Information</u>.    The Debtors shall provide the DIP Lender reasonable access and information as requested by the DIP Lender.    The Debtors shall provide the First Lien Agent reasonable access and information as requested by the First Lien Agent.

4.3    <u>Power to Waive Rights; Duties to Third Parties</u>.

(a)    Subject to the terms of the DIP Loan Documents, the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Final Order that are in favor of the DIP Lender (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights.    Any waiver by the DIP Lender of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.    Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

4.4    <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral</u>.    The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Final Order, and the Debtors are authorized to use Cash Collateral in a manner consistent with this Final Order, the Approved Budget and the other DIP Loan Documents (including the permitted variances and exclusions to the Approved Budget permitted thereunder).

4.5    <u>No Waiver</u>.  The failure of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the

DIP Facility, or this Final Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender or the Prepetition Secured Parties to:  (a) request conversion of the Chapter 11 Cases to a case under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Secured Parties.

4.6     <u>Maintenance of Collateral</u>.  Unless the DIP Lender and First Lien Agent otherwise consents in writing, until the latest of (a) the indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and (b) the termination of the DIP Lender' obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the Prepetition Documents and the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Final Order and to the fullest extent provided by applicable law, the First Lien Agent and DIP Lender (on behalf of the DIP Lender) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

4.7     <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the First Lien Agent and DIP Lender

to pursue any and all rights and remedies under the Bankruptcy Code with respect to the DIP Lender, the other DIP Loan Documents, with respect to the First Lien Agent the Prepetition Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Prepetition Collateral or DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

4.8    Binding Effect.

(a)    All of the provisions of this Final Order and the other DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of the DIP Lender or Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the Prepetition Secured Parties or DIP Lender set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section E of this Final Order (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the use of Cash Collateral provided or acknowledged in this Final Order), and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Final Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive any order which may be entered confirming any chapter 11

36

plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Final Order or any provision hereof.

(b)    No order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise may impair the DIP Superpriority Claim, and the DIP Lender's liens on and security interests in the DIP Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Final Order (including in favor of the Prepetition Secured Parties), which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full or each of the DIP Lender has otherwise agreed to alternate treatment in writing and such alternate treatment has been consummated. Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Final Order.

(c)    Reserved.

(d)    This Final Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of the Debtors and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Final Order shall also inure to the benefit of the Debtors, the DIP Lender, Prepetition Secured Parties, and each of their respective successors and assigns.

4.9     Effect of Stipulations on Third Parties.

(a)     *Generally*.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the releases set forth in paragraph 4.14 (the "Releases"), shall be binding on the Debtors, any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes as set forth in this Final Order and the DIP Loan Documents.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, including the Committee, and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes, unless (i) the Committee or a party in interest with standing (in each case, to the extent standing is obtained pursuant to an order of this Court) has commenced a proceeding or contested matter as required under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Final Order, including this paragraph 4.9(a) by the Challenge Deadline challenging any of the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including Releases set forth in paragraph 4.14, with respect to the Prepetition First Lien Credit Agreement (each such proceeding or contested matter, a "Challenge") and (ii) there is entered a final non-appealable order in favor of the plaintiff in any such Challenge sustaining such Challenge. The Court may fashion any appropriate remedy following a successful Challenge.

(b)      If no such Challenge is filed prior to the Challenge Deadline or the Court does not rule in favor of the plaintiff in any such proceeding, and after any applicable appeal period, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive (as provided in paragraph 4.9(a) hereof) on the Committee and on any other person or entity, the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected in the Chapter 11 Cases or any Successor Cases), (ii) the obligations of the Debtors under the Prepetition Documents, including the Prepetition First Lien Credit Agreement, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, recoupment, offset, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, and (iv) the Prepetition First Lien Credit Agreement and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims, and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, (including without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties or

their respective subsidiaries, parents, affiliates, controlling persons, officers, directors, members, shareholders, employees, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other advisors and professionals and the respective successors and assigns thereof, in each case past, present and future, and their respective heirs, predecessors, successors and assigns, in their respective capacity as such, arising out of or relating to any of the Prepetition Documents, the Prepetition First Lien Credit Agreement, the Prepetition Liens, or the Prepetition Collateral, as applicable, shall be deemed forever waived, released and barred, in each case except to the extent that such Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, were expressly and successfully challenged by such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(c)     If any such Challenge is filed prior to the Challenge Deadline by the Committee or any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases or any other person or entity with requisite standing, (i) any claim or action that is not brought shall forever be barred, and (ii) the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive on the Committee and each other statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(d)     The "Challenge Deadline" shall mean 75 days following the entry of the Initial Interim Order.  The Challenge Deadline may be extended (x) in writing prior to the

expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of (A) the First Lien Agent (with respect to the Prepetition Liens and Prepetition Obligations or the adequate protection afforded to the Prepetition Secured Parties), (B) the DIP Lender (with respect to the DIP Liens, DIP Obligations, and DIP Superpriority Claims or any adequate protection afforded to the DIP Lender), or (y) by this Court for good cause shown pursuant to an application filed and served, which may be done on shortened notice, by a party in interest prior to the expiration of the Challenge Deadline.

(e)    Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including Challenges with respect the Debtors' stipulations, admissions, agreements, and other releases contained in this Final Order with respect to the DIP Lender, including the Releases set forth in paragraph 4.14 and all rights to object to such standing are expressly reserved.

(f)    For the avoidance of doubt, notwithstanding anything to the contrary herein in this Final Order, (i) upon the entry of theis Final Order and the approval of the Releases set forth in paragraph 4.14, the Challenge Deadline shall automatically be deemed to have lapsed (unless such Challenge Deadline has already lapsed pursuant to the terms thereof) as to the Debtors' stipulations, admissions, agreements, and other releases contained in this Final Order with respect to the DIP Lender and its affiliates, including the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, (ii) such stipulations, admissions, agreements, and other releases shall be binding upon the Debtors and all other parties in interest, including any Committee, and (iii) any Challenges with respect to the DIP Lender and its affiliates, including

41

with respect to the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, shall be deemed forever, waived, released, and barred.

(g)    For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter timely commenced pursuant to this Final Order  (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Final Order.

4.10    Discharge.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Lender has otherwise agreed in writing.

4.11    Section 506(c) Waiver.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lender upon the DIP Collateral) shall be charged against any of the Prepetition Secured Parties, the Prepetition Obligations, the Prepetition Collateral, the DIP Lender, the DIP Obligations, or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender or Prepetition Secured Parties, as applicable, in each case in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents

or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

4.12    Section 552(b) Waiver.  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral that the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender and the DIP Obligations or the Prepetition Secured Parties and the Prepetition Obligations.

4.13    No Marshaling/Application of Proceeds.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents and the DIP Loan Documents.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents.

4.14    Releases.  In exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, (in their own right and on behalf of their estates and on behalf of each of their past, present, and future predecessors, heirs, subsidiaries, successors, and assigns) and any party acting by, through, or under any of the Debtors, or any of their estates, including any successor trustee or other estate and representative in these Chapter 11 Cases or any Successor Case or party that could act by, through, or under any of the Debtors or their estates (collectively, the "Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the DIP Lender, and each such entity's current and former affiliates, and each such entity's current and former directors, officers, managers and equityholders (regardless of whether such interests are held directly or indirectly),

predecessors, successors and assigns, and direct and indirect subsidiaries, and each of such entity's current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, and partners (including both general and limited partners) (the "Released Parties") and their respective property and assets from any and all acts and omissions of the Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Releasing Parties now have, may claim to have or may come to have against the Released Parties through the date of this Final Order, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state,

federal, or foreign laws, including without limitation, any right to assert any disgorgement, recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction on the payment of the Prepetition First Lien Credit Agreement, but excluding obligations of the DIP Lender under the DIP Facility arising after the date of this Final Order (collectively, the "Released Claims"). For the avoidance of doubt, the Released Claims do not include: (i) any claims that the Debtors may have against Richard Godfrey, Todd Gentry, and Christopher Hunter, or any entities affiliated with the same of any nature; (ii) any direct claims of Hisun against Kinderhook Industries LLC; and (iii) any direct claims of Kinderhook against Hisun. This paragraph is in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Releasing Parties in favor of the Released Parties.  Notwithstanding the releases and covenants in favor of the Released Parties contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under th~~is~~e DIP Term Sheet, ~~an~~the Initial Interim ~~DIP~~ Order, the Second Interim Order, or the DIP Loan Documents.  As of the date hereof, there exist no claims or causes of action against the DIP Lenders with respect to, in connection with, related to, or arising from th~~is~~e DIP Term Sheet, ~~an Interim DIP~~this Final Order, or the DIP Loan Documents that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity.  ~~For the avoidance of doubt, the Released Claims do not include any claims that the Debtors may have against Richard Godfrey, Todd Gentry, and Christopher Hunter, or any entities affiliated with the same of any nature.~~  The releases granted in this paragraph ~~4.14~~4.14 are final and binding and are not subject to a Challenge.

