# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC, *et al.*,[1] | Case No. 23-10047 (LSS) |
| Debtors. | (Jointly Administered) |
|  | Related to Docket Nos. 13, 17, 54, 168, and 169 |

## KINDERHOOK'S STATEMENT IN SUPPORT OF
## SALE MOTION AND DEBTOR IN POSSESSION FINANCING MOTION

CPS USA Acquisition, LLC ("Buyer") and Tankas Funding VI LLC ("DIP Lender" and together with Buyer and their affiliates, "Kinderhook") hereby submit this statement in support of the Bid Procedures and Sale Motion[2] and the DIP Motion:[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] "Bid Procedures and Sale Motion" means the *Motion of Debtors for Entry of: (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry Into the Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17].

[3] "DIP Motion" means *Motion of the Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Lines and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 13]. Capitalized terms used but otherwise not defined herein shall the meanings ascribed thereto in the Bid Procedures and Sale Motion or DIP Motion, as applicable.

**STATEMENT**

1. Kinderhook has supported, and continues to support, the Debtors' operations as a going concern. Kinderhook acquired the business in October 2021 for a price that, based on now-known facts, was significantly inflated. Then, in January 2023, Kinderhook stepped up as DIP Lender on a junior basis to protect the Debtors' ongoing business operations against a threatened involuntary filing by Hisun[4] (now a Committee member) that forced the Debtors into these chapter 11 cases. And now, after no other bidder has materialized following a robust marketing process (despite Kinderhook agreeing to strike the originally proposed bid protections), Kinderhook stands as the ***only purchaser available*** to prevent a full-scale shut-down and liquidation of the Debtors.

2. Kinderhook has also cooperated in and paid for yet another investigation of potential claims against it, a duplication of the thorough investigation that the Debtors undertook at the direction of their independent director, Mr. Peter Kravitz. It cannot come as a surprise that the Committee's investigation "has not revealed any colorable claims against Kinderhook and its affiliates,"[5] because Kinderhook has done nothing more than lose money on a 2021 investment that Debtor's former CEO and owner, Mr. Richard Godfrey, orchestrated to fail from the start.

3. The uncovered claims against Mr. Godfrey and certain of his associates (collectively, the "Godfrey Claims") are where the rubber meets the road in these cases.[6] Indeed, it would make no sense for the Committee to turn down a value-maximizing deal to pursue

---

[4] "Hisun" means, collectively, Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd. and Vietnam New Century Industrial Company Limited, or any affiliates of these entities.

[5] Committee Obj, at 3, n.5.

[6] *See* Committee Obj, at 3 n.5 ("However, the Committee's investigation to date has identified colorable fraudulent transfer and breach of duty claims against Richard Godfrey and other former management personnel of the Debtors in connection with the LBO.").

claims against Kinderhook that the Committee acknowledges do not exist, which means that the Committee's objection to the Sale is not about Kinderhook or the Debtors' sale and marketing process or even the proposed DIP Facility, but really about the *allocation* of who gets what on account of the potentially valuable Godfrey Claims. The Committee wants the right to pursue the *entirety* of the Godfrey Claims,[7] while Kinderhook believes in a fair sharing of the Godfrey Claims since it too has lost significant value on account of the actions and misdeeds underlying those claims. Moreover, Kinderhook firmly believes that Hisun's role in aiding and abetting the Godfrey Claims will eventually come to light and does not want potentially valuable estate causes of action against Hisun to remain in the Debtors' estates only to have the Committee never pursue them since Hisun controls two of the three Committee votes.

4.  Kinderhook has worked with the Debtors and the Committee in good faith to reach agreement on the terms of a global resolution that would allow for (a) the Sale to close, (b) a fair and reasonable sharing of the proceeds of any successful prosecution of the Godfrey Claims, and (c) a mutual resolution of claims between Kinderhook and Hisun. Unfortunately, the parties did not reach an agreement.

5.  That said, Kinderhook is mindful of the Court's statement at the last hearing that "pigs get fat and hogs get slaughtered" and, in that vein, Kinderhook has agreed with the Debtors to the following material amendments to the Stalking Horse Purchase Agreement, which has been filed concurrently with this statement:

    a.  the Debtors shall establish the Litigation Trust upon close of the Sale, and the Litigation Trust Agreement shall be mutually agreed upon by the Debtors and Kinderhook, in consultation with counsel to the Committee, and filed with the Court at least five days prior to closing;

---

[7] *See* Committee Obj, at 4 ("The Committee would support a proposed sale and DIP financing package that carves out and preserves [claims against Kinderhook and its affiliates, Godfrey, and other members of the Debtors' management team and board] for the benefit of unsecured creditors.").

b. any proceeds of the Godfrey Claims shall be split equally, with 50% payable to Kinderhook and 50% payable to the Litigation Trust;

c. Kinderhook will provide a loan to the Litigation Trust in the amount of $500,000 which will bear interest at 12% per annum;

d. Kinderhook will also fund the Litigation Trust with $750,000 in cash (an increase of $250,000 from the $500,000 previously contemplated); and

e. all other claims, including claims and causes of action against Hisun, Hisun affiliates and Hisun related parties shall not be assigned to the Litigation Trust, and will be owned by Kinderhook.

6. These changes reflect a significant and fair increase in potential value to stakeholders in these cases that any unconflicted Committee would agree to and gives the Committee exactly what it asked for—a fair sharing of the proceeds of the Godfrey Claims and process by which they may be pursued for the benefit of all stakeholders.

7. Ultimately, the record is clear on three fundamental points. *First*, no other indications of interest, let alone binding bids, were received following the Debtors' extensive marketing process, even in the absence of bid protections. *Second*, two independent parties have now conducted separate investigations and reached the same conclusion that no valuable or colorable estate claims exist against Kinderhook or Kinderhook-related parties. *Third*, Kinderhook is not prepared to close on the Sale Transaction absent a clear release of estate claims against it.

8. For these reasons, Kinderhook respectfully requests that the Court overrule the objections and approve both the Sale (as modified) and the DIP Facility on a final basis (as modified).

*[Remainder of page intentionally left blank]*

WHEREFORE, Kinderhook requests that the Court grant the Bid Procedures and Sale Motion and DIP Motion and enter the orders granting the relief requested therein (as modified) and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York<br>Dated: March 17, 2023 | */s/ Laura Davis Jones*<br>Laura Davis Jones (DE Bar No. 2436)<br>James E. O'Neill (DE Bar No. 4042)<br>Edward A. Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone:    (302) 652-4100<br>Facsimile:     (302) 652-4400<br>Email:   ljones@pszjlaw.com<br>              joneill@pszjlaw.com<br>              ecorma@pszjlaw.com<br><br>and<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Brian Schartz, P.C. (admitted *pro hac vice*)<br>Allyson Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone:    (212) 909-3217<br>Facsimile:     (212) 446-4900<br>Email:   brian.schartz@kirkland.com<br>              allyson.smith@kirkland.com<br><br>and<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>William E. Arnault (admitted *pro hac vice*)<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200<br>Email:   william.arnault@kirkland.com<br><br>*Counsel to Tankas Funding VI LLC and CPS USA Acquisition, LLC* |