**EXHIBIT B**

**REDLINED Change Pages Only of Second Revised Proposed Sale Order**

Debtors may possess with respect thereto. Those holders of Adverse Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their Adverse Interests pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Adverse Interests who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such Adverse Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Adverse Interests that constitute interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale, subject to any defenses of the Debtors.

3.2. The sale of the Acquired Claims pursuant to the Asset Purchase Agreement is hereby approved. To the extent any Acquired Claim is not assignable to the Buyer or any of its Affiliates, the Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of any of the Debtors and their estates, shall be prohibited from bringing any such Acquired Claim. For the avoidance of doubt, no estate-owned claims or causes of the Debtors other than the the Excluded Claims shall be owned by the Debtors as of the Closing Date such that the Buyer shall own, free and clear, any and all such claims and causes of action (whether known or unknown). For the further avoidance of doubt, as of the Closing Date the Debtors will not own any estate claims or causes of action against Kinderhook and its affiliates, and the Buyer shall own, free and clear, any and all such claims and causes of action (whether known or unknown) against Kinderhook and its affiliates.

*Execution Version*

~~SECOND~~THIRD **AMENDED AND RESTATED**

**ASSET PURCHASE AGREEMENT**

**by and among**

**PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC,**

**PERFORMANCE POWERSPORTS GROUP HOLDINGS, INC.,**

**THE SUBSIDIARIES SET FORTH ON SCHEDULE I ATTACHED HERETO,**

**and**

**CPS USA ACQUISITION, LLC**

**March ~~17~~22, 2023**

## TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINITIONS** ............................................................................................ **2**

**ARTICLE II PURCHASE AND SALE** ..................................................................... **15**

    Section 2.1    Purchase and Sale of Purchased Assets ..................................... 15
    Section 2.2    Excluded Assets .................................................................................. 17
    Section 2.3    Assumption of Assumed Liabilities ............................................. 19
    Section 2.4    Excluded Liabilities .......................................................................... 20
    Section 2.5    Consideration ........................................................................... ~~20~~21
    Section 2.6    Assumption and Assignment of Contracts. ............................. 21
    Section 2.7    Closing ................................................................................................. 22
    Section 2.8    Deliveries at Closing ......................................................................... 22
    Section 2.9    Allocation ............................................................................................ 23
    Section 2.10   Indemnification .................................................................................. 24
    Section 2.11   Withholding ......................................................................................... 24

**ARTICLE III SELLERS' REPRESENTATIONS AND WARRANTIES** ....... **24**

    Section 3.1    Organization of Sellers; Good Standing. ................................... 24
    Section 3.2    Authorization of Transaction ....................................................... 25
    Section 3.3    Noncontravention; Consents and Approvals .......................... 25
    Section 3.4    Compliance with Laws .................................................................... 26
    Section 3.5    Title to Purchased Assets ............................................................... 26
    Section 3.6    Contracts ............................................................................................. 26
    Section 3.7    Intellectual Property. ....................................................................... 26
    Section 3.8    Litigation ............................................................................................. 28
    Section 3.9    Employees and Employment Matters ............................. ~~28~~29
    Section 3.10   Employee Benefit Plans. ................................................................. 30
    Section 3.11   Real Property. ..................................................................................... 31
    Section 3.12   Permits ................................................................................................. 31
    Section 3.13   Environmental Matters ................................................................... 32
    Section 3.14   Brokers' Fees ...................................................................................... 32
    Section 3.15   Tax Matters ......................................................................................... 32
    Section 3.16   No Other Representations or Warranties ................................. 33

**ARTICLE IV BUYER'S REPRESENTATIONS AND WARRANTIES** ......... **33**

    Section 4.1    Organization of Buyer .................................................................... 34
    Section 4.2    Authorization of Transaction. ..................................................... 34
    Section 4.3    Noncontravention ............................................................................. 34
    Section 4.4    Litigation ............................................................................................. 35
    Section 4.5    Financial Capacity ........................................................................... 35
    Section 4.6    Good Faith Purchaser ..................................................................... 35

*Execution Version*

# ~~SECOND~~THIRD AMENDED AND RESTATED ASSET PURCHASE AGREEMENT

This ~~SECOND~~THIRD AMENDED AND RESTATED ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of March ~~17~~22, 2023, by and among Performance Powersports Group Investor, LLC, a Delaware limited liability company ("PPG Investor"), Performance Powersports Group Holdings, Inc, a Delaware corporation and wholly owned subsidiary of PPG Investor ("PPG Holding"), each of the Subsidiaries set forth on Schedule I attached hereto (the "Seller Subsidiaries", and together with PPG Investor and PPG Holding, "Sellers"), and CPS USA Acquisition, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"). Sellers and Buyer are referred to collectively herein as the "Parties." Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in Article I.

