## **EXHIBIT B**

**Redline Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS GROUP | ) |
| INVESTOR, LLC, *et al.,*[1] | ) Case No. 23-10047 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket Nos. 17, 169 |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING AND APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, (IV) AUTHORIZING THE DEBTORS TO CONSUMMATE THE TRANSACTIONS RELATED TO THE ABOVE; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"), dated January 16, 2023 of Performance Powersports Group Investor, LLC ("PPG") and its affiliated debtors and debtors in possession, (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order: (a) approving the sale of substantially all assets of the Debtors free and clear of all liens, claims, encumbrances, and other interests (except certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

assumed liabilities as set forth in the Asset Purchase Agreement (as defined herein)) pursuant to that certain Amended and Restated Asset Purchase Agreement, dated as of February 24, 2023, by and among PPG, Performance Powersports Group Holdings, Inc., and their direct and indirect subsidiaries set forth on Schedule I attached thereto (collectively, the "Sellers" and each, individually, a "Seller") and CPS USA Acquisition, LLC (together with its permitted successor, designees, and assigns, the "Buyer") (as amended, restated, supplemented or otherwise modified from time to time, the "Asset Purchase Agreement"), a fully conformed copy of which is attached hereto as **Exhibit A**, (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto, (c) granting related relief; and the Court having entered on February 27, 2023, that certain *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing and (IV) Approving Procedures for the Assumption and Assignment of Contracts, and (V) Granting Related Relief* [Docket No. 169] (the "Bid Procedures Order"); and the Debtors having determined that the highest or otherwise best offer for the Purchased Assets[2] was made by the Buyer pursuant to the Asset Purchase Agreement; and the Court having conducted a hearing on March 20, 2023 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the proposed sale of the Purchased Assets (the "Sale"), to consider the approval of the Sale pursuant to the terms and conditions of the Asset Purchase Agreement, and the Court having considered: (i) the Motion, all objections thereto, and all replies in support thereof; (ii) the arguments of counsel made, and evidence adduced, related to the Motion; and (iii)

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Asset Purchase Agreement or the Bid Procedures Order (as defined hereinafter), as applicable.

the full record in these Chapter 11 Cases, including the record related to the hearing to consider the Bid Procedures Order (the "Bid Procedures Hearing") and the Sale Hearing held before the Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement and sale of the Purchased Assets and the related relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT:**

A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction</u>.  This Court has jurisdiction over the Motion and over the property of the Debtors, including the Purchased Assets to be sold, transferred, and conveyed pursuant to the Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.    <u>Final Order</u>.  This order (this "Sale Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just

reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.

D.  Property of the Estate.  The Debtors are the sole and lawful owner of, and have clear and marketable title to, the Purchased Assets to be sold pursuant to the Asset Purchase Agreement.  The Debtors' right, title and interest in and to the Purchased Assets constitute property of the Sellers' estates and title thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.  Statutory Bases for Relief.  The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

F.  Petition Date.  On January 16, 2023 (the "Petition Date"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.  Bid Procedures Order.  This Court entered the Bid Procedures Order on February 27, 2023, (i) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets, (ii) approving the form and manner of notice thereof, (iii) scheduling an auction and Sale Hearing, (iv) approving procedures for the assumption and assignment of contracts, and (v) granting related relief.

H.  Notice.  As evidenced by the affidavits of service and publication previously filed with the Court [Docket Nos. 76, 87, 173, 186, and 196], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale, and the assumption, assignment and sale of the

executory contracts and unexpired leases to be assumed and subsequently assigned pursuant to this Sale Order has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bid Procedures Order, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for the District of Delaware; (b) holders of the thirty (30) largest, non-insider unsecured claims against the Debtors on a consolidated basis; (c) proposed counsel to the official committee of unsecured creditors (the "Committee"); (d) counsel to the Stalking Horse Bidder; (e) counsel to the DIP Lender; (f) counsel to the Prepetition Secured Parties; (g) any other parties with known secured claims against the Debtors or their counsel, if known; (h) all parties that have executed a Confidentiality Agreement pursuant to the Bidding Procedures; (i) the United States Attorney's Offices for the District of Delaware and the District of Arizona; (j) the Internal Revenue Service; (k) all state and local taxing authorities with an interest in the Purchased Assets; (l) the Attorneys General for the State of Delaware and the State of Arizona; (m) the Securities and Exchange Commission; (n) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (o) all other parties known or reasonably believed to have asserted an interest in the Purchased Assets; (p) the Assumed Contract Counterparties; (q) the Debtors' insurance carries; and (r) any party that requests service pursuant to Bankruptcy Rule 2002. With respect to entities whose identities or addresses are not reasonably ascertainable by the Debtors, publication of the Sale Notice in *USA Today* on March 3, 2023, as evidenced by the *Proof of Publication* filed by Omni Agent Solutions, claims, noticing, and administrative agent for the Debtors, on March 6, 2023 [Docket No. 196], was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion,

the Bid Procedures Order, the Sale, and the Sale Hearing is, or shall be, required. The Sale Notice and the Notice of Successful Bidder provided all interested parties with timely and proper notice of the Sale contemplated by the Asset Purchase Agreement, the Bid Procedures Order, and the Sale Hearing.

I.      <u>Sale Hearing</u>. The Court conducted the Sale Hearing on March 20, 2023, at which time the Court considered the Motion, the evidence and testimony presented, and the statements and argument of counsel in support of the Motion, the Asset Purchase Agreement, and the Sale. Other than with respect to cure claim objections that are identified in **<u>Exhibit C</u>** hereto, all objections to the Sale and the relief requested in the Motion, whether timely or untimely and whether written or made orally at the Sale Hearing, were heard and considered by the Court. All such objections were either overruled by this Court, are resolved by the terms hereof or by separate agreement between the objecting party and the Debtors, or were adjourned or withdrawn as a result of an agreement between the objecting party and the Debtors.

