```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                       .  Chapter 11
                                  .
 4   PERFORMANCE POWERSPORTS      .  Case No. 23-10047 (LSS)
     GROUP INVESTOR, LLC, et al.,.
 5                                .  (Jointly Administered)
                                  .
 6                                .  Courtroom No. 2
                                  .  824 Market Street
 7            Debtors.            .  Wilmington, Delaware 19801
                                  .
 8                                .  Wednesday, June 7, 2023
     . . . . . . . . . . . . . .  .  10:00 a.m.
 9
                         TRANSCRIPT OF HEARING
10         BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                   UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:          Domenic Pacitti, Esquire
13                             Michael Yurkewicz, Esquire
                               KLEHR HARRISON HARVEY BRANZBURG LLP
14                             919 North Market Street
                               Suite 1000
15                             Wilmington, Delaware 19801

16

17

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:          Brandon J. McCarthy, ECRO

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1    APPEARANCES (CONTINUED):

2    For the U.S. Trustee:        Richard Schepacarter, Esquire
                                  OFFICE OF THE UNITED STATES TRUSTEE
3                                 844 King Street, Suite 2207
                                  Lockbox 35
4                                 Wilmington, Delaware 19801

5    For Kinderhook:             Brian Schartz, Esquire
                                  KIRKLAND & ELLIS LLP
6                                 609 Main Street
                                  Houston, Texas 77002

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2    MOTION:                                              PAGE

3    Agenda
4    Item 3: Debtors' Motion for Entry of an Order        4
             Authorizing the Rejection of Certain
5            Unexpired Leases and the Abandonment
             of any Related Personal Property
6            [Docket No. 349; Filed 5/17/2023]

7            Court's Ruling:                              6

8    Agenda
9    Item 4: Disclosure Statement with Respect to         6
             Debtors' Joint Plan of Liquidation
10           Pursuant to Chapter 11 of the
             Bankruptcy Code Dated May 2, 2023
11           [Docket 334; Filed 5/2/2023]

12   Agenda
     Item 5: Motion of the Debtors for an Order (I)
13           Approving the Disclosure Statement;
             (II) Fixing the Voting Record Date;
14           (III) Approving the Notice and Objection
             Procedures in Respect of Confirmation of
15           the Plan; (IV) Approving Solicitation
             Packages and Procedures for Distribution
16           Thereof; (V) Approving the Forms of
             Ballots and Establishment of Procedures
17           for Voting on the Plan; (VI) Approving
             the Forms of Notices to Non-Voting Classes
18           Under the Plan; (VII) Fixing the Voting
             Deadline to Accept or Reject the Plan; and
19           (VIII) Approving Procedures for Vote
             Tabulations in Connection Therewith
20           [Docket No. 335; Filed 5/2/2023]

21

22

23

24

25

1          (Proceedings commenced at 10:04 a.m.)

2              THE COURT:  Please be seated.

3              MR. PACITTI:  Good morning, Your Honor.

4              THE COURT:  Good morning.

5              MR. PACITTI:  For the record, Domenic Pacitti and

6   Michael Yurkewicz of Klehr Harrison Harvey Branzburg on

7   behalf of the debtors.

8              Your Honor, we are here on our notice of agenda

9   filed at Docket No. 368.  There is a couple of uncontested

10  matters:

11             Docket No. 2 on the agenda and order has already

12  been entered on that.  Your Honor, I appreciate that there

13  was a certificate of no objection.

14             Item No. 3 is our motion for rejection of

15  unexpired leases.  We did file a CNO on that, but the order

16  has not been entered yet.  It was not clear if Your Honor had

17  some issues on that order.

18             THE COURT:  I had a question.

19             MR. PACITTI:  Mr. Yurkewicz is going to handle

20  that one because he did that motion, Your Honor.

21             THE COURT:  Thank you.

22             MR. YURKEWICZ:  Good morning, Your Honor.  For the

23  record Michael Yurkewicz, Klehr Harrison Harvey Branzburg.

24             THE COURT:  Good morning.  I am fine with the

25  rejection of the leases.  There was no objection by the

1 landlords.  In the order, Paragraph 4, says: "The landlords

2 and the debtors are absolved of any and all liability to

3 third parties for the disposal of any personal property

4 abandoned by the debtors on the premises, subject to the

5 lease."

6 I, sort of, question how I can absolve anybody of

7 liability from third parties.  I don't know who was served.

8 Of course, if somebody wasn't served, I can't absolve the

9 debtors of liability. So, I guess I just want to understand

10 while I recognize these provisions are sometimes in orders,

11 they are becoming more broad.  They're becoming broader and

12 more general.

13 MR. YURKEWICZ:  Your Honor, the reason they're

14 becoming broad and more general is in response to landlords

15 in their arguments that if they are not broad in general that

16 we have not turned over the space.  They somehow could -- we

17 are still in possession and they somehow cannot re-rent the

18 space.  The paragraph is really just in response to landlords

19 pressuring us for that effective date of the rejection.

20 They haven't objected to it here.  We can change

21 it or remove it if you would like.  It really is about the

22 rejection date and arguments against that rather than actual

23 liability against.

24 THE COURT:  Maybe some debtor ought to take on

25 that objection because I am not sure that leaving property in

1    a lease space means you haven't rejected it. I am not making

2    a ruling, but I think it's come up -- I remember some Judge

3    Walrath decisions.

4        MR. YURKEWICZ:  We are all aware of the Judge

5    Walrath decisions being pretty clear on it, but that does not

6    prevent arguments --

7        THE COURT:  Well, if the landlords didn't insist

8    on it here and didn't object then let's take it out and I

9    will deal with it when and if it comes in front of me.

