## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PERFORMANCE POWERSPORTS GROUP INVESTORS, LLC, *et al.*,[1] | Case No. 23-10047 (LSS) |
| Debtors. | (Jointly Administered) |

**DISCLOSURE STATEMENT WITH RESPECT TO DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**JUNE 12, 2023**

KLEHR HARRISON HARVEY BRANZBURG LLP
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email:    dpacitti@klehr.com
Email:    myurkewicz@klehr.com
Email:    sveghte@klehr.com

*Counsel for the Debtors and Debtors-in-Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT RELATES TO THE JOINT PLAN OF LIQUIDATION OF PERFORMANCE POWERSPORTS GROUP INVESTOR, LLC AND ITS DEBTOR AFFILIATES, AND IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION (THE "**SEC**"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF OR CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN

THE CHAPTER 11 CASES OF THE DEBTORS, AND FINANCIAL INFORMATION. THE DEBTORS ARE SOLELY RESPONSIBLE FOR ALL STATEMENTS IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS UNLESS OTHERWISE NOTED. ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH INFORMATION IS QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, SUCH DOCUMENTS OR ANY STATUTORY PROVISIONS THAT MAY BE REFERENCED THEREIN. THE DEBTORS BELIEVE THAT THE INFORMATION CONTAINED HEREIN IS CORRECT BUT MAKE NO REPRESENTATION WITH RESPECT TO ITS ACCURACY OR COMPLETENESS.

10434317.v18

## 1. INTRODUCTION

### 1.1 *Purpose of Disclosure Statement.*

Performance Powersports Group Investor, LLC and its Debtor Affiliates, (collectively, the "**Debtors**" or the "**Company**"), provide this Disclosure Statement (the "**Disclosure Statement**") to the Office of the United States Trustee and to all of the Debtors' known claimholders and interestholders pursuant to section 1125(b) of Title 11 of the United States Code (the "**Bankruptcy Code**") for the purpose of soliciting acceptances of the *Debtors, Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended or supplemented from time to time, the "**Plan**"), which has been filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). By Order dated June [●], 2023, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under section 1125 of the Bankruptcy Code.

The Debtors strongly urge you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtors' history and operations. The Disclosure Statement also provides information as to alternatives to the Plan. A copy of the Plan accompanies this Disclosure Statement as a separate document.

**PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS AND FROM MOTIONS AND OTHER PAPERS FILED WITH THE BANKRUPTCY COURT BY THE DEBTORS AND OTHER PARTIES-IN-INTEREST. ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THEY ARE UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.**

Unless otherwise defined herein, capitalized terms contained in this Disclosure Statement shall have the same meanings as ascribed to them in the Plan. All capitalized terms used in this Disclosure Statement and not defined herein or in the Plan, but that are defined in the Bankruptcy Code, shall have the respective meanings ascribed to them in the Bankruptcy Code. All capitalized terms used in this Disclosure Statement and not defined herein, in the Plan, or in the Bankruptcy Code, but that are defined in the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the respective meanings ascribed to them in the Bankruptcy Rules. Holders of Claims or Interests receiving this Disclosure Statement should carefully review the Plan in conjunction with their review of this Disclosure Statement.

**PLEASE REVIEW THE PLAN IN ITS ENTIRETY IN DETAIL. NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THEIR ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.**

The purpose of this Disclosure Statement is to provide claimholders and interestholders, to the extent they are entitled to vote, with information determined by the Bankruptcy Court to be adequate to enable them to make an informed decision to vote to accept or reject the Plan.

## 1.2    *Brief Summary of the Plan*

The Plan provides for the wind down of the Debtors' affairs, continued liquidation of the Debtors' remaining assets to Cash, and the distribution of the net proceeds realized therefrom, in addition to Cash on hand on the Effective Date of the Plan, to holders of Allowed Claims and Interests as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of Intercompany Claims and their votes are not being solicited as each is deemed to reject the Plan. The Plan contemplates the appointment of a Litigation Trustee, selected by the Debtors and Kinderhook, to, among other things, receive the Litigation Trust Assets, commence, prosecute or settle the Retained Causes of Action, implement the terms of the Plan delegated to the Litigation Trust, and make Distributions to holders of Beneficial Trust Interests in accordance with the Litigation Trust Agreement. The Plan also contemplates the appointment of a Plan Administrator to, among other things, establish and maintain such operating, reserve, and trust accounts as are necessary and appropriate to carry out the terms of the Plan delegated to Plan Administrator, and make Distributions to holders of Allowed Claims and Interests (other than Beneficial Trust Interests) in accordance with the Plan.

## 1.3    *Confirmation of Plan.*

1.3.1    *Requirements*. The requirements for Confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

(a)    **Acceptance by Impaired Classes.** Except to the extent that the cramdown provisions of section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

(b)    **Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

(c)    **"Best Interest" Test.** The Bankruptcy Court must find that the Plan is in the "best interest" of all claimholders. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against the Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Debtors' property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

(d)    **"Cramdown" Provisions.** Under the circumstances which are set forth in detail in section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of Insiders (as defined in the Bankruptcy Code), if the Plan is fair and equitable and does not discriminate unfairly against such

non-accepting Classes.  The Debtors will invoke the "cramdown" provisions of section 1129(b) of the Bankruptcy Code as to holders of Interests since under the Plan, the Class in which Interests reside are deemed to have rejected the Plan.  Should any voting Class fail to accept the Plan, the Debtors will also invoke the "cramdown" provision as to such Class.

1.3.2    *Procedure.*  To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "**Confirmation Hearing**").  The Bankruptcy Court has set **July 24, 2023 at 2:00 p.m. Eastern Time**, for the Confirmation Hearing.

1.3.3    *Objection to Confirmation.*    Any party-in-interest may object to Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection.  The Bankruptcy Court has set **July 17, 2023 at 4:00 p.m. Eastern Time**, as the deadline for filing and serving upon Debtors' counsel and the United States Trustee's Office objections to Confirmation of the Plan.  Objections to Confirmation must be filed with the Bankruptcy Court at the following address:

> U.S. Bankruptcy Court for the District of Delaware
> 824 North Market Street
> Wilmington, Delaware 19801

with a copy served upon counsel to the Debtors:

> Domenic E. Pacitti, Esquire (dpacitti@klehr.com)
> Michael Yurkewicz, Esquire (myurkewicz@klehr.com)
> Sally E. Veghte (sveghte@klehr.com)
> Klehr Harrison Harvey Branzburg LLP
> 919 N. Market Street, Suite 1000
> Wilmington, DE 19801

and a copy served upon the Office of the United States Trustee:

> United States Trustee
> Attn: Richard Schepacarter, Esq.
> (Richard.Schepacarter@usdoj.gov)
> 844 King Street, Room 2207
> Lockbox 35
> Wilmington, DE 19801

1.3.4    *Effect of Confirmation and Effective Date*.  Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed to have irrevocably transferred all Litigation Trust Assets, including, without limitation, the Retained Causes of Action and any proceeds therefrom, to the Litigation Trust free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions, except those expressly provided in the Plan, and such Assets of the Estate shall become the Litigation Trust Assets.  The Litigation Trust Assets expressly exclude: (a) all assets, including claims and causes of actions, transferred or assigned to the Purchaser pursuant to the Sale Order and the Asset

Purchase Agreement; (b) the Other Claims Reserve, except that any excess amounts in the Other Claims Reserve after the payment in full or other satisfaction of all Allowed Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims shall become Litigation Trust Assets and be treated as such under the Plan and the Liquidation Trust Agreement; (c) the equity interests in Performance Powersports Group Investor, LLC; and (d) the Professional Fee Claims Reserve, except that any excess amounts in the Professional Fee Claims Reserve after payment in full or other satisfaction of Allowed Professional Fee Claims, shall become Litigation Trust Assets. Also on the Effective Date, the Plan Administrator shall be appointed for the purposes of, among other things, administering the Assets that are not Litigation Trust Assets and to authorize and make, through the Distribution Agent, distribution to holders of Allowed Claims provided for or contemplated in the Plan (other than distributions of Litigation Trust Assets on account of Beneficial Trust Assets). Confirmation serves to make the Plan binding upon the Debtors, all Creditors, interestholders and other parties-in-interest, regardless of whether they cast a ballot ("**Ballot**") to accept or reject the Plan.

    1.4    ***Voting on the Plan.***

    1.4.1    ***Impaired Claims or Interest***. Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims or Interests in Classes "Impaired" by the Plan and receiving distributions or other treatment under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Interests may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. Holders of Claims or Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. Holders of Claims or Interests in any Class that will not receive any payment or distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

    1.4.2    ***Eligibility***. In order to vote on the Plan, a holders of Claims or Interests must have timely filed or been assigned a timely filed proof of Claim, unless its Claim is scheduled by the Debtors and is not identified as disputed, unliquidated or contingent on the Debtors' Schedules of Assets and Liabilities (the "**Schedules**"), and an objection or request for estimation of such Claim or Interest has not been filed on or before the Solicitation Date as set forth in the Disclosure Statement Approval Order. Holders of Claims or Interests having a Claim or Interest in more than one Class may vote in each Class in which they hold a separate Claim or Interest by casting a Ballot in each Class.

    1.4.3    ***Binding Effect of Confirmed Plan***. Whether a holder of Claims or Interests votes on the Plan or not, such Person will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a holder of Claims or Interests will not be included in the vote: (i) for purposes of accepting or rejecting the Plan; or (ii) for purposes of determining the number of Persons voting on the Plan.

    1.4.4    ***Procedure***. Members of Classes 4, 5, 7, and 8 may vote to accept or reject the Plan. Classes 1, 2, and 3 are not Impaired by the Plan and are deemed, therefore, to accept the Plan. Class 6 is Impaired by the Plan and is deemed to have rejected the Plan because the claimholders and interestholders in Classes 6 will receive no distributions under the Plan. In order

for your vote to count, you must complete, date, sign and properly mail the enclosed Ballot (please note that envelopes have been included with the Ballot) to:

if by regular mail or by overnight delivery:

Performance Powersports Group Investor, LLC, *et al.*
Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

if by overnight delivery:

Performance Powersports Group Investor, LLC, *et al.*
Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

through the online balloting portal on the
Debtors' case website maintained by the Voting
and Balloting Agent:

1. Visit https://omniagentsolutions.com/PerformancePowersports-Ballots
2. Click on the "E-Ballot" link of the Voting and Balloting Agent's website.
3. Follow the directions to submit your Ballot.

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by mail or overnight delivery by Stretto (the "**Balloting Agent**") at the address set forth above on or before **4:00 p.m. Eastern Time on July 17, 2023** (the "**Voting Deadline**"). Once you have delivered your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing.

The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

1.      any Ballot received after the Voting Deadline;

2.      any Ballot that is illegible or contains insufficient information to permit the identification of the holders of Claim or Interest;

3.      any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

4.      any Ballot cast for a Claim or Interest identified in the Schedules as unliquidated, contingent, or disputed for which no proof of claim was timely filed;

8

5.      any Ballot cast for a Claim or Interest for which an objection or request for estimation has been filed on or before the Solicitation Date as set forth in the Disclosure Statement Approval Order;

6.      any unsigned Ballot or Ballot that does not contain an original signature;

7.      any Ballot transmitted to the Balloting Agent by facsimile or other means not specifically approved in the Disclosure Statement Approval Order;

8.      any Ballot that is otherwise properly completed, executed, and timely returned, but does not indicate a vote to accept or reject the Plan or that indicates a vote to both accept and reject the Plan.

