## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PERFORMANCE POWERSPORTS | ) |  |
| GROUP INVESTORS, LLC, *et al.*,[1] | ) | Case No. 23-10047 (LSS) |
|  | ) |  |
| Debtor. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Related to Docket No. 385** |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that on June 15, 2023, the above-captioned debtor and debtor in possession (collectively, the "<u>Debtors</u>") filed the *Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 385] (as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this plan supplement (this "<u>Plan Supplement</u>") in support of the Plan with respect to the following documents attached hereto:

- **Exhibit A** — the identity of the Litigation Trustee
- **Exhibit B** — the identity of the Members of the Litigation Trust Oversight Committee
- **Exhibit C** — the form of Litigation Trust Agreement
- **Exhibit D** — the form of Litigation Trust Note
- **Exhibit E** — the form of Plan Administrator Agreement
- **Exhibit F** — the identity of the Plan Administrator

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. The documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in the Plan Supplement remain subject to ongoing review, revision, and negotiation

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2] Capitalized terms used and not defined herein have the meanings given to them in the Plan.

among the Debtors and interested parties with respect thereto. The Debtors reserve the right to alter, amend, modify, or supplement the documents in this  Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court; *provided* that if the document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, the Debtors will file a blackline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Plan Supplement, and related documents can be viewed on the Court's website at https://ecf.deb.uscourts.gov.    Further information may be obtained by contacting the undersigned counsel for the Debtor.

| | |
|---|---|
| Dated:  July 10, 2023 | */s/ Domenic E. Pacitti* |
| Wilmington, Delaware | Domenic E. Pacitti (DE Bar No. 3989) |
| | Michael W. Yurkewicz (DE Bar No. 4165) |
| | Sally E. Veghte (DE Bar No. 4762) |
| | **KLEHR HARRISON HARVEY BRANZBURG LLP** |
| | 919 North Market Street, Suite 1000 |
| | Wilmington, Delaware 19801 |
| | Telephone:    (302) 426-1189 |
| | Email:  dpacitti@klehr.com |
| |             myurkewicz@klehr.com |
| |             sveghte@klehr.com |
| | -and- |
| | Morton R. Branzburg (admitted pro hac vice) |
| | **KLEHR HARRISON HARVEY BRANZBURG LLP** |
| | 1835 Market Street, Suite 1400 |
| | Philadelphia, Pennsylvania 19103 |
| | Telephone:    (215) 569-3007 |
| | Email:  mbranzburg@klehr.com |
| | |
| | *Counsel to the Debtors and Debtors in Possession* |

# __Exhibit A__

**Identity of the Litigation Trustee**

The Litigation Trustee shall be Peter Kravitz.

# <u>Exhibit B</u>

**Identity of the Members of the Litigation Trust Oversight Committee**

The Members of the Litigation Trust Oversight Committee shall be:

one  (1) member selected by Vietnam New Century Industrial Co., Ltd.;

one (1) member selected by the Debtors who shall be Jillian Lin of Dundon Advisors; and

one (1)  independent member selected by Purchaser.

# Exhibit C

**Form of Litigation Trust Agreement**

# LITIGATION TRUST AGREEMENT

This litigation trust agreement (the "Litigation Trust Agreement"), dated as of [●], 2023, by and among Performance Powersports Group Investor, LLC and each of its debtor affiliates (collectively, the "Debtors," and the Debtors on and after the Effective Date (as defined below), the "Reorganized Debtors"); CPS USA Acquisition, LLC (the "Buyer" or "Kinderhook"); Peter Kravitz or such other person as the Debtors and Kinderhook agree upon, solely in his/her representative capacity as trustee of the Litigation Trust (as defined below) (the "Litigation Trustee"); and one (1) member selected by Vietnam New Century Industrial Co., Ltd, ("Hisun"), Jillian Lin of Dundon Advisors, and one (1) independent member selected by Buyer, as members of the oversight committee under the Litigation Trust (the "Litigation Trust Oversight Committee," and together with the Debtors, the Reorganized Debtors, Kinderhook, and the Litigation Trustee, the "Parties"), is executed in order to create and establish a litigation trust (the "Litigation Trust") in connection with, and subject to approval by the Bankruptcy Court (as defined herein) of, the Debtors' plan under chapter 11 of the Bankruptcy Code, which shall be in form and substance acceptable to Kinderhook in its sole discretion (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "Plan").

## WITNESSETH

WHEREAS, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 16, 2023 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on March 27, 2023, the Bankruptcy Court entered the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing and Approving Sale of Substantially All Assets of the Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, (IV) Authorizing the Debtors to Consummate the Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 270] (the "Sale Order") which, among other things, approved the Debtors' entry into that certain Fourth Amended and Restated Asset Purchase Agreement dated March 26, 2023 by and among Performance Powersports Group Investor, LLC, Performance Powersports Group Holdings, Inc., and their direct and indirect subsidiaries set forth in Schedule I attached thereto and the Buyer (the "APA") for the sale of substantially all assets of the Debtors free and clear of all liens, claims, encumbrances, and other interests (except certain assumed liabilities as set forth in the APA) (the "Sale");

WHEREAS, the APA provides, among other things, that the parties thereto shall enter into a litigation trust agreement upon closing of the Sale pursuant to which a litigation trust shall be established;

WHEREAS, the Litigation Trust is created on behalf of and for the ratable benefit of (a) Kinderhook and (b) holders of allowed general unsecured Claims against the Debtors (the "GUC Holders" and, together with Kinderhook, collectively, the "Litigation Trust

Beneficiaries") that will be entitled to distributions on account of such claims pursuant to the (the "Plan")[1] and for the pursuit of any and all Litigation Trust Causes of Action (as defined herein).

WHEREAS, the Litigation Trust is established hereunder for the sole purpose of prosecuting the Litigation Trust Causes of Action and liquidating and distributing the Litigation Trust Property (as defined below) to or for the benefit of the Litigation Trust Beneficiaries (the "Litigation Trust Interests"), with no objective or authority to continue or engage in the conduct of a trade or business;

WHEREAS, the Litigation Trust will (a) receive (i) from the Debtors, all of the Debtors' respective rights and interests in the Litigation Trust Causes of Action and (ii) from Kinderhook, the Initial Funding (as defined below); (b) allow the Litigation Trustee to prosecute and settle the Litigation Trust Causes of Action, pursuant to the terms of this Litigation Trust Agreement; (c) hold the Litigation Trust Assets, the Initial Funding, any Supplemental Funding (as defined below), and all dividends, rents, royalties, income, proceeds and other receipts of, from or attributable to the Litigation Trust Assets (the "Litigation Trust Proceeds," and together with the Litigation Trust Assets, the Initial Funding, and any Supplemental Funding, the "Litigation Trust Property") in trust for the benefit of the Litigation Trust Beneficiaries as provided herein; and (d) oversee and direct the prosecution and liquidation of the Litigation Trust Property held by it for the benefit of, and distribute the proceeds therefrom to, the Litigation Trust Beneficiaries pursuant to the terms of this Litigation Trust Agreement;

WHEREAS, the Litigation Trust is intended to qualify as (a) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder ("Treasury Regulations"), including Treasury Regulation section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust and (b) a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671-677 of the IRC; and

WHEREAS, the Litigation Trustee shall have all powers necessary to implement the provisions of this Litigation Trust Agreement and administer the Litigation Trust as provided herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order (as defined below), in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

---

[1] For the avoidance of doubt, Buyer's $1,000,000 on account of unpaid fees under that certain Management Services Agreement dated as of October 8, 2021 by and between Performance Powersports Group Purchaser, Inc. and Kinderhook Industries VI, L.P. shall be deemed allowed as against the Debtors or the Litigation Trust, as applicable, as a general unsecured Claim (the "Buyer GUC") and Buyer shall constitute a "GUC Holder" on account of such Claim and be entitled to distributions from the Litigation Trust Proceeds in accordance with the terms hereof *pro rata* with other GUC Holders.

# ARTICLE I
## DEFINITIONS

For all purposes of this Litigation Trust Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the APA.

# ARTICLE II
## ESTABLISHMENT AND DECLARATION OF THE LITIGATION TRUST

2.1     Establishment of the Litigation Trust and Appointment of the Litigation Trustee and the Litigation Trust Oversight Committee.

(a)     Litigation Trust Assets & Litigation Trust Causes of Action. As used herein, "Litigation Trust Assets" and "Litigation Trust Causes of Action" shall mean, collectively, any and all Claims of the Debtors against Richard Godfrey, Todd Gentry, and Christopher Hunter and affiliated entities of any nature (excluding, for the avoidance of doubt, any Claims against Rick Canas, Paul Gift, Ron Lackey, and Kinderhook Industries, LLC or any of its Affiliates[2]).

The Litigation Trust Causes of Action and Litigation Trust Assets shall not include at any time (a) any Claims or Causes of Action against Kinderhook, any Kinderhook Affiliate or any Kinderhook-Related Party[3] (it being understood that Richard Godfrey, Todd Gentry, and Christopher Hunter shall not be construed as Kinderhook-Related Parties), (b) any Claims or Causes of Action of any nature against Rick Canas, Paul Gift, and Ron Lackey, or (c) any direct Claims of Kinderhook.

Notwithstanding anything to the contrary herein, (i) the Litigation Trust shall not be assigned (and will not in the future be assigned), and shall not be authorized to bring any Claims or Causes of Action of any nature other than the Litigation Trust Causes of Action, (ii) the Litigation Trust shall not be assigned, and the Litigation Trust shall not be authorized to bring, any Claim or Cause of Action that is released pursuant to the release approved in the Final DIP Order (the "Debtor Releases")[4], and (iii) no party shall be permitted to assign or contribute any Claims,

---

[2]     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

[3]     "*Related Party*" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

[4]     "*Final DIP Order*" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 269].

10566882.v2

causes of action, or assets, other than the Litigation Trust Assets and the Litigation Trust Causes of Action, to the Litigation Trust.

(b)    <u>Establishment of Trust</u>.    Pursuant to the Plan and the order of the Bankruptcy Court confirming the Plan, which shall be in form and substance acceptable to Kinderhook in its sole discretion (the "<u>Confirmation Order</u>") and in accordance with the applicable provisions of the Bankruptcy Code, the Reorganized Debtors and the Litigation Trustee hereby establish, as of the effective date of the Plan (as defined in the Plan, the "<u>Effective Date</u>"), the Litigation Trust on behalf of and for the Litigation Trust Beneficiaries.

(c)    <u>Name and Office</u>.    This Litigation Trust shall be known as the "PPG Litigation Trust," in which name the Litigation Trustee may conduct the affairs of the Litigation Trust.  The office of the Litigation Trust shall be in care of the Litigation Trustee at its trust office or at any other address that the Litigation Trustee may designate by written notice to the Litigation Trust Beneficiaries.

(d)    <u>Appointment of the Litigation Trustee</u>.    The Litigation Trustee is hereby appointed by the Debtors as trustee of the Litigation Trust, effective as of the Effective Date, and shall have all the rights, powers, and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Litigation Trust.  The Litigation Trustee is, and any successor trustee serving from time to time hereunder shall be, a "United States person" as such term is defined in section 7701(a)(30) of the IRC.  The Litigation Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the Litigation Trust.

(e)    <u>Appointment of the Litigation Trust Oversight Committee</u>.    The Litigation Trust Oversight Committee (each such Person and any other Person appointed to be a member of the Litigation Trust Oversight Committee pursuant to the Plan, the Confirmation Order, and this Litigation Trust Agreement, a "<u>Member</u>") is hereby appointed, effective as of the Effective Date, pursuant to the terms and conditions set forth in Section 8.1(a) of this Litigation Trust Agreement.

(f)    <u>Acceptance of the Litigation Trust</u>.    The Litigation Trustee hereby agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries, subject to the provisions of the Plan, the Confirmation Order, and this Litigation Trust Agreement, and shall serve in accordance with the terms of this Litigation Trust Agreement.

(g)    <u>Incidents of Ownership</u>.    The Litigation Trust Beneficiaries shall be the sole beneficiaries of the Litigation Trust and the Litigation Trust Property, and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein and in the Plan, including but not limited to, those powers set forth in Article V herein.

(h)    <u>No Reversion to the Debtors or the Reorganized Debtors</u>.    In no event shall any part of the Litigation Trust Property revert to or be distributed to any of the Debtors or any of the Reorganized Debtors.

(i)    <u>Duties of the Debtors or the Reorganized Debtors; Reimbursement of Expenses.</u>  The Debtors or the Reorganized Debtors shall have no responsibility or obligation with respect to the Litigation Trust Causes of Action after the Effective Date, other than (i) to comply

with Section 2.2 herein; (ii) following any transfers of cash or other property to the Litigation Trust, to provide, or cause to be provided, the Litigation Trustee with any reports or statements required under the Treasury Regulations; and (iii) otherwise to use reasonable efforts to cooperate with the Litigation Trustee.

(j)    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the Litigation Trust.

2.2    Transfer of the Litigation Trust Assets.

(a)    Transfer of the Litigation Trust Causes of Action.  Pursuant to the Plan, as of the Effective Date, in partial satisfaction of all allowed general unsecured Claims, the Debtors, the Reorganized Debtors, and Kinderhook shall irrevocably and absolutely transfer, assign, convey, and deliver, and shall be deemed to have transferred, assigned, conveyed, and delivered, to the Litigation Trust, in trust to and for the benefit of the Litigation Trust Beneficiaries for the uses and purposes stated herein, without recourse, all of their respective rights, title, and interests (whether legal, beneficial, or otherwise) in and to any and all Litigation Trust Causes of Action, including any and all claims therein, free and clear of any and all liens, claims, encumbrances, or interests of any kind in such property of the Debtors, the Reorganized Debtors, Kinderhook, or any other Person or Entity.  With respect to the Debtors and Reorganized Debtors, the transfer, assignment, conveyance, and delivery described in the foregoing sentence shall include, without limitation, any and all attorney-client privileges, work-product privileges, or any other evidentiary privileges or immunity (collectively, the "Transferred Privileges") in respect of the Litigation Trust Causes of Action that, prior to the Effective Date, belonged to the Debtors or Kinderhook pursuant to applicable federal, state and other law, which shall vest in the Litigation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trustee and the Litigation Trust Beneficiaries.  To the extent any Litigation Trust Causes of Action cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Causes of Action shall be deemed to have been retained by the Debtors, the Reorganized Debtors, or Kinderhook, as applicable, and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors, the Reorganized Debtors, or Kinderhook, as applicable, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Causes of Action on behalf of the Debtors, the Reorganized Debtors, or Kinderhook.  Notwithstanding the foregoing, all net proceeds of such Litigation Trust Causes of Action shall be transferred to the Litigation Trust to be distributed to holders of the Litigation Trust Interests consistent with the Plan and this Litigation Trust Agreement.

(b)    Transfer of Documents and Information.  For so long as the Litigation Trust exists, the Debtors and the Reorganized Debtors shall (i) ensure that any and all documents and information relating to the Litigation Trust Causes of Action (including those maintained in electronic format and original documents) that are in their possession, custody or control are preserved or transferred to the Litigation Trust, (ii) upon the request of the Litigation Trustee, provide such documents or information to the Litigation Trust, and (iii) upon the request of the Litigation Trustee, provide access to the Litigation Trust to the Debtors' or Reorganized Debtors'

5

agents, advisors, attorneys, accountants or any other professionals employed, retained or consulted by the Debtors or the Reorganized Debtors with knowledge of matters relevant to the Litigation Trust Causes of Action, including by making such parties available to provide deposition, trial or other testimony in connection with the Litigation Trust Causes of Action.  Upon the request of the Litigation Trustee, to the extent permitted by law, the Debtors or the Reorganized Debtors, as applicable, shall provide the Litigation Trustee with a list of all documents and information relating to the Litigation Trust Causes of Action in the Debtors' or the Reorganized Debtors' possession, custody or control (including documents or information held by the Debtors or the Reorganized Debtors, or any of their employees, agents, advisors, attorneys, accountants or any other professionals).  Such list shall contain a description of each document, to the extent feasible and permitted by law, as well as the name of the Person or Entity holding such document.  With the exception of publicly available information, upon the request of the Litigation Trustee, the Debtors or the Reorganized Debtors, as applicable, shall promptly provide to the Litigation Trustee such documents or information (including those maintained in electronic format and original documents), whether held by any of them or any of their respective agents, advisors, attorneys, accountants or other professionals.  Notwithstanding the foregoing provisions of this paragraph, in the event the Debtors or the Reorganized Debtors, as applicable, determine that any such provision of information violates any law or legal proceeding or waives any applicable privilege, protection or immunity (other than any privilege, protection, or immunity that is a Transferred Privilege), the Debtors or the Reorganized Debtors shall take all reasonable measures to provide such information in a manner that avoids any such harm or consequence, including retention of the specific files.

(c)    As soon as practicable following the Effective Date, the Debtors and Kinderhook shall transfer to the Litigation Trust all insurance policies relevant to the Litigation Trust's prosecution of the Litigation Trust Causes of Action, including, without limitation, the Debtor's director & officer liability policies; provided, however, that such insurance policies do not include the representation and warranty coverage under the Representations and Warranties Insurance Policy.

(d)    At the reasonable request and upon reasonable advance written notice of the Litigation Trustee, the Debtors, the Reorganized Debtors, and Kinderhook, and any party under their control shall, at the cost and expense of the Litigation Trust, (i) execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), (ii) take, or cause to be taken, all such further actions necessary or as the Litigation Trustee may reasonably request in order to evidence or effectuate the transfer of the Litigation Trust Causes of Action and the Transferred Privileges to the Litigation Trust and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan, and (iii) cooperate with the Litigation Trustee in the prosecution of the Litigation Trust Causes of Action.  Notwithstanding anything to the contrary herein, with the exception of the Transferred Privileges, which shall vest exclusively in the Litigation Trust following the Effective Date, nothing contained in this Litigation Trust Agreement shall restrict the Debtors', the Reorganized Debtors', or Kinderhook's ability to use any of their own instruments, documents, books, records, and work product.

    2.3    <u>Funding of the Litigation Trust</u>.

