# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PERFORMANCE POWERSPORTS | ) Case No. 23-10047 (LSS) |
| GROUP INVESTORS, LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

### SEPTEMBER 15, 2023

KLEHR HARRISON HARVEY BRANZBURG LLP
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile:  (302) 426-9193
Email:      dpacitti@klehr.com
Email:      myurkewicz@klehr.com
Email:      sveghte@klehr.com

*Counsel for the Debtors and Debtors-in-Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

## INTRODUCTION

Performance Powersports Group Investor, LLC and its Debtor Affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases, hereby propose the following joint plan of liquidation pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtors' history, business, properties, key contracts, and a summary and analysis of the Plan, stakeholders of the Debtors should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached.  ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the wind down of the Debtors' affairs, continued liquidation of the Debtors' remaining assets to Cash and the distribution of the net proceeds realized therefrom, in addition to Cash on hand on the Effective Date of the Plan, to holders of Allowed Claims and Interests as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code.  The Plan does not provide for a distribution to holders of Intercompany Interests or Subordinated Claims, and their votes are not being solicited.  The Plan contemplates (a) the appointment of a Litigation Trustee  to, among other things, commence, prosecute or settle the Retained Causes of Action, resolve Disputed Claims of holders of Beneficial Trust Interests, and make Distributions to holders of Beneficial Trust Interests and (b) the appointment of a Plan Administrator to, among other things, resolve Disputed Claims other than holders of Beneficial Trust Interests, implement the terms of the Plan, and make Distributions to holders of Allowed Claims and Interests, other than holders of Beneficial Trust Interests, in accordance with the Plan.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a claimholder or interestholder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to claimholders and interestholder.

The Debtors expressly reserve their right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A. *Scope of Definitions and Rules of Interpretation, Application of Definitions, Rules of Construction, and Computation of Time.*

(a)    For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(b)    all Defined Terms shall have the meanings ascribed to them in Section I.B. of the Plan;

(c)    any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise;

(d)    whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

(e)    any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(f)    any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may be amended, modified, or supplemented from time to time;

(g)    any reference to a specific Person includes any successors or assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or assign of such Person;

(h)    unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(i)    unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

(j)    the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(k)    captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

2

(l)    whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

(m)    the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document;

(n)    all other rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(o)    unless otherwise indicated herein, all references to dollars are to United States dollars; and

(p)    unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(q)    The following Defined Terms shall have the respective meanings specified below.

B.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "***2021 Credit Agreement***" means that certain Credit Agreement, dated as of October 8, 2021, by and among (a) Performance Powersports Group Purchaser, Inc. as borrower, (b) Performance Powersports Group Holdings, Inc., and Performance Powersports Group, Inc. as guarantors, (c) Twin Brook Capital Partners, LLC as administrative agent, and (d) each of the Lenders (as defined in the 2021 Credit Agreement) party thereto, as amended, restated, supplemented or otherwise modified from time to time.

2.    "***2021 Credit Agreement Claims***" means all Claims on account of, arising under, or related to the 2021 Credit Agreement, including without limitation any accrued and unpaid principal, interest and fees as of the Petition Date, including, for avoidance of doubt, any indemnification obligations or professional fees owed thereunder.

3.    "***Administrative Claim***" means any Claim against the Debtors or their Estates for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim.

4.    "***Administrative Claims Bar Dates***" means either (a) April 22, 2023 at 4:00 p.m. (prevailing Eastern Time) for all Administrative Claims arising, accruing or otherwise due and payable any time subsequent to the Petition Date but on or before March 31, 2023, or (b) twenty-one (21) days from service of the notice of Effective Date for all Administrative Claims arising,

3

accruing or otherwise due and payable any time during the period from April 1, 2023 through the Effective Date.

5. *"Affiliate"* means, with respect to any specified Entity, any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Entity. For purposes of this definition, "control" (and any similar term) means the power of one or more Entities to direct, or cause the direction of, the affairs of another Entity by reason of ownership of voting stock or by contract or otherwise.

6. *"Allowed"* means with respect to any Claim against the Debtors or their Estates (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Litigation Trustee or the Plan Administrator following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and such person or entity shall not be treated as a creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

7. *"Assets"* means any and all of the right, title and interest of the Debtors in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any other general intangibles of the Debtors, as the case may be, including, without limitation, the Debtors' Estates; *provided*, for the avoidance of doubt, that "Assets" shall not include any Purchased Assets (as defined in the Asset Purchase Agreement).

8. *"Asset Purchase Agreement"* shall have the meaning set forth in the Sale Order.

9. *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

10. *"Bankruptcy Code"* means title 11 of the United States Code.

10371299.v26

11. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Delaware.

12. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

13. *"Beneficial Trust Interests"* means a beneficial interest in the Litigation Trust, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Litigation Trust Agreement.

14. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

15. *"Cash"* means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

16. *"Causes of Action"* means any of the Debtors' actions, Claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim.

17. *"Chapter 11 Cases"* means the cases pending for the Debtors under chapter 11 of the Bankruptcy Code jointly administered under case number 23-10047 (LSS).

18. *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code.

19. *"Claims Bar Date"* means the date or dates established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

20. *"Claims Bar Date Order"* means the *Order (A) Establishing Bar Dates for Filing Proofs of Claim, Including Claims Under 11 U.S.C. § 503(b)(9) and Administrative Expense Requests; (B) Approving the Form and Manner for Filing Proofs of Claim and Administrative Expense Requests; (C) Approving Notice Thereof; and (D) Granting Related Relief* [Docket No. 223].

5

21. *"Claims Objection Deadline"* means the later of (a) one hundred and eighty (180) days after the Effective Date, or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court.

22. *"Class"* means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtors as set forth in Article III.

23. *"Collateral"* means any property or interest in property in the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

24. *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

25. *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

26. *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

27. *"Confirmation Order"* means the order of the Bankruptcy Court, in form and substance acceptable to the Debtors , confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28. *"Consummation"* means the occurrence of the Effective Date.

29. *"Creditors"* shall have the meaning set forth in section 101(10) of the Bankruptcy Code.

30. *"Creditors' Committee"* means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee [Docket No. 82].

31. *"D&O Liability Insurance Policies"* means all of the Debtors' insurance policies (including any "tail policy"), of any of the Debtors, for current or former directors', managers', and officers' liability.

32. *"Debtors"* means Performance Powersports Group Investor, LLC, Performance Powersports Group Holdings, Inc., Performance Powersports Group Purchaser, Inc., and Performance Powersports Group, Inc., each as a debtor and debtor-in-possession in the Chapter 11 Cases.

33. *"DIP Facility Claims"* means any Claims arising under the DIP Facility (as such term is defined in the Final DIP Order).

34. *"DIP Lender"* means Tankas Funding VI, LLC.

35. *"Disclosure Statement"* means the *Disclosure Statement for the Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated May 1, 2023*, as amended,

10371299.v26

supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

36. *"Disputed"* means, any Claim against or Interest in any Debtor that is (a) listed in the Schedules as disputed, contingent or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtors in any litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the Bankruptcy Code.  A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

37. *"Distribution Agent"* means, from the Effective Date, any Person(s) selected by the Plan Administrator to make or to facilitate distributions required by this Plan; *provided*, for the avoidance of doubt, that distributions on account of Beneficial Trust Interests shall be made by the Litigation Trustee in accordance with the Litigation Trust Agreement.

38. *"Distribution Date"* means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable thereafter.

39. *"DS/Solicitation Procedures Order"* means the *Order (I) Approving the Disclosure Statement; (II) Fixing the Voting Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Plan; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; (V) Approving the Forms of Ballots and Establishment of Procedures for Voting on the Plan; (VI) Approving the Forms of Notices to Non-Voting Classes Under the Plan; (VII) Fixing the Voting Deadline to Accept or Reject the Plan; and (VIII) Approving Procedures for Vote Tabulations in Connection Therewith* [Docket No. 383].

40. *"Effective Date"* means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

41. *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

42. *"Estates"* means the estates created for the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

43. *"Exculpated Claim"* means any Cause of Action, arising from any act or omission occurring, after the Petition Date and on or before the Effective Date, from, based upon, related to or arising from (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) any contract, instrument, release, and/or other agreement

10371299.v26

or document created or entered into in connection with the subsection (a) or (b); (d) the pursuit of Consummation; and/or (e) the filing, administration, and/or implementation of the Chapter 11 Cases, the Plan or the distribution of property in connection therewith or thereunder.

