IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PERFORMANCE POWERSPORTS GROUP | ) Case No. 23-10047 (LSS) |
| INVESTOR, LLC, *et al.*,[1] | ) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Related to Docket No. 463** |

## DECLARATION OF PETER KRAVITZ IN SUPPORT OF CONFIRMATION OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

I, Peter Kravitz, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I currently serve as the Disinterested Director of the above-captioned debtors (the "Debtors").

2.     In addition, I am currently employed as a Principal at Province, Inc. ("Province"). Province is a US-based nationally recognized financial advisory firm.

3.     I submit this declaration (this "Declaration") in support of confirmation of the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 463] (as may be supplemented, amended, or modified from time to time, the "Plan").[2]

4.     The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinions, or on information I obtained from the Debtors' employees or

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

advisors, the Debtors' books and records, and/or from Province employees working under my supervision, direction, or control.

5.    I am not being specifically compensated for this testimony. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would competently testify to the facts set forth herein.

## BACKGROUND

### A.    Background and Qualifications

6.    I am a Principal at Province, which focuses on growth opportunities, corporate restructurings, and fiduciary-related services.  Over the past fifteen years, I have held a variety of roles, including (i) Chief Restructuring Officer, (ii) a member of bankruptcy oversight and creditor committees, (iii) the trustee for liquidating and litigation trusts, (iv) a plan administrator, (v) a disbursing agent, and (vi) advisor to and member of various boards of directors.

7.    In the last 10 years I have worked on approximately 300 to 400 engagements where I served as a representative for committees of unsecured creditors, ad hoc committees, or litigation trusts, or as a litigation trustee.  On those matters where I led litigation recovery efforts—including in the context of fraudulent conveyances, D&O litigation, business interruption, and class action claims—I have helped recover more than $1 billion.  Such matters include Samson Resources, Maxus Energy, Philadelphia Energy, Circuit City, Core Media, Fleetwood, Radio Shack, Aegean Marine, Rescap, American Apparel, and approximately 35 other post-confirmation trust engagements.

8.    In addition to these roles, I have also served as a disinterested director in cases such as PetSmart, BoardRiders, and Sable Energy.  Among other things, my responsibilities as a disinterested director have included reviewing financial covenants and transactions, reviewing

the appropriateness of spinoff transactions, chairing special committees for DIP considerations, investigating potential company causes of action, and overseeing financial restructurings.

9.      For one of these companies (BoardRiders), I was involved in an uptier financial transaction that resulted in the recapitalization of $450 million in debt obligations and required hard fought negotiations with lenders for covenant relief and liquidity infusion.

10.     For Sable Permian Resources Land, LLC, I served as an independent director where I assisted the company in an in-court restructuring of $2.1 billion of debt obligations.  In that case I also served as the chair of the Special Committee, which had responsibility for an investigation into estate causes of action, the negotiation of the DIP, and several other pre-petition agreements.

11.     Finally, I was appointed as an independent board member of PetSmart, Inc., the largest pet specialty retailer in the United States and Canada, to address its successful dividend of 20% of the equity of its online retailer, Chewy.com to its equity sponsor.  That process allowed for the successful $9 billion IPO of Chewy.

12.     I have also overseen litigation in my role as a disinterested director.   One such litigations was in PetSmart, which was settled and another, BoardRiders, which is still pending.

13.     I have also been involved in bankruptcy litigation in my roles as a litigation/liquidation trustee and as a committee professional.   I have served as a litigation/liquidation trustee over 50 times in the past 12 years.  In such roles I have generally served as the plaintiff in litigations and have initiated bankruptcy litigation numerous times, including professional liability claims, avoidance actions, fraudulent conveyances, unlawful dividends, and D&O litigation.

**B.      Engagement as Disinterested Director**

14.     In the fall of 2022, I was approached to submit my qualifications to serve as a disinterested director for the Debtors.  I submitted my qualifications and was interviewed by several members of the Debtors' Board for the position.

15.     Prior to my engagement as the Disinterested Director, I did not have any involvement with the Debtors, the Debtors' first lien lender (Twin Brook Capital Partners ("Twin Brook")), or the Debtors' equity sponsor (Kinderhook Industries, LLC ("Kinderhook")).

