## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PERFORMANCE POWERSPORTS GROUP | ) | Case No. 23-10047 (LSS) |
| INVESTOR, LLC, *et al.*,[1] | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Related to Docket No. 463** |

### DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") submit this memorandum of law in support of confirmation of the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy* Code [Docket No. 463] (as the same may be amended, modified and/or supplemented from time to time, the "Plan")[2] and respectfully represent:

### INTRODUCTION

1.     The Plan should be confirmed.  The Plan complies with the applicable provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); all objections (informal and formal) have been resolved, it is feasible and in the best interest of the creditors and should be confirmed under section 1129 of the Bankruptcy Code.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Performance Powersports Group Investor, LLC (2068); Performance Powersports Group Holdings, Inc. (0823); Performance Powersports Group Purchaser, Inc. (1533); and Performance Powersports Group, Inc. (3380).  The Debtors' headquarters and mailing address is: 1775 East University Drive, Tempe, Arizona 85281.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Plan.

## **BACKGROUND**

2.        On January 16, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.        On March 27, 2023, the Court entered an order approving the sale of substantially all of the Debtors' assets [Docket No. 270] (the "Sale Order").  The Sale Order approved an asset purchase agreement that set forth the terms of the sale from the Debtors to CPS USA Acquisition, LLC (together with its permitted successor, designees, and assigns, the "Buyer"). The sale to the Buyer closed on March 31, 2023.

4.        On May 2, 2023, the Debtors filed their *Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 333] and *Disclosure Statement with Respect to Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 334] in these chapter 11 cases (these "Chapter 11 Cases").

5.        After discussion with counsel for the Office of the United States Trustee (the "UST") and other parties in interest, on June 12, 2023, the Debtors filed their *Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 363] (the "Plan") and *Disclosure Statement with Respect to Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 365] (the "Disclosure Statement") to incorporate changes to the pleadings requested by the UST and other parties in interest.

6.        On June 12, 2021, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Fixing the Voting Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Plan; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; (V) Approving the Forms of Ballots and Establishment of*

2

*Procedures for Voting on the Plan; (VI) Approving the Forms of Notices to Non-Voting Classes Under the Plan; (VII) Fixing the Voting Deadline to Accept or Reject the Plan; and (VIII) Approving Procedures for Vote Tabulations in Connection Therewith* [Docket No. 383] (the "Disclosure Statement Approval Order").

7.    On June 15, 2023, subsequent to the Court entering the Disclosure Statement Approval Order, the Debtors filed solicitation versions of the Plan [Docket No. 385] and Disclosure Statement [Docket No. 386].

8.    On August 7, 2023, the Debtors filed the *Debtors' (A) Objection to Proof of Claim No. 27 Filed by Richard Godfrey and (B) Motion to Designate Plan Vote of Richard Godfrey Pursuant to 11 U.S.C. § 1126(e)* [Docket No. 437] (the "Claim Objection/Designation Motion").

9.    On August 7, 2023, Godfrey filed the *Objection and Reservation of Rights of Creditor Richard Godfrey to Confirmation of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 439] (the "Godfrey Plan Objection").

10.    After discussions among the Debtors, Richard Godfrey and other parties in interest, on September 15, 2023, the Debtors filed the *Stipulation Between Performance Powersports Group Investor, LLC and Richard Godfrey and Kinderhook Industries, LLC and its Affiliated Companies With Respect to (I) the Debtors' (A) Objection to Proof of Claim No. 27 Filed by Richard Godfrey and (B) Motion to Designate Plan Vote of Richard Godfrey Pursuant to 11 U.S.C. § 1126(e), (II) Objection and Reservation of Rights of Creditor Richard Godfrey to Confirmation of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code and (III) the Discovery Related Thereto* [Docket No. 462] (the "Claim Objection Stipulation").

11.    On September 15, 2023, the Debtors filed the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 463] (the "Plan") to

10668963.v3

incorporate changes requested by the UST, other parties in interest, and Richard Godfrey consistent with the Claim Objection Stipulation.

12.    Also on September 15, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing (A) Temporary Allowance of Claim for Voting Purposes and (B) Amendment of Plan Vote Amount Pursuant to Bankruptcy Rule 3018* [Docket No. 465] (the "3018 Motion") that seeks authority to amend solely the amount of the Class 5 Plan vote of Richard Godfrey to the amount of $22,500,000 consistent with the Claim Objection Stipulation.

13.    On September 18, 2023, Richard Godfrey filed the *Notice of Withdrawal of Objection and Reservation of Rights of Creditor Richard Godfrey to Confirmation of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 468] withdrawing the Godfrey Plan Objection consistent with the Claim Objection Stipulation.

14.    The Plan is a liquidation plan, which contemplates the appointment of a Litigation Trustee.  The Litigation Trustee is appointed jointly by the Debtors, to, among other things, receive the Litigation Trust Assets, hold legal title to Litigation Trust Assets, establish and maintain such operating, reserve, and trust accounts as are necessary and appropriate to carry out the terms of the Litigation Trust and the Plan.  The Litigation Trustee shall also be deemed a judicial substitute for each of the Debtors and shall be empowered to retain and/or employ professionals, pursuant to the Plan and the Trust Agreement.

15.    As reflected in the *Declaration of Kim D. Steverson of Omni Agent Solutions, Inc. Regarding Solicitation of Votes and Tabulation of Ballots on the Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated September 27, 2023 [Docket No. 472] (the "Voting Declaration"), four impaired Classes were entitled to vote (Class 4,

Class 5, Class 7, and Class 8).  Class 4 and Class 5 voted to accept the Plan and Class 7 and Class

8 did not vote.  Specifically, the voting results were as follows:

| Class | Percentage Voting in Favor (in Number) | Percentage Voting in Favor (in Amount) |
|---|---|---|
| Class 4 – 2021 Credit Agreement Claim | 100.00% | 100.00% |
| Class 5 – General Unsecured Claims | 83.33% | 83.35% |
| Class 7 – Subordinated Claims | 0.00% | 0.00% |
| Class 8 – Interests | 0.00% | 0.00% |

16.    As set forth in the *Declaration of Peter Kravitz in Support of Confirmation of the Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 27, 2023 [Docket No. 474] (the "Declaration in Support of Confirmation") and herein, the Debtors have demonstrated that the Plan complies with the requirements of the Bankruptcy Code and should be confirmed by the Court.

17.    On September 27, 2023, the Debtors filed with the Court the *Notice of Proposed Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Proposed Confirmation Order").

## ARGUMENT

18.    To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[3]  The Debtors submit that the Plan complies with all relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.  In particular, the Plan fully complies with

---

[3]    *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 606 n.23 (Bankr. D. Del. 2001); *see also In re Bally Total Fitness of Greater New York, Inc.*, No. 07-12395, 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the Plan, have the burden of proving the satisfaction of the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.").