4.15    <u>Payment of Fees and Expenses</u>.

(a)    The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date, (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents (collectively, (i) and (ii), the "<u>DIP Fees and Expenses</u>") and (iii) the First Lien Agent Fees and Expenses (and together with the DIP Fees and Expenses, collectively, the "<u>Fees and Expenses</u>").  Upon entry of this Final Order, the Debtors shall immediately pay, and the DIP Lender is hereby authorized to immediately make an advance under the DIP Loan Documents to immediately pay, all accrued and unpaid DIP Fees and Expenses incurred prepetition.

(b)    With respect to the Fees and Expenses incurred postpetition, professionals for the DIP Lender and First Lien Agent shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to the U.S. Trustee, and the Committee, with a copy of such invoices delivered simultaneously to the Debtors.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay, and the DIP Lender is hereby authorized to make an advance under the DIP Loan Documents to timely pay, such Fees and Expenses.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay, and the DIP Lender is authorized to make an advance under the DIP Loan Documents to timely pay, the undisputed amount of the invoice, and this Court shall have jurisdiction to

determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Under no circumstances shall professionals for the DIP Lender or the First Lien Agent be required to comply with the U.S. Trustee fee guidelines or otherwise be required to file a fee or retention application with the Court.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

    4.16 <u>Limits on Lender Liability</u>.

    (a) Nothing in this Final Order, any of the DIP Loan Documents, any of the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Lender and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

    (b) Nothing in this Final Order or the other DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

47

(c)      As to the United States, its agencies, departments, or agents, nothing in this Final Order or the other DIP Loan Documents shall discharge, release, or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

4.17    <u>Survival</u>.    The provisions of this Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Superpriority Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in these Chapter 11 Cases, (b) converting these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of these Chapter 11 Cases, (d) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (e) pursuant to which the Court abstains from hearing these Chapter 11 Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and Prepetition Secured Parties pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents (including this Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated or the DIP Lender has otherwise agreed in writing and such alternate treatment has been consummated and (ii) in respect of the First Lien Loans, all of the Prepetition Obligations, pursuant to the Prepetition Documents (including this Final Order), have

been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the Prepetition Documents which survive such discharge by their terms) and all commitments to extend credit under the Prepetition Documents are terminated or the Prepetition Secured Parties have otherwise agreed in writing and such alternate treatment has been consummated.

4.18    <u>No Third Party Rights</u>.  Except as specifically provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

4.19    <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility or use of Cash Collateral shall be avoidable or recoverable from the DIP Lender or the Prepetition Secured Parties under any section of the Bankruptcy Code or any other federal, state, or other applicable law.

4.20    <u>Reliance on Order</u>.  All postpetition advances under the DIP Loan Documents are made in reliance on this Final Order.

4.21    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Lender and First Lien Agent on behalf of the Prepetition Secured Parties shall, subject to the terms of this Section 4.21, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects; *provided, however,* that to the extent the Prepetition Obligations are not treated as unimpaired or otherwise assumed upon (i) the consummation of a sale of all or

49

substantially all of the Prepetition Collateral or (ii) the confirmation of a plan of reorganization in these cases, the DIP Lender shall turnover to the First Lien Agent any recovery the DIP Lender receives on account of the Prepetition Collateral until the Prepetition Obligations are paid in full. For purposes of clarity, in no event shall the DIP Lender be required to provide any consideration or recovery to the First Lien Agent on account of the Prepetition Obligations or the Prepetition Collateral in the event that (y) it does not receive any recovery on account of the Prepetition Collateral or (y) the sale contemplated under the Stalking Horse Purchase Agreement closes and the Prepetition Obligations are assumed by the buyer as contemplated thereunder.

4.22    Limited Effect.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents (including this Final Order), the terms and provisions of this Final Order shall govern.

4.23    Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

4.24    Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

4.25    General Authorization.  The Debtors, the Prepetition Secured Parties, and the DIP Lender are authorized to take any and all actions necessary to effectuate the relief granted in this Final Order.

4.26    Retention of Exclusive Jurisdiction.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the DIP Term Sheet, and the other DIP Loan Documents.

4.27    No Implied Modification of Approved Budget.  For the avoidance of doubt, any order of this Court authorizing the Debtors to make certain payments shall not be construed

as authorization to for the Debtors to make any payments inconsistent with the Approved Budget and the Approved Budget shall control in all respects.

4.28    Proofs of Claim.  The Prepetition Secured Parties (including the First Lien Agent) shall not be required to file proofs of claim in any of the Debtors' cases or any of the Successor Cases for any claim allowed herein or therein in respect of the Prepetition Obligations. Any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases shall not apply to the First Lien Agent or other Prepetition Secured Parties; provided that notwithstanding any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, the First Lien Agent on behalf of the Prepetition Secured Parties, may (but are not required) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by any Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

**EXHIBIT C**

**REDLINED Revised Proposed Final DIP Order**
**Marked Against the Second Interim DIP Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP | ) Case No. 23-10047 (LSS) |
| INVESTOR, LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos.  13, 33, 54, 168** |

~~**SECOND INTERIM**~~ **FINAL ORDER PURSUANT
TO
11 U.S.C. §§ 105, 361, 362, 363,
364, 503, AND 507
(I) AUTHORIZING
THE DEBTORS TO OBTAIN
SENIOR AND
JUNIOR SECURED SUPERPRIORITY
POSTPETITION
FINANCING; (II) GRANTING LIENS
AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS;
(III) AUTHORIZING
USE OF CASH COLLATERAL; (IV) MODIFYING
THE AUTOMATIC STAY;**

~~**(V) SCHEDULING A FINAL HEARING;**~~ **AND (**~~**VI**~~**V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (the "<u>Debtors</u>") pursuant

to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(e), and 507 of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 9014, and 9019 of the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and DIP Term Sheet (as defined herein~~).~~), as applicable.