WHEREAS, the Parties entered into that certain Asset Purchase Agreement, by and among the Parties, dated as of January 16, 2023 (the "Original Effective Date") (the "Asset Purchase Agreement");

WHEREAS, the Parties entered into that certain Amended and Restated Asset Purchase Agreement, by and among the Parties, dated as of March 6, 2023, which amended and restated in its entirety the Asset Purchase Agreement (the "Amended and Restated Asset Purchase Agreement");

WHEREAS, the Parties entered into that certain Second Amended and Restated Asset Purchase Agreement, by and among the Parties, dated as of March 17, 2023, which amended and restated in its entirety the Amended and Restated Asset Purchase Agreement (the "Second Amended and Restated Asset Purchase Agreement");

WHEREAS, as of the date hereof, the Parties hereto desire to amend and restate in its entirety the Second Amended and Restated Asset Purchase Agreement;

WHEREAS, on January 16, 2023 (the "Petition Date"), the Sellers commenced voluntary cases (such cases, the "Chapter 11 Cases") under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, each Seller continues in possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor in possession;

WHEREAS, Sellers presently conduct the business of producing and selling light-to-middle-weight powersports equipment, including utility task vehicles, all-terrain vehicles, go-karts, mini bikes and golf carts, to third party retailers throughout the United States (collectively, the "Business");

WHEREAS, Sellers desire to sell, transfer and assign to Buyer, and Buyer desires to acquire and assume from Sellers, the Purchased Assets and the Assumed Liabilities upon the terms and subject to the conditions set forth herein;

WHEREAS, the board of directors of PPG Investor, in its capacity as a Seller and the sole stockholder of PPG Holding and sole indirect equity owner of the Seller Subsidiaries, and the

"Second Amended and Restated Asset Purchase Agreement" has the meaning set forth in the preamble.

"Seller" or "Sellers" has the meaning set forth in the preamble.

"Seller Subsidiaries" has the meaning set forth in the preamble.

"Sellers' Knowledge" (or words of similar import) means the actual knowledge of J. Pearson and Ken Vanden Berg.

"Stock Purchase Agreement" means that certain Stock Purchase and Contribution Agreement, dated as of October 8, 2021, by and among PPG Investor, the Seller Subsidiaries, and Richard Godfrey, an individual resident of Arizona.

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, partnership, association or other business entity of which (a) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof (or other persons performing similar functions with respect to such corporation) is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof, or (b) if a limited liability company, partnership, association or other business entity (other than a corporation), a majority of partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more Subsidiaries of that Person or a combination thereof and for this purpose, a Person or Persons owns a majority ownership interest in such a business entity (other than a corporation) if such Person or Persons shall be allocated a majority of such business entity's gains or losses or shall be or control any managing director, managing member, or general partner of such business entity (other than a corporation). The term "Subsidiary" shall include all Subsidiaries of such Subsidiary.

"Successful Bidder" has the meaning ascribed to such term by the Bid Procedures Order.

"Systems" means servers, software, computer firmware, computer hardware, electronic data processing equipment, websites, databases, interfaces, platforms, circuits, networks, network equipment, peripherals, computer systems, and other computer, communications, and telecommunications devices and equipment, and other information technology systems, and data or information contained therein or transmitted thereby, in each case owned, leased, licensed or otherwise used or relied on by the Sellers in connection with the Business.

"Tax" or "Taxes" means any United States federal, state or local or non-United States income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Section 59A of the IRC), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, real property, personal property, ad valorem, sales, use, liquor, cigarette, transfer, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, including any interest, penalty or addition thereto, whether or not disputed.

Sellers' obligations hereunder shall only continue until the Chapter 11 Cases are closed or dismissed.

(b)    Sellers and Buyer shall cooperate with one another (i) in promptly determining whether any filings are required to be or should be made or consents, approvals, permits or authorizations are required to be or should be obtained under any applicable Law in connection with this Agreement and the Contemplated Transactions and (ii) in promptly making any such filings, furnishing information required in connection therewith and seeking to timely obtain any such consents, permits, authorizations, approvals or waivers; provided, however, that (A) Sellers shall not incur any costs associated with the obligations hereunder and (B) Sellers' obligations hereunder shall only continue until the Chapter 11 Cases are closed or dismissed.