J.      <u>Disclosures</u>. The disclosures made by the Debtors in the Motion, the Sale Notice, the Notice of Successful Bidder, and related documents filed with the Court concerning the Asset Purchase Agreement and at the Bid Procedures Hearing and the Sale Hearing were sufficient under the circumstances.

K.      <u>Sale and Marketing Process</u>. The Bid Procedures attached as <u>Schedule 1</u> to the Bid Procedures Order were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, and substantively and procedurally fair to all parties. Based on the evidence adduced at the hearing, the Debtors and their professionals have adequately marketed and conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order and the Bid Procedures. The sale process established by the Bid

Procedures Order and Bid Procedures afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets. The sale process was conducted in a noncollusive, fair, and good faith manner. All potential purchasers had a full and fair opportunity to participate in the sale process and make higher or better offers.

L.      Successful Bidder.    The Debtors determined, in accordance with their business judgment and the Bid Procedures Order and the Bid Procedures, after consultation with the Consultation Parties (as defined in the Bid Procedures), that the Buyer's bid was the sole Qualified Bid and represented the highest or otherwise best offer for the Purchased Assets. As a result, on March 7, 2023 the Debtors filed the *Notice of Cancellation of Auction and Designation of Stalking Horse Purchaser as the Successful Bidder in Connection with the Sale of Substantially All of the Debtors' Assets* [Docket No. 198] (the "Notice of Successful Bidder") which designated the Buyer as the Successful Bidder and cancelled the Auction.

M.      Highest and Best Bid.    After a full, fair, and robust sale process, the Sellers' determination, after consultation with the Consultation Parties, that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Sellers' business judgment. The total consideration provided by the Buyer for the Purchased Assets as reflected in the Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets and the highest and best offer received by the Debtors for the Purchased Assets. No other entity or group of entities has submitted a Qualified Bid or otherwise presented a higher or otherwise better offer to the Sellers to purchase the Purchased Assets for greater economic value to the Sellers' estates than the Buyer. The transactions contemplated under the Asset Purchase Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive

marketing, including through the Bidding Procedures, and (ii) is in the best interests of the Debtors, their creditors, their estates, and other parties in interest. The sale of the Purchased Assets under the Asset Purchase Agreement represents the best available alternative for the Debtors' estates. Therefore, the Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer and the Debtors' selection of the Asset Purchase Agreement as the Successful Bid, in each case after consultation with the Consultation Parties. each constitute a valid and sound exercise of the Debtors' business judgment and the Debtors' decision to enter into the Asset Purchase Agreement and consummate the transactions contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtors and their officers and directors under applicable law.

N.      <u>Best Interests of the Estates, Creditors, and Parties in Interest</u>.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by the Buyer under the Asset Purchase Agreement, the Sale constitutes a reasonable and sound exercise of the Sellers' business judgment, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be approved.

O.      <u>Sound Business Purpose</u>.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code, whether before and outside of a chapter 11 plan or otherwise.  Given all of the circumstances of these Chapter 11 Cases, such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

P.        Good Faith.  The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. Therefore, the Buyer is entitled to the full protections of section 363(m) of the Bankruptcy Code and otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer's bid was subject to the competitive bid procedures set forth in the Bid Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Asset Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.  There was no evidence of insider influence or improper conduct by the Buyer or any of its Affiliates in connection with the negotiation of the Asset Purchase Agreement with the Debtors.

Q.        No Collusion.    The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors, the Buyer, or any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, successors, or assigns have engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.        Consent to Sale Transaction. The First Lien Agent (as directed by the Required Lenders (as defined under the Prepetition First Lien Credit Agreement)) has consented

to the Sale, on the condition that the Buyer assumes all outstanding obligations under the Prepetition First Lien Credit Agreement, per the terms of the Asset Purchase Agreement and on terms acceptable to the First Lien Agent, including a first priority security interest on substantially all of the ~~Buyer's assets.~~ Buyer's assets and that First Lien Agent retains the right to file a proof of claim in these Chapter 11 Cases on behalf of the lenders under the Prepetition First Lien Credit Agreement. The DIP Lender has consented to the Sale, on the condition that the Final DIP Order is entered in a form satisfactory to the DIP Lender in its sole discretion.

S. <u>Fair Consideration</u>. The consideration provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and adequate and (ii) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws).

T. <u>Buyer Not a Successor</u>. By consummating the Sale pursuant to the Asset Purchase Agreement (including operating the Purchased Assets under the Debtors' trade names), the Buyer is not a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between the Buyer and any Debtor. The Buyer shall not be deemed to be holding itself out as a continuation of the Debtors based on the Sale, the Asset Purchase Agreement, or this Sale Order. The Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors. Neither the Buyer nor any of its Affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any

obligation or liability of any Debtor (or any Affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement.

U.  No *Sub Rosa* Plan.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors. The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

V.  Power and Authority.  The Debtors and the Buyer, each acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby.  Upon entry of this Sale Order, the Debtors require no further consents or approvals to consummate the Sale contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

W.  Binding Agreement.  The Asset Purchase Agreement is a valid and binding contract between the Sellers and the Buyer and shall be enforceable pursuant to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia.  The Asset Purchase Agreement and the Sale itself, and the consummation thereof, shall be, to the extent provided in the Asset Purchase Agreement, specifically enforceable against and binding upon the Debtors and any chapter 7 or chapter 11 trustee appointed with respect to any of the Debtors, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.  The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown and whether such creditors' claims are allowed or disallowed or assumed or not assumed), the Buyer,

and each of their respective Affiliates, successors, and assigns, ~~and any affected third parties, including,~~ without limitation, all Persons asserting Encumbrances (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other state law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other state law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary. The provisions of this Sale Order and the terms and provisions of the Asset Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7. The rights and interests granted pursuant to this Sale Order and Asset Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the Asset Purchase Agreement and this Sale Order without the need for further order of the Court.