10        MR. YURKEWICZ:  We can remove that.  That is -- we

11    are fine with taking that out, but the reason for that is,

12    yes, we don't know if they will object to it based on that

13    until the hearing and the objection deadline runs, and often

14    our rejection date is before that.  So, we do need -- that is

15    why it's included in these.  But we will remove and send it

16    under certification of counsel.

17        THE COURT:  I will sign it.

18        MR. YURKEWICZ:  Thank you, Your Honor.

19        THE COURT:  Thank you.

20        MR. PACITTI:  Next item, Your Honor, is, I guess,

21    Items 4 and 5 which are approval of our disclosure statement

22    and our motion to approve noticing solicitation procedures.

23    I would like to thank Mr. Schepacarter for working with us

24    over the last couple of weeks.  As Your Honor is aware, we

25    filed a revised disclosure statement and plan, and a revised

1 proposed form of order that incorporates the changes that Mr.

2 Schepacarter asked us to make.

3       Additionally, Your Honor, I sent over to Chambers

4 today, but have not filed yet a couple of tweaks to the plan

5 and disclosure statement that all parties have agreed to as

6 well and they relate to Hisun. If you recall, it's one of

7 the entities that was on the committee.

8       I am not sure if Your Honor is aware, the

9 committee was disbanded and so --

10       THE COURT: I did see that.

11       MR. PACITTI: -- there is no longer a committee in

12 the case. So, as a consequence we reached an understanding

13 of, sort of, what the provisions would provide in terms of

14 the members of the litigation trust oversight committee that

15 is contemplated by the plan. So, they were agreed to.

16       We didn't file it on the docket because I wasn't

17 sure if there was going to be more changes as a consequence

18 of the hearing today. So, I didn't want to have a thousand

19 different plans on the docket. So, I figured we would do it

20 once rather than three times.

21       THE COURT: Okay. I saw that and certainly don't

22 have any problem with that provision.

23       MR. PACITTI: Great. The other thing I wanted to

24 raise, Your Honor, and we can go through any comments that

25 you might have, but there is ongoing discussions among the

1  parties about resolving pending issues. I don't want to get

2  into them today on the record because there's still

3  discussions and nothing has been resolved, but if they do get

4  resolved in the next day or so it would require a couple

5  further tweaks to the plan and disclosure statement.

6         What I was fearful of doing is having something

7  approved, then doing a couple of tweaks, and then having to

8  come back again or soliciting and then having to come back

9  because of the tweaks might have required, you know, further

10 notification.  So, my thought process was if we could go

11 through the documents today and any issues that Your Honor

12 has we can address and then if we reach an understanding in

13 the next day or so we would file a certification of counsel.

14 If we don't reach a resolution we will also certify to the

15 Court that we would be moving forward with the plan and

16 disclosure statement that we have on file and that we would,

17 otherwise, address today if that makes sense.

18         I'm just concerned about going the solicitation

19 then having to resolicit and spending all that money in an

20 estate that doesn't have the ability to do a double

21 solicitation.

22         THE COURT:  Well, I agree.  It doesn't make sense

23 to solicit if discussions are going to change the plan in a

24 way that would require, or might require, or someone could

25

1  argue requires re-solicitation.  So, let's -- I had a few

2  questions, so let's go through those.

3          MR. PACITTI:  Great.

4          THE COURT:  Then we will see where we are, I

5  guess, in terms of the best way to go forward.

6          MR. PACITTI:  Okay.  I see Mr. Schartz on the

7  screen.

8          Your Honor, were you looking at the redline or the

9  cleans.

10          THE COURT:  I am looking at the redline.

11          MR. PACITTI:  Okay.

12          THE COURT:  I have a general question.  I want to

13  make sure that I understand Class IV which is the 2021 credit

14  agreement claims.

15          MR. PACITTI:  Yes, Your Honor.

16          THE COURT:  I want to make sure I understand what

17  that claim consists of and what is left after the sale

18  because this claim is classified here, and its impaired, and

19  it's allowed to vote. I see the ballot for it.  It shows up

20  in the liquidation analysis.  So, I need to understand that

21  claim.

22          MR. PACITTI:  Sure.  Your Honor, as I -- I know

23  that Your Honor has probably opined on this in the context of

24  bar dates and proofs of claim where often times we try to

25  eliminate assumed liabilities under APA's as, you know, not

1  having claims.  What this was, was there was an assumption of

2  that liability, but there was no accordance satisfaction,

3  novation or anything as it relates to the debtors.  The proof

4  of claim that has been filed by that claimant includes

5  ongoing indemnification rights that they have,

6  notwithstanding payment or, otherwise, under the loan

7  documents.

8          So, there is a lingering claim there that they

9  could potentially raise and they have raised.  We classified

10 them because we thought that there was an ongoing liability

11 that notwithstanding that it was assumed -- like, for

12 instance, what happens if the buyer -- I don't expect this is

13 going to happen, but what happens if the buyer has financial

14 difficulties and can't pay that claim this year or in the

15 next two months.  I don't think we have extinguished that

16 claim yet.  The plan is the way to deal with how that claim

17 is dealt with vis-à-vis these debtors.