The following types of Ballots <u>will be</u> counted in determining whether the Plan has been accepted or rejected: whenever a creditor casts more than one Ballot voting the same Claim(s) or Interest(s) before the Voting Deadline, the last Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent, and thus, to supersede any prior Ballots.

### 1.5      *Acceptance of the Plan.*

1.5.1    ***Claimholder Acceptance***.    As a holders of a Claim or Interest, your acceptance of the Plan is important.  In order for the Plan to be accepted by an Impaired Class, a majority in number and two-thirds in dollar amount of the Claims or Interests voting (of each Impaired Class) must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code.  At least one impaired Class of Creditors, excluding the votes of Insiders, must actually vote to accept the Plan.  You are urged to complete, date, sign and promptly mail the enclosed Ballot.  Please be sure to complete the Ballot properly and legibly identify the exact amount of your Claim or Interest and the name of the claimholder.

1.5.2    ***Cramdown Election***.    If all Classes do not accept the Plan, but at least one Impaired Class votes to accept the Plan, excluding the votes of Insiders, the Debtors may attempt to invoke the "cramdown" provisions of the Bankruptcy Code.  Cramdown may be an available remedy, because the Debtors believe that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

### 1.6      *Sources of Information.*

The information contained in this Disclosure Statement has been obtained from the Debtors' books and records and from motions and other papers filed with the Bankruptcy Court by the Debtors and other parties-in-interest.  Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof.  Any value given as to the Assets of the Debtors is based upon an estimation of such value.  You are strongly urged to consult with your financial and legal advisors to understand fully the Plan and Disclosure Statement.

10434317.v18

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits. If any conflicts exist between the Plan and Disclosure Statement, the terms of the Plan shall control.

### 1.7    *Additional Information.*

Should you have any questions regarding the Plan or this Disclosure Statement, or require clarification of any information presented herein, please contact:

> Domenic E. Pacitti, Esquire (dpacitti@klehr.com)
> Michael Yurkewicz, Esquire (myurkewicz@klehr.com)
> Sally E. Veghte (sveghte@klehr.com)
> Klehr Harrison Harvey Branzburg LLP
> 919 N. Market Street, Suite 1000
> Wilmington, DE 19801
> Telephone: (302) 426-1189

## 2.    THE DEBTORS

### 2.1    *Description of the Debtors.*

On January 16, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Each Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 18, 2023, the Bankruptcy Court entered an order providing for the joint administration of the Debtors' chapter 11 cases.

The Debtors are in the business of adventure, selling dirt bikes, go-karts, ATVs, golf carts, and the like to retailers throughout the United States. This business is seasonal in nature, and its products are primarily purchased by consumers around the holidays. To capitalize on this demand, the Debtors purchase vehicles that it schedules for delivery in advance of the holidays.

The Debtors' roots can be traced back to Rich Godfrey and Associates Inc., d/b/a Coleman Powersports (collectively, with its subsidiaries, "**Godfrey & Associates**"), which was founded by Mr. Rich Godfrey in 2010. Godfrey & Associates was a lower-cost producer of high-quality, light-to-middle weight powersports equipment in the categories of utility task vehicles ("**UTV**"), all-terrain vehicles ("**ATVs**"), go-karts, and minibikes. Godfrey & Associates sold products through prominent national and regional retail resellers such as Walmart, Tractor Supply Co., Dick's Sporting Goods, Camping World, Lowes, and Theisen's Home, Farm and Auto.

In 2020, Godfrey & Associates maintained forty-nine (49) employees, with headquarters and assembly operations in Tempe, Arizona. In March 2021, Godfrey & Associates retained Hudson Capital Advisors BD, LLC ("**Hudson Capital Advisors**") to market a potential acquisition of, or investment in, Godfrey & Associates. Hudson Capital Advisors prepared a Confidential Information Memorandum and began to market the business.

Hudson Capital Advisors approached Kinderhook Industries, Inc. ("**Kinderhook**") with the potential transaction opportunity in approximately August 2021. Kinderhook conducted diligence on the potential transaction and ultimately submitted a letter of intent to Rich Godfrey. Soon thereafter, Kinderhook and Rich Godfrey began negotiating a definitive agreement. The acquisition of the Company by Kinderhook was effectuated pursuant to a Stock Purchase and Contribution Agreement (the "**Purchase Agreement**") that closed on October 8, 2021 (the "**2021 Transaction**"). The Purchase Agreement involved four parties: Performance Powersports Group Investor, LLC, Performance Powersports Group Purchaser, Inc., Rich Godfrey & Associates, Inc., and Rich Godfrey.

The 2021 Transaction closed for a total purchase price of $112,000,000, inclusive of fees, expenses, and cash-to-balance-sheet amounts. That purchase price was comprised of $47,000,000 in equity contributions, $45,000,000 in debt financing, and a $20,000,000 rollover amount from the cash consideration otherwise paid to Rich Godfrey. The $47,000,000 equity contribution was from two sources. First, two Kinderhook funds, Kinderhook Capital Fund VI, L.P. and Kinderhook Capital Fund VI-B, L.P., contributed $45,000,000 in equity. Second, certain investors associated with the debt financing described below contributed an additional $2,000,000 in equity. Twin Brook Capital Partners, LLC (the "**Prepetition Agent**" or "**Twin Brook**") acted as agent for the various lenders.

## 2.2    *The Debtors' Operations and Financial Difficulties.*

Due to the seasonal demand for product, the Debtors ordered all-terrain and utility vehicles from one of its primary vendors prior to the fourth quarter of 2021 in anticipation of the holiday season. Those vehicles were not, however, delivered until the beginning of January 2022. As a result, the Debtors could not capitalize on the 2021 holiday season and suffered losses from their inability to sell its vehicles when demand was high.

The Debtors' financial distress was further compounded by delays and costs in shipping caused by supply chain disruption felt across the country, increased costs associated with freight, shipping, demurrage and warehousing of inventory deliveries, and a "post-pandemic" reduction in demand from customers. Throughout the second half of 2022, the Company faced continuing pressure from the vendors that it no longer used as suppliers of product. These vendors ultimately initiated legal proceedings in December 2021. And, despite outreach from the Company seeking a business solution to their dispute, these vendors also threatened an involuntary bankruptcy filing.

## 2.3    *Corporate and Capital Structure.*

The Debtors are portfolio companies of Kinderhook's affiliates. Performance Powersports Group Investor, LLC owns 100% of the interests in Performance Powersports Group Holdings, Inc., which itself owns 100% of the interests in Performance Powersports Group Purchaser, Inc., which itself owns 100% of the interests in Performance Powersports Group, Inc.

As of the Petition Date, the Debtors' capital structure consists of funded-debt obligations in the aggregate principal amount of approximately $52.0 million outstanding under the Prepetition Credit Agreement and unsecured trade debt of approximately $70 million but excluding lease obligations and lease rejection claims, if any. The unsecured trade debt includes two prior trade

claims of vendors no longer doing business with the Company: (a) Chongqing Huansong Industries (Group) Co., Ltd. and its partner company in Hai Phong City, Vietnam (collectively, "**Huansong**") alleges it is owed approximately $60 million and (b) Hisun ("**Hisun USA**") alleges it is owed $3.5 million), each subject to offsets, affirmative defenses and claims. The Debtors' obligations under the Prepetition Loan Documents with Twin Brook are secured by liens on substantially all of the Debtors' assets and proceeds thereof.

### 2.4    *The Debtors' Debt Structure.*

Pursuant to (i) that certain Credit Agreement dated as of October 8, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement") by and among (a) Performance Powersports Group Purchaser, Inc. (the "Borrower"), (b) Twin Brook, as administrative agent, and (c) the financial institutions party thereto from time to time (in such capacity, the "Prepetition Lenders"; together with the Prepetition Agent, collectively, the "Prepetition Secured Parties"), and (ii) that certain Guaranty and Collateral Agreement dated as of October 8, 2021 (the "Prepetition Security Agreement"; together with the Prepetition Credit Agreement, the Loan Documents (as defined in the Prepetition Credit Agreement) and any other agreements or documents executed or delivered in connection therewith, each as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Documents") by and among the Borrower, Performance Powersports Group Holdings, Inc. ("Holdings"), and Performance Powersports Group, Inc. (together with Holdings, the "Guarantors"; collectively with the Borrower, the "Prepetition Obligors"), in favor of the Prepetition Agent; the Prepetition Lenders agreed to provide certain credit facilities and other financial accommodations to the Borrower.

As set forth in the Prepetition Loan Documents, the Prepetition Obligors granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, a first-priority security interest in and continuing lien (the "Prepetition Liens") on certain "Collateral" (as defined in the Prepetition Loan Documents), including all real and personal property, other than certain specified "Excluded Property" (as defined in the Prepetition Loan Documents) of the Prepetition Obligors (collectively, as such, the "Prepetition Collateral"), as perfected by the filing of various UCC-1 financing statements naming the Prepetition Obligors as debtors and the Prepetition Agent as secured party in the appropriate state recording offices.

### 2.4.1    *First Amended Prepetition Secured Credit Facility.*

On March 2, 2022, based on the Company's financial condition and the depletion of availability under the $7.5 million revolver under the Prepetition Credit Agreement, and in an effort to obtain further capital to take an advantage of a prospective business opportunity, the parties entered into that certain First Amendment to Credit Agreement pursuant to which: (1) certain Prepetition Lenders agreed to provide additional term loans to the Company to repay the outstanding Revolving Loans in an aggregate principal amount equal to $4,826,500 and to pay related fees, costs and expenses incurred by the Prepetition Obligors; and (2) the Term Loan total amount then outstanding was increased from $45,000,000 to $50,000,000.

### 2.4.2    *Second Amended Prepetition Secured Credit Facility.*

Subsequently, the Company notified the Prepetition Agent and the Prepetition Lenders that certain Defaults and/or Events of Default had arisen pursuant to various provisions of the Prepetition Credit Agreement for, inter alia, Borrower's failure to comply with the mandatory prepayment set forth in Section 2.10.2(c) of the Prepetition Credit Agreement and Borrower's failure to timely comply with requirements to deliver audited financial statements for 2021 and financial projections for 2022. As a result, on September 30, 2022, the parties entered into that certain Second Amendment to Credit Agreement and Limited Waiver pursuant to which: (1) certain Prepetition Lenders agreed to provide additional term loans to the Company to repay the outstanding Revolving Loans in an aggregate principal amount equal to $5,500,750 and to pay related fees, costs and expenses incurred by the Prepetition Obligors; and (2) the Term Loan total amount then outstanding was increased by $5,700,000 to $55,450,000.

As of the Petition Date, the Prepetition Obligors were indebted to Prepetition Secured Parties on account of the obligations under the Prepetition Loan Documents in the aggregate principal amount of $52 million (plus accrued and accruing interest, fees, expenses and other charges, the "**Prepetition Obligations**").