    (a)    On the Effective Date, subject to the satisfaction (or waiver by Kinderhook in its sole discretion) of the Funding Conditions (as defined below), CPS USA Acquisition, LLC (the "<u>Litigation Trust Initial Funder</u>") will provide to the Litigation Trust financing (the "<u>Initial Funding</u>"), deposited into the Litigation Trust Account (as defined in Section 6.1(e) herein), comprised of $500,000.00 in the form of a loan to the Litigation Trust pursuant to the litigation trust note attached hereto as **<u>Exhibit A</u>** (the "<u>Litigation Trust Note</u>," and such funding thereunder, the "<u>Initial Note Funding</u>"). It is acknowledged and understood by the Parties that (a), contemporaneously with the closing of the Sale, Kinderhook provided to the Debtors financing comprised of $750,000.00 in cash in accordance with the APA, which is intended to be provided by the Debtors to the Litigation Trust to administer the Litigation Trust and pay for the Litigation Trust's fees, expenses, and costs in accordance with Section 2.3(c) and (b) Kinderhook shall have no obligation to provide financing to the Litigation Trust other than the Initial Funding on the Effective Date and subject to the satisfaction (or waiver by Kinderhook in its sole discretion) of the Funding Conditions.

    (b)    "Funding Conditions" means, collectively, (i) the Litigation Trust Note, in form and substance acceptable to Kinderhook in its sole discretion, shall have been approved by order of the Bankruptcy Court and executed and delivered by all parties thereto and shall be in full force and effect, and no amendment, supplement or modification thereof shall have been entered into without the written approval of Kinderhook in its sole discretion; (ii) the Bankruptcy Court shall have entered the Confirmation Order approving the Plan, each in form and substance acceptable to Kinderhook in its sole discretion, and such Confirmation Order shall be in full force and effect and shall not have been vacated, reversed, modified amended or stayed and not be subject to a pending appeal or motion or motion for leave to appeal or other proceeding to set aside such order or to challenge the relief provided for in such order; (iii) the "effective date" of the Plan (as defined in the Plan) shall have occurred or shall occur concurrently with the date of the Initial Funding.

    (c)    The proceeds of the Initial Funding shall be used to administer the Litigation Trust and pay the reasonable, documented, out-of-pocket fees, expenses, and costs of the Litigation Trust incurred after the Effective Date, including, without limitation, (i) the reasonable, documented, out-of-pocket fees and expenses incurred after the Effective Date by advisors or professionals retained by the Litigation Trustee (collectively, the "<u>Litigation Trust Professionals</u>"), (ii) the Litigation Trustee Fees (as defined herein), and (iii) any costs incurred by the Litigation Trust after the Effective Date as a result of the chapter 11 case of Performance Powersports Group Investor, LLC remaining open after the other Debtors' Chapter 11 Cases are closed (collectively, the "<u>Litigation Trust Fees and Expenses</u>").

    (d)    The Litigation Trustee shall be authorized to seek supplemental or alternative funding for the Litigation Trust (the "<u>Supplemental Funding</u>," and such financiers, the "<u>Litigation Trust Supplemental Funders</u>," and together with the Litigation Trust Initial Funders, the "<u>Litigation Trust Funders</u>") in the event that the Litigation Trustee, after consultation with the Litigation Trust Oversight Committee, determines at any time that additional funding is necessary to administer the Litigation Trust in accordance with this Litigation Trust Agreement.

10566882.v2

(e)     The Litigation Trust Funders shall irrevocably and absolutely transfer to the Litigation Trust the Initial Funding and any Supplemental Funding in trust to and for the benefit of the Litigation Trust Beneficiaries for the uses and purposes stated herein.

(f)     The Initial Note Funding shall be entitled to a preferred return as set forth in the Litigation Trust Note.  For the avoidance of doubt and notwithstanding any provision herein to the contrary, the Litigation Trust shall not make any distributions to the Litigation Trust Beneficiaries nor repay any part of any Supplemental Funding unless and until the Initial Note Funding has been repaid in full in accordance with the stated terms of the Litigation Trust Note (the "Initial Note Funding Reimbursement").  For the further avoidance of doubt, amounts payable in respect of Contingency Fees (as defined below) shall not be applied towards the payment of the Initial Note Funding Reimbursement, and the Litigation Trust may pay any Contingency Fees to the applicable Litigation Trust Professional in accordance with the terms and conditions of the applicable fee agreement between the Litigation Trust and such Litigation Trust Professional, which payment shall not be considered a breach of the previous sentence.

(g)     All Litigation Trust Proceeds received by the Litigation Trust from the pursuit of any Litigation Trust Causes of Action, net of any amounts payable out of any such proceeds to any Litigation Trust Professional pursuant to a contingency fee arrangement (such amounts, "Contingency Fees"), and which are payable under such agreement only upon collection of any such proceeds, shall be added to the Litigation Trust Property and held as a part thereof (and title thereto shall be vested in the Litigation Trust).  For the avoidance of doubt, the Litigation Trust may pay any Contingency Fees to the applicable Litigation Trust Professional in accordance with the terms and conditions of the applicable fee agreement between the Litigation Trust and such Litigation Trust Professional.

(h)     The Litigation Trustee may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan, the Confirmation Order, and this Litigation Trust Agreement, including in connection with retaining Litigation Trust Professionals and/or entering into agreements pursuant to Sections 5.6(a) and 5.6(b) herein.  All Litigation Trust Fees and Expenses shall be paid by, and solely the obligation of, the Litigation Trust.  All Litigation Trust Fees and Expenses shall be paid by the Litigation Trust from the proceeds of the Initial Funding and any Supplemental Funding, and, to the extent not paid in full following such payment, and subject to Section (j) herein, the Litigation Trust Proceeds.  After payment in full of the Initial Note Funding Reimbursement and Litigation Trust Fees and Expenses, and in accordance with Section 6.1 herein, the Litigation Trustee, after consultation with the Litigation Trust Oversight Committee, may elect to reserve and withhold from any distributions to the Litigation Trust Beneficiaries such amounts as the Litigation Trustee, after consultation with the Litigation Trust Oversight Committee, in his/her business judgement, deems necessary and proper to fund any Litigation Trust Fees and Expenses reasonably projected to be incurred, in connection with prosecuting, settling, or otherwise monetizing the Litigation Trust Causes of Action and distributing the Litigation Trust Proceeds.

(i)     In the event that the Litigation Trust Proceeds are insufficient to satisfy in full the Initial Note Funding Reimbursement, then the Litigation Trust Proceeds shall be allocated ratably among the Litigation Trust Funders, unless the Litigation Trustee, after consultation with

the Litigation Trust Oversight Committee, determines otherwise in the exercise of his/her fiduciary duties.

(j)     Any failure or inability of the Litigation Trustee to obtain funding for the Litigation Trust will not affect the enforceability of the Litigation Trust.

2.4     <u>Title of Litigation Trust Property</u>.

(a)     Upon the Effective Date, title to the Litigation Trust Property shall pass to the Litigation Trust free and clear of all claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)     Upon the transfer to the Litigation Trust of the Litigation Trust Property, (i) the Litigation Trustee, on behalf of the Litigation Trust Beneficiaries, shall succeed to all of the Debtors' and the Reorganized Debtors' rights, title, and interests in and to the Litigation Trust Property and to all of Kinderhook's rights, title, and interests in and to the Litigation Trust Causes of Action, and the Debtors, the Reorganized Debtors, or Kinderhook shall have no further interests or rights in or with respect to the Litigation Trust Property or Litigation Trust Causes of Action, as applicable, or the Litigation Trust, except as expressly set forth herein, and (ii) no creditor of or holder of a claim against or interest in any Debtor or any Reorganized Debtor (other than the Litigation Trust Beneficiaries in their capacities as such) will have any claim against or recourse to the Litigation Trust or any of the Litigation Trust Property.  The Litigation Trustee on behalf of the Litigation Trust as successor-in-interest to the Debtors' estates (for the limited purpose of fulfilling the Litigation Trustee's duties under this Litigation Trust Agreement) may execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of the Litigation Trust Property to the Litigation Trust and consummation of the transactions contemplated hereby and by the Plan.

(c)     With respect to all Litigation Trust Property, the Litigation Trustee will directly and indirectly be the representative of each Debtor's estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Litigation Trust Agreement and in the Plan.  The Litigation Trust will be the successor-in-interest to each of the Debtors with respect to any action that was or could have been commenced by any of the Debtors prior to the Effective Date that is a Litigation Trust Cause of Action and shall be deemed substituted for the same as the party in such litigation.  The Litigation Trust may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that any Debtor or its estate may hold against any Person or Entity, that constitute Litigation Trust Causes of Action, in accordance with the terms of this Litigation Trust Agreement including, but not limited to, Section 5.2 herein.  All Litigation Trust Causes of Action are preserved and retained and may be enforced by the Litigation Trust as the representative of each Debtor's estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Litigation Trustee will be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan insofar as such matters affect the Litigation Trust or the Litigation Trust Property.

**ARTICLE III**
**NATURE AND PURPOSE OF THE LITIGATION TRUST**

3.1     Purpose.

(a)     The Litigation Trust is established solely for the purposes of (i) serving as a mechanism for prosecuting all Litigation Trust Causes of Action, monetizing the Litigation Trust Assets, and distributing the Litigation Trust Proceeds in a timely fashion (A) to pay the Initial Note Funding Reimbursement and (B) to and for the benefit of the Litigation Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement and (ii) liquidating and administering the Litigation Trust Property in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust.  The Litigation Trustee shall, in an expeditious and orderly manner, monetize and convert the Litigation Trust Property to Cash and make timely distributions to the holders of Litigation Trust Interests, in the manner and in the proportions set forth herein.

(b)     The Litigation Trustee shall prosecute or resolve the Litigation Trust Causes of Action with the goal of ensuring that any resolution or recovery is Cash and/or cash equivalents.

(c)     The Litigation Trustee shall be obligated to make continuing reasonable efforts to timely resolve all claims related to or comprising the Litigation Trust Causes of Action and not unreasonably prolong the duration of the Litigation Trust.  The liquidation of the Litigation Trust Causes of Action may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims or Causes of Action or otherwise, in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement.

3.2     Relationship.  This Litigation Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Trustee, the Litigation Trust Oversight Committee (or any Member thereof), or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trustee and the Litigation Trust Oversight Committee, on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal and agency relationship, and their rights shall be limited to those conferred upon them by the Plan, the Confirmation Order and this Litigation Trust Agreement.

3.3     Relationship to and Incorporation of the Plan and the Confirmation Order.  The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Litigation Trust Agreement incorporates the provisions thereof by reference.  If any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, each such document

10

shall have controlling effect in the following rank order: the Confirmation Order, the Plan, this Litigation Trust Agreement.

3.4    Conflict of a Member Litigation Trust Oversight Committee Member. If a Member has a conflict of interest with respect to any matters under this Litigation Trust Agreement, such Member shall recuse himself/herself from consideration of, or decision on, such matter. If such Member refuses to do so, the Litigation Trustee, upon the advice of counsel and in consultation with the other non-conflicted Members, may remove such Member from consideration of, or decision on, such matter.

## ARTICLE IV
## LITIGATION TRUST INTERESTS

4.1    Rights of Holders of the Litigation Trust Interests.

(a)    Each Litigation Trust Beneficiary shall be a holder of Litigation Trust Interests in proportion to its right to distributions from the Litigation Trust under Article VI herein. On the date hereof, the Litigation Trust shall issue the Litigation Trust Interests to the Litigation Trust Beneficiaries in accordance with the terms of the Plan, the Confirmation Order, and this Litigation Trust Agreement.

(b)    A holder of a Litigation Trust Interest shall have no title to, right to, possession of, management of, or control of, the Litigation Trust Property, except as expressly provided herein.  No surviving spouse, heir or devisee of any deceased holder of a Litigation Trust Interest shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Litigation Trust Property, but the whole title to all the Litigation Trust Property shall be vested in the Litigation Trust and the sole interest of the holders of Litigation Trust Interests shall be the rights and benefits given to such persons under this Litigation Trust Agreement.  The record holder of Litigation Trust Interests will be entitled to participate in the rights due to a holder of Litigation Trust Interests hereunder.

4.2    No Legal Title in Holders of Litigation Trust Interests.

(a)    The ownership of the beneficial interests in the Litigation Trust shall not entitle the Litigation Trust Beneficiaries to any title in or to the Litigation Trust Property as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Property or to require an accounting.

(b)    No transfer by operation of law or otherwise of the right, title and interest of any holder of a Litigation Trust Interest in and to the Litigation Trust Property or hereunder shall operate to terminate this Litigation Trust or entitle any successor or transferee of such holder of a Litigation Trust Interest to an accounting or to the transfer to it of legal title to any part of the Litigation Trust Property.

(c)    The beneficial interests in the Litigation Trust will be represented by book entries on the books and records of the Litigation Trust.  The Litigation Trust will not issue any certificate or certificates to evidence any beneficial interests in the Litigation Trust.  Each holder of a Litigation Trust Interest shall take and hold its uncertificated beneficial interest subject to all

11

of the terms and provisions of this Litigation Trust Agreement, the Confirmation Order, and the Plan. The interest of a holder of a Litigation Trust Interest is in all respects personal property, and upon the death, insolvency or incapacity of an individual holder of a Litigation Trust Interest, such holder's interest shall pass to the legal representative of such holder of a Litigation Trust Interest and such death, insolvency or incapacity shall not terminate or affect the validity of this Litigation Trust Agreement.

4.3     Registry of Beneficial Interests.

(a)     The Litigation Trustee shall appoint a registrar, which may be the Litigation Trustee (the "Registrar"), for the purpose of recording ownership of the Litigation Trust Interests as herein provided. The Registrar, if other than the Litigation Trustee, shall be an institution acceptable to the Litigation Trustee, after consultation with the Litigation Trust Oversight Committee. For its services hereunder, the Registrar, unless it is the Litigation Trustee, shall be entitled to receive reasonable compensation from the Litigation Trust as a cost of administering the Litigation Trust.

(b)     The Litigation Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Litigation Trust Oversight Committee, a registry of the Litigation Trust Beneficiaries (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee and the Registrar may prescribe.

(c)     The Litigation Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Registrar and the Litigation Trustee, and in accordance with the reasonable regulations prescribed by the Registrar and the Litigation Trustee, to inspect and, at the sole expense of the Litigation Trust Beneficiary seeking the same, make copies of the Trust Register, in each case for a purpose reasonably related to such Litigation Trust Beneficiary's interest in the Litigation Trust.

(d)     Except as otherwise required by law, references in this Litigation Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the Trust Register maintained by the Registrar, which may be the Litigation Trustee, and shall not mean any beneficial owner not recorded on such Trust Register. Unless expressly provided herein, the Litigation Trustee may establish a record date, which it deems practicable for determining the holders for a particular purpose. The distribution of Litigation Trust Interests to the holders of Litigation Trust Interests shall be accomplished as set forth herein.

4.4     Exemption From Registration.

(a)     The Litigation Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended, (the "Securities Act") or any state securities law. It is intended that the Litigation Trust Interests shall not constitute "securities" under applicable laws. To the extent the Litigation Trust Interests are deemed to be "securities" under applicable laws, the issuance of the Litigation Trust Interests to GUC Holders under the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and any

12

applicable state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration, reporting, or other requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Litigation Trustee shall take any and all actions to comply with such requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "SEC"), or may seek exemption from the SEC therefor, and, if granted, shall comply with the terms of any such exemption.

(b)    The Litigation Trustee shall notify all Litigation Trust Beneficiaries of the procedures governing the registration and transfer of beneficial Litigation Trust Interests (any transfer permitted pursuant to such procedure, a "Permitted Transfer"). Absent unanimous consent from the Litigation Trust Oversight Committee and the Litigation Trustee, the Litigation Trust Interests shall not be capable of being sold, transferred, assigned, pledged or hypothecated, in whole or in part, to any Person or Entity in the same industry as the Debtors or the Reorganized Debtors, that owns a 10 percent or greater interest in an Entity in the same industry as the Debtors or Reorganized Debtors, or is likely to be a defendant in any action commenced by the Litigation Trust. Any purported sale, transfer, assignment, pledge or hypothecation of a Litigation Trust Interest or any part thereof in contravention of the forgoing shall constitute a violation of this Section (b) and shall be void ab initio.

(c)    Notwithstanding the foregoing Section (b), no indirect or direct transfer of a Litigation Trust Interest shall be permitted by the Litigation Trust Oversight Committee if such transfer would (i) be contrary to maintaining the Litigation Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation section 301.7701-4(d) and as one or more "grantor trusts" subject to the provisions of Chapter 1, Subchapter J, Part I, Subpart E of the IRC; (ii) cause the record number of holders of Litigation Trust Interests to exceed the applicable threshold for registration under the Exchange Act, or if the Litigation Trust Oversight Committee otherwise determines that such transfer could result in the Litigation Trust being required to file reports under the Exchange Act, if it is not otherwise subject to such requirements; (iii) such transfer would violate the Securities Act or applicable federal and state securities or blue sky laws; (iv) such transfer would cause the Litigation Trust to be required to register as an investment company under the Investment Company Act; or (v) such transfer would cause the Litigation Trust Property to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974, as amended, or its accompanying regulations, or result in any "prohibited transaction" thereunder involving the Litigation Trust.

(d)    The Litigation Trustee, in consultation with the Litigation Trust Oversight Committee, may amend this Litigation Trust Agreement in accordance with Article XII herein to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Investment Company Act, or the Trust Indenture Act of 1939, as amended. The Litigation Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Litigation Trust Oversight Committee and/or the Litigation Trustee in connection with the Litigation Trust. Neither the Litigation Trust Oversight Committee nor the Litigation Trustee shall take any action to establish

13

or support the establishment of an active trading market with respect to the Litigation Trust Interests. Notwithstanding anything in this Litigation Trust Agreement to the contrary (including in this Section (d)), no amendment, modification or change to the form of the Litigation Trust or this Litigation Trust Agreement shall be made which will have any material adverse impact on the Transferred Privileges or cause or result in any required disclosure of Litigation Trust Causes of Actions materials without the prior written consent of the Parties hereto.

4.5     Miscellaneous Matters Regarding Holders of Litigation Trust Interests.

(a)     Notwithstanding anything to the contrary contained herein, the Litigation Trustee shall not provide or disclose any information that it reasonably believes is privileged or otherwise protected from discovery without first ensuring that inclusion of that information will not waive any such privilege or protection. Subject to the foregoing sentence, the Litigation Trustee may, but is not required to, post any such report on a limited-access website maintained by the Litigation Trustee and available to the Litigation Trust Beneficiaries. To the extent specifically authorized by a Litigation Trust Beneficiary, the posting of any such report may be in lieu of providing a copy to the Litigation Trust Beneficiary (unless otherwise required by law).