44. ***"Exculpated Party"*** means each of: (a) the Debtors; (b) the Creditors' Committee's advisors that were retained in these Chapter 11 Cases; (c) the members of the Creditors' Committee solely in their capacities as such, and the individuals who served on the Creditors' Committee on behalf of each member, solely in their capacities as such; and (d) the Debtors' financial advisors, professionals, accountants, and attorneys that were retained in the Chapter 11 Cases and each of their successors and assigns, but solely in their capacities as such and only to the extent that such party served in such a capacity during the Chapter 11 Cases from the Petition Date to the Effective Date; provided that Richard Godfrey, Todd Gentry, and Christopher Hunter and any entities affiliated with the same of any nature shall not be Exculpated Parties, and provided, further, that Kinderhook and any entities affiliated with it (other than the Debtors) shall not be an Exculpated Party.

45. ***"Executory Contract"*** means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

46. ***"File" or "Filed"*** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

47. ***"Final DIP Order"*** means *the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 269].

48. ***"Final Distribution"*** means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets held by such Plan Administrator , including cash, of a value of less than $500 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

49. ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal or seek certiorari has expired and no request for reconsideration or relief from judgment, appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

50. ***"Founder Settlement"***' means the settlement between the Debtors, Richard Godfrey, and Kinderhook on the terms set forth in that certain stipulation attached hereto as **Exhibit A**.

8

51. *"General Unsecured Claim"* means any Claim against a Debtor that (a) is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (b) is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Non-Tax Claim, 2021 Credit Agreement Claim, Other Secured Claim, Intercompany Claim, Subordinated Claim or Interest.

52. *"Governmental Claim"* means any Claim against any Debtor Filed by a Governmental Unit.

53. *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

54. *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55. *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

56. *"Interim Compensation Order"* means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 135].

57. *"Intercompany Claim"* means any Claim against a Debtor held by another Debtor.

58. *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

59. *"Kinderhook"* means, collectively, Kinderhook Industries, LLC, Kinderhook Capital Fund VI, L.P., Kinderhook Capital Fund VI-B, L.P., Tankas Funding VI, LLC, and any Affiliate related thereto.

60. "*Kinderhook Equity Interests*" means, collectively, the equity interests of Kinderhook Capital Fund VI and Kinderhook Capital Fund VI-B in Performance Powersport Investor Group LLC.

61. "*Kinderhook General Unsecured Claim*" means any and all General Unsecured Claim of Kinderhook, including, without limitation, Kinderhook Industries VI, L.P.'s General Unsecured Claim against Performance Powersports Group Purchaser, Inc. on account of services provided under that certain Management Services Agreement dated October 8, 2021 between Performance Powersports Group Purchaser, Inc. and Kinderhook Industries VI, L.P.

62. *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

63. "*Litigation Trust*" means the trust, of which the Litigation Trustee shall serve as trustee, formed pursuant to this Plan, the Litigation Trust Agreement, and the Confirmation Order.

64. *"Litigation Trust Agreement"* means that certain Litigation Trust Agreement to be executed as of the Effective Date establishing the Litigation Trust pursuant to this Plan,

substantially in the form Filed with the Plan Supplement, which agreement shall be in a form and substance consistent with the form submitted in the *Notice of Proposed Litigation Trust Agreement and Litigation Trust Note* [Docket No. 265] and agreed to by the Debtors, Kinderhook, and the Litigation Trustee.

65. ***"Litigation Trust Assets"*** means only the following Assets of the Estates as of the Effective Date: the Retained Causes of Action and any proceeds therefrom, and (other than Performance Powersports Group Investor, LLC) the Debtors' equity interests, solely for the purpose of conferring derivative standing upon the Litigation Trustee to institute any Retained Causes of Action pursuant to the provisions of the Delaware General Corporation Law or the Delaware Limited Liability Company Act to the extent that the Litigation Trustee is found not to have direct standing to pursue such Claims as an estate representative pursuant to section 1123(b) of the Bankruptcy Code. The Litigation Trust Assets shall exclude (a) all assets, including claims and causes of actions, transferred or assigned to the Purchaser pursuant to the Sale Order and the Asset Purchase Agreement; (b) the Other Claims Reserve, except that any excess amounts in the Other Trust Claims Reserve after the payment in full or other satisfaction of all Allowed Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims shall become Litigation Trust Assets and be treated as such under the Plan and the Litigation Trust Agreement; (c) the equity interests in Performance Powersports Group Investor, LLC; and (d) the Professional Fee Claims Reserve; provided that any excess amounts in the Professional Fee Claim Reserve after payment in full or other satisfaction of Allowed Professional Fee Claims, shall become Litigation Trust Assets and treated as such under the Plan and the Litigation Trust Agreement. For the avoidance of doubt, (a) any and all claims and causes of action owned by Kinderhook related to the Debtors following the closing of the sale under the Asset Purchase Agreement will remain with Kinderhook and will not be contributed to the Litigation Trust and shall not be Litigation Trust Assets.

66. ***"Litigation Trust Note"*** means the promissory note in the principal amount of $500,000.00 to be executed on the Effective Date setting forth the terms and conditions of the non-cash portion of the funding of the Litigation Trust, substantially in the form Filed with the Plan Supplement, which promissory note shall be in a form and substance consistent as the form submitted in the *Notice of Proposed Litigation Trust Agreement and Litigation Trust Note* [Docket No. 265] and acceptable to the Debtors and Kinderhook.

67. ***"Litigation Trust Proceeds"*** means all dividends, rents, royalties, income, proceeds and other receipts of, from or attributable to the Litigation Trust Assets after payment of expenses of the Litigation Trust.

68. ***"Litigation Trust Proceeds Distribution Split"*** means, notwithstanding anything in the Asset Purchase Agreement to the contrary,  the following manner in which any distributions of Litigation Trust Proceeds by the Litigation Trustee, pursuant to section 6.1 of the Litigation Trust Agreement, shall be made: (i) 33% of such Litigation Trust Proceeds shall be distributed to Kinderhook; and (ii) 67% of such Litigation Trust Proceeds shall be distributed *pro rata* to holders of Allowed General Unsecured Claims.

69. *"Litigation Trustee"* means Peter Kravitz, to serve as the litigation trustee under the Litigation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and Litigation Trust Agreement.

70. *"Notice, Claims and Balloting Agent"* means Omni Agent Solutions, Inc.

71. "*Notice of Effective Date*" means a notice to be Filed with the Bankruptcy Court by the Debtors upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article X of the Plan.

72. *"Other Claims Reserve"* means the reserve established by the Debtors to satisfy in full all Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, if any.

73. *"Other Priority Claims"* means any Claim against the Debtors, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

74. *"Other Secured Claims"* means any Secured Claim that is not a 2021 Credit Agreement Claim or Secured Tax Claim.

75. *"Person"* means a person as such term is defined in section 101(41) of the Bankruptcy Code.

76. *"Petition Date"* means January 16, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

77. *"Plan"* means this *Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended or supplemented from time to time).

78. "*Plan Administrator*" means the Person or Persons selected by the Debtors, subject to the approval of the Bankruptcy Court and identified in the Plan Supplement, to serve as the administrator(s) of the post-Effective Date Debtors, and any successor thereto, appointed pursuant to the Plan Administrator Agreement.

79. "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors, the Plan Administrator, and the post-Effective Date Debtor, which shall be included in the Plan Supplement; provided that, on the Effective Date, the Plan Administrator and Litigation Trustee shall be the same individual.

80. *"Plan Administrator Expenses"* means any and all reasonable fees, costs, and expenses incurred by the Plan Administrator (or any Person engaged by the Plan Administrator to effect Distributions or otherwise assist the Plan Administrator with its duties under the Plan) in connection with any of its duties under the Plan, including (i) any administrative fees; (ii) attorneys' or other professionals' fees and expenses of the Plan Administrator; (iii) insurance fees; (iv) taxes; (v) escrow expenses; (vi) fees payable under 28 U.S.C. § 1930; (vii) costs associated with any maintenance, liquidation, and administration of any wind down of the Debtors' business operations; and (viii) fees incurred in connection with the making of Distributions.

81. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors on or before seven (7) days prior to the earlier of (a) the Voting Deadline, or (b) the deadline to object to confirmation of the Plan, or such other date as may be approved by the Bankruptcy Court.  The Plan Supplement shall include the following:  (a) the identity of the Litigation Trustee, (b) the identity of the Members of the Litigation Trust Oversight Committee, (c) the form of Litigation Trust Agreement, (d) the form of Litigation Trust Note, (e) the form of Plan Administrator Agreement, and (f) the identity of the Plan Administrator.

82. *"Priority Tax Claim"* means any Claim against the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

83. *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

84. *"Professional Fee Claim"* means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103 or 503 of the Bankruptcy Code; provided that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

85. *"Professional Fee Claim Reserve"* means the reserve established by the Debtors and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims.

86. *"Proof of Claim"* means a written proof of Claim Filed against the Debtors in the Chapter 11 Cases.

87. *"Proof of Interest"* means a written proof of Interest Filed against the Debtors in the Chapter 11 Cases.

88. *"Purchaser"* means CPS USA Acquisition, LLC.

89. *"Rejection Claim"* means a Claim against the Debtors arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

90. *"Released Party"* means (a) the Debtors; (b) the DIP Lender; (c) Peter Kravitz, (d) Province, Inc., (e) the Creditors' Committee's advisors; (f) with respect to the foregoing in clause (a) such Entity's current officers, directors and managers, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in their capacity as such but specifically excluding Richard Godfrey, Todd Gentry, and Christopher Hunter and any entities affiliated with the same of any nature, and (g) with respect to each of the foregoing in clauses (b) through (e) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited

12

partners, and members, in their capacity as such, *provided* that Kinderhook and any entities affiliated with it (other than the Debtors) shall not be a Released Party.

91. ***"Releasing Parties"*** means each of: (a) the Creditors' Committee's advisors; (b) all holders of Claims in voting classes that vote to accept the Plan and who do not opt out of the Releases by Holders provided in the Plan by checking the box on the applicable ballot or notice indicating that they opt not to grant such releases; (c) all holders of Claims in classes that are deemed to accept the Plan and who do not file an objection to the Releases by Holders provided in the Plan; (d) all holders of Claims or Interests in voting classes that abstain from voting on the Plan and who do not opt out of the Releases by Holders provided in the Plan by checking the box on the applicable ballot indicating that they opt not to grant such releases; and (e) all holders of Claims or Interests in voting classes that vote to reject the Plan and who do not opt out of the Releases by Holders provided in the Plan by checking the box on the applicable ballot indicating that they opt not to grant such releases; and (f) any of the following persons or entities claiming solely in a derivative capacity by or through each of the foregoing entities in clauses (a) through (e), each and all of such entities' direct and indirect current and former:  equity holders, affiliates, predecessors, participants, successors and assigns, parents, subsidiaries, partners (including general partners and limited partners), managed accounts or funds, management companies, fund advisors, investors, beneficial owners, managing members, directors, managers, officers, principals, controlling persons, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives; provided, however, that any person or entity in a voting class whose solicitation package was returned as undeliverable, or as to whom the Debtors did not mail solicitation packages, pursuant to paragraph 15 of the DS/Solicitation Procedures Order or otherwise, will not be deemed to have consented to the Releases by Holders provided in the Plan, and will not be deemed to be Releasing Parties. For avoidance of doubt and for all purposes, Richard Godfrey, Todd Gentry, and Christopher Hunter, Kinderhook, Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and any Affiliate of the foregoing Entities shall not be Releasing Parties and shall be deemed to have opted out of the release set forth in Article IX D. 2. of the Plan.

92. ***"Retained Causes of Action"*** shall have the meaning ascribed to "Excluded Claims" in the Asset Purchase Agreement.

93. "***Sale Order***" means the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing and Approving Sale of Substantially All Assets of the Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, (IV) Authorizing the Debtors to Consummate the Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 270].

94. "***Sale***" shall have the meaning set forth in the Sale Order.

95. ***"Schedules"*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors

10371299.v26

pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

96. *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estates' interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

97. *"Security"* shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

98. *"Subordinated Claim"* means any Claim that is subordinated, pursuant to section 510(b) of the Bankruptcy Code or otherwise, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

99. *"Tax Code"* means the Internal Revenue Code of 1986, as amended.

100. *"Twin Brook"* means Twin Brook Capital Partners, LLC as administrative agent under the 2021 Credit Agreement.

101. *"Unclaimed Property"* means any distribution to Creditors under this Plan that are unclaimed thirty (30) days following the date of such distribution under this Plan.

102. *"Unclaimed Property Reserve"* means any Unclaimed Property reserved for a period of thirty (30) days by the Plan Administrator on behalf of holders of Unclaimed Property.

103. *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

104. *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

105. *"U.S. Trustee"* means the United States Trustee for Region 3.

106. *"Voting Deadline"* means 4:00 p.m. (prevailing Eastern Time) on July 17, 2023.

C. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments

or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D. *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

E. *Exhibits*

All Exhibits, including the Founder Settlement, are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,
## DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. *Administrative Claims.*

1. Administrative Claims

All Allowed Administrative Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser under the Asset Purchase Agreement. To the extent that an Allowed Administrative Claims was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim  shall be paid in full in Cash from the Purchaser (if and to the extent such holder's Allowed Administrative Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement), the Debtors or the Plan Administrator, as applicable, on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

2. Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered on or before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days after the Effective Date (with an objection period of at least twenty one days for objections, if any, to such applications); provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further

Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.  On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Klehr Harrison Harvey Branzburg LLP's escrow account to be held for the distribution of Allowed Professional Fee Claims.  Upon entry of a Final Order approving any such application for such Professional Fee Claim, Klehr Harrison Harvey Branzburg LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim.  To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Klehr Harrison Harvey Branzburg LLP shall promptly transfer any such Cash to the Litigation Trust and such Cash shall become Litigation Trust Assets and be treated in accordance with the Litigation Trust Agreement, the Plan and the Confirmation Order.

    3.  Satisfaction of DIP Facility Claims

The DIP Facility Claims have been satisfied pursuant to the terms of the Sale Order.  Upon satisfaction of the DIP Facility Claims, all Liens and security interests granted to secure the DIP Facility Claims were automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

    4.  Administrative Claim Bar Dates

Requests for payment of Administrative Claims must be Filed on or before the applicable Administrative Claims Bar Dates.  Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or its property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date.

    B.  *Priority Tax Claims.*

All Allowed Priority Tax Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser and paid under the Asset Purchase Agreement.  To the extent that an Allowed Priority Tax Claims was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable, one of the following treatments: (i) if and to the extent such Allowed Priority Tax Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, paid by the Purchaser, (ii) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (iii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (ii) of this section) as may be agreed upon by such holder and the Debtors or the Plan Administrator, as applicable, or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (a) the

16

Effective Date, (b) the date on which such Priority Tax Claim against the Debtors becomes an Allowed Priority Tax Claim, or (c) such other date as may be ordered by the Bankruptcy Court.

C.  *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, the Post-Effective Date Debtors, the Litigation Trustee and Plan Administrator shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Post-Effective Date Debtors, Litigation Trustee and Plan Administrator shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything called for in the Plan to the contrary, each and every one of the Debtors, the Post-Effective Date Debtors, the Litigation Trustee and Plan Administrator, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of any such Debtor case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.  *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  All Claims and Interests, except for Administrative Claims, Professional Fee Claims, DIP Claims and Priority Tax Claims are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

(r)     The classification of Claims and Interests against the Debtors pursuant to the Plan is as set forth below.  The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Plan, including voting on this Plan by the Holders of Claims and making any Distributions to Holders of Claims.  Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other

Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Disclosure Statement and Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the limited substantive consolidation of the Debtors and their respective Estates solely for the purposes of this Combined Disclosure Statement and Plan, including voting on this Combined Disclosure Statement and Plan by the Holders of Claims and making any Distributions to Holders of Claims.

B. *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Impairment Status | Voting Rights |
|-------|----------------|-------------------|---------------|
| Class 1 | Secured Tax Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 3 | Other Priority Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 4 | 2021 Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 7 | Subordinated Claims | Impaired | Entitled to Vote |
| Class 8 | Interests | Impaired | Entitled to Vote |

C. *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

1. Class 1 - Secured Tax Claims

*Classification*: Class 1 consists of all Secured Tax Claims.