**C.      Scope and Authority as Disinterested Director**

16.     I became the Disinterested Director for the Debtors in October 2022.  At that time, the Debtors decided that a disinterested director was necessary because the Company was in the midst of financial distress that could require actions that may give rise to a potential conflict of interest among the board members.

17.     Initially, my authority included the review and authorization of matters relating to a potential restructuring, a potential financing, the sale of the company, or any other matter in which a conflict existed with another board member.  When a bankruptcy filing became a possibility, the Board expanded my authority to include decisions relating to a filing or any related transactions.

18.     In my role as disinterested director, I have: (1) evaluated the Debtors' assets, including but not limited to performing an investigation of potential litigation claims that the Company may have against certain parties; (2) assisted in identifying strategic alternatives for the Company, including a prepetition marketing and sale process; (3) led attempts to resolve disputes with the Hisun entities;[3] (4) led the negotiation of the Stalking Horse agreement; (5) led the

---

[3]     The Hisun entities are Chongqing Huansong Industries (Group) Co., Ltd., Chongqing Huansong Science and Technology Industrial Co., Ltd., and Vietnam New Century Industrial Company Limited.

negotiation of the DIP Financing, and (6) led the negotiations of the Plan.  The Debtors delegated to me the decision-making authority on these topics, and I was the one who ultimately made the decisions.

19.     I have reviewed and am generally familiar with the terms and provisions of the Plan. With the Debtors' bankruptcy counsel, I was personally involved in the development and negotiation of the Plan. The Plan is the result of good faith, arm's-length negotiations among the Debtors and key stakeholders.

20.     On June 12, 2023, the Court entered the order approving the *Disclosure Statement with Respect to Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 380] (as may be supplemented, amended, or modified from time to time, the "Disclosure Statement") and solicitation procedures (the "Disclosure Statement Order") [Docket No 383].  On June 15, 2023, the Debtors filed solicitation versions of the Plan [Docket No. 385] and Disclosure Statement [Docket No. 386]. To the best of my knowledge, with the assistance of Omni Bankruptcy Solutions, Inc. the Debtors' claims, noticing and voting agent (the "Claims and Noticing Agent"), the Debtors have complied with the solicitation and noticing procedures approved through the Disclosure Statement Order, as well as the applicable provisions of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure, as evidenced by the certificate of service filed by the Claims and Noticing Agent [Docket Nos. 388, 392] and Affidavit of Publication [Docket No. 412].

21.     On July 10, 2023, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 411], and on September 27, 2023 the Debtors filed the *Notice of Filing of Second Plan Supplement* [Docket No. 473] (collectively, the "Plan Supplement").

## COMPLIANCE WITH THE BANKRUPTCY CODE

**A.    Plan Compliance with Bankruptcy Code (11 U.S.C. 1129(a)(1))**

22.    I believe that the Plan complies with the applicable provisions of the Bankruptcy Code including, but not limited to, the following:

(i)    *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).*  Article III of the Plan designates eight (8) Classes of Claims or Interests. I am familiar with the classification of Claims and Interests in the Plan and believe that such classification system is based upon the legal nature and relative rights of the Claims and Interests and is not proposed for any improper purposes.  Each Class contains only Claims or Interests that are substantially similar to other Claims and Interests therein.

(ii)    *Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).*  Article III.B of the Plan specifies whether each Class of Claims and Interests is Impaired or Unimpaired under the Plan.

(iii)    *Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).*  Article III.C of the Plan sets forth the treatment of each Class of Claims and Interest under the Plan.

(iv)    *No Discrimination (11 U.S.C. § 1123(a)(4)).*  Pursuant to the Plan, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest.

(v)    *Implementation of the Plan (11 U.S.C. § 1123(a)(5)).*  Article IV of

the Plan, as well as various other provisions of the Plan, provides adequate and proper means for implementation of the Plan. The Plan is predicated upon the creation of the Litigation Trust and the appointment of a Litigation Trustee.  The Litigation Trustee shall be vested with those powers and responsibilities contemplated in the Litigation Trust Agreement.

(vi)    *Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).*  The Plan is a liquidating plan that calls for the ultimate dissolution of the Debtors; accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable.