10668963.v3

the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code.  This memorandum addresses each requirement individually.

## A.    The Plan Complies With all Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1))

19.    Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[4]  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively.[5]  As demonstrated below, the Plan complies with the requirements of sections 1122 and 1123, as well as other applicable provisions of the Bankruptcy Code.

### i.    Compliance with Section 1122 of the Bankruptcy Code

20.    The Plan satisfies the classification requirements of section 1122 of the Bankruptcy Code.  Courts in this jurisdiction and others have recognized that under section 1122 of the Bankruptcy Code, plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.[6]

---

[4]    11 U.S.C. § 1129(a)(1).

[5]    *See* S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the legislative history of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were sections 1122 and 1123.").

[6]    *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1066 (Bankr. D.N.J. 1986) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also Boston Post Rd. L.P. v. FDIC (In re Boston Post Road, L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994) (finding that courts cannot prohibit separate classification of substantially similar claims); *Frito-Lay, Inc, v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 956-57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court-approved settlement); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) ("the only express prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a reorganization plan"); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (although discretion is not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case"); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar claims be grouped together . . . ."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y.

21.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 because the Claims and Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature or based on other relevant criteria.  Moreover, each of the Claims or Interests in a particular Class is substantially similar to the other Claims or Interests in such Class.

22.     Specifically, the Plan provides for the separate classification of Claims and Interests into the following eight (8) Classes based upon differences in the legal nature and/or priority of such Claims and Interests:

- Class 1 - Secured Tax Claims

- Class 2 - Other Secured Claims

- Class 3 - Other Priority Claims

- Class 4 - 2021 Credit Agreement Claims

- Class 5 - General Unsecured Claims

- Class 6 - Intercompany Claims

- Class 7 - Subordinated Claims

- Class 8 - Interests

23.     Secured Claims are classified separately from Unsecured Claims, Interests are classified separately from Claims, and Secured Claims are separately classified based upon their respective potential collateral.

---

1989) ("a debtor may place claimants of the same rank in different classes and thereby provide different treatment for each respective class").

10668963.v3

24.    Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in such Class.  Accordingly, the Plan satisfies section 1122(a) of the Bankruptcy Code.

**ii.    Compliance with Section 1123(a) of the Bankruptcy Code**

25.    Section 1123(a) of the Bankruptcy Code sets forth seven items that every chapter 11 plan must contain.[7]  The Plan contains each of these items.

*a    Designation of Classes of Claims and Interests (§ 1123(a)(1))*

26.    As discussed above, Article III of the Plan properly designates classes of Claims and Interests, and thus satisfies the requirement of section 1122 of the Bankruptcy Code.

*b    Specification of Unimpaired Classes (§ 1123(a)(2))*

27.    Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."[8]  The Plan meets this requirement by identifying in Article III.B each Class that is not Impaired.

*c    Treatment of Impaired Classes (§ 1123(a)(3))*

28.    Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."[9]  The Plan meets this requirement by setting forth the treatment of Impaired Classes in Article III.C.

*d    Equal Treatment within Classes (§ 1123(a)(4))*

29.    Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[10]  The Plan meets

---

[7]    11 U.S.C. § 1123(a).
[8]    11 U.S.C. § 1123(a)(2).
[9]    11 U.S.C. § 1123(a)(3).
[10]    11 U.S.C. § 1123(a)(4).

this requirement because holders of Allowed Claims will receive the same rights and treatment as other holders of Allowed Claims within their respective Class, except to the extent they agree to less favorable treatment.

### e        Means for Implementation (§ 1123(a)(5))

30.      Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[11]    The Plan satisfies this requirement through Article IV and various other provisions of the Plan, which, together provide for the means by which the Plan will be implemented.  Among other things, Article IV of the Plan:

- Provides for the creation of the Litigation Trust and appointment of the Liquidation Trustee to administer the Litigation Trust in accordance with the terms of the Litigation Trust Agreement and the Plan.

- Provides for the appointment of the Plan Administrator to perform duties delegated to the Plan Administrator under the Plan in accordance with the terms of the Plan Administrator Agreement and the Plan.

- Contemplates that the Litigation Trustee shall be responsible for, among other things, the winding down of the remaining affairs of the Debtors, investigating, prosecuting or settling Retained Causes of Action, and exercising such other powers vested in or assumed by the Litigation Trustee pursuant to the Plan or the Litigation Trust Agreement.

### f        Insurance of Non-Voting Securities (§ 1123(a)(6))

**31.**      Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities.[12]  The Plan does not contemplate the issuance of non-voting equity securities.

### g        Officers and Directors (§ 1123(a)(7))

32.      Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any director, officer or trustee, or any other successor thereto,

---

[11]      11 U.S.C. § 1123(a)(5).
[12]      11 U.S.C. § 1123(a)(6).

be "consistent with the interests of creditors and equity security holders and with public policy . . . ."[13]  As the Plan is a liquidating Plan, there will be no officers or directors of the Debtors after Plan confirmation.  Rather, as previously explained, the Litigation Trustee, Peter Kravitz, will be tasked with administering, collecting, and liquidating the Litigation Trust Assets, implementing the Plan, and administering the Litigation Trust.  Furthermore, Article IV.C.9 of the Plan allows for the Litigation Trustee to affect the dissolution of the Debtor at any time after the Effective Date. The Plan complies with section 1123(a)(7) of the Bankruptcy Code.

33.     Based upon the foregoing, the Plan complies fully with each of the requirements of 1123(a) of the Bankruptcy Code.

### iii.     Compliance with Section 1123(b) of the Bankruptcy Code

#### a     *Overview of Plan's Compliance with Section 1123(b) of the Bankruptcy Code*

34.     Section 1123(b) of the Bankruptcy Code sets forth various permissive provisions that may be incorporated into a chapter 11 plan.[14]  For example, section 1123(b) of the Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11.[15]

35.     The Plan is consistent with section 1123(b) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests under the Plan.  Specifically: (a) Class 1 Secured Tax Claims, Class 2 Other Secured

---

13      11 U.S.C. § 1123(a)(7).
14      *See* 11 U.S.C. § 1123(b).
15      11 U.S.C. § 1123(b)(1)–(6).

Claims, and Class 3 Other Priority Claims are not Impaired by the Plan and are deemed to have

accepted the Plan; (b) Class 4 2021Credit Agreement Claims, Class 5 General Unsecured Claims,

Class 7 Subordinated Claims, and Class 8 Interests are Impaired under the Plan and were entitled

to vote on the Plan; and (c) Class 6 Intercompany Claims are Impaired under the Plan, shall receive

no Distributions under the Plan on account of their Claims, and are deemed to have rejected the

Plan.  In addition, in accordance with section 1123(b)(2) of the Bankruptcy Code, Article VIII of

the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases not

previously assumed or rejected under section 365 of the Bankruptcy Code.