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") of the United States Bankruptcy Court for the District of Delaware (this "Court"), seeking, *inter alia*:

(1)    authorization    for    Performance    Powersports    Group    Purchaser,    Inc. (the "DIP Borrower") to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for certain of the DIP Borrower's direct parent and direct and indirect subsidiaries as guarantors (the "DIP Guarantors," and, together with the DIP Borrower, the "DIP Obligors") to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth herein and in the executed term sheet attached hereto as Exhibit A[3] to the Initial Interim Order (as defined below) (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Term Sheet," and together with all agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, or notes) that are intended from time to time to effectuate the terms of the DIP Term Sheet, including the Initial Interim Order, thisthe Second Interim Order, (defined below), and theis Final Order, the "DIP Loan Documents") in all respects, the DIP Borrower's obligations under the DIP Facility, consisting of a junior secured "new money" term loan credit facility (the "DIP Facility"), on the terms and conditions set forth in the DIP Term Sheet, by and among the DIP Obligors and Tankas Funding VI, LLC (the "DIP Lender"), in an aggregate principal amount of $10 million in term

---

[3]    The DIP Term Sheet may be superseded and replaced in all respects by one or more DIP Loan Documents to be executed by the DIP Borrower, the DIP Guarantors and the DIP Lender, in form and substance consistent with the DIP Term Sheet and otherwise acceptable only to the DIP Lender.

loan commitments having been made available as term loans (the "DIP Loans") to the DIP Borrower following entry of the Initial Interim Order ~and satisfaction of the other conditions set forth therein in an initial amount of $3.5 million (the "Initial DIP Loan") and which shall behaving been made available to the DIP Borrower following entry of thisthe Second Interim Order and satisfaction of the other conditions set forth in the DIP Term Sheet that apply to borrowing following entry of theis Final Order (as defined below) in an amount not to exceed $1.8 million (the "Second DIP Loan") (such conditions to apply as if thisthe Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of theis final order approving entry into the DIP Facility (theis "Final Order"); *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.7 million) of such DIP Facility on one additional business day after the borrowing (if any) in connection with theis Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree));

(2)     authorization for the Debtors to execute, deliver, and enter into the DIP Term Sheet and any other DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Loan Documents, including any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the DIP Lender (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims,

whether contingent or absolute, in each case, to the extent constituting all Debtors', and/or DIP Guarantors', obligations of any kind under the DIP Loan Documents (such obligations collectively, the "DIP Obligations") subject to the terms of this second interim order (the "Interim Order");

(4)     authorization for the Debtors, immediately upon entry of the Initial Interim Order, to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this InterimFinal Order and the applicable Approved Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Term Sheet) to:  (A) pay costs, premiums, fees, and expenses related to the above-captioned chapter 11 cases (the "Chapter 11 Cases") and in connection with the DIP Facility and the Debtors' use of Cash Collateral and (B) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents);

(5)     the granting and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lender, in respect of all DIP Obligations, subject only to the Carve Out (as defined below);

(6)     the granting to the DIP Lender of valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including any "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein and in the other DIP Loan Documents;

(7)     authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (as defined

below), and providing adequate protection to the Prepetition Secured Parties for, among other things, any diminution in value of the Prepetition Collateral, including in respect of Cash Collateral, from and after the Petition Date to the extent such diminution in value occurs on account (without limitation) of the Debtors' sale, lease or use of the Prepetition Collateral, including Cash Collateral, the imposition, enforcement, and consequences of the automatic stay pursuant to section 362 of the Bankruptcy Code.

(8)    authorizing the Debtors to incur the DIP Obligations, including the incurrence of senior liens on the Unencumbered Collateral (as defined below), the incurrence of junior liens on the Prepetition Collateral, the subordination of Prepetition Liens to the extent set forth herein, the administration of these Chapter 11 Cases, and the priming of the Prepetition Secured Parties' respective interests in the Prepetition Collateral by the Carve Out (as defined below).

(9)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this ~~Interim~~Final Order and the other DIP Loan Documents to the extent hereinafter set forth;

(10)    upon entry of th~~e~~is Final Order, a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and Prepetition Collateral and certain rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)    a waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this ~~Interim~~Final Order; and

~~(12)    the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and~~

5

(13)(12)          the Court to grant such other and further relief as is just and proper.

The initial hearings on the Motion having been held by this Court on January 18, 2023 (the "Initial Interim Hearing") and February 23, 2023 (the "Second Interim Hearing"), and upon the record made by the Debtors at the Initial Interim Hearing and, Second Interim Hearing, and final hearing on March 20, 2023 (the "Final Hearing"), including the Motion and the *Declaration of Ken Vanden Berg in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") and the *Declaration of Steven Bremer in Support of Cash Collateral and DIP Motion* and the *Declaration of Alyssa Lozynski in Support of Cash Collateral and DIP Motion* (collectively, the "DIP Declarations"), any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having entered the Initial Interim Order and the Second Interim Order, and the Court having found that the interimfinal approval of the relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the interim final approval of the relief requested in the Motion is necessary to avoid immediatefair and irreparable harm to thereasonable and in the best interest of the Debtors and their Estates pending the Final Hearing; and appropriate and adequate notice of the Motion, the interim final approval of the relief requested therein, the Initial Interim Hearing, and the InterimFinal Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on:  (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on

6

a consolidated basis) (the "30 Largest Unsecured Creditors"); (c) counsel to the DIP Lender; (d) counsel to the Prepetition Secured Parties; (e) ~~counsel to~~ the ~~DIP Lender; (f) the~~ United States Attorney's Office for the District of Delaware; (~~g~~f) the Internal Revenue Service; (~~h~~g) the United States Securities and Exchange Commission; (~~i~~h) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (~~j~~i) counsel for the Committee; (~~k~~j) the attorneys general of Delaware and Arizona; (~~l~~k) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien on the Debtors' assets; (~~m~~l) the Debtors' cash management banks; and (~~n~~m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. ~~54] (the "Initial Interim Order"); and the opportunity for an interim hearing~~54] (the "Initial Interim Order"); and having entered the *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 168] (the "Second Interim Order"); and the opportunity for interim and final hearings on the Motion was appropriate under the circumstances; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    <u>Petition Date</u>.  On January 16, 2023 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in the Chapter 11 Cases.

B.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief granted hereby are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013, 9014, and 9019 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.    <u>Committee Formation</u>.  On January 30, 2023, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "<u>Committee</u>") pursuant to section 1102 of the Bankruptcy Code [Docket No. 82].

D.    <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Initial Interim Hearing, the <u>Second </u>Interim Hearing, <u>Final Hearing, </u>and the relief granted under this ~~Interim~~<u>Final</u> Order,

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and the Local Rules.

E.  <u>Parties' Acknowledgments, Agreements, and Stipulations</u>.  In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility, access to Cash Collateral, and subordination of the DIP Liens (as defined herein) to the Carve Out and as a condition to the DIP Lender providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the limitations, provisions and rights afforded pursuant to paragraph 4.94.9 of this InterimFinal Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)  *Existing First Lien Credit Agreement.*  Pursuant to that certain Credit Agreement, dated October 8, 2021, among Performance Powersports Group Purchaser, Inc., (in such capacity, the "<u>First Lien Borrower</u>"), the Loan Parties (as defined therein) party thereto (collectively, with the First Lien Borrower, the "<u>First Lien Obligors</u>"), the lenders party thereto (the "<u>First Lien Lenders</u>"), Twin Brook Capital Partners, LLC, as agent (the "<u>First Lien Agent</u>"; and together with the First Lien Lenders, the "<u>Prepetition Secured Parties</u>") (as amended, restated, supplemented or otherwise modified, the "<u>Prepetition First Lien Credit Agreement</u>" and collectively with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "<u>Prepetition Documents</u>"), the First Lien Lenders provided secured loans to the First Lien Borrower.

(ii)  *Prepetition Obligations.*  As of the Petition Date, the First Lien Obligors were indebted to the Prepetition Secured Parties under the Prepetition First Lien Credit Agreement in respect of outstanding Loans (as defined in the Prepetition First Lien Credit Agreement) in an

aggregate principal amount of not less than $52 million under the Prepetition First Lien Credit Agreement (the "First Lien Loans"), plus interest accrued and accruing thereon, together with all costs, fees, termination fees, fees and expenses (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements of the First Lien Agent's or the First Lien Lender's attorneys, advisors, accountants, and other consultants, and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the First Lien Obligors' obligations pursuant to the Prepetition First Lien Credit Agreement, and any other "Obligations" as defined therein (collectively, the "Prepetition Obligations"), which Prepetition Obligations are legal, valid, and binding on the Debtors.

(iii)    *Prepetition Collateral.*    As more fully set forth in the Prepetition Documents, as of the Petition Date, the First Lien Obligors granted to the Prepetition Secured Parties, first priority security interests in and continuing liens to the Prepetition Secured Parties (the "Prepetition Liens") upon substantially all of their tangible and intangible assets and properties as Collateral (as defined in the Prepetition Documents) for the Prepetition Obligations (the "Prepetition Collateral")).