**Section 5.3    Bankruptcy Actions.**

(a)    Sellers have commenced the Chapter 11 Cases.

(b)    The Sellers shall have filed the Sale Motion, which motion shall seek the Bankruptcy Court's: (i) entry of the Bid Procedures Order, and (ii) the Sale Hearing to be held no later than March ~~2023~~23, 2023 that provides the parties, inter alia, consummate the Closing as soon as practicable after the entry of the Sale Order and no later than three (3) days following the entry of the Sale Order, subject to the satisfaction of all conditions to the obligations of Sellers and Buyer as set forth in Article VII (other than conditions with respect to actions Sellers and/or Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions).

(c)    Sellers, to the extent practicable, will provide Buyer with a reasonable opportunity to review and comment upon all motions, applications, and supporting papers relating to the transactions contemplated by this Agreement prepared by Sellers or any Affiliates (including forms of orders and notices to interested parties) prior to the filing thereof in the Chapter 11 Cases. All motions, applications, and supporting papers prepared by Sellers and relating to the transactions contemplated by this Agreement to be filed on behalf of Sellers after the Original Effective Date must be reasonably satisfactory in form and substance to Buyer.

(d)    Buyer shall continue to act in good faith and without any improper conduct, including collusion or fraud of any kind.

(e)    Each of Buyer and Sellers will promptly take such actions as are reasonably requested by the other party to assist in obtaining entry of the Sale Order and the Bid Procedures Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of providing necessary assurances of performance by Sellers of their obligations under this Agreement and the Related Agreements and demonstrating that Buyer is a good faith buyer under section 363(m) of the Bankruptcy Code.

(f)    by Buyer if Sellers withdraw or seek authority to withdraw the Bid Procedures Order or the Sale Order, or announce any stand-alone plan of reorganization or liquidation (or support any such plan filed by any other party), other than a wind-down plan of Sellers' estates post-Closing;

(g)    by Buyer if the Bankruptcy Court has not held the Sale Hearing by March ~~2023~~23, 2023;

(h)    by written notice of either Buyer or Sellers, if the Chapter 11 Cases is dismissed or converted to a case or cases under Chapter 7 of the Bankruptcy Code, or if a trustee or examiner with expanded powers to operate or manage the financial affairs or reorganization of the Sellers is appointed in the Chapter 11 Cases; provided that Sellers shall not be permitted to terminate this Agreement pursuant to this Section 8.1(h) if Sellers sought such dismissal of the Chapter 11 Cases, conversion to a case or cases under Chapter 7 of the Bankruptcy Code, or appointment of a trustee or examiner with expanded powers to operate or manage the financial affairs or reorganization of the Sellers in the Chapter 11 Cases;

(i)    by Buyer if there is a termination of any Financing Order or a material change to the "Approved Budget" thereunder without the express written approval of Buyer;

(j)    automatically and without any action or notice by Sellers to Buyer, or Buyer to Sellers, immediately upon:

        i.    the consummation of an Alternative Transaction; or

        ii.    if Buyer is not selected as the Successful Bidder at the conclusion of the Auction, unless Buyer is designated a "back-up bidder" under the Sale Order;

(k)    by Buyer if any of the Bankruptcy Court Milestones are not met;

(l)    by written notice from Sellers to Buyer, if all of the conditions set forth in Section 7.1 have been satisfied (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing) or waived and Buyer fails to complete the Closing at the time required by Section 2.7; or

(m)    by written notice from Sellers or Buyer to Buyer or Sellers, respectively, if any Seller or the board of directors (or similar governing body) of any Seller determines that proceeding with the transactions contemplated by this Agreement or failing to terminate this Agreement would be inconsistent with its or such Person's or body's fiduciary duties.