X. <u>Valid Transfer</u>. The transfer of each of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of such Purchased Assets, and vests or will vest the Buyer with all right, title, and interest of the Sellers to

the Purchased Assets free and clear of all Adverse Interests (as defined below) (except to the extent set forth in the Asset Purchase Agreement) accruing, arising or relating thereto any time prior to the Closing Date, unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement.

Y.       Free and Clear Sale.  Each Seller may sell the Purchased Assets free and clear of all Adverse Interests against such Seller, its estate, or any of the Purchased Assets (except to the extent set forth in the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  If the Sale were not free and clear of all Adverse Interests, or if the Buyer would, or in the future could, be liable for any of the Adverse Interests (except to the extent set forth in the Asset Purchase Agreement), the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors and their estates and creditors.  The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Adverse Interests (except to the extent set forth in the Asset Purchase Agreement).

Z.       Assigned Contracts.  The Sellers seek authority to assume and assign to the Buyer certain executory contracts and unexpired leases as more particularly set forth in the Asset Purchase Agreement (collectively, the "Assigned Contracts").  The Debtors have demonstrated that assumption and assignment of the Assigned Contracts under the Asset Purchase Agreement is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts to be assumed and assigned to the Buyer under the Asset Purchase Agreement are an integral part of the Asset Purchase

Agreement and the Sale and, accordingly, such assumption and assignment are reasonable and enhance the value of the Debtors' estates. Subject to paragraph 4.19 hereof, any contract counterparty to any Assigned Contract that has not actually filed with the Court an objection to such assumption and/or assignment as of the applicable deadline specified in the Bid Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bid Procedures Order or with the consent of the Debtors and the Buyer) is deemed to have consented to such assumption and assignment.

AA.    Cure Notice. The Sellers filed the *Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder or Such Other Successful Bidder at Auction* [Docket No. 167] (the "Cure Notice") pursuant to which the Sellers identified the dollar amount, if any, that the Sellers assert is necessary to be paid to cure all defaults, if any, under their executory contracts and unexpired leases based on the Sellers' books and records (the "Seller Asserted Cure Amount") and served the Cure Notice on the non-Debtor counterparties to the executory contracts and unexpired leases listed thereon [Docket No. 172] in accordance with the Bid Procedures Order. Except to the extent the Debtors agreed to an extension, pursuant to the Bid Procedures Order and the Cure Notice, contract counterparties to the Sellers' executory contracts and unexpired leases were required to file objections (each, a "Cure Objection"), if any, to the Seller Asserted Cure Amount by no later than March 10, 2023 by 4:00 p.m. (prevailing Eastern Time). The Cure Notice and the Bid Procedures Order provided that if no objection to the assumption of any contract is timely filed, each contract shall be assumed as of the date of the assumption and assignment of the contract or such other date as the Debtors and the Contract Counterparty agree and the proposed cure amount set forth in the Cure Notice (each, a "Cure Cost" and, collectively, the "Cure Costs")

shall be binding on all Contract Counterparties and the Contract Counterparties will be forever barred from asserting any other claims related to the contract against the Debtors.

BB.     Adequate Assurance of Future Performance.  In accordance with the Bid Procedures Order, upon request by any contract counterparty to the Debtors, the Debtors sent such counterparty evidence that the Buyer has the ability to perform under the executory contract or unexpired lease and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code.  Pursuant to the Bid Procedures Order, contract counterparties to Assigned Contracts whose executory contracts and unexpired leases were listed on the Cure Notice were required to file any objections to the Buyer's ability to provide adequate assurance of future performance as contemplated under sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Objections"), by no later than March 10, 2023 at 4:00 p.m. (prevailing Eastern Time).  Such contract counterparties to Assigned Contracts that failed to file an Adequate Assurance Objection are forever barred from objecting to the assumption, assignment and sale of such Assigned Contract on the grounds of a failure to provide adequate assurance of future performance.  Based on evidence adduced at the hearing and based on the record in these Chapter 11 Cases, to the extent necessary, the Sellers have satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code, in connection with the assumption, assignment and sale of the Assigned Contracts to the extent provided under the Asset Purchase Agreement and: (i) conditioned on the assumption and assignment of the applicable Assigned Contract, the Buyer will cure, in accordance with the terms set forth in this Sale Order and the Asset Purchase Agreement, any default existing prior to the date of the assumption and assignment of such Assumed Contract, within the meaning

of section 365(b)(1)(A) of the Bankruptcy Code, (ii) conditioned on the assumption and assignment of the applicable Assigned Contract, the Buyer has provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of assumption and assignment of such Assigned Contract, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) Buyer has provided adequate assurance of future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code based on the evidence adduced at the Sale Hearing.

CC. <u>Assumption and Assignment</u>. The assumption and assignment of the Assigned Contracts (i) is necessary to sell the Acquired Assets to the Buyer, (ii) allows the Debtors to sell their businesses to the Buyer as a going concern, (iii) limits the losses suffered by counterparties to the Assigned Contracts, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts. For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Assigned Contracts and such assumption and assignment is in the best interests of the Debtors' estates.

DD. <u>Carve Out</u>. Sound business justifications also exist for the establishment and funding of an escrow maintained by the Sellers and funded in the amount of the Carve-Out Reserves (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (the "<u>Final DIP Order</u>") in accordance with the DIP Credit Agreement and the Final

DIP Order (including section 2.3 thereof); *provided* that the funding of the Carve-Out Reserves shall not increase the total amount of DIP Loans or the Purchase Price.