18          THE COURT:  I thought about that and that that

19 could be a response. I did it in the context of cure claims.

20          MR. PACITTI:  I don't think there is a real

21 distinction as between cure and assumption of liabilities

22 under 363; at least that is my view.

23          THE COURT:  I don't know.  I guess, maybe, I will

24 deal with it if I have to deal with it at confirmation. I

25 don't know -- I mean one of the reasons I think is because

1  the assumption of that liability, which I thought was

2  consented to, which would make it different to me then a cure

3  claim, I thought it was consented to expressly by the first

4  lien lenders which could be an ovation that --

5          MR. PACITTI:  Cure claims are consented to as well

6  because you send out a notice of the cure amount and we often

7  times either agree to the cure amount or the amounts right

8  and there is no objection filed.

9          THE COURT:  Maybe; although, I think this major

10 player here is a little different, but maybe not.  It was an

11 important piece of the consideration that we evaluated in

12 connection with the sale.  It was probably the major piece of

13 consideration in connection with the sale.  Okay. I

14 understand what it is.  I will deal with it if I have to at

15 confirmation if it's some issue that someone raises or it has

16 to be decided in that context.

17          There is another provision in the plan that I want

18 to understand. It is -- in the blackline its 3.10.11. It

19 doesn't have a page number on it. It's 37 of 51 at the top.

20          MR. PACITTI:  I'm sorry, Your Honor.  The

21 pagination at the bottom gets cutoff in the redline.

22          THE COURT:  Yeah, that happens.

23          MR. PACITTI:  3.10.11?

24          THE COURT:  Yeah, 3.10.11.  Claims paid or payable

25 by third parties.  And in concept I certainly don't have a

1  problem with this provision. I am just trying to figure out

2  how it's going to work from a claims administration

3  standpoint.

4        MR. PACITTI:  Well, I think once the claims

5  register comes to rest the claims -- the trustee and the

6  trust will go through the claims and reconcile them and

7  determine which had been paid or not in the first instance

8  and then if there needs to be some notification that it's a

9  paid claim, even though it shows up on the docket, he or she

10  will have to do that.

11        THE COURT:  Okay.  Because this talks about the

12  claims shall be disallowed without a claim objection having

13  to be filed and without any further notice or action.  That

14  is the part of it that I don't think works or I don't

15  understand how that would work, how parties would know that,

16  in fact, the trust is not honoring their claim.

17        MR. PACITTI:  So, it's just the beginning from and

18  such claims shall be disallowed through, I guess, approval of

19  the bankruptcy court.  That is the provision, Your Honor?

20        THE COURT:  Mm-hmm.

21        MR. PACITTI:  Okay.  And I can look in the plan to

22  see if there is a similar -- I'm assuming there is in the

23  plan.

24        THE COURT:  I assume there is.

25        MR. PACITTI:  Yeah.

1          THE COURT:  I didn't look.

2          MR. PACITTI:  I will look, Your Honor.

3          THE COURT:  Well, I guess there's also -- I mean

4  if a party gets paid by a third-party -- a creditor gets paid

5  by a third-party -- well, I'm not sure about the -- to the

6  extent the holders -- I'm down further, total recovery on

7  account of such claim from the third-party and under the plan

8  exceeds the amount of such claim as of the date of any such

9  distribution under the plan.

10          Well that is not a sentence, but if what its

11  trying to say is -- I guess what concerns me here is, of

12  course, a creditor can get payment from a third-party and

13  unless its complete and total payment as the creditor views

14  it, right, with interest, and fees, and whatever that it may

15  not get in the bankruptcy case, but could get outside of

16  bankruptcy it shouldn't effect their claim here necessarily.

17          MR. PACITTI:  Unless it's paid in full.

18          THE COURT:  Yeah, paid in full depending on what

19  that means and from the creditor's standpoint, right,

20  because, yes, this debtor may not have to pay them interest,

21  but if the creditor does pay them interest, he's entitled to

22  it and it doesn't necessarily go against his principal that

23  is being paid here.

24          So, this whole section kind of confused me and,

25  you know, maybe this isn't all claims.  I am not sure why all

1  plans, I am not sure why it struck me here except for the

2  notice provision, but what -- as applicable to the extent the

3  holder's total recovery on account of such claim from the

4  third-party under the plan exceeds the amount of such claim,

5  I honestly don't that is a sentence.  I think there is

6  something missing there as to what happens as applicable to

7  the extent, then what?  There seems to be something missing.

8          MR. PACITTI:  Yeah, I think the concept was if you

9  were paid by, first instance, the buyer here --

10         THE COURT:  Uh-huh.

11         MR. PACITTI:  -- assume trade payables --

12         THE COURT:  Yes.

13         MR. PACITTI:  -- and has paid them --

14         THE COURT:  Yes.

15         MR. PACITTI:  -- but there might be a claim still

16 on the claims register, for them, but you've been paid, the

17 debtors have -- should have no obligation to pay that.

18         THE COURT:  I think that's right, if it really,

19 truly constitutes a double payment --

20         MR. PACITTI:  Right.

21         THE COURT:  -- and it's a double payment of

22 everything that's owed and not just what the debtor may have

23 to pay them.  So, I'm not sure why this is necessary, because

24 I think that's just a question of double payment, which,

25 whether this is in here or not, nobody gets double payment.