### 2.5    *Events Leading to the Filings.*

Several months after the 2021 Transaction, the Company brought on new leadership to address the financial and management challenges it was facing.  This new leadership began to implement a series of strategic initiatives intended to revitalize the business model, sales strategy, and financial controls, all of which were necessary to reshape the business' long-term strategic direction.

Shortly thereafter, it became apparent that the Company was facing several headwinds negatively impacting the business and placing the Company in a difficult liquidity position, including a realization that pre-2021 Transaction inventory orders were far in excess of historical or anticipated customer demand, pre-2021 Transaction inventory deliveries did not occur within the time frame necessary to capture existing customer demand prior to the 2021 holiday season, delays in shipping caused by supply chain disruption felt across the country, and increased costs associated with freight, shipping, demurrage and warehousing of inventory deliveries.   These liquidity constraints were exacerbated by a "post-pandemic" reduction in demand from customers.

Thereafter and throughout the second half of 2022, the Company faced continuing pressure from vendors it was no longer using for product.  These vendors ultimately initiated legal proceedings in December 2021.  And, despite outreach from the Company seeking a business solution to their dispute, these vendors also threatened an involuntary bankruptcy filing.

In response to these challenges, the Company hired outside counsel and, in October 2022, hired Portage Point to serve as both the Company's restructuring advisor and investment banker. Specifically, the Company engaged Portage Point to advise the Company in numerous areas including the evaluation of potential strategic alternatives.  The Company also appointed the Disinterested Director to assist in evaluating these alternatives.

2.6    *The Debtors' Solicitation and Marketing Efforts and Sale of Assets.*

Following an evaluation of strategic alternatives, the Company tasked Portage Point with marketing their assets for sale as a going concern. Portage Point's marketing process involved the preparation of marketing materials intended for distribution to prospective buyers of the Debtors' Assets, which included a teaser, confidential information memorandum, and the aggregation of key company documents located in an online data room for further diligence. In addition, Portage Point worked with the Debtors to develop a list of suitable potential buyers that could be contacted on a discreet and confidential basis.

Specifically, beginning on December 6, 2022 and continuing thereafter, Portage Point began outreach to a broad universe of relevant strategic and financial parties to assess interest in an acquisition of the Company. Portage Point and/or the Debtors advisors reached out to approximately 33 parties and offered them the opportunity to participate in the sale process, including Rich Godfrey (the prepetition founder of the Debtors), Huansong (the Company's prior, primary vendor manufacturing partner), and Twin Brook (the Debtors' Prepetition Lender). Of these 33 parties, 9 of them negotiated and executed confidentiality agreements and were provided with a confidential information memorandum and access to a virtual data room containing detailed information about the Debtors' business. Portage Point then held follow-up calls with interested parties to respond to diligence requests and discuss the current situation and process.

The Company received no written indications of interest by the initial January 13, 2023 bid deadline. Meanwhile, the Company continued to suffer a drain on cash flow, lacked a source of additional long-term liquidity, and faced litigation and mounting pressure from vendors, including the threatened filing of an involuntary bankruptcy proceeding.

Against this backdrop, and to avoid a potential value destructive outcome, the Company commenced negotiations with CPS USA Acquisition, LLC to potentially serve as a "stalking horse" purchaser for the proposed sale. As a product of these negotiations, the Company and CPS USA Acquisition, LLC, an affiliate of Kinderhook, entered into that certain Asset Purchase Agreement dated January 16, 2023 (the "**Stalking Horse Agreement**"), by and among the Company as sellers and CPS USA Acquisition, LLC as buyer (the "**Stalking Horse Bidder**").

In the interim, however, the Company continued to suffer a cash flow drain and lacked a source of necessary long-term liquidity. Due to the Debtors' cash position, the lack of any viable, actionable alternatives, the lack of any business solution with Huansong, and Huansong's threats of an involuntary bankruptcy proceeding, it became readily apparent that the most effective way to maximize the value of the Debtors' estates would be a continuation of the sale process through chapter 11.

On the Petition Date, the Debtors filed the *Motion for Entry of: (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All Assets, (B) Approving the Bid Protections to the Stalking Horse Bidder, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing Entry into the Stalking Horse Agreement, (F) Approving Bid Protections, (G) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (H) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances,*

*and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17] (the "**Sale and Bidding Procedures Motion**").

On February 27, 2023 the Court entered an *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, and (V) Granting Related Relief* [Docket No. 169] (the "**Bidding Procedures Order**") granting the bid procedures-related relief requested in the Sale and Bidding Procedures Motion, setting the Bid Deadline as March 7, 2023, and scheduling an Auction for March 9, 2023, in the event the Debtors received one or more Qualified Bids, and authorizing the Debtors to enter into the Stalking Horse Agreement with the Stalking Horse Bidder. The Debtors did not receive any Qualified Bids (other than the Stalking Horse Agreement) and on March 8, 2023 the Debtors filed the *Notice of Cancellation of Auction and Designation of Stalking Horse Purchaser as the Successful Bidder in Connection with the Sale of Substantially All of the Debtors' Assets* [Docket No. 198].

On March 27, 2023, the Court entered the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing and Approving Sale of Substantially All Assets of the Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, (IV) Authorizing the Debtors to Consummate the Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 270], thereby approving entry into the Asset Purchase Agreement with the Purchaser and consummation of all transaction contemplated thereunder. The sale closed on March 31, 2023 (the "**Closing Date**").

The consideration under the Asset Purchase Agreement was as follows:

(a)     a credit bid of the outstanding obligations under the DIP Credit Agreement pursuant to section 363(k) of the Bankruptcy Code in the amount of Ten Million Dollars ($10,000,000);

(b)     the payment of an amount in cash equal to Five Hundred Thousand Dollars ($500,000);

(c)     the assumption by the Buyer of the outstanding obligations under the Prepetition First Lien Credit Agreement (as defined in the Financing Orders);

(d)     the assumption by Buyer of the Assumed Liabilities (including all Determined Cure Costs with respect to any Assumed Contract)[2];

---

[2]     For avoidance of doubt, any and all Liability of the Debtors to or any Claim held by Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun China, and Hisun Motors Corp. U.S.A. and each of their affiliates and subsidiaries are not being assumed by the Stalking Horse Bidder and are Excluded Liabilities.

(e)      the Wind-Down Amoun of $6000,000; and

(f)      upon establishment of the Litigation Trust the funding of the Litigation Trust Note.

Despite not filing any objection to the Sale Motion, presenting any evidence in opposition to the Sale Motion, or seeking a stay of the effectiveness of the Sale Order, Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd. and Vietnam New Century Industrial Company Limited (who is a member of the Creditors Committee) filed a notice of appeal of the Sale Order on April 10, 2023 (the "**Appeal**").   The Debtors, Kinderhook and Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd. and Vietnam New Century Industrial Company Limited have resolved various issues and the Appeal has been or will shortly be dismissed as reflected in the *Stipulation Regarding Settlement Term Sheet* attached hereto as **Exhibit A**.

2.7      *The Debtors' Bankruptcy Proceedings.*

2.7.1      *Employment of Professionals*.   The Debtors requested and obtained authority to employ the following professionals: (i) Klehr Harrison Harvey Branzburg LLP as counsel; (ii) Triple P RTS, LLC ("**Triple P RTS**") as restructuring advisor; (iii) Triple P Securities, LLC ("**Triple P Securities**," together with Triple P RTS, "**Portage Point**") as investment banker; and (iv) Omni Agent Solutions as administrative advisor.

2.7.2      *The Creditors' Committee.*  On January 30, 2023, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors in the chapter 11 cases (the "**Creditors' Committee**") consisting of three members: Hisun Motors Corp. – USA, Tao Motor, Inc., and Vietnam New Century Industrial Co., Ltd.   The Creditors' Committee requested and obtained authority to employ the following professionals: (i) Cole Schotz P.C. to serve as counsel; and (ii) Accordion Partners, LLC to serve as financial advisor.  The Creditors' Committee was officially disbanded on May 11, 2023 pursuant to the *Notice of Disbanding the Official Committee of Unsecured Creditors* [Docket No. 347] filed by the U.S. Trustee.

2.7.3      *DIP Financing/Debtors' Use of Cash Collateral*.  On the Petition Date, the Debtors sought authority to use cash collateral and to obtain a DIP Facility consisting of $10 million junior lien superpriority term loans that would provide the Debtors with (i) an initial draw in the aggregate principal amount of $3.5 million available upon entry of the initial interim DIP order [Docket No. 54], (ii) an additional draw in the aggregate principal amount of $1.8 million available upon entry of the second interim DIP order [Docket No.168], and (iii) an additional draw of up to $4.7 million available upon entry of the final DIP order [Docket No. 269].  Without access to postpetition financing, the Debtors would have lacked sufficient funds to meet their working capital needs and operate their business during the chapter 11 cases, including payment of employees and vendors, resulting in significant impairment of the value of the Debtors' estates to the detriment of all stakeholders.

To implement its proposed sale processes and continue to retain and inspire confidence in its business partners, the Debtors' access to liquidity was critical.  The authorization to use Cash

Collateral and the DIP Facility provided liquidity that the Debtors believed was necessary to conclude the sale processes on an expedited basis and wind down the Debtors' affairs.

      2.7.4    ***Schedules and Bar Date***.  On February 13, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs.  On March 15, 2023, the Court established (i) April 22, 2023 at 4:00 p.m. Eastern Time as the General Bar Date for prepetition claims, including all priority claims and claims arising under section 503(b)(9) of the Bankruptcy Code, (ii) July 17, 2023 at 4:00 p.m. Eastern Time as the Governmental Bar Date for all governmental units holding prepetition claims, and (iii) April 22, 2023 at 4:00 p.m. Eastern Time as the Administrative Claims Bar Date for claims arising under sections 503(b)(1) through (8) and 507(a)(2) of the Bankruptcy Code for claims that arose on or after the Petition Date but on or before March 31, 2023.

      2.7.5    On December 16, 2022, Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., and Vietnam New Century Industrial Company Limited (collectively, the "***SDNY Plaintiffs***") filed a complaint in the District Court for the Southern District of New York (the "***Initial Complaint***") that named as defendants debtor Performance Powersports Group Inc., f/k/a/ Rich Godfrey & Associates, Inc. d/b/a Coleman Powersports and Kinderhook Industries LLC (the "***District Court Action***").  On February 14, 2023, in light of the Debtors' chapter 11 bankruptcy filing, the SDNY Plaintiffs filed a *Notice of Voluntary Dismissal of Defendant Performance Powersports Group, Inc. Without Prejudice* in the District Court Action. On February 16, 2023, SDNY Plaintiffs amended the Initial Complaint and filed an Amended Complaint (the "***Amended Complaint***") against defendants Kinderhook Industries LLC, Kinderhook Capital Fund VI LP, Kinderhook Capital Fund VI-B LP, and Richard Godfrey asserting, among other things, fraudulent conveyance counts. On March 17, 2023, after several requests by the Debtors to withdraw the Amended Complaint, the Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Automatic Stay and Granting Related Relief* [Docket No. 236] (the "***Stay Enforcement Motion***"). On April 13, 2023 the SDNY Plaintiffs voluntarily dismissed the Amended Complaint and District Court Action without prejudice. On April 14, 2023, the Debtors filed the *Notice of Withdrawal of Debtors' Motion for Entry of an Order Enforcing the Automatic Stay and Granting Related Relief* [Docket No. 312] which withdrew the Stay Enforcement Motion without prejudice and without waiving or limiting any claims the Debtors may have against any party.