4.6     Effect of Death, Incapacity or Bankruptcy. The death, incapacity or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (a) operate to terminate the Litigation Trust, (b) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (c) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof, or (d) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Litigation Trust Agreement.

4.7     Change of Address.   Any Litigation Trust Beneficiaries may, after the Effective Date, select an alternative distribution address by providing notice to the Litigation Trustee or, as applicable, the Registrar, identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Litigation Trustee or, as applicable, the Registrar. Absent actual receipt of such notice by the Litigation Trustee or, as applicable, the Registrar, the Litigation Trustee shall not recognize any such change of distribution address.

**ARTICLE V**
**AUTHORITY, LIMITATIONS, AND DUTIES OF THE LITIGATION TRUSTEE**

5.1     Authority of the Litigation Trustee.

(a)     Role of the Litigation Trustee. In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, and this Litigation Trust Agreement, the Litigation Trustee shall, subject to the oversight of the Litigation Trust Oversight Committee set forth herein, have the power to perform any and all acts necessary or desirable to accomplish the purposes of the Litigation Trust. Without limiting, but subject to, the foregoing and to Section 5.2 herein, the

14

Litigation Trustee shall be expressly authorized, but shall not be required, in each case upon reasonable consultation with the Litigation Trust Oversight Committee, to:

        (i)     receive, manage, supervise, and protect the Litigation Trust Property upon its receipt of same on behalf of and for the benefit of the Litigation Trust Beneficiaries;

        (ii)    hold legal title to any and all rights of the holders of the Litigation Trust Interests in or arising from the Litigation Trust Property, including, but not limited to, collecting and receiving any and all money and other property belonging to the Litigation Trust (including any Litigation Trust Proceeds);

        (iii)   perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code with respect to the Litigation Trust Assets, including, but not limited to, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

        (iv)   protect and enforce the rights of the Litigation Trust in and to the Litigation Trust Property by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

        (v)    subject to Section 5.2 below, investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers, and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Litigation Trust Agreement, the Litigation Trust Causes of Action;

        (vi)   subject to applicable law, seek the examination of any Person or Entity, with respect to the Litigation Trust Causes of Action;

        (vii)  determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Trust, subject to Article X herein;

        (viii)  liquidate and convert the Litigation Trust Property to Cash and pay the Initial Note Funding Reimbursement and make timely distributions to the Litigation Trust Beneficiaries, in accordance with the Litigation Trust Note and this Litigation Trust Agreement;

        (ix)   prepare, or have prepared, and file, if necessary, any and all tax returns, information returns, and other required documents with respect to the Litigation Trust (including, without limitation, U.S. federal, state, local or foreign tax or information returns required to be filed by the Litigation Trust) and pay taxes properly payable by the Litigation Trust, if any, and cause all taxes payable by the Litigation Trust, if any, to be paid exclusively out of the Litigation Trust Property;

        (x)    request any appropriate tax determination with respect to the Litigation Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

15

(xi)    make tax elections by and on behalf of the Litigation Trust, which are deemed by the Litigation Trustee, either independently or with the advice of Litigation Trust Professionals, to be in the best interest of maximizing the liquidation value of the Litigation Trust Property;

(xii)    assert, enforce, release, or waive any privilege (including the Transferred Privileges) or defense on behalf of the Litigation Trust, the Litigation Trust Causes of Action, or the Litigation Trust Beneficiaries, as applicable;

(xiii)    pay all expenses and make all other payments relating to the Litigation Trust Property, including the liquidation and distribution thereof;

(xiv)    obtain reasonable insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Oversight Committee under this Litigation Trust Agreement (in the form of, among other things, an errors and omissions policy or otherwise), except to the extent that the liabilities and obligations of the Litigation Trustee or Members of the Litigation Trust Oversight Committee are covered by other applicable insurance available from other sources, and indemnification for the Litigation Trustee and the Members of the Litigation Trust Oversight Committee and others as provided for in Section 10.2 herein;

(xv)    subject to Section 5.2 below, retain and pay third-party providers of professional services, including, but not limited to, attorneys, accountants, and other professionals reasonably necessary to accomplish the purposes of the Litigation Trust;

(xvi)    invest any moneys held as part of the Litigation Trust (including any earnings thereon or proceeds therefrom) in accordance with the terms of Section 5.6(d) herein, limited, however, to such investments that are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684;

(xvii)    open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with the Plan and this Litigation Trust Agreement;

(xviii)    enforce, waive, assign or release rights, privileges or immunities of any kind;

(xix)    seek any relief from, or resolution of, any disputes by the Bankruptcy Court;

(xx)    appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan (insofar as it affects the Litigation Trust or the Litigation Trust Property), the Litigation Trust, the Litigation Trust Oversight Committee, or the Litigation Trust Causes of Action;

(xxi)    establish and maintain a website for the purpose of providing notice of the Litigation Trust activities in addition to notice by other means or, to the extent specifically authorized by any given holder of Litigation Trust Interests, in lieu of notice by other means, subject to providing notice to those Parties referred to in Section 13.4 herein;

16

(xxii)   file any and all documents and take or refrain from taking any and all actions the Litigation Trustee reasonably deems necessary for the continuation, protection, distribution, liquidation, and maximization of the Litigation Trust Property consistent with the purposes hereof;

(xxiii)  do any and all things necessary to accomplish the purposes of this Litigation Trust Agreement; and

(xxiv)  exercise such other powers as may be vested in the Litigation Trustee pursuant to the Plan, the Confirmation Order, this Litigation Trust Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Trustee to be reasonably necessary and proper to carry out the obligations of the Litigation Trustee in relation to the Litigation Trust.

(b)     The Litigation Trustee, in consultation with and subject to the approval of the Litigation Trust Oversight Committee as may be provided in this Litigation Trust Agreement, shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets, and such decisions and duties shall be carried out in accordance with the Plan, the Confirmation Order, this Litigation Trust Agreement, and all other applicable orders of the Bankruptcy Court.

(c)     In all circumstances, the Litigation Trustee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall use commercially reasonable efforts to prosecute, settle or otherwise resolve the Litigation Trust Causes of Action and to make timely distributions of any Litigation Trust Proceeds realized therefrom and to otherwise monetize the Litigation Trust Property and not unreasonably prolong the duration of the Litigation Trust.

(d)     <u>Fiduciary Duties</u>.  The Litigation Trustee shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her or its responsibilities accordingly; *provided* that the Litigation Trustee shall not owe fiduciary obligations to any defendants of or adverse parties to the Litigation Trust Causes of Action in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trustee's obligations are to maximize the value of the Litigation Trust Property, including the Litigation Trust Causes of Action.

      5.2    <u>Limitations on Power and Authority of the Litigation Trustee</u>.  Notwithstanding anything to the contrary contained in the Plan, the Confirmation Order or this Litigation Trust Agreement:

      (a)    The Litigation Trustee, after consultation with the Litigation Trust Oversight Committee, may settle, compromise, abandon, dismiss, release, submit to binding arbitration or mediation, or waive, in whole or in part, the Litigation Trust Causes of Action without the consent of a majority of the Litigation Trust Oversight Committee (any such settlement, compromise, abandonment, dismissal, release, submission, or waiver referred to herein as a "<u>Settlement</u>").

      (b)    For the avoidance of doubt, notwithstanding anything to the contrary herein, the Litigation Trustee shall not challenge the validity or scope of the Debtor Releases.

      (c)    Any engagement, compensation or indemnification on behalf of the Litigation Trust of consultants, agents, employees or other professional persons to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities, powers and duties under this Litigation Trust Agreement shall require the prior consultation with the Litigation Trust Oversight Committee.

      (d)    No part of the Litigation Trust Property shall be used or disposed of by the Litigation Trustee in furtherance of any trade or business.  The Litigation Trustee shall, on behalf of the Litigation Trust, hold the Litigation Trust out as a trust in the process of liquidation and not as an investment company.  The Litigation Trustee shall not, and shall not be authorized to, engage in any investments or activities inconsistent with the treatment of the Litigation Trust as liquidating trust within the meaning of the Treasury Regulations or under applicable guidelines or rulings of the United States Internal Revenue Service (the "<u>IRS</u>") or other controlling authorities.  The Litigation Trustee shall not become a market-maker for the Litigation Trust Interests or otherwise attempt to create a secondary market for the Litigation Trust Interests.  The Litigation Trustee shall be restricted to the liquidation of the Litigation Trust Property on behalf, and for the benefit, of the Litigation Trust Beneficiaries and the distribution and application of Litigation Trust Property for the purposes set forth in this Litigation Trust Agreement, the Plan, and the Confirmation Order, and the conservation and protection of the Litigation Trust Property and the administration thereof in accordance with the provisions of this Litigation Trust Agreement, the Plan, and the Confirmation Order.

      (e)    The Litigation Trustee shall not (i) receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business or (ii) take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof.

      (f)    The Litigation Trust shall not hold any operating assets of a going business directly and shall not hold 50 percent or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interests or partnership interest was obtained

involuntarily or as a matter of practical economic necessity in order to preserve the value of the Litigation Trust Property, or, in any case, such corporation, company or partnership does not hold operating assets of a going business.

(g)     The Litigation Trustee is expressly prohibited from and shall not have the authority to (i) take any action in contravention of the Plan, the Confirmation Order, or this Litigation Trust Agreement; (ii) take any action that would make it impossible to carry on the activities of the Litigation Trust; (iii) possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein; (iv) commence, continue, prosecute, or seek to pursue any non-Litigation Trust Causes of Action; or (v) accept any transfer or assignment of any claims, causes of action, or assets to the Liquidating Trust other than the Liquidating Trust Assets and Liquidating Trust Causes of Action.

5.3     <u>Management of Litigation Trust Assets</u>.

(a)     Except as otherwise provided in the Plan, the Confirmation Order, or this Litigation Trust Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Trustee may, after consultation with the Litigation Trust Oversight Committee, control and exercise authority over the Litigation Trust Property, over the management and disposition thereof, and over the management and conduct of the Litigation Trust, in each case, as necessary or advisable to enable the Litigation Trustee to fulfill the intents and purposes of this Litigation Trust Agreement.  No Person dealing with the Litigation Trust will be obligated to inquire into the authority of the Litigation Trustee in connection with the protection, conservation, liquidation, or disposition of the Litigation Trust Property.

(b)     In connection with the management and use of the Litigation Trust Property and except as otherwise expressly limited in the Plan, the Confirmation Order, or this Litigation Trust Agreement, the Litigation Trust will have, in addition to any powers conferred upon the Litigation Trust by any other provision of this Litigation Trust Agreement, the power to take any and all actions as, in the Litigation Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Litigation Trust, subject to any consultation, approvals, or direction of the Litigation Trust Oversight Committee as set forth herein, including, without limitation, the power and authority to (i) pay taxes and other obligations owed by the Litigation Trust or incurred by the Litigation Trustee; (ii) engage and compensate from the Litigation Trust Proceeds, to the extent provided herein, the Litigation Trust Professionals to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities; (iii) commence and/or pursue the Litigation Trust Causes of Action; and (iv) act and implement the Plan, this Litigation Trust Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

5.4     <u>Books and Records</u>.

(a)     The Litigation Trustee shall maintain, in respect of the Litigation Trust and the holders of Litigation Trust Interests, books and records relating to the Litigation Trust Assets and income of the Litigation Trust (including the Litigation Trust Proceeds) and the payment of, costs and expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such

detail and for such period of time as may be necessary to enable it to make a full and proper accounting in respect thereof and in accordance with applicable law. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting and securities law requirements of the Litigation Trust. Except as expressly provided herein, nothing in this Litigation Trust Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Property.

(b)     Members of the Litigation Trust Oversight Committee shall, upon request, have the right to examine the Litigation Trust's books and records. The Litigation Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Litigation Trustee, to inspect and, at the sole expense of such Litigation Trust Beneficiary, make copies of the books and records (including financial statements) relating to the Litigation Trust, in each case for a purpose reasonably related to such Litigation Trust Beneficiary's interest in the Litigation Trust; *provided* that the Litigation Trustee shall have the right to deny access to any Litigation Trust Beneficiary in a reasonable effort to preserve privileged or confidential information, or protect litigation or other strategies; *provided, further*, that, if so requested, such Litigation Trust Beneficiary shall have entered into a confidentiality agreement reasonably satisfactory in form and substance to the Litigation Trustee.

(c)     Any books and records determined by the Litigation Trustee, in its sole discretion, not to be reasonably necessary for administering the Litigation Trust or for the Litigation Trustee's compliance with the provisions of this Litigation Trust Agreement may, to the extent not prohibited by applicable law, be destroyed.

5.5     Additional Reporting Duties of the Litigation Trustee.

(a)     Budget Reporting. No later than 60 days following the Effective Date, and thereafter on a quarterly basis, the Litigation Trustee shall prepare and deliver to the Litigation Trust Oversight Committee a budget for the operation of the Litigation Trust (the "Budget"). The Budget shall state a maximum amount of expenditures during such quarter that the Litigation Trustee seeks authority to make prior to seeking further approval from the Litigation Trust Oversight Committee (the "Authorized Expenditure Level"). The Litigation Trustee may also from time to time submit to the Litigation Trust Oversight Committee an amended Budget, with an amended Authorized Expenditure Level, for approval or rejection by the Litigation Trust Oversight Committee. The Litigation Trustee may not exceed such Authorized Expenditure Level for a given quarter by greater than 15 percent without first consulting with the Litigation Trust Oversight Committee; *provided, further*, that the Litigation Trustee may exceed an Authorized Expenditure Level for a given quarter by more than 15 percent if the total amount of expenses incurred by the Litigation Trustee on a cumulative, aggregate basis from the inception of the Litigation Trust through the last business day of the quarter does not exceed the total cumulative, aggregate amount of the Authorized Expenditure Levels over the same period.

(b)     Tax Reporting. The Litigation Trustee shall be the "administrator" (as defined in the Treasury Regulations) of the Litigation Trust and shall meet, without limitation, all requirements necessary to qualify and maintain qualification of the Litigation Trust as a "liquidating trust" within the meaning of the Treasury Regulations, and take no action that could

20

cause the Litigation Trust to fail to qualify as a "liquidating trust" within the meaning of the Treasury Regulations.

5.6     Additional Powers of the Litigation Trustee.

(a)     Retention of Counsel and Other Professionals. The Litigation Trustee, after consultation with the Litigation Trust Oversight Committee, without further order of the Bankruptcy Court but subject to this Section (a) in all cases, may employ Litigation Trust Professionals as the Litigation Trustee deems necessary to aid it in fulfilling its obligations under this Litigation Trust Agreement and the Plan, and on whatever reasonable and/or customary fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements, for the liquidation of the Litigation Trust Assets. Litigation Trust Professionals engaged by the Litigation Trustee shall not be required to file applications in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. For the avoidance of doubt, prior employment in any capacity in the Debtors' Chapter 11 Cases on behalf of the Debtors, their estates, or any parties in interest shall not, subject to compliance with applicable rules of professional conduct, preclude the Litigation Trust's retention of such professionals, consultants, or other persons.

(b)     Agreements. Pursuant to the Plan, the Confirmation Order, and the other provisions of this Litigation Trust Agreement, the Litigation Trustee may enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Litigation Trust Agreement and perform all of the Litigation Trust's obligations thereunder.

(c)     Authorization to Expend and Reserve Trust Property. The Litigation Trustee may expend and reserve the Litigation Trust Property (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Property during liquidation, (ii) to pay all administrative expenses of the Litigation Trust (including, but not limited to, any taxes imposed on the Litigation Trust), and (iii) to satisfy all other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Property are otherwise subject) in accordance with this Litigation Trust Agreement and subject to the requirements of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994 2 C.B. 684.

(d)     Investment of Cash. The right and power of the Litigation Trustee to invest the Litigation Trust Property, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such Litigation Trust Property only in Cash, cash equivalents, U.S. Treasury securities, money market investments, and similar investments; *provided* that (i) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (ii) the Litigation Trustee may retain any Litigation Trust Property received that is not Cash only for so long as may be required for the prompt and orderly liquidation of such property in Cash, and (iii) the Litigation Trustee may expend the Litigation Trust Property (A) as reasonably necessary to meet contingent liabilities and maintain the value of the Litigation Trust Property during liquidation, (B) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in

21

connection with liquidating the Litigation Trust Property), subject in all cases to Section 2.3 of this Litigation Trust Agreement, and (B) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Property is otherwise subject) in accordance with the Plan or this Litigation Trust Agreement (including, as applicable, Section 2.3 herein).

(e)    Compliance with Laws.    Any and all distributions of Litigation Trust Property shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE VI
## DISTRIBUTIONS

6.1    Manner of Distributions.

(a)    Trust Reserve Payments.    Prior to making any distribution to Litigation Trust Beneficiaries, the Litigation Trustee shall, after consultation with the Litigation Trust Oversight Committee and taking into account the availability, where applicable, of Cash already on hand or scheduled to be received, determine such amounts (the "Trust Reserve") that are (i) necessary to meet current or anticipated Litigation Trust Fees and Expenses (whether fixed or contingent) and (ii) necessary to pay current or anticipated Litigation Trust Fees and Expenses (including, but not limited to, any fees of the Litigation Trust Professionals and any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Property).    The Litigation Trustee may withhold from amounts distributable to any Person or Entity any and all amounts, determined in the Litigation Trustee's reasonable sole discretion (based on advice of counsel or accountants, as applicable), required by any law, regulation, rule, ruling, directive, or other governmental requirement.