*Treatment*: To the extent that the Allowed Secured Tax Claims were not assumed and paid under the Asset Purchase Agreement, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Plan Administrator:

10371299.v26

    a.   if and to the extent such Allowed Secured Tax Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash from the Purchaser of such holder's Allowed Secured Tax Claim as soon as reasonably practicable after the Effective Date; or

    b.   payment in full in Cash from the Other Claims Reserve of such holder's Allowed Secured Tax Claim as soon as reasonably practicable after the Effective Date; or

    c.   equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

*Voting*:    Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.   Class 2 - Other Secured Claims

*Classification*: Class 2 consists of all Other Secured Claims.

*Treatment*: To the extent that the Allowed Other Secured Claims were not assumed and paid under the Asset Purchase Agreement, each holder of an Allowed Other Secured Claim shall receive, at the option of the Plan Administrator:

    a.   if and to the extent such Allowed Other Secured Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash from the Purchaser, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter;

    b.   payment in full in Cash from the Other Claims Reserve, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; or

    c.   delivery of the collateral securing any such Claim.

19

*Voting*:          Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.  Class 3 - Other Priority Claims

*Classification*: Class 3 consists of all Other Priority Claims.

*Treatment*: To the extent that the Allowed Other Priority Claims were not assumed under the Asset Purchase Agreement, the holder of an Allowed Other Priority Claim shall receive the option of the Plan Administrator:

   a.  if and to the extent such Allowed Other Priority Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, payment in full in Cash of such holder's Allowed Other Priority Claim from the Purchaser or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired; or.

   b.  payment in full in Cash of such holder's Allowed Other Priority Claim from the Other Claims Reserve or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

*Voting*:          Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.  Class 4 - 2021 Credit Agreement Claims.

*Classification*: Class 4 consists of all Allowed 2021 Credit Agreement Claims.

*Treatment*: Except to the extent that a holder of an Allowed 2021 Credit Agreement Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed 2021 Credit Agreement Claim, each holder of such Allowed 2021 Credit Agreement Claim shall (a) accept payment  from the Purchaser pursuant to the Asset Purchase Agreement upon terms as agreed between the Purchaser and Twin Brook and (b) following payment in full of all Allowed General Unsecured Claims and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, receive its *pro rata* share of the Litigation Trust Assets. In no event shall Allowed 2021 Credit Agreement Claims receive more than one hundred percent (100%) of their Allowed 2021 Credit Agreement Claims.

Voting:          Class 4 is Impaired by the Plan.  Holders of 2021 Credit Agreement Claims are entitled to vote to accept or reject the Plan.

20

5.  Class 5 - General Unsecured Claims.

    *Classification*: Class 5 consists of all General Unsecured Claims.

    *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its *pro rata* share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their *pro rata* share of the Litigation Trust Assets.  For the avoidance of doubt, the Kinderhook General Unsecured Claim shall be allowed as a General Unsecured Claim in the amount of $1,000,000.00.

    *Voting*:    Class 5 is Impaired by the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.  Class 6 - Intercompany Claims

    *Classification*: Class 6 consists of consists of all Intercompany Claims.

    *Treatment*: On the Effective Date, all Class 6 Intercompany Claims shall be cancelled without any distribution on account of such Claims.

    *Voting*:    Class 6 is Impaired by the Plan, and each holder of a Class 6 Intercompany Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.  Class 7 - Subordinated Claims

    *Classification*: Class 7 consists of all Subordinated Claims.

    *Treatment*: Following payment in full of all Allowed General Unsecured Claims and Allowed 2021 Credit Agreement Claims, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Subordinated Claim agrees to less favorable treatment, in exchange for full and final satisfaction, and release of each Allowed Subordinated Claim, each holder of such Allowed Subordinated Claim shall receive its *pro rata* share of the Litigation Trust Assets.

    *Voting*:    Class 7 is Impaired by the Plan. Holders of Subordinated Claims are entitled to vote to accept or reject the Plan.

8.  Class 8 - Interests

    *Classification*: Class 8 consists of all Interests in the Debtors.

*Treatment*:    Each Interest shall be canceled, released, and extinguished, and will be of no further force or effect.  Following payment in full of all Allowed General Unsecured Claims, Allowed 2021 Credit Agreement Claims, and Allowed Subordinated Claims, and after funding the Other Claims Reserve and the Professional Fee Claim Reserve, except to the extent that a holder of an Allowed Interest agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Interest, each holder of such Allowed Interest shall receive its *pro rata* share of the Litigation Trust Assets.  The Kinderhook Equity Interests shall be allowed as an Interest in the amount of $45,000,000.00.

*Voting*:    Class 8 is Impaired by the Plan. Holders of Interests are entitled to vote to accept or reject the Plan.

D.  *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims or Interests that are not Impaired, including all rights of the Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E.  *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserves the right to modify the Plan in accordance with Article XI of the Plan and section 1127 of the Bankruptcy Code to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.  *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Plan Administrator reserves the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.  *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount

22

greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

H.  *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.  *Acceptance or Rejection of the Plan.*

1.  Voting Classes

Classes 4, 5, 7, and 8 are entitled to vote on the Plan.

2.  Presumed Acceptance of the Plan

Pursuant to the Bankruptcy Code, Classes 1, 2, and 3 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.  Presumed Rejection of the Plan

Class 6 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.  *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, all of the Litigation Trust Assets shall immediately vest in the Litigation Trust in accordance with the Litigation Trust Agreement, and all of the other Assets shall immediately vest to the Plan Administrator.

B.  *Sources of Consideration for Plan Distributions.*

Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Litigation Trust Assets.  All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by the Other Claims Reserve or the Professional Fee Claims Reserve, as applicable.  On the Effective Date, the Debtors shall fund the Other Claims Reserve and Professional Fee Claims Reserve in full in Cash.

C.  *Litigation Trust.*

1.  <u>Creation of Litigation Trust</u>.  On the Effective Date, the Litigation Trust shall be created in accordance with the Litigation Trust Agreement for the benefit of holders of Beneficial Trust Interests.  The Litigation Trust Agreement shall (i) be in form and substance consistent as the form submitted in the *Notice of Proposed Litigation Trust Agreement and Litigation Trust Note* [Docket No. 265], and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Litigation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes.  All relevant parties (including the Debtors, the Litigation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Litigation Trust Assets to be transferred to the Litigation Trust.  The powers, authority, responsibilities, and duties of the Litigation Trust and the Litigation Trustee are set forth and will be governed by the Litigation Trust Agreement, the Plan and Confirmation Order.

2.  <u>Transfers to the Litigation Trust</u>.  On the Effective Date, the Debtors and their Estates shall transfer and shall be deemed to have irrevocably transferred to the Litigation Trust, the Litigation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

3.  <u>Purpose of the Litigation Trust</u>.  The Litigation Trust shall be established for the primary purpose of liquidating its assets and making distributions to holders of Beneficial Trust Interests in accordance with the Plan, Confirmation Order and the Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Litigation Trust.  The Litigation Trust, acting through the Litigation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Litigation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the Debtors, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Litigation Trust Assets.

4.  <u>Administration of the Litigation Trust</u>.  The Litigation Trust shall be administered by the Litigation Trustee pursuant to the Litigation Trust Agreement and the Plan.  In the event of any inconsistency between the Plan or the Confirmation Order and the Litigation Trust Agreement as such conflict relates to anything other than the establishment of a Litigation Trust or Litigation Trust Proceeds Distribution Split, the Litigation Trust Agreement shall control.

5.  <u>Appointment of Litigation Trustee</u>.  As of the Effective Date, the Litigation Trustee shall be appointed as trustee of the Litigation Trust pursuant to the Litigation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Litigation Trust Agreement, the Plan, the Confirmation Order and the Bankruptcy Code.  The Litigation Trustee shall be the exclusive trustee of the Estates under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

6.  Compensation of the Litigation Trustee.  The Litigation Trustee shall be compensated pursuant to the terms of the Litigation Trust Agreement.  Any professionals retained by the Litigation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred pursuant to the terms of the Litigation Trust Agreement.  The payment of fees and expenses of the Litigation Trustee and its professionals shall be made pursuant to the terms of the Litigation Trust Agreement and shall not be subject to Bankruptcy Court approval.  The identity of the Litigation Trustee shall be disclosed in the Plan Supplement.