(vii)    *Continuation of Existing Corporate Officers and Directors (11 U.S.C. § 1123(a)(7)).*  As the Plan is a liquidating Plan, there will be no officers or directors of the Debtors after Plan confirmation.   Rather, as previously explained, the Litigation Trustee will be tasked with administering, collecting, and liquidating the Debtors' remaining assets and the Litigation Trust Assets, implementing the Plan, administering the Litigation Trust Agreement. Furthermore, the Plan allows for the Litigation Trustee to affect the dissolution of the Debtor at any time after the Effective Date.

(viii)    *Impairment of Classes (11 U.S.C. § 1123(b)(1)).*  Articles III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests under the Plan.  Specifically: (a) Class 1 - Secured Tax Claims, Class 2 - Other Secured Claims, and Class 3 - Other Priority Claims are not impaired by the Plan and are deemed to have accept the Plan; (b) Class 4 - 2021 Credit Agreement Claims, Class 5 - General Unsecured Claims, Class 7 - Subordinated Claims, and Class 8 - Interests are impaired under the Plan and are entitled to vote on the Plan;

and (c) Class 6 - Intercompany Claims are impaired under the Plan, shall receive no Distributions under the Plan on account of their Interests, and are deemed to have rejected the Plan.

(ix)    *Treatment of Executory Contracts and Unexpired Leases 11 U.S.C. § 1123(b)(2)).*  Pursuant to Article VIII of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement and the Sale Order.

(x)    *Section 1123(b)(6) of the Bankruptcy Code Exculpation and Releases, etc.*  The Plan also includes an exculpation, releases and limitation of liability provision, and injunction provisions. These provisions were an integral component of the negotiations and compromises underlying the conduct of the Chapter 11 Cases and the Plan. The Exculpated Parties and Released Parties participated in good faith with respect to the Debtors' restructuring efforts, the Chapter 11 Cases, the sale of the Debtors' assets, and formulating and negotiating the Plan.  Based on my knowledge of the negotiations, these provisions are fair and reasonable, and necessary for the realization of a successful sale process and of the Debtors' Plan and the value realized thereunder.

(xi)    *Identification of Plan Proponents (Fed. R. Bankr. P. 3016(a)).*  As

required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan proponents as the Debtors.

(xii)  *Filing of Disclosure Statement (Fed. R. Bankr. P. 3016(c)).*  In accordance with Bankruptcy Rule 3016(c), the Disclosure Statement and Plan describe, in specific and conspicuous bolded language, all acts to be enjoined and identifies the entities that would be subject to the injunction to the extent required thereunder.  Further, all exculpation provisions in the Disclosure Statement and Plan are presented in conspicuous bolded language.

**B.**    **Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

23.    To the best of my knowledge, the Debtors, as the proponents of the Plan, have complied with the Bankruptcy Code in proposing the Plan, and with the Disclosure Statement Approval Order in commencing and conducting the Plan solicitation.

**C.**    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**

24.    To the best of my knowledge, the proponents of the Plan have proposed the Plan in good faith and not by any means forbidden by law.  The Debtors, as proponents of the Plan, have acted in good faith in the negotiation and formulation of the Plan.

**D.**    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

25.    Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, outside the ordinary course of business, has been approved by, or is subject to the approval of, the Court as reasonable.

**E.**    **Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))**

26.    There will be no officers or directors of the Debtors after Plan confirmation.  I have

been designated the Litigation Trustee who will be tasked with administering, collecting, and liquidating the Litigation Trust Assets in accordance with the Litigation Trust Agreement and implementing the Plan.

**F.      No Rate Changes (11 U.S.C. § 1129(a)(6))**

27.    The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency.

**G.      Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))**

28.    Under the "best interests test," with respect to each impaired Class, each holder of a Claim or Interest against the Debtors either has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained had the Debtors been liquidated under chapter 7 of the Bankruptcy Code on such date.

29.    In connection with the Disclosure Statement, the Debtors, with the assistance of their advisors, prepared a liquidation comparison that was filed as Exhibit B to the Disclosure Statement (the "Liquidation Comparison"). The Liquidation Comparison provides: (i) a summary of the liquidation values of the Debtors' assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates; and (ii) the expected recoveries of the Debtors' creditors and equity interest holders under the Plan.