### h    *The Plan's Exculpation, Injunction, and Release Provisions Satisfy Section 1123(b) of the Bankruptcy Code*

36.    The Plan also includes: (a) an exculpation and limitation of liability provision; and

(b) injunction provisions prohibiting parties from pursuing claims subject to the exculpation under

the Plan, (c) a Debtor release, and (d) a third-party consensual release.  As explained below, these

provisions are proper under existing law and are the product of arm's-length negotiations.

### (I)    The Exculpation Provision

37.    Article IX.C of the Plan exculpates parties critical to the formation of the Plan for

any acts or omissions in connection with the Plan, the restructuring efforts, and these Chapter 11

Cases (the 'Exculpations'').  Each of the following is deemed an Exculpated Party under the Plan:

(a) the Debtors; (b) the Creditors' Committee's advisors that were retained in these Chapter 11

Cases; (c) the members of the Creditors' Committee solely in their capacities as such, and the

individuals who served on the Creditors' Committee on behalf of each member, solely in their

capacities as such; and (d) the Debtors' financial advisors, professionals, accountants, and

attorneys that were retained in the Chapter 11 Cases and each of their successors and assigns, but

solely in their capacities as such and only to the extent that such party served in such a capacity

11

during the Chapter 11 Cases from the Petition Date to the Effective Date; provided that Richard

Godfrey, Todd Gentry, and Christopher Hunter and any entities affiliated with the same of any

nature shall not be Exculpated Parties, and provided, further, that Kinderhook and any entities

affiliated with it (other than the Debtors) shall not be an Exculpated Party.[16]

38.    An exculpation provision is not a mandatory release of all liability, but instead,

establishes the appropriate standard of liability with respect to the parties exculpated.[17]  First, this

Court must find, under section 1129(a)(2) of the Bankruptcy Code, that the Debtors have complied

with the applicable provisions of the Bankruptcy Code.  Additionally, the Court must find, under

section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden

by law.[18]  These findings apply to the Debtors and, by extension, to the Debtors' officers, directors,

employees and professionals.  Further, these findings evidence that the Plan was negotiated at

arm's length and in good faith.  Insofar as the Debtors negotiated the myriad of issues during the

course of these Chapter 11 Cases, as well as the terms of the Plan, with the other Exculpated

Parties, the Court's good faith findings with respect to these Chapter 11 Cases should extend to

them.

39.    Second, it is well established that exculpation for parties participating in the plan

process is appropriate where plan negotiations could not have occurred without protection from

liability.[19]  Moreover, exculpation provisions that apply only to estate fiduciaries, and are limited

---

16     *See* Plan, Articles I.B.44 and IX.C.

17     *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (reasoning that the exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability."); *see also In re Enron Corp.*, 326 B.R. 497, 501 (S.D.N.Y. 2005) (in finding creditors' appeal of confirmation based on the plan's exculpation provision moot, the court specifically noted that the bankruptcy court addressed the exculpation provision and found it appropriate because it excluded gross negligence and willful misconduct).

18     11 U.S.C. § 1129(a)(3).

19     *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *Enron Corp.*, 326 B.R. at 503 (explaining similar exculpation provisions would "tend to unravel the entire fabric of the Plan and would be inequitable to all those who participated in good faith to bring it into fruition.").

to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.

40.     The Debtors ask that the Court find that the Exculpated Parties have participated in good faith with respect to the Debtors' restructuring efforts, these Chapter 11 Cases, the sale of the Debtors' assets, and formulating and negotiating the Plan and that they are entitled to protection from lawsuits from creditors or any other parties in interest.[20]  Negotiation and compromise was crucial to the conduct of the sale process, these Chapter 11 Cases generally and the formulation of a feasible plan and could not have occurred without the protection from liability that the Exculpation provides to the Exculpated Parties.  Further, the Exculpation is consistent with the practice in this jurisdiction and others.[21]  Therefore, the Court should approve the Exculpation and adopt the appropriate standard of liability for the Exculpated Parties with respect to these Chapter 11 Cases.  The Exculpation does not amount to a stark departure from other chapter 11 plans confirmed in this district.[22]  Moreover, the Exculpation does not amount to a release, but rather represents a conclusion of law that flows inevitably from several different findings of fact that the Court must reach in confirming the Plan.

---

[20]     *See* Plan, Article IX.C.

[21]     *See, e.g.*, *In re VER Technologies HoldCo, LLC*, No. 18-10834 (KG) (Bankr. D. Del. July 26, 2018) (extended exculpation to DIP Lenders and prepetition lenders); *In re Sea Containers Ltd.*, No. 06-11156 (KJC) (Bankr. D. Del. Nov. 24, 2008); *In re ACG Holdings*, No. 08-11467 (CSS) (Bankr. D. Del. Aug. 6, 2008); *In re Oneida Ltd.*, 351 B.R. 79, 94 n.22 (Bankr. S.D.N.Y. 2003) (approving exculpation provision that covered prepetition lenders, DIP lenders, creditor committees and their members, and the respective affiliates of each except in cases of gross negligence, willful misconduct, fraud, or criminal conduct over an objection that was raised but "not pursue[d] at the confirmation hearing" and noting that the language "generally follows the text that has become standard in this district, is sufficiently narrow to be unexceptional"); *see also In re DJK Residential LLC*, No. 08-10375, (Bankr. S.D.N.Y. May 7, 2008) (approving an exculpation provision that excluded gross negligence and willful misconduct without unresolved objections); *In re Bally Total Fitness*, 2007 WL 2779438, at *8 (same).

[22]     *Id.*

41. Based upon the foregoing, the Exculpation complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, and thus, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

### (II)   The Injunction Provision

42. The injunction provision in Article IX.E of the Plan (the "Injunction") is necessary to preserve and enforce the Exculpation and is narrowly tailored to achieve that purpose.  Thus, the Court should approve the Injunction.

### (III)   The Debtor Releases

43. Article IX.D.1 of the Plan provides for the releases by the Debtors of the Released Parties (the "Debtor Releases"). The Debtor Releases appropriately are tailored under the facts and circumstances of these Chapter 11 Cases and are supported by ample consideration. The Debtor Releases are an integral part of the Plan and provide appropriate levels of protection to the Released Parties.  Accordingly, the Debtor Releases represent the sound and valid exercise of the Debtors' business judgment and are permissible under section 1123(b)(6) of the Bankruptcy Code.

44. Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[23]  A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[24]  In determining whether a debtor release is proper, courts consider whether::

---

[23] *See In re Coram Healthcare Corp*., 315 B.R. 321, 334-35 (Bankr. D. Del. 2004) ("The standards for approval of settlement under section 1123 [of the Bankruptcy Code] are generally the same as those under [Bankruptcy Rule] 9019 …,"). Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "exceed[s] the lowest point in the range of reasonableness." *E.g., In re Exaeris, Inc.*, 380 B.R. 741, 746 (Bankr. D. Del. 2008) (cleaned up).

[24] *U.S. Bank Nat'l Assn' v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Washington Mut.*, 442 B.R. at 327 ("In making its evaluation [whether to approve a settlement], the court

(a) An identity of interest between the debtor and third-party, such that a suit against the third-party is, in essence, a suit against the debtor or will deplete the assets of the estate;

(b) Substantial contribution by the third-party to the plan;

(c) The essential nature of the release to the debtor's plan;

(d) An agreement by a substantial majority of creditors to support the plan and the release; and

(e) Provision in the plan for payment of all or substantially all of the claims of the creditors and interest holders under the plan.[25]

No factor is dispositive, nor is a proponent required to establish each factor required for the release to be approved; rather the factors are intended to provide guidance to the Court in determining the fairness of the releases.[26]

45.     The releases easily meet the applicable standard because they are fair, reasonable, supported by the Debtors' key stakeholders, and in the best interests of the Debtors' estates. First, the Debtor Releases constitute an integral part of the Plan that was negotiated between the Debtors and their primary creditor constituencies in the context of the overall Plan. As in *Indianapolis Downs*, the Debtors' releases are integral to settlements and concessions facilitating a plan. Moreover, there is an identity of interests between the Debtors and the Released Parties based on their "common goal of confirming the [] Plan."[27]  The Debtor Releases are of an integral nature to the Plan as a whole as well as to the numerous compromises embodied in the Plan that have

---

must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.") (*quoting In re Louise's, Inc.*, 211 B.R. 798, 801 (Bankr. D. Del. 1997)).

[25]   *In re Indianapolis Downs, LLC,* 486 B.R. 286, 303 (Bankr. D. Del. 2013) (*citing In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *see e.g., In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *see also Wash. Mut.,* 442 B.R. at 346 (citing the Zenith factors); *Spansion*, 426 B.R. at 143 n.47 (same)..

[26]   *In re Washington Mutual, Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011)(finding that the factors are not exclusive or conjunctive requirements); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013) (approving debtors' releases despite not meeting the third and fifth *Zenith* factors).

[27] *In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011); *Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

facilitated the Debtors' Chapter 11 Cases, which will ultimately result in the Debtors making distributions to certain of their creditors.

46.     Second and perhaps more importantly, the Debtors do not believe they are releasing any material claims.  As the Court is aware, the Disinterested Director performed an investigation and analysis of potential claims of the Debtors. Many of the potential claims were determined to be of little value and were already released pursuant to the Final DIP Order. The remaining potential claims are either released under the Plan or are preserved under the Plan (the Retained Causes of Action) to allow the Litigation Trust to pursue if it so choses. As such, pursuing non-material claims against the Released Parties is not in the best interests of the Debtors' various constituencies as the costs involved likely would outweigh any potential benefits from pursuing such claims. The Debtors' directors and management reviewed, considered, and approved such releases. Thus, reviewing the applicable factors in their totality, the Debtor Releases are fair and reasonable and should be approved as a valid exercise of the Debtors' business judgment. [28]

### (IV)     The Consensual Third Party Releases Are Fair and Reasonable

47.     Article IX.D.2 of the Plan provides for the releases by all holders of Claims that vote to accept or are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice indicating that they opt not to grant the releases provided in the Plan of the Released Parties (the "Third Party Releases").

48.     The Third-Party Releases are fair and reasonable and should be approved. As a threshold matter, the Third-Party Releases are consensual in nature and may be approved on the

---

[28]  *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 142 (Bankr. D. Del. 2010) (approving as a valid exercise of business judgment the debtors' releases of, among others, the debtors' current directors, officers and employees, the debtors' current and former professionals, secured creditors and their advisors, the debtors and their affiliates, and their officers, directors, employees, and advisors and senior noteholders and their advisors) (citing *In re DBSD North America, Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (approving a debtor's release of third parties when the debtor testified that it was unaware of any significant potential claims that were being released).

basis that they are premised upon the releasing creditor's consent.[29]  The holders of Claims giving the Third-Party Releases were given the opportunity to opt-out of the releases and have been provided sufficient information to determine whether to grant the Third-Party Releases and each has been provided the option to opt-out of or otherwise object to the releases in Article IX.D.2 of the Plan.  Accordingly, the consensual Third-Party Releases are entirely optional and should be approved.

### iv.    Compliance with Section 1123(d) of the Bankruptcy Code

49.    Section 1123(d) of the Bankruptcy Code states that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law."[30]  Article VIII of the Plan so complies.

### B.    The Plan Complies With all Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2))

50.    The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code.[31]  The legislative history to section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[32]  As discussed below, the Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code, regarding disclosure and solicitation of the Plan.

---

[29]  *See Indianapolis Downs*, 486 B.R. at 306; *In re Spansion, Inc.*, 426 B.R. 144 (Bankr. D. Del. 2010).

[30]    *See* 11 U.S.C. § 1123(d).

[31]    11 U.S.C. § 1129(a)(2).

[32]    *See In re Lapworth*, No. 97-34529, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, No. 02-13533, 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code"); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

17

### i.    Compliance with Section 1125 of the Bankruptcy Code

51.    Section 1125 of the Bankruptcy Code provides, in pertinent part, that:

> (b)    An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary or the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

> (c)    The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.[33]

52.    After appropriate and sufficient notice was given, the Court entered the Disclosure Statement Approval Order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code as providing Holders of Claims with "adequate information" to make an informed judgment on whether to accept or reject the Plan.[34]

53.    The Debtors did not solicit the acceptance or rejection of the Plan from any creditor or interest holder before approval of the Disclosure Statement.  Moreover, appropriate materials were distributed to all parties in interest.  The evidence that will be presented at the Confirmation Hearing (as set by the Court in the Disclosure Statement Approval Order), including the *Affidavits of Service* [Docket Nos. 388 and 392] (collectively, the "Affidavit of Service") relating to service of the Solicitation Packages, demonstrates that the correct materials were sent to the appropriate parties as required by the terms of the Disclosure Statement Approval Order.  Accordingly, Holders of Claims entitled to vote received:  (a) the Disclosure Statement, including all exhibits; (b) the Plan; (c) the Disclosure Statement Approval Order; and (d) the appropriate ballot.[35]  In addition,

---

33    11 U.S.C. § 1125(b), (c).

34    *See* Disclosure Statement Approval Order.

35    *See* Affidavit of Service.