(iv)    *Indemnity*.  The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, the

DIP Lender, ~~subject to and upon entry of a Final Order,~~ shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct, in each case, as determined by final order in a court of competent jurisdiction.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph (12)E(iv) or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender, as the case may be.

(v)    *Sale and Credit Bidding*.  The Debtors admit, stipulate, acknowledge, and agree that the DIP Lender shall have the right to credit bid the entirety of (or any portion of) the DIP Obligations; *provided* that any such credit bid shall require (i) assumption in full of the Prepetition Obligations, (ii) payment in full in cash of the Prepetition Obligations, or (iii) such other treatment satisfactory to the Prepetition Secured Parties.  The Debtors admit, stipulate, acknowledge, and agree that the Prepetition Secured Parties shall have the right to credit bid the entirety of (or any portion of) the Prepetition Obligations.

(vi)    *Release.* The Debtors stipulate and agree that no party has been or will be granted standing by the Debtors to prosecute the Released Claims (as defined in paragraph 4.14). including the litigation trust that will be created pursuant to the Stalking Horse Purchase Agreement.

F.    Findings Regarding the Postpetition Financing.

(i)    Postpetition Financing.  The Debtors have requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this ~~Interim~~Final Order and satisfaction of

the conditions set forth in the DIP Loan Documents and obtaining the consent of the Prepetition Secured Parties, to extend the DIP Loans on the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Loan Documents, respectively.

(ii)     <u>Need for Postpetition Financing</u>.  The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, pay employees, taxes, and certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in this ~~Interim~~Final Order and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)     <u>No Credit Available on More Favorable Terms</u>.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) other than as set forth herein, credit secured

solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors assert in the Motion, the First Day Declaration, and in the DIP Declaration, and demonstrated at the Initial Interim Hearing, the Second Interim Hearing, and the ~~Interim~~Final Hearing, that they have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In light of the foregoing, and considering all alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    _Budget_.  The Debtors have prepared and delivered to the DIP Lender and First Lien Agent ~~an initial~~a budget (approved by ~~the "Initial Budget"),~~DIP Lender, a copy of which in the most recent form so approved is attached hereto as **Exhibit B**. (such approved budget and each subsequent budget approved by the DIP Lender then in effect, an "Approved Budget").  The ~~Initial~~Approved Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date ~~(the Initial Budget and each subsequent budget approved by the DIP Lender then in effect, an "Approved Budget")..~~  The Debtors believe that the ~~Initial~~Approved Budget is reasonable under the facts and circumstances.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this ~~Interim~~Final Order in determining to enter into the postpetition financing arrangements provided for herein.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this ~~Interim~~Final Order in determining to enter into

the postpetition financing arrangements provided for herein.  The First Lien Agent and Prepetition Secured Parties are relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget and this ~~Interim~~Final Order in determining to consent to the use of Cash Collateral and entering into the postpetition financing arrangements provided for herein.

        (v)        <u>Certain Conditions to DIP Facilities</u>.  The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by this ~~Interim~~Final Order; (b) the DIP Lender being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject and junior to the Carve Out, (x) automatically perfected and unavoidable first priority security interests in, and liens on, all cash borrowed under the DIP Facility (which shall constitute cash collateral of the DIP Lender) and which cash shall be held in a segregated account in accordance with the DIP Loan Documents (the "<u>DIP Proceeds</u>") and unencumbered real and personal property of the Debtors, whether now existing or hereafter arising and wherever located, tangible and intangible (collectively, the "<u>Unencumbered Collateral</u>"), which, in both cases, shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds or Unencumbered Collateral; (y) ~~subject to and upon entry of a Final Order,~~ automatically perfected and unavoidable first priority security interests in, and liens on, the proceeds of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "<u>Avoidance Actions</u>")); and (z) automatically perfected and unavoidable junior second priority priming security interests in, and all liens on, all real and

personal property of the Debtors securing the Prepetition First Lien Credit Agreement (collectively hereinafter referred to as the "DIP Collateral,") and (c) the First Lien Agent and Prepetition Secured Parties' receipt of the adequate protection granted to them in this ~~Interim~~Final Order. For the avoidance of doubt, DIP Collateral shall not include the DIP Obligors' leasehold interests, but instead shall include solely the proceeds of any such leasehold interests.

(vi)    Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender and the Prepetition Secured Parties, including pursuant to this ~~Interim~~Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, the Adequate Protection Liens, and the DIP Superpriority Claims (as defined below), the Prepetition Liens, and the Prepetition Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(vii)    Credit Bid Rights. The Debtors hereby acknowledge and agree that they shall not object, or support any objection, to the DIP Lender's right to credit bid up to the full amount of its DIP Obligations, and the Prepetition Secured Parties' right to credit bid up to the full amount of its Prepetition Obligations including in each case, without limitation, any accrued interest and expenses, subject to the terms of the Bid Procedures, in any sale effectuated through section 363 of the Bankruptcy Code, whether in a chapter 11 or chapter 7 proceeding.

(viii)    Sections 506(c) and 552(b). The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in the

~~Interim~~Initial Interim Order, Second Interim Order, and this Final Order that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out, and (c) the use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan Documents, and the terms of this ~~Interim~~Final Order, the Prepetition Secured Parties and the DIP Lender are entitled to receive (x) ~~subject to and upon entry of a Final Order,~~ a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (y) ~~subject to and upon entry of a Final Order,~~ a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)    <u>Good Cause</u>.  Good cause has been shown for the entry of this ~~Interim~~Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of their sound business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Lender, the First Lien Agent, and the Prepetition Secured Parties.

16

(x)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

Based upon the foregoing, and upon the record made before the Court at the Initial Interim Hearing ~~and~~, Second Interim Hearing, and Final Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.    <u>Authorization and Conditions to Financing</u>.

1.1    <u>Motion Granted</u>.  The Motion is granted on a ~~further interim~~final basis to the extent provided in this ~~Interim~~Final Order.  Any objections to the entry of this ~~Interim~~Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

1.2    <u>Authorization of DIP Financing</u>.

(a)    The Debtors are hereby authorized and empowered to immediately borrow, incur, and guarantee (as applicable), DIP Loans, pursuant to the terms and conditions of the DIP Term Sheet and any other DIP Loan Documents, in an aggregate principal amount not to exceed $10 million, with the Initial DIP Loan having been made available upon entry of the Initial Interim Order and the Second DIP Loan ~~to be~~having been made available following entry of ~~this~~the Second Interim Order and upon satisfaction of other conditions set forth in the DIP Loan Documents (~~such conditions to apply~~as if ~~this~~the Second Interim Order were the "DIP Order" and the Second DIP Loan were the "Final DIP Loan" referenced in such conditions), with the remaining amount being made available upon entry of th~~is~~e Final Order and upon satisfaction of other conditions set forth in the DIP Loan Documents and consistent with the applicable Approved

17

Budget and the DIP Loan Documents; *provided*, that the DIP Borrower may elect to draw a portion (not to exceed $4.7 million) of such DIP Facility on one additional business day after the borrowing (if any) in connection with theis Final Order (on not less than five (5) business days' notice (or such shorter period as the DIP Lender may agree)).

(b)     The Debtors are hereby authorized to (i) borrow under the DIP Facility during the Interim Financing Period (as defined below) in accordance with, and for the purposes permitted by, the DIP Loan Documents (including this InterimFinal Order), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Loan Documents, all pursuant to the terms and conditions of this InterimFinal Order and the other DIP Loan Documents, in each case during the period commencing on the date of the Initial Interim Order through and including the entry of the Final Order (the "Interim Financing Period"), and (iii) use the Cash Collateral for the purposes described in this InterimFinal Order.  The InitialApproved Budget is hereby approved as the "Approved Budget" in all respects.  The Debtors shall use the proceeds of the DIP Facility solely in a manner consistent with the Approved Budget and the terms and conditions of the DIP Loan Documents (including this InterimFinal Order).