Notwithstanding anything to the contrary contained herein, in no event may Buyer terminate this Agreement under Section 8.1(c) on account of Buyer's failure to satisfy the conditions contained in sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code with respect to any proposed

**SIGNATURE PAGE TO**
**~~SECOND~~THIRD AMENDED AND RESTATED ASSET PURCHASE AGREEMENT**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**SELLERS:**

**PERFORMANCE POWERSPORTS**
**GROUP INVESTORS, LLC**

By: _____
     Name:
     Title:

**PERFORMANCE POWERSPORTS**
**GROUP HOLDINGS, INC.**

By: _____
     Name:
     Title:

**PERFORMANCE POWERSPORTS**
**GROUP PURCHASER, INC.**

By: _____
     Name:
     Title:

**PERFORMANCE POWERSPORTS**
**GROUP, INC.**

By: _____
     Name:
     Title:

**SIGNATURE PAGE TO**
**~~SECOND~~THIRD AMENDED AND RESTATED ASSET PURCHASE AGREEMENT**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**BUYER:**

**CPS USA ACQUISITION, LLC**

By _____
    Name: Kyle Dawson
    Title: Vice President and Secretary

## BILL OF SALE

This Bill of Sale, dated as of [_____], 202[__] (this "Bill of Sale"), is made and entered into by and among Performance Powersports Group Investor, LLC, a Delaware limited liability company ("PPG Investor"), Performance Powersports Group Holdings, Inc, a Delaware corporation and wholly owned subsidiary of PPG Investor ("PPG Holding"), each of the Seller Subsidiaries (together with PPG Investor and PPG Holding, "Sellers"), and CPS USA Acquisition, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ~~Second~~Third Amended and Restated Asset Purchase Agreement, dated as of March ~~17~~22, 2023 (the "Asset Purchase Agreement"), by and among Buyer and Sellers.

WHEREAS, pursuant to the Asset Purchase Agreement, Sellers have, among other things, agreed to sell, transfer, assign, convey and deliver to Buyer and Buyer has agreed to purchase, acquire and accept from Sellers, upon the terms and conditions set forth in the Asset Purchase Agreement, all of the right, title and interest of Sellers in and to the Purchased Assets, free and clear of all Liens (other than Permitted Liens); and

WHEREAS, Sellers desire to deliver to Buyer such instruments of sale, transfer assignment, conveyance and delivery as are required to vest in Buyer all of Sellers' right, title and interest in and to the Purchased Assets.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Asset Purchase Agreement, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Each Seller hereby sells, transfers, assigns, conveys and delivers to Buyer all of its right, title and interest in and to the Purchased Assets, free and clear of all Liens (other than Permitted Liens).

2.    From time to time after the Closing Date, each party shall, upon the reasonable request of the other, execute and deliver or cause to be executed and delivered such further instruments of sale, conveyance, assignment, transfer and assumption, and take such further action, as may reasonably be requested in order to more effectively carry out the purposes and intent of the Asset Purchase Agreement and this Bill of Sale.

3.    This Bill of Sale is being executed by Sellers and Buyer and shall be binding upon each of Sellers and Buyer, their respective successors and assigns, for the respective uses and purposes herein set forth and referred to, and shall be effective as of the date hereof.

4.    No provision of this Bill of Sale, express or implied, is intended or shall be construed to confer upon or give to any Person, other than the parties hereto and their respective successors and permitted assigns, any remedy or claim under or by reason of this Bill of Sale or any term, covenant or condition hereof, and all of the terms, covenants, conditions, promises and agreements contained in this Bill of Sale shall be for the sole and

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement, dated as of [_____], 202[__] (this "Agreement"), is made and entered into by and among Performance Powersports Group Investor, LLC, a Delaware limited liability company ("PPG Investor"), Performance Powersports Group Holdings, Inc, a Delaware corporation and wholly owned subsidiary of PPG Investor ("PPG Holding"), each of the Seller Subsidiaries (together with PPG Investor and PPG Holding, "Sellers"), and CPS USA Acquisition, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ~~Second~~Third Amended and Restated Asset Purchase Agreement, dated as of March ~~17~~22, 2023 (the "Asset Purchase Agreement"), by and among Buyer and Sellers.

WHEREAS, pursuant to the Asset Purchase Agreement, Sellers have, among other things, agreed to sell, transfer, assign, convey and deliver to Buyer and Buyer has agreed to purchase, acquire and accept from Sellers, upon the terms and conditions set forth in the Asset Purchase Agreement, all of the right, title and interest of Sellers in and to the Purchased Assets including, without limitation, the Assumed Contracts, free and clear of all Liens (other than Permitted Liens); and

WHEREAS, pursuant to Section 2.3 of the Asset Purchase Agreement, Buyer has agreed to assume, effective as of the Closing, the Assumed Liabilities.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Asset Purchase Agreement, the parties hereto, intending to be legally bound, hereby agree as follows:

1. Sellers hereby assign and delegate the Assumed Contracts and the Assumed Liabilities to Buyer and Buyer hereby accepts assignment and delegation of and assumes the Assumed Contracts and the Assumed Liabilities as set forth in the Asset Purchase Agreement. Buyer assumes none of the Excluded Liabilities and the parties agree that all such Excluded Liabilities remain the responsibility of Sellers.