EE.    <u>Wind Down</u>.  The Excluded Cash, including the Wind-Down Amount, will avoid a freefall shutdown of the Debtors' remaining estates, reserved, among other things and in accordance with the Asset Purchase Agreement, for use in connection with the wind-down of the Seller's Chapter 11 Cases whether via a liquidating chapter 11 plan or otherwise.

FF.    <u>Single, Integrated Transaction</u>.  Entry of this Sale Order approving the Asset Purchase Agreement and the Final DIP Order and all provisions of this Sale Order, the Final DIP Order, and the Asset Purchase Agreement are a necessary condition precedent to the Buyer consummating the Sale.  The provisions of this Sale Order, the Final DIP Order, and the Asset Purchase Agreement and the transactions contemplated by this Sale Order, the Final DIP Order, and the Asset Purchase Agreement and Sale to the Buyer are inextricably linked and technically and collectively constitute a single, integrated transaction.

GG.    <u>Consummation is Legal, Valid and Authorized</u>.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with.

HH.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Section 1.    <u>Approval of the Motion</u>**

1.1.    The relief requested in the Motion is granted as set forth herein; *provided* that the Buyer shall have no obligation to consummate the Sale if the Final DIP Order is not entered in a form satisfactory to the DIP Lender in its sole discretion.

1.2.     Any and all objections and responses to the Motion, the entry of this Sale Order or the relief granted herein (other than cure claim objections that are identified in **Exhibit C** hereto) that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.  Notwithstanding anything in this Sale Order to the contrary, all timely filed cure claim or adequate assurance objections that are identified in **Exhibit C** are reserved.  All persons and entities notified or deemed notified of the relief sought in the Motion and set forth in this Sale Order that failed to timely object thereto are deemed to consent to such relief.

1.3.     Notice of the Motion, the Bid Procedures Order, the Bid Procedures Hearing, the Sale Hearing, and the Sale ~~was fair and equitable under the circumstances and~~ complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

1.4.     The Court's findings of fact and conclusions of law in the Bid Procedures Order, including the record of the Bid Procedures Hearing, are incorporated herein by reference.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order ~~is a final order of the Court,~~ has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

**Section 2.     Approval of the Sale of the Purchased Assets**

~~2.1.     The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, and the Sale and related transactions contemplated thereby, are hereby approved in all respects, except as otherwise expressly set forth herein.~~

2.1.     [Reserved.]

2.2.     Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into, and performance of, the Asset Purchase Agreement and all other ancillary documents contemplated thereunder is hereby authorized and approved as a valid exercise of the Debtors'

business judgment. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Asset Purchase Agreement and all other ancillary documents as and when due thereunder without further order of this Court. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized, without further order of this Court, to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement; (b) transfer and assign all right, title, and interest to all assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents. Neither the Buyer nor the Sellers shall have any obligation to proceed with the Closing under the Asset Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

2.3. The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Sale Order, including amended and restated

~~certificates or articles of incorporation and by-laws or certificates or articles of amendment, and~~ ~~all such other actions, filings, or recordings as may be required under appropriate provisions of the~~ ~~applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may~~ ~~determine are necessary or appropriate.~~. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

2.4.    This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Adverse Interests against any Debtor, any holders of Adverse Interests against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer, any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases.  The terms and provisions of the Asset Purchase Agreement and this Sale Order shall inure to the benefit of the Debtors, their estates and their creditors, the Buyer and its Affiliates, and any other affected third parties, including all persons asserting any Adverse Interests in the Purchased Assets to be sold pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.  Nothing contained in any chapter 11 plan confirmed in any of these Chapter 11 Cases, any order confirming any such chapter 11 plan or any order approving the wind-down or dismissal of any of these Chapter 11 Cases or any subsequent chapter 7 cases (including any discharge of claims thereunder) or otherwise shall alter, conflict with or derogate from the provisions of this Sale Order or the

Asset Purchase Agreement, ~~and to the extent of any conflict or derogation between this Sale Order or the Asset Purchase Agreement and such future plan or order, the terms of this Sale Order and the Asset Purchase Agreement shall control~~.  This Sale Order shall survive any dismissal or conversion of any of these Chapter 11 Cases or any dismissal of any subsequent chapter 7 cases.

**Section 3.**    **Sale and Transfer of Assets**

3.1.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing Date and thereafter pursuant to the Asset Purchase Agreement, and pursuant to and except to the extent otherwise set forth in the Asset Purchase Agreement, the Purchased Assets shall be transferred free and clear of all encumbrances, claims, interests, and liens, including the Excluded Liabilities (other than to the extent set forth in the Asset Purchase Agreement, including, solely to the extent set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities, Permitted Liens and the Buyer's obligations with respect to Transferred Employees) (collectively, the "<u>Adverse Interests</u>"), with all such Adverse Interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  Those holders of Adverse Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their Adverse Interests pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Adverse Interests who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such Adverse Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Adverse Interests that constitute interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority

and with the same validity, force and effect that such holders had prior to the Sale, subject to any defenses of the Debtors.

3.2.     The sale of the Acquired Claims pursuant to the Asset Purchase Agreement is hereby approved.  To the extent any Acquired Claim is not assignable to the Buyer or any of its Affiliates, the Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of any of the Debtors and their estates, shall be prohibited from bringing any such Acquired Claim.  For the avoidance of doubt, no estate-owned claims or causes of action of the Debtors other than ~~the~~ the Excluded Claims shall be owned by the Debtors as of the Closing Date such that the Buyer shall own, free and clear, any and all such claims and causes of action (whether known or unknown).  For the further avoidance of doubt, as of the Closing Date the Debtors will not own any estate claims or causes of action against ~~Kinderhook~~Buyer, Tankas Funding VI LLC, and ~~its~~their respective affiliates~~,~~ (collectively, "Kinderhook"), and the Buyer shall own, free and clear, any and all such claims and causes of action (whether known or unknown) against Kinderhook ~~and its affiliates~~.