1        But if there's going to be some consequence to

2   this "as applicable" sentence, I'm just maybe misreading it,

3   but I don't understand what the consequence is, as set out in

4   this sentence.  This sentence doesn't have a consequence.

5        But I think, regardless, we need to have an

6   objection, a notice of satisfaction.  There needs to be

7   something on the docket that gets noticed out to a creditor

8   who can determine whether it has any objection to the

9   debtors' determination or the trust's determination, with

10  respect to its claim.

11       MR. PACITTI:  Your Honor, we will work on language

12  to put in a revision.

13       THE COURT:  Okay.

14       MR. PACITTI:  And just so Your Honor knows, it is

15  actually in the plan on Article V(k)(1) on page 33 of the

16  blackline.  So, we'll make this companion change there.

17       And I thank Ms. Smith who's on the line and

18  emailed me that reference.

19       THE COURT:  Okay.  And then I had a question on

20  4.5.6.  It's on page 45 of 51.

21       MR. PACITTI:  Yeah.

22       THE COURT:  The entire agreement --

23       MR. PACITTI:  I think since the plan becomes a

24  contract between the debtors and the creditors, that it's to

25  make it clear that it's the plan that governs, regardless of

1  what happened prior.

2          THE COURT:  Yeah, I really don't subscribe to that

3  contract theory, but --

4          MR. PACITTI:  Really?

5          THE COURT:  Because I can confirm this without --

6  over everybody's objection and it binds --

7          MR. PACITTI:  Well, that's true.  A lot of

8  contact.

9          THE COURT:  -- who didn't vote and objected and

10  everything.  So this whole contract theory, I don't really

11  get.  I know there's case law out there on it, but --

12          MR. PACITTI:  Yeah.  Well, wouldn't the judicial

13  determination that's a final order be even more powerful --

14          THE COURT:  Right.

15          MR. PACITTI:  -- than a contract than

16  (indiscernible) --

17          THE COURT:  I got an order.  That's right, I

18  confirmed the plan.  It is what it is.  It binds people

19  under 1141.

20          And this whole contract thing, I don't get.  I've

21  never had to actually rule on it, but -- and the Third

22  Circuit may say it does -- I don't know -- but --

23          MR. PACITTI:  I thought so, too, that's why I was

24  surprised of your take on it.  But maybe it's just the title

25  of this paragraph "entire agreement," because I think the

1 | text of the sentence, I don't think is controversial.

2 |         THE COURT:  Well, this is the plan.

3 |         MR. PACITTI:  Right.

4 |         THE COURT:  This is what was submitted; in fact, I

5 | have to make a finding, I think, that there's only one

6 | plan --

7 |         MR. PACITTI:  Right.  Right.

8 |         THE COURT:  -- you know.  I mean, so it's kind

9 | of -- maybe it's superfluous, but I was just sort of curious

10 | and I don't know that I see this all the time.  I don't know

11 | that I think it matters, but --

12 |         MR. PACITTI:  I can change it to "entire" or I

13 | don't know what I would say.

14 |         THE COURT:  I mean, nothing else is in front of

15 | me.  I don't think anything else could be in front of me.  I

16 | think once I confirm the plan, it's the plan.  So I really --

17 |         MR. PACITTI:  But, instead of "entire agreement,"

18 | we just say "one plan" or "plan controls" or "control of

19 | plan."

20 |         THE COURT:  Yeah, sure.  You can say "the plan

21 | controls."

22 |         MR. PACITTI:  Great.  And, again, I'm assuming

23 | there's a companion provision in the plan that we'll look

24 | for.

25 |         THE COURT:  Thank you.

1            Okay.  I have a question on the liquidation

2    comparison, Exhibit A.

3            MR. PACITTI:  Got it.

4            THE COURT:  The trust note of $500,000, which is

5    in the Chapter 11 --

6            MR. PACITTI:  Right.

7            THE COURT:  -- analysis, but in the 7.

8            MR. PACITTI:  Right.  Because under the APA, it

9    only exists to the extent that there's a trust actually

10   formed.

11           THE COURT:  Okay.  So it wasn't part of the sale.

12   It was not that it came into the estate.

13           MR. PACITTI:  Correct.

14           THE COURT:  Okay.

15           MR. PACITTI:  That's correct.

16           THE COURT:  Okay.

17           MR. PACITTI:  The other monies did, Your Honor.

18   There was $750,000 that did come in.

19           THE COURT:  The seven fifty did, okay.

20           MR. PACITTI:  And then there was the wind-down

21   amount, as well, that also came in.

22           THE COURT:  That came in, okay.  Okay.  And this

23   is where the 53 million comes again in a 7.

24           And I thought that was interesting because if this

25   case converted tomorrow, does that mean the purchaser is not

1  responsible to pay the $53 million?

2          MR. PACITTI:  No, no, no Your Honor.  This is like

3  a maximum amount of a potential claim, I suspect.  I don't --

4  I guess I could have gone and tried to calculate how much has

5  been paid in the last three months and come up with a better

6  number, but for purposes of, I guess, not overlooking things,

7  we figured, put the full amount there.  But there is some

8  amount that is, I don't know what it could end up being.

9          THE COURT:  Okay.  Again, I'll have to think about

10 this.