    2.8    ***Claims Against the Debtors.***  The Claims against the Debtors are as follows:

      2.8.1    ***Administrative Claims.***  The amount of Administrative Claims filed against the Debtors to date is  $57,500 as Administrative Claims where either paid during the Chapter 11 Cases, assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser, or are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator. The Debtors estimate that a maximum of approximately $0.00 of Administrative Claims will be allowed and unpaid as of the Effective Date of the Plan.  The Debtors believe that all Allowed Administrative Claims, if any are remaining, will be timely paid once all objections to Administrative Claims and Priority Claims are either amicably resolved or adjudicated by the Bankruptcy Court.

10434317.v18

2.8.2    ***Professional Fee Claims.*** The Debtors estimate that a maximum of approximately $1,200,000 of Professional Fee Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.3    ***Section 503(b)(9) Claims.*** The amount of 503(b)(9) Claims filed against the Debtors to date is $6,756.75 as 503(b)(9) Claims where either paid during the Chapter 11 Cases, assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser, or are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator. The Debtors estimate that a maximum of approximately $0.00 of 503(b)(9) Claims will be allowed and unpaid as of the Effective Date of the Plan.  The Debtors believe that all Allowed 503(b)(9) Claims, if any are remaining,  will be timely paid once all objections to Administrative Claims and Priority Claims are either amicably resolved or adjudicated by the Bankruptcy Court.

2.8.4    ***DIP Facility Claim.*** The amount of DIP Facility Claims filed against the Debtors is $0.00 and have been satisfied by Purchaser under the Asset Purchase Agreement and pursuant to the terms of the Sale Order.

2.8.5    ***Priority Tax Claims.*** The amount of Priority Tax Claims filed against the Debtors to date is  $1,000,000.00 as Priority Tax Claims where either paid during the Chapter 11 Cases or assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser.  Many Priority Tax Claims that may be filed against the Debtors are duplicative, erroneously classified, paid, based upon estimates that will be reconciled downward, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator.  The Debtors estimate that a maximum of approximately $0.00 of Priority Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.6    ***Secured Tax Claims.*** The amount of Secured Tax Claims filed against the Debtors to date is  $0.00 as Secured Tax Claims where either paid during the Chapter 11 Cases or assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser.  Many Secured Tax Claims that may be filed against the Debtors are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator.  The Debtors estimate that a maximum of approximately $0.00 of Secured Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.7    ***Other Secured Claims.*** The amount of Other Secured Claims filed against the Debtors to date is approximately $478,000.00 as Other Secured Tax Claims where either paid during the Chapter 11 Cases or assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser.  Many Other Secured Claims filed against the Debtors are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator.  The Debtors estimate that a maximum of approximately $0.00 of Other Secured Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.8    ***Other Priority Claims.*** The amount of Other Priority Claims filed against the Debtors to date is approximately $0.00 as Other Priority Claims where either paid during the

Chapter 11 Cases or assumed by Purchaser under the Asset Purchase Agreement and paid by Purchaser.  Many Other Priority Claims filed against the Debtors are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims objections filed by the Debtors or Plan Administrator.  The Debtors estimate that a maximum of approximately $0.00 of Other Priority Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.9   ***2021 Credit Agreement Claims.***   The amount of 2021 Credit Agreement Claims filed against the Debtors to date is approximately $52,220,800.00.  The holders of Allowed 2021 Credit Agreement Claims have agreed to waive any distribution under the Plan on account of such Allowed Class 4 2021 Credit Agreement Claims and look solely to the Purchaser for repayment of the 2021 Credit Agreement Claims pursuant to the terms of the Asset Purchase Agreement.

2.8.10   ***General Unsecured Claims.***  The amount of General Unsecured Claims filed against the Debtors to date is approximately $440 million.  Many General Unsecured Claims filed against the Debtors are duplicative, erroneously classified, paid, unsupportable and/or for contingent/unliquidated amounts and will be the subject of claims reconciliation and/or objections filed by the Debtors or Litigation Trustee.

2.8.11   ***Intercompany Claims.***  There are no Intercompany Claims filed against the Debtors to date. The Debtors estimate that no Intercompany Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.12   ***Subordinated Claims.***  There are no Subordinated Claims filed against the Debtors to date. The Debtors estimate that no Subordinated Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.8.13   ***Interests.*** Following payment in full of all Allowed General Unsecured Claims and Allowed Subordinated Claims (if any), and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, each holder of such Allowed Interest shall receive its *pro rata* share of the Litigation Trust Assets.

## 3.    SUMMARY OF THE PLAN OF LIQUIDATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTING THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST.

3.1     *In General.*

The Plan is proposed by the Debtors as consolidated entities.  The Allowed Claims against and Interests in the Debtors will be paid in accordance with priorities set forth in the Bankruptcy Code, a structure that the Debtors believe will produce a fundamentally equitable outcome for all creditors.

3.2     *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article II of the Plan.

The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Plan, including voting on this Plan by the Holders of Claims and making any Distributions to Holders of Claims.  Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Disclosure Statement and Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim.  Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

Substantive consolidation is an equitable remedy that a bankruptcy court may apply in the cases of affiliated debtors, among other instances. When debtors are substantively consolidated, the assets and liabilities of such debtors are pooled and essentially treated as the assets and liabilities of a single debtor. The United States Court of Appeals for the Third Circuit (the "**Third Circuit Court of Appeals**"), the circuit in which the Chapter 11 Cases are pending, articulated a

20

test in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), for determining whether substantive consolidation is warranted. In setting forth the test, the Third Circuit Court of Appeals looked to five principles behind substantive consolidation: (i) limiting the cross-creep of liability by respecting entity separateness is a fundamental ground rule; (ii) the harms substantive consolidation addresses are nearly always those caused by debtors; (iii) mere benefit of administration of the case is hardly a harm calling for substantive consolidation in play; (iv) substantive consolidation should be a rare remedy and one of last resort after considering and rejecting other remedies; and (v) while substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively. Id. at 211. Based on these principles, the Third Circuit Court of Appeals held that, in the Third Circuit, the party calling for substantive consolidation must prove: (i) that prepetition, the entities to be consolidated disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) that postpetition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. *Id.* Substantive consolidation is appropriate if either factor is justified. *Id.*

The Debtors believe that the limited substantive consolidation provided for under the Plan is appropriate under the standards set forth by the Third Circuit Court of Appeals in the Owens Corning case for several reasons. First, the Debtors believe that, prepetition, many of their Creditors effectively treated the Debtors as a single entity. Second, the Debtors believe that while they did observe appropriate corporate formalities and separateness during the prepetition period, as a practical matter the Debtors' business was operated as an integrated enterprise. Third, given the nominal amount of assets held by certain of the Debtors, and the expense of generating separate chapter 11 plans for each of the Debtors, the Debtors believe that the overall effect of substantive consolidation will be beneficial to Creditors and will allow for greater efficiencies and simplification in administering the Plan. Accordingly, the Debtors believe that the Plan's limited substantive consolidation structure is beneficial to Creditors.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the limited substantive consolidation of the Debtors and their respective Estates solely for the purposes of this Combined Disclosure Statement and Plan, including voting on this Combined Disclosure Statement and Plan by the Holders of Claims and making any Distributions to Holders of Claims. All Allowed Claims and Interests are consolidated into the Classes set forth below:

| Class | Claim/Interest | Impairment Status | Voting Rights |
|-------|----------------|-------------------|---------------|
| Class 1 | Secured Tax Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 3 | Other Priority Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 4 | 2021 Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 7 | Subordinated Claims | Impaired | Entitled to Vote |
| Class 8 | Interests | Impaired | Entitled to Vote |

3.3    ***Identification of Classes of Claims and Interests Impaired and Not Impaired by the Plan.***

      3.3.1    ***Unimpaired Classes of Claims.***    Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims) are not Impaired by the Plan and are deemed to have accepted the Plan.

      3.3.2    ***Impaired Classes of Claims Entitled to Vote.***    Class 4 (2021 Credit Agreement Claims), Class 5 (General Unsecured Claims), Class 7 (Subordinated Claims), and Class 8 (Interests) are Impaired under the Plan and are entitled to vote on the Plan.

      3.3.3    ***Impaired Classes of Claims and Interests Deemed to Have Rejected the Plan.***    Class 6 (Intercompany Claims) is Impaired under the Plan, shall receive no Distributions under the Plan on account of such Intercompany Claims, and is deemed to have rejected the Plan.

3.4    ***Provisions for Treatment of Unclassified Claims, Administrative Claims, and Priority Tax Claims.***

      3.4.1    ***Administrative Claims.***

      (a)    <u>Payment of Allowed Administrative Claims</u>.    All Allowed Administrative Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser under the Asset Purchase Agreement. To the extent that an Allowed Administrative Claims was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in full in Cash from the Purchaser (if and to the extent such holder's Allowed Administrative Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement), the Debtors or the Plan Administrator, as applicable, on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

      (b)    <u>Administrative Claims Bar Date</u>.    Requests for payment of Administrative Claims must be Filed on or before the applicable Administrative Claims Bar Dates.  Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or its property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date.

      3.4.2    ***Professional Fee Claims.***

      (a)    <u>Final Professional Fee Applications</u>.    Any Person asserting a Professional Fee Claim for services rendered on or before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21)

days after the Effective Date (with an objection period of at least twenty one days for objections, if any, to such applications); <u>provided</u>, <u>however</u> that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.

   (b) <u>Payment of Interim Amounts</u>. The provisions of the Professional Fee Order shall remain in effect as to amounts owing to Professionals prior to the Effective Date.

   (c) <u>Payment of Professional Fee Claims</u>. On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Klehr Harrison Harvey Branzburg LLP's escrow account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, Klehr Harrison Harvey Branzburg LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Klehr Harrison Harvey Branzburg LLP shall promptly transfer any such Cash to the Litigation Trust and such Cash shall become Litigation Trust Assets and be treated in accordance with the Litigation Trust Agreement, the Plan and the Confirmation Order.

   (d) <u>Post-Effective Date Services</u>. After the Effective Date, any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Administrator shall pay any Professionals for Post-Effective Date services requested by the Plan Administrator.

   **3.4.3**  ***DIP Facility Claims***. The DIP Facility Claims have been satisfied pursuant to the terms of the Sale Order. Upon satisfaction of the DIP Facility Claims, all Liens and security interests granted to secure the DIP Facility Claims were automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

   **3.4.4**  ***Priority Tax Claims***. All Allowed Priority Tax Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser and paid under the Asset Purchase Agreement. To the extent that an Allowed Priority Tax Claim was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable, one of the following treatments: (i) if and to the extent such Allowed Priority Tax Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, paid by the Purchaser, (ii) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (iii) such other treatment (which treatment shall be no

more favorable than the treatment set forth in subsection (ii) of this section) as may be agreed upon by such holder and the Debtors or the Plan Administrator, as applicable, or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (a) the Effective Date, (b) the date on which such Priority Tax Claim against the Debtors becomes an Allowed Priority Tax Claim, or (c) such other date as may be ordered by the Bankruptcy Court.