(b)    On any date determined by the Litigation Trustee, after consultation with the Litigation Trust Oversight Committee (provided such date for distribution occurs at least annually), and in any event promptly upon receipt of any payment or distribution received in connection with any judgment or Settlement in the Litigation Trust Causes of Action, the Litigation Trustee shall make distributions of the Litigation Trust Proceeds and any proceeds arising from investments made pursuant to Section 5.6(d) to the Litigation Trust Beneficiaries (i) only in accordance with the terms of the Plan, the Confirmation Order, and this Litigation Trust Agreement, (ii) after the Litigation Trust Proceeds or proceeds of investments made pursuant to Section 5.6(d) are received by the Litigation Trust, (iii) only to the extent that the Litigation Trust has sufficient Litigation Trust Proceeds or proceeds of investments made pursuant to Section 5.6(d) available to make such distributions, (iv) only if all Litigation Trust Fees and Expenses have been paid in full, (v) subsequent to the payment of the Initial Note Funding Reimbursement in accordance with the Litigation Trust Note, (vi) subsequent to the establishment of, and deducting from any such distribution, the Trust Reserve deemed necessary and appropriate by the Litigation Trustee, and (vii) subject to the requirements of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994 2 C.B. 684.    For the avoidance of doubt, this Section 6.1(b) shall not prohibit the Litigation Trustee from using Litigation Trust Property to timely pay Litigation Trust Fees and Expenses duly incurred in accordance with this Litigation Trust Agreement, including with respect to the payment of any taxes or other amounts owed to governmental units and to timely compensate Litigation Trust Professionals engaged by the Litigation Trust in

22

accordance with this Litigation Trust Agreement to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities.

(c)    Any distributions of Litigation Trust Proceeds by the Litigation Trustee pursuant to this Section 6.1 shall be made in the following manner: (i) 33% of such Litigation Trust Proceeds shall be distributed to Kinderhook; and (ii) 67% of such Litigation Trust Proceeds shall be distributed *pro rata* to GUC Holders.

(d)    Notwithstanding anything to the contrary herein, no distributions to Litigation Trust Beneficiaries shall be made unless and until the Initial Note Funding is repaid in full in accordance with the Litigation Trust Note.

(e)    The Litigation Trustee shall make distributions to Litigation Trust Beneficiaries at the last-known address for each such Litigation Trust Beneficiary as indicated on the Trust Register as of the applicable distribution date.  Any distribution of Cash by the Litigation Trust shall be made by the Litigation Trustee via (i) a check drawn on, or (ii) wire transfer from, a bank account established in the name of the Litigation Trust on or subsequent to the Effective Date at a domestic bank selected by the Litigation Trustee (the "Litigation Trust Account"), the option of which shall be in the sole discretion of the Litigation Trustee.  If any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Trustee or, as applicable, the Registrar, is notified in writing of the then-current address of such holder, at which time such distribution shall be made as soon as reasonably practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided* that such distributions shall be deemed "unclaimed property" under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six (6) months from the applicable distribution date.  After such date, all "unclaimed property" or interests in property shall revert to the Litigation Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Litigation Trust Agreement, and the claim of any holder to such "unclaimed property" or interest in property shall be forever barred.

(f)    The Litigation Trustee shall have the authority, in consultation with the Litigation Trust Oversight Committee, to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan and this Litigation Trust Agreement. The Litigation Trustee may pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents.

(g)    The Litigation Trustee shall have no obligation to make a distribution on account of an Litigation Trust Beneficiary if the amount to be distributed to a Litigation Trust Beneficiaries is less than $100.00.

(h)    The Litigation Trustee may, in the Litigation Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for disputed general unsecured claims, including (i) filing a tax election to treat any and all reserves for disputed general unsecured claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve

as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report any reserve for disputed claims as a DOF, the Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

## ARTICLE VII
## THE LITIGATION TRUSTEE GENERALLY

7.1     <u>Generally</u>.

(a)     The Litigation Trustee, in accordance with the Plan and the Confirmation Order, shall be a professional natural person or financial institution with experience administering other litigation trusts and may not be a Member of the Litigation Trust Oversight Committee.

(b)     The Litigation Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Litigation Trust and not otherwise, except that the Litigation Trustee may deal with the Litigation Trust Property for its own account as permitted by Section 7.2 herein.

(c)     The Litigation Trustee will exercise its reasonable business judgment in prosecuting the Litigation Trust Causes of Action.

7.2     <u>Litigation Trustee's Compensation and Expense Reimbursement</u>.

(a)     <u>Compensation</u>.  The Litigation Trustee shall receive compensation for the performance of its duties from the Litigation Trust (the "<u>Litigation Trustee Compensation</u>") as follows: a flat fee of $7,500 per month, plus 3% of gross recoveries of the Litigation Trust, and reimbursement of any actual and necessary expenses incurred by the Litigation Trustee pursuant to the Trust Agreement.  The compensation of the Litigation Trustee may be increased from time to time by the Litigation Trust Oversight Committee.  The Litigation Trustee, its professionals, its agents, and its employees may be compensated on a *nunc pro tunc* basis, for work performed prior to the Effective Date, upon the agreement of the Litigation Trust Oversight Committee.

(b)     <u>Expenses</u>.  The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable, and documented out-of-pocket expenses incurred by the Litigation Trustee after the Effective Date in connection with the performance of the duties of the Litigation Trustee hereunder or under the Confirmation Order or the Plan, including, but not limited to, actual, reasonable, and documented fees and disbursements of the Litigation Trustee's legal counsel incurred in connection with the review, execution, and delivery of this Litigation Trust Agreement and related documents (collectively, the "<u>Litigation Trustee Expenses</u>," and together with the Litigation Trustee Compensation, the "<u>Litigation Trustee Fees</u>").  The Litigation Trustee shall also be entitled to reimbursement for any and all losses, liabilities, expenses, or damages that the Litigation Trustee may, in good faith and without willful misconduct, gross negligence, or fraud, sustain in the exercise and performance of any of the powers and duties of the Litigation Trustee after the Effective Date under this Litigation Trust Agreement.

10566882.v2

(c)    Payment.  The Litigation Trustee Fees shall be paid to the Litigation Trustee after consultation with the Litigation Trust Oversight Committee, without necessity for review or approval by the Bankruptcy Court or any other Person.  Payment of the Litigation Trustee Fees shall be initially payable out of the Initial Funding and, after repayment in full of the Initial Note Funding Reimbursement, payable from the Litigation Trust Proceeds.  If the Cash in the Litigation Trust shall be insufficient to pay the expenses and liabilities of the Litigation Trust, including but not limited to any obligation to compensate and reimburse the Litigation Trustee, the Litigation Trust Oversight Committee or any Members thereof, or any professionals authorized to be compensated or reimbursed by this Litigation Trust Agreement for any amounts to which they are entitled, then the Litigation Trustee is hereby authorized, with the written approval of the Litigation Trust Oversight Committee, to reduce to Cash that portion of the Litigation Trust Property necessary to effect such compensation and reimbursement.  The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Litigation Trustee and the Litigation Trust Oversight Committee regarding the Litigation Trustee Fees.

(d)    No Bond.  The Litigation Trustee shall serve without bond.

7.3    Tenure, Removal, and Replacement of the Litigation Trustee.

(a)    Tenure of the Litigation Trustee.  The authority of the Litigation Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Article IX herein.  The Litigation Trustee will serve until the appointment of a successor or until the earlier of resignation pursuant to Section (b) below, removal pursuant to Section (c) below, death (in the case of a Litigation Trustee that is a natural person), or dissolution (in the case of a Litigation Trustee that is not a natural person).

(b)    Resignation.  The Litigation Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Litigation Trust Oversight Committee and the Litigation Trust Beneficiaries.  Unless otherwise determined by the Litigation Trust Oversight Committee, such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee by the Litigation Trust Oversight Committee and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 9.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided for in Section 9.2 herein.

(c)    Removal.

(i)    The Litigation Trustee (or any successor Litigation Trustee) may be removed and replaced by the Litigation Trust Oversight Committee for Cause (as defined in this Section (i)) by written consent of a majority of the Members or at a meeting of the Litigation Trust Oversight Committee called for the purpose of removing the Litigation Trustee or for any reason by a unanimous vote of the Litigation Trust Oversight Committee.  For the purpose of the preceding sentence, "Cause" shall mean the Litigation Trustee's (A) willful failure to perform its material duties hereunder, which is not remedied within thirty (30) days of notice; (B) commission of an act of fraud, theft or embezzlement during the performance its duties hereunder; (C) conviction of a felony with all appeals having been exhausted or appeal periods lapsed;

(D) gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of its duties hereunder; (E) commission of any negligence, even if not rising to the level of gross negligence, that risks adversely affecting the success of the Litigation Trust Causes of Action; or (F) violation of the provisions of this Litigation Trust Agreement. Such removal shall become effective on the date action is taken.

(ii)    To the extent there is any dispute regarding the removal of the Litigation Trustee (including any dispute relating to any portion of the Litigation Trustee Fees), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, unless otherwise determined by the Litigation Trust Oversight Committee, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (A) the time when appointment of a successor Litigation Trustee will become effective in accordance with Section (d) of this Litigation Trust Agreement or (B) such date as the Bankruptcy Court otherwise orders.

(d)    Appointment of Successor Litigation Trustee.

(i)    In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation pursuant to Section (b) herein, incompetency, or removal pursuant to Section (c) herein, of the Litigation Trustee, the Litigation Trust Oversight Committee shall designate a successor Litigation Trustee satisfying the requirements set forth in Section 7.1 herein by majority vote.

(ii)    During any period in which there is a vacancy in the position of Litigation Trustee, the Litigation Trust Oversight Committee shall appoint one of its Members by majority vote to serve as interim Litigation Trustee (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder; *provided* that any such Interim Trustee shall not be entitled to receive the Litigation Trustee Compensation unless approved by the Litigation Trust Oversight Committee, but shall be entitled to receive payment for the Litigation Trustee Expenses. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Trust Oversight Committee merely by the appointment of such Person or Entity as Interim Trustee, but shall be limited in the exercise of such rights or powers as a Litigation Trustee to the extent a majority of the Litigation Trust Oversight Committee shall, to the extent applicable in this Litigation Trust Agreement, fail to approve any such action or undertaking by the Interim Trustee.

(e)    Effect of Resignation or Removal. The death, dissolution, bankruptcy, resignation, incompetency, incapacity or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Litigation Trust Agreement or to revoke any existing agency created pursuant to the terms of this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee in accordance with this Litigation Trust Agreement. In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (i) execute and deliver such documents, instruments and other writings as reasonably requested by the Litigation Trust Oversight Committee or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Litigation Trust Agreement, (ii) deliver to the Litigation Trust Oversight Committee and/or the successor Litigation Trustee all documents, instruments, records and other writings related to

26

the Litigation Trust as may be in the possession of such Litigation Trustee, including any Litigation Trust Causes of Action materials, and shall not retain any copies of such materials, even for archival purposes, and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

7.4     Confidentiality.

(a)     The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Litigation Trust Agreement and for a period of two (2) years following the termination of this Litigation Trust Agreement or following such Litigation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain or for the gain of any Person or Entity for whom such Litigation Trustee may be employed any material, non-public information of or pertaining to any Person or Entity to which any of the Litigation Trust Causes of Action materials or Litigation Trust Assets relates or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee (including information contained or reflected in the Litigation Trust materials), until (i) such information is made public other than by disclosure by the Litigation Trust, the Litigation Trustee, or any Litigation Trust Professionals in violation of this Litigation Trust Agreement; (ii) the Litigation Trust is required by law to disclose such information (in which case the Litigation Trust shall provide the relevant Person or Entity reasonable advance notice and an opportunity to protect his, her, or its rights); or (iii) the Litigation Trust obtains a waiver of confidentiality from the applicable Person or Entity.

## ARTICLE VIII
## THE LITIGATION TRUST OVERSIGHT COMMITTEE

8.1     Litigation Trust Oversight Committee.

(a)     Appointment of the Litigation Trust Oversight Committee.  On or prior to the Effective Date, a three-person Litigation Trust Oversight Committee shall be appointed as follows:  (i) one  (1) member selected by Hisun, (ii) Jillian Lin of Dundon Advisors (the "Independent Member"), and (iii) one (1) independent member selected by Buyer .  Except as set forth in Section 7.3(d)(ii), no Member shall be the Litigation Trustee.

(b)     Fiduciary Duties.  The Litigation Trust Oversight Committee and its Members shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties under the General Corporation Law of the State of Delaware as set forth in Title 8 of the Delaware Code or other applicable law; *provided* that the Litigation Trust Oversight Committee and its Members shall not owe fiduciary obligations to any defendants of Litigation Trust Causes of Action in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trust Oversight Committee's obligations are to maximize the value of the Litigation Trust Causes of Action.  In all circumstances, the Litigation Trust Oversight Committee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

10566882.v2

8.2     Authority and Responsibilities.

(a)     The Litigation Trust Oversight Committee shall have the authority and responsibility to (i) monitor, oversee, and govern the administration of the Litigation Trust, (ii) monitor, oversee, review, and guide the activities and performance of the Litigation Trustee, (iii) remove and replace the Litigation Trustee at any time for Cause by written consent of a majority of the Members or at a meeting of the Litigation Trust Oversight Committee called for the purpose of removing the Litigation Trustee, or without Cause, upon not less than ninety (90) days' prior written notice, pursuant to Section 7.3(c) herein, and (iv) perform such other tasks as are set forth in the Plan, the Confirmation Order, and this Litigation Trust Agreement.

(b)     The Litigation Trust Oversight Committee shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Litigation Trust Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement, and may direct the Litigation Trustee to take any action or not take any action with respect to Litigation Trust Property or otherwise so long as such direction is consistent with the Plan, the Confirmation Order, and this Litigation Trust Agreement; *provided* that the Litigation Trust Oversight Committee may not direct the Litigation Trustee to, nor shall the Members, act in a manner inconsistent with their respective duties and obligations under the Plan, the Confirmation Order, or this Litigation Trust Agreement; *provided, further*, that nothing in this Litigation Trust Agreement shall be interpreted to authorize the Litigation Trust Oversight Committee to direct the Litigation Trustee to take any action that this Litigation Trust Agreement conditions (i) upon the joint agreement of the Litigation Trustee and the Litigation Trust Oversight Committee or (ii) upon the Litigation Trust Oversight Committee approval of a proposal made by the Litigation Trustee.

(c)     Members of the Litigation Trust Oversight Committee shall make themselves reasonably available for consultation by the Litigation Trust Beneficiaries.

(d)     Notwithstanding any provision of this Litigation Trust Agreement to the contrary, the Litigation Trustee shall not be required to obtain the approval or follow the directions of the Litigation Trust Oversight Committee to the extent that (i) the Litigation Trust Oversight Committee has not authorized the Litigation Trustee to take any action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law or (ii) the Litigation Trust Oversight Committee directs the Litigation Trustee to take action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is prohibited by applicable law or this Agreement.

8.3     Meetings.

(a)     Regular Meetings of the Litigation Trust Oversight Committee.  The first meeting of the Litigation Trust Oversight Committee shall occur no later than thirty (30) calendar days after the Effective Date.  Meetings of the Litigation Trust Oversight Committee are to be held not less often than quarterly.  Such meetings (other than the first meeting of the Litigation Trust Oversight Committee) may be held telephonically as authorized by Section 8.4(b).

(b)    Chairman or Chairwoman Selection.  At its first meeting, the Litigation Trust Oversight Committee shall select a chairman or chairwoman from among the Members of the Litigation Trust Oversight Committee.  Such selection shall be by majority vote of the Litigation Trust Oversight Committee, and such chairman or chairwoman may be removed and replaced as chairman or chairwoman by another Member of the Litigation Trust Oversight Committee, at any time and without cause, by a subsequent majority vote of the Litigation Trust Oversight Committee.  Such chairman or chairwoman shall preside over the meetings of the Litigation Trust Oversight Committee, but otherwise shall have no additional rights or privileges as a result of his or her status as chairman or chairwoman.

(c)    Special Meetings of the Litigation Trust Oversight Committee.  Special meetings of the Litigation Trust Oversight Committee may be held whenever and wherever called for by any Member; *provided* that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members).  Such meetings (other than the first meeting of the Litigation Trust Oversight Committee) may be held telephonically as authorized by Section 8.4(b).

(d)    Litigation Trust Oversight Committee's Action Without a Meeting.  Any action required or permitted to be taken by the Litigation Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Oversight Committee.

(e)    Regular Meetings of the Litigation Trustee and the Litigation Trust Oversight Committee.  Meetings of the Litigation Trustee and the Litigation Trust Oversight Committee are to be held with such frequency and at such place as the Litigation Trustee and the Litigation Trust Oversight Committee may determine in their sole discretion, but in no event shall such meetings be held less frequently than quarterly.  Such meetings may be held telephonically as authorized by Section 8.4(b).

(f)    Special Meetings of the Litigation Trustee and the Litigation Trust Oversight Committee.  Special meetings of the Litigation Trustee and the Litigation Trust Oversight Committee may be held whenever and wherever called for by the Litigation Trustee or any Member; *provided* that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Litigation Trustee and the Members).  Such meetings may be held telephonically as authorized by Section 8.4(b).

(g)    Notice of, and Waiver of Notice for, Regular and Special Meetings.  Notice of the time and place (but not necessarily the purpose or all of the purposes) of any regular or special meeting will be given to the Litigation Trustee and the Members of the Litigation Trust Oversight Committee in person or by telephone, or via mail or facsimile or electronic mail transmission.  Notice to the Litigation Trustee and the Members of the Litigation Trust Oversight Committee of any such regular or special meeting, if the meeting is to be held in-person rather than telephonically, will be deemed given sufficiently in advance when, at least ten (10) days before the meeting date, (i) if given by mail, the same is deposited in the United States mail, with postage thereon prepaid, (ii) if given by facsimile transmission or by e-mail, the same is transmitted

29

by such means, or (iii) if personally delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Litigation Trustee and the Members of the Litigation Trust Oversight Committee or to an adult member of his or her office staff or household.  In the event that such meeting is to be held telephonically, as authorized by Section 8.4(b), the notice requirement in the preceding sentence shall be ten (10) days for notice by mail and 48 hours for facsimile transmission, email, personal delivery (including by overnight courier) or telephone.  The Litigation Trustee and any Member of the Litigation Trust Oversight Committee may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law.  Except as provided in the next sentence below, the waiver must be in writing, signed by the Litigation Trustee or the Members of the Litigation Trust Oversight Committee entitled to the notice, and filed with the minutes or records of the Litigation Trust.  The attendance of the Litigation Trustee or a Member of the Litigation Trust Oversight Committee at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

8.4    <u>Manner of Acting</u>.

(a)    A majority of the total number of Members of the Litigation Trust Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Oversight Committee.  The affirmative vote of a majority of the Members of the Litigation Trust Oversight Committee present at a meeting at which a quorum is present shall be the act of the Litigation Trust Oversight Committee, except as otherwise required by law or as provided in this Litigation Trust Agreement.