7.  Litigation Trust Oversight Committee.  On the Effective Date, an oversight committee of the Litigation Trust (the "Litigation Trust Oversight Committee") shall be established pursuant to the terms of the Litigation Trust Agreement. The Litigation Trust Oversight Committee shall initially be comprised of three (3) members: one (1) selected by Vietnam New Century Industrial Co., Ltd., one (1) selected by the Debtors who shall be Jillian Lin of Dundon Advisors, and one (1) independent member selected by Purchaser. The identity of the Members of the Litigation Trust Oversight Committee shall be disclosed in the Plan Supplement.

8.  Responsibilities and Powers of the Litigation Trustee.  In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, and the Litigation Trust Agreement, the Litigation Trustee shall have the responsibilities and powers to perform any and all acts necessary or desirable to accomplish the purposes of the Litigation Trust, as detailed in the Litigation Trust Agreement, and. such other responsibilities and powers as may be vested in the Litigation Trustee pursuant to this Plan, the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

9.  Retained Causes of Action.  The Litigation Trustee shall have the sole right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.

10.  Costs and Expenses of the Litigation Trust.  The costs and expenses of the Litigation Trust, including the fees and expenses of the Litigation Trustee and other professionals retained on behalf of the Litigation Trust, shall be paid in accordance with the terms of the Litigation Trust Agreement.

11.  Effective Date.  On the Effective Date, the Litigation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Litigation Trust Agreement to carry out and implement the purposes and intent of the Plan and the Litigation Trust Agreement.

D.  *Dissolution of Litigation Trust.*

The Litigation Trust shall terminate in accordance with the terms of the Litigation Trust Agreement; *provided* that the Litigation Trust shall unless the Litigation Trust Oversight Committee determines that a fixed period extension (approved by the Bankruptcy Court within six (6) months of the beginning of the extended period, if the Litigation Trust Oversight Committee reasonably determines that such approval is necessary to meet the requirements set forth within Revenue Procedure 94-45, 1994-2 C.B. 684, and not to exceed two (2) years, including any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel

satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the property of the Litigation Trust. s. Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or such motion is withdrawn.

E. *Litigation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state and local laws requiring registration of securities. It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Litigation Trust Agreement.

F. *Plan Administrator.*

1. <u>Appointment of Plan Administrator</u>. On and after the Effective Date, the Plan Administrator shall become and serve as the initial Plan Administrator.

2. <u>Authority</u>. The Plan Administrator shall have the sole authority and right on behalf of each of the Debtors, and their respective Estates, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan (other than those specifically delegated to the Litigation Trustee), including to:

    i.       Review, reconcile, compromise, settle, or object to all Claims, other than General Unsecured Claims, Subordinated Claims, and Interests and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

    ii.      Calculate the amount of Distributions to be made to holders of Allowed Claims, other than holders of General Unsecured Claims, Subordinated Claims and Interests each in accordance with the Plan, and use Cash to make Distributions in accordance with the Plan;

    iii.     Retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities.

    iv.     Establish, maintain, and administer all documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan.

    v.      Invest Cash of the Debtors and the Estates, other than Litigation Trust Assets.

    vi.     Pay the Plan Administrator Expenses.

vii.     Prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law.

viii.     Take such actions as are necessary or appropriate to implement the Plan.

ix.     Comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations.

x.     Exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

xi.     Execute any and all documents and instruments necessary to effectuate the provisions of the Plan.

xii.     To the extent necessary to give full effect to its exclusive administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (x) a board of directors or an appropriate corporate officer of each of the Debtors under any applicable non-bankruptcy law and (y) a "trustee" of each of the Debtors under sections 704 and 1106 of the Bankruptcy Code.

G. *Tax Returns.*

After the Effective Date, the Plan Administrator or Litigation Trust shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of such Debtors' Chapter 11 Cases, as determined under applicable tax laws.

H. *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes and purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtors shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; provided, further, however, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan.

I.  *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtors, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

J.  *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtors and their respective directors, members, trustees, officers, and managers are and, after the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and Litigation Trust are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

K.  *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L.  *Treatment of Causes of Action.*

Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or a Bankruptcy Court order, the Debtors do not waive, relinquish, exculpate, release, compromise, or settle any of the Retained Causes of Action, and the Debtors hereby reserve and assign to the Litigation Trust any and all such Retained Causes of Action, whether arising before or after the Petition Date.  The Litigation Trustee, on behalf of the Litigation Trust, may pursue such Retained Causes of Action, in his or her sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Retained Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

M. *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004

against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

N. *Debtors' Directors, Officers, Members and Managers.*

On the Effective Date, all officers, directors, members and managers of the Debtors shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity. On after the Effective Date, the Litigation Trustee and Plan Administrator shall serve as the sole officer, sole director, sole member or sole manager of the Debtors, but he or she shall retain and enforce Retained Causes of Action as the representative of the Estates in his or her capacity as the Litigation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, member or manager of the Debtors. Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

O. *Debtors' Existence.*

From and after the Effective Date, the Debtors shall continue in existence for the purpose of winding up their affairs as expeditiously as practicable. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtors without any requirement of further action by any Debtor. On and after the Effective Date, the Debtors' remaining assets and affairs shall be administered and managed by the Plan Administrator in accordance with the Plan. Any excess Cash remaining after the winding up of the Debtors and payment in full or other satisfaction of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, and Allowed Other Priority Claims shall become Litigation Trust Assets and be treated as such under the Plan and the Litigation Trust Agreement.

Upon certification to be Filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtors shall be deemed to be dissolved without any further action by the Debtors, the Plan Administrator, or the Litigation Trust, including the filing of any documents in any office in any jurisdiction where the Debtors are organized. However, the Plan Administrator and Litigation Trustee shall have the authority to take all necessary action to dissolve any Debtor. Further, upon the aforementioned certification and entry of Final Decree, the Litigation Trustee and Plan Administrator shall be authorized, in their sole discretion, to discard or destroy any and all of the Debtors' books and records in their respective possession. Upon the Effective Date, the Debtors shall turn over or provide access to its books and records to the Plan Administrator or the Litigation Trustee, as applicable.

P. *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtors, Plan Administrator, and Litigation Trust to take all other actions that may be necessary, useful or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A.  *Distribution Agent.*

The Distribution Agent, if any, on behalf of the Debtors and/or Plan Administrator, shall make all distributions under the Plan on account of Allowed Claims against the Debtors pursuant to the terms of the Plan and Confirmation Order; *provided*, for the avoidance of doubt, that distributions on account of Beneficial Trust Interests shall be made by the Litigation Trustee in accordance with the Litigation Trust Agreement; provided, however, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Claim Reserve.

B.  *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Plan Administrator shall determine in his or her sole discretion.

C.  *Delivery of Distributions to Holders of Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Allowed Claims shall be made on the Distribution Date.

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims Filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Plan Administrator have been notified in writing of a change of address. If the distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.G of the Plan.

D.  *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims, unless otherwise provided herein.

E.  *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Plan Administrator and Litigation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator and Litigation Trust may require, in the Plan Administrator's and/or Litigation Trust's discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Plan Administrator holders of Beneficial Trust Interests complete and return to the Litigation Trustee the appropriate Form W-8 or Form W-9, as applicable to each Holder.  Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and Litigation Trust shall be authorized to take all actions

necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator and Litigation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

The Plan Administrator and Litigation Trust, as applicable, shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Plan Administrator's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

F. *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Plan Administrator and Litigation Trust, as applicable, shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Plan Administrator and Litigation Trust, as applicable, shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Plan Administrator and Litigation Trust, as applicable, shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Plan Administrator and Litigation Trust, as applicable, shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan or the Confirmation Order.

G. *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Plan Administrator in the Unclaimed Property Reserve for a period of thirty (30) days. Once the distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Plan Administrator shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of thirty (30) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims or Beneficial Trust Interests shall be deemed disallowed and expunged in their entirety and

31

the funds shall be redistributed to the other holders of Allowed Claims and Interests in accordance with the terms of this Plan, Confirmation Order, and Litigation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Litigation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a *pro rata* basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Litigation Trust.