30.    As explained in the Disclosure Statement and Liquidation Comparison, there is more cash available to pursue recoveries for Unsecured Creditors than would be available in a chapter 7.

31.    The Plan contemplates providing recoveries to, among others, the holders of Claims in Classes 1 through 5. As set forth in the Liquidation Comparison and herein,

recoveries under the Plan are higher than recoveries estimated to be available if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

32.    The recoveries described in the Disclosure Statement available to holders of Claims are estimates and actual recoveries could differ materially based on, among other things, whether the number of Claims actually Allowed against the applicable Debtor exceeds the estimates provided in the Liquidation Comparison and herein.

33.    Based on the Liquidation Comparison, it is my conclusion that the recoveries to the holders of Claims and Interests under the Plan are at least as much as (and, in many instances, exceed) the potential recoveries provided to the holders of Claims and Interests in a liquidation under chapter 7 of the Bankruptcy Code and, therefore, the Debtors have satisfied the "best interests" test under section 1129(a)(7) of the Bankruptcy Code.

34.    In a chapter 7 scenario, the liquidation value would consist of the net proceeds from the disposition of the Debtors' Assets, augmented by Cash held by the Debtors (which would not include the Litigation Trust Note funding) and reduced by certain increased costs and Claims that arise in a chapter 7 that do not arise under the Plan.  No significant increase of the assets of the Estates is possible.  However, in the event of a chapter 7 liquidation, the liquidation value available for satisfaction of Claims and Interests in the Debtors would be considerably reduced by additional expenses.

35.    It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors and potential dilution of recoveries by the assertion of additional claims.  Bankruptcy Rule 3002(c) provides that conversion of chapter 11 cases to chapter 7 will trigger a new bar date for filing claims against the Estates and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the

Bankruptcy Code.  Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to timely file claims against the Estates.  This delay, along with the delay associated with the trustee reviewing the estate, would dilute and delay recoveries by the Creditors.

36.    Accordingly, converting the case to chapter 7 will not increase the assets of the Estates but would add additional expenses ahead of the Creditors and will delay recoveries. Therefore, non-accepting impaired class of interests would not receive anything in a liquidation under chapter 7 and the Plan passes the best interest test.

**H.    Acceptance of the Plan (11 U.S.C. § 1129(a)(8))**

37.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Classes 1, 2 and 3 are not impaired by the Plan. Classes 7 and 8 did not vote on the Plan and have not objected to confirmation of the Plan. Class 4 and Class 5 accepted the Plan. Class 6 Intercompany Claims are deemed to have rejected the Plan as Claim and Interest Holders will not receive any distributions on account of their Claims.  However, while the Plan does not satisfy 1129(a)(8) of the Bankruptcy Code with respect to Classes 6, 7 and 8, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code (as further explained below).

**I.    Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))**

38.    Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the plan unless the holder of a particular claim agrees to a different treatment with respect to such claim. The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.    Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10))**

39.    Class 4 and Class 5 are impaired under the Plan but voted in favor of and thereby accepted the Plan.  As Class 4 and Class 5 are impaired classes of non-insiders that accepted the Plan, therefore the provisions of 11 U.S.C. 1129(a)(10) are met.

**K.    Feasibility (11 U.S.C. § 1129(a)(11))**

40.    The Debtors will be able to meet their obligations under the Plan and, thus, I believe that the Plan is feasible.  The Debtors have analyzed the costs required to satisfy their obligations under the Plan and have concluded that it will have sufficient funds to accomplish this goal.  The Debtors have analyzed the costs required to satisfy their obligations under the Plan and have concluded that they will have sufficient funds to accomplish this goal.  The Debtors currently possess cash on hand, (which included funding of $600,000.00 of a wind down amount), funding of $750,000.00 of cash and Litigation Trust Note in the amount of $500,000.00, plus professional fee escrows, and anticipate additional recoveries from liquidation of Litigation Trust Assets collectively, the "Available Cash").  The Debtors believe that the Available Cash is sufficient to cover the administrative and statutory payments under the Plan or, alternatively, certain administrative creditors will agree to different treatment under the Plan so that Available Cash is sufficient.  Accordingly, the Debtors will be able to make necessary distributions to Creditors under the Plan and will fully distribute all of the Estates' assets as provided in the Plan.  Therefore, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and thus the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.    Payment of Fees (11 U.S.C. 1129(a)(12))**

41.    All fees under 28 U.S.C. § 1930 presented to date have been paid or provided for, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.  Such fees shall be paid on the Effective Date consistent with Article II.C of the Plan to the extent required by 28 U.S.C. § 1930.