Holders of Claims and Interests that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by the Court in the Disclosure Statement Approval Order.[36]

54.    Additionally, as reflected in the *Proof of Publication* [Docket No. 412] (the "Publication Affidavit"), the Debtors caused the Confirmation Hearing Notice to be published in *The New York Times* in substantial compliance with the Disclosure Statement Approval Order. Accordingly, the Debtors satisfied the notice and solicitation requirements of section 1125 of the Bankruptcy Code.

**ii.    Compliance with Section 1126 of the Bankruptcy Code**

55.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan.[37]  Specifically, under section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed equity interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan. Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

(a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

[ … ]

(f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)    Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such

---

36    *See* Affidavit of Service.
37    11 U.S.C. § 1126.

claims or interests to receive or retain any property under the plan on account of such claims or interests.[38]

56.     As set forth in the Disclosure Statement, in accordance with section 1126 of the Bankruptcy Code, the Debtors solicited acceptances or rejections of the Plan from the Holders of Allowed Claims in each Class of Impaired Claims that will or may receive distributions under the Plan.  Classes 1, 2, and 3 are not Impaired under the Plan.  As a result, pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 Secured Tax Claims, Class 2 Other Secured Claims, and Class 3 Other Priority Claims are conclusively presumed to have accepted the Plan. Class 6 will receive no distribution under the Plan.  Thus, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 6 Intercompany Claims are conclusively presumed to have rejected the Plan.  Classes 4, 5, 7, and 8 are Impaired under the Plan.  As a result, pursuant to section 1126(a) of the Bankruptcy Code, Holders of Claims in Class 4 2021 Credit Agreement Claims, Class 5 General Unsecured Claims, Class 7 Subordinated Claims, and Class 8 Interests were entitled to vote to accept or reject the Plan.

57.     As to Impaired Classes entitled to vote to accept or reject a plan, sections 1126(c) and 1126(d) of the Bankruptcy Code specify the requirements for acceptance of a plan by classes of claims and classes of equity interests, respectively:

(c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

(d)     A class of interests has accepted the plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under

---

[38]     11 U.S.C. § 1126(a), (f), and (g).

subsection (e) of this section, that have accepted or rejected such plan.[39]

58.     Here, each class entitled to vote on the Plan, that actually voted, has accepted the

Plan.  Specifically, the voting results were as follows:

| Class | Percentage Voting in Favor (in Number) | Percentage Voting in Favor (in Amount) |
|---|---|---|
| Class 4 – 2021 Credit Agreement Claim | 100.00% | 100.00% |
| Class 5 – General Unsecured Claims | 83.33% | 83.35% |
| Class 7 – Subordinated Claims | 0.00% | 0.00% |
| Class 8 – Interests | 0.00% | 0.00% |

59.     Based upon the foregoing and the evidence that will be presented at the

Confirmation Hearing, the Debtors submit that the Plan satisfies the requirements of sections

1129(a)(2) and (7) of the Bankruptcy Code.

## C.     The Plan was Proposed in Good Faith (§ 1129(a)(3))

60.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law."[40]  The good faith standard requires that the

plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization

can be effected with results consistent with the objectives and purposes of the Bankruptcy Code."[41]

61.     The Plan was indeed proposed with honesty and good intentions, and it was done

so at arm's length; therefore, it meets the requirements of section 1129(a)(3) of the Bankruptcy

Code.

---

[39]     11 U.S.C. § 1126(c), (d).

[40]     11 U.S.C. § 1129(a)(3).

[41]     *Zenith Elecs.*, 241 B.R. at 107 (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D. N.J. 1988), *aff'd in part, remanded in part*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990)).  *See also In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (finding good faith requires "some relation" between the chapter 11 plan and the "reorganization-related purposes" of chapter 11); *In re Century Glove, Inc.*, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ("[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied").

**D.     The Plan Provides that Payments Made by the Debtors for Professional Fees and Expenses are Subject to Court Approval (§ 1129(a)(4))**

62.     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable.[42]   Specifically, section 1129(a)(4) requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable.[43]

Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees using funds from estate assets be subject to review and approval by the Court as to their reasonableness.[44]

63.     Pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 135] dated February 10, 2023 (the "Interim Compensation Order"), the Court authorized and approved the payment of certain fees and expenses of professionals retained in these Chapter 11 Cases.  All such fees and expenses, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review for reasonableness by the Court under section 330 of the Bankruptcy Code.[45]

64.     In addition, pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code, the Court must review any applications for substantial contribution to ensure compliance with the

---

[42]     11 U.S.C. § 1129(a)(4).

[43]     *Id.*

[44]     *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *see also In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation.").

[45]     11 U.S.C. § 330; Interim Compensation Order.

statutory requirements and that the fees requested are reasonable.[46]  Further, all payments to be made in connection with the Effective Date, have been disclosed previously or will be disclosed.

65.     Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**E.     The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5))**

66.     Section 1129(a)(5)(A) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors.[47]  The Bankruptcy Code further provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.  Section 1129(a)(5)(B) of the Bankruptcy Code also requires a plan proponent to disclose the identity of an "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.[48]

67.     As the Plan is a liquidating plan, there will be no officers or directors of the Debtors after Plan confirmation.  Rather, as previously explained, the Litigation Trustee will be tasked with administering, collecting, and liquidating the Litigation Trust Assets in accordance with the Plan and Litigation Trust Agreement and implementing the Plan.

68.     Based upon the foregoing, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.     The Plan is in the Best Interest of All the Debtors' Creditors (§ 1129(a)(7))**

69.     Section 1129(a)(7) of the Bankruptcy Code — the "best interests test" — provides, in relevant part:

---

[46]     11 U.S.C. § 503(b)(3), (4).

[47] 11 U.S.C. § 1129(a)(5).

[48] *Id.*

23

With respect to each impaired class of claims or interests —

(A)    each holder of a claim or interest of such class —

   (i)    has accepted the plan; or

   (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date….[49]

70.    The best interests test applies to individual dissenting holders of claims and interests rather than classes and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.[50]  As § 1129(a)(7) makes clear, the best interests test applies only to non-accepting impaired claims or interests.  The Plan contemplates potential distributions to four Impaired classes — Classes 4, 5, 7, and 8.  One class is deemed to reject the Plan because they are receiving no distribution — Class 6.  Accordingly, to satisfy the best interests test, the Debtors must demonstrate that each creditor holding a Claim in these Classes has either accepted the Plan or will receive at least as much under the Plan as that claimant would receive in a chapter 7 liquidation.[51]

71.    With respect to each Impaired Class, each holder of a Claim or Interest against the Debtors either has accepted the Plan and will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that

---

[49]    11 U.S.C. § 1129(a)(7)(A).

[50]    *See Bank of Am.*, 526 U.S. at 441 n.13 ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *see also In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation."); *Century Glove, Inc.*, 1993 WL 239489, at *7.