1.3     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this InterimFinal Order and the DIP Loan Documents, and in a manner consistent with the Approved Budget, the Debtors are authorized to use Cash Collateral.  Nothing in this InterimFinal Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this InterimFinal Order (including with respect to the Carve Out), the DIP Facility, or the DIP Loan Documents.

1.4     Financing Documents.

(a)     Authorization.  The Debtors are hereby authorized and directed to enter into, execute, deliver, and perform all obligations under the DIP Term Sheet and any other DIP Loan Documents, each of which are approved pursuant to this ~~Interim~~Final Order. No obligation, payment, transfer, or grant of security hereunder or under the other DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)     Approval; Evidence of Borrowing Arrangements.  All terms, conditions, and covenants set forth in the DIP Term Sheet and any other DIP Loan Documents are approved.  All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Obligors, and the DIP Lender, and (ii) the Debtors' assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of this ~~Interim~~Final Order and the other DIP Loan Documents for all purposes, including to the extent applicable, the payment of all DIP Obligations arising thereunder, including all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Lender's closing, commitment and exit fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Loan Documents.  Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP

Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this ~~Interim~~Final Order and the other DIP Loan Documents.

(c)    Payment of DIP Fees and Other Expenses.    Any and all fees and expenses payable pursuant to the DIP Term Sheet and any other DIP Loan Documents (collectively, any and all such fees and expenses, the "DIP Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, as provided by the DIP Loan Documents (including this ~~Interim~~Final Order) in accordance with Section 4.14 hereof.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

(d)    Additional DIP Loan Documents; Amendments to DIP Loan Documents.  At the option of the DIP Lender, in its sole discretion, the Debtors and the DIP Lender shall execute additional definitive DIP Loan Documents with respect to the DIP Facility, including, without limitation, guarantees and security documents, in each case, reasonably satisfactory in form and substance to the DIP Lender and the Debtors, which such DIP Loan Documents shall contain the terms and conditions set forth in the DIP Term Sheet and such other terms as the Debtors and the DIP Lender shall agree.  The provisions of the DIP Loan Documents shall, upon approval by the Court, amend, modify, supplement and (where applicable) supersede the provisions of the DIP Term Sheet; *provided* that if the DIP Lender determines not to require the

Debtors to execute additional DIP Loan Documents, the provisions of the DIP Term Sheet, the Initial Interim Order, ~~this~~the Second Interim Order, and the~~is~~ Final Order shall govern the DIP Facility.  The provisions of the DIP Loan Documents shall be consistent with the DIP Term Sheet, the Initial Interim Order ~~and, once entered~~, the Second Interim Order, and this Final Order.  The Debtors and the DIP Lender may make amendments, modifications, or supplements to the DIP Term Sheet and any other DIP Loan Document, and the DIP Lender may waive any provisions in the DIP Term Sheet and any other DIP Loan Documents, ~~and shall file notice~~without further approval of ~~such with~~ the Court ~~in advance of the Final Hearing~~; *provided* that any amendments, modifications, or supplements to the DIP Term Sheet or any other DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents ("Material DIP Amendment"), shall be subject to consent of the Prepetition Secured Parties (not to be unreasonably withheld) and filed with the Court, and the Debtors shall provide prior written notice of a Material DIP Amendment to (i) counsel to the DIP Lender, (ii) the U.S. Trustee, (~~iv~~iii) counsel to the First Lien Agent, and (~~v~~iv) counsel to the Committee; *provided* that the consent of the foregoing parties (other than the consent of the DIP Lender and the Prepetition Secured Parties, each as set forth herein) will not be necessary to effectuate any such amendment, modification, or supplement, except that any Material DIP Amendment that is subject to a timely and unresolved objection must be approved by the Court.  For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court from the DIP Lender.

1.5    <u>Indemnification</u>.    ~~Subject to and upon entry of a Final Order,~~ ~~the~~The Debtors are authorized to indemnify and hold harmless the DIP Lender, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Loan Documents, <u>which indemnification is hereby authorized and approved</u>.

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status</u>.

2.1    <u>Postpetition Lien</u>.

(a)    <u>Postpetition DIP Lien Granting</u>.    To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (such security interests and liens, the "<u>DIP Liens</u>") in and upon all DIP Collateral, subject to the priorities set forth herein.

(b)    <u>DIP Lien Priority in DIP Collateral</u>.    The DIP Liens on the DIP Collateral securing the DIP Obligations shall have and are hereby granted (i)  first priority security interests in, and liens on, the DIP Proceeds and the Unencumbered Collateral, which shall be senior in priority to the Adequate Protection Liens granted hereunder on the DIP Proceeds and Unencumbered Collateral; (ii) ~~subject to and upon entry of a Final Order,~~ first priority security interests in, and liens on, the proceeds of any Avoidance Action; and (iii) junior second priority security interests in, and all liens on, all real and personal property of the Debtors securing the

Prepetition First Lien Credit Agreement. At all times, the Debtors shall maintain the DIP Proceeds in a segregated account and not otherwise co-mingle cash constituting DIP Proceeds with any other Cash Collateral.  It ~~shall be~~was a condition to closing of the DIP Facility that the Debtors have confirmed to the DIP Lender in writing that such an account exists and that the DIP Proceeds will be held in such account.

(c)    Postpetition Lien Perfection.  This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act").  Notwithstanding the foregoing, if the DIP Lender, in its sole discretion, elects for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Lender is authorized to perform such act, and the Debtors and DIP Guarantors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of ~~this~~the Initial Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record, or present a certified copy of this ~~Interim~~Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing

23

or recording office is authorized to accept, file, or record such certified copy of this ~~Interim~~Final

Order in accordance with applicable law.  Should the DIP Lender so choose and attempt to file,

record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in

any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the

postpetition liens and security interests granted herein by virtue of the entry of this ~~Interim~~Final

Order.

(d)    By virtue of the terms of this ~~Interim~~Final  Order, to the extent that

the DIP Lender has filed Uniform Commercial Code financing statements, mortgages, deeds of

trust, or other security or perfection documents under the names of any of the Debtors (including

all DIP Guarantors), such filings shall be deemed to properly perfect its liens and security interests

granted and confirmed by this ~~Interim~~Final Order without further action.

(e)    Except as provided in section 2.3 herein, the DIP Liens and the DIP

Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security

interest, or claim heretofore or hereinafter granted in these Chapter 11 Cases or any Successor

Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other

estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or

upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is

avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the

Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim and (ii) shall

not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

(f)    <u>Adequate Protection for the Prepetition Secured Parties</u>.    The

Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507

of the Bankruptcy Code, to adequate protection of their respective interests in the applicable

Prepetition Collateral, including any Cash Collateral, solely to the extent of any diminution in value of their interests in the Prepetition Collateral. As adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve Out (the "Adequate Protection Obligations"):

      (i)     <u>Adequate Protection Liens</u>. As security for the payment of the Adequate Protection Obligations, each of the Prepetition Secured Parties, for the benefit of the applicable Prepetition Secured Party, is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and liens on the applicable Prepetition Collateral and the Unencumbered Collateral (the "<u>Adequate Protection Liens</u>"), which security interests and liens shall be subject to the Carve Out. For the avoidance of doubt, the Prepetition Secured Parties' Adequate Protection Liens on the DIP Proceeds and the Unencumbered Assets shall be junior to the DIP Liens. The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of the Prepetition Secured Parties and not in substitution therefor.

      (ii)     <u>Other Adequate Protection</u>. The Prepetition Secured Parties shall receive (i) postpetition payment of all reasonable and documented out-of-pocket fees, costs and expenses of the First Lien Agent (including all fees and expenses of their outside counsel, Winston & Strawn LLP and Young Conaway Stargatt & Taylor, LLP, and up to one financial advisor retained by the First Lien Agent with the reasonable consent of the DIP Lender) (the "First Lien Agent Fees and Expenses") and; (ii) the Adequate Protection Liens to the extent of any post-petition diminution in value of the Prepetition Secured Party's interest in the collateral securing the Prepetition First Lien Credit Agreement (the "<u>Prepetition Superpriority Claims</u>"); and

25

(iii) access to the Debtors' books and records and such financial reports as are provided to the DIP Lender, including concurrent receipt of the weekly proposed updates to the Approved Budget and Variance Reports to be provided by the Debtor to the DIP Lender pursuant to the DIP Term Sheet and (iv) other protections set forth in this ~~Interim~~Final Order.