2. From time to time after the Closing Date, each party shall, upon the reasonable request of the other, execute and deliver or cause to be executed and delivered such further instruments of sale, conveyance, assignment, transfer and assumption, and take such further action, as may reasonably be requested in order to more effectively carry out the purposes and intent of the Asset Purchase Agreement and this Agreement.

3. This Agreement is being executed by Sellers and Buyer and shall be binding upon each of Sellers and Buyer, their respective successors and assigns, for the respective uses and purposes herein set forth and referred to, and shall be effective as of the date hereof.

4. No provision of this Agreement, express or implied, is intended or shall be construed to confer upon or give to any Person, other than the parties hereto and their respective successors and permitted assigns, any remedy or claim under or by reason of this

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

This Intellectual Property Assignment Agreement ("Assignment"), dated as of [_____], 202[__], is made and entered into by and among Performance Powersports Group Investor, LLC, a Delaware limited liability company ("PPG Investor"), Performance Powersports Group Holdings, Inc, a Delaware corporation and wholly owned subsidiary of PPG Investor ("PPG Holding"), each of the Seller Subsidiaries (together with PPG Investor and PPG Holding, "Sellers"), and CPS USA Acquisition, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ~~Second~~Third Amended and Restated Asset Purchase Agreement, dated as of March ~~17~~22, 2023 (the "Asset Purchase Agreement"), by and among Buyer and Sellers.

WHEREAS, pursuant to the Asset Purchase Agreement, Sellers have, among other things, agreed to sell, transfer, assign, convey and deliver to Buyer and Buyer has agreed to purchase, acquire and accept from Sellers, upon the terms and conditions set forth in the Asset Purchase Agreement, all of the right, title and interest of Sellers in and to the Purchased Assets including, without limitation, the Assigned Intellectual Property Assets, including the registered Intellectual Property set forth on Exhibit A attached hereto, free and clear of all Liens (other than Permitted Liens); and

WHEREAS, Sellers desire to deliver to Buyer such instruments of sale, transfer, assignment, conveyance and delivery as are required to vest in Buyer all of Sellers' right, title and interest in and to the Purchased Assets, including the Assigned Intellectual Property Assets.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Asset Purchase Agreement, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Each Seller hereby irrevocably sells, transfers, assigns, conveys and delivers to Buyer all of its worldwide right, title and interest in and to the Assigned Intellectual Property Assets, together with the goodwill of the business symbolized thereby, the right to sue for past infringement of the foregoing, all rights to collect income, royalties, damages, proceeds, and payments due or payable at or after the Closing relating to the foregoing, and the registrations thereof free and clear of all Liens (other than Permitted Liens), and hereby instructs, authorizes and directs the United States Patent and Trademark Office, and the corresponding entity or agency in any applicable foreign country, to record Buyer as assignee and owner of the applicable items set forth on Exhibit A.

2.      From time to time after the Closing Date, each party shall, upon the reasonable request of the other, execute and deliver or cause to be executed and delivered such further instruments of sale, conveyance, assignment, transfer and assumption, and take such further action, as may reasonably be requested in order to more effectively carry out the purposes and intent of the Asset Purchase Agreement and this Assignment.