3.3.     Conditioned upon the occurrence of the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring all of the Debtors' right, title, and interest in such Purchased Assets to the Buyer pursuant to the terms and allocations set forth in the Asset Purchase Agreement.  For the avoidance of doubt, the Excluded Assets set forth in the Asset Purchase Agreement are not included in the Purchased Assets, and the Excluded Liabilities set forth in the Asset Purchase Agreement (including, for the avoidance of doubt, any liability of Seller or any claim held by Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century

Industrial Company Limited, Hisun China, and/or Hisun Motors Corp. U.S.A. and each of their affiliates and subsidiaries) are not Assumed Liabilities.

3.4. All persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order.

3.5. Subject to the terms and conditions of this Sale Order, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in the Asset Purchase Agreement, constitute a legal, valid, and effective transfer of all of the Debtors' right, title, and interest in the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Buyer with the right, title, and interest of the Sellers in and to the Purchased Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent set forth in the Asset Purchase Agreement).

3.6. To the maximum extent permitted under applicable law, the Buyer or its Affiliates, to the extent provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer or its Affiliates as of the Closing Date as provided by the Asset Purchase Agreement. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred,

assigned, or conveyed to the Buyer or its Affiliates on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.

3.7.    All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to the Asset Purchase Agreement are hereby directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date.

3.8.    Effective upon the Closing Date and except to the extent included in Assumed Liabilities or Permitted Liens or as otherwise expressly provided in the Asset Purchase Agreement, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Adverse Interests against the Debtors or the Purchased Assets, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Purchased Assets or the transfer of the Purchased Assets, hereby are forever barred and estopped from asserting any Adverse Interests relating to the Purchased Assets or the transfer of the Purchased Assets against the Buyer and its Affiliates, assets, or property, or the Purchased Assets transferred to the Buyer, including, without limitation, taking any of the following actions with respect to or based on any Adverse Interest relating to the Purchased Assets or the transfer of the Purchased Assets (other than to the extent set forth in the Asset Purchase Agreement or the Final DIP Order): (a) commencing or continuing in any manner any action or

other proceeding against the Buyer, its Affiliates, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer, its Affiliates, assets, or properties; (c) creating, perfecting, or enforcing any Adverse Interest against the Buyer or its Affiliates, assets or properties; (d) asserting an Adverse Interest as a setoff (except for setoffs asserted prior to the Petition Date), or right of subrogation of any kind against any obligation due the Buyer or Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; or (f) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale. No such persons shall assert or pursue against the Buyer or its Affiliates, assets, or property any such Adverse Interest directly or indirectly, in any manner whatsoever.

3.9.     The Buyer and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except to the extent otherwise expressly provided in the Asset Purchase

Agreement, including, solely to the extent set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities. Except to the extent otherwise set forth in the Asset Purchase Agreement, including, solely to the extent set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities, the transfer of the Purchased Assets and the Assumed Contracts to the Buyer under the Asset Purchase Agreement shall not result in (a) the Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility for any claim against the Debtors, (b) the Buyer and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff (except for setoffs asserted prior to the Petition Date) or otherwise, directly or indirectly, any Adverse Interests or Excluded Liability or (c) the Buyer and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility to the Debtors, in each case except to the extent expressly set forth in the Asset Purchase Agreement.

3.10. Without limiting the effect or scope of the foregoing, except to the extent expressly provided in the Asset Purchase Agreement, as of the Closing Date, the Buyer and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character with respect to the applicable Purchased Assets, including, but not limited to: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any of the Debtors' Affiliates or predecessors or any current or former employees of

any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of the Debtors; (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law; and (g) any claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination in Employee Act of 1967, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or

unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Purchased Assets, the Asset Purchase Agreement or the Assumed Contracts except to the extent otherwise set forth in this Sale Order.

3.11.    Except as expressly set forth in the Asset Purchase Agreement, including with respect to Assumed Liabilities, Permitted Liens and the Buyer's obligations with respect to Transferred Employees, it is expressly ordered and directed that the Sale of the Purchased Assets is free and clear of any and all unemployment compensation taxes and any related contribution and reimbursement obligations of the Debtors, and all state tax and labor agencies shall treat the Buyer as a "new employer" in all respects and for any applicable tax rates and contribution and reimbursement obligations and "experience rates" as of and after the Closing Date (and each state unemployment compensation law agency or department shall be prohibited from treating the Buyer as a successor of the Debtors for any contribution rates, benefit charges, benefit rates, experience rates or similar charges or taxes)..

3.12.    Subject to the Asset Purchase Agreement, without limiting a contract counterparty's right to request or seek adequate assurance of future performance, the Buyer is hereby authorized in connection with the consummation of the Sale to transfer or direct the transfer of any or all of the Purchased Assets and the Assumed Contracts (or any rights to acquire the Purchased Assets and the Assumed Contracts) to its direct and indirect subsidiaries in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets or the rights under any Assumed Contract to its direct and indirect subsidiaries with all of the rights and protections accorded under this Sale

Order and the Asset Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

**Section 4.** **Assumption and Assignment**

4.1.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, and subject to paragraphs 4.7 and 4.19 hereof, the Sellers' assumption, assignment and sale to the Buyer, and the Buyer's assumption on the terms set forth in the Asset Purchase Agreement of the Assigned Contracts is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Subject to paragraphs 4.7 and 4.19 hereof, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing Date of the Sale of the Purchased Assets or thereafter pursuant to the Asset Purchase Agreement, the Assigned Contracts free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent set forth in the Asset Purchase Agreement) and execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer.