11         MR. PACITTI:  Okay.

12         THE COURT:  And it may not be an issue.

13      (Pause)

14         THE COURT:  I was thinking, for purposes of

15 disclosure statement -- and maybe the disclosure already says

16 this, it probably does -- in connection with the discussion

17 of the sale, make sure that the -- no, there is no discussion

18 of that.

19         I would like in the discussion of the sale --

20         MR. PACITTI:  Yes.

21         THE COURT:  -- it looks like it's on page --

22         MR. PACITTI:  It's 15 of 51.

23         THE COURT:  -- 15, yes.  So, we say on March 27th,

24 the Court entered the sale order.  I would like a couple of

25 lines in here on the consideration.

1          MR. PACITTI:  Okay.

2          THE COURT:  So, I'm talking about the 500,000, the

3  seven fifty, the wind-down, the assumption, et cetera --

4          MR. PACITTI:  We'll do that, Your Honor.

5  Absolutely.

6          THE COURT:  -- I think that should go in there,

7  okay.

8          Okay.  Now I'm looking at the order.

9          MR. PACITTI:  Okay.  The redline or the --

10         THE COURT:  The redline.

11         MR. PACITTI:  Okay.

12         THE COURT:  Okay.  And I'm on page 12 of the

13  order --

14         MR. PACITTI:  Okay.

15         THE COURT:  -- the balloting tabulation

16  provisions, Sub (b).

17         MR. PACITTI:  I'm sorry, page 12?

18         THE COURT:  12, yes.

19         MR. PACITTI:  12 at the top or 12 at the bottom?

20         THE COURT:  12 at the bottom, I'm sorry.  This one

21  has page numbers on it.  Which one am I looking at?  Am I in

22  the redline?  Well, I think I am, but I'm stopped at 367-2.

23         MR. PACITTI:  Okay.

24         THE COURT:  And it's page 13 of 87.

25         MR. PACITTI:  Okay.  I'm there, Your Honor.  I'm

1  sorry.

2          THE COURT:  Okay.  Sub (b).

3          I'm okay with this provision, but I would like it

4  to be reflected, if the balloting agent has one of these

5  claims, that they permit at a dollar, I would like that

6  reflected on the --

7          MR. PACITTI:  On the report.

8          THE COURT:  -- report.

9          MR. PACITTI:  We'll do that, Your Honor.

10          THE COURT:  Okay.  In Sub (f), I don't understand

11  the use of the word -- the category "disputed" here, because

12  this is, as I'm reading it, this is a claim on a proof of

13  claim, which might reflect that it's contingent and it might

14  be unliquidated, but I have yet to see a proof of claim that

15  says, "my claim is disputed."

16          MR. PACITTI:  Okay.  So, I should take out

17  "disputed"?

18          THE COURT:  Yeah.  So, let's --

19          MR. PACITTI:  I should fix the typo that I see

20  here.

21          THE COURT:  -- get rid of the "disputed" and

22  "undisputed" parts of that.

23          MR. PACITTI:  And there's a typo.  Sorry.

24          THE COURT:  Okay.  Sub (k) on the next page,

25  again, I'm okay with this category, but I would like it

1 | reflected on the voting record declaration.

2 |       MR. PACITTI:  Will do, Your Honor.

3 |       THE COURT:  Okay.  And then Sub (m), it's this

4 | rebuttable presumption that someone who changes the vote has

5 | met the requirements.  And I opined on that in Imerys --

6 |       MR. PACITTI:  Okay.  I was not in this case,

7 | sorry.

8 |       THE COURT:  That's okay.

9 |       MR. PACITTI:  It's tough to follow everything,

10 | Your Honor.

11 |       THE COURT:  That's okay.

12 |       When I entered an order that did have a

13 | presumption and then it actually became an issue because I

14 | had changed votes not only before, but after the deadline.

15 | And I don't know that I actually said you can't do it, but I

16 | think what I said was that this is inconsistent with

17 | Rule 3018, which requires cause and a rebuttable presumption

18 | just skates over the cause requirement and I wasn't

19 | comfortable with that.

20 |       So, I haven't had it come up since and I still

21 | think I'm not comfortable with it.  If someone changes a

22 | vote, let's see what happens.

23 |       MR. PACITTI:  Yeah, but this is changing before

24 | the deadline?

25 |       THE COURT:  Yeah, but read Rule 3018, which I

1  hadn't focused on either, before _Imerys_.

2       (Pause)

3            THE COURT:  It's all of one sentence.

4            MR. PACITTI:  In (a)?

5            THE COURT:  In (a).

6            MR. PACITTI:  Accepted or rejected in accordance

7  within the time fixed by the Court.  So it's still within the

8  time fixed by the Court.

9            THE COURT:  But there's for-cause shown.

10           MR. PACITTI:  Oh, where are you reading?  I'm

11 sorry.

12           THE COURT:  In 3018(a):  For cause shown, the

13 court after notice and hearing may permit a creditor or

14 equity security holder to change or withdraw an acceptance or

15 rejection.

16           MR. PACITTI:  And you're saying because that

17 doesn't say -- does that refer to a claim that was filed

18 after the time period or before?

19           THE COURT:  It doesn't.  It's not temporally

20 limited.