3.5    *United States Trustee Quarterly Fees.*

3.5.1    **Payment of United States Trustee Quarterly Fees.** All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors, the Post-Effective Date Debtors, the Litigation Trustee and Plan Administrator shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtors, Litigation Trustee and Plan Administrator shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding anything called for in the Plan to the contrary, each and every one of the Debtors, the Post-Effective Date Debtors, the Litigation Trustee and Plan Administrator, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of any such Debtor case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

3.6    *Provisions for Treatment of Claims and Interests.*

3.6.1    **Class 1 (Secured Tax Claims).** To the extent that the Allowed Secured Tax Claims were not assumed and paid under the Asset Purchase Agreement, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Plan Administrator: (a) if and to the extent such Allowed Secured Tax Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash from the Purchaser of such holder's Allowed Secured Tax Claim as soon as reasonably practicable after the Effective Date; (b) payment in full in Cash from the Other Claims Reserve of such holder's Allowed Secured Tax Claim as soon as reasonably practicable after the Effective Date; or (c) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

3.6.2    **Class 2 (Other Secured Claims).** To the extent that the Allowed Other Secured Claims were not assumed and paid under the Asset Purchase Agreement, each holder of an Allowed Other Secured Claim shall receive, at the option of the Plan Administrator: (a) if and to the extent such Allowed Other Secured Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash from the Purchaser, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other

Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; (b) payment in full in Cash from the Other Claims Reserve, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; or (c) delivery of the collateral securing any such Claim.

3.6.3    **Class 3 (Other Priority Claims).**  To the extent that the Allowed Other Priority Claims were not assumed under the Asset Purchase Agreement, the holder of an Allowed Other Priority Claim shall receive the option of the Plan Administrator: (a) if and to the extent such Allowed Other Priority Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash of such holder's Allowed Other Priority Claim from the Purchaser or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired; or (b) payment in full in Cash of such holder's Allowed Other Priority Claim from the Other Claims Reserve or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

3.6.4    **Class 4 (2021 Credit Agreement Claims).**  Except to the extent that a holder of an Allowed 2021 Credit Agreement Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed 2021 Credit Agreement Claim, each holder of such Allowed 2021 Credit Agreement Claim shall (a) accept payment  from the Purchaser pursuant to the Asset Purchase Agreement upon terms as agreed between the Purchaser and Twin Brook and (b) following payment in full of all Allowed General Unsecured Claims and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, receive its *pro rata* share of the Litigation Trust Assets. In no event shall Allowed 2021 Credit Agreement Claims receive more than one hundred percent (100%) of their Allowed 2021 Credit Agreement Claims.

3.6.5    **Class 5 (General Unsecured Claims).**  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its *pro rata* share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their *pro rata* share of the Litigation Trust Assets.  For the avoidance of doubt, the Kinderhook General Unsecured Claim shall be allowed as a General Unsecured Claim in the amount of $1,000,000.00.

3.6.6    **Class 6 (Intercompany Claims).**   On the Effective Date, all Class 6 Intercompany Claims shall be cancelled without any distribution on account of such Claims.

3.6.7    **Class 7 (Subordinated Claims).**  Following payment in full of all Allowed General Unsecured Claims and Allowed 2021 Credit Agreement Claims, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Subordinated Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Subordinated Claim, each holder of such Allowed Subordinated Claim shall receive its *pro rata* share of the Litigation Trust Assets.

3.6.8    **Class 8 (Interests).**    Each Interest shall be canceled, released, and extinguished, and will be of no further force or effect.  Following payment in full of all Allowed General Unsecured Claims, Allowed 2021 Credit Agreement Claims, and Allowed Subordinated

Claims, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Interest agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Interest, each holder of such Allowed Interest shall receive its *pro rata* share of the Litigation Trust Assets. The Kinderhook Equity Interests shall be allowed as an Interest in the amount of $45,000,000.00.

###### 3.7    *Implementation of the Plan.*

3.7.1    *In General*. The Plan is a liquidating plan and provides for the liquidation of the Assets and the payment of the proceeds generated therefrom to holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code.

3.7.2    *Means of Implementing the Plan*. On and after the Effective Date, the Plan will be implemented by, among other things, the appointment of the Plan Administrator and the Litigation Trustee to carry out the responsibilities described herein and more fully set forth in the Litigation Trust Agreement, as applicable.

3.7.3    *Vesting of Assets and Causes of Action.* Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, all of the Litigation Trust Assets shall immediately vest in the Litigation Trust.

3.7.4    *Retained Causes of Action.* The Committee contends that there exists various claims, defenses and causes of action against on account of the Retained Causes of Action which are the Excluded Claims under the Asset Purchase Agreement and the Sale Order. Such claims, defenses and causes of action not previously released or released or exculpated under the Plan shall vest with, as applicable, the Plan Administrator or with Litigation Trust to be pursued by the Litigation Trustee in the sole discretion of the Litigation Trustee.

3.7.5    *Sources of Consideration for Plan Distributions.* Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Litigation Trust Assets. All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, has already been paid by, or will be paid by the Purchaser (to the extent distributions are on account of unpaid Allowed Claims under the Asset Purchase Agreement) or otherwise will be funded by the Other Claims Reserve or the Professional Fee Claims Reserve, as applicable. On the Effective Date, the Debtors shall fund the Other Claims Reserve and Professional Fee Claims Reserve in full in Cash.

###### 3.7.6    *Litigation Trust.*

1.    <u>Creation of Litigation Trust</u>. On the Effective Date, the Litigation Trust shall be created in accordance with the Litigation Trust Agreement for the benefit of holders of Beneficial Trust Interests. The Litigation Trust Agreement shall (i) be in form and substance consistent as the form submitted in the *Notice of Proposed Litigation Trust Agreement and Litigation Trust Note* [Docket No. 265], and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Litigation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes. All relevant parties (including the Debtors, the Litigation Trustee, and the holders of Beneficial Trust Interests) will take all

actions necessary to cause title to the Litigation Trust Assets to be transferred to the Litigation Trust. The powers, authority, responsibilities, and duties of the Litigation Trust and the Litigation Trustee are set forth and will be governed by the Litigation Trust Agreement, the Plan and Confirmation Order. Peter Kravitz shall serve as the Litigation Trustee.

2.    Transfers to the Litigation Trust. On the Effective Date, the Debtors and their Estates shall transfer and shall be deemed to have irrevocably transferred to the Litigation Trust, the Litigation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

3.    Purpose of the Litigation Trust. The Litigation Trust shall be established for the primary purpose of liquidating its assets and making distributions to holders of Beneficial Trust Interests in accordance with the Plan, Confirmation Order and the Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Litigation Trust. The Litigation Trust, acting through the Litigation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Litigation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the Debtors, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Litigation Trust Assets.

4.    Administration of the Litigation Trust. The Litigation Trust shall be administered by the Litigation Trustee pursuant to the Litigation Trust Agreement and the Plan. In the event of any inconsistency between the Plan or the Confirmation Order and the Litigation Trust Agreement as such conflict relates to anything other than the establishment of a Litigation Trust or Litigation Trust Proceeds Distribution Split, the Litigation Trust Agreement shall control.

5.    Appointment of Litigation Trustee. As of the Effective Date, the Litigation Trustee shall be appointed as trustee of the Litigation Trust pursuant to the Litigation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Litigation Trust Agreement, the Plan, the Confirmation Order and the Bankruptcy Code. The Litigation Trustee shall be the exclusive trustee of the Estates under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

6.    Compensation of the Litigation Trustee. The Litigation Trustee shall be compensated pursuant to the terms of the Litigation Trust Agreement. Any professionals retained by the Litigation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred pursuant to the terms of the Litigation Trust Agreement. The payment of fees and expenses of the Litigation Trustee and its professionals shall be made pursuant to the terms of the Litigation Trust Agreement and shall not be subject to Bankruptcy Court approval. The identity of the Litigation Trustee shall be disclosed in the Plan Supplement.

7.    <u>Litigation Trust Oversight Committee</u>.  On the Effective Date, an oversight committee of the Litigation Trust (the "Litigation Trust Oversight Committee") shall be established pursuant to the terms of the Litigation Trust Agreement. The Litigation Trust Oversight Committee shall initially be comprised of three (3) members: one (1) selected by Vietnam New Century Industrial Co., Ltd., one (1) selected by the Debtors who shall be Jillian Lin of Dundon Advisors, and one (1) independent member selected by Purchaser. The identity of the Members of the Litigation Trust Oversight Committee shall be disclosed in the Plan Supplement.

8.    <u>Responsibilities and Powers of the Litigation Trustee</u>.    In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, and the Litigation Trust Agreement, the Litigation Trustee shall have the responsibilities and powers to perform any and all acts necessary or desirable to accomplish the purposes of the Litigation Trust, as detailed in the Litigation Trust Agreement, and. such other responsibilities and powers as may be vested in the Litigation Trustee pursuant to this Plan, the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

9.    <u>Retained Causes of Action</u>.  The Litigation Trustee shall have the sole right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.

10.    <u>Costs and Expenses of the Litigation Trust</u>.  The costs and expenses of the Litigation Trust, including the fees and expenses of the Litigation Trustee and other professionals retained on behalf of the Litigation Trust, shall be paid in accordance with the terms of the Litigation Trust Agreement.

11.    <u>Effective Date</u>.  On the Effective Date, the Litigation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Litigation Trust Agreement to carry out and implement the purposes and intent of the Plan and the Litigation Trust Agreement.

3.7.7    ***Dissolution of Litigation Trust.***  The Litigation Trust shall terminate in accordance with the terms of the Litigation Trust Agreement; *provided* that the Litigation Trust shall unless the Litigation Trust Oversight Committee determines that a fixed period extension (approved by the Bankruptcy Court within six (6) months of the beginning of the extended period, if the Litigation Trust Oversight Committee reasonably determines that such approval is necessary to meet the requirements set forth within Revenue Procedure 94-45, 1994-2 C.B. 684, and not to exceed two (2) years, including any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the property of the Litigation Trust. s.  Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or such motion is withdrawn.

3.7.8    ***Litigation Trust Security Matters.*** To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt

pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state and local laws requiring registration of securities. It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Litigation Trust Agreement.

       3.7.9  ***Litigation Trust Proceeds Distribution Split.*** Notwithstanding anything in the Asset Purchase Agreement to the contrary, the following is the manner in which any distributions of Litigation Trust Proceeds by the Litigation Trustee, pursuant to section 6.1 of the Litigation Trust Agreement, shall be made: (i) 33% of such Litigation Trust Proceeds shall be distributed to Kinderhook; and (ii) 67% of such Litigation Trust Proceeds shall be distributed *pro rata* to holders of Allowed General Unsecured Claims.

       3.7.10  ***Plan Administrator****.*

       1.    <u>Appointment of Plan Administrator</u>. On and after the Effective Date, the Peter Kravitz shall become and serve as the Plan Administrator.