(b)    Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, email, or similar communications equipment by means of which all Persons or Entities participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  The Litigation Trust Oversight Committee, and individual Members thereof, shall take into account the relative expense of in person and telephonic appearance, including in relation to travel restrictions, at meetings in determining the manner of Members' appearance.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the Litigation Trustee and each Member.

(c)    Any affirmative action required by the Litigation Trust Oversight Committee under this Litigation Trust Agreement may be solicited by the Litigation Trustee via email and subject to vote via forty eight (48) hours negative notice, unless under the circumstances the Litigation Trustee reasonably determines that a shorter period of negative notice is necessary to avoid prejudice or harm to the Litigation Trust.

(d)    Any Member who is present and entitled to vote at a meeting of the Litigation Trust Oversight Committee (including any meeting of the Litigation Trustee and the Litigation Trust Oversight Committee) when action is taken is deemed to have assented to the

30

action taken, subject to the requisite vote of the Litigation Trust Oversight Committee, unless: (i) such Member of the Litigation Trust Oversight Committee objects at the beginning of the meeting (or promptly upon his/her/it's arrival) to holding or transacting business at the meeting; (ii) his/her/it's dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she/it delivers written notice (including by electronic or facsimile transmission) of his/her/it's dissent or abstention to the Litigation Trust Oversight Committee before its adjournment.  The right of dissent or abstention is not available to any Member of the Litigation Trust Oversight Committee who votes in favor of the action taken.

        (e)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member of the Litigation Trust Oversight Committee shall report to the Litigation Trust Oversight Committee any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Litigation Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (i) shall be deemed to be a "<u>Conflicted Member</u>" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Oversight Committee who are not Conflicted Members and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members of the Litigation Trust Oversight Committee who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Oversight Committee; *provided* that a Member shall not be deemed to be a Conflicted Member with respect to a particular matter or issue if such Member merely has an economic interest in the outcome of such matter or issue solely as a holder of Litigation Trust Interests.

        (f)     The Members of the Litigation Trust Oversight Committee shall have the authority to designate any Person or Entity to act on their behalf, including, without limitation, to attend, participate in and vote at meetings of the Litigation Trust Oversight Committee.  The Litigation Trust Oversight Committee shall prepare minutes of its meetings.  The Members of the Litigation Trust Oversight Committee shall at all times seek to minimize expenses that they incur that are chargeable to the Litigation Trust, in order to conserve funds consistent with the purpose of the Litigation Trust and the limited funding available to it.

        8.5    <u>Compensation and Reimbursement of Expenses</u>.

        (a)     <u>Compensation</u>.  The Litigation Trust Oversight Committee, with the consent of the Litigation Trustee, may establish reasonable compensation for one or more of the Members.

        (b)     <u>Reimbursement of Expenses</u>.  The Litigation Trust shall reimburse all reasonable and documented out-of-pocket expenses incurred by the Members of the Litigation Trust Oversight Committee after the Effective Date in connection with the performance of each of their duties hereunder (including reasonable fees, costs and expenses of legal counsel

31

only as set forth in Section (i) herein) and shall reimburse all such Members for any and all losses, liabilities, expenses, or damages that such Members may, in good faith and without willful misconduct, gross negligence, or fraud, sustain in the exercise and performance of any of the powers and duties of the Litigation Trust Oversight Committee under this Litigation Trust Agreement.

(i)     The Litigation Trust Oversight Committee shall have no obligation or responsibility to retain, engage or consult any attorneys, professionals or other advisors, and in the event the Litigation Trust Oversight Committee elects to retain, engage or consult any such persons, the Litigation Trust shall have no obligation to pay any of the fees, costs or expenses of such persons, except that the Litigation Trust shall pay an amount jointly agreed by the Litigation Trustee and the unanimous vote of the Litigation Trust Oversight Committee for the fees, costs or expenses of any attorneys engaged by unanimous vote of the Litigation Trust Oversight Committee at reasonable rates to advise the Litigation Trust Oversight Committee on its rights and responsibilities under this Litigation Trust Agreement.

(ii)     The Litigation Trust Oversight Committee shall have the right to cause the Litigation Trust to purchase insurance coverage with respect to the liabilities and obligations of its Members under this Litigation Trust Agreement, except to the extent that such liabilities and obligations are covered by other insurance applicable to the service of such Members of the Litigation Trust Oversight Committee.

8.6     Tenure, Removal, and Replacement of the Members of the Litigation Trust Oversight Committee.

(a)     Tenure of the Members of the Litigation Trust Oversight Committee.  The authority of the Members of the Litigation Trust Oversight Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Article IX herein.  The Members will serve until such Member's successor is duly appointed or until such Member's earlier resignation pursuant to Section (b) below, removal pursuant to Section (c) below, death (in the case of a Member that is a natural person), or dissolution (in the case of a Member that is not a natural person).

(b)     Resignation.  A Member may resign by giving not less than ninety (90) days' prior written notice of resignation to the Litigation Trustee and the other Members.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section (d) below.  If the resignation or appointment of any such Member pursuant to this provision results in an even number of Members on the Litigation Trust Oversight Committee, then the remaining Members shall jointly appoint another Member.

(c)     Removal.  A Member of the Litigation Trust Oversight Committee may be removed for cause by the Bankruptcy Court, upon the motion of the Litigation Trustee or any Litigation Trust Beneficiary or on a motion by the Bankruptcy Court.  Notwithstanding the foregoing, upon the occurrence of the Termination Date (as defined in Section 9.1 herein), any or all of the Members shall be deemed to have resigned.

(d)    <u>Appointment of a Successor Member</u>.

(i)    In the event of a vacancy on the Litigation Trust Oversight Committee (whether by resignation, removal, death or dissolution), the Party that originally appointed the vacating Member shall be entitled to appoint a Person or Entity as a successor to the vacating Member.  In the event of a vacancy on the Litigation Trust Oversight Committee (whether by resignation, removal, death, or dissolution) of the Independent Member, Hisun and Kinderhook shall mutually agree on a successor to the vacating Independent Member.

(ii)    Immediately upon the appointment of any successor Member, all rights, powers, duties, authority and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

(iii)    Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Litigation Trust Agreement and agreeing to be bound hereto, and thereupon the successor Member without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Member.

8.7    <u>Confidentiality</u>.

(a)    Each Member shall, during the period that such Member serves as a Member under this Litigation Trust Agreement and for a period of two (2) years following the termination of this Litigation Trust Agreement or following such Member's removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person or Entity to which any of the Litigation Trust Causes of Action materials or Litigation Trust Assets relates or of which such Member has become aware in their capacity as Member of the Litigation Trust Oversight Committee, until (i) such information is made public other than by disclosure by such Member in violation of this Litigation Trust Agreement; (ii) the Litigation Trust is required by law to disclose such information (in which case the Litigation Trust shall provide the relevant Person or Entity reasonable advance notice and an opportunity to protect his, her, or its rights); or (iii) the Litigation Trust obtains a waiver of confidentiality from the applicable Person or Entity.  Notwithstanding the foregoing, nothing herein shall prohibit any Member from independently obtaining any such information pursuant to valid legal process in connection with any action other than the Litigation Trust Causes of Action.

**ARTICLE IX**
**TERMINATION OF THE LITIGATION TRUST**

9.1    <u>Termination of the Litigation Trust</u>.

(a)    The Litigation Trust shall terminate upon the occurrence of the earlier of (i) (A) the full liquidation, administration, and distribution of the Litigation Trust Property in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement, and (B) the full performance of all other duties and functions of the Litigation Trustee set forth in the Plan, the Confirmation Order, and this Litigation Trust Agreement or (ii) the Litigation Trustee determines, following the approval of the Litigation Trust Oversight Committee, that the

33

administration of the Litigation Trust Causes of Action is not likely to yield sufficient additional Litigation Trust Proceeds to justify further pursuit; *provided* that in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date, unless the Litigation Trust Oversight Committee determines that a fixed period extension (approved by the Bankruptcy Court within six (6) months of the beginning of the extended period, if the Litigation Trust Oversight Committee reasonably determines that such approval is necessary to meet the requirements set forth within Revenue Procedure 94-45, 1994-2 C.B. 684, and not to exceed two (2) years, including any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the Litigation Trust Property.

(b)     The Litigation Trustee shall not unduly prolong the duration of the Litigation Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Litigation Trust Causes of Action, subject to the limitations of Section 5.2 herein, and to effect the distribution of the Litigation Trust Property to the holders of the Litigation Trust Interests in accordance with the terms hereof and terminate the Litigation Trust as soon as practicable.  Prior to and upon termination of the Litigation Trust, the Litigation Trust Property will be distributed to the holders of the Litigation Trust Interests, pursuant to the provisions set forth in Article VI herein.  If (i) the Litigation Trustee has sent two (2) notices by certified mail, at least a month apart, to a holder of Litigation Trust Interests, inviting that holder to claim a distribution of Litigation Trust Property, and (ii) a year has passed from the date of the second notice without such holder's claiming such Litigation Trust Property, such Litigation Trust Property will be redistributed *pro rata* to all other holders of Litigation Trust Interests receiving Litigation Trust Property pursuant to Article VI herein.

(c)     If at any time the Litigation Trustee determines, in reliance upon the advice of the Litigation Trust Professionals (or any one or more of them), that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Funders or, if the obligation to pay the Initial Note Funding Reimbursement has been satisfied in full in accordance with the Litigation Trust Note, the Litigation Trust Beneficiaries, is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee, upon approval of the Litigation Trust Oversight Committee, may (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Litigation Trust, the Litigation Trustee, the Members, any Litigation Trust Professionals and any insider of any of the foregoing, and (iii) dissolve the Litigation Trust (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Dissolution Process").

(d)     Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "Termination Date."

9.2     <u>Continuance of the Litigation Trust for Winding Up</u>.

(a)     During the Dissolution Process, the Litigation Trustee, solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, shall continue to act as such until its duties have been fully performed.  During the Dissolution Process, the Litigation Trustee shall continue to be entitled to receive the Litigation Trustee Fees called for by Section 7.2 herein and subject to Section 2.3 herein.

(b)     Upon termination of the Litigation Trust, the Litigation Trustee shall retain for a period of two (2) years the books, records, the register of holders of Litigation Trust Interests, and certificates and other documents and files which shall have been delivered to or created by the Litigation Trustee to the extent not otherwise required to be handled by the Litigation Trustee in accordance with Section 2.2 herein; *provided* that subject to the terms of any applicable protective order and Section 2.2 herein, documents received by the Litigation Trustee solely in connection with the conduct of the Litigation Trust Causes of Action, including discovery documents produced by any party therein, may be destroyed at any time after the completion of the Litigation Trust Causes of Action, including the expiration of time to take any appeals, but only to the extent permitted by law, judicial rule, or other agreements pertaining to such documents.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Litigation Trust. Except as otherwise specifically provided herein, upon the termination of the Litigation Trust, the Litigation Trustee shall have no further duties or obligations hereunder.  Notwithstanding the foregoing, the Litigation Trustee shall notify the Litigation Trust Beneficiaries at least three (3) months prior to the destruction of any documents authorized to be destroyed under this Section (b), and shall offer the Litigation Trust Beneficiaries an opportunity to take possession, custody, and control of such documents.

(c)     Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

### ARTICLE X
### <u>LIMITATIONS ON LIABILITY AND INDEMNIFICATION</u>

10.1     <u>No Further Liability</u>.

(a)     Each of the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee, shall have no liability for any actions or omissions in accordance with this Litigation Trust Agreement or with respect to the Litigation Trust, other than actions or omissions resulting from such Person or Entity's own fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts.  The Litigation Trustee and the Litigation Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their attorneys, accountants, and financial advisors and shall not be liable for any act taken, omitted to be taken, or suffered to be

done in accordance with advice or opinions rendered by such persons. Notwithstanding such authority, and except as otherwise expressly required herein, neither the Litigation Trustee nor the Litigation Trust Oversight Committee shall be under any obligation to consult with their attorneys, accountants, financial advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or the Litigation Trust Oversight Committee or its Members or, as applicable, their respective designees, unless such determination is based on the Litigation Trustee's or the Litigation Trust Oversight Committee's respective fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts.

(b)    Without limiting the generality of the foregoing, the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee, may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person or Entity to be genuine and shall have no liability for actions taken in reliance thereon.

(c)    None of the provisions of this Litigation Trust Agreement shall require the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.

(d)    Each of the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee may rely without inquiry upon writings delivered to such Person or Entity pursuant to the Plan or the Confirmation Order that such Person or Entity reasonably believes to be genuine and to have been properly given. Notwithstanding the foregoing, nothing in this Section 10.1 shall relieve the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee, the Litigation Trust Oversight Committee from any liability for any actions or omissions arising out of such Person's or Entity's fraud, willful misconduct or gross negligence.

(e)    No termination of this Litigation Trust Agreement or amendment, modification or repeal of this Section 10.1 shall adversely affect any right or protection of the Litigation Trustee, the Litigation Trust Oversight Committee, the Members and their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Litigation Trustee or the Litigation Trust Oversight Committee that exists at the time of such amendment, modification or repeal.

      10.2    <u>Indemnification of the Litigation Trustee and the Litigation Trust Oversight Committee</u>.

      (a)    From and after the Effective Date, each of the Litigation Trustee, the Litigation Trust, the Litigation Trust Oversight Committee, and all of their respective designees, partners, affiliates, employees, and professionals, and any duly designated agent or representative of the Litigation Trustee, the Litigation Trust Oversight Committee or any of its Members (in their capacity as such) (each, a "<u>Litigation Trust Indemnified Party</u>," and collectively, the "<u>Litigation Trust Indemnified Parties</u>") shall be, and hereby is, indemnified by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all liabilities, losses, claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Trust Indemnified Party's exercise of what such Litigation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Trust Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order or this Litigation Trust Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Trust Indemnified Party's own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Litigation Trust Agreement; (ii) the services to be rendered pursuant to this Litigation Trust Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Trustee; or (iv) proceedings by or on behalf of any creditor. The Litigation Trust shall, on demand, advance or pay promptly, at the election of the Litigation Trust Indemnified Party, solely out of the Litigation Trust Property, on behalf of each Litigation Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Litigation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; *provided* that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts. Any indemnification claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Litigation Trust Property, ahead of the Litigation Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this Section (a), any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Trust's expense, subject to the foregoing terms and conditions. In addition, the Litigation Trust shall purchase insurance coverage as set forth in Section 5.1(a)(xiv) herein, including fiduciary liability insurance using funds from the Litigation Trust Property for the benefit of the Litigation Trustee and the Members. The indemnification provided under this Section 10.2 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Oversight Committee, any Member or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member's and each other Litigation Trust Indemnified Party's respective heirs, successors and assigns.

      (b)    The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity

for which such party is indemnified.  Termination or modification of this Litigation Trust Agreement shall not affect any indemnification rights or obligations set forth herein.

(c)    The Litigation Trust may, with the approval of the Litigation Trust Oversight Committee, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 10.2.

(d)    Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 10.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)    The rights to indemnification under this Section 10.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution.  Nothing in this Section 10.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.  Further, the Litigation Trust hereby agrees: (i) that the Litigation Trust is the indemnitor of first resort (*i.e.*, in the event any Litigation Trust Indemnified Party has the right to receive indemnification from one or more third party, the Litigation Trust's obligations to such Litigation Trust Indemnified Party are primary); (ii) that the Litigation Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such Litigation Trust Indemnified Party in connection with any proceeding as to which the Litigation Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from the Litigation Trust Proceeds; (iii) that the Litigation Trust irrevocably waives, relinquishes and releases such third parties from any and all claims by the Litigation Trust against such third parties for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no Litigation Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such Litigation Trust Indemnified Party prior to the Litigation Trust's satisfaction of its indemnification obligations hereunder.  For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article X.

10.3    <u>Litigation Trust Liabilities</u>.

(a)    All liabilities of the Litigation Trust, including, without limitation, indemnity obligations under Section 10.2 of this Litigation Trust Agreement, will be liabilities of the Litigation Trust as an Entity and will be paid or satisfied solely from the Litigation Trust Property and paid on a priority basis.  No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employees, agent, affiliate or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee or their respective affiliates.

38

10.4    <u>Limitation of Liability</u>.

(a)    None of the Litigation Trust Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special or other damages for a breach of this Litigation Trust Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Trust Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order.

10.5    <u>Burden of Proof</u>.

(a)    In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Litigation Trust Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

10.6    <u>Reliance by Trustee</u>.

(a)    Except as otherwise provided in this Article X:

(i)    The Litigation Trustee and the Litigation Trust Oversight Committee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database believed by it to be genuine and to have been signed or presented by the proper party or parties; and

(ii)    Subject to the terms of any applicable protective order, persons dealing with the Litigation Trustee or the Litigation Trust Oversight Committee shall look only to Litigation Trust Property to satisfy any liability incurred by the Litigation Trustee or the Litigation Trust Oversight Committee, other than in the case of fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts, to such person in carrying out the terms of this Litigation Trust Agreement, and neither the Litigation Trustee, the Litigation Trust Oversight Committee, its Members, nor any of their respective designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability, other than in the case of fraud, willful misconduct, gross negligence, self-dealing or *ultra vires* acts.

**ARTICLE XI**
**TAX MATTERS**

11.1    <u>Tax Treatment</u>.

(a)    <u>Treatment of Litigation Trust Assets Transfer</u>.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the

10566882.v2

Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets) directly to the Litigation Trust Beneficiaries, followed by (ii) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Litigation Trust Assets in exchange for Litigation Trust Interests. Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)      Grantor Trust Election.  To the extent permitted by law, the Debtors will elect to treat the Litigation Trust as a "grantor trust," solely for tax purposes, pursuant to the Treasury Regulations.  The Litigation Trustee will reasonably cooperate with such election.

11.2    Tax Reporting.

(a)      The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC.  The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 11.2.  The Litigation Trustee shall also annually send to each Litigation Trust Beneficiary a grantor tax information letter setting forth such Litigation Trust Beneficiary's share of items of income, gain, loss, deduction, or credit (including the receipts and expenditures of the Litigation Trust) as relevant for U.S. federal income tax purposes and will instruct all such Litigation Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided* that if the Litigation Trustee elects to make distributions through an intermediary (such as DTC), it shall provide such grantor tax information letter to such intermediaries for them to provide to such Litigation Trust Beneficiaries. Upon request, the Litigation Trustee shall provide such other information, if any, with respect to the Litigation Trust as may be reasonably necessary for the preparation of such Litigation Trust Beneficiary's U.S. federal, state or local income tax returns.  The Litigation Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any governmental unit.