Nothing contained in the Litigation Trust Agreement, this Plan, or the Confirmation Order shall require the Debtors, the Litigation Trustee, the Litigation Trust, the Plan Administrator, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

H. *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

I. *Setoffs and Recoupment.*

The Plan Administrator and Litigation Trust, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Plan Administrator, or Litigation Trust, as applicable, of any such Claim it may have against the holder of such Claim.

J. *Distributions by Litigation Trust.*

The Litigation Trust shall not be obligated to make a distribution on account of the Beneficial Trust Interests that would impair the ability of the Litigation Trust to pay the expenses incurred by the Litigation Trust pursuant to the Litigation Trust Agreement.

K. *Claims Paid or Payable by Third Parties.*

1. <u>Claims Paid by Third Parties</u>. The Plan Administrator and Litigation Trust, as applicable, shall reduce a Claim to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not the Debtors, the Plan Administrator, or the Litigation Trust. In no event shall the holder of a Claim's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The Debtors, Plan Administrator, and Litigation Trust, as applicable, may file a *Notice of Satisfaction of Claim* with respect to any Claim that has been satisfied by the Debtors or any third party.

2. <u>Claims Payable by Third Parties</u>. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3. <u>Applicability of Insurance Policies</u>. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A. *Prosecution of Objections to Claims*

1. <u>Objections to Claims</u>. Except as otherwise provided in the Plan, all objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Deadline, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list of the Bankruptcy Cases. If an objection has not been Filed to a Proof of Claim or request for Administrative Claims by the applicable deadline, the Claim to which the Proof of Claim or request for payment of Administrative Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

2. <u>Authority to Prosecute Objections</u>. After the Confirmation Date, only the Debtors (or after the Effective Date, the Plan Administrator, and the Litigation Trust solely as it relates to General Unsecured Claims, Subordinated Claims, and Interests) will have the authority to file, settle, compromise, withdraw or litigation to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Effective Date, the Plan Administrator, and the Litigation Trust solely as it relates to General Unsecured Claims, Subordinated Claims, and Interests, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court in accordance with the Plan.

B. *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Debtors, Plan Administrator, or Litigation Trust without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

C. *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Plan Administrator, or the Litigation Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court

shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Plan Administrator or the Litigation Trust, as applicable,  may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D. *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Debtors or Plan Administrator, as applicable, consistent with the Proof of Claim Filed by the applicable holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  As such, such assets will be subject to entity-level taxation, and the Debtors or the Plan Administrator, as applicable, shall be required to comply with the relevant rules.

E. *Disallowance of Claims*

Any Claims held by a Person or Entity from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person or Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

Except as provided herein or otherwise agreed to by the Plan Administrator, or the Litigation Trust solely as it relates to General Unsecured Claims, Subordinated Claims and Interests, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed as of the

Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order

F.  *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

G.  *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VI.A of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan.

H.  *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Plan Administrator shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

# ARTICLE VII
# SUBSTANTIVE CONSOLIDATION

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and distributions. If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor

with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Moreover, (a) no distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (b) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates, and (c) every Claim that is timely Filed or to be Filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

Notwithstanding any provision of the Plan to the contrary, any holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims. Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed only once as if such Claim were against a single Debtor.

Any alleged defaults under any applicable agreement, including executory contracts and unexpired leases, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement and the Sale Order.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto. The Notice of the

36

Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VIII.A hereof are deemed rejected as of the Effective Date. The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect to the same. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 5 of the Plan, which information shall be included in the Notice of the Effective Date.

## ARTICLE IX
## RELEASE, INJUNCTION AND RELATED PROVISIONS

A. *Satisfaction and Release of Claims and Interests.*

In consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the satisfaction and release of all Claims and Interests against and in the Debtors.

B. *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit,

37

registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C. *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

D. *Release*

Notwithstanding anything to the contrary in the Confirmation Order, Plan, or Plan Supplement, nothing in the Confirmation Order, Plan, including this Article IX, or Plan Supplement shall alter or limit the validity or scope of the releases granted under paragraph 4.14 of the Final DIP Order.

1. Releases by the Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan ( including, without limitation, the exclusion of the Retained Causes of Action), for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released and acquitted by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall have no effect on the liability of**

any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

Notwithstanding anything in the Plan to the contrary, nothing in this release shall be constructed to release any post-Effective Date obligations or remedies of any Released Party under the Plan, the Sale Order, the Asset Purchase Agreement, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

2. Releases by Holders

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, including, without limitation specifically excluding the Retained Causes of Action, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released and acquitted by the Releasing Parties from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any or all of the Released Parties, asserted or assertable by or on behalf of a Releasing Party or the Debtors, including any claims that are derivative of those of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall have no effect on the liability of any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

E. *Injunction.*

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold a Claim, Cause of Action, or

other debt or liability against any Released Party or Exculpated Party that have been released and/or exculpated under the this Plan (the "Released/Exculpated Claims") are permanently enjoined from taking any of the following actions against any Released Party and Exculpated Party: (i) commencing or continuing, in any manner or in any place, any action or other proceeding on account of such Released/Exculpated Claim; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order on account of such Released/Exculpated Claim; (iii) creating, perfecting or enforcing any lien or encumbrance on account of such Released/Exculpated Claim; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date or duly exercised in the Bankruptcy Court before the Plan is confirmed), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released/Exculpated Claim; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that has finally, judicially been determined by a court of competent jurisdiction to have resulted from any act or omission based on or arising out of gross negligence, fraud or willful misconduct; provided further, however, that the foregoing injunction does not apply to any actions taken with respect to any party's obligations or remedies under the Plan, the Sale Order, the Asset Purchase Agreement or any other or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Reservation of Rights by Certain Parties.*

For avoidance of doubt, the Plan shall not affect the following, all of which are specifically reserved: (a) direct claims and causes of action of Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing Entities against any non-Debtor third party, including Kinderhook, Richard Godfrey, Todd Gentry, and Christopher Hunter; (b) claims and causes of action of  Kinderhook  against Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing Entities including direct claims and causes of action and all of Debtors claims and causes of action acquired by Kinderhook pursuant to the Asset Purchase Agreement; (c) claims and causes of action of the Debtors against Richard Godfrey, Todd Gentry, and Christopher Hunter; and (d) direct claims and causes of action of Richard Godfrey, Todd Gentry, and/or Christopher Hunter and/or any Affiliate of the foregoing Entities against any non-Debtor third party, including Kinderhook, Chongqing Huansong Industries(Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., Vietnam New Century Industrial Company Limited, Hisun Motors Corp. USA, and/or any Affiliate of the foregoing

40

Entities. For the further avoidance of doubt, the reservation of rights in this Article IX.G. shall not limit the exculpation provided in Article IX.C.

# ARTICLE X
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.  the Bankruptcy Court shall have entered the Confirmation Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.  all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.  the Other Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

4.  the Litigation Trust shall have been established in accordance with the Litigation Trust Agreement, the Litigation Trust Note shall have been executed and funded, and the Litigation Trust shall have been funded with the Litigation Trust Assets;

5.  the Plan Administrator Agreement shall have been fully executed; and

6.  all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

For the avoidance of doubt, it shall not be a condition to the Effective Date of the Plan that the Sale Order be a Final Order.

B. *Waiver of Conditions.*

The conditions to Consummation set forth in Article X of the Plan may be waived only by prior written consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article X of the Plan, the Debtors shall immediately declare the Effective Date and File the Notice of Effective Date.

C. *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holder of any Claim or any other Entity in any respect.

## ARTICLE XI
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A. *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their rights, to revoke or withdraw, to alter, amend or modify the Plan, one or more times, after Confirmation, and before Consummation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B. *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any holder of a Claim or Interest or any other Entity or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, any holder or any other Entity.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases pursuant to sections 105(a) and 1142 of the Bankruptcy Code; provided, however, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors each of respective successors and assigns of the foregoing persons and Entities.