**M.**    **Retiree Benefits (11 U.S.C. § 1129(a)(13))**

42.    The Debtors provide no "retiree benefits" as such term is defined in section 1114 of the Bankruptcy Code. Therefore, 11 U.S.C. § 1129(a)(13) is inapplicable and need not be addressed.

**N.**    **Domestic Support Obligation (11 U.S.C. § 1129(a)(14))**

43.    As the Debtors are not required to pay any domestic support obligation, 11 U.S.C. § 1129(a)(14) is inapplicable and need not be addressed.

**O.**    **Individual Debtor Requirements (11 U.S.C. § 1129(a)(15))**

44.    As the Debtors are not individuals, 11 U.S.C. § 1129(a)(15) is inapplicable and need not be addressed.

**P.**    **No Unfair Discrimination, Plan is Fair and Equitable (11 U.S.C. 1129(b))**

45.    To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8)), the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.    The impaired classes in the Plan are: Class 4 - 2021 Credit Agreement Claims, which voted to accept the Plan; Class 5 - General Unsecured Claims, which voted to accept the Plan; Class 6 – Intercompany Claims, which is deemed to reject the Plan; Class 7 – Subordinated Claims, which did not vote or otherwise object to the Plan; and Class 8 – Interests, which did not vote or otherwise object to the Plan.    The Plan does not discriminate against Class 6, which includes the impaired class that is deemed to not accept the Plan, and it is fair and equitable to Class 7 Subordinated and Class 8 Interests.

46.    A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to the class allegedly

receiving more favorable treatment.

47.    Here, the Plan's treatment of Class 8 Interests is proper because no other class of Interests exists.

48.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.

49.    The treatments of Classes 6, 7 and 8 follow the absolute priority rule because Class 8 Intercompany Claims, Class 9 Subordinated Claims, and Class 10 Interests will receive no distribution under the Plan because they are junior in priority to other classes whose claims are not being fully satisfied and there are no Claims or Interests junior to those in Classes 8, 9, and 10 receiving a distribution pursuant to the Plan.

50.    Thus, the Plan's treatment of Claims and Interests is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 8, 9, and 10.

**Q.    Section 1129(c) -- Only One Plan.**

51.    Other than the Plan, no plan has been filed in these Chapter 11 Cases and the Debtors are not presently seeking confirmation of any plan other than the Plan.  Therefore, the Plan complies with section 1129(c) of the Bankruptcy Code.

**R.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).**

52.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**S.**   **Re-solicitation of the Plan is Not Required.**

53.   The Debtors filed a revised version of the Plan reflecting some modifications, to address certain objections – including those from the Office of the United States Trustee.

54.   I have been advised that if modifications of the plan do not disrupt or reduce distributions and do not adversely affect the rights of holders of claims in classes that voted to accept the plan, debtors do not need to re-solicit the plan.

55.   The modified Plan makes certain non-material modifications, including fixing typographical errors, reservations of rights, and clarifications, including changes incorporating consensual language agreed to by various stakeholders, and including changes requested by the U.S. Trustee, and changes to address objections raised by Richard Godfrey in exchange for its support of certain aspects of the Plan.

56.   The modifications proposed in the revised Plan do not disrupt or reduce the amount of distribution to any Class. Further, I do not believe that any of the changes made to the Plan adversely affect the holders of Claims in impaired voting classes.

## CONCLUSION

57.   Based on the foregoing, I believe that the Plan satisfies the requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated:  September 27, 2023

*/s/ Peter Kravitz*
Peter Kravitz
Disinterested Director of the Debtors