[51]    *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'").

such holder would have received or retained had the Debtors been liquidated under chapter 7 of the Bankruptcy Code on such date (the "Liquidation Value"). There are seven (7) impaired classes under the Plan: Class 4 2021 Credit Agreement Claims, Class 5 General Unsecured Claims, Class 7 Subordinated Claims, and Class 8 Interests. Class 4 and Class 5 actually voted and accepted the Plan. Classes 7 and 8 did not vote on the Plan. The Plan contemplates no distributions to Class 6 Intercompany Claims that are deemed to have rejected the Plan. Therefore, in order to show that the Plan is in the best interest of Classes 6, 7 and 8, it must be shown that the Plan provides for them to not receive less than they would have received had the Debtors liquidated through a chapter 7 liquidation. In a chapter 7 liquidation, Class 6 Intercompany Claims, Class 7 Subordinated Claims, and Class 8 Interests would receive no distribution. Consequently, the Debtors have satisfied the best interests test with respect to Classes 6, 7, and 8.

72.    The Liquidation Value would consist of the net proceeds from the disposition of the Debtors' Assets, augmented by Cash held by the Debtors and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 liquidation case.

73.    There are added costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals. Although the Debtors has already incurred many of the expenses associated with generating the proceeds, the Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee.[52] The chapter 7 trustee's professionals,

---

[52]    Bankruptcy Code § 326(a) permits a chapter 7 trustee to receive 25% of the first $5,000 distributed to creditors, 10% of additional amounts up to $50,000, 5% of additional distributions up to $1 million and reasonable compensation up to 3% of distributions in excess of $1 million.

10668963.v3

including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtors.  Moreover, these chapter 7 trustee fees would reduce the Assets available for distribution to creditors from additional recoveries such as preferential payments, expunged administrative claims and the proceeds of successful Estate litigation or settlement.  Therefore, non-accepting impaired class of interests would not receive anything in a liquidation under chapter 7.

74.      It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors.  Bankruptcy Rule 3002(c) provides that conversion of chapter 11 cases to chapter 7 will trigger a new bar date for filing claims against the Estate, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the Bankruptcy Code.  Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in these Chapter 11 Cases, or were late filed, could be filed against the Estate.  Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to timely file claims against the Estate.

75.      If the case were to convert to a chapter 7, there would certainly be additional costs and possibly additional claims to be paid.  However, as the Debtors have substantially liquidated all of their assets, conversion to a chapter 7 would not result in increased assets or cash to pay creditors.  Therefore, the non-accepting Impaired claimants in Classes 6, 7, and 8 are receiving more through the Plan than they would in a liquidation under chapter 7.  Accordingly, the Plan passes the best interest test.

76.      Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

10668963.v3

**G.      The Plan Can Be Confirmed Notwithstanding the Requirements of Section 1129(a)(8)**

77.      Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.[53]

78.      Class 4 and Class 5 have accepted the Plan.  Class 6 has been deemed to reject the Plan as the Holders of Intercompany Claims will not receive any distributions.

79.      Thus, while the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Classes 6, 7, and 8, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed in section M below.

**H.      The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9))**

80.      Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the plan.[54] Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code requires the plan to provide as follows:

> (A)      with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B)      with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of [the Bankruptcy Code], each holder of a claim of such class will receive —
>
> > (i)      if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

---

53      11 U.S.C. § 1129(a)(8).
54      11 U.S.C. § 1129(a)(9).

10668963.v3

(ii)  if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)  with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.[55]

81.    In accordance with section 1129(a)(9), Articles II.A and II.B of the Plan provide, respectfully, as follows:

A.    *Administrative Claims*

1.    Administrative Claims

All Allowed Administrative Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser under the Asset Purchase Agreement. To the extent that an Allowed Administrative Claims was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim  shall be paid in full in Cash from the Purchaser (if and to the extent such holder's Allowed Administrative Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement), the Debtors or the Plan Administrator, as applicable, on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

2.    Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered on or before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days after the Effective Date (with an objection period of at least twenty one days for objections, if any, to such applications); provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for

---

[55]    11 U.S.C. § 1129(a).

services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Klehr Harvey Branzburg LLP's escrow account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, Klehr Harrison Harvey Branzburg LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Klehr Harrison Harvey Branzburg LLP shall promptly transfer any such Cash to the Litigation Trust and such Cash shall become Litigation Trust Assets and be treated in accordance with the Litigation Trust Agreement, the Plan and the Confirmation Order.

3.      Satisfaction of DIP Facility Claims

The DIP Facility Claims have been satisfied pursuant to the terms of the Sale Order. Upon satisfaction of the DIP Facility Claims, all Liens and security interests granted to secure the DIP Facility Claims were automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

4.      Administrative Claim Bar Dates

Requests for payment of Administrative Claims must be Filed on or before the applicable Administrative Claims Bar Dates. Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or its property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date.

B.      *Priority Tax Claims*

All Allowed Priority Tax Claims were either paid during the Chapter 11 Cases or assumed by the Purchaser and paid under the Asset Purchase Agreement. To the extent that an Allowed Priority Tax Claims was not otherwise paid during the Chapter 11 Cases or assumed and paid under the Asset Purchase Agreement or the holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable, one of the following treatments: (i) if and to the extent such Allowed Priority Tax Claim was assumed and assigned to the Purchaser under the Asset Purchase Agreement, paid by the Purchaser, (ii) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or

29

(iii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (ii) of this section) as may be agreed upon by such holder and the Debtors or the Plan Administrator, as applicable, or otherwise determined upon an order of the Bankruptcy Court.  Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (a) the Effective Date, (b) the date on which such Priority Tax Claim against the Debtors becomes an Allowed Priority Tax Claim, or (c) such other date as may be ordered by the Bankruptcy Court.[56]

82.    Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

## I.    At Least One Class of Impaired, Non-Insider Claims Will Have Accepted the Plan (§ 1129(a)(10))

83.    Section 1129(a)(10) of the Bankruptcy Code is an alternative requirement to section 1129(a)(8)'s requirement that each class of claims or interests must either accept the plan or be unimpaired under the plan.[57]  Section 1129(a)(10) provides that to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider."[58]

84.    Because at least one Impaired classes of non-insiders (Class 4 and Class 5) voted in favor of the Plan, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

## J.    The Plan is Feasible (§ 1129(a)(11))

85.    Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

---

[56]    Plan, Articles II.A and II.B.

[57]    11 U.S.C. § 1129(a)(10).

[58]    11 U.S.C. § 1129(a)(10); *see In re Martin*, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (where three classes of impaired creditors accepted plan, exclusive of insiders, requirement of section 1129(a)(10) was satisfied).

10668963.v3

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[59]

86.     As described in the Declaration in Support of Confirmation and below, and as will be demonstrated at the Confirmation Hearing, the Plan is feasible within the meaning of this provision.  Moreover, no party has contested the feasibility of the Plan.