2.2    <u>Superpriority Administrative Expenses</u>.

(a)    <u>DIP Loans</u>.  Subject to the Carve Out, all DIP Obligations now existing or hereafter arising pursuant to this ~~Interim~~Final Order, the other DIP Loan Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c) ~~(subject to entry of the Final Order)~~, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, ~~subject to and upon entry of a Final Order,~~ proceeds of Avoidance Actions) (such superpriority administrative expense claim, the "<u>DIP Superpriority Claims</u>").

2.3    <u>Carve Out Provisions</u>.

(a)    As used in this ~~Interim~~Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate

(without regard to the notice set forth in (iii) below); plus (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the First Lien Agent, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

       (b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Lender to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize

all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Lender in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable proceeds of a DIP Loan, in which case such funds shall be paid to the DIP Lender.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the First Lien Agent for the benefit of the Prepetition Secured Parties unless the funds are identifiable DIP Proceeds, in which case such funds shall be paid to the DIP

Lender.  Notwithstanding anything to the contrary in the DIP Loan Documents, or this ~~Interim~~Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph (b), prior to making any payments to the DIP Lender or the Prepetition Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents or this ~~Interim~~Final Order, following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Lender for application in accordance with the DIP Loan Documents.  Further, notwithstanding anything to the contrary in this ~~Interim~~Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans (as defined in the DIP Term Sheet) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this ~~Interim~~Final Order, the DIP Facility, or in the First Lien Credit Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and any

and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(c)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this ~~Interim~~Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

Section 3.     <u>Default; Waivers; Rights and Remedies; Relief from Stay</u>.

3.1     <u>Events of Default</u>.  The occurrence of (a) any "Event of Default" as that term is defined in the DIP Loan Documents, (b) any failure to meet or satisfy any Milestone as defined in, and in accordance with, the DIP Loan Documents, (c) the Maturity Date under the DIP

Loan Documents, or (d) any material violation, breach, or default by the Debtors with respect to any of their obligations under this ~~Interim~~Final Order or any other DIP Loan Document, shall constitute a "DIP Termination Event" hereunder unless waived in writing by the DIP Lender in accordance with the DIP Loan Documents.

      3.2    Debtors' Waivers.

      (a)    Prior to the indefeasible payment in full of all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (i) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations, other than as provided in this ~~Interim~~Final Order or as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this ~~Interim~~Final Order pursuant to section 506(b) of the Bankruptcy Code; (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lender or Prepetition Secured Parties from exercising its credit bid rights in connection with the sale of any assets of the Debtors; or (iv) subject to the Remedies Notice Period (as defined below), to seek relief under the Bankruptcy Code, including under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) (x) the rights and remedies of the DIP Lender against the Debtors as provided in this ~~Interim~~Final Order or any of the DIP Loan Documents or (y) the rights and remedies of the Prepetition Secured Parties against the Debtors as provided in this ~~Interim~~Final Order or any of the Prepetition Documents or (B) (x) the exercise of such rights or remedies by the DIP Lender against the Debtors in accordance with the DIP Loan Documents (including this ~~Interim~~Final Order) or (y) the exercise of such rights by the Prepetition Secured Parties against the Debtors in accordance with the Prepetition Documents or this ~~Interim~~Final

Order; *provided*, *however*, that (x) the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender and (y) the Prepetition Secured Parties may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by any Prepetition Secured Party.

(b)      It shall also be a DIP Termination Event under the DIP Facility if, prior to the indefeasible payment in full of such DIP Facility, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations (other than indemnities then due and payable) in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of such chapter 11 plan or sale, without the written consent of the DIP Lender.

3.3      DIP Lender Rights and Remedies upon a DIP Termination Event. ~~During the period covered by this Interim Order, after~~After three (3) business days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event to the DIP Lender and the Prepetition Secured Parties, or such later time as the Court may order during such three (3) business day period (the "Remedies Notice Period"), the DIP Lender shall be entitled to independently take any act or exercise any right or remedy, unless the Court orders otherwise during the Remedies Notice Period, as provided in this ~~Interim~~Final Order or any other DIP Loan Document, as applicable, including, without limitation, (a) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any Letters of Credit), (c) terminate the DIP Facility

and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations, (d) terminate and/or revoke the Debtors' right, if any, under this ~~Interim~~Final Order and the other DIP Loan Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease, (e) invoke the right to charge interest at the default rate under the DIP Loan Documents, and/or (f) stop lending.  For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the DIP Lender.

3.4     <u>Prepetition Secured Parties Rights and Remedies upon a DIP Termination Event</u>.  ~~During the period covered by this Interim Order, after~~After the Remedies Notice Period, the Prepetition Secured Parties shall be entitled to independently take any act or exercise any right or remedy as provided in this ~~Interim~~Final Order or any of the Prepetition Documents, as applicable, including, without limitation, (a) declare all Obligations owing under the Prepetition Documents to be immediately due and payable, and (b) terminate and/or revoke the Debtors' right, if any, under this ~~Interim~~Final Order, the other DIP Loan Documents, and any of the Prepetition Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease.  For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, (x) the Prepetition Secured Lenders shall have no ability to exercise rights with respect to the DIP Proceeds and (y) the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance

with the Approved Budget, or that have otherwise been approved in advance in writing by the Prepetition Secured Parties.

3.5    Modification of Automatic Stay.    The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender and the Prepetition Secured Parties to perform any act authorized or permitted under or by virtue of this ~~Interim~~Final Order, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this ~~Interim~~Final Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, and (d) subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to ~~it~~the DIP Lender and the Prepetition Secured Parties by this ~~Interim~~Final Order, the other DIP Loan Documents, or applicable law.

Section 4.    Other Rights and DIP Obligations.

4.1    No Modification or Stay of this ~~Interim~~Final Order.  The DIP Lender ~~has~~and the Prepetition Secured Parties have acted in good faith in connection with the DIP Facility, with the use of Cash Collateral, and with this ~~Interim~~Final Order, and their reliance on this ~~Interim~~Final Order is in good faith, and the DIP Lender ~~is~~and the Prepetition Secured Parties are entitled to the protections of section 364(e) of the Bankruptcy Code.

4.2    Rights of Access and Information.    The Debtors shall provide the DIP Lender reasonable access and information as requested by the DIP Lender.  The Debtors shall

provide the First Lien Agent reasonable access and information as requested by the First Lien Agent.

4.3   Power to Waive Rights; Duties to Third Parties.

(a)   Subject to the terms of the DIP Loan Documents, the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this ~~Interim~~Final Order that are in favor of the DIP Lender (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights.  Any waiver by the DIP Lender of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

4.4   No Unauthorized Disposition of Collateral; Use of Cash Collateral.  The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this ~~Interim~~Final Order, and the Debtors are authorized to use Cash Collateral in a manner consistent with this ~~Interim~~Final Order, the Approved Budget and the other DIP Loan Documents (including the permitted variances and exclusions to the Approved Budget permitted thereunder).

4.5   No Waiver.  The failure of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, or ~~the Interim~~this Final Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.

Notwithstanding anything herein, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender or the Prepetition Secured Parties to:  (a) request conversion of the Chapter 11 Cases to a case under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Secured Parties.

4.6     Maintenance of Collateral.  Unless the DIP Lender and First Lien Agent otherwise consents in writing, until the latest of (a) the indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and (b) the termination of the DIP Lender' obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the Prepetition Documents and the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this ~~Interim~~Final Order and to the fullest extent provided by applicable law, the First Lien Agent and DIP Lender (on behalf of the DIP Lender) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

4.7     Reservation of Rights.  The terms, conditions, and provisions of this ~~Interim~~Final Order are in addition to and without prejudice to the rights of the First Lien Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code with respect to the DIP Lender, the other DIP Loan Documents, with respect to the First Lien Agent the

Prepetition Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Prepetition Collateral or DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

4.8    <u>Binding Effect</u>.