**SCHEDULE 2.6(a)**

**ASSUMED CONTRACT LIST**

| No. | Agreement | Cure Amount (if any) |
|---|---|---|
| **1.** | Coleman License Agreement. | $232,674 |
| **2.** | Tractor Supply Company Vendor Agreement, dated as of September 21, 2016, by and between certain of the Sellers and Tractor Supply, as amended by the Drop Ship Program Addendum to Vendor Agreement, dated as of February 26, 2019, by and between certain of the Sellers and Tractor Supply. | $29,279 |
| **3.** | Domestic Business Terms, dated as of March 22, 2022, by and between certain of the Sellers and Lowe's Companies, Inc. | $0 |
| **4.** | Ace Hardware Corporation Purchase Order Terms and Conditions, dated as of January 14, 2021, by and between certain of the Sellers and Ace Hardware Corporation (together with that certain Vendor Indemnification Agreement, dated of even date, Electronic Funds Transfer Authorization Agreement, dated of even date, Electronic Data Interchange Agreement, dated of even date, Ace Hardware Corporation Drop Ship Agreement, dated of even date, and Rebate Agreement, dated of even date). | $0 |
| **5.** | Sam's Club General Merchandise Agreement, dated as of November 14, 2017 (No. 459682-63-0), by and between certain of the Sellers and Wal-Mart Stores, Inc., and its director and indirect US and Puerto Rico operating subsidiaries (collectively, "Walmart"). | $0 |
| **6.** | Walmart General Merchandise Agreement, dated as of September 18, 2018 (No. 459682-63-2), by and between certain of the Sellers and Wal-Mart Stores, Inc. | $0 |
| **7.** | Walmart General Merchandise Agreement, dated as of August 16, 2018 (No. 459682-63-1), by and between certain of the Sellers and Wal-Mart Stores, Inc. | $0 |
| **8.** | Walmart Supplier Agreement, dated as of June 13, 2017 (No. 459682-09-2), by and between certain of the Sellers and Wal-Mart Stores, Inc. | $0 |
| **9.** | Walmart Supplier Agreement, dated as of April 26, 2017 (No. 459682-51-1), by and between certain of the Sellers and Wal-Mart | $0 |

| | | |
|---|---|---|
| | of the Sellers and Oracle America, Inc. | |
| **38.** | Estimate #932812, dated as of November 4, 2021, by and between certain of the Sellers and Oracle America, Inc. | **$0** |
| **39.** | Vendor Trade Terms Program Agreement, dated as of December 1, 2022, by and between certain of the Sellers and Academy Sports and Outdoors ~~Inc~~Ltd. | **$0** |
| **40.** | Academy, Ltd. d/b/a Academy Sports + Outdoors - Terms and Conditions of Purchase, dated as of January 20, 2023, by and between certain of the Sellers and Academy, Ltd. d/b/a Academy Sports + Outdoors. | **$0** |
| **41.** | Purchase Order #8304804, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **42.** | Purchase Order #8304805, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **43.** | Purchase Order #8304806, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **44.** | Purchase Order #8692061, dated as of August 30, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **45.** | Purchase Order #8697123, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **46.** | Purchase Order #8697127, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |
| **47.** | Purchase Order #8697129, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd. | **$0** |

9

## DISCLOSURE SCHEDULE TO ASSET PURCHASE AGREEMENT

Pursuant to that certain ~~Second~~Third Amended and Restated Asset Purchase Agreement (the "Agreement"), dated as of March ~~17~~22, 2023, by and among Performance Powersports Group Holdings, Inc., a Delaware corporation ("PPG Holding"), each of the Subsidiaries of PPG Holding set forth on Schedule I to the Agreement (the "Seller Subsidiaries", and together with PPG Holding, "Sellers"), and CPS USA Acquisition, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"), Sellers hereby deliver to Buyer this Disclosure Schedule. Sellers and Buyer are referred to collectively herein as the "Parties." All capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Agreement.

The section and subsection numbers in this Disclosure Schedule correspond to the section and subsection numbers of the Agreement. Any and all information and disclosures set forth in a specific section or subsection of this Disclosure Schedule shall be deemed to be included in all sections or subsections and to be made with respect to all representations, warranties, covenants and Schedules to which the relevance of such item is readily apparent on its face, regardless of whether a specific cross reference is made thereto. The inclusion of any information in any section or subsection does not constitute an admission or acknowledgement by Seller, in and of itself, that such information is required by the terms of the Agreement to be delivered, is material, has resulted in or would result in a Material Adverse Effect or is outside the ordinary course of the Sellers' business.

The Sellers do not assume any responsibility to any Person that is not a Party to the Agreement for the accuracy of any information herein. The information was not prepared or disclosed with a view to its potential disclosure to others. Subject to applicable law, this information is disclosed in confidence for the purposes contemplated in the Agreement and is subject to the confidentiality provisions of any other agreements entered into by the Parties.

Except as set forth in the Agreement, in no event will the disclosure of matters in this Disclosure Schedule broaden the Sellers' representations and warranties, obligations, covenants, agreements or conditions contained in the Agreement. The headings contained in this Disclosure Schedule are inserted for convenience only and shall not be deemed to modify or influence the interpretation of the information contained in this Disclosure Schedule or the Agreement.

In disclosing information contained in the Disclosure Schedules, the Sellers expressly do not waive any attorney-client privilege associated with any such information or any protection afforded by the "work product doctrine" with respect to any of the matters disclosed or discussed herein.