4.2.     Upon the date that each Assigned Contract is assumed and assigned, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

4.3.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that is assumed, assigned and sold to the Buyer pursuant to the Asset Purchase Agreement (including those of the type described in sections 365(b)(2) and

365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

4.4.    Subject to paragraphs 4.7 and 4.19 hereof, the Buyer has provided adequate assurance of future performance for the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

4.5.    **Exhibit B** attached hereto lists executory contracts and unexpired leases for which either (a) no Cure Objections were timely filed with the Court or (b) informal responses were received by the Debtors and resolved by mutual written agreement between the Buyer, the Debtors, and the applicable contract counterparty.  The Cure Costs for the contracts listed on **Exhibit B** are hereby fixed at the amounts set forth in the Cure Notice or as otherwise agreed in writing by the Buyer, the Debtors, and the applicable contract counterparty, and the contract counterparties to such executory contracts and unexpired leases are forever bound by such Cure Costs.  Unless the Buyer and the applicable contract counterparty subsequently agree to different terms, pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall pay to the applicable contract counterparty the Cure Costs relating to any Assigned Contracts on **Exhibit B** on the Closing Date or as soon as reasonably practicable thereafter.  Upon payment of such Cure Costs as provided for herein, the contract counterparties to such Assigned Contracts are hereby enjoined from taking any action against the Buyer or the Purchased Assets with respect to any claim for cure.  For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on **Exhibit B** shall not limit the rights of the Buyer under the Asset Purchase Agreement not to designate such executory contract or unexpired lease for assumption and assignment at Closing.

4.6.     At least one (1) day prior to the Closing Date, the Buyer shall provide the Debtors, and the Debtors shall file schedules of all Assigned Contracts to be assumed and assigned as of the Closing Date.

4.7.     Any executory contract or unexpired lease for which there is an unresolved adequate assurance objection or cure claim objection set forth on **Exhibit C** hereto shall not be assumed, assigned and sold unless (a) all such objections relating to such contract or lease are withdrawn, (b) the contract or lease counterparty consents, or (c) the Court subsequently orders otherwise.

4.8.     ~~The~~Subject to paragraph 4.6 hereof, the rights of the Buyer to modify the lists of Assigned Contracts after the date of this Sale Order pursuant to the Asset Purchase Agreement are hereby approved.  Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract is assumed and assigned to the Buyer, such Assigned Contract shall thereafter be deemed a Purchased Asset for all purposes under this Sale Order and the Asset Purchase Agreement.

4.9.     The payment of the applicable Cure Costs (if any) shall effect a cure of all defaults existing as of the date that the applicable Assigned Contracts are assumed and shall compensate for any actual pecuniary loss to such contract counterparty resulting from such default.

~~4.10.    Pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the Buyer of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs as provided for herein, the Debtors and the Buyer shall not have any further liabilities to the contract counterparties to the Assigned Contracts, other than the Buyer's obligations under the Assigned Contracts that become due and payable on or after the date~~

that such Assigned Contracts are assumed and assigned, including as set forth in paragraph 4.18 of this Sale Order.

4.11. Any provisions in any Assigned Contracts that prohibit or condition the assignment and sale of such Assigned Contracts or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any counterparty, or modify any term or condition upon the assignment and sale of such Assigned Contracts constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contracts to the Buyer and all Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the Buyer of the appropriate cure amount, if any. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the Buyer of the Assigned Contracts have been satisfied.

4.10. The assignment and sale by the Debtors to the Buyer of the Assigned Contracts is approved to the fullest extent permitted under section 365(f) of the Bankruptcy Code.

4.11. [Reserved.]

4.12. Subject to paragraph 4.19 hereof, any party having the right to consent to the assumption and assignment of any Assigned Contract that failed to object to such assumption and/or assignment is deemed to have consented to such assumption and assignment as required by section 365(c)(1)(B) of the Bankruptcy Code.

4.13. As of the date of assignment to the Buyer, the Buyer shall be deemed to be substituted for the applicable Debtors as a party to the applicable Assigned Contracts and such Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts arising from and after the assignment and sale.

4.14.   All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, ~~and shall not charge the Buyer for,~~ any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

4.15.   Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed, assigned and sold or arising by reason of the Closing.  For the avoidance of doubt, nothing in this paragraph alters any counterparty's entitlement to the Cure Cost determined with respect to its Assigned Contract.

~~4.16.   Notwithstanding any term of any Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with all Assigned Contracts that the Debtors have sought to exercise prior to the entry of this Sale Order have been timely and validly exercised by the Debtors, and all Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.~~

4.16.   [Reserved.]

4.17.     Neither the Buyer nor any successor of the Buyer shall be responsible for any Adverse Interests or obligations arising out of any of the executory contracts or unexpired leases that are not assumed and assigned to the Buyer, except to the extent specifically provided by the Asset Purchase Agreement.

4.18.     Notwithstanding anything to the contrary in this Sale Order, with respect to each Assigned Contract, from and after the date that such Assigned Contract is assumed and assigned to the Buyer, the Buyer shall be responsible for continuing obligations under such Assigned Contract, *cum onere*, including, without limitation, liabilities for any breach of such Assigned Contract occurring after such assumption, assignment and sale and obligations to pay year-end adjustment and reconciliation amounts that become obligations after the entry of this Sale Order (irrespective of whether such obligations accrued before, on, or after assumption, assignment and sale of the Assigned Contract), including tax reconciliations, common area charges and insurance premiums, in each case subject to the terms and conditions of the Assigned Contracts, and subject to any defenses provided by such Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed.