21           You know, I think there's a reason that this

22 provision is in here, which is to make sure that there's --

23           MR. PACITTI:  I've got to tell you, I've never --

24           THE COURT:  -- an innocent basis for the change in

25 the vote.  And in my _Imerys_ decision, which I do think is

1   reported -- I'm not saying you should be familiar with it,

2   but you can look it up.

3           MR. PACITTI:  Well, Your Honor, clearly, I have to

4   now.

5           THE COURT:  No, I don't expect you to be familiar

6   with every decision I've written.  I don't even remember them

7   all, so --

8           MR. PACITTI:  I'm in no way suggesting that I

9   don't read every one of yours, Your Honor.  I just did not

10  read this one.

11          THE COURT:  Oh, I'm sure you do, at night, you

12  know --

13          MR. PACITTI:  Clearly, on the beach.

14          THE COURT:  -- exactly.  Yes.

15          There, you know, like, it's okay to change your

16  vote if you misunderstood the plan and then it was explained

17  to you and now you understand it, so you were mistaken --

18  that's okay -- but there are times when it's not okay to

19  change your vote.  And I didn't have to focus on this

20  provision, as I said, before Imerys.  3018 doesn't seem to

21  have a temporal requirement.  I certainly might be more

22  lenient in permitting it if it's ahead of time and during

23  that period.  It makes some sense, but I haven't had to think

24  about it.

25          So I'd rather not build into the requirement

1  something that I haven't been able to consider, but I had an

2  issue with in the past in certain circumstances.  It doesn't

3  mean -- I don't know that it's going to be an issue here.

4  And if it is, we can deal with it.  It doesn't mean that I

5  won't let the vote be changed; it just means that I'd rather

6  have that reflected in the record and then we'll deal with it

7  if it's an issue.

8          MR. PACITTI:  Okay.

9          THE COURT:  And I should go back and read my

10  Imerys decision.

11          MR. PACITTI:  So, I guess if someone wants to

12  change their vote, we need to do something is what you're

13  telling me --

14          THE COURT:  Yes.

15          MR. PACITTI:  -- to get it in front of you.

16          THE COURT:  Yeah.

17          MR. PACITTI:  I've got to tell you, I would be

18  shocked if not every voting procedures has this paragraph in

19  it.

20          THE COURT:  I will say that, since I wrote my

21  decision, it would have caught my eye, and this is the first

22  time I'm seeing it.

23          Again, I'm not -- I wouldn't be surprised if there

24  are many, many that do --

25          MR. PACITTI:  Yeah.

 1          THE COURT:  -- because I didn't focus on it in
 2  Imerys.
 3          MR. PACITTI:  Well, I don't think it's going to be
 4  as big an issue in this one.
 5          THE COURT:  I think --
 6          MR. PACITTI:  I think, at the end of the day,
 7  there's very few folks that --
 8          THE COURT:  That actually --
 9          MR. PACITTI:  -- have the ability to even vote on
10  this plan.  So --
11          THE COURT:  So that's what I'm saying, we'll deal
12  with it if it's an issue.  I'm not saying I won't permit
13  someone to change a vote, I'm just saying I don't want to
14  build this in when I haven't had the chance to think about it
15  more since Imerys.
16          MR. PACITTI:  Okay.  So should we just -- are you
17  suggesting we strike that?
18          THE COURT:  You just strike it.  3018 is what it is
19  and we'll deal with it if it becomes an issue.
20          MR. PACITTI:  Okay.
21          THE COURT:  And that does go to 22, it is the same
22  concept.  So it's kind of interesting, actually --
23          MR. PACITTI:  I know that that's in every order.
24          THE COURT:  I'm sure it is.
25          MR. PACITTI:  I'm just trying to think from the

1  balloting agent's perspective, right?  Ballots just come in

2  and they're just counting, right?  So they're taking -- they

3  need instruction of which one applies.  Like no one may have

4  reached out to anyone, this creditor just filed two and

5  nobody -- didn't reach out to anyone --

6          THE COURT:  It's possible.

7          MR. PACITTI:  -- so what are they supposed to do?

8  Like we won't know until -- if no one reaches out to the

9  debtor about it and they filed two ballots and then there's a

10  voting report, there's got to be some rule that governs that.

11    (Pause)

12          MR. PACITTI:  Rule, small R, not capital R.

13          THE COURT:  I would like it reflected on the voting

14  record and then I'll deal with it.  I think that's what they

15  do.  If there are votes that have been changed, maybe they

16  report it -- they report that and we determine whether we

17  count them.  That would be consistent with Rule 3018.

18          MR. PACITTI:  Okay, we'll make that change, Your

19  Honor.

20    (Pause)

21          THE COURT:  Paragraph 26 on the next page, I note

22  there's still a reference to the creditors committee.  So --

23          MR. PACITTI:  Oh, got it.

24          THE COURT:  -- you can clean that up.  And then --

25          MR. PACITTI:  Oh, 29 has the same reference.

1  Sorry.

2          THE COURT:  Okay.  Yeah, I didn't catch it there.

3  And then 27, you can request that.  We can say that the -- I

4  think that's a confirmation issue.

5          MR. PACITTI:  Okay.

6          THE COURT:  So you can say we've requested that

7  and, if no one objects, I'll probably be okay with that, but

8  I don't want to make that finding here.

9      (Pause)

10          THE COURT:  Okay, now I'm looking at the ballots.

11  And, if I'm reading the plan correctly, anybody can opt out

12  or object.