       2.    <u>Authority</u>. The Plan Administrator shall have the sole authority and right on behalf of each of the Debtors, and their respective Estates, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan (other than those specifically delegated to the Litigation Trustee), including to:

    i.     Review, reconcile, compromise, settle, or object to all Claims, other than General Unsecured Claims, Subordinated Claims, and Interests and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

    ii.    Calculate the amount of Distributions to be made to holders of Allowed Claims, other than holders of General Unsecured Claims, Subordinated Claims and Interests each in accordance with the Plan, and use Cash to make Distributions in accordance with the Plan;

    iii.   Retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities.

    iv.   Establish, maintain, and administer all documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan.

    v.    Invest Cash of the Debtors and the Estates, other than Litigation Trust Assets.

    vi.   Pay the Plan Administrator Expenses.

    vii.  Prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law.

    viii. Take such actions as are necessary or appropriate to implement the Plan.

10434317.v18

ix.    Comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations.

x.    Exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

xi.    Execute any and all documents and instruments necessary to effectuate the provisions of the Plan.

xii.    To the extent necessary to give full effect to its exclusive administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (x) a board of directors or an appropriate corporate officer of each of the Debtors under any applicable non-bankruptcy law and (y) a "trustee" of each of the Debtors under sections 704 and 1106 of the Bankruptcy Code.

3.7.11  *Tax Returns.*  After the Effective Date, the Plan Administrator or Litigation Trust shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of such Debtors' Chapter 11 Cases, as determined under applicable tax laws.

3.7.12  *Cancellation of Existing Securities.*  Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes and purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtors shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; provided, further, however, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan.

3.7.13  *Indemnification Obligations.*  Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtors, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

3.7.14  *Effectuating Documents; Further Transactions.*  Prior to the Effective Date, the Debtors and their respective directors, members, trustees, officers, and managers are and, after the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and Litigation Trust are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or

30

consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

3.7.15 ***Exemption from Certain Taxes and Fees.*** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

3.7.16 ***Treatment of Causes of Action.*** Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or a Bankruptcy Court order, the Debtors do not waive, relinquish, exculpate, release, compromise, or settle any of the Retained Causes of Action, and the Debtors hereby reserve and assign to the Litigation Trust any and all such Retained Causes of Action, whether arising before or after the Petition Date.  The Litigation Trustee, on behalf of the Litigation Trust, may pursue such Retained Causes of Action, in his or her sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Retained Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

3.7.17 ***Ability to Seek and Obtain Discovery.*** From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

3.7.18 ***Debtors' Directors, Officers, Members and Managers.*** On the Effective Date, all officers, directors, members and managers of the Debtors shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity.  On after the Effective Date, the Litigation Trustee and Plan Administrator shall serve as the sole officer, sole director, sole member or sole manager of the Debtors, but he or she shall retain and enforce Retained Causes of Action as the representative of the Estates in his or her capacity as the Litigation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, member or manager of the Debtors.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

3.7.19 ***Debtors' Existence.*** From and after the Effective Date, the Debtors shall continue in existence for the purpose of winding up their affairs as expeditiously as practicable. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtors without any requirement of further action by any Debtor.

On and after the Effective Date, the Debtors' remaining assets and affairs shall be administered and managed by the Plan Administrator in accordance with the Plan. Any excess Cash remaining after the winding up of the Debtors and payment in full or other satisfaction of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, and Allowed Other Priority Claims shall become Litigation Trust Assets and be treated as such under the Plan and the Litigation Trust Agreement.

Upon certification to be Filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtors shall be deemed to be dissolved without any further action by the Debtors, the Plan Administrator, or the Litigation Trust, including the filing of any documents in any office in any jurisdiction where the Debtors are organized.  However, the Plan Administrator and Litigation Trustee shall have the authority to take all necessary action to dissolve any Debtor.  Further, upon the aforementioned certification and entry of Final Decree, the Litigation Trustee and Plan Administrator shall be authorized, in their sole discretion, to discard or destroy any and all of the Debtors' books and records in their respective possession.  Upon the Effective Date, the Debtors shall turn over or provide access to its books and records to the Plan Administrator or the Litigation Trustee, as applicable.

3.7.20 ***Corporate Authority.***    The Confirmation Order shall constitute full and complete authority for the Debtors, Plan Administrator, and Litigation Trust to take all other actions that may be necessary, useful or appropriate to consummate the Plan without any further judicial or corporate authority.

3.8    ***Treatment of Executory Contracts and Unexpired Leases.***

3.8.1    ***Rejection of Executory Contracts and Unexpired Leases.***    On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Buyers pursuant to the terms of the Asset Purchase Agreement and the Sale Order.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to Bankruptcy Code sections 365(a) and 1123.  Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***    Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto.  The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VIII.A hereof are deemed rejected as of the Effective Date.  The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect

32

to the same. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 5 of the Plan, which information shall be included in the Notice of the Effective Date.

### 3.9    *Estimated Plan Distribution*

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO ARTICLES IV AND V OF THE PLAN.**

### SUMMARY OF EXPECTED RECOVERIES

| Class | Claim/Equity Interest | Estimated Maximum Amount of Unpaid Allowed Claims or Interests on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|
| N/A | Administrative Claims – Professional Fee Claims | Approx. $1,200,000.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| N/A | Administrative Claims Including 503(b)(9) Claims | $0.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| N/A | DIP Facility Claims | $0.00 | $0.00 Satisfied pursuant to the terms of the Sale Order |
| N/A | Priority Tax Claims | $0.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| 1 | Secured Tax Claims | $0.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| 2 | Other Secured Claims | $0.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| 3 | Other Priority Claims | $0.00 | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| 4 | 2021 Credit Agreement Claims | $52.3 million | Allowed Class 4 2021 Credit Agreement Claims have agreed to waive any distribution under the Plan |
| 5 | General Unsecured Claims | $440 million | Unknown at this time |
| 6 | Intercompany Claims | N/A | $0.00 |
| 7 | Subordinated Claims | N/A | Following payment in full of all Allowed General Unsecured, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Subordinated Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Subordinated Claim, each holder of such Allowed Subordinated Claim shall receive its *pro rata* share of the Litigation Trust Assets. |
| 8 | Interests | N/A | Each Interest shall be canceled, released, and extinguished, and will be of no further force or effect. |

| | | | Following payment in full of all Allowed General Unsecured Claims and Subordinated Claims, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Interest agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Interest, each holder of such Allowed Interest shall receive its *pro rata* share of the Litigation Trust Assets. The Kinderhook Equity Interests shall be allowed as an Interest in the amount of $45,000,000.00. |
|---|---|---|---|

       The recoveries set forth in the table above may change based upon changes in the amount of Claims and Interests that are "Allowed" as well as other factors related to the Debtors' continued wind down of operations. "Allowed" means with respect to any Claim against or Interest in the Debtors or their Estates (including any Administrative Claim) or portion thereof: (a) a Claim or Interest that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim or Interest that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Litigation Trustee or the Plan Administrator following the Effective Date; or (c) a Claim or Interest as to which a Proof of Claim has been Filed and as to which no objection has been Filed or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Except for any Claim or Interest that is expressly Allowed herein, any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and such person or entity shall not be treated as a creditor with respect to such Claim or Interest for the purposes of voting and distributions under the Plan.

       3.10    ***Provisions Governing Distributions***

       3.10.1 ***Distribution Agent.***  The Distribution Agent if any, on behalf of the Debtors and/or Plan Administrator, shall make all distributions under the Plan on account of Allowed Claims against the Debtors pursuant to the terms of the Plan and Confirmation Order; *provided*, for the avoidance of doubt, that distributions on account of Beneficial Trust Interests shall be made by the Litigation Trustee in accordance with the Litigation Trust Agreement; provided, however, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Claim Reserve.

       3.10.2 ***Cash Payments.***  Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Plan Administrator shall determine in his or her sole discretion.

10434317.v18

3.10.3 ***Delivery of Distributions to Holders of Allowed Claims.***    Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Allowed Claims shall be made on the Distribution Date.

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims Filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Plan Administrator have been notified in writing of a change of address.  If the distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.G of the Plan.

3.10.4 ***Interest and Charges.***    No interest shall accrue or be paid on Allowed Claims.

3.10.5 ***Compliance with Tax Requirements.***    In connection with the Plan, to the extent applicable, the Plan Administrator and Litigation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator and Litigation Trust may require, in the Plan Administrator's and/or Litigation Trust's discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Plan Administrator holders of  Beneficial Trust Interests complete and return to the Litigation Trustee the appropriate Form W-8 or Form W-9, as applicable to each Holder. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and Litigation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate.  The Plan Administrator and Litigation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

The Plan Administrator and Litigation Trust, as applicable, shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Plan Administrator's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim.  To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

3.10.6 ***Fractional Dollars: De Minimis Distributions.***    Notwithstanding any other provision of the Plan, the Plan Administrator and Litigation Trust, as applicable, shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar.  In addition, the Plan Administrator and Litigation Trust, as applicable, shall not be required to make any distribution in an amount less than $50.00.  To the extent that such a distribution shall be called for as part of any

35

interim distribution, the Plan Administrator and Litigation Trust, as applicable, shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Plan Administrator and Litigation Trust, as applicable, shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan or the Confirmation Order.

3.10.7  *Unclaimed Distributions.*  If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Plan Administrator in the Unclaimed Property Reserve for a period of thirty (30) days. Once the distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Plan Administrator shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of thirty (30) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims or Beneficial Trust Interests shall be deemed disallowed and expunged in their entirety and the funds shall be redistributed to the other holders of Allowed Claims and Interests in accordance with the terms of this Plan, Confirmation Order, and Litigation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Litigation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a *pro rata* basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Litigation Trust.

Nothing contained in the Litigation Trust Agreement, this Plan, or the Confirmation Order shall require the Debtors, the Litigation Trustee, the Litigation Trust, the Plan Administrator, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

3.10.8  *No Penalty Claims.*  Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

3.10.9  *Setoffs and Recoupment.*  The Plan Administrator and Litigation Trust, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Plan Administrator, or Litigation Trust, as applicable, of any such Claim it may have against the holder of such Claim.

3.10.10  *Distributions by Litigation Trust*.  The Litigation Trust shall not be obligated to make a distribution on account of the Beneficial Trust Interests that would impair the ability of the

Litigation Trust to pay the expenses incurred by the Litigation Trust pursuant to the Litigation Trust Agreement.

### 3.10.11  *Claims Paid or Payable by Third Parties.*

1. <u>Claims Paid by Third Parties</u>.  The Plan Administrator and Litigation Trust, as applicable, shall reduce a Claim to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not the Debtors, the Plan Administrator, or the Litigation Trust. In no event shall the holder of a Claim's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.    The Debtors, Plan Administrator, and Litigation Trust, as applicable, may file a *Notice of Satisfaction of Claim* with respect to any Claim that has been satisfied by the Debtors or any third party.

2. <u>Claims Payable by Third Parties</u>.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3. <u>Applicability of Insurance Policies</u>.  Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

### 3.11  *Tax Consequences.*

3.11.1  The Federal income tax consequences of the Plan to a Creditor or Interest holder will depend upon a number of factors and can be complex.  In general, a Creditor that receives cash in satisfaction of its Allowed Claim will generally receive a gain or loss with respect to the principal amount of the Allowed Claim equal to the difference between: (i) the Creditor's basis in the Claim (other than any Claim in respect to accrued interest); and (ii) the balance of the cash received after any allocation to the accrued interest. The Debtors have not determined the character of any gain or loss to be recognized by an Interest holder with respect to any distribution, if any, such interestholder may receive under the Plan. This discussion does not apply to a holder of a Claim that is not a "United States person," as such term is defined in the Internal Revenue Code of 1986. **FOR THE FOREGOING REASONS, HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE, AND LOCAL) OF THE PLAN.  THE DEBTORS ARE NOT MAKING ANY REPRESENTATION REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR INTEREST HOLDER, NOR ARE THE DEBTORS RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.  CREDITORS AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE PLAN**.