(b)      As soon as reasonably practicable following the establishment of the Litigation Trust, the Litigation Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee, shall determine the value of the Litigation Trust Assets transferred to the Litigation Trust, based on the good-faith determination of the Litigation Trustee, and the Litigation Trustee shall apprise, in writing, the Litigation Trust Beneficiaries of such valuation. The valuation shall be used consistently by all Parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) for all federal income tax purposes.  In connection with the preparation of the valuation contemplated hereby and by the Plan, the Litigation Trust shall be entitled to retain such Litigation Trust Professionals as the Litigation Trust shall determine to be appropriate or necessary, and the Litigation Trustee, subject to the direction of the Litigation Trust Oversight Committee, shall take such other actions in connection therewith as it determines to be appropriate or necessary.  The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Litigation Trust Professionals retained in connection therewith.

(c)     The Litigation Trustee shall provide the Reorganized Debtors, as transferors to the Litigation Trust, with any statements or reports required by Treasury Regulation section 1.671-4 or other applicable Treasury Regulations, to enable the Reorganized Debtors to calculate tax obligations and attributes arising from the Litigation Trust.

(d)     The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust

11.3    <u>Allocations of Litigation Trust Taxable Income</u>.

(a)     Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Litigation Trust Agreement) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust.  Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets.

(b)     The tax book value of the Litigation Trust Assets for purposes of this Section 11.3 shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements and such fair market value shall be used by all Parties for all tax purposes.

11.4    <u>Withholding of Taxes</u>.

(a)     The Litigation Trustee shall deduct and withhold and pay to the appropriate governmental unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Litigation Trust Beneficiaries; *provided* that the Litigation Trustee shall provide reasonable advance notice of any such withholding or deduction.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate governmental unit shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Litigation Trust Agreement.

(b)     The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and this Litigation Trust Agreement.  As a condition to receive distributions under the Plan, all Litigation Trust Beneficiaries may be required to identify

themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including an IRS Form W-9 or, in the case of Litigation Trust Beneficiaries that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8.

(c)     The Litigation Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided* that upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest; *provided, further*, that if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Trustee for such liability.  The identification requirements in Section (b) and this Section (c) may, in certain cases, extend to holders who hold their securities in street name.  If a Litigation Trust Beneficiary fails to comply with such a request for tax information within 180 days, the Litigation Trustee may deem such distribution an unclaimed distribution and treated as such in accordance with the Plan.

(d)     In the event that the Litigation Trustee elects to make distributions through an intermediary (such as DTC), the party who would be the withholding agent with respect to distributions to the Litigation Trust Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Trustee.

## ARTICLE XII
## AMENDMENT AND WAIVER

12.1     Amendment and Waiver.

(a)     Any provision of this Litigation Trust Agreement may be amended, and any right of the Litigation Trust may be waived, only by the joint written agreement of Kinderhook, Hisun, the Litigation Trustee, and a majority vote of the Litigation Trust Oversight Committee, but with notice to each of the holders of Litigation Trust Interests; *provided* that (i) any such amendment or waiver that affects a provision of this Litigation Trust Agreement requiring a unanimous vote of the Litigation Trust Oversight Committee or that affects Section 3.1 may be approved only by the joint agreement of Kinderhook, Hisun, the Litigation Trustee, and a unanimous vote of the Litigation Trust Oversight Committee, (ii) any such amendment or waiver that adversely affects the Litigation Trust Beneficiaries' rights to distributions under Section 6.1 requires the approval of any adversely affected Litigation Trust Beneficiaries, and (iii) this Section (a) may not be amended or waived.

(b)     Technical amendments to this Litigation Trust Agreement may be made, as necessary to clarify this Litigation Trust Agreement or enable the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement by the Litigation Trustee with written approval of Kinderhook and the Litigation Trust Oversight Committee, but with notice to each of the holders of Litigation Trust Interests.

10566882.v2

(c)     Notwithstanding the above, no amendment, supplement or waiver of or to this Litigation Trust Agreement shall (i) expand the scope of the Litigation Trust Causes of Action, (ii) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order or this Litigation Trust Agreement, (iii) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust", or (iv) be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

(d)     No failure by the Litigation Trust, the Litigation Trustee, Kinderhook or the Litigation Trust Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1     <u>Governing Law</u>.  The Litigation Trust created by this Agreement shall be construed in accordance with and governed by the laws of the State of Delaware without giving effect to principles of conflict of laws, but subject to any applicable federal law.

13.2     <u>Jurisdiction</u>.     Subject to the proviso below, the Parties agree that the Bankruptcy Court shall have jurisdiction over the Litigation Trust and the Litigation Trustee, including, without limitation, the administration and activities of the Litigation Trust and the Litigation Trustee to the fullest extent permitted by law; *provided* that notwithstanding the foregoing, the Litigation Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Litigation Trust Causes of Action and pursue any recoveries in respect of any Litigation Trust Causes of Action.  Each Party to this Litigation Trust Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Litigation Trust Agreement or of any other agreement or document delivered in connection with this Litigation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement will be brought only in the Bankruptcy Court; *provided* that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement will be brought in either a state or federal court of competent jurisdiction in the State of Delaware (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Litigation Trust Agreement).  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement.

13.3     <u>Severability</u>.  In the event any provision of this Litigation Trust Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Litigation Trust Agreement or the application

of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Litigation Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

13.4    Notices.  Any notice or other communication required or permitted to be made under this Litigation Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three (3) business days after service by first-class mail, to the receiving party's below address(es):

If to the Litigation Trustee:

> [NAME]
> [TITLE]
> [ADDRESS]
> [ADDRESS]
> Email: [●]

If to the Debtors or the Reorganized Debtors:

> [NAME]
> [TITLE]
> Performance Powersports Group Holdings, Inc.
> 1775 East University Drive
> Tempe, AZ 85281

> With copies to:

> Klehr Harrison Harvey Branzburg LLP
> 919 North Market Street
> Suite 1000
> Wilmington, DE 19801
> Attention:    Domenic E. Pacitti
>                      Michael W. Yurkewicz
>                      Sally E. Veghte
> Email:         dpacitti@klehr.com
>                      myurkewicz@klehr.com
>                      svenghte@klehr.com

> and

> Klehr Harrison Harvey Branzburg LLP
> 1835 Market Street, Suite 1400
> Philadelphia, PA 19103
> Attention:    Morton R. Branzburg

44

Email:        mbranzburg@klehr.com

If to the Litigation Trust Oversight Committee:

[NAME]
[TITLE]
[ADDRESS ]
[ADDRESS]
Email: [●]

[NAME]
[TITLE]
[ADDRESS ]
[ADDRESS]
Email: [●]

[NAME]
[TITLE]
[ADDRESS]
[ADDRESS]
Email: [●]

If to a holder of a Litigation Trust Interest:

To the name and address set forth on the registry
maintained by the Litigation Trustee

If to Kinderhook:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 1002
Attention:    Brian Schartz, P.C.
              Allyson B. Smith
Email:        brian.schartz@kirkland.com
              allyson.smith@kirkland.com

If to Hisun:

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 1017
Attention:    John D. Beck
              Jennifer Y. Lee
Email:        john.beck@hoganlovells.com
              jennifer.lee@hoganlovells.com

45

13.5    <u>Headings</u>.  The section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof.

13.6    <u>No Recourse to Beneficiaries</u>.  In no event shall the Litigation Trust Beneficiaries have any responsibility for paying any expenses, fees, and other obligations of the Litigation Trust Causes of Action, and in no event shall the Litigation Trust, the Litigation Trustee, or the Litigation Trust Oversight Committee, or any of their agents, representatives, or professionals, have recourse to the Litigation Trust Beneficiaries therefor.

13.7    <u>The Litigation Trust's Compliance With Other Orders</u>.  The Litigation Trustee shall be bound (to the same extent that the Debtors would have been bound but for this Litigation Trust Agreement) by all orders entered by the Bankruptcy Court on or before the Effective Date.

13.8    <u>Entire Agreement</u>.  This Litigation Trust Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

13.9    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Litigation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

13.10    <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Litigation Trust Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Litigation Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Litigation Trust Agreement.  The term "including" shall mean "including, without limitation."

13.11    <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Litigation Trust Agreement, and to consummate the transactions contemplated hereby.

13.12    <u>Counterparts</u>.  This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused this Litigation Trust Agreement to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**FOR THE DEBTORS AND REORGANIZED DEBTORS**

Performance Powersports Group Investor, LLC

By: _____
Name:
Title:

Performance Powersports Group Holdings, Inc.

By: _____
Name:
Title:

Performance Powersports Group Purchaser, Inc.

By: _____
Name:
Title:

Performance Powersports Group, Inc.

By: _____
Name:
Title:

**FOR THE LITIGATION TRUSTEE**


_____    (solely in his capacity as Litigation Trustee for the
Litigation Trust)
Name:  Peter Kravitz

**FOR THE MEMBERS OF THE LITIGATION TRUST OVERSIGHT COMMITTEE**

[●]

By:    _____
Name:
Title:


[●]

By:    _____
Name:
Title:


[●]

By:    _____
Name:
Title:

**FOR KINDERHOOK**

CPS USA Acquisition, LLC

By: _____
Name:
Title:

**<u>EXHIBIT A</u>**

**Litigation Trust Note**

# __Exhibit D__

**Form of Litigation Trust Note**

## SECURED PROMISSORY NOTE AND SECURITY AGREEMENT

[●], 2023

**FOR VALUE RECEIVED**, the undersigned, PPG Litigation Trust (the "***Borrower***"), hereby promises to pay to the order of CPS USA ACQUISITION, LLC (the "***Lender***" (such term used hereinafter to refer to such Person solely in its capacity as a holder of the Loan and other Obligations, and not in any other capacity)), on the Termination Date (as defined in the Litigation Trust Agreement referenced below) (the "***Maturity Date***"), or the date of any earlier acceleration of the Obligations (such term and other capitalized terms used hereinafter have the meanings set forth below) hereunder, the lesser of (x) the principal sum of FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) and (y) the then outstanding amounts that have been advanced by the Lender to the Borrower as principal of the Loan under this Secured Promissory Note and Security Agreement (together with any note or other instrument issued in substitution or replacement of, or exchange for said note as said note or any such note or instrument may be amended, restated, replaced, supplemented or otherwise modified, collectively, this "***Note***"), in each case as may be increased by PIK Interest hereunder, plus accrued but unpaid interest thereon as provided herein. Certain capitalized terms used herein are defined below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Litigation Trust Agreement (as defined below).

This Note evidences, among other things, (a) the commitment of the Lender to fund on the "effective date" of the Plan, subject to the satisfaction (or waiver by the Lender in its sole discretion) of the Funding Conditions and the other terms and conditions set forth herein as of such date (such date, the "***Funding Date***"), a loan to the Borrower in the principal amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000) (such loan, together with any PIK Interest and other amounts, if any, accrued and added hereunder from time to time to the principal amount of this Note, collectively, the "***Loan***"), with such amounts to be funded to the sole deposit account of the Borrower (the account information for which shall be provided in writing to the Lender not less than five Business Days prior to the Funding Date), and (b) the obligations of the Borrower (i) to repay the principal amount of the Loan, (ii) to pay interest, as herein provided, on the principal amount hereof remaining unpaid from time to time, and (iii) to pay other amounts, including, without limitation, in respect of the indemnities set forth herein, which may become due and payable hereunder and under the Note Documents as herein and therein provided (collectively, such obligations are the "***Obligations***"). The Loan and all of the other Obligations of the Borrower arising under this Note and the other Note Documents shall constitute one general obligation of the Borrower secured by all of the Collateral.  The Loan or any portion thereof, once repaid, shall not be reborrowed.

The Borrower issues this Note on the date hereof pursuant to the Fourth Amended and Restated Asset Purchase Agreement, dated as of March 26, 2023 (as amended, amended and restated, supplemented or otherwise modified, the "***Asset Purchase Agreement***"), by and among Performance Powersports Group Investor, LLC, Performance Powersports Group Holdings, Inc., their direct and indirect subsidiaries named therein, and CPS USA Acquisition, LLC ("***Buyer***"), which provides for the sale of substantially all of the assets of the Debtors free and clear of all lines, claims, encumbrances and other interests (except certain assumed liabilities as set forth in

the Asset Purchase Agreement) to Buyer concurrently with the establishment of the Litigation Trust and the execution and delivery of this Note. The Borrower irrevocably authorizes the Lender to make or cause to be made, at or about the time of any additional principal amount being added to the loan under this Note or at the time of receipt of any payment of principal of this Note, an appropriate notation on its records, including computer records, reflecting the making of such loan or the receipt of such payment. The outstanding amount of the Loan set forth on such records, including computer records, maintained by the Lender shall, absent manifest error, be conclusive and binding evidence of the principal amount thereof owing and unpaid to the Lender, but the failure to record, or any error in so recording, any such amount on any such record shall not limit or otherwise affect the obligation of the Borrower hereunder to make payments of principal and interest on, this Note when due.

The Borrower also hereby promises to pay interest on the entire unpaid principal amount of the Loan at a per annum rate which shall equal (for any monthly period for which interest is calculated) 12.0% until the entire amount of the Loan shall be paid in full (the *"Interest Rate"*). All accrued and unpaid interest with respect to the Loan shall be absolutely due and payable by the Borrower to the Holder hereof on the last Business Day of each calendar quarter and at maturity of the Loan (whether by acceleration or otherwise) or earlier prepayment at any time of the Loan or any portion thereof; provided that interest due on any such quarterly interest payment date before the Maturity Date will be paid in kind by increasing the principal amount of the Loan and this Note on such interest payment date by the accrued amount of such interest due on such date ("**PIK Interest**").

The Borrower also hereby promises to pay interest on each overdue amount (whether of principal, interest or otherwise) payable on or in respect of this Note or the indebtedness evidenced hereby, to the extent permitted by applicable law, from the date on which such amount shall have first become due and payable in accordance with the terms hereof to the date on which such amount shall be paid to the Holder of this Note (whether before or after judgment), at an annual rate of interest which shall (to the extent permitted by applicable law) at all times be equal to two percent (2%) above the Interest Rate. The unpaid interest accrued on each overdue amount in accordance with the foregoing terms of this paragraph shall become absolutely due and payable in kind by the Borrower to the Holder hereof on demand by the Holder of this Note at any time. Interest on each overdue amount will continue to accrue, as provided by the foregoing terms of this paragraph, and will (to the extent permitted by applicable law) be compounded monthly until the obligations of the Borrower in respect of the payment of such overdue amount shall be discharged (whether before or after judgment). All computations of interest payable as provided in this Note shall be based on the actual number of days elapsed divided by a year of 360 days, as the case may be. The Lender shall make all computations (which computations shall, absent manifest error, be conclusive and binding upon the Holder(s) and the Borrowers) of the interest accrued for any period for which interest is then being determined and shall give notice of such computations to the Borrower so as to permit payment of such interest.

Each payment of principal, interest (other than PIK Interest), or other sums payable on or in respect of this Note or the indebtedness evidenced hereby that is permitted to be paid in cash hereunder shall be made by the Borrower directly to the Lender in United States Dollars, for the account of the Holder(s) of this Note, at such account as shall be specified by such Holder, not

2

later than 1:00 p.m., New York time, on the due date of such payment, and in immediately available and freely transferable funds.

All payments on or in respect of this Note or the indebtedness evidenced hereby shall be made to the Lender for the account of the Holder(s) without set-off or counterclaim and free and clear of and without any deduction of any kind for any taxes, levies, fees, deductions, withholdings, restrictions or conditions of any nature. The Lender shall provide the Borrower with a duly completed and properly executed IRS Form W-9 or applicable Form W-8 (together with any applicable attachments) (i) on or prior to the date hereof, (ii) promptly upon any such form previously provided becoming obsolete, incorrect or expired, and (iii) at such other times as may be reasonably requested in writing by the Borrower.

On and as of the date hereof, the Borrower hereby assigns to Lender, and hereby grants to Lender a security interest in, all of the Borrower's right, title and interest in and to the Collateral, whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, to secure the Obligations. As of the Funding Date, the Borrower, the Lender and [**name of Bank**] shall have entered into a control agreement with respect to the sole deposit account of the Borrower (such control agreement, the "***Control Agreement***"). The Borrower hereby agrees, at its own expense, to execute and deliver, from time to time, any and all further, or other, security agreements, pledge agreements, control agreements, mortgages or other instruments, and to perform such acts, as the Lender may reasonably request to effect the transactions contemplated by this Note and the other Note Documents and to provide to the Lender the benefits of all rights, authorities and remedies conferred upon the Lender by the terms of this Note and the other Note Documents, and/or in order to perfect and protect any security interest granted or purported to be granted hereby or to enable the Lender to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, the Borrower hereby irrevocably (x) authorizes the Lender at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as 'all assets of the debtor' or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the State of Delaware or such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail and (b) provide any other information required by the Uniform Commercial Code of any relevant State or such other jurisdiction for the sufficiency or filing office acceptance of any financing statement or amendment. The Borrower agrees to furnish any such information to the Lender promptly upon the Lender's request. This paragraph is referred to herein as the "***Security Agreement***"; <u>provided</u>, that the "Security Agreement" shall also include any other security agreement entered into after the date hereof by the Borrower and the Lender, and any amendment, restatement, replacement, supplement or other modification to this Security Agreement and any such other security agreement.

All Obligations of the Borrower under this Note and the other Note Documents (including the obligation to pay principal, interest, professional fees, costs, charges, commissions and expenses) shall be paid as provided in this Note and the other Note Documents when due, without defense, offset, reduction or counterclaim.

It is the intention of the Borrower and Lender to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the amount not in excess of the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated by reason of an election by Holders resulting from an Event of Default or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date of original issuance of this Note until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of Holders either be rebated to the Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to the Borrower. The aggregate of all interest (whether designated as interest, service charges, points or otherwise) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal.

For all purposes of this Note, the following terms shall have the respective meanings set forth below:

(a) *"Bankruptcy Cases"* means cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on January 16, 2023 (the "*Petition Date*") and jointly administered under *In re Performance Powersports Group Investor, LLC* (Case No. 23-10047 (LSS)) in the Bankruptcy Court.