B. *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by the Debtors, with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

D. *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

E.  *Notices.*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

The Debtors:

>        Performance Powersports Group Investor, LLC
>        1775 East University Drive
>        Tempe, Arizona 85281
>        Attention: Peter Kravitz
>        Email: pkravitz@provincefirm.com

  with a mandated copy (which shall not constitute notice) to:

>        *Counsel to Debtors and Debtors in Possession*
>
>        Klehr Harrison Harvey Branzburg LLP
>        919 North Market Street, Suite 1000
>        Wilmington, Delaware 19801
>        Attention: Domenic E. Pacitti and Michael Yurkewicz
>        Telephone: (302) 426-1189
>        Email: dpacitti@klehr.com and myurkewicz@klehr.com

F.  *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://omniagentsolutions.com/PerformancePowersports or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

G.  *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations.  The Confirmation Order shall

44

constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

H.  *Closing of Chapter 11 Cases.*

The Litigation Trust shall promptly, after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Cases that has been fully administered.

I.  *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest.  In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtors.

J.  *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtors.

K.  *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any manner affects the terms, provisions or interpretation of the Plan.

L.  *Governing Law.*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving any effect to the principles of conflicts of law or such jurisdiction.

M.  *D&O Liability Insurance Policies.*

The Debtors shall be deemed to have assumed all of the D&O Liability Insurance Policies, pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date (whether or not such policies are listed on the Schedule of Assumed Executory Contracts), and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding

anything to the contrary contained in the Plan, and except as otherwise may be provided in an order from the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed; provided, however, that the holder(s) of a Claim for an indemnity obligation will look only to the D&O Liability Insurance Policies for recovery and not the Estates.  Kinderhook and Richard Godfrey shall be granted relief from the stay pursuant to section 362 of the Bankruptcy Code solely for the purpose of seeking coverage under the D&O Liability Insurance Policies in connection with any pending non-bankruptcy matters and any actions initiated by the Litigation Trust.

N. *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern; provided, however, that in the event of any inconsistency between the Plan or the Confirmation Order and the Litigation Trust Agreement, the Litigation Trust Agreement shall govern and control.

Dated: September 15, 2023                           Respectfully submitted,


                                          By:     */s/  Peter Kravitz*
                                                  Peter Kravitz, Independent Disinterested
                                                  Director of the Debtors

**EXHIBIT A**

**Founder Settlement**

10371299.v26

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PERFORMANCE POWERSPORTS | ) | Case No. 23-10047 (LSS) |
| GROUP INVESTOR, LLC, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**STIPULATION AMONG THE DEBTORS, RICHARD GODFREY, AND KINDERHOOK INDUSTRIES, LLC AND ITS AFFILIATED COMPANIES WITH RESPECT TO (I) THE DEBTORS' (A) OBJECTION TO PROOF OF CLAIM NO. 27 FILED BY RICHARD GODFREY AND (B) MOTION TO DESIGNATE PLAN VOTE OF RICHARD GODFREY PURSUANT TO 11 U.S.C. § 1126(E), (II) OBJECTION AND RESERVATION OF RIGHTS OF CREDITOR RICHARD GODFREY TO CONFIRMATION OF DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (III) THE DISCOVERY RELATED THERETO**

This *Stipulation Among the Debtors, Richard Godfrey and Kinderhook Industries, LLC and its Affiliated Companies With Respect to (I) the Debtors' (A) Objection to Proof of Claim No. 27 Filed by Richard Godfrey and (B) Motion to Designate Plan Vote of Richard Godfrey Pursuant to 11 U.S.C. § 1126(e), (II) Objection and Reservation of Rights of Creditor Richard Godfrey to Confirmation of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and (III) the Discovery Related Thereto* (hereinafter the "Stipulation") is entered into as of September 1, 2023 (the "Execution Date") by and among (i) the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); (ii) Kinderhook Industries, LLC and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380). The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona, 85281.

Kinderhook Industries' affiliated companies[2] (collectively, "<u>Affiliated Entities</u>," and together with Kinderhook Industries, "<u>Kinderhook</u>"); and (iii) Richard Godfrey ("<u>Godfrey</u>" together with the Debtors and Kinderhook, the "<u>Parties</u>"). Except where explicitly provided below, the terms of the Stipulation will become effective as of the Execution Date.

## RECITALS

A.    On January 16, 2023 ("<u>Petition Date</u>") the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

B.    On March 27, 2023, the Court entered an order approving the sale of substantially all the Debtors' assets [Docket No. 270] (the "<u>Sale Order</u>").  The Sale Order approved an asset purchase agreement (the "<u>APA</u>") that set forth the terms of the sale from the Debtors to CPS USA Acquisition, LLC. The sale closed on March 31, 2023.

C.    On April 24, 2023, Richard Godfrey filed a Proof of Claim in the amount of $62,640,000 ("<u>Godfrey Claim</u>"). On August 7, 2023, the Debtors filed an *Objection to Proof of Claim No. 27 Filed by Richard Godfrey and Motion to Designate Plan Vote of Richard Godfrey Pursuant to 11 U.S.C. § 1126(e)* [Docket No. 437] (the "<u>Claim Objection</u>").

D.    On June 15, 2023, the Debtors filed the solicitation version of the *Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Plan</u>") and the *Disclosure Statement with Respect to Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Disclosure Statement</u>").  The hearing to consider confirmation of the Plan originally scheduled for July 24, 2023 at 2:00 p.m. was continued

---

[2]    Specifically, Kinderhook Capital Fund VI, L.P.; Kinderhook Capital Fund VI-B, L.P.; CPS USA Acquisition, LLC; and Tankas Funding VI, LLC.

2

to September 11, 2023 at 1:00 p.m., and then further continued to and is currently scheduled for October 4, 2023 at 10:00 a.m. (the "<u>Confirmation Hearing</u>").

E.　　On August 7, 2023, Richard Godfrey filed the *Objection and Reservation of Rights of Creditor Richard Godfrey to Confirmation of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 439] ("<u>Godfrey Plan Confirmation Objection</u>") and served upon Debtors his *First Set of Requests for the Production of Documents* ("<u>Godfrey Discovery Requests to Debtors</u>").

F.　　On August 7, 2023, Richard Godfrey provided to Kinderhook Industries, LLC and each of its Affiliated Entities a *Notice of Intent to Serve Subpoena Seeking the Production of Documents* and requested waiver of service of same ("<u>Godfrey Discovery Requests to Kinderhook</u>" and together with Godfrey Discovery Requests to Debtors, the "<u>Godfrey Discovery Requests</u>").

G.　　On August 14, 2023, the Debtors served upon Godfrey the *Notice of Deposition of Richard Godfrey* (the "<u>Debtors' Deposition Notice</u>").

H.　　On August 15, 2023, the Debtors served upon Godfrey the *Debtors' First Set of Requests for Production of Documents to Richard Godfrey Related to Plan Objection* ("<u>Debtors' Discovery Requests to Godfrey</u>" and together with Debtors' Deposition Notice, the "<u>Debtors Discovery Requests</u>").

I.　　Various discovery has also been issued in connection with the Godfrey Claim.

J.　　The Parties have engaged in good faith negotiations regarding the Claim Objection, the Godfrey Plan Confirmation Objection, the Godfrey Discovery Requests, and the Debtors Discovery Requests.

3

K.       By this Stipulation, the Parties, to avoid the cost and uncertainty of discovery and litigation, desire to resolve the outstanding issues among the Parties related to the Godfrey Plan Confirmation Objection, the Claim Objection, and the Godfrey Discovery Requests.

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual promises hereinafter set forth, the receipt and adequacy of which are hereby acknowledged, the Parties represent and agree as follows:

1.       **Second Amended Plan**. Upon execution of the Stipulation, the Debtors shall file with the Bankruptcy Court a *Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* in the form attached hereto as **Exhibit A** ("Second Amended Plan").[3] The confirmation order for the Second Amended Plan shall include language reaffirming and acknowledging the release set forth in the Final DIP Order.

2.       **Withdrawal of Godfrey Plan Objection and Termination of Scheduling Order**. Upon execution of the Stipulation, Godfrey shall file a notice with the Court that the Godfrey Plan Objection is withdrawn and that the Parties and Debtors stipulate that the Scheduling Order (Docket No. 457) is no longer applicable. Godfrey further agrees that he will not otherwise object to the Second Amended Plan.

3.       **Reduction of Godfrey Claim for Voting Purposes and Reservation of Rights Regarding Godfrey Claim**. The Parties agree that the Godfrey Claim will be reduced to $22.5 million ("Reduced Godfrey Claim").  Godfrey or the Debtors, as is deemed necessary, will move to amend the amount of Godfrey's Plan vote to reflect the Reduced Godfrey Claim amount (such pleading, the "3018 Motion").  Debtors accept the Reduced Godfrey Claim for voting purposes

---

[3]    Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Second Amended Plan.

only, and the Parties will defer any objection on allowance of the Reduced Godfrey Claim for all other purposes until after confirmation of the Second Amended Plan.