87.     To demonstrate that a plan is feasible, it is not necessary that success be guaranteed.[60]  Rather, a bankruptcy court must determine whether a plan is workable and has a reasonable likelihood of success.[61]

88.     The key element of feasibility is whether there exists a reasonable probability that the provision of the plan can be performed.  The purpose of the feasibility test is to protect against visionary or speculative plans.  As noted by the United States Court of Appeals for the Ninth Circuit:

> The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.[62]

89.     However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility.   The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.[63]

---

[59]     11 U.S.C. § 1129(a)(11).

[60]     *See United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *Internal Revenue Serv. v. Kaplan (In re Kaplan)*, 104 F.3d 589, 597 (3d Cir. 1997); *see also In re U.S. Truck Co., Inc.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

[61]     *See United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Kaplan*, 104 F.3d at 597; *see also Mercury Cap. Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) (A "'relatively low threshold of proof' will satisfy the feasibility requirement.") (quoting *In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)).

[62]     *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02 at 1129-34 (15th ed. 1984)).

[63]     *See In re U.S. Truck Co., Inc.*, 47 B.R. 932, 944 (E.D. Mich. 1985).

90.    Importantly, "the feasibility inquiry is peculiarly fact intensive and requires a case-by-case analysis, using as a backdrop the relatively low parameters articulated in the statute . . . . There is a relatively low threshold of proof necessary to satisfy the feasibility requirement."[64] Specifically, in assessing feasibility, courts consider a number of probative factors, including the soundness and adequacy of the capital structure and working capital for the business in which the debtor will engage post-confirmation, the prospective availability of credit, whether the reorganized debtor will have the ability to meet its requirements for capital expenditures and economic and market conditions.[65]

91.    An analysis of these factors in these Chapter 11 Cases strongly indicates that the Plan is feasible.  Under the Plan, the Litigation Trust Assets of the Debtors will be liquidated and distributed to the Debtors' creditors through the Litigation Trustee, as outlined in the Plan, the Litigation Trust Agreement, and any relevant agreements referenced therein.  The Debtors have analyzed the costs required to satisfy its obligations under the Plan and have concluded that it will have sufficient funds to accomplish this goal.  Therefore, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and thus the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

---

[64]    *Mercury Cap. Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006), *remanded*, No. 04-30511, 2008 WL 687266 (Bankr. D. Conn. Mar. 10, 2008), *stay denied,* No. 04-330511, 2008 WL 2003118 (Bankr. D. Conn. May 7, 2008), *appeal denied*, No. 08-107, 2008 WL 2079126 (D. Conn. May 16, 2008) ("[A] 'relatively low threshold of proof' will satisfy the feasibility requirement.") (*quoting In re Brotby*, 303 B.R. 177, 191–92 (B.A.P. 9th Cir. 2003)); *Berkeley Fed. Bank & Trust v. Sea Garden Motel and Apartments (In re Sea Garden Motel and Apartments)*, 195 B.R. 294, 304–05 (D.N.J. 1996); *In re Eddington Thread*, 181 B.R .at 833 ("[T]he feasibility inquiry is peculiarly fact intensive and requires a case-by-case analysis, using as a backdrop the relatively broad parameters articulated in the statute.").

[65]    See, e.g., In re Worldcom, Inc., 2003 WL 23861928, at *58; Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.), 800 F.2d 581, 589 (6th Cir. 1986); In re Repurchase Corp., 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005), aff'd, No. 05-7075, 2008 WL 4379035 (N.D. Ill, Mar. 24, 2008).

### K.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12))

92.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan."[66]  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[67]  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that "[a]ll fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code and any interest thereon pursuant to 31 U.S.C. §3717 . . . prior to the Effective Date shall be paid in full in cash by the Debtors on the Effective Date."[68]  Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### L.    Sections 1129(a)(13) Through Sections 1129(a)(16) Do Not Apply to the Plan

93.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with Bankruptcy Code § 1114.[69]  The Debtors do not have any obligations on account of retiree benefits (as such term is used in § 1114);[70] therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

---

[66]    11 U.S.C. § 1129(a)(12).

[67]    11 U.S.C. § 507(a)(1).

[68]    Plan, Article II.C.

[69]    11 U.S.C. § 1129(a)(13).

[70]    Under section 1114 of the Bankruptcy Code "'retiree benefits' means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purpose of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under [chapter 11]."  11 U.S.C. § 1114(a).

94.     Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.[71]   The Debtors are not subject to any domestic support obligations, and therefore, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.

95.     Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.[72]   None of the Debtors are an "individual" and, therefore, the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.

**M.     The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code**

96.     Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) are satisfied.[73]   To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8)), the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[74]

97.     Class 6 is made up of the Debtors' Intercompany Claim Holders, each of which are Impaired under the Plan and are deemed to not accept the Plan.  Class 7 is made up of the Debtors' Subordinated Claim Holders, each of which are Impaired under the Plan and did not vote on the Plan as the Debtors are not aware of any such Holders.  Class 8 is made up of the Debtors' Interest Holders, each of which are also Impaired under the Plan and did not vote on the Plan.  However,

---

71      11 U.S.C. § 1129(a)(14).

72      11 U.S.C. § 1129(a)(15).

73      *See* 11 U.S.C. § 1129(b)(1).

74      *See John Hancock Mutual Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *see also In re Ambanc La Mesa L.P.*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

as described below, the Plan does not discriminate unfairly and it is fair and equitable with respect to Classes 6, 7, and 8.

### i.    The Plan is Fair and Equitable (§ 1129(b)(2)(B)(ii))

98.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[75]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[76]

99.    The Plan does not discriminate unfairly with respect to Classes 6, 7, and 8, the Impaired Classes that are either deemed to not accept the Plan or did not vote on the Plan.  A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to the class allegedly receiving more favorable treatment.   Here, the Plan's treatment of Class 6 Intercompany Claims, Class 7 Subordinated Claims, and Class 8 Interests is proper because no similar class of interests exists.

100.    Thus, the Plan's treatment of Classes 6, 7, and 8 is proper because all similarly situated Holders of Intercompany Claims, Subordinated Claims, and Interests will receive the same treatment.  Notably, no party has contested the Debtors' classification or treatment of Claims or Interests under the Plan.

101.    The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6, 7, and 8, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because

---

[75]    11 U.S.C. § 1129(b)(2)(B)(ii); *see also LaSalle,* 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative,  if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii).  That latter condition is the core of what is known as the 'absolute priority rule.'").
[76]    *See id.*

no Holder of a Claim or Interest that is junior to Classes 6, 7, and 8 will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in any Class is receiving more than 100% on account of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejections of the Plan by Classes 6, 7, and 8.