(a)    All of the provisions of this ~~Interim~~Final Order and the other DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of the DIP Lender or Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the Prepetition Secured Parties or DIP Lender set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section E of this ~~Interim~~Final Order (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the use of Cash Collateral provided or acknowledged in this ~~Interim~~Final Order), and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this ~~Interim~~Final Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive  any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting the Chapter 11 Cases to any other chapter under

the Bankruptcy Code, dismissing the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this ~~Interim Order or any provision hereof; *provided* that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over the Initial Interim Order and this Interim Order; *provided*, *further*, that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order~~<u>Final Order or any provision hereof</u>.

(b)        No order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise may impair the DIP Superpriority Claim, and the DIP Lender's liens on and security interests in the DIP Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this ~~Interim~~<u>Final</u> Order (including in favor of the Prepetition Secured Parties), which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full or each of the DIP Lender has otherwise agreed to alternate treatment in writing and such alternate treatment has been consummated.  Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this ~~Interim~~<u>Final</u> Order.

(c)        Reserved.

(d)        ~~Unless otherwise subject to entry of a Final Order, this Interim~~<u>This Final</u> Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of

the Debtors and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This ~~Interim~~Final Order shall also inure to the benefit of the Debtors, the DIP Lender, Prepetition Secured Parties, and each of their respective successors and assigns.

4.9    Effect of Stipulations on Third Parties.

(a)    *Generally*. The Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including the releases set forth in paragraph 4.14 (the "Releases"), shall be binding on the Debtors, any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes as set forth in this ~~Interim~~Final Order and the DIP Loan Documents. The Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including the Releases set forth in paragraph 4.14, shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, including the Committee, and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes, unless (i) the Committee or a party in interest with standing (in each case, to the extent standing is obtained pursuant to an order of this Court) has commenced a proceeding or contested matter as required under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this ~~Interim~~Final Order, including this paragraph 4.9(a) by the Challenge Deadline challenging any of the Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including

Releases set forth in paragraph 4.14, with respect to the Prepetition First Lien Credit Agreement (each such proceeding or contested matter, a "Challenge") and (ii) there is entered a final non-appealable order in favor of the plaintiff in any such Challenge sustaining such Challenge. The Court may fashion any appropriate remedy following a successful Challenge.

(b)        If no such Challenge is filed prior to the Challenge Deadline or the Court does not rule in favor of the plaintiff in any such proceeding, and after any applicable appeal period, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive (as provided in paragraph 4.9(a) hereof) on the Committee and on any other person or entity, the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected in the Chapter 11 Cases or any Successor Cases), (ii) the obligations of the Debtors under the Prepetition Documents, including the Prepetition First Lien Credit Agreement, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, recoupment, offset, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, and (iv) the Prepetition First Lien Credit Agreement and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims, and

offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, (including without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties or their respective subsidiaries, parents, affiliates, controlling persons, officers, directors, members, shareholders, employees, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other advisors and professionals and the respective successors and assigns thereof, in each case past, present and future, and their respective heirs, predecessors, successors and assigns, in their respective capacity as such, arising out of or relating to any of the Prepetition Documents, the Prepetition First Lien Credit Agreement, the Prepetition Liens, or the Prepetition Collateral, as applicable, shall be deemed forever waived, released and barred, in each case except to the extent that such Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including the Releases set forth in paragraph 4.14, were expressly and successfully challenged by such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(c)    If any such Challenge is filed prior to the Challenge Deadline by the Committee or any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases or any other person or entity with requisite standing, (i) any claim or action that is not brought shall forever be barred, and (ii) the Debtors' stipulations, admissions, agreements, and releases contained in this ~~Interim~~Final Order, including the Releases set forth in paragraph 4.14, shall nonetheless remain binding and preclusive on the Committee and each other statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or

entity, except to the extent that such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

(d)     The "Challenge Deadline" shall mean 75 days following the entry of the Initial Interim Order.  The Challenge Deadline may be extended (x) in writing prior to the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of (A) the First Lien Agent (with respect to the Prepetition Liens and Prepetition Obligations or the adequate protection afforded to the Prepetition Secured Parties), (B) the DIP Lender (with respect to the DIP Liens, DIP Obligations, and DIP Superpriority Claims or any adequate protection afforded to the DIP Lender), or (y) by this Court for good cause shown pursuant to an application filed and served, which may be done on shortened notice, by a party in interest prior to the expiration of the Challenge Deadline.

(e)     Nothing in this ~~Interim~~Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including Challenges with respect the Debtors' stipulations, admissions, agreements, and other releases contained in this ~~Interim~~Final Order with respect to the DIP Lender, including the Releases set forth in paragraph 4.14 and all rights to object to such standing are expressly reserved.

(f)     For the avoidance of doubt, notwithstanding anything to the contrary in this ~~Interim~~Final Order, (i) upon the entry of th~~e~~is Final Order and the approval of the Releases set forth in paragraph 4.14, the Challenge Deadline shall automatically be deemed to have lapsed (unless such Challenge Deadline has already lapsed pursuant to the terms thereof) as to the

Debtors' stipulations, admissions, agreements, and other releases contained in this ~~Interim~~Final Order with respect to the DIP Lender and its affiliates, including ~~the Stipulations set forth in~~ the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, (ii) such stipulations, admissions, agreements, and other releases shall be binding upon the Debtors and all other parties in interest, including any Committee, and (iii) any Challenges with respect to the DIP Lender and its affiliates, including with respect to the Releases set forth in paragraph 4.14 as to the DIP Lender and its affiliates, shall be deemed forever, waived, released, and barred.

(g)    For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter timely commenced pursuant to this ~~Interim~~Final Order  (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this ~~Interim~~Final Order.

4.10    <u>Discharge</u>.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Lender has otherwise agreed in writing.

4.11    <u>Section 506(c) Waiver</u>.  ~~Subject to and upon entry of a Final Order, no~~No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the

preservation, protection, or enhancement of value by the DIP Lender upon the DIP Collateral) shall be charged against any of the Prepetition Secured Parties, the Prepetition Obligations, the Prepetition Collateral, the DIP Lender, the DIP Obligations, or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender or Prepetition Secured Parties, as applicable, in each case in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

4.12    Section 552(b) Waiver.    ~~Subject to and upon entry of a Final Order, the~~The Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral that the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender and the DIP Obligations or the Prepetition Secured Parties and the Prepetition Obligations.

4.13    No Marshaling/Application of Proceeds.    ~~Subject to and upon entry of a Final Order, in~~In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents and the DIP Loan Documents.    ~~Subject to and upon entry of a Final Order, in~~In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral, and all proceeds shall be received and applied in accordance with the Prepetition Documents.