10330608.v~~13~~14

41.   Selling Agreement (Walmart), dated as of November 16, 2020, by and between Northern Group Inc. and certain of the Sellers.

42.   Commission Agreement (Lowe's), dated as of April 9, 2022, by and between Northern Group Inc. and certain of the Sellers.

43.   Product Purchase Memorandum of Understanding, dated as of August 16, 2022, by and between SC Autosports, LLC and certain of the Sellers.

44.   2021 ASI Safety Program Participation Agreement, dated as of June 30, 2021, by and between Specialty Vehicle Institute of America, Inc.  and certain of the Sellers.

45.   Independent Contractor Agreement, dated as of August 19, 2016, by and between Vendor Horizon and certain of the Sellers.

46.   Purchase Agreement Terms & Conditions, dated April 23, 2020, by and between Mid-States Distributing, LLC and certain of the Sellers.

47.   Contract, dated December 29, 2022, by and between Velvet Hammer Branding and certain of the Sellers.

48.   Estimate #898725, dated as of August 19, 2021, by and between certain of the Sellers and Oracle America, Inc.

49.   Estimate #932812, dated as of November 4, 2021, by and between certain of the Sellers and Oracle America, Inc.

50.   Vendor Trade Terms Program Agreement, dated as of December 1, 2022, by and between certain of the Sellers and Academy Sports and Outdoors ~~Inc~~Ltd.

51.   Academy, Ltd. d/b/a Academy Sports + Outdoors - Terms and Conditions of Purchase, dated as of January 20, 2023, by and between certain of the Sellers and Academy, Ltd. d/b/a Academy Sports + Outdoors.

52.   Purchase Order #8304804, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd.

53.   Purchase Order #8304805, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd.

54.   Purchase Order #8304806, dated as of April 21, 2022, by and between certain of the Sellers and Academy, Ltd.

55.   Purchase Order #8692061, dated as of August 30, 2022, by and between certain of the Sellers and Academy, Ltd.

56.   Purchase Order #8697123, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd.

57.　　Purchase Order #8697127, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd.

58.　　Purchase Order #8697129, dated as of August 31, 2022, by and between certain of the Sellers and Academy, Ltd.

10330608.v1314

**SCHEDULE 3.8**

**LITIGATION**

1.    Kleinman v. Defendants (including the Company) - Philadelphia Court of Common Pleas C.A. No. 200300398, filed March 4, 2020, accident date April 22, 2018.  This case is a civil action arising out of a traffic accident in Philadelphia, Pennsylvania. This case is at the very early stages of litigation as the criminal proceedings need to be resolved in order to mount discovery. The plaintiff is the estate of six year old Malik Williams, who on April 22, 2018 at 12:48 AM was a passenger on one of the Company's small single passenger CT100u minibikes that was made for off-road use. The minibike, meant for off-road daylight use, had no head light or tail light and was being operated by Antoine Hardman on 63rd Street in Philadelphia, PA in the dark of night. As Mr. Hardman passed through an intersection on Callowhill Street, the minibike was struck by a Jeep Compass being operated by Warren Garrett. It was later determined that Garrett was driving under the influence. Both were criminally charged. Malik Williams was taken by ambulance to a local hospital where he was pronounced dead. The Complaint was filed by Martin Kleinman, Esq., as personal representative of the decedent Malik Williams. In addition to the Company, other named defendants include: Warren Garrett, Chongqing Huansong Science and Technology Industrial Co, Ltd ("Hisun China"), Hisun Motors Corp. USA, Antoine Hardman and Serita Hunter. The Company was served with the Complaint in November, 2020. As to the Company, the Complaint alleges counts of strict liability for design defect and for failure to warn; negligent design, negligent failure to warn, wrongful death, and survival action. The Company filed an answer, denying the material allegations of the complaint, and counterclaims. There is ample insurance and the Company expects this matter to be covered by the Company's insurance carrier. The Sheehan Firm is representing the Company.

2.    Yonko v. Coleman Powersports - US District Court, Southern District of Texas C.A. No. 4:20-CV-03138: 12/2018.   The plaintiff's family purchased a minibike on December 19, 2018, stopped at a gas station to fuel the minibike and proceeded to ride the minibike in a nearby parking lot in the dark of night. It is alleged that the minibike caught fire and burned an underage member of the family, who required hospitalization with third degree burns. A number of facts are still in dispute, including damage sustained to the minibike that is consistent with front end collision that has yet to be explained, a missing fuel cap, and other witness testimony yet to be obtained. Due to issues with the minor's parents being unreasonable, a *guardian ad litem* was assigned to represent the interests of the minor child. The parties and *guardian ad litem* reached a preliminary settlement agreement, but the minor plaintiff's parents are still causing issues with getting the settlement approved by the court. A magistrate has now been assigned to mediate the settlement between the parties. The Company expects this matter to be covered by the Company's insurance carrier. The Sheehan Firm is representing the Company.