4.19.     In the case of any executory contracts and/or unexpired leases that the Debtors seek to assume and assign prior to Closing pursuant to the Asset Purchase Agreement that were not previously included in the Cure Notice, the Debtors shall file with the Court a written supplemental Cure Notice of the Debtors' intent to assume and assign such executory contract and/or unexpired lease(each, a "Supplemental Cure Notice").   The Debtors shall serve such Supplemental Cure Notice on each of the following parties (the "Supplemental Cure Notice Parties"): (a) by overnight delivery service upon each counterparty to any such executory contract and/or unexpired lease at the address set forth in the notice provision of the applicable contract (and their counsel, if known),

(b) by first class mail, email, or fax upon (i) the Office of the U.S. Trustee for the District of Delaware, (ii) counsel to the Committee, (iii) counsel to the agent of the Prepetition First Lien Lenders, and (iv) counsel to the Buyer. The Debtors shall also serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail adequate assurance information about the Buyer. The Supplemental Cure Notice shall set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any unexpired lease that the Debtors seek to assume, assign and sell or a description of any executory contract that the Debtors seek to assume, assign and sell, (b) the name and address of the affected counterparties (and their known counsel), (c) a description of the deadlines and procedures for filing objections to the Supplemental Cure Notice, if so permitted as set forth below, and (d) any proposed cure amounts as of that time. A party in interest may object to a Supplemental Cure Notice solely with respect (a) to the proposed cure amount contained therein but only to the extent such objection could not have been raised prior to the Cure Objection Deadline, or (b) adequate assurance of future performance. Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Supplemental Cure Notice Parties no later than 14 calendar days after the date the Debtors served the applicable Supplemental Cure Notice. If no permitted objection is timely filed and served with respect to the applicable Supplemental Cure Notice, all non-Debtor parties to such executory contract and/or unexpired lease shall be deemed to have consented to the cure amount set forth in such supplemental Cure Notice. If a permitted objection to a Supplemental Cure Notice is timely filed and served on the Supplemental Cure Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled by the Court to consider that objection. The assumption and assignment of any executory contract and/or unexpired lease

set forth in a Supplemental Cure Notice shall be deemed to have occurred as of the date of filing of a Supplemental Cure Notice upon payment of the cure amount, unless otherwise agreed by the relevant counterparty.

4.20.   The Coleman Company, Inc.  Notwithstanding anything contained herein or in the Asset Purchase Agreement, the terms of the Consent to Assumption and Assignment of License Agreement between The Coleman Company, Inc. ("Coleman"), the Debtors, and the Purchaser, attached hereto as **Exhibit D**, shall govern the Debtors' assumption of the License Agreement between Coleman and the Debtors and the Debtors' assignment of such License Agreement to the Purchaser.

4.21.   Oracle.  Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, no contract between the Debtors and Oracle America, Inc., successor in interest to NetSuite, Inc., ("Oracle") will be assumed and/or assigned, and no shared or concurrent use of Oracle's products and services will be authorized (pursuant to the Transition Services Agreement or otherwise), without (a) further Court order or Oracle's prior written consent and (b) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.

4.22.   DG Lease.  Notwithstanding anything to the contrary in the Asset Purchase Agreement or this Order, Buyer agrees to perform all of its obligations under that certain lease (the "DG Lease") dated October 24, 2022, by and between DG Mesquite Airport Property Owner, L.P. ("DG Landlord") and Performance Powersports Group, Inc., including, but not limited to, performing the maintenance, repair and restoration obligations under the DG Lease as they may arise in the ordinary course of business, ordinary wear and tear excepted, under the terms of the

DG Lease without regard as to whether the underlying conditions currently exist, or are known or unknown, contingent or liquidated.

4.23.    Nothing in the Asset Purchase Agreement or this Order shall be construed to release, waive, or enjoin any direct Claims or Litigation, if any, DG Landlord may assert against the Debtors' applicable insurance providers with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises prior to the Closing, including with respect to potential liability for property damage or personal injuries related to the premises under the DG Lease as long as such pursuit does not result in any liability to the Debtors or their estates, provided, however, for the avoidance of doubt, nothing herein (a) creates a direct right of action if one does not otherwise exist under applicable law, and (b) shall be deemed to modify, amend, waive, or otherwise prejudice any of the insurance providers' rights or defenses under or with respect to the insurance policies.

4.24.    Notwithstanding anything to the contrary in the Stalking Horse Purchase Agreement or this Order, for the avoidance of doubt and as part of the Assumed Liabilities under the Stalking Horse Purchase Agreement, as of the entry of this Order, so long as the DG Lease is or becomes an Assumed Contract Buyer has assumed all liabilities and obligations under the DG Lease that arise or become due and payable on or after March 31, 2023, including, without limitation, accrued and unbilled common area maintenance, insurance, taxes, or similar charges contained in such DG Lease that will come due on or after the effective date of assumption and assignment of the DG Lease, regardless of whether such charges relate to a period before or after March 31, 2023.

**Section 5.**       **DIP Matters**

5.1.     Upon the Closing of the Sale, and subject to the entry of the Final DIP Order in a form satisfactory to the DIP Lender in its sole discretion, the DIP Lender shall deliver to the Sellers all remaining amounts outstanding under the DIP Loans.

5.2.     Upon the Closing of the Sale, and subject to the entry of the Final DIP Order in a form satisfactory to the DIP Lender in its sole discretion, the Seller shall fund an escrow account in the amount of the Carve-Out Reserves (as defined in the Final DIP Order); *provided* that such funding shall in no way increase the total amount of the DIP Loans or Purchase Price.

**Section 6.**       **Additional Provisions**

6.1.     Litigation Trust Agreement & Form of Litigation Trust Note.  The Litigation Trust Agreement and form of Litigation Trust Note shall be mutually agreed upon by (a) the Debtors and (b) ~~the Buyer, Tankas Funding VI LLC, and their respective affiliates (collectively, "Kinderhook"),~~ in consultation with Committee's counsel, and filed with the Court at least five (5) days prior to the closing of the Sale.