13          MR. PACITTI:  Correct.

14          THE COURT:  Whether you vote to accept or you

15  don't, anybody can opt out.

16          MR. PACITTI:  That's correct.

17          THE COURT:  But I would like it on the front page

18  of the ballots to indicate that.  So this is the ballot for

19  accepting or rejecting the plan and for opting out of the

20  releases, or something.  I mean, I think it needs to be on

21  the front page.

22          MR. PACITTI:  So in the title, actually.

23          THE COURT:  In the title, somewhere --

24          MR. PACITTI:  Okay.

25          THE COURT:  -- yeah, it's got to be on the front

1  page.

2      (Pause)

3          THE COURT:  And then on your notice that goes to

4  the non-accepting classes --

5          MR. PACITTI:  Yeah, do the same thing in the title

6  there.

7          THE COURT:  Yeah, something right there too about

8  the ability to object to the releases or something right on

9  the front page there, even though I realize there are --

10 there's a lot of release copied right into all this.

11         MR. PACITTI:  Yeah.  We'll add it in the title to

12 both.

13         THE COURT:  Yeah, okay.  So those were all the

14 questions and the comments that I had.  And I would have been

15 prepared to approve the disclosure statement as containing

16 information adequate -- sufficient for those entitled to vote

17 to make an informed decision on the plan with the changes

18 that we're making, but -- so let's talk again about you may

19 have --

20         MR. PACITTI:  Yeah, before we get to that, Your

21 Honor --

22         THE COURT:  Oh.

23         MR. PACITTI:  -- I know Mr. Schepacarter may have

24 to go to another hearing, but he just wanted to make sure

25 that he's clearly reserving rights for confirmation.

1    THE COURT:  Of course he is.

2    MR. PACITTI:  Yeah.

3    MR. SCHEPACARTER:  Correct.  Just briefly.

4    THE COURT:  Yes.

5    MR. SCHEPACARTER:  And I'm losing my voice, of

6  course, I have a hearing, a contested hearing.  I'll be using

7  sign language.  For the record, Richard Schepacarter for the

8  United States Trustee.

9    We've worked through a lot of issues with Mr.

10  Pacitti and we appreciate him, his and Mr. Yurkewicz's

11  cooperation on that regard, but having said that, we still

12  have some confirmation issues regarding the releases and we

13  reserve the rights to -- all rights in case of confirmation,

14  including, but not limited to, the releases.

15    So, thank you.  And, if I may, can I be excused?

16    THE COURT:  You may.

17    MR. SCHEPACARTER:  Thank you, Your Honor.

18    THE COURT:  Is there anyone -- I should have asked,

19  is there anyone else who wishes to be heard?

20    (No verbal response)

21    THE COURT:  Okay, I hear no one.  So now, I was

22  going to say, I would be prepared to approve this.

23    Let's talk about, I guess, resolution, timing, and

24  what you think --

25    MR. PACITTI:  Well, I think it's a this-week thing,

1  Your Honor, in terms of getting -- because, clearly, we have

2  to make changes to the documents coming out of this hearing.

3  So that's going to take beyond today only because I have to

4  go to Judge Stickles after this and I'll be there --

5          THE COURT:  All day --

6          MR. PACITTI:  -- probably the balance of the day.

7          THE COURT:  -- as I understand it.

8          MR. PACITTI:  Yes.

9          THE COURT:  Yes.

10         MR. PACITTI:  So this is likely a tomorrow thing,

11  at the earliest.  And then in terms of, if we can get

12  something in -- what is today?  Today is Wednesday, Thursday

13  -- if we had an order entered the earliest Friday, that puts

14  us at June 9, we would probably need through until Monday, I

15  would think, to send packages out for sure.  So that would be

16  -- 10th, 11th -- that would be 12th.  Maybe if we give June

17  13th as a little bit of buffer.

18         And then we need 28 days, right?

19         THE COURT:  I think the timing that we had on the

20  18th of July I think works fine.  That's like five weeks out.

21  But I guess more importantly the question I had is, if

22  there's some change to the plan because there's some

23  resolution with whoever you're speaking with, how do you

24  think that's going to impact things?

25         MR. PACITTI:  I really think it will be a couple of

1  minor tweaks in the plan and disclosure statement.

2         THE COURT:  Okay.

3         MR. PACITTI:  Very minor, but --

4         THE COURT:  So nothing that needs to go back out on

5  a full disclosure --

6         MR. PACITTI:  No, no --

7         THE COURT:  -- statement thing?

8         MR. PACITTI:  -- no, Your Honor.

9         THE COURT:  Okay.

10        MR. PACITTI:  It's literally -- and I don't want to

11 point to the provisions because it --

12        THE COURT:  That's okay.

13        MR. PACITTI:  -- I think it's not -- it's not baked

14 yet, but, literally, it would be probably two sentences --

15        THE COURT:  Okay.

16        MR. PACITTI:  -- if that.

17        THE COURT:  So then I think you can do that under

18 certification of counsel with the redline showing those

19 changes and the changes that are responsive to what we did

20 today, and then maybe indicating in the certification where

21 the new changes are that are with the -- that weren't

22 discussed today, so we can easily find them, and I'm fine

23 with that.

24        MR. PACITTI:  Okay, I appreciate that.

25        THE COURT:  If I have some issue when I see it,

1  I'll let you know, but I don't expect from what you're

2  telling me that I will.