4.    **POST-CONFIRMATION ISSUES**

4.1    *Employment of Counsel and Fees.*

    4.1.1    *Employment of Professionals After Confirmation*.    All professionals employed by the Debtors during the pendency of the Chapter 11 Cases shall continue to be employed and will be entitled to compensation as holders of Administrative Claims for their services prior to the Effective Date.  Upon the occurrence of the Effective Date, the Plan Administrator shall be deemed a judicial substitute for each of the Debtors and shall be empowered to retain and/or employ professionals.

4.2    *Satisfaction and Release of Claims, Releases, Injunction and Related Provisions.*

    4.2.1    *Satisfaction and Release of Claims and Interests.*  In consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the satisfaction and release of all Claims and Interests against and in the Debtors.

    4.2.2    *Liabilities to, and Rights of, Governmental Units.*  Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

**4.2.3** *Exculpation.* **Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

**4.2.4** *Releases by the Debtors.* **Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan ( including, without limitation, the exclusion of the Retained Causes of Action), for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall have no effect on the liability of any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

**Notwithstanding anything in the Plan to the contrary, nothing in this release shall be constructed to release any post-Effective Date obligations or remedies of any Released Party under the Plan, the Sale Order, the Asset Purchase Agreement, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Notwithstanding anything to the contrary in the Confirmation Order, Plan, or Plan Supplement, nothing in the Confirmation Order, Plan, including this Article IX, or Plan**

Supplement shall alter or limit the validity or scope of the releases granted under paragraph 4.14 of the Final DIP Order.

       4.2.5 ***Releases by Holders.*** **Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, including, without limitation specifically excluding the Retained Causes of Action, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Releasing Parties from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any or all of the Released Parties, asserted or assertable by or on behalf of a Releasing Party or the Debtors, including any derivative claims, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; _provided_, _however_, that the foregoing releases shall have no effect on the liability of any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

       4.2.6 ***Injunction.*** **Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold a Claim, Cause of Action, or other debt or liability against any Released Party or Exculpated Party that have been released and/or exculpated under the this Plan (the "Released/Exculpated Claims") are permanently enjoined from taking any of the following actions against any Released Party and Exculpated Party: (i) commencing or continuing, in any manner or in any place, any action or other proceeding on account of such Released/Exculpated Claim; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order on account of such Released/Exculpated Claim; (iii) creating, perfecting or enforcing any lien or encumbrance on account of such Released/Exculpated Claim; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation**

**on account of or in connection with or with respect to any Released/Exculpated Claim; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct; provided further, however, that the foregoing injunction does not apply to any actions taken with respect to any party's obligations or remedies under the Plan, the Sale Order, the Asset Purchase Agreement or any other or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

       4.2.7   *Term of Injunctions or Stays*.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

       4.2.8   *Reservation of Rights by Certain Parties.*  For avoidance of doubt, the Plan shall not affect the following, all of which are specifically reserved: (a) direct claims and causes of action of Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing Entities against any non-Debtor third party, including Kinderhook and Richard Godfrey and (b) claims and causes of action of  Kinderhook against Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing Entities including direct claims and causes of action and all of Debtors claims and causes of action acquired by Kinderhook pursuant to the Asset Purchase Agreement.  Additionally, for avoidance of doubt and for all purposes, Kinderhook, Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing Entities shall not be Releasing Parties and shall be deemed to have opted out of the release set forth in Article IX D. 2. of the Plan. For the further avoidance of doubt, the reservation of rights in Article IX.G. of the Plan shall not limit the exculpation provided in Article IX.C of the Plan.

     4.3   *Conditions Precedent to Consummation of the Plan.*

       4.3.1   <u>Conditions Precedent to the Effective Date</u>. It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

          (a)    the Bankruptcy Court shall have entered the Confirmation Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

(b)      all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

(c)      the Other Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

(d)      the Litigation Trust shall have been established in accordance with the Litigation Trust Agreement and shall have been funded with the Litigation Trust Assets;

(e)      the Plan Administrator Agreement shall have been fully executed; and

(f)      all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

For the avoidance of doubt, it shall not be a condition to the Effective Date of the Plan that the Sale Order be a Final Order.

4.3.2    Waiver of Conditions.  The conditions to Consummation set forth in Article X of the Plan may be waived only by prior written consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article X of the Plan, the Debtors shall immediately declare the Effective Date and File the Notice of Effective Date.

4.3.3    Effect of Failure of Conditions.  Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holder of any Claim or any other Entity in any respect.

4.4      *Modification, Revocation or Withdrawal of the Plan.*

A.      Modification and Amendments.  Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their rights, to revoke or withdraw, to alter, amend or modify the Plan, one or more times, after Confirmation, and before Consummation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the

42

Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      Effect of Confirmation on Modification.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of Plan.  The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any holder of a Claim or Interest or any other Entity or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, any holder or any other Entity.

4.5     *Miscellaneous Provisions.*

4.5.1   *Immediate Binding Effect.*   Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors each of respective successors and assigns of the foregoing persons and Entities.

4.5.2   *Additional Documents.*   On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

4.5.3   *Reservation of Rights.*   Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by the Debtors, with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

4.5.4    *Successors and Assigns.*  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

4.5.5    *Notices*.  To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

The Debtors:

Performance Powersports Group Investor, LLC
1775 East University Drive
Tempe, Arizona 85281
Attention: Ken Vanden Berg and Peter Kravitz
Email: kenv@colepow.com and pkravitz@provincefirm.com

with a mandated copy (which shall not constitute notice) to:

Counsel to Debtors and Debtors in Possession:

Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Attention: Domenic E. Pacitti and Michael Yurkewicz
Telephone: (302) 426-1189
Email: dpacitti@klehr.com and myurkewicz@klehr.com

4.5.6    *Exhibits.*  All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://omniagentsolutions.com/PerformancePowersports or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

4.5.7    *Severability of Plan Provisions.*  If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance

44

with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

        4.5.8   ***Closing of Chapter 11 Cases.***  The Litigation Trust shall promptly, after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Cases that has been fully administered.

        4.5.9   ***No Admission Against Interest.***  Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtors.

        4.5.10  ***No Waiver.***  Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtors.

        4.5.11  ***Headings.***  The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any manner affects the terms, provisions or interpretation of the Plan.

        4.5.12  ***Governing Law.***  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving any effect to the principles of conflicts of law or such jurisdiction.

        4.5.13  ***Conflicts.***  Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern; provided, however, that in the event of any inconsistency between the Plan or the Confirmation Order and the Litigation Trust Agreement, the Litigation Trust Agreement shall govern and control.

## 5.    FEASIBILITY

    5.1   ***Financial Feasibility Analysis.***

        5.1.1  ***Bankruptcy Code Standard.***  The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless contemplated by the Plan.

5.1.2   ***No Need for Further Reorganization of Debtors.***  The Plan provides for the liquidation of all of the Debtors' Assets.  Accordingly, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors.

# 6.    ALTERNATIVES TO PLAN

6.1    ***Chapter 7 Liquidation.***

6.1.1   ***Bankruptcy Code Standard.***  Notwithstanding acceptance of the Plan by the requisite number of creditors and interestholders of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each Impaired Class of Claims and Interests a recovery that has a value at least equal to the value of the distribution that each such Person would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

6.1.2   ***Plan is in Best Interest of Creditors***.  The Debtors believe that the Plan satisfies this standard because the Plan provides for an orderly liquidation of the Assets. Furthermore, the Debtors believe that the Plan also provides creditors with a degree of certainty that would not exist if the Assets were subject to liquidation outside of the Plan and eliminates the risks and expenses of the marketplace and continual administration of the Debtors.  In this regard, in the event of a liquidation under Chapter 7, some administrative expenses may go unpaid, general unsecured creditors would likely receive no distribution and the following is likely to occur:

i.    Additional administrative expenses, including trustee's commissions, fees for trustee's accountant, attorneys and other professionals likely to be retained, would be incurred with priority over general unsecured claims under section 507(a)(1) of the Bankruptcy Code and would materially reduce creditor recovery.

ii.    Distributions would likely be substantially delayed, while expenses of administration would continue to grow.

Accordingly, it is the Debtors' belief that in a Chapter 7 liquidation of the Debtors, the unsecured creditors would not receive a distribution. Accordingly, the Debtors believe that the Plan is in the best interests of creditors.  *See* Chapter 7 Liquidation Comparison attached hereto as **Exhibit B**.

6.2    ***Risk Factors.***

6.2.1   There can be no assurance by the Debtors that additional proceeds will be generated from the liquidation of the Debtors' Assets.  Even in the event of the liquidation of the Debtors' remaining Assets, there can be no assurance by the Debtors that such sale or sales will generate proceeds for distribution to the holders of Allowed General Unsecured Claims.

6.2.2   There can be no assurance at this time of the number or amount of Claims that will ultimately be Allowed, and thus the projected recoveries disclosed in this Disclosure Statement are highly speculative.  A large amount of Allowed Claims may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Plan.  Some holders are not entitled to any recovery pursuant to the terms of the Plan, and, depending on the

accuracy of the Debtors' various assumptions, even those holders entitled to a recovery under the terms of the Plan may ultimately receive no recovery. Therefore, there can be no assurance by the Debtors that there will be Plan Assets available to make Distributions to holders of Allowed Claims or that there will be sufficient Plan Assets to meet the projected recoveries provided for in this Disclosure Statement.

6.2.3    Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtors' creditors, including holders of Claims in the voting classes.

6.2.4    Although the Debtors have made commercially reasonable efforts to disclose projected recoveries in this Disclosure Statement, it is possible that the amount of Allowed Claims will be materially higher than any range of possible Allowed Claims the Debtors have considered to date, and thus creditor recoveries could be materially reduced or eliminated. In addition, the timing of actual distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guarantee the timing of any recovery on an Allowed Claim.

6.2.5    Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with this requirement. There can be no assurance, however, that the Bankruptcy Court will reach the same conclusion.

6.2.6    The Debtors may not be able to secure confirmation of the Plan. The Debtors will need to satisfy section 1129 of the Bankruptcy Code, which sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, a finding by a bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; (c) the value of distributions to non-accepting holders of claims and interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code; and (d) such plan provides for the payment in full of administrative claims. There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or the Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the Solicitation Procedures, and the voting results are appropriate, the Bankruptcy Court can still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes. If the Plan is not confirmed, it is unclear what distributions, if any, holders of Allowed Claims will receive with respect to their Allowed Claims.

6.2.7    The Bankruptcy Court may determine that the Plan cannot be confirmed under section 1129 of the Bankruptcy Code if the Plan Assets are not sufficient to satisfy Allowed Administrative Claims in full.  If the Plan is not confirmed, it is unclear what distributions, if any, holders of Allowed Claims will receive with respect to their Allowed Claims.