(b) *"Bankruptcy Code"* means Title 11, United States Code, as now and hereafter in effect, or any successor statute.

(c) *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware.

(d) *"Business Day"* means a day on which the Lender is open for business in New York, New York.

(e) *"Collateral"* means all of the mixed and personal property of the Borrower including the following, in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located (i) all Accounts; (ii) all Chattel Paper; (iii) all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts; (iv) all Documents; (v) all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software; (vi) all Goods, including Inventory, Equipment, Farm Products and Fixtures; (vii) all Instruments; (viii) all Investment Property; (ix) all Letter-of-Credit Rights and other Supporting Obligations; (x) all Records; (xi) all Commercial Tort Claims; (xii) all Litigation Trust Causes of Action (including any and all rights (including rights of set-off and rights of recoupment), refunds, claims, counterclaims, demands, causes of action and rights to collect damages with respect to the Litigation Trust Causes of Action); and (xiii) all Proceeds and Accessions with respect to any of the foregoing Collateral. Each category of Collateral set forth above shall have the meaning set forth in the Uniform Commercial Code of the State of Delaware, it being the intention of the Borrower and the Lender that the description of the Collateral set forth above be construed to include the broadest possible range of assets.

4

(f)    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan, which order shall be in form and substance acceptable to the Lender in its sole discretion.

(g)    "***Debtors***" means, collectively, Performance Powersports Group Investor, LLC and each of debtor affiliates.

(h)    "***Final DIP Order***" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief,* entered by the Bankruptcy Court on March 27, 2023 in the Bankruptcy Cases [Docket No. 269].

(i)    "***Funding Conditions***" means, collectively, (i) the Litigation Trust Agreement, in form and substance acceptable to the Lender in its sole discretion, shall have been approved by order of the Bankruptcy Court and executed and delivered by all parties thereto and shall be in full force and effect, and no amendment, supplement or modification thereof shall have been entered into without the written approval of the Lender in its sole discretion; (ii) the Bankruptcy Court shall have entered the Confirmation Order approving the Plan, and such Confirmation Order shall be in full force and effect and shall not have been vacated, reversed, modified amended or stayed and not be subject to a pending appeal or motion or motion for leave to appeal or other proceeding to set aside such order or to challenge the relief provided for in such order; (iii) the "effective date" of the Plan (as defined in the Plan) shall have occurred or shall occur concurrently with the Funding Date; (iv) the Lender shall have received reasonably satisfactory evidence of perfection of liens (including any UCC financing statement) in favor of the Lender on the Collateral; (v) the representations and warranties contained herein shall be true and correct in all material respects as of the Funding Date (without duplication of any materiality qualifier contained therein); and (vi) no Event of Default shall have occurred and be continuing.

(j)    "*Holder*" means, at any time of determination, the Lender or any other person who is at such time a lawful holder in possession of all or any portion of this Note, solely in its capacity as a holder of Obligations, and not in any other capacity, together with any agent or other representative of such Holder.

(k)    "*Lien*" means any lien, mortgage, pledge, assignment, security interest, charge or encumbrance of any kind (including any conditional sale or other title retention agreement, any lease in the nature thereof, and any agreement to give any security interest), and asserted right of set off or offset and any option, trust or other preferential arrangement having the practical effect of any of the foregoing.

(l)    "***Litigation Trust Causes of Action***" means, collectively, those claims and causes of actions assigned to the Borrower in accordance with the Litigation Trust Agreement.

(m)    "***Note Documents***" means, collectively, (i) this Note, (ii) the Litigation Trust Agreement, (iii) the Control Agreement and (iv) each other related agreement, certificate, document, or instrument executed and delivered by Borrower or any of its subsidiaries in connection with the foregoing, as each such other related agreement, document or instrument may

5

be amended, restated, replaced, supplemented or otherwise modified from time to time in accordance with its terms.

(n)    "***Notes***" means this Note and the other notes of like tenor made by the Borrower concurrently with the making of this Note, and any notes in substantially the same form issued in replacement of the amounts of such Notes, whether issued to the Lender or such Lenders' successors or permitted assigns.

(o)    "***Person***" means and includes natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and government authorities.

(p)    "***Plan***" means the Debtors' plan pursuant to chapter 11 of the Bankruptcy Code, which plan shall be in form and substance acceptable to the Lender in its sole discretion.

The Borrower will have the right to prepay without premium or penalty at any time the unpaid principal of this Note in full or in part. Any payment of the indebtedness evidenced by this Note (including but not limited to any payment from Litigation Trust Proceeds) shall be applied by the Holder hereof (a) first, to the payment of all accrued and unpaid interest on the unpaid principal of this Note at the time of such partial payment, (b) then, to the payment of all (if any) other amounts (except principal) due and payable at the time of such partial payment on or in respect of this Note or the indebtedness evidenced by this Note and (c) finally, to the repayment or (as the case may be) the prepayment of the unpaid principal of the Loan. All payments made by the Borrower with respect to the Notes shall be made ratably among the Holders (based on the respective outstanding loan amounts prior to giving effect to such payments). If the Holder shall obtain on account of the Loan any payment (whether voluntary, involuntary, through the exercise of any right of setoff, any remedy against Collateral or otherwise) in excess of its ratable share of payments made by the Borrower on account of the loans evidenced by this Note and the other Notes, such Lender shall immediately notify the Borrower of such fact, and, the Borrower shall make such other payments as shall be necessary under the Litigation Trust Agreement.

Within three (3) Business Days after the Borrower's receipt of any proceeds of Litigation Trust Causes of Action and other proceeds of liquidating its assets (the "***Litigation Trust Proceeds***"), the Borrower shall prepay the then outstanding Loan, together with accrued and unpaid interest thereon, in an amount equal to up to 100% of such Litigation Trust Proceeds to the Lender's Account; *provided* that, subject to the terms of the Litigation Trust Agreement, the Borrower shall not make any distributions to the beneficiaries of the Borrower nor make any other payment to such beneficiaries unless and until the entire amount of the Loan has been paid in full in accordance with the terms hereof, except that it is hereby understood and agreed that Borrower shall have the right to reduce the amount of Litigation Trust Proceeds to be prepaid for any reasonable, out-of-pocket costs, fees, or expenses incurred by the Borrower to administer the Borrower in accordance with the Litigation Trust Agreement, including, without limitation, (i) the reasonable, documented, out-of-pocket fees and expenses incurred by advisors or professionals retained by the Litigation Trustee, (ii) the actual, reasonable, and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of the duties of the Litigation Trustee under the Litigation Trust Agreement or under the Confirmation Order or

6

the Plan, including, but not limited to, actual, reasonable, and documented fees and disbursements of the Litigation Trustee's legal counsel incurred in connection with the review, execution, and delivery of the Litigation Trust Agreement and related documents, and (iii) any costs incurred by the Borrower as a result of the bankruptcy case of Performance Powersports Group Investor, LLC remaining open after the other Bankruptcy Cases are closed (collectively, the "***Litigation Trust Fees and Expenses***").

If any sum would, but for the provisions of this paragraph, become due and payable on or in respect of this Note or the indebtedness evidenced hereby on a day which is not a Business Day, then such sum shall become due and payable on the Business Day next succeeding the day on which such sum would otherwise have become due and payable hereunder, and interest payable hereunder to the Holder hereof shall be adjusted by the Holder hereof accordingly.

The Borrower represents and warrants to the Lender and each Holder on the date hereof and on the date of the making of the Loan that: (a) the Borrower is a trust duly organized, validly existing and in good standing under the laws of the State of Delaware; (b) such Borrower has all requisite power and authority and full legal right to carry on the business in which it is presently engaged and will be engaged upon consummation of the transactions contemplated hereby; (c) all necessary action has been taken by the Borrower to execute and deliver this Note and the other Note Documents to which it is a party and to make the borrowings hereunder; (d) the execution, delivery, and performance by the Borrower of this Note and any Note Documents and the consummation of the transactions contemplated by this Note and any Note Documents do not and will not (i) violate any provision of any law or any governmental rule or regulation applicable to the Borrower, the organizational documents of the Borrower, or any order, judgment, decree, or order of any court or other government authority binding on the Borrower, (ii) conflict with, result in a breach of, or constitute a default under any contractual obligation of the Borrower, (iii) result in or require the creation or imposition of any lien upon any of the properties or assets of the Borrower (other than any liens created on the Collateral under this Note in favor of the Lender), or (iv) require any approval of the beneficiaries of the trust or any approval or consent of any Person under any contractual obligation of the Borrower any authorization or from any government authority, (e) this Note has been duly executed and delivered by the Borrower and is the legally valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability (whether considered in a proceeding at law or equity), (f) the provisions of the Note Documents are effective to create in favor of the Lender a legal, valid and enforceable security interest in all right, title and interest of such Borrower in the Collateral described therein, and (g) no authorization, approval, or other action by, and no notice to or filing with, any government authority is required for either (i) the pledge or grant by the Borrower of the liens purported to be created in favor of the Lender under the Security Agreement or (ii) the exercise by Lender of any rights or remedies in respect of any Collateral (whether specifically granted or created pursuant to this Note or created or provided for by applicable law), except for filings or recordings contemplated herein and except as may be required, in connection with the disposition of any Collateral constituting securities, by laws generally affecting the offering and sale of such securities.

7

The Borrower covenants that it will conduct its activities and administer its assets strictly in accordance with and as permitted by the Litigation Trust Agreement dated as of [●], 2023, by and among the Debtors, CPS USA Acquisition, LLC, and Peter Kravitz, solely in his representative capacity as trustee of the Litigation Trust (the "***Litigation Trustee***"), and one (1) member selected by Vietnam New Century Industrial Co., Ltd., Jillian Lin of Dundon Advisors, and one (1) independent member selected by Buyer, as members of the oversight committee governing the Litigation Trust (as amended, amended and restated, supplemented or otherwise modified, in accordance with its terms, the "***Litigation Trust Agreement***"). The Borrower shall not, and shall not permit any Person to, amend, restate, supplement, or otherwise modify the Litigation Trust Agreement other than in accordance with its terms.

If any of the following conditions or events (each, an *"Event of Default"*) shall occur:

(I)    Failure by the Borrower to pay any required payment or prepayment of principal of or interest on the Loan, or any other amount due under this Note or the other Note Documents, in each case when due, whether at stated maturity, by acceleration or otherwise (a "Payment Default"); or

(II)    The Borrower shall default in the performance of or compliance with any covenant of Borrower contained in this Note, the Litigation Trust Agreement, or any of the other Note Documents, and such default shall not be cured by Borrower or waived by Lender within fifteen (15) days; or

(III)    Any representation, warranty, or certification made by the Borrower in this Note or in any statement or certificate at any time given by the Borrower in writing pursuant hereto or thereto or in connection herewith or therewith shall be false in any material respect on the date as of which made; or

(IV)    Any order, judgment, or decree shall be entered against the Borrower decreeing the dissolution or split up of the Borrower and such order shall remain undischarged or unstayed for a period in excess of 30 days; or

(V)    At any time after the execution and delivery thereof, (i) the grants of Collateral made in the Security Agreement shall, at any time, cease to be in full force and effect (other than by reason of a release of Collateral in accordance with the terms thereof or the payment in full of the Obligations and the termination of the Note) or shall be declared null and void, or the validity or enforceability thereof shall be contested by the Borrower, (ii) any Note Document shall cease to be in full force and effect (other than by reason of a release of Collateral thereunder in accordance with the terms hereof or thereof, the payment in full of the Obligations and the termination of the Note or any other termination of such Note Document in accordance with the terms hereof or thereof) or shall be declared null and void, or the Lender shall not have or shall cease to have a valid Lien in any Collateral purported to be covered thereby, in each case for any reason other than the failure of the Lender to take any action within its control, or (iii) the Borrower shall contest the validity or enforceability of any Note Document in writing or deny in writing that it has any further liability, including with respect to future advances by the Lender, under any Note Document; or

(VI)    The Litigation Trustee shall cease at any time to be (x) Peter Kravitz or (y) another Person appointed with the prior approval of Kinderhook in accordance with the terms of the Litigation Trust Agreement; or

(VII)    The Borrower shall use the proceeds of the Loan to prosecute any Released Claim (as defined in the Final DIP Order) or for any purpose other than to finance the Litigation Trust Fees and Expenses;

**THEN,** upon the occurrence and during the continuation of any Event of Default, the Holder may, upon written notice (which may be delivered by facsimile or overnight courier) to the Borrower (which shall require three (3) Business Days' notice for any Event of Default other than a Payment Default), (i) declare (a) this Note to be terminated, and/or (b) all or any portion of (1) the unpaid principal amount of the Loan and (2) all other Obligations to be immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Borrower. If any Event of Default shall have occurred and be continuing, then the Holder may also exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the Uniform Commercial Code (whether or not the Uniform Commercial Code applies to the affected Collateral).

The enumeration of the foregoing rights and remedies is not intended to be exhaustive and the exercise of any right or remedy shall not preclude the exercise of any other rights or remedies, all of which shall be cumulative and not alternative.

*The Borrower waives (i) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties or other property at any time held by the Lender on which the Borrower may in any way be liable and hereby ratify and confirm whatever the Lender may lawfully do in this regard, (ii) subject to the notice provisions of the preceding paragraph, all rights to notice and hearing prior to the Lender's taking possession or control of, or to the Lender's replevin, attachment or levy upon, the Collateral, or any bond or security which might be required by any court prior to allowing the Lender to exercise any of its remedies, and (iii) the benefit of all valuation, appraisal and exemption laws. The Borrower acknowledges it has been advised by counsel of its choice with respect to the effect of the foregoing waivers and this Note, the other Note Documents and the transactions evidenced by this Note and the other Note Documents.*

The Borrower absolutely and unconditionally agrees to reimburse the Lender and any Holder of all or any portion of this Note, on demand, whether or not all or any of the transactions contemplated by the Note are ultimately consummated, for all out-of-pocket expenses incurred in connection with this Note, the other Note Documents, the Loan and the transactions contemplated hereby and thereby, including but not limited to (a) the reasonable attorney's fees and disbursements of the Lender's counsel and disbursements, incurred or expended in connection with the preparation, negotiation and interpretation of the Note Documents and the making of the Loan hereunder and (b) all reasonable attorney's fees and disbursements and the reasonable fees and disbursements of other professionals relating to the enforcement of any obligations under and

9

of the Note Documents or the satisfaction of any indebtedness of the Borrower hereunder. In addition to the foregoing, the Borrower hereby absolutely and unconditionally agrees to defend (subject to Indemnitees' selection of counsel), indemnify, pay and hold harmless the Lender and each Holder and their respective officers, directors, employees, agents, advisors, attorneys and affiliates (collectively, the "***Indemnitees***"), from and against any and all Indemnified Liabilities (as hereinafter defined); <u>provided</u> that the Borrower shall not have any obligation to any Indemnitee hereunder with respect to any Indemnified Liabilities to the extent such Indemnified Liabilities arise solely from the gross negligence or willful misconduct of that Indemnitee as determined by a final and non-appealable judgment of a court of competent jurisdiction. As used herein, "***Indemnified Liabilities***" means, collectively, any and all liabilities, obligations, losses, damages (including natural resource damages), penalties, actions, judgments, suits, claims, costs (including the costs of any investigation, study, sampling, testing, abatement, cleanup, removal, remediation or other response action necessary to remove, remediate, clean up or abate any hazardous materials activity), expenses and disbursements of any kind or nature whatsoever (including the reasonable fees and disbursements of counsel for Indemnitees in connection with any investigative, administrative or judicial proceeding commenced or threatened by any Person, whether or not any such Indemnitee shall be designated as a party or a potential party thereto, and any reasonable fees or expenses incurred by Indemnitees in enforcing this indemnity), whether direct, indirect or consequential and whether based on any federal, state or foreign laws, statutes, rules or regulations (including securities and commercial laws, statutes, rules or regulations and environmental laws), on common law or equitable cause or on contract or otherwise, that may be imposed on, incurred by, or asserted against any such Indemnitee, in any manner relating to or arising out of (i) this Note or the other Note Documents or the transactions contemplated hereby or thereby (including the use or intended use of the proceeds of the Loan), or any enforcement of any of the Note Documents (including any sale of, collection from, or other realization upon any of the Collateral), or (ii) any environmental claim or any hazardous materials activity relating to or arising from, directly or indirectly, any past or present activity, operation, land ownership, or practice of Borrower and its subsidiaries. To the extent that the undertakings to defend, indemnify, pay and hold harmless set forth in this paragraph may be unenforceable in whole or in part because they are violative of any law or public policy, the Borrower shall contribute the maximum portion that it is permitted to pay and satisfy under applicable law to the payment and satisfaction of all Indemnified Liabilities incurred by Indemnitees or any of them. Notwithstanding anything in this Note to the contrary, the agreements in this paragraph shall survive the termination of this Note and the repayment, satisfaction or discharge of all the other Obligations. All amounts due under this paragraph shall be payable on written demand by the Lender or the applicable Holder therefor. Any such amounts not paid when due shall, if due prior to the maturity of the Loan, be charged to the Borrower and shall thereafter constitute an additional portion of the Loan hereunder and shall accrue interest at the rate then applicable to the Loan hereunder.

No delay or omission on the part of the Lender or any Holder hereof in exercising any right hereunder shall operate as a waiver of such right or of any other rights of the Lender or such Holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar or waiver of the same or any other right on any further occasion.

Except as otherwise expressly provided in this Note, all notices and other communications made or required to be given pursuant to this Note or the other Note Documents shall be in writing and shall be delivered in hand, mailed by United States registered or certified first class mail,

postage prepaid, sent by overnight courier, or sent by telegraph, telecopy, facsimile or telex and confirmed by delivery via courier or postal service, addressed to such party at the notice address beneath its signature hereto or at such other address for notice as such party shall last have furnished in writing to the Person giving the notice.

This Note shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the Lender and the Borrower, provided that the Borrower may not assign or transfer any of its obligations hereunder without the prior written consent of each Holder. Any Holder may at any time grant participations in all or a portion of its interest in the outstanding Loan, its rights hereunder or under the Note Documents to one or more financial institutions. In addition, subject to the Litigation Trust Agreement, any Holder may assign all or a portion of its interest in the outstanding Loan, its rights hereunder or under the Note Documents to one or more financial institutions. For the avoidance of any doubt, each Holder of this Note assumes and agrees to be bound by the Litigation Trust Agreement.  Notwithstanding the foregoing, no such assignment or participation of the Loan shall be permitted to any Person (other than (x) an affiliate of the Holder who is not the Borrower, or (y) a holder (or its affiliate) of equity interests of the Borrower, who is not the Borrower) unless an Event of Default has occurred and is continuing at the time of such assignment or participation.