4.      **Plan Confirmation**. The Confirmation Hearing shall be set for October 4, 2023 at 10:00 a.m.

5.      **Withdrawal of Claim Objection.**  Upon the Court's approval of the 3018 Motion, the Debtors shall file a notice with the Court that the Claim Objection is withdrawn without prejudice.

6.      **Withdrawal of Discovery**. The Parties agree that upon execution of the Stipulation, all pending discovery requests with respect to either the Godfrey Plan Confirmation Objection or the Claim Objection, including but not limited to the Godfrey Discovery Requests or the Debtors' Discovery Requests, are withdrawn. The parties agree to not pursue any additional discovery, including with respect to the Godfrey Claim, the Reduced Godfrey Claim, objections to the Godfrey Claim or the Reduced Godfrey Claim, or the Godfrey Plan Objection, absent the Debtors' filing of a new objection to the Reduced Godfrey Claim.

7.      **Mutual Standstill of Direct Claims Between Kinderhook and Godfrey**. If the Second Amended Plan[4] is confirmed by the Bankruptcy Court and the Litigation Trust[5] provided therein created, beginning on the Plan Confirmation Date and continuing until resolution of the Litigation Trust's prosecution of trust claims against Godfrey, the Parties agree to a mutual standstill of prosecution of any and all (i) direct claims by Godfrey against Kinderhook, and (ii) direct claims by Kinderhook against Godfrey (collectively, "Direct Claims"), except that the

---

[4]      Or any subsequent amended Plan submitted by the Debtors that comports with the requirements of Paragraph 1.

[5]      Capitalized terms not otherwise defined herein shall be ascribed the meaning set forth in the Second Amended Plan.

Parties expressly agree that Kinderhook shall have the right to pursue available insurance coverage for claims and recovery under Kinderhook's separate reps and warranties insurance coverage ("<u>Reps and Warranties Claims</u>"). In addition, the Parties will work to ensure that any insurance policies that may provide coverage for the actions contemplated in this Agreement are not defeated by non-personal collection efforts.

8.      **Termination of Mutual Standstill**.  The Parties may proceed to prosecute Direct Claims and the mutual standstill shall terminate if the Litigation Trust fails to bring claims against Godfrey within nine (9) months of the Plan Confirmation Date (the "<u>Mutual Standstill Expiration Date</u>"); *provided* that, following the Mutual Standstill Expiration Date, any Direct Claim brought by Kinderhook against Godfrey shall immediately be stayed upon the Litigation Trust filing suit against Godfrey.  If the Bankruptcy Court fails to confirm the Second Amended Plan,[6] the mutual standstill of Direct Claims shall be deemed waived without further action by any Party, and the Parties may proceed to prosecute Direct Claims.

9.      **Conversion of Mutual Standstill to Mutual Release**. If the Litigation Trust recovers on claims against Godfrey via settlement or final judgement, the Mutual Standstill provided in Paragraph 7 shall convert to a mutual release of Direct Claims, effective upon entry of a final judgment or execution of a settlement agreement.  Except as expressly provided for in this Paragraph 9, the Parties agree that no other provision in this Stipulation is intended to be or shall be construed as any release or discharge or waiver of any Direct Claims. The Parties further agree that the Reps and Warranty Claims as discussed in Paragraph 7 are not subject to release.

10.      **Tolling of Direct Claims**. The Parties further agree that any statute of limitations as well as any defense of laches and any other time-related defense applicable to any Direct Claim

---

[6]    *See* fn.4.

6

(collectively, "Time-Based Defenses") will be tolled during the standstill period provided for in paragraph 7 hereof ("Tolling Period"). The running of any applicable statute of limitations shall resume after the end of the Tolling Period, unless there is an extension of the Tolling Period executed in writing by and behalf of the Parties. The Parties each agree not to assert, plead, or raise in any fashion any Time-Based Defense to any Direct Claim that relies in whole or in part on time that passed during the Tolling Period.

11.     **Relief from Automatic Stay**. The Parties agree that Kinderhook and Godfrey will each be granted relief from the Automatic Stay for the limited purpose of seeking D&O insurance coverage related any pending non-bankruptcy matters and any actions initiated by the Litigation Trust.

12.     **Approvals**. This Stipulation will be incorporated into either the Second Amended Plan or any order approving the Second Amended Plan.

13.     **Termination of Stipulation.**  In the event the Debtors are unable to confirm the Second Amended Plan or a plan substantially similar thereto, or any other material, adverse changes occur in connection with the Debtors' case, any Party may give notice of the termination of this Stipulation.  Upon receipt of such notice, any other Party shall have 14 days to request a hearing from the Court regarding the same.

14.     **General.**

a.     This Stipulation is the product of bargained for, arms' length negotiations between the Parties and their counsel and shall not be construed for or against any Party or its representative(s) because that Party or that Party's legal representative drafted such provision.

b.    The validity, construction and all rights and obligations relating to this Stipulation shall be governed by the laws of the state of Delaware. Any disputes arising from this Stipulation shall be decided in an action or proceeding occurring before the Bankruptcy Court which shall have exclusive jurisdiction over any dispute arising under or related to this Stipulation.

c.    The Parties hereto warrant, covenant and agree that they each have power and authority to enter into and consummate this Stipulation, and that this Stipulation does not conflict with any other agreement, arrangement, or understanding of the Parties.

d.    The Parties further warrant, covenant, and agree that no other party, agent, employee, or attorney of any party has made any promise, representation, or warranty, whether express or implied, not expressly contained herein concerning the subject matter hereof, to induce any party to enter into and execute this Stipulation. Each Party further acknowledges and agrees that none of them have executed this Stipulation in reliance upon any promise, representation, warranty or agreement not contained or set forth herein, except as set forth herein.

e.    This Stipulation sets forth all agreements, covenants, representations, warranties, express or implied, with regard to the subject matter hereof. All prior and contemporaneous conversations, negotiations, actual, possible, and alleged agreements and representations with respect to the subject matter

8

hereof and not contained in this Stipulation are waived, merged, and superseded hereby.

f.    The Parties represent and warrant that they have read and fully understand the terms of this Stipulation. After consulting with counsel, each of the Parties has concluded that it is in its best interest to settle their differences and disputes upon the terms and conditions set forth herein, and in doing so, does not admit, concede, or imply that it has done anything wrong or legally actionable.

g.    No provision herein may be waived, modified, or amended unless in writing and signed by all Parties. Waiver of any one provision herein shall not be deemed to be a waiver of any other provision herein.

h.    This Stipulation may be executed in any number of counterparts, each of which shall be deemed an original, and all, when taken together, shall constitute the entire Stipulation, and a facsimile or electronically-scanned signature shall be deemed an original signature for purposes of executing this Stipulation.

*[Signature Page Follows]*

Stipulated and agreed to effective September 1, 2023,
by:

_/s/ Domenic E. Pacitti_
KLEHR HARRISON HARVEY BRANZBURG LLP
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email:   dpacitti@klehr.com
             myurkewicz@klehr.com
             sveghte@klehr.com

_Counsel for the Debtors and Debtors in Possession_

_/s/ Donald J. Detweiler_
WOMBLE BOND DICKINSON (US) LLP
Donald J. Detweiler (DE 3087)
Matthew P. Ward (DE 4471)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com
          matthew.ward@wbd-us.com

-and-

KUTAK ROCK LLP
Peter J. Barrett (admitted pro hac vice)
Jeremy S. Williams (admitted pro hac vice)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: peter.barrett@kutakrock.com
          jeremy.williams@kutakrock.com

_Co-Counsel for Richard Godfrey_

 /s/ James E. O'Neill
PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No.2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
        joneill@pszjlaw.com
        ecorma@pszjlaw.com

-and-

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Brian Schartz, P.C.
Allyson Smith, Esquire
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 909-3217
Email: brian.schartz@kirkland.com
        allyson.smith@kirkland.com

-and-

William E. Arnault, Esquire
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email: william.arnault@kirkland.com

*Co-Counsel for Kinderhook*

11