### ii.    The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan (§ 1129(b)(1))

102.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstance of the particular case to make the determination.[77]  In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[78]

103.    A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to the class allegedly receiving more favorable treatment.  The Plan's treatment of Classes 6, 7, and 8 is proper because no similar Classes of Claims or Interests, respectively, exist.

---

[77]    *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *see also In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[78]    *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie*, 301 B.R. at 661 (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *In re Ambanc*, 115 F.3d at 655; *In re Aztec Co.*, 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986).

10668963.v3

104.    Thus, the Plan's treatment of Claims and Interests is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment.  Notably, no party has contested the Debtors' classification or treatment of Claims or Interests under the Plan.

105.    The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6, 7, and 8, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any Claim or Interest that is junior to Classes 6, 7, and 8 will receive or retain any property under the Plan on account of such junior Interest, and no Holder of a Claim in any Class is receiving more than 100% on account of its Claim.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan or failure to vote on the Plan by Classes 6, 7, and 8.

**N.    The Debtors Have Complied with Section 1129(d) of the Bankruptcy Code**

106.    The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**O.    Re-Solicitation of the Plan is Not Required.**

107.    Section 1127(a) of the Bankruptcy Code provides that the proponent of a plan may modify such plan at any time prior to confirmation, provided that such plan, as modified, meets the requirement of sections 1122 and 1123 of the Bankruptcy Code.[79] Section 1127(c) of the Bankruptcy Code further provides that the proponent of plan modification shall comply with the disclosure requirements of section 1125 of the Bankruptcy Code with respect to the plan, as modified.

---

[79]    *See* 11 U.S.C. § 1127(a).

108.   The filing of additional disclosure and re-solicitation is only necessary if the plan is materially modified in a manner that has an adverse impact on creditors. The legislative history of section 1127(c) of the Bankruptcy Code states that "if the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances."[80] Similarly, Bankruptcy Rule 3019 provides that if the court finds that a proposed modification does not adversely change the treatment of a creditor who has not accepted the modification in writing, the modification shall be deemed accepted by all creditors who have previously accepted the plan.[81]

109.   The leading case interpreting section 1127(c) and Rule 3019 is *In re American Solar King Corp.*, decided in 1988 by the Bankruptcy Court for the Western District of Texas.[82] As established therein, a court "[must] look[] to whether the modification 'materially' impacts a claimant's treatment to determine whether the change is sufficiently adverse to require resolicitation."[83] "The severity of the modification need not be such as would motivate a claimant to change their [sic] vote — only that they would be apt to reconsider acceptance."[84] Anything less, according to the *American Solar King* court, would be so insignificant as to represent a *de facto* satisfaction of all section 1125 disclosure requirements. The court reasoned that:

> [b]allots solicited with the original disclosure statement previously approved by the court will still be valid for the modified plan, because that disclosure statement is presumed already to contain 'adequate information' to cover minor modifications . . . .
> Additional disclosure would serve no purpose and would therefore not be required …….. The goal after all is consensual plans.
> Requiring such a formalistic step [as additional disclosure] in the face of a merely technical negative impact heightens the risk of plan

---

[80]   H.R. Rep. No. 95-595 at 411.

[81]   *See* Fed. R. Bankr. P. 3019.

[82]   *See In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).

[83]   *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2011 WL 320466, at *6 (Bankr. S.D.N.Y. Jan. 20, 2011) (citing *Am. Solar King Corp.*, 90 B.R. at 826).

[84]   *See Am. Solar King Corp.*, 90 B.R. at 824.

> failure without satisfying any countervailing public policy. . . . [Rule 3019] permits modifications that might technically have a negative impact on claimants where the modifications are not substantial ………………Thus, if a modification does not "materially" impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.[85]

110.   Courts have explicitly held that additional disclosure is unnecessary where a modification did not materially and adversely affect the plan treatment of any creditor, or where the modification has only affected the interests of one creditor.[86] Plan modifications that maintain or improve the recovery for affected creditors are not "adverse" or "material" modifications and therefore do not require re-solicitation.[87]

111.   In this case, the modifications contained in the Plan do not require re-solicitation of votes from previously accepting creditors because (a) they do not result in a material adverse change in the treatment of creditors, and (b) they are otherwise immaterial.

112.   Specifically, the modified Plan makes (a) certain non-material modifications, including fixing typographical errors, incorporating consensual language agreed to by various stakeholders, and including other non-material, (b) resolves informal objections from the UST, and (c) resolves the Godfrey Plan Objection and is otherwise consistent with the terms of the Claim Objection Stipulation.

---

[85]   *Id.* at 824–26.

[86]   *Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R 573, 596 (Bankr. D. Del. 2002); *In re Century Glove, Inc.*, No. 90-400 (SLR), 1993 WL 239489, at *12 (D. Del. Feb. 10, 1993).

[87]   *See In re Mangia Pizza Invs., LP*, 480 B.R. 669, 689 (Bankr. W.D. Tex. 2012) (stating that there were no material modifications to the modified plan because the "amounts payable under the [] plan are all better than or equal to the plan as solicited"); *In re Dow Corning Corp.*, 237 B.R. 374, 378 (E.D. Mich. 1999) (acknowledging that no re-solicitation was required when sufficient claim holders in the unsecured creditors class agreed to the plan modifications pursuant to a settlement such that the class tipped from a rejecting class to an accepting class); *In re Am. Solar King Corp.*, 90 B.R. at 824 (holding that a 1% dilution in value as a result of a plan modification did not warrant re-solicitation); *In re Mount Vernon Plaza Comm. Urban Redev. Corp. I*, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (permitting modification without re-solicitation because the modification does not "negatively affect[] the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest"); *In re Century Glove, Inc.*, 1993 WL 239489, at *6 n. 9.

10668963.v3

113.    These modifications do not adversely impact creditors in any material manner and would not cause a claimant to change its vote to accept or reject the plan, and, accordingly, are not material.[88] Accordingly, the Debtors did not need to resolicit votes from any creditors of the Debtors.

## **CONCLUSION**

114.    Based on the foregoing, the Plan complies with and satisfies all of the requirements of the Bankruptcy Code and should be confirmed.

Dated:  September 27, 2023
Wilmington, Delaware

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:   (302) 426-1189
Facsimile:   (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              sveghte@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-2700
Facsimile:   (215) 568-6603
Email:         mbranzburg@klehr.com

*Counsel for the Debtors and Debtors in Possession*

---

[88]    *See Boylan Int'l, Ltd.*, 452 B.R. 43, 51 (Bankr. S.D.N.Y 2011) ("A modification which is not 'material' is by definition one which will not affect an investor's voting decision. Additional disclosure would serve no purpose and would therefore not be required.") (quoting *Am. Solar King Corp.*, 90 B.R. at 824 n.28).

10668963.v3