4.14    Releases.    ~~Subject to and upon entry of a Final Order, in~~In exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, (in their own right and on behalf of their estates and on behalf of each of their past, present, and

44

future predecessors, heirs, subsidiaries, successors, and assigns) and any party acting by, through, or under any of the Debtors, or any of their estates, including any successor trustee or other estate and representative in these Chapter 11 Cases or any Successor Case or party that could act by, through, or under any of the Debtors or their estates (collectively, the "Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the DIP Lender, and each such entity's current and former affiliates, and each such entity's current and former directors, officers, managers and equityholders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, and direct and indirect subsidiaries, and each of such entity's current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, and partners (including both general and limited partners) (the "Released Parties") and their respective property and assets from any and all acts and omissions of the Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Releasing Parties now have, may claim to have or may come to have against the Released Parties through the date of this Final Order, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b)

any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, including without limitation, any right to assert any disgorgement, recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction on the payment of the Prepetition First Lien Credit Agreement, but excluding obligations of the DIP Lender under the DIP Facility arising after the date of ~~the Final Order (collectively, the "Released Claims").~~ this Final Order (collectively, the "Released Claims").  For the avoidance of doubt, the Released Claims do not include: (i) any claims that the Debtors may have against Richard Godfrey, Todd Gentry, and Christopher Hunter, or any entities affiliated with the same of any nature; (ii) any direct claims of Hisun against Kinderhook Industries LLC; and (iii) any direct claims of Kinderhook against Hisun. This paragraph is in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Releasing Parties in favor of the Released Parties. Notwithstanding the releases and covenants in favor of the Released Parties contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under th~~is~~e DIP Term Sheet, ~~an~~the Initial Interim ~~DIP~~ Order, the Second Interim Order, or the DIP Loan Documents.  As of the date hereof, there exist no claims

or causes of action against the DIP Lenders with respect to, in connection with, related to, or arising from th~~is~~e DIP Term Sheet, ~~an Interim DIP~~this Final Order, or the DIP Loan Documents that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity. ~~For the avoidance of doubt, the Released Claims do not include any claims that the Debtors may have against Richard Godfrey, Todd Gentry, and Christopher Hunter, or any entities affiliated with the same of any nature.  As of the entry of the Final Order, the releases granted in this paragraph 4.14~~ The releases granted in this paragraph 4.14 are final and binding and are not subject to a Challenge.

4.15    Payment of ~~DIP Lender~~ Fees and Expenses.

(a)    The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date ~~and~~, (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Term Sheet, or the other DIP Loan Documents (collectively, (i) and (ii), the "DIP Fees and Expenses~~").~~") and (iii) the First Lien Agent Fees and Expenses (and together with the DIP Fees and Expenses, collectively, the "Fees and Expenses").  Upon entry of this ~~Interim~~Final Order, the Debtors shall immediately pay, and the DIP Lender ~~are~~is hereby authorized to immediately make an advance under the DIP Loan Documents to immediately pay, all accrued and unpaid DIP Fees and Expenses incurred prepetition.

(b)    With respect to ~~DIP~~the Fees and Expenses incurred postpetition, professionals for the DIP Lender and First Lien Agent shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged

information) to the U.S. Trustee, and the Committee, with a copy of such invoices delivered simultaneously to the Debtors.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee , the Debtors shall promptly pay, and the DIP Lender is hereby authorized to make an advance under the DIP Loan Documents to timely pay, such ~~DIP~~ Fees and Expenses.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay, and the DIP Lender is authorized to make an advance under the DIP Loan Documents to timely pay, the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Under no circumstances shall professionals for ~~any of~~ the DIP Lender or the First Lien Agent be required to comply with the U.S. Trustee fee guidelines or otherwise be required to file a fee or retention application with the Court.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

        4.16   <u>Limits on Lender Liability</u>.

        (a)   Nothing in this ~~Interim~~Final Order, any of the DIP Loan Documents, any of the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Lender and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar

terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this ~~Interim~~Final Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

(b)     Nothing in this ~~Interim~~Final Order or the other DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)     As to the United States, its agencies, departments, or agents, nothing in this ~~Interim~~Final Order or the other DIP Loan Documents shall discharge, release, or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

4.17    <u>Survival</u>.  The provisions of this ~~Interim~~Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Superpriority Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in these Chapter 11 Cases, (b) converting these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of these Chapter 11 Cases, (d) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (e) pursuant to which the Court abstains from hearing these Chapter 11 Cases.  The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and Prepetition Secured Parties pursuant to this ~~Interim~~Final Order, notwithstanding the entry of any such order, shall continue in these Chapter 11 Cases,

following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents (including this ~~Interim~~Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated or the DIP Lender has otherwise agreed in writing and such alternate treatment has been consummated and (ii) in respect of the First Lien Loans, all of the Prepetition Obligations, pursuant to the Prepetition Documents (including this Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the Prepetition Documents which survive such discharge by their terms) and all commitments to extend credit under the Prepetition Documents are terminated or the Prepetition Secured Parties have otherwise agreed in writing and such alternate treatment has been consummated.

4.18    <u>No Third Party Rights</u>.  Except as specifically provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

4.19    <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility or use of Cash Collateral shall be avoidable or recoverable from the DIP Lender or the Prepetition Secured Parties under any section of the Bankruptcy Code or any other federal, state, or other applicable law.

4.20    <u>Reliance on Order</u>.  All postpetition advances under the DIP Loan Documents are made in reliance on ~~the Initial Interim Order and this Interim~~this Final Order.

4.21    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Lender and First Lien Agent on behalf of the Prepetition Secured Parties shall, subject to the terms of this Section 4.21, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects; *provided, however,* that to the extent the Prepetition Obligations are not treated as unimpaired or otherwise assumed upon (i) the consummation of a sale of all or substantially all of the Prepetition Collateral or (ii) the confirmation of a plan of reorganization in these cases, the DIP Lender shall turnover to the First Lien Agent any recovery the DIP Lender receives on account of the Prepetition Collateral until the Prepetition Obligations are paid in full. For purposes of clarity, in no event shall the DIP Lender be required to provide any consideration or recovery to the First Lien Agent on account of the Prepetition Obligations or the Prepetition Collateral in the event that (y) it does not receive any recovery on account of the Prepetition Collateral or (y) the sale contemplated under the Stalking Horse Purchase Agreement closes and the Prepetition Obligations are assumed by the buyer as contemplated thereunder.

4.22    <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents (including this ~~Interim~~Final Order), the terms and provisions of this ~~Interim~~Final Order shall govern.

4.23    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this ~~Interim~~Final Order.

4.24    Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

4.25    General Authorization.  The Debtors, the Prepetition Secured Parties, and the DIP Lender are authorized to take any and all actions necessary to effectuate the relief granted in this ~~Interim~~Final Order.

4.26    Retention of Exclusive Jurisdiction.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this ~~Interim~~Final Order, the DIP Term Sheet, and the other DIP Loan Documents.

4.27    No Implied Modification of Approved Budget.  For the avoidance of doubt, any order of this Court authorizing the Debtors to make certain payments shall not be construed as authorization to for the Debtors to make any payments inconsistent with the Approved Budget and the Approved Budget shall control in all respects.

~~4.28~~    Proofs of Claim.  The Prepetition Secured Parties (including the First Lien Agent) shall not be required to file proofs of claim in any of the Debtors' cases or any of the Successor Cases for any claim allowed herein or therein in respect of the Prepetition Obligations. Any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases shall not apply to the First Lien Agent or other Prepetition Secured Parties; provided that notwithstanding any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, the First Lien Agent on behalf of the Prepetition Secured Parties, may (but are not required) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as

separate proofs of claim against each Debtor. Any proof of claim filed by any Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

4.29 ~~Final Hearing and Response Dates. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on~~ **March 20, 2023, at 10:00 a.m., prevailing Eastern Time.** ~~The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court. The Debtors may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at https://omniagentsolutions.com/PerformancePowersports, and such notice is deemed good and sufficient and no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon~~ Any objections or responses to entry of a final order on the Motion shall be filed on or before **4:00 p.m., prevailing Eastern Time, on March 13, 2023**, ~~and shall be served on: (a) the Debtors, Performance Powersports Group Investor, LLC, 1775 East University Drive, Tempe, Arizona 8528, Attn: Ken Vande Berg, CFO; (b) proposed counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael W. Yurkewicz (myurkewicz@klehr.com); (c) counsel to the DIP Lenders, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian Schartz, P.C. (brian.schartz@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com); (d) counsel to the Prepetition Secured Parties, Winston and Strawn LLP, 200 Park Avenue, New York, NY 10017 Attn: Gregory M. Gartland (ggartland@winston.com) and Emma Fleming (efleming@winston.com) and Young Conaway~~

Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street Wilmington, DE 19801 Attn: Andrew Magaziner (amagaziner@ycst.com); and (e) Office of The United States Trustee, 844 King Street, Suite 2207, LockBox 35, Wilmington, Delaware 19801, Attn: Richard Schepacarter (Richard.Schepacarter@usdoj.gov).

4.304.28