3.    Brandie Knott Et Al  vs  Hisun Motors Corporation USA; Performance Powersports Group, Inc; DBA Coleman Powersports USA; Jesus Mora; Heather Mora; and Amanda Jones - 27th Judicial District , St. Landry Parish, Louisiana, Docket# C-2211000 D/ Amanda Jones Et Al vs  Hisun Motors et al, 27th Judicial District , St. Landry Parish, Louisiana, Docket# C-2211005 D - Defendants Jesus and Heather Mora purchased a Coleman Outfitter 550

10330608.v~~13~~14

6.     Robinson v. Performance Powersports Group, Inc. – Circuit Court of Hinds County, Mississippi Case No.: 25CI1:23-cv-00037-WLK. Plaintiff purchased a fully-assembled Coleman AT200-B ATV from a Camping World retail location in Jackson, Mississippi. At the time of the incident, the plaintiff alleges she was operating the ATV when one of the front wheels came off. As a result, the plaintiff was thrown off the vehicle and the vehicle landed on top of her, resulting in musculoskeletal pain and a left arm contusion. Inspection of the vehicle revealed the vehicles A-Arm was disconnected from the tie rode. There was also damage on the vehicle consistent with a frontal impact. It is therefore likely the incident was not the result of a product defect, but caused by the plaintiff striking an object with the vehicle.  Plaintiffs filed their lawsuit on February 2, 2023.  The Company expects this to be covered by insurance; however, the Company evaluates claims on a case-by-case basis and may consider paying smaller claims out-of-pocket in lieu of submitting to insurance for payment.

7.     Devin Martin Claim - The minor claimant suffered a laceration to his groin when the chain on the Coleman RT100 minibike he was operating broke and struck him. Inspection of the mini-bike disclosed the chain sprocket and hub were misaligned, which may have resulted in increased tension on the chain. The Company is unable to determine if this condition was the result of a manufacturing issue or due to damage to or improper maintenance of the vehicle by the vehicle owners. The Company is currently in settlement negotiations and it is unlikely this matter will result in litigation.  The Company expects this to be covered by insurance; however, the Company evaluates claims on a case-by-case basis and may consider paying smaller claims out-of-pocket in lieu of submitting to insurance for payment.

8.     Aaron Bennett Claim - The claimant was riding the ATV down a hill when the brakes allegedly "gave out", resulting in the claimant being thrown from the vehicle. The claimant allegedly suffered multiple upper body fractures which did not require surgery. An inspection was held, which indicated that the front wheel of the vehicle was not properly assembled and may have caused the incident. At this time no lawsuit has been filed.

9.     Christian Hill vs. The Coleman Company, Inc. - San Bernardino County Superior Court CIV SB 2204223, filed February 23, 2022. The plaintiff alleges she was injured while riding a Coleman go-kart when it malfunctioned and caused her "to be propelled off the go-kart and fall onto the pavement and/or road, thereby causing plaintiff to endure severe injury and pain." The plaintiff has sued The Coleman Company, Inc., which, in turn, has demanded defense and indemnity from Performance Powersports Group, Inc. pursuant to the Coleman License Agreement.

10.    Robert Damron v. Coleman Powersports and Tractor Supply Company -Pike Circuit Court, Division II; Civil Action No.: 23-CI-00164.  The Complaint alleges plaintiff, Robert Damron, purchased a Coleman 550 UTV from Tractor Supply ("TSC") in September 2021 and, within a year, it began experiencing "major difficulties." On September 8, the plaintiff notified TSC of the issues and was instructed to take the UTV to a service center for repair where it has remained, apparently unrepaired. The plaintiff is alleging breach of warranty and is seeking recovery of the purchase price, reasonable attorney's fees and interest. TSC has made a demand for tender of defense from Performance Powersports Group, Inc. pursuant to the Vendor Agreement, dated as of September 21, 2016.   The complaint also

names Coleman Powersports as a defendant, but it appears that plaintiff has identified the incorrect "Coleman Powersports" entity.

10330608.v1314