6.2.     Reservation of Rights Regarding Asserted Direct Claims. Kinderhook expressly reserves all rights to defend against any and all claims or litigation brought against Kinderhook or any affiliates of Kinderhook by Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd. and Vietnam New Century Industrial Company Limited, or any affiliates of these entities (collectively, "Hisun"), and Kinderhook expressly reserves the right: (a) to bring (i) its own claims against Hisun and (ii) any and all estate claims or causes of actions against Hisun that it purchases from the Debtors under the Asset Purchase Agreement, in each case, in whatever forum it deems appropriate; and (b) to exercise its rights as a creditor of the Debtors, including its ability to object to any Hisun proof(s) of claim filed in the chapter 11 cases.

6.3.    Hisun expressly reserves any and all direct claims against Kinderhook, or any affiliates of Kinderhook, including Counts I, II, and III in the complaint currently being prosecuted in the United States District Court, Southern District of New York, Case No. 22-cv-10652-JPO (the "<u>SDNY Action</u>").

6.4.    Hisun expressly reserves the right to: (a) bring direct claims against Kinderhook or its affiliates; and (b) object to any Kinderhook proof(s) of claim filed in these chapter 11 cases.

6.5.    <u>Reservation of Rights Regarding Excluded Claimants</u>.  Nothing contained herein shall be deemed or construed as:  (a) a finding, conclusion, ruling or determination as to any factual or legal allegations regarding Richard Godfrey, Todd Gentry, Christopher Hunter, or any entities related to or controlled by such persons (collectively, the "<u>Excluded Claimants</u>"); (b) a waiver of any of the Excluded Claimants' rights, defenses or remedies to dispute and defend against any claims, assertions, causes of action or other requests for relief asserted in any forum; or (c) a waiver of any claims or causes of action of the Excluded Claimants which exist or may exist in the future against any person or entity under the Bankruptcy Code or any other applicable law.  All rights, remedies, claims, causes of action and defenses of the Excluded Claimants against any person or entity, including those entities being provided releases hereunder by the Debtors or others, are specifically reserved as to the Excluded Claimants.  All rights, remedies, causes of action and defenses of the Debtors and their estates and ~~the DIP Lender and the Stalking Horse Bidder and their respective affiliates~~ Kinderhook against the Excluded Claimants are specifically reserved.

6.6.    <u>Stay Relief</u>.  The automatic stay pursuant to section 362 is hereby lifted to the extent necessary, without further order of this Court, to (a) allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement and any ancillary documents and (b) allow the Buyer to take

any and all actions permitted under this Sale Order, the Asset Purchase Agreement, and any ancillary documents in accordance with the terms and conditions thereof.

6.7. <u>Bulk Transfer Laws</u>. Each of the Sellers and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

6.8. <u>Non-Interference</u>. Following the Closing Date, no holder of an Adverse Interest in or against the Debtors or the Purchased Assets shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets ~~based on or related to such Adverse Interest or any actions that the Debtors or their successors, including any chapter 11 or chapter 7 trustee, may take in these Chapter 11 Cases or any successor chapter 7 cases~~.

6.9. <u>Authorization</u>. The Debtors, including their respective officers, employees and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Asset Purchase Agreement and this Sale Order. The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of the Asset Purchase Agreement, this Sale Order and the relief granted pursuant to this Sale Order.

6.10. <u>Good Faith</u>. The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, for the avoidance of doubt, the assumption, assignment and sale to the Buyer of the Assumed Contracts and the Sale of the Purchased Assets free and clear of all Adverse Interests

(unless otherwise assumed under, or permitted by, the Asset Purchase Agreement)), unless such authorization and consummation of such Sale were stayed pending such appeal. The Buyer is a good-faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

6.11. <u>Cooperation</u>. From time to time, as and when requested by any party, each party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Buyer its right, title and interest in and to the Purchased Assets.

6.12. ~~Scope of Approval.~~ ~~The failure specifically to include any particular provisions of the Asset Purchase Agreement, including any of the documents, agreements, or instruments executed in connection therewith, in this Sale Order shall not diminish or impair the efficacy, approval, or effectiveness of such provision, document, agreement, or instrument, it being the intent of this Court that the Asset Purchase Agreement and each such document, agreement or instrument be authorized and approved in its entirety, except as otherwise specifically set forth herein.~~

6.12. <u>[Reserved].</u>

6.13. <u>Post-Closing Claims Administration</u>. After the Closing Date: (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these Chapter

11 Cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability or Permitted Liens without the prior written consent of the Buyer; and (b) the Buyer shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed Liability or Permitted Liens, and the Court will retain jurisdiction to hear and determine any such objections.

6.14. <u>Notice of Sale Closing</u>.  Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of the closing of the Sale.

6.15. <u>Computations of Time-Periods</u>.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

6.16. <u>Sale Order Governs in Event of Inconsistencies</u>.  ~~To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern.~~  To the extent there are any inconsistencies between the terms of this Sale Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

6.17. <u>Modifications</u>.  The parties to the Asset Purchase Agreement may make any non-material modifications, amendments or supplements to such agreement and to any related agreements, documents or other instruments in accordance with the terms thereof without further order of this Court.

6.18. <u>Non-Severability</u>.  The provisions of this Sale Order are nonseverable and mutually dependent.

6.19. <u>No Stay</u>.  Notwithstanding the provisions of the Bankruptcy Rules, including Bankruptcy Rules 6004(h), 6006(d), and 7062, this Sale Order shall not be stayed after the entry

hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not apply.

6.20.   Retention of Jurisdiction.   This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, and all amendments thereto any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtors are a party or which have been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

<u>**Exhibit A**</u>

**Asset Purchase Agreement**

## <u>Exhibit B</u>

## Assigned Executory Contracts and Unexpired Leases

**Exhibit C**

**Cure Claim Objections**

## <u>Exhibit D</u>

## Consent to Assumption and Assignment of License Agreement