3          MR. PACITTI:  And I have previewed it with Mr.

4  Schepacarter and he was fine --

5          THE COURT:  Okay.

6          MR. PACITTI:  -- going that way.

7          THE COURT:  Then I'm sure I will be too.

8          So doesn't that give us enough time?

9          MR. PACITTI:  I'm trying to do the math.

10          THE COURT:  I'm not the best on the time counter.

11      (Pause)

12          MR. PACITTI:  So it's 28 days for objection, right?

13          THE COURT:  Oh, is it for objection or for the

14  hearing?  It's for objection?

15          MR. PACITTI:  Isn't it for objection?  I always

16  thought it was for objection.

17          THE COURT:  Okay, so I'm not the best.

18          MR. YURKEWICZ:  Objection deadline, yes.

19          MR. PACITTI:  Yeah.  So we need 35 days for the

20  hearing.

21      (Pause)

22          THE COURT:  Okay, that would put the objection

23  deadline, if I counted correctly, at the 10th of July.

24          MR. PACITTI:  Right.

25          THE COURT:  Is there a date for the hearing that it

1  has to be so many days or is it just the objection deadline?

2         MR. PACITTI:  It's just the objection deadline.  So

3  if we got everything in -- I'm just assuming, if we got

4  everything in to Your Honor by Friday and say we got an order

5  Monday, we solicit it, I'm saying, outside date, we send

6  packages out on the 14th.  So that's 16.  That would be the

7  12th for an objection deadline, that would be 28 days --

8         THE COURT:  Okay.

9         MR. PACITTI:  -- so that would mean the earliest

10  confirmation hearing would be the 19th because that would be

11  a week before the 19th.

12         THE COURT:  The 19th in the afternoon could work

13  for me.  I've got something in the morning, but --

14         MR. PACITTI:  I'm double checking my calendar as

15  well.

16         THE COURT:  I think that may just -- that may be a

17  pretrial conference.  I don't know what that is.

18         The 21st would be okay, that's Friday.

19         MR. PACITTI:  Either of those work for me, Your

20  Honor.  I'm not sure if anyone else wants to weigh in if they

21  have an issue with them.

22         MR. SCHARTZ:  Your Honor, Brian Schartz from

23  Kirkland.  Did I hear the 19th of July does not work for Your

24  Honor?

25         THE COURT:  It might in the afternoon.  I'm trying

1  to remember -- I have a matter at 10:00 and I'm trying to

2  remember what that is.  I know I'm going to trial with them

3  in August and I'm trying to remember what that is.  So that's

4  possible.

5          The 21st is totally open, so that could clearly

6  work.

7          MR. SCHARTZ:  I think -- Dom, I think the 19th

8  would work.  I can't do the 21st, unfortunately.  I have

9  another hearing in front of Judge Dorsey, a confirmation

10 hearing on July 18th.  So if we could slot you in in the

11 afternoon.  I don't expect there's going to be fireworks at

12 this confirmation hearing.

13         MR. PACITTI:  No, I don't think so either.

14         THE COURT:  Okay, let's schedule it for 2 o'clock

15 on the 19th.

16     (Pause)

17         THE COURT:  Okay, yeah, we're going to schedule you

18 in for 2 o'clock on the 19th.

19         MR. PACITTI:  Okay, great.  Thank you, Your Honor.

20         MR. SCHARTZ:  Thank you so much.

21         THE COURT:  And --

22         MR. PACITTI:  And we'll do the 12th as the

23 objection deadline?

24         THE COURT:  Yes.

25     (Pause)

1  MR. PACITTI:  And then we'll back off from those

2  dates and fill in the other dates in the notices and orders.

3  THE COURT:  Right.  And are you -- I did notice

4  that there was a date for filing objections to claims in

5  June, I want to say the 10th -- no -- the 17th, maybe?  I did

6  notice that.  Are you -- do you have plans to file objections

7  to claims?

8  MR. PACITTI:  Not right now, Your Honor, no.

9  THE COURT:  Okay.  So 3018, at least for that, is

10  probably not an issue.

11  MR. PACITTI:  Right.

12  THE COURT:  Okay.

13    (Pause)

14  MR. PACITTI:  We'll double check, but I don't think

15  so, the last time we checked the register.

16  THE COURT:  Okay.  Then is there anything else we

17  have to do this morning?

18  MR. PACITTI:  I think that's it -- oh, Your Honor,

19  there is one housekeeping.  I know that the committee is

20  going to be filing a final -- the committee professionals

21  will be filing a final fee application, so I can reach out to

22  chambers, if you'd like, we'd like to get a date for them to

23  tee up their fee applications.

24  THE COURT:  Just reach out.

25  MR. PACITTI:  We'll do that.

1          THE COURT:  Anything else?

2          MR. PACITTI:  I think that's it, Your Honor.

3          THE COURT:  Okay.

4          MR. PACITTI:  We appreciate your time.

5          THE COURT:  Thank you very much, Counsel.

6          MR. PACITTI:  Thank you.

7          THE COURT:  We're adjourned.

8       (Proceedings concluded at 10:54 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ William J. Garling               June 7, 2023

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Tracey J. Williams              June 7, 2023

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable


/s/ Mary Zajaczkowski               June 7, 2023

Mary Zajaczkowski, CET-531

Certified Court Transcriptionist

For Reliable