6.2.8    The Bankruptcy Court may determine that the Plan does not meet the requirements for confirmation under the Bankruptcy Code and applicable law, including, without limitation, as a result of the releases conferred upon the Debtors' Insiders and other parties under the Plan.

6.2.9    Article X of the Plan sets forth certain conditions that must be fulfilled before the Effective Date of the Plan can occur.  As of the date of this Disclosure Statement, there can be no assurance that any or all of such conditions in the Plan will be met (or waived) or that other conditions to consummation (if any) will be satisfied.  Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Effective Date will occur.

6.2.10    Any delays of either confirmation or effectiveness of the Plan could result in, among other things, increased administrative costs.  The negative effects of delays in confirmation or effectiveness of the Plan could affect the ultimate approval of the Plan by the Bankruptcy Court.

6.2.11    As discussed in this Disclosure Statement, there are material income tax considerations, risks and uncertainties associated with consummation of the Plan.  Claimholders and interestholders should read carefully the discussion set forth in Section 3.10 of this Disclosure Statement and consult with their own tax advisors to determine any tax implications of the Plan to such holders.

6.3    *Recommendations.*

6.3.1    It is the position of the Debtors that the Plan is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.  Conversion of these Chapter 11 Cases would result in: (i) substantial delays in the distribution of any proceeds (if any) available under such alternative; (ii) increased uncertainty as to whether payments would be made to Unsecured Creditors; and (iii) substantially increased administrative costs.

**THE DEBTORS RECOMMEND THAT YOU VOTE IN FAVOR OF THE PLAN.**

# 7.    CONCLUSION

It is important that you exercise your right to vote on the Plan.  It is the Debtors' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against the Debtors and is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

10434317.v18

IN WITNESS WHEREOF, the Debtors have executed this Disclosure Statement this 12th day of June 2023.

Respectfully submitted,

By:    */s/ Ken Vanden Berg*_____
       Ken Vanden Berg, CFO of the Debtors

49

**EXHBIT A**

**Stipulation Regarding Settlement Term Sheet**

10434317.v18

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PERFORMANCE POWERSPORTS | ) | Case No. 23-10047 (LSS) |
| GROUP INVESTORS, LLC, *et al.*,[3] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## <u>STIPULATION REGARDING SETTLEMENT TERM SHEET</u>

This stipulation (the "<u>Stipulation</u>")[4] is made by and among the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), Kinderhook Industries, LLC, CPS USA Acquisition, LLC, Kinderhook Capital Fund VI, L.P., Kinderhook Capital Fund VI-B, L.P., Tankas Funding VI, LLC and/or any of their affiliates or funds (collectively, "<u>Kinderhook</u>"), Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, and Hisun Motors Corp. USA and/or any of its controlled subsidiaries, affiliates, or related individuals (collectively, "<u>Hisun</u>" and each, a "<u>Party</u>" and together with the Debtors and Kinderhook, the "<u>Parties</u>").  The Parties hereby stipulate and agree as follows:

---

[3]     The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[4]     Capitalized terms used but not defined in this Stipulation shall have the meanings ascribed to them in the *Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated June 12, 2023 (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "<u>Second Amended Plan</u>").

## RECITALS

**WHEREAS**, on January 16, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases");

**WHEREAS**, on January 16, 2023, the Debtors and Kinderhook entered not that certain asset purchase agreement (the "Asset Purchase Agreement") for substantially all of the Debtors' assets;

**WHEREAS**, on March 27, 2023, the Court entered the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing and Approving Sale of Substantially All Assets of the Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, (IV) Authorizing the Debtors to Consummate the Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 270] (the "Sale Order"), thereby approving entry into the Asset Purchase Agreement and consummation of all transaction contemplated thereunder;

**WHEREAS**, on March 31, 2023, the sale contemplated under the Asset Purchase Agreement closed;

**WHEREAS**, on April 10, 2023, Hisun filed a notice of appeal (the "Appeal") of the Sale Order;

**WHEREAS**, on May 2, 2023, the Debtors filed the *Debtors' Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 333] (the "Initial Plan"), the *Disclosure Statement with Respect to Debtors' Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 334] (the "Initial Disclosure Statement") and the *Motion of*

10434317.v18

*the Debtors for an Order (I) Approving the Disclosure Statement; (II) Fixing the Voting Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Plan; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; (V) Approving the Forms of Ballots and Establishment of Procedures for Voting on the Plan; (VI) Approving the Forms of Notices to Non-Voting Classes Under the Plan; (VII) Fixing the Voting Deadline to Accept or Reject the Plan; and (VIII) Approving Procedures for Vote Tabulations in Connection Therewith* [Docket No. 335] (the "<u>Disclosure Statement Motion</u>")*;*

**WHEREAS**, on June 4, 2023, the Debtors filed the *Debtors' Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 363] (the "<u>First Amended Plan</u>") and the *Disclosure Statement with Respect to Debtors' Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 365] (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "<u>First Amended Disclosure Statement</u>");

**WHEREAS**, on June [9], 2023, the Debtors filed the *Debtors' Amended Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Second Amended Plan</u>") and the *Disclosure Statement with Respect to Debtors' Amended Joint Plan of Liquidation of Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "<u>Second Amended Disclosure Statement</u>");

**WHEREAS**, the Parties have agreed to a settlement regarding all open and disputed plan confirmation and Sale Order issues between and among them, as set forth and contemplated by (a) this Stipulation and (b) the Second Amended Plan; and

**WHEREAS**, the Parties have agreed to support the confirmation of the Second Amended Plan, to the extent of and subject to the terms and conditions set forth herein and upon entry of an order by the Court approving this Stipulation.

**NOW**, **THEREFORE,** it is hereby agreed and stipulated by and between the Parties as follows:

## STIPULATION

1.      The foregoing recitals are incorporated herein.

2.      The Parties shall promptly jointly seek a stay of the Appeal pending the Effective Date, at which time Hisun shall promptly withdraw the Appeal with prejudice.

3.      This Stipulation shall terminate on the earlier of (a) the Effective Date or (b) the date that is 90 days from the date hereof.

4.      The Parties agree to support the Plan at any hearing before the Court and take all actions reasonably necessary or reasonably requested by the Debtors to facilitate the implementation of the Second Amended Plan.

5.      Each Party, subject to the terms and conditions hereof, will not directly or indirectly object to, delay, impede, or take any other action to interfere with the acceptance, confirmation, consummation, and implementation of the Second Amended Plan, as applicable.

6.      The Parties shall, in good faith, (a) negotiate all definitive documentation (including the Second Amended Plan and Confirmation Order); (b) work toward timely confirmation of the Second Amended Plan and consummation of the Restructuring Transactions (as defined therein); and (c) endeavor to reach the Effective Date no later than August 31, 2023.

7.      To the extent any Party holds a Claim against the Debtors entitling such Party to vote to accept or reject the Second Amended Plan, such Party shall vote all such Claims to accept the Second Amended Plan (upon proper solicitation) provided, that, for the avoidance of doubt, it

10434317.v18

may indicate on its ballot that it is opting out of providing any releases under the Second Amended Plan.

8.    No Party shall make any public statement, whether in a pleading filed with the Court, a press release, or otherwise, that is inconsistent with this Stipulation and the obligations hereunder in any respect.

9.    The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation.

10.   The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation, and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

[*Remainder of page intentionally left blank*]

10434317.v18

**STIPULATED AND AGREED TO:**

Dated: June 12, 2023

**SAUL EWING LLP**

/s/ Mark Minuti
Mark Minuti (DE Bar No. 2659)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Email:  mark.minuti@saul.com

-and-

John D. Beck (admitted *pro hac vice*)
Jennifer Y. Lee (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Email: john.beck@hoganlovells.com
          jennifer.lee@hoganlovells.com

*Counsel to Chongqing Huansong Industries
(Group) Co., Ltd., Chongqing Huansong Science
and Technology Industrial Co., Ltd., and Vietnam
New Century Industrial Company Limited*

**CIARDI CIARDI & ASTIN**

/s/ Daniel K. Astin
Daniel K. Astin (DE Bar No. 4068)
1204 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Email: dastin@ciardilaw.com

-and-

Albert A. Ciardi III
Walter W. Gouldsbury III
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Email: aciardi@ciardilaw.com
          wgouldsbury@ciardilaw.com

*Counsel to Hisun Motors Corp. USA*

**KLEHR HARRISON HARVEY
BRANZBURG LLP**

/s/ Domenic E. Pacitti
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
919 North Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Email: dpacitti@klehr.com
          myurkewicz@klehr.com
          sveghte@klehr.com

-and-

Morton R. Branzburg, Esquire
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-3007
Email: mbranzburg@klehr.com

*Counsel to the Debtors*

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ James E. O'Neill
Laura Davis Jones (DE Bar No.2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
          joneill@pszjlaw.com
          ecorma@pszjlaw.com

-and-

Brian Schartz, P.C.
Allyson Smith, Esquire
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 909-3217
Email: brian.schartz@kirkland.com
        allyson.smith@kirkland.com

-and-

William E. Arnault, Esquire
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email: william.arnault@kirkland.com

*Counsel to Kinderhook*

10434317.v18

**EXHIBIT B**

**Chapter 7 Liquidation Comparison**

| | Chapter 11 | Chapter 7 |
|---|---|---|
| *Forecasted Cash Available for Distribution as of Effective Date* | | |
| Cash & Equivalents | $750,000.00 | $750,000.00 |
| Trust Note | $500,000.00 | $0.00 |
| Sale of remaining miscellaneous assets | $0.00 | $0.00 |
| Professional Fee Escrow | $1,200,000.00 | $1,200,000.00 |
| Other Cash Receipts | $0.00 | $0.00 |
| **TOTAL CASH & RECEIPTS AS OF EFFECTIVE DATE** | $1,250,000.00 | $750,000.00 |
| *Forecasted Allowed Claims as of Plan Effective Date* | | |
| Professional Fee Claims | $1,200,000.00 | $1,200,000.00 |
| Administrative Claims | $0.00 | $0.00 |
| 503(b) (9) Claims | $0.00 | $0.00 |
| DIP Facility Claim | $0.00 | $0.00 |
| Priority Tax Claims | $0.00 | $0.00 |
| Secured Tax Claims | $0.00 | $0.00 |
| Other Secured Claims | $0.00 | $0.00 |
| Other Priority Claims | $0.00 | $0.00 |
| 2021 Credit Agreement Claims | $0.00 | $53,000,0000.00 |
| Intercompany Claims | $0.00 | $0.00 |
| Subordinated Claims | $0.00 | $0.00 |
| Interests | $0.00 | $0.00 |
| **CASH AVAILABLE TO PURSUE RECOVERY FOR GENERAL UNSECURED CREDITORS** | $1,250,000.00 | $750,000.00 |
| **Incremental Chapter 7 Fees & Costs** | | |
| Trustee Fee % (3% of all Cash Distributed) | $0.00 | unknown |
| Attorney and Other Professional Fees including Contingency Counsel | $0.00 | unknown |
| **TOTAL INCREMENTAL CHAPTER 7 FEES & COSTS** | N/A | unknown |
| **CASH AVAILABLE TO PURSUE RECOVERY FOR GENERAL UNSECURED CREDITORS** | $1,250,000.00 | $750,000.00 |

10434317.v18