Neither this Note, the other Note Documents nor any provision hereof or thereof may be amended, supplemented, waived or otherwise modified except pursuant to an agreement or agreements in writing entered into by the Borrower, the Holders and the other parties required by the Litigation Trust Agreement. No waiver of any provision of this Note or the Note Documents or consent to any departure by the Borrower herefrom or therefrom shall in any event be effective unless the same shall be permitted by the preceding sentence and the Litigation Trust Agreement, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

The Borrower hereby waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral and to the addition or release of any other party or person primarily or secondarily liable. The Borrower hereby waives all suretyship defenses generally. No provision of this Note or the other Note Documents shall impair the obligations of the Borrower, which are absolute and unconditional, to pay the principal of and interest on this Note at the place, at the respective times, and in the currency herein prescribed.

**ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST THE BORROWER ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OTHER NOTE DOCUMENT, OR ANY OBLIGATIONS HEREUNDER OR THEREUNDER, SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COURTS OF THE STATE OF DELAWARE; PROVIDED, THAT FOR THE DURATION OF THE BANKRUPTCY CASES, THE BORROWER SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE BANKRUPTCY COURT EXCEPT TO THE EXTENT THAT THE BANKRUPTCY COURT DOES NOT HAVE OR DOES NOT EXERCISE JURISDICTION. BY EXECUTING AND DELIVERING THIS NOTE, THE BORROWER, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES,**

**IRREVOCABLY (I) ACCEPTS GENERALLY AND UNCONDITIONALLY THE NONEXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS; (II) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (III) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE BORROWER AT ITS ADDRESS PROVIDED IN ACCORDANCE WITH THE TERMS OF THIS NOTE; (IV) AGREES THAT, SERVICE AS PROVIDED IN CLAUSE (III) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE BORROWER, AS THE CASE MAY BE, IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; (V) AGREES THAT THE LENDER RETAINS THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST THE BORROWER IN THE COURTS OF ANY OTHER JURISDICTION; AND (VI) AGREES THAT THE PROVISIONS OF THIS PARAGRAPH RELATING TO JURISDICTION AND VENUE SHALL BE BINDING AND ENFORCEABLE TO THE FULLEST EXTENT PERMISSIBLE UNDER DELAWARE LAW OR OTHERWISE.**

EACH OF THE PARTIES TO THIS NOTE AND THE OTHER NOTE DOCUMENTS HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OF THE OTHER NOTE DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED. The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including contract claims, tort claims, breach of duty claims and all other common law and statutory claims. Each party hereto acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this Note and the other Note Documents, and that each will continue to rely on this waiver in their related future dealings. Each party hereto further warrants and represents that it has reviewed this waiver with its legal counsel and that it knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS PARAGRAPH AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE OR ANY OF THE OTHER NOTE DOCUMENTS OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOAN MADE HEREUNDER. In the event of litigation, this Note may be filed as a written consent to a trial by the court.

**THIS NOTE, THE OTHER NOTE DOCUMENTS AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND THEREUNDER SHALL FOR ALL PURPOSES BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THAT WOULD REQUIRE APPLICATION OF ANOTHER LAW.**

10433790.v3

This Note shall become effective on the first date on which Borrower and the Lender shall have executed and delivered a counterpart of this Note to the Lender.

The Borrower shall treat this Note as indebtedness for all income tax purposes, and will not take any position inconsistent therewith. By its acceptance of this Note, the Lender agrees (for itself and its affiliates, successors and permitted assigns), that it shall treat this Note as indebtedness for all income tax purposes.

The Borrower will maintain a register in which it will record the initial ownership of this Note and any changes in ownership of this Note. The entries in the register shall be conclusive absent manifest error, and the Borrower and the Lender or other holders shall treat each person whose name is recorded in the register pursuant to the terms hereof as a holder hereunder for all purposes of this Note. No transfer shall be effective unless recorded in the register. This paragraph shall be construed so that the Note is at all times maintained in "registered form" within the meaning of Sections 163(f), 871(h)(2) and 881(c)(2) of the Internal Revenue Code of 1986, as amended.

*[Remainder of this page intentionally left blank]*

13

**IN WITNESS WHEREOF**, each of the undersigned has caused this Note to be duly executed and duly delivered by its duly authorized officer as of the day and year first above written.

**PPG LITIGATION TRUST**,
as Borrower

By:_____
Name:
Title:


Notice Address:
Attention:
Email:


STATE OF _____

COUNTY OF _____

I, _____, a Notary Public of the County and State aforesaid, certify that _____ personally came before me this day and acknowledged that (s)he is _____ trustee of PPG Litigation Trust, a Delaware trust (the "Trust"), and that (s)he, as _____ trustee being authorized to do so, executed the foregoing on behalf of the Trust.

WITNESS my hand and official stamp or seal, this the _____ day of _____, 2023.

[SEAL]                              _____

Notary Public

My Commission expires: _____

Accepted and agreed:

**CPS USA ACQUISITION, LLC**,
as Lender


By:_____
Name:
Title:

Notice Address:

CPS USA Acquisition, LLC
c/o Kinderhook Industries, LLC
505 Fifth Avenue, 25th Floor
New York, NY 10017
Attention: Chris Michalik; Paul Cifelli
Email: cmichalik@kinderhook.com; pcifelli@kinderhook.com

With a copy to:
Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022
Attention: Brian Schartz, P.C.; Shawn OHargan,
P.C.; Allyson B. Smith
Email: brian.schartz@kirkland.com;
shawn.ohargan@kirkland.com; allyson.smith@kirkland.com

*[Signature page to Secured Promissory Note]*

# **Exhibit E**

**Form of Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

THIS AGREEMENT is made this ___ day of ___, 2023, by and between Peter Kravitz, as Plan Administrator and Performance Powersports Group Investor, LLC, Performance Powersports Group Holdings, Inc., Performance Powersports Group Purchaser, Inc., and Performance Powersports Group, Inc. (collectively, the "***Debtors***"), pursuant to the *Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 385] (as may be modified, amended, or supplemented from time to time, the "***Plan***"), which has been confirmed by the Bankruptcy Court.  Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Plan.

### RECITALS

WHEREAS, on January 16, 2023, voluntary petitions under Chapter 11 of the Bankruptcy Code were filed by the Debtors in the Bankruptcy Court; and

WHEREAS, the Plan was confirmed by the Bankruptcy Court by Order entered [●], 2023 at Docket No. [●]; and

WHEREAS, the Plan provides that certain of the rights and powers of the Debtors under the Plan shall be exercised by a plan administrator in its capacity as the representative of the Debtors (in its capacity as such, the "***Plan Administrator***"); and

WHEREAS, under Article IV F. of the Plan, the Plan Administrator shall have the responsibilities and duties as set forth in the Plan and this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

### ARTICLE I
### PLAN ADMINISTRATOR'S ACCEPTANCE OF POSITION

1.1    <u>Acceptance</u>.  Peter Kravitz accepts employment as the Plan Administrator and agrees to observe and perform all duties and obligations assigned to it by this Agreement.

1.2    <u>Independent Contractor</u>.  The parties agree that during the term of this Agreement, the Plan Administrator shall be an independent contractor, and not an employee of the Debtors, within the meaning of all federal, state and local laws and regulations governing employment insurance, workers' compensation, industrial accident, labor and taxes.  In addition, the Plan Administrator shall not, by reason of this Agreement, acquire any rights under any benefit plan operated by the Debtors or its affiliates for the benefit of their employees, including, without limitation, (a) any pension or profit-sharing plans or (b) any "employee welfare plans" (as defined in Section 3 of the Employee Retirement Income Security Act of 1974, as amended.)

1.3    <u>Part-Time Position</u>.  The parties anticipate that the Plan Administrator will be able to fulfill her obligations under this Agreement by devoting a portion of each work-day or work-week to performing the services set forth herein.  Accordingly, the Plan Administrator is being retained only on a part-time basis.  The parties agree that the Plan Administrator may accept employment elsewhere during the period in which the Plan Administrator is performing services

pursuant to this Agreement. The Parties acknowledge that the Plan Administrator shall also serve as the Disbursing Agent under the Plan.

## ARTICLE II
## GENERAL OBLIGATIONS OF THE PLAN ADMINISTRATOR

2.1    <u>Establish Accounts</u>. On the Effective Date or as soon thereafter as practicable, the Plan Administrator shall establish one or more accounts into which shall be deposited all funds for which it is responsible under this Agreement and the Plan and which are not required or permitted to be deposited into any other account, reserve or escrow.

2.2    <u>Distributions</u>. Subject to Article 2.3 of the Agreement, the Plan Administrator shall make distributions on account of and to pay those Allowed Claims for which the Debtors are responsible for payment in accordance with and subject to the conditions set forth in the Plan.

2.3    <u>Reserves</u>. The Plan Administrator shall establish and maintain appropriate reserves in accordance with the Plan with respect to those Claims and expenses for which it is responsible.

2.4    <u>Investments</u>. Pursuant to the Plan, all Cash held by the Debtors, the Plan Administrator or any Disbursing Agent, as the case may be, shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court.

2.5    <u>Liquidation of Assets</u>. In accordance with the Plan, the Plan Administrator shall, in the name of Debtors, liquidate or otherwise dispose of those of Debtors' assets for which it is responsible under the Plan in a manner reasonably calculated to maximize value for distribution to holders of those Allowed Claims for which it acts as Disbursing Agent.

2.6    <u>Books and Records</u>. Until the termination of its responsibilities under this Agreement or further order of the Bankruptcy Court, the Plan Administrator shall maintain appropriate books and records in accordance with the requirements of Plan.

2.7    <u>No Other Duties</u>. Other than the obligations of the Plan Administrator enumerated above or under the Plan, the Plan Administrator shall have no duties or obligations of any kind or nature respecting implementation of the Plan or this Agreement.

## ARTICLE III
## POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR

3.1    <u>General</u>. The Plan Administrator shall have all powers and rights enumerated below or in the Plan, including, without limitation, those rights and powers enumerated in Article IV F. of the Plan, with respect to the Assets and with respect to Claims, and shall be a representative of the Estates within the meaning of 11 U.S.C. § 1123 for all such purposes. The enumeration of the powers listed in Article IV F. of the Plan shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of this Agreement, the Plan or Bankruptcy Court order.

3.2   <u>Employees and Agents</u>.   The Plan Administrator is empowered: (a) to elect, appoint, engage, retain and employ on a full time or part time basis any Persons as agents, representatives, employees, or independent contractors on behalf of the Debtors and their Estates in one or more capacities as is reasonably necessary to enable the Plan Administrator to implement this Agreement and the Plan; (b) subject to the Plan, to pay fees to and to reimburse the expenses of those employees, agents or independent contractors elected, appointed, engaged, retained or employed by the Plan Administrator; (c) to indemnify the Plan Administrator and its agents, professionals and employees in accordance with this Agreement from any loss (including reasonable attorneys' fees) incurred in connection with the implementation of the Plan other than a loss due to the indemnified party's willful misconduct, gross negligence or fraud; and (d) to prescribe the titles, powers and duties, terms of service and other terms and conditions of the election, appointment, engagement, retention, or employment of such Persons.

3.3   <u>Insurance</u>.   The Plan Administrator is hereby authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors, the Estates and the Debtors, including, but not limited to, coverage with respect to (i) any property that is or may in the future become an asset and (ii) the liabilities, duties, and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan and this Agreement, with the cost of such insurance being paid solely from the proceeds of the Estates and shall not be required to post a bond with respect to assets held under this Agreement and the Plan.

3.4   <u>Protection of Assets</u>.   The Plan Administrator is hereby authorized to do and to perform any and all acts necessary or appropriate for the conservation and protection of the Assets of the Debtors and the Estate, including acts or things necessary or appropriate to maintain assets held pending sale or other disposition or distribution thereof.

3.5   <u>Authority to Prosecute Actions</u>.   The Plan Administrator shall be empowered as the representative of the Estates, but shall have no obligation, to prosecute, in the name of the Debtors, the Estates or the Plan Administrator, or otherwise, all such actions and objections, as may be necessary, appropriate or incident to implementing the Plan or this Agreement.

3.6   <u>Additional Powers</u>.   The Plan Administrator shall be empowered to do all other acts and things not inconsistent with the provisions of the Plan or this Agreement that the Plan Administrator deems reasonably necessary or desirable with respect to implementing the Plan and this Agreement.

## ARTICLE IV
## THE PLAN ADMINISTRATOR

4.1   <u>Resignation, Death or Removal</u>.   The Plan Administrator may resign, or may be removed for cause upon motion to and order of the Bankruptcy Court.  The Bankruptcy Court may appoint any successor Plan Administrator.

4.2   <u>Continuity</u>.   Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence or removal of the Plan Administrator shall not operate to terminate or remove any existing agency created pursuant to the terms of this Agreement or invalidate any

action theretofore taken by either of the Plan Administrator.  In the event of the resignation or removal of the Plan Administrator, that Plan Administrator shall promptly execute and deliver such documents, instruments and other writings as may be required by the Bankruptcy Court or reasonably requested by the successor Plan Administrator.

      4.3    <u>Compensation</u>.  The Plan Administrator and any employes retained shall be entitled to receive the compensation in the amount of a blended rate of $600 per hour and shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in connection with performing its duties hereunder, on a weekly basis.  Upon the request of the Plan Administrator, the Bankruptcy Court, after notice and hearing, may, on a prospective basis, alter the amount, terms or consideration of the Plan Administrator's compensation.

      4.4    <u>Standard of Care, Indemnification and Exculpation</u>.  The Plan Administrator, its professionals and its employees shall not be personally liable to the Debtors or to the Holder of any Claim or Interest or to any other person except for such of its or their own acts as shall constitute willful misconduct, gross negligence or fraud.  Except for the aforesaid, the Plan Administrator is exonerated, held harmless and indemnified (and may (but neither is required to) maintain insurance for the purposes of such indemnification), in accordance with the Plan. Notwithstanding the foregoing, the Plan Administrator and its agents, professionals and employees shall have recourse with respect to any claims for indemnification solely against the Debtors' Assets and the proceeds thereof, and any insurance purchased with the proceeds of any of the Debtors' Assets.

      4.5    <u>Reliance by the Plan Administrator</u>.  The Plan Administrator may conclusively rely, and shall be fully protected in acting upon, any statement, instrument, opinion, report, notice, request, consent, order or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator may also conclusively rely on information provided to it by agents and employees of the Debtors.  The Plan Administrator may consult with legal counsel and shall be fully protected from any liability except as set forth in Article 4.4 above in respect of any action taken or suffered in accordance with the opinion of legal counsel.  The Plan Administrator shall have the right at any time to seek instructions from the Court concerning the acquisition, management or disposition of the assets for which it is responsible.

      4.6    <u>Reliance by Persons Dealing with the Plan Administrator</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Debtors and their Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtors, and shall have no obligation to inquire into the existence of such authority.

      4.7    <u>Duty of Care</u>.  The Plan Administrator shall act for the Estates in a fiduciary capacity as applicable to a board of directors/board of managers, subject to the provisions hereof.

**ARTICLE V**
**TERMINATION**

      5.1    Subject to further order of the Bankruptcy Court, this Agreement shall terminate on the earlier of (i) thirty (30) days after: (a) the Final Distribution or (b) the date the order granting

the final decree in these Chapter 11 Cases becomes a Final Order, whichever is later, and (ii) as otherwise ordered by the Bankruptcy Court.

## ARTICLE VI
## MISCELLANEOUS

6.1    <u>Notices</u>.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be mailed by first class mail, or delivered by such other means that might be reasonable and appropriate under the circumstances.

if to the Plan Administrator:

Peter Kravitz
c/o Province, Inc.
2360 Corporate Circle, Ste. 340
Henderson, NV 89074

with a copy to:

Domenic E. Pacitti
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE  19801

6.2    <u>Change of Address</u>.  Any person or entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Article 6 hereof.  Such change of address shall be effective ten (10) Business Days after service of such notice.

6.3    <u>Effectiveness</u>.  This Agreement shall become effective on the Effective Date.

6.4    <u>Governing Law</u>.  This Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Delaware.

6.5    <u>Headings</u>.  Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

6.6    <u>Amendments</u>.  This Agreement may be amended from time to time by the Plan Administrator, with the approval of the Bankruptcy Court, after notice to United States Trustee, and such hearing (if any) as the Court may hold.

6.7    <u>Conflict</u>.  In the event of a conflict between the provisions of this Agreement and the provisions of the Plan, the provisions of the Plan shall govern.

6.8    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all conflicts concerning this Agreement and all matters related to the interpretation and implementation of this Agreement.

## ARTICLE VII
## ADDITIONAL PROVISIONS

7.1     Termination of Responsibilities.  Upon the liquidation of the assets and the payment of funds to all Holders of Allowed Claims, the Plan Administrator may apply to the Bankruptcy Court for an order terminating its duties and responsibilities under this Agreement and the Plan. Upon the termination of its duties and responsibilities by the Bankruptcy Court, such the Plan Administrator shall have no further obligations hereunder.

7.2     Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction of all disputes arising under this Agreement. Any such disputes shall be resolved by an order of the Bankruptcy Court, which order shall be final and binding, with the Plan Administrator waiving all rights of appeal therefrom.

7.3     Distribution Date.  Each Distribution Date shall be determined by the Plan Administrator.

7.4     Dissolution of the Debtors.  The Plan Administrator shall have the non-exclusive authority to effect the dissolution of any one or more of the Debtors under the Plan.

7.5     Other Actions.  The Plan Administrator shall have all duties and responsibilities with respect to all causes of action of any of the Debtors or the Estates as set out in the Plan.

**Performance Powersports Group Investor, LLC and its Debtor Affiliates**

By:_____
       Ken Vanden Berg
Its:    Chief Financial Officer

**Plan Administrator**

By:_____
       Peter Kravitz

# __Exhibit F__

### Identity of Plan Administrator

The Plan Administrator shall be Peter Kravitz